# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA WOOD, CAELAN DOHERTY, MAX GOLDSTEIN, BRIDGET LOGAN, JAMES KYLE NEWMAN, ZIA ORAM, ALAN ROBINSON, ALEXANDRA MARIE WHEATLEY-DIAZ, individually and on behalf all others similarly situated, and CHERYL BALDWIN, JONATHAN BARRIO, DESMOND BATTS, GARRETT BECKENBAUGH, COCHIESE BOWERS, MILES CEPLECHA, ROBIN CEPPOS, MELINDA CIRILO, JANE CONRAD, ROBERT CORDOVA, JR., CHRISTINE DOCZY, RACHEL DOUGLAS, THERESA EDWARDS, ELIZA FINK, JASON FINKELSTEIN, ILSE MENDEZ FRAGA, JOSH FREDRICKSON, MARIA GONZALEZ, NATHANIEL ROBERT GROH, BRANDI HARRIS, PETER KAMARA, MACK KENNEDY, MADISON OLIVER MAYS, PATRICK MCHUGH, FRIDA MICHELLE NARANJO, PAUL MONTEROSSO, REY MURPHY, JOSEPH NESTOR, LUKE NICHOLAS, JOSEPHINE OLINGER, ALEC SILVESTER, DANIEL SMITH, CHRIS SOTH, AUDRA TELLEZ, CARLOS TORRES, ELLIOTT TRICOTTI, GLORIA TYLER, LAKISHA WATSON-MOORE, JESSE WEINBERG, CLEM WRIGHT, ANOOSH YARAGHCHIAN, and JESUS ZAMORA, individually,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>Defendants. | No. 20 Civ. 2489 (LTS) (GWG) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE AND COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY................................................................................................... 2

STATEMENT OF FACTS ................................................................................................... 3

     I.     Bloomberg Employed and Centrally Controlled All Field Organizers. ................. 3

     II.    Bloomberg Uniformly Classified All Field Organizers as Exempt from
             Overtime and Required Significant Overtime Work. ............................................. 5

     III.   All Field Organizers Had the Same Primary Job Duties. ...................................... 6

ARGUMENT ....................................................................................................................... 8

     I.     Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Goals....... 8

     II.    Plaintiffs Exceed the Low Burden for Sending Notice........................................... 9

            A.     Plaintiffs Face a Low Burden of Proof at the Notice Phase. ...................... 9

            B.     Plaintiffs Comfortably Meet Their Burden............................................... 11

                    1.     Plaintiffs and Field Organizers Are Similarly Situated With
                            Respect to Their FLSA Claims. .................................................... 11

                    2.     Field Organizers Are Similarly Situated With Respect to
                            Their Job Duties.......................................................................... 12

                    3.     At This Stage, the Court Does Not Resolve Factual Disputes
                            or Address Merits Issues.............................................................. 13

     III.   The Court Should Approve Plaintiffs' Proposed Notice and the Plan for its
             Distribution. ........................................................................................................ 15

CONCLUSION.................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
  No. 14 Civ. 2625, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ............................................ 15

*Braunstein v. E. Photographic Labs., Inc.*,
  600 F.2d 335 (2d Cir. 1978) ................................................................................................ 8, 9

*Cohen v. Gerson Lehrman Grp., Inc.*,
  686 F. Supp. 2d 317 (S.D.N.Y. 2010) .......................................................................... 11, 13, 14

*Cruz v. Hook-Superx, LLC*,
  No. 09 Civ. 7717, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) ............................................ 14

*Cuzco v. Orion Builders, Inc.*,
  477 F. Supp. 2d 628 (S.D.N.Y. 2007) ...................................................................................... 9

*Damassia v. Duane Reade, Inc.*,
  No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ................................................ 15

*Djurdjevich v. Flat Rate Movers, Ltd.*,
  No. 17 Civ. 261, 2018 WL 5919519 (S.D.N.Y. Nov. 13, 2018) ............................. 8, 12, 13, 14

*Djurdjevich v. Flat Rate Movers, Ltd.*,
  No. 17 Civ. 261, 2019 WL 125888 (S.D.N.Y. Jan. 7, 2019) ................................................... 15

*Francis v. A & E Stores, Inc.*,
  No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) ....................................... 11, 15

*Franze v. Bimbo Foods Bakeries Distribution, LLC*,
  No. 17 Civ. 3556, 2019 WL 1417125 (S.D.N.Y. Mar. 29, 2019) .................................... passim

*Hamadou v. Hess Corp.*,
  915 F. Supp. 2d 651 (S.D.N.Y. Jan. 16, 2013) ........................................................................ 17

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997) ............................................................................................ 9

*Hoffmann-La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989) ................................................................................................................ 9, 15

*In re Deloitte & Touche, LLP Overtime Litig.*,
  No. 11 Civ. 2461, 2012 WL 340114 (S.D.N.Y. Jan. 17, 2012) ............................................... 17

*In re Penthouse Exec. Club Comp. Litig.*,
  2010 WL 4340255 ................................................................................................................... 11

*Indergit v. Rite Aid Corp.*,
   Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488 (S.D.N.Y. June 16, 2010) ........... 13, 14

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
   132 F. Supp. 3d 707 (D.S.C. 2015) ........................................................................ 16

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................... 10

*Lu v. Purple Sushi Inc.*,
   --- F. Supp. 3d ---, 2020 WL 1303572 (S.D.N.Y. Mar. 19, 2020) ................................. 2, 9, 10

*Mason v. Lumber Liquidators, Inc.*,
   No. 17 Civ. 4780, 2019 WL 2088609 (E.D.N.Y. May 13, 2019) ..................................... 14, 15

*Masson v. Ecolab, Inc.*,
   No. 04 Civ. 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ........................................... 11

*Morgan v. Family Dollar Stores*,
   551 F.3d 1233 (11th Cir. 2008) .......................................................................... 13

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ...................................................................... passim

*O'Conner v. Agilant Solutions, Inc.*,
   419 F. Supp. 3d 739 (S.D.N.Y. 2019) ...................................................................... 13, 14

*Perkins v. S. New England Tel. Co.*,
   669 F. Supp. 2d 212 (D. Conn. 2009) ........................................................................ 14

*Pippins v. KPMG LLP*,
   No. 11 Civ. 377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ..................................................... 17

*Sanchez v. Salsa Con Fuego, Inc.*,
   No. 16 Civ. 473, 2016 WL 4533574 (S.D.N.Y. Aug. 24, 2016) ............................................. 16

*Schear v. Food Scope Am., Inc.*,
   297 F.R.D. 114 (S.D.N.Y. 2014) ........................................................................... 17

*Scott v. Chipotle Mexican Grill, Inc.*,
   --- F.3d ----, 2020 1541069 (2d Cir. Apr. 1, 2020) .................................................. 8, 9, 12, 13

*Shajan v. Barolo, Ltd.*,
   No. 10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ........................................... 9, 10

*Sipas v. Sammy's Fishbox, Inc.*,
   No. 05 Civ. 10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006) ........................................... 11

*Strauch v. Computer Sciences Corp.*,
   No. 14 Civ. 965, 2015 WL 3727804 (D. Conn. June 9, 2015) ................................................ 14

*Varghese v. JP Morgan Chase & Co.*,
   Nos. 14 Civ. 1718, 15 Civ. 3023, 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016)............... 14, 17

*Walston v. Edward J. Young, Inc.*,
   No. 15 Civ. 457, 2016 WL 3906522 (E.D.N.Y. Feb. 22, 2016)............................................. 14

*Zhang v. Ichiban Grp., LLC*,
   No. 17 Civ. 148, 2020 WL 1030651 (N.D.N.Y. Mar. 3, 2020)......................................... 15, 17

**Statutes**

29 U.S.C. § 207(a)(1)...................................................................................................... 11

29 U.S.C. § 216(b) ..................................................................................................... 1, 3, 8

## PRELIMINARY STATEMENT

Plaintiffs Donna Wood, Caelan Doherty, Max Goldstein, Bridget Logan, James Kyle Newman, Zia Oram, Alan Robinson, Alexandra Marie Wheatley-Diaz, and 42 others ("Plaintiffs") seek to take the first step in protecting the rights of hundreds of fellow campaign staffers who worked as Field Organizers or in similar roles on the Mike Bloomberg 2020 political campaign, as employees of Defendant Mike Bloomberg 2020, Inc. ("Bloomberg," "the Bloomberg campaign," or "the Campaign").

All of the Field Organizers at issue are former employees.[1]  This is because, despite its promises to pay staffers through November 2020, the Bloomberg campaign abruptly laid them off in late March 2020, in the middle of an unprecedented economic and public health crisis.[2] These staffers relied on the Bloomberg campaign's promises and assurances—by leaving good-paying jobs, forgoing other opportunities, canceling their health insurance, and even relocating to other states to work for Bloomberg.

Plaintiffs and other Field Organizers worked tirelessly for the Bloomberg campaign— many regularly working at least 12 hours a day, seven days a week.  Despite these long hours, Bloomberg failed to pay these staffers any overtime compensation, in violation of the Fair Labor Standards Act ("FLSA").  There is no FLSA exemption that even plausibly applies to the work of these low-level campaign staffers who performed non-exempt duties such as calling potential voters and knocking on doors.  Therefore, in addition to the promised salary and benefits that Bloomberg owes to its Field Organizers, the Bloomberg campaign is also liable to them for

---

[1]     The term "Field Organizers" is intended to include similar job titles and roles.

[2]     *See* Rebecca R. Ruiz et al., *"I'm So Sorry I Worked for this Guy": Ex-Staffers React to Bloomberg Reversal on Field Organizers*, N.Y. Times (Mar. 20, 2020), https://www.nytimes.com/2020/03/20/us/politics/michael-bloomberg-dnc.html.

significant unpaid overtime wages.

Through this motion, Plaintiffs seek to send Court-approved notice of this action to all similarly-situated Field Organizers, so they can decide whether to join the case and seek to recover their unpaid wages. Plaintiffs far exceed the "low" standard to prevail on this motion. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Through the declarations of 23 former Field Organizers from 15 states, consistent job postings, and the well-pled allegations in the First Amended Complaint, Plaintiffs demonstrate that Bloomberg subjected all Field Organizers to the same policy of failing to pay overtime for hours worked above 40 each week. Courts in this District and around the country routinely grant motions for conditional certification and authorize notice based on substantially less evidence. *See, e.g.*, *Lu v. Purple Sushi Inc.*, No. 19 Civ. 5828, 2020 WL 1303572, at *1 (S.D.N.Y. Mar. 19, 2020); *Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 17 Civ. 3556, 2019 WL 1417125, at *1 (S.D.N.Y. Mar. 29, 2019).

## PROCEDURAL HISTORY

On March 23, 2020, Plaintiff Donna Wood filed this class and collective action alleging violations of the FLSA, along with common law claims stemming from the Bloomberg campaign's mass layoffs and failure to provide employees with the compensation and benefits that were promised to them. ECF No. 1. On March 30, 2020, Ms. Wood filed a First Amended Complaint, joined by 49 additional Plaintiffs, adding state law wage-and-hour claims from seven states and additional common law claims. ECF No. 29.

Including Ms. Wood, 100 Field Organizers have already joined this case as opt-in plaintiffs. *See* ECF No. 61. Twenty-three Field Organizers from 15 states have submitted declarations of support with this motion.[3] No formal discovery has yet taken place. Decl. of Sally J. Abrahamson

---

[3] *See* Ex. 1 (Decl. of Donna Wood ("Wood Decl.")); Ex. 2 (Decl. of Cochiese Bowers ("Bowers Decl.")); Ex. 3 (Decl. of Matthew Kelly ("Kelly Decl.")); Ex. 4 (Decl. of Kyle

in Supp. of Pls.' Mot. for Conditional Certification and Authorization of Notice Pursuant to 29

U.S.C. § 216(b) ("Abrahamson Decl.") ¶ 6.

## STATEMENT OF FACTS

### I.    Bloomberg Employed and Centrally Controlled All Field Organizers.

Prior to abruptly laying off thousands of employees, the Bloomberg campaign operated in

field offices throughout the country.  ECF No. 29 (1st Am. Compl.) ¶ 134.  Using consistent job

postings, Bloomberg hired hundreds of individuals to work as Field Organizers.  As explicitly stated

in the Campaign's job postings, Field Organizers worked under the direction of one or more

Regional Organizing Directors ("ROD") in each field office, and were further directed by state-level

Directors and national campaign officials based in the Bloomberg campaign's headquarters in New

York, NY.  Ex. 24 (FO Job Posting); Ex. 25 (ROD Job Posting).[4]

---

Newman ("Newman Decl.")); Ex. 5 (Decl. of McKevin King ("King Decl.")); Ex. 6 (Decl. of Eliott Tricotti ("Tricotti Decl.")); Ex. 7 (Decl. of Zia Oram ("Oram Decl.")); Ex. 8 (Decl. of Josephine Olinger ("Olinger Decl.")); Ex. 9 (Decl. of Audra Waylett ("Waylett Decl.")); Ex. 10 (Decl. of Frida Michelle Naranjo ("Naranjo Decl.")); Ex. 11 (Decl. of Max Federman ("Federman Decl.")); Ex. 12 (Decl. of Justin Odhiambo ("Odhiambo Decl.")); Ex. 13 (Decl. of Bridget Logan ("Logan Decl.")); Ex. 14 (Decl. of Marcus Guthrie ("Guthrie Decl.")); Ex. 15 (Decl. of Rey Murphy ("Murphy Decl.")); Ex. 16 (Decl. of Alan Robinson ("Robinson Decl.")); Ex. 17 (Decl. of Audra Tellez ("Tellez Decl.")); Ex. 18 (Decl. of Caelan Doherty ("Doherty Decl.")); Ex. 19 (Decl. of Robin Ceppos ("Ceppos Decl.")); Ex. 20 (Decl. of Cooper Lewis ("Lewis Decl.")); Ex. 21 (Decl. of Eliza Fink ("Fink Decl.")); Ex. 22 (Decl. of Lakisha Watson-Moore ("Watson-Moore Decl.")); Ex. 23 (Decl. of Luke Nicholas ("Nicholas Decl.")).  All exhibits are attached to the Abrahamson Declaration.

[4]    *See also* Ex. 1 (Wood Decl.) ¶ 11-12; Ex. 2 (Bowers Decl.) ¶¶ 11-12; Ex. 3 (Kelly Decl.) ¶¶ 11-12; Ex. 4 (Newman Decl.) ¶¶ 11-12; Ex. 5 (King Decl.) ¶¶ 11-12; Ex. 6 (Tricotti Decl.) ¶¶ 11-12; Ex. 7 (Oram Decl.) ¶¶ 11-12; Ex. 8 (Olinger Decl.) ¶¶ 11-12; Ex. 9 (Waylett Decl.) ¶¶ 11-12; Ex. 10 (Naranjo Decl.) ¶¶ 11-12; Ex. 11 (Federman Decl.) ¶¶ 11-12; Ex. 12 (Odhiambo Decl.) ¶¶ 12-13; Ex. 13 (Logan Decl.) ¶¶ 11-12; Ex. 14 (Guthrie Decl.) ¶¶ 11-12; Ex. 15 (Murphy Decl.) ¶¶ 11-12; Ex. 16 (Robinson Decl.) ¶¶ 11-12; Ex. 17 (Tellez Decl.) ¶¶ 11-12; Ex. 18 (Doherty Decl.) ¶¶ 11-12; Ex. 19 (Ceppos Decl.) ¶¶ 11-12; Ex. 20 (Lewis Decl.) ¶¶11-12; Ex. 21 (Fink Decl.) ¶¶ 11-12; Ex. 22 (Watson-Moore Decl.) ¶¶ 11-12; Ex. 23 (Nicholas Decl.) ¶¶ 11-12.

The Bloomberg campaign maintained close control over its field offices nationwide.  It held mandatory weekly telephone conferences between its New York headquarters and all campaign staffers across the country.[5]  It also scheduled ad hoc national telephone conferences for campaign staffers.[6]  During these calls, the Bloomberg campaign provided updates, news, and strategy information, as well as guidance, directives, and required talking points on the campaign's policy proposals.[7]  The Bloomberg campaign also directed canvassing efforts and controlled the messaging

---

[5]        Ex. 1 (Wood Decl.) ¶¶ 15-17; Ex. 2 (Bowers Decl.) ¶¶ 15-17; Ex. 3 (Kelly Decl.) ¶¶ 15-17; Ex. 4 (Newman Decl.) ¶¶ 15-17; Ex. 5 (King Decl.) ¶¶ 15-17; Ex. 6 (Tricotti Decl.) ¶¶ 15-17; Ex. 7 (Oram Decl.) ¶¶ 15-17; Ex. 8 (Olinger Decl.) ¶¶ 15-17; Ex. 9 (Waylett Decl.) ¶¶ 15-17; Ex. 10 (Naranjo Decl.) ¶¶ 15-17; Ex. 11 (Federman Decl.) ¶¶ 15-17; Ex. 12 (Odhiambo Decl.) ¶¶ 16-18; Ex. 13 (Logan Decl.) ¶¶ 15-17; Ex. 14 (Guthrie Decl.) ¶¶ 15-17; Ex. 15 (Murphy Decl.) ¶¶ 15-17; Ex. 16 (Robinson Decl.) ¶¶ 15-17; Ex. 17 (Tellez Decl.) ¶¶ 15-17; Ex. 18 (Doherty Decl.) ¶¶ 15-17; Ex. 19 (Ceppos Decl.) ¶¶ 15-17; Ex. 20 (Lewis Decl.) ¶¶ 15-17; Ex. 21 (Fink Decl.) ¶¶ 15-17; Ex. 22 (Watson-Moore Decl.) ¶¶ 15-17; Ex. 23 (Nicholas Decl.) ¶¶ 15-17.

[6]        Ex. 1 (Wood Decl.) ¶¶ 15-17; Ex. 2 (Bowers Decl.) ¶¶ 15-17; Ex. 3 (Kelly Decl.) ¶¶ 15-17; Ex. 4 (Newman Decl.) ¶¶ 15-17; Ex. 5 (King Decl.) ¶¶ 15-17; Ex. 6 (Tricotti Decl.) ¶¶ 15-17; Ex. 7 (Oram Decl.) ¶¶ 15-17; Ex. 8 (Olinger Decl.) ¶¶ 15-17; Ex. 9 (Waylett Decl.) ¶¶ 15-17; Ex. 10 (Naranjo Decl.) ¶¶ 15-17; Ex. 11 (Federman Decl.) ¶¶ 15-17; Ex. 12 (Odhiambo Decl.) ¶¶ 16-18; Ex. 13 (Logan Decl.) ¶¶ 15-17; Ex. 14 (Guthrie Decl.) ¶¶ 15-17; Ex. 15 (Murphy Decl.) ¶¶ 15-17; Ex. 16 (Robinson Decl.) ¶¶ 15-17; Ex. 17 (Tellez Decl.) ¶¶ 15-17; Ex. 18 (Doherty Decl.) ¶¶ 15-17; Ex. 19 (Ceppos Decl.) ¶¶ 15-17; Ex. 20 (Lewis Decl.) ¶¶ 15-17; Ex. 21 (Fink Decl.) ¶¶ 15-17; Ex. 22 (Watson-Moore Decl.) ¶¶ 15-17; Ex. 23 (Nicholas Decl.) ¶¶ 15-17.

[7]        Ex. 1 (Wood Decl.) ¶ 15-17; Ex. 2 (Bowers Decl.) ¶¶ 15-17; Ex. 3 (Kelly Decl.) ¶¶ 15-17; Ex. 4 (Newman Decl.) ¶¶ 15-17; Ex. 5 (King Decl.) ¶¶ 15-17; Ex. 6 (Tricotti Decl.) ¶¶ 15-17; Ex. 7 (Oram Decl.) ¶¶ 15-17; Ex. 8 (Olinger Decl.) ¶¶ 15-17; Ex. 9 (Waylett Decl.) ¶¶ 15-17; Ex. 10 (Naranjo Decl.) ¶¶ 15-17; Ex. 11 (Federman Decl.) ¶¶ 15-17; Ex. 12 (Odhiambo Decl.) ¶¶ 16-18; Ex. 13 (Logan Decl.) ¶¶ 15-17; Ex. 14 (Guthrie Decl.) ¶¶ 15-17; Ex. 15 (Murphy Decl.) ¶¶ 15-17; Ex. 16 (Robinson Decl.) ¶¶ 15-17; Ex. 17 (Tellez Decl.) ¶¶ 15-17; Ex. 18 (Doherty Decl.) ¶¶ 15-17; Ex. 19 (Ceppos Decl.) ¶¶ 15-17; Ex. 20 (Lewis Decl.) ¶¶ 15-17; Ex. 21 (Fink Decl.) ¶¶ 15-17; Ex. 22 (Watson-Moore Decl.) ¶¶ 15-17; Ex. 23 (Nicholas Decl.) ¶¶ 15-17.

to voters, including creating a script for staffers to use when communicating with potential voters by telephone.[8]

## II.   Bloomberg Uniformly Classified All Field Organizers as Exempt from Overtime and Required Significant Overtime Work.

The Bloomberg campaign maintained uniform employment policies for Plaintiffs and all other Field Organizers, with no variation between states or offices.  The FO job posting advertised a set amount of monthly compensation, regardless of location.  Ex. 24 (FO Job Posting).  Bloomberg uniformly classified Plaintiffs and Field Organizers as exempt from the overtime requirements of the FLSA and did not pay overtime wages for hours worked beyond 40 in a workweek.[9]

Bloomberg also required Plaintiffs and Field Organizers to work well over 40 hours each week.  In accordance with the FO job posting requiring "long hours and weekends," Ex. 24 (FO Job Posting), Plaintiffs usually exceeded 70 hours per week and never received overtime pay.[10]

---

[8]     Ex. 1 (Wood Decl.) ¶ 14; Ex. 2 (Bowers Decl.) ¶ 14; Ex. 3 (Kelly Decl.) ¶ 14; Ex. 4 (Newman Decl.) ¶ 14; Ex. 5 (King Decl.) ¶ 14; Ex. 6 (Tricotti Decl.) ¶ 14; Ex. 7 (Oram Decl.) ¶ 14; Ex. 8 (Olinger Decl.) ¶ 14; Ex. 9 (Waylett Decl.) ¶ 14; Ex. 10 (Naranjo Decl.) ¶ 14; Ex. 11 (Federman Decl.) ¶ 14; Ex. 12 (Odhiambo Decl.) ¶ 15; Ex. 13 (Logan Decl.) ¶ 14; Ex. 14 (Guthrie Decl.) ¶ 14; Ex. 15 (Murphy Decl.) ¶ 14; Ex. 16 (Robinson Decl.) ¶ 14; Ex. 17 (Tellez Decl.) ¶ 14; Ex. 18 (Doherty Decl.) ¶ 14; Ex. 19 (Ceppos Decl.) ¶ 14; Ex. 20 (Lewis Decl.) ¶ 14; Ex. 21 (Fink Decl.) ¶ 14; Ex. 22 (Watson-Moore Decl.) ¶ 14; Ex. 23 (Nicholas Decl.) ¶ 14.

[9]     Ex. 1 (Wood Decl.) ¶¶ 8, 20-21; Ex. 2 (Bowers Decl.) ¶¶ 8, 20-21; Ex. 3 (Kelly Decl.) ¶¶ 8, 20-21; Ex. 4 (Newman Decl.) ¶¶ 8, 20-21; Ex. 5 (King Decl.) ¶¶ 8, 20-21; Ex. 6 (Tricotti Decl.) ¶¶ 8, 20-21; Ex. 7 (Oram Decl.) ¶¶ 8, 20-21; Ex. 8 (Olinger Decl.) ¶¶ 8, 20-22; Ex. 9 (Waylett Decl.) ¶¶ 8, 20-21; Ex. 10 (Naranjo Decl.) ¶¶ 8, 20-21; Ex. 11 (Federman Decl.) ¶¶ 8, 20-21; Ex. 12 (Odhiambo Decl.) ¶¶ 8, 21-22; Ex. 13 (Logan Decl.) ¶¶ 8, 20-21; Ex. 14 (Guthrie Decl.) ¶¶ 8, 20-21; Ex. 15 (Murphy Decl.) ¶¶ 8, 19-20; Ex. 16 (Robinson Decl.) ¶¶ 8, 20-21; Ex. 17 (Tellez Decl.) ¶¶ 8, 20-22; Ex. 18 (Doherty Decl.) ¶¶ 8, 20-22; Ex. 19 (Ceppos Decl.) ¶¶ 8, 20-21; Ex. 20 (Lewis Decl.) ¶¶ 8, 20-21; Ex. 21 (Fink Decl.) ¶¶ 8, 20-21; Ex. 22 (Watson-Moore Decl.) ¶¶ 8, 20-21; Ex. 23 (Nicholas Decl.) ¶¶ 8, 20-21.

[10]    Ex. 1 (Wood Decl.) ¶ 8; Ex. 2 (Bowers Decl.) ¶ 8; Ex. 3 (Kelly Decl.) ¶ 8; Ex. 4 (Newman Decl.) ¶ 8; Ex. 5 (King Decl.) ¶ 8; Ex. 6 (Tricotti Decl.) ¶ 8; Ex. 7 (Oram Decl.) ¶ 8; Ex. 8 (Olinger Decl.) ¶ 8; Ex. 9 (Waylett Decl.) ¶ 8; Ex. 10 (Naranjo Decl.) ¶ 8; Ex. 11 (Federman Decl.) ¶ 8; Ex. 12 (Odhiambo Decl.) ¶ 8; Ex. 13 (Logan Decl.) ¶ 8; Ex. 14 (Guthrie Decl.) ¶ 8; Ex. 15 (Murphy Decl.) ¶ 8; Ex. 16 (Robinson Decl.) ¶ 8; Ex. 17 (Tellez Decl.) ¶ 8; Ex. 18 (Doherty Decl.) ¶ 8; Ex. 19 (Ceppos Decl.) ¶ 8; Ex. 20 (Lewis Decl.) ¶ 8; Ex. 21 (Fink

Plaintiffs and Field Organizers were required to work fixed schedules that were set by the campaign, usually starting at 8 a.m. or 9 a.m. and working until 8 p.m. or 9 p.m., every day of the week.[11]

### III.   All Field Organizers Had the Same Primary Job Duties.

All Bloomberg campaign Field Organizers performed the same job duties: contacting potential voters by phone or in person to promote the campaign and encourage individuals to vote for Michael Bloomberg.[12]  Consistent with its uniform job description, Bloomberg subjected all of its Field Organizers to the same rules and policies that dictated how they performed their jobs.

The Field Organizer position did not require any specific education or training.  *See* Ex. 24 (FO Job Posting).[13]  Instead, the Bloomberg campaign provided all necessary training through an

---

Decl.) ¶ 8; Ex. 22 (Watson-Moore Decl.) ¶ 8; Ex. 23 (Nicholas Decl.) ¶ 8.

[11]      Ex. 1 (Wood Decl.) ¶¶ 7, 11; Ex. 2 (Bowers Decl.) ¶¶ 7, 11; Ex. 3 (Kelly Decl.) ¶¶ 7, 11; Ex. 4 (Newman Decl.) ¶¶ 7, 11; Ex. 5 (King Decl.) ¶¶ 7, 11; Ex. 6 (Tricotti Decl.) ¶¶ 7, 11; Ex. 7 (Oram Decl.) ¶¶ 7, 11; Ex. 8 (Olinger Decl.) ¶¶ 7, 11; Ex. 9 (Waylett Decl.) ¶¶ 7, 11; Ex. 10 (Naranjo Decl.) ¶¶ 7, 11; Ex. 11 (Federman Decl.) ¶¶ 7, 11; Ex. 12 (Odhiambo Decl.) ¶¶ 7, 12; Ex. 13 (Logan Decl.) ¶¶ 7, 11; Ex. 14 (Guthrie Decl.) ¶¶ 7, 11; Ex. 15 (Murphy Decl.) ¶¶ 7, 11; Ex. 16 (Robinson Decl.) ¶¶ 7, 11; Ex. 17 (Tellez Decl.) ¶¶ 7, 11; Ex. 18 (Doherty Decl.) ¶¶ 7, 11; Ex. 19 (Ceppos Decl.) ¶¶ 7, 11; Ex. 20 (Lewis Decl.) ¶¶ 7, 11; Ex. 21 (Fink Decl.) ¶¶ 7, 11; Ex. 22 (Watson-Moore Decl.) ¶¶ 7, 11; Ex. 23 (Nicholas Decl.) ¶¶ 7, 11.

[12]      Ex. 1 (Wood Decl.) ¶¶ 9-10; Ex. 2 (Bowers Decl.) ¶¶ 9-10; Ex. 3 (Kelly Decl.) ¶¶ 9-10; Ex. 4 (Newman Decl.) ¶¶ 9-10; Ex. 5 (King Decl.) ¶¶ 9-10; Ex. 6 (Tricotti Decl.) ¶¶ 9-10; Ex. 7 (Oram Decl.) ¶¶ 9-10; Ex. 8 (Olinger Decl.) ¶¶ 9-10; Ex. 9 (Waylett Decl.) ¶¶ 9-10; Ex. 10 (Naranjo Decl.) ¶¶ 9-10; Ex. 11 (Federman Decl.) ¶¶ 9-10; Ex. 12 (Odhiambo Decl.) ¶¶ 9-11; Ex. 13 (Logan Decl.) ¶¶ 9-10; Ex. 14 (Guthrie Decl.) ¶¶ 9-10; Ex. 15 (Murphy Decl.) ¶¶ 9-10; Ex. 16 (Robinson Decl.) ¶¶ 9-10; Ex. 17 (Tellez Decl.) ¶¶ 9-10; Ex. 18 (Doherty Decl.) ¶¶ 9-10; Ex. 19 (Ceppos Decl.) ¶¶ 9-10; Ex. 20 (Lewis Decl.) ¶¶ 9-10; Ex. 21 (Fink Decl.) ¶¶ 9-10; Ex. 22 (Watson-Moore Decl.) ¶¶ 9-10; Ex. 23 (Nicholas Decl.) ¶¶ 9-10.

[13]      *See also* Ex. 1 (Wood Decl.) ¶ 13; Ex. 2 (Bowers Decl.) ¶ 13; Ex. 3 (Kelly Decl.) ¶ 13; Ex. 4 (Newman Decl.) ¶ 13; Ex. 5 (King Decl.) ¶ 13; Ex. 6 (Tricotti Decl.) ¶ 13; Ex. 7 (Oram Decl.) ¶ 13; Ex. 8 (Olinger Decl.) ¶ 13; Ex. 9 (Waylett Decl.) ¶ 13; Ex. 10 (Naranjo Decl.) ¶ 13; Ex. 11 (Federman Decl.) ¶ 13; Ex. 12 (Odhiambo Decl.) ¶ 14; Ex. 13 (Logan Decl.) ¶ 13; Ex. 14 (Guthrie Decl.) ¶ 13; Ex. 15 (Murphy Decl.) ¶ 13; Ex. 16 (Robinson Decl.) ¶ 13; Ex. 17 (Tellez Decl.) ¶ 13; Ex. 18 (Doherty Decl.) ¶ 13 Ex. 19 (Ceppos Decl.) ¶ 13; Ex. 20 (Lewis Decl.) ¶ 13; Ex. 21 (Fink Decl.) ¶ 13; Ex. 22 (Watson-Moore Decl.) ¶ 13; Ex. 23 (Nicholas Decl.) ¶ 13.

orientation soon after hire, and subsequent instructions, guidance, scripts, and detailed talking points.[14]  Field Organizers spent the vast majority of their time in campaign offices speaking to voters by phone or canvassing assigned neighborhoods to speak with voters in person.[15]  Field organizers were required to input information about the voters they contacted in centralized databases on a daily basis using campaign-issued phones and laptops.  *See* Ex. 24 (FO Job Posting) (noting that all voter contact "will be reported and tracked").

Field Organizers were not managers and did not have authority to make decisions on any matters of significance with respect to campaign staffing, strategy, or operations.  *See id.* (stating that FOs "execute the overall field strategy" and "report to the Regional Organizing Director").[16]  These decisions were made by officials in the campaign's New York headquarters.  They could not hire, fire, or discipline other employees, nor could they set other employees' schedules.[17]  Instead,

---

[14]     Ex. 1 (Wood Decl.) ¶¶ 13-14; Ex. 2 (Bowers Decl.) ¶¶ 13-14; Ex. 3 (Kelly Decl.) ¶¶ 13-14; Ex. 4 (Newman Decl.) ¶¶ 13-14; Ex. 5 (King Decl.) ¶¶ 13-14; Ex. 6 (Tricotti Decl.) ¶¶ 13-14; Ex. 7 (Oram Decl.) ¶¶ 13-14; Ex. 8 (Olinger Decl.) ¶¶ 13-14; Ex. 9 (Waylett Decl.) ¶¶ 13-14; Ex. 10 (Naranjo Decl.) ¶¶ 13-14; Ex. 11 (Federman Decl.) ¶¶ 13-14; Ex. 12 (Odhiambo Decl.) ¶¶ 14-15; Ex. 13 (Logan Decl.) ¶¶ 13-14; Ex. 14 (Guthrie Decl.) ¶¶ 13-14; Ex. 15 (Murphy Decl.) ¶¶ 13-14; Ex. 16 (Robinson Decl.) ¶¶ 13-14; Ex. 17 (Tellez Decl.) ¶¶ 13-14; Ex. 18 (Doherty Decl.) ¶¶ 13-14; Ex. 19 (Ceppos Decl.) ¶¶ 13-14; Ex. 20 (Lewis Decl.) ¶¶ 13-14; Ex. 21 (Fink Decl.) ¶¶ 13-14; Ex. 22 (Watson-Moore Decl.) ¶¶ 13-14; Ex. 23 (Nicholas Decl.) ¶¶ 13-14.

[15]     Ex. 1 (Wood Decl.) ¶ 9; Ex. 2 (Bowers Decl.) ¶ 9; Ex. 3 (Kelly Decl.) ¶ 9; Ex. 4 (Newman Decl.) ¶ 9; Ex. 5 (King Decl.) ¶ 9; Ex. 6 (Tricotti Decl.) ¶ 9; Ex. 7 (Oram Decl.) ¶ 9; Ex. 8 (Olinger Decl.) ¶ 9; Ex. 9 (Waylett Decl.) ¶ 9; Ex. 10 (Naranjo Decl.) ¶ 9; Ex. 11 (Federman Decl.) ¶ 9; Ex. 12 (Odhiambo Decl.) ¶¶ 9-10; Ex. 13 (Logan Decl.) ¶ 9; Ex. 14 (Guthrie Decl.) ¶ 9; Ex. 15 (Murphy Decl.) ¶ 9; Ex. 16 (Robinson Decl.) ¶ 9; Ex. 17 (Tellez Decl.) ¶ 9; Ex. 18 (Doherty Decl.) ¶ 9; Ex. 19 (Ceppos Decl.) ¶ 9; Ex. 20 (Lewis Decl.) ¶ 9; Ex. 21 (Fink Decl.) ¶ 9; Ex. 22 (Watson-Moore Decl.) ¶ 9; Ex. 23 (Nicholas Decl.) ¶ 9.

[16]     Ex. 1 (Wood Decl.) ¶ 12; Ex. 2 (Bowers Decl.) ¶ 12; Ex. 3 (Kelly Decl.) ¶ 12; Ex. 4 (Newman Decl.) ¶ 12; Ex. 5 (King Decl.) ¶ 12; Ex. 6 (Tricotti Decl.) ¶ 12; Ex. 7 (Oram Decl.) ¶ 12; Ex. 8 (Olinger Decl.) ¶ 12; Ex. 9 (Waylett Decl.) ¶ 12; Ex. 10 (Naranjo Decl.) ¶ 12; Ex. 11 (Federman Decl.) ¶ 12; Ex. 12 (Odhiambo Decl.) ¶ 13; Ex. 13 (Logan Decl.) ¶ 12; Ex. 14 (Guthrie Decl.) ¶ 12; Ex. 15 (Murphy Decl.) ¶ 12; Ex. 16 (Robinson Decl.) ¶ 12; Ex. 17 (Tellez Decl.) ¶ 12; Ex. 18 (Doherty Decl.) ¶ 12; Ex. 19 (Ceppos Decl.) ¶ 12; Ex. 20 (Lewis Decl.) ¶ 12; Ex. 21 (Fink Decl.) ¶ 12; Ex. 22 (Watson-Moore Decl.) ¶ 12; Ex. 23 (Nicholas Decl.) ¶ 12.

[17]     Ex. 1 (Wood Decl.) ¶ 11; Ex. 2 (Bowers Decl.) ¶ 11; Ex. 3 (Kelly Decl.) ¶ 11; Ex. 4

all such decisions were made by a state Director or a Regional Organizing Director in the field

office.  Ex. 25 (ROD Job Posting) (ROD's "responsibilities will include: . . . [h]iring, leading,

training and mentoring field team").[18]

## ARGUMENT

## I.    Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Goals.

The FLSA authorizes private parties to bring an overtime claim "[o]n behalf of . . .

themselves and other employees similarly situated."  29 U.S.C. § 216(b).  As the Second Circuit

recently recognized, "[r]ather than providing for a mere procedural mechanism, as is the case

with Rule 23, § 216(b) establishes a "right . . . to bring an action by or on behalf of any

employee, and [a] right of any employee to become a party plaintiff to any such action," so long

as certain preconditions are met.  *Scott v. Chipotle Mexican Grill, Inc.*, --- F.3d ----, 2020 WL

1541069, at *8 (2d Cir. Apr. 1, 2020).  In furtherance of the FLSA's "broad remedial purpose,"

*Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), courts have

discretion to implement Section 216(b) by facilitating notice to potential collective members,

*Myers*, 624 F.3d at 554 ("[D]istrict courts have 'discretion, in appropriate cases, to implement

---

(Newman Decl.) ¶ 11; Ex. 5 (King Decl.) ¶ 11; Ex. 6 (Tricotti Decl.) ¶ 11; Ex. 7 (Oram Decl.) ¶ 11; Ex. 8 (Olinger Decl.) ¶ 11; Ex. 9 (Waylett Decl.) ¶ 11; Ex. 10 (Naranjo Decl.) ¶ 11; Ex. 11 (Federman Decl.) ¶ 11; Ex. 12 (Odhiambo Decl.) ¶ 12; Ex. 13 (Logan Decl.) ¶ 11; Ex. 14 (Guthrie Decl.) ¶ 11; Ex. 15 (Murphy Decl.) ¶ 11; Ex. 16 (Robinson Decl.) ¶ 11; Ex. 17 (Tellez Decl.) ¶ 11; Ex. 18 (Doherty Decl.) ¶ 11; Ex. 19 (Ceppos Decl.) ¶ 11; Ex. 20 (Lewis Decl.) ¶ 11; Ex. 21 (Fink Decl.) ¶ 11; Ex. 22 (Watson-Moore Decl.) ¶ 11; Ex. 23 (Nicholas Decl.) ¶ 11.

[18]    *See also* Ex. 1 (Wood Decl.) ¶¶ 11-12; Ex. 2 (Bowers Decl.) ¶¶ 11-12; Ex. 3 (Kelly Decl.) ¶¶ 11-12; Ex. 4 (Newman Decl.) ¶¶ 11-12; Ex. 5 (King Decl.) ¶¶ 11-12; Ex. 6 (Tricotti Decl.) ¶¶ 11-12; Ex. 7 (Oram Decl.) ¶¶ 11-12; Ex. 8 (Olinger Decl.) ¶¶ 11-12; Ex. 9 (Waylett Decl.) ¶¶ 11-12; Ex. 10 (Naranjo Decl.) ¶¶ 11-12; Ex. 11 (Federman Decl.) ¶¶ 11-12; Ex. 12 (Odhiambo Decl.) ¶¶ 12-13; Ex. 13 (Logan Decl.) ¶¶ 11-12; Ex. 14 (Guthrie Decl.) ¶¶ 11-12; Ex. 15 (Murphy Decl.) ¶¶ 11-12; Ex. 16 (Robinson Decl.) ¶¶ 11-12; Ex. 17 (Tellez Decl.) ¶¶ 11-12; Ex. 18 (Doherty Decl.) ¶¶ 11-12; Ex. 19 (Ceppos Decl.) ¶¶ 11-12; Ex. 20 (Lewis Decl.) ¶¶ 11-12; Ex. 21 (Fink Decl.) ¶¶ 11-12; Ex. 22 (Watson-Moore Decl.) ¶¶ 11-12; Ex. 23 (Nicholas Decl.) ¶¶ 11-12.

[§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." (alteration in original)); *Purple Sushi*, 2020 WL 1303572, at *2; *Bimbo Foods*, 2019 WL 1417125, at *1; *Djurdjevich v. Flat Rate Movers, Ltd.*, No. 17 Civ. 261, 2018 WL 5919519, at *1 (S.D.N.Y. Nov. 13, 2018).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by . . . pooling . . . resources," and enable the "efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Nationwide notice here will provide collective members with a single forum in which to determine whether the Bloomberg campaign's overtime policies were lawful. Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). The FLSA statute of limitations runs until an employee files a consent form. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Time is of the essence because Field Organizers' claims are diminished or extinguished every day. Timely notice "will facilitate swift and economic justice," *Purple Sushi*, 2020 WL 1303572, at *2, and is necessary to effectuate the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at 336.

## II.     Plaintiffs Exceed the Low Burden for Sending Notice.

### A.     Plaintiffs Face a Low Burden of Proof at the Notice Phase.

Courts in the Second Circuit employ a two-step approach when considering a motion for conditional certification. *Chipotle*, 2020 WL 1541069, at *8-9; *Myers*, 624 F.3d at 554-55. At the initial "notice stage," plaintiffs must establish that other employees "may be similarly situated" to them. *Myers*, 624 F.3d *at* 555. "[T]o be "similarly situated" means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Chipotle*, 2020 WL 1541069, at *9. "Nothing more is needed at this stage of the litigation."

*Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).  In

an FLSA exemption case, plaintiffs can meet their burden "by making some showing that 'there

are other employees . . . who are similarly situated with respect to their job requirements and

with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based,

who are classified as exempt pursuant to a common policy or scheme."  *Myers*, 624 F.3d at 555

(quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

        At this initial stage, Plaintiffs face a "low standard of proof" and need only make a "modest

factual showing" that they and others are similarly situated.  *Id.*  This is because "the purpose of

[the] first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."  *Id.*

Accordingly, at this stage, "before discovery is complete, the evidentiary standard is lenient and the

Court does not decide issues on the merits or resolve factual disputes."  *Bimbo Foods*, 2019 WL

1417125, at *1 (citation omitted) (quoting *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334,

336 (W.D.N.Y. 2008)); *see also Shajan*, 2010 WL 2218095, at *1 (at this stage, "[w]eighing of the

merits is absolutely inappropriate").  At the second stage, based on a fuller record, the district court

may determine that the plaintiffs who opted in are in fact not similarly situated and can then

decertify the collective.  *Myers*, 624 F.3d at 555.  Accordingly, "courts generally grant conditional

certification" because "the determination that plaintiffs are similarly situated is merely a

preliminary one."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158-59 (S.D.N.Y. 2014).

        Plaintiffs submit sufficient evidence to meet the minimal standard required for conditional

certification.  Courts in this Circuit regularly grant conditional certification based on the allegations

of the complaint and employee declarations.  *See, e.g.*, *Purple Sushi*, 2020 WL 1303572, at *3

("In keeping with the minimal showing standard, FLSA collective actions have been

conditionally certified upon a single plaintiff's affidavit.") (collecting cases and conditionally

certifying collective based on two declarations); *Bimbo Foods*, 2019 WL 1417125, at *2 (conditionally certifying collective based on four declarations); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010) (requiring any more than the pleadings and concise affidavits "would undermine the purpose of the FLSA and . . . be inconsistent with the level of specificity that courts consistently require at the notice stage" (citation omitted)); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (conditionally certifying collective based on complaint and plaintiff's declaration); *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) (same based upon a single affidavit and deposition testimony); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (same with three affidavits and complaint's allegations); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (same with three affidavits).

### B. Plaintiffs Comfortably Meet Their Burden.

#### 1. Plaintiffs and Field Organizers Are Similarly Situated With Respect to Their FLSA Claims.

Plaintiffs challenge the Bloomberg campaign's straightforward, uniform, and unlawful policy—its classification of all Field Organizers across the country as exempt from the FLSA's overtime requirements, and its subsequent failure to pay them overtime as required under 29 U.S.C. § 207(a)(1). This is precisely the type of claim that the Second Circuit has recognized as being appropriate for conditional certification. *Myers*, 624 F.3d at 555 ("In a FLSA exemption case, plaintiffs [can meet their burden] by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." (quoting *Morgan*, 551 F.3d at 1259)).

11

Courts have held that a "blanket" classification policy, like the Bloomberg campaign's policy of paying all Field Organizers a fixed salary without overtime, can meet the low threshold for conditional certification without much more. *See, e.g.*, *Flat Rate Movers*, 2018 WL 5919519, at *2 (finding that "[p]laintiff has made a 'modest factual showing' that he and prospective collective action members 'were victims of a common policy or plan that violated the law'" based on allegations in complaint and four declarations (quoting *Myers*, 624 F.3d at 554-55)).

Plaintiffs' showing is sufficient to meet their low burden. Plaintiffs allege that they and other Field Organizers were all subject to Bloomberg's unlawful policy of misclassifying Field Organizers as exempt from FLSA's overtime requirements and not paying them overtime wages for the hours they worked above 40 in a workweek. ECF No. 29 (1st Am. Compl.) ¶¶ 144-52. Plaintiffs support their allegations with uniform job postings and the declarations of 23 Field Organizers with similar experiences in 15 different states. *See supra* Statement of Facts ("SOF") §§ I-II. This evidence shows that all Field Organizers were subject to the same compensation policies, were all paid a salary, worked overtime hours, and were not paid overtime wages. This showing is sufficient to satisfy even the second-stage standard recently announced by the Second Circuit. *See Chipotle*, 2020 WL 1541069, at *9. Therefore, Plaintiffs and other Field Organizers are similarly situated with respect to their FLSA claims.

### 2. Field Organizers Are Similarly Situated With Respect to Their Job Duties.

Plaintiffs additionally satisfy their burden of establishing that they and other Field Organizers share similar job duties. In addition to their allegations in the Complaint, Plaintiffs provide the Field Organizer nationwide job posting describing uniform job expectations, the declarations of 23 Field Organizers in 15 states, who state that they all performed the same non-exempt duties—specifically, calling assigned voters and knocking on doors—and the Regional

12

Organizing Director job posting, which explicitly states that the ROD position, not Field

Organizers, perform the exempt duties of "managing" and "hiring, leading, training and mentoring."

*See supra* SOF §§ I-III.

Courts routinely grant conditional certification where plaintiffs present similar job

descriptions and other evidence of common job duties.  *See, e.g.*, *Bimbo Foods*, 2019 WL 1417125,

at *2 (plaintiffs established that collective members had "similar job requirements" with four

declarations); *Flat Rate Movers*, 2018 WL 5919519, at *3 (same); *see also Cohen*, 686 F. Supp. 2d

at 330-31 (granting conditional certification based on complaint and two affidavits alleging that

plaintiff and potential opt-ins had similar job duties and were classified as exempt); *Indergit v. Rite*

*Aid Corp.*, Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010).

As stated above, this showing is sufficient to satisfy even the second-stage.  *See Chipotle*, 2020 WL

1541069, at *9.

### 3.     At This Stage, the Court Does Not Resolve Factual Disputes or Address Merits Issues.

The Bloomberg campaign may claim that its exemption defense precludes a collective

action because it requires "fact-specific inquiries" of the tasks that every Field Organizer performed

or that purported differences between putative collective members precludes conditional

certification.  However, "[t]his argument ignores the purposes of the FLSA."  *Indergit*, 2010 WL

2465488, at *9.  Even at the second stage, the Second Circuit recently noted "that if named plaintiffs

and party plaintiffs share legal or factual similarities material to the disposition of their claims [and

therefore may proceed as a collective], 'dissimilarities in other respects should not defeat collective

treatment.'"  *Chipotle*, 2020 WL 1541069, at *9 (quoting *Campbell v. City of Los Angeles*, 903 F.3d

1090, 1114 (9th Cir. 2018)).  "Just because the inquiry is fact-intensive does not preclude a

collective action where plaintiffs share common job traits."  *Morgan*, 551 F.3d at 1263; *see also*

13

*O'Conner v. Agilant Solutions, Inc.*, 419 F. Supp. 3d 739, 739 (S.D.N.Y. 2019) (rejecting argument "that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable" as courts "put these issues off until the decertification stage, when discovery is complete" (quoting *Barry v. S.E.B. Serv. of N.Y., Inc.*, No. 11 Civ. 5089, 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013))); *Walston v. Edward J. Young, Inc.*, No. 15 Civ. 457, 2016 WL 3906522, at *6 (E.D.N.Y. Feb. 22, 2016) ("Ultimately, the issue of whether or not one or more exemptions to the FLSA apply in this case present[s] factual matters that are inappropriate to decide in the context of a motion for conditional collective action certification."); *Varghese v. JP Morgan Chase & Co.*, Nos. 14 Civ. 1718, 15 Civ. 3023, 2016 WL 4718413, at *6 (S.D.N.Y. Sept. 9, 2016) (same).  "[S]ection 216(b) clearly applies to misclassification claims as well as other FLSA claims. Had Congress intended to exclude misclassification claims from collective actions, it would have done so."  *Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 218 (D. Conn. 2009).

Accordingly, courts in this Circuit have rejected the argument that the fact-intensive nature of exemption defenses precludes conditional certification.  *Cohen*, 686 F. Supp. 2d at 329-30 (listing cases).  In fact, courts routinely grant conditional certification in misclassification cases in this District.  *See, e.g.*, *Bimbo Foods*, 2019 WL 1417125, at *3 (conditionally certifying collective of food distributors); *Mason v. Lumber Liquidators, Inc.*, No. 17 Civ. 4780, 2019 WL 2088609, at *1 (E.D.N.Y. May 13, 2019) (same for nationwide collective of store managers); *Flat Rate Movers*, 2018 WL 5919519, at *1 (same for furniture movers); *Strauch v. Computer Sciences Corp.*, No. 14 Civ. 965, 2015 WL 3727804, at *1 (D. Conn. June 9, 2015) (same for nationwide collective of IT systems administrators); *Cruz v. Hook-Superx, LLC*, No. 09 Civ. 7717, 2010 WL 3069558, at *2 (S.D.N.Y. Aug. 5, 2010) (same for nationwide collective of CVS assistant store managers); *Indergit*, 2010 WL 2465488, at *10 (same for drug store managers and assistant managers); *Cohen*,

686 F. Supp. 2d at 320 (same for misclassified research associates); *Francis*, 2008 WL 4619858, at *3 (same for misclassified retail store assistant managers).

The proper focus here is on Plaintiffs' submissions and whether they meet the low burden required for notice to issue.  *See Bimbo Foods*, 2019 WL 1417125, *3 (rejecting defendants' argument that more is required "beyond the pleadings and affidavits submitted by Plaintiffs" at the conditional certification stage).  Later in this case, at the second stage, the Bloomberg campaign "may move for decertification, at which point the court will determine on a fuller record" whether collective members are, in fact, similarly situated.  *Lumber Liquidators*, 2019 WL 2088609, at *6; *see also Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *7 (S.D.N.Y. Oct. 5, 2006) (defendant will have "ample opportunity" to try to demonstrate that Plaintiffs' case should not proceed as a collective action).

Because Plaintiffs have more than satisfied their minimal burden at this stage, Plaintiffs respectfully request that the Court conditionally certify the collective of Field Organizers.

## III.   The Court Should Approve Plaintiffs' Proposed Notice and the Plan for its Distribution.

Plaintiffs further request that the Court authorize them to send the Proposed Notice, attached to the Abrahamson Declaration as Exhibit 26, to all individuals who have worked as Bloomberg campaign Field Organizers nationwide between November 24, 2019 and the present.  The Proposed Notice is "timely, accurate, and informative," and therefore should be approved.  *Hoffmann-La Roche*, 493 U.S. at 172.  The Proposed Notice gives Collective Members 60 days to opt in to the FLSA collective (or 60 days from a re-mailing).

Plaintiffs ask that the Court authorize notice to be sent via U.S. Mail, e-mail, and text message.  *See Zhang v. Ichiban Grp., LLC*, No. 17 Civ. 148, 2020 WL 1030651, at *10 (N.D.N.Y. Mar. 3, 2020) (approving notice by mail, e-mail, and text message); *Djurdjevich v. Flat Rate*

*Movers, Ltd.*, No. 17 Civ. 261, 2019 WL 125888, at *3 (S.D.N.Y. Jan. 7, 2019) (approving e-mail notice and noting that "[c]ourts in this district regularly permit notice . . . by email"); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16 Civ. 473, 2016 WL 4533574, at *6 (S.D.N.Y. Aug. 24, 2016) ("Email addresses and telephone numbers are efficient methods of providing notice, and in this day and age, they are often more effective than traditional mail."); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14 Civ. 2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (approving text message notice); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (approving email and text message notice as "eminently reasonable" given that "[t]his has become a much more mobile society" and email and phones "serv[e] as the most consistent and reliable method of communication").  Sending notice by e-mail and text message, in addition to U.S. Mail, is especially appropriate here where Field Organizers moved for their positions on the Bloomberg campaign and likely were forced to move again to different addresses recently following the campaign's mass layoffs.  Further, given the unprecedented impact of the Coronavirus pandemic on individuals' lives and living arrangements, notice by e-mail and text message is especially appropriate.

Plaintiffs also request that the Court authorize a reminder notice, via postcard, e-mail, and text (i.e., the same methods of communication) to be sent to Collective Members who have not yet returned Consent to Join Forms halfway through the notice period.  *See* Ex. 27 (Proposed Reminder Notice).  Reminder notices are common and cause defendants no prejudice.  *See, e.g.*, *Salsa Con Fuego*, 2016 WL 4533574, at *8 (approving reminder notice and collecting cases for same).

Plaintiffs further request that the Court authorize notice to be posted on a standalone website through which opt-ins can electronically submit consent to join forms.  Courts allow this in order to provide opt-ins with easy access to information and an easy method by which to opt-in if they so

choose.  *See, e.g.*, *Ichiban Grp.*, 2020 WL 1030651, at *10 (approving notice website and collecting cases); *JP Morgan Chase*, 2016 WL 4718413, at *9 (same, given that the "same logic supports dissemination of notice via website" as by email "given the reality of communications today" (citation omitted)).

Finally, Plaintiffs request that the Court order Bloomberg to produce the names, last known mailing addresses, last known telephone numbers, last known personal email addresses, work locations, and dates of employment at each location, for all Collective Members, and the last four digits of Social Security numbers for those members whose notices are returned undeliverable. Production of such information is standard in FLSA cases in the Second Circuit because it facilitates locating collective members and ensuring that they receive timely notice.  *See, e.g.*, *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461, 2012 WL 340114, at *1 (S.D.N.Y. Jan. 17, 2012) ("It is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a class of a collective action and enabling class counsel to obtain relevant discovery.") (collecting cases); *see also Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (requiring defendants to produce "all names, last known addresses, alternative addresses, known telephone numbers, known e-mail addresses, social security numbers [where applicable], dates of employment and job titles"); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. Jan. 16, 2013) (requiring production of "all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers"); *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, ... the provision of email addresses and email notice ... is entirely appropriate.") (citation omitted).

17

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should: (1) authorize the issuance of notice to Collective Members; (2) order Bloomberg to produce a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known personal email addresses, last four digits of Collective Members' Social Security numbers (for those notices returned undeliverable), and work locations and dates of employment at each location for all Collective Members; and (3) approve Plaintiffs' Proposed Notice and the plan for its distribution.

Dated:  April 17, 2020
       New York, NY

Respectfully submitted,

*/s/ Sally J. Abrahamson*

Sally J. Abrahamson
Hannah Cole-Chu\*
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW, Ste 200W
Washington, D.C. 20001
Telephone: 202-847-4400
sabrahamson@outtengolden.com
hcolechu@outtengolden.com

Justin M. Swartz
Michael C. Danna
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
jms@outtengolden.com
mdanna@outtengolden.com

Gregg I. Shavitz\*
Tamra Givens\*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com

Michael Palitz
**SHAVITZ LAW GROUP, P.A.**

800 3rd Avenue, Suite 2800
New York, NY 10022
Telephone: (800) 616-4000
mpalitz@shavitzlaw.com

***Attorneys for Plaintiffs and the Putative Collective
and Classes***

* Admitted *pro hac vice*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on April 17, 2020, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By: */s/ Sally J. Abrahamson*
Sally J. Abrahamson