UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>        v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>                    Defendant. | 20 Civ. 2489 (LTS)(GWG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF RELEVANT FACTS ALLEGED .................................... 3

LEGAL ARGUMENT ........................................................................... 6

I.   THE FAIR LABOR STANDARDS ACT DOES NOT APPLY TO THE
     CAMPAIGN. ............................................................................ 6

     A.   THE CAMPAIGN IS NOT A COVERED ENTERPRISE UNDER THE FLSA. .............. 7
          1.   The Campaign Was Not Conducted for a "Business Purpose." ............. 7
          2.   The Campaign Did Not "Engage in Commerce." .............................. 10
     B.   THE PLAINTIFFS ARE NOT COVERED INDIVIDUALS. ............................... 13

II.  PLAINTIFFS FAIL TO STATE A CLAIM OF FRAUDULENT INDUCEMENT ........ 17

     A.   PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM FAILS ON THE MERITS. .......... 17
          1.   Plaintiffs Do Not Allege A Misrepresentation of Present Fact ............... 17
          2.   Plaintiffs Do Not Allege An Intent to Deceive. ............................... 18
          3.   Plaintiffs Cannot Establish Reasonable Reliance. ........................... 20
          4.   Plaintiffs Do Not Allege Any Legally Cognizable Injury. ................... 21
     B.   THE SECOND AMENDED COMPLAINT FAILS TO SATISFY THE HEIGHTENED
          PLEADING STANDARD FOR FRAUD CLAIMS. ................................... 21

III. PLAINTIFFS FAIL TO STATE A CLAIM OF PROMISSORY ESTOPPEL. ........... 24

     A.   PROMISSORY ESTOPPEL IS NOT RECOGNIZED IN THE EMPLOYMENT
          CONTEXT. ....................................................................... 24
     B.   PLAINTIFFS' PROMISSORY ESTOPPEL CLAIM FAILS ON THE MERITS. ............ 24
          1.   Plaintiffs Cannot Establish Reasonable Reliance. ........................... 25
          2.   Plaintiffs Cannot Establish An Unconscionable Injury. ..................... 26

IV.  PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN. ................... 27

     A.   THE COURT MAY STRIKE CLASS ALLEGATIONS AT THE PLEADING STAGE. ........ 27
     B.   THE HIGHLY INDIVIDUALIZED INQUIRIES NECESSARY TO PROVE
          PLAINTIFFS' COMMON LAW CLAIMS PRECLUDE CLASS TREATMENT. ............ 28

i

1.    Plaintiffs' Common Law Claims Require Individualized Inquiries
Into The Substance Of Their Communications With The
Campaign. ................................................................................. 29

2.    Plaintiffs' Common Law Claims Require Individualized Inquiries
Into Plaintiffs' State Of Mind. .................................................. 30

3.    Plaintiffs' Promissory Estoppel Claim Requires Individualized
Inquiries Into Plaintiffs' Purported Injuries. ............................. 31

V.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE AND
WITHOUT PERMITTING FURTHER ATTEMPTS TO AMEND. .............................. 33

CONCLUSION ............................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*AEI Life LLC v. Lincoln Benefit Life Co.*,
    892 F.3d 126 (2d Cir. 2018)................................................................................17

*Allison v. Clos-ette Too, LLC*,
    No. 14-cv-1618 (LAK)(JCF), 2014 WL 4996358 (S.D.N.Y. Sept. 15, 2014) .......................24

*Alvariza v. Home Depot*,
    No. CIV.A. 05-cv-02590EW, 2007 WL 794187 (D. Colo. Mar. 14, 2007)..........................25

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................................29

*Anderson v. Hearts with Hope Found.*,
    713 F. App'x 278 (5th Cir. 2017) ......................................................................7

*Andrews v. Sotheby Int'l Realty, Inc.*,
    No. 12-cv-8824 (RA), 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586
    F. App'x 76 (2d Cir. 2014) ..............................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6

*Baguer v. Spanish Broad. Sys., Inc.*,
    No. 04-cv-8393, 2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) .................................26

*Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*,
    No. 11-cv-6345, 2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012) ...............................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................6

*Berger v. Roosevelt Inv. Grp. Inc.*,
    28 A.D.3d 345 (1st Dep't 2006) .....................................................................20

*Berman v. Neo@Ogilvy LLC*,
    No. 14-cv-00523, 2014 WL 6865718 (S.D.N.Y. Aug. 15, 2014).............................4

*Bessemer Tr. Co. v. Branin*,
    498 F. Supp. 2d 632 (S.D.N.Y. 2007), *aff'd*, 618 F.3d 76 (2d Cir. 2010) .............24

*Brady v. Calyon Sec. (USA)*,
    406 F. Supp. 2d 307 (S.D.N.Y. 2005)..........................................................18, 20

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ................................................31

*Burns v. Kraft Foods N. Am., Inc.*,
    2004 WL 2283548 (D. Minn. Aug. 26, 2004) .......................................25

*Centennial Bank v. Servisfirst Bank Inc.*,
    No. 16-cv-88-T-36JSS, 2016 WL 6037539 (M.D. Fla. Oct. 14, 2016) ..................17

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).......................................................4

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)............................................................15

*Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 10-cv-2249, 2011 WL 666187 (S.D.N.Y. Feb. 9, 2011) ..............18, 19, 22, 23

*Cohen v. Avanade, Inc.*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012)........................................22, 23

*Cousins Subs Sys., Inc. v. McKinney*,
    59 F. Supp. 2d 816 (E.D. Wis. Aug. 5, 1999)......................................17

*Dalton v. Union Bank of Switzerland*,
    134 A.D.2d 174 (1st Dep't 1987) ................................................27

*Davis v. Navient Corp.*,
    No. 17-cv-00992, 2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) ............27, 29, 32

*Day v. LSI Corp.*,
    174 F. Supp. 3d 1130 (D. Ariz. 2016) ...........................................17

*Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 06-cv-5474 (JGK), 2008 WL 857492 (S.D.N.Y. Mar. 31, 2008)..........18, 19, 20

*Dexter v. Dealogic, LLC*,
    390 F. Supp. 3d 233 (D. Mass. 2019) ...........................................25

*Dhir v. Carlyle Grp. Emp. Co.*,
    No. 16-cv-06378, 2017 WL 4402566 (S.D.N.Y. Sept. 29, 2017) ...................17, 24

*Divins v. Hazeltine Electronics Corp.*,
    163 F.2d 100 (2d Cir. 1947)....................................................16

*Dow v. Cradlepoint, Inc.*,
    No. 16-cv-3341, 2017 WL 10562980 (N.D. Ga. June 13, 2017)........................17

*Downey v. Adloox Inc.*,
    238 F. Supp. 3d 514 (S.D.N.Y. 2017)..............................................................18, 20

*Dunlop v. Indus. Am. Corp.*,
    516 F.2d 498 (5th Cir. 1975) ....................................................................................14

*Dupuis v. GATR of Sauk Rapids, Inc.*,
    2018 WL 3614320 (Minn. Ct. App. 2018) ...............................................................17

*Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004).....................................................................................22

*Fishoff v. Coty Inc.*,
    676 F. Supp. 2d 209 (S.D.N.Y. 2009), *aff'd*, 634 F.3d 647 (2d Cir. 2011) .............26

*George v. Thomas*,
    No. 19-cv-3020, 2020 WL 1643486 (E.D.N.Y. Mar. 31, 2020)...............................26

*Gray v. Wesco Aircraft Holdings, Inc.*,
    No. 19-cv-8528, 2020 WL 1904019 (S.D.N.Y. Apr. 16, 2020) ..................................9

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
    No. 15-cv-2030, 2016 WL 3571387 (S.D.N.Y. June 27, 2016) ..................................4

*Harmon v. Dyncorp Int'l, Inc.*,
    No. 13-cv-1597, 2015 WL 518594 (E.D. Va. Feb. 6, 2015), *aff'd*, 624 F.
    App'x 104 (4th Cir. 2015) ........................................................................................25

*Hayden v. Cty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999).......................................................................................33

*Higginbottom v. State*,
    203 Ariz. 139, 51 P.3d 972 (Ct. App. 2002)............................................................25

*Hudson v. Delta Air Lines, Inc.*,
    90 F.3d 451 (11th Cir. 1996) ...................................................................................32

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017).....................................................................................29

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
    725 F.3d 244 (D.C. Cir. 2013) .................................................................................32

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2d Cir. 2012).......................................................................................17

*Jacobs v. N.Y. Foundling Hosp.*,
    577 F.3d 93 (2d Cir. 2009).........................................................................................7

*Johnson v. Trump for President, Inc.*,
   No. 19-cv-475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) ................................................9

*Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*,
   885 F. Supp. 1169 (S.D. Ind. 1995) ................................................................................8, 15

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
   213 F.R.D. 689 (S.D. Ga. 2002) ..............................................................................................30

*Kassin v. Select Grp., LLC*,
   No. 16-cv-1263, 2016 WL 7331556 (E.D. Va. Dec. 16, 2016)..............................................17

*Kassman v. KPMG LLP*,
   416 F. Supp. 3d 252 (S.D.N.Y. 2018)......................................................................................28

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)......................................................................................................24

*Kinsella v. Powerguard Specialty Ins. Servs., LLC*,
   112 A.D.3d 414 (1st Dep't 2013) ..............................................................................................21

*Kirschbaum v. Walling*,
   316 U.S. 517 (1942)..................................................................................................................15

*Kirzhner v. Silverstein*,
   No. 09-cv-02858, 2011 WL 4382560 (D. Colo. Sept. 20, 2011)............................................17

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
   393 F. Supp. 2d 1282 (M.D. Fla. 2005)........................................................................8, 11, 15

*Kramsky v. Chetrit Grp., LLC*,
   No. 10-cv-2638, 2011 WL 2326920 (S.D.N.Y. June 13, 2011) ........................................24, 26

*Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*,
   No. 14-cv-1095, 2016 WL 11264722 (E.D.N.Y. Aug. 12, 2016) ...........................................25

*Lefebvre v. Morgan*,
   234 F. Supp. 3d 445 (S.D.N.Y. 2017)......................................................................................33

*Leininger v. Reliastar Life Ins. Co.*,
   No. 06-cv-12249, 2007 WL 2875283 (E.D. Mich. Sept. 28, 2007) .......................................17

*Leschak v. Raiseworks, LLC*,
   No. 14-cv-8072 (FM), 2016 U.S. Dist. LEXIS 31785 (S.D.N.Y. Mar. 7, 2016) ...................25

*Locke v. St. Augustine's Episcopal Church*,
   690 F. Supp. 2d 77 (E.D.N.Y. 2010) .......................................................................................11

*Lucio v. Fern at Tenth LLC*,
  No. 19-cv-189, 2019 WL 4993418 (S.D. Tex. Oct. 8, 2019) ...........................................17, 25

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
  No. 17-cv-0359, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018)...................................................28

*Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*,
  955 F. Supp. 2d 50 (D.D.C. 2013) ..........................................................................................8

*Martinez-Cruz v. N. Central Coll.*,
  2013 WL 6498761 (N.D. Ill. Dec. 11, 2013) .........................................................................17

*MCI Worldcom Commc'ns, Inc. v. N. Am. Commc'ns Control, Inc.*,
  No. 98-cv-6818, 2003 WL 21279446 (S.D.N.Y. June 4, 2003) .............................................17

*McQuade v. Xerox Corp.*,
  2011 WL 344091 (E.D.N.C. Feb. 1, 2011)..............................................................................17

*Meyercord v. Curry*,
  38 A.D.3d 315 (1st Dep't 2007) .............................................................................................20

*Miller v. Pac. Inv. Mgmt. Co. LLC*,
  No. 12-cv-4122, 2013 WL 12305507 (S.D.N.Y. Apr. 23, 2013) ...........................................33

*Mobile Republican Assembly v. U.S.*,
  353 F.3d 1357 (11th Cir. 2003) .............................................................................................13

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)..................................................................................................29

*Murdock-Alexander v. Tempsnow Emp't & Placement Servs., LLC*,
  No. 16-cv-5182, 2016 WL 6833961 (N.D. Ill. Nov. 21, 2016) ..............................................28

*Nardi v. Stevens Inst. of Tech.*,
  60 F. Supp. 2d 31 (E.D.N.Y. 1999) ........................................................................................25

*Nikolaeva v. Home Attendant Servs. of Hyde Park*,
  No. 15-cv-6977 (NGG) (RER), 2018 U.S. Dist. LEXIS 197155 (E.D.N.Y.
  Nov. 16, 2018) ..........................................................................................................................8

*Norman v. Tradewinds Airlines, Inc.*,
  286 F. Supp. 2d 575 (M.D.N.C. Aug. 21, 2003).....................................................................25

*Oster v. Caithness Corp.*,
  No. 16-cv-03164, 2017 WL 3727174 (N.D. Cal. Aug. 30, 2017) .....................................17, 25

*Overstreet v. N. Shore Corp.*,
  318 U.S. 125 (1943)................................................................................................................14

*Panzella v. City of Newburgh*,
  231 F.Supp.3d 1 (S.D.N.Y. 2017)......................................................................34

*Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*,
  501 F. App'x 805 (10th Cir. 2012) ..............................................................8, 16

*Reif v. Assisted Living by Hillcrest LLC*,
  2018 WL 5810514 (E.D. Wis. Nov. 6, 2018) ..............................................25

*Reynolds v. BLM Co., Inc.*,
  No. 12-cv-1105, 2014 WL 12888364 (W.D. Ark. Mar. 17, 2014)................31

*Rivera v. City of N.Y.*,
  392 F. Supp. 2d 644 (S.D.N.Y. 2005).........................................................26

*Rodden v. Savin Hill Enterprises, LLC*,
  No. 15-03194-C, 2016 WL 1688688 (Mass. Super. Apr. 21, 2016) ...............17

*Ross v. May Co.*,
  377 Ill.App.3d 387 (Ill. App. Ct., 1st Div., 2007)........................................25

*Rowell v. Voortman Cookies, Ltd.*,
  No. 02-C-0681, 2005 WL 1026715 (N.D. Ill. Apr. 27, 2005)......................31

*Salon Fad v. L'Oreal USA, Inc.*,
  No. 10-cv-5063 (DLC), 2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011)..............32

*Santiago v. Merriman River Assocs., LLC*,
  No. 17-cv-2054 (VAB), 2018 WL 2465358 (D. Conn. June 1, 2018) ................28

*Sateriale v. RJ Reynolds Tobacco Co.*,
  No. 09-cv-08394 (CAS), 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014) ................31

*Schlenger v. Fid. Emp'r Servs. Co., LLC*,
  785 F. Supp. 2d 317 (S.D.N.Y. 2011)...........................................................23

*Shaoxing Daqin Imp. & Exp. Co. v. Notations, Inc.*,
  No. 19-cv-2732 (JSR), 2019 WL 6498397 (S.D.N.Y. Dec. 3, 2019)...............19

*Shaughnessy v. Interpublic Grp. of Cos., Inc.*,
  506 F. App'x 369 (6th Cir. 2012) ..............................................................25

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..........................................................................19

*Simpson v. Carolina Builders Corp.*,
  No. 03-cv-0758 (HTW), 2005 WL 8157403 (N.D. Ga. Mar. 15, 2005) ...............25

*Smalley v. Dreyfus Corp.*,
    10 N.Y.3d 55 (2008) ........................................................................................21

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ..........................................................................31

*Staehr v. Mack*,
    No. 07-cv-10368, 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011)..............................9

*Stillman v. Townsend*,
    No. 05-cv-6612, 2006 WL 2067035 (S.D.N.Y. July 26, 2006)..............................26

*Tellez v. OTG Interactive, LLC*,
    No. 15-cv-8984, 2016 WL 5376214 (S.D.N.Y. Sept. 26, 2016) ...........................21

*Thompson v. Cmty. Ins. Co.*,
    213 F.R.D. 284 (S.D. Ohio 2002) ....................................................................31

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
    471 U.S. 290 (1985)..........................................................................................7

*Walia v. Veritas Healthcare Sols., L.L.C.*,
    No. 13-cv-6935, 2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015)............................23

*Walling v. Jacksonville Paper Co.*,
    317 U.S. 564 (1943)........................................................................................15

*Walney v. SWEPI LP*,
    No. 13-cv-102, 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015)............................31

*Wexler v. Allegion (UK) Ltd.*,
    No. 16-cv-2252 (ER), 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018) ...................19

*Winnie v. Infectious Disease Assocs., P.A.*,
    No. 15-cv-2727-T-35MAP, 2016 WL 11670293 (M.D. Fla. Sept. 21, 2016) ........25

*Wirtz v. Columbian Mut. Life Ins. Co.*,
    380 F.2d 903 (6th Cir. 1967) ............................................................................7

*Woods v. Era Med LLC*,
    677 F. Supp. 2d 806 (E.D. Pa. 2010) ..........................................................17, 25

*Worbetz v. Ward N. Am., Inc.*,
    54 F. App'x 526 (3d Cir. 2002) ..................................................................17, 25

*Wurtsbaugh v. Banc of America Securities LLC*,
    No. 05-cv-6220 (DLC), 2006 WL 1683416 (S.D.N.Y. June 20, 2006) .................20

*Yarger v. ING Bank, FSB*,
   285 F.R.D. 308 (D. Del. 2012) ......................................................................31

## STATUTES

26 U.S.C. § 527(c)(3)............................................................................9, 12, 13

29 U.S.C. § 202 ..................................................................................................2

29 U.S.C. § 203 ................................................................................6, 7, 8, 10

29 U.S.C. § 206 ..........................................................................................2, 6, 13

29 U.S.C. § 207 ..................................................................................................2

29 U.S.C. § 215 ..................................................................................................2

Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*.............................. passim

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ...............................................15

## OTHER AUTHORITIES

29 C.F.R. § 1.527-3(e) ....................................................................................12

29 C.F.R. § 779.214 ..........................................................................................7

29 C.F.R. § 779.258 ........................................................................................11

Fed. R. Civ. P. 9(b) .............................................................17, 18, 19, 22, 23

Fed. R. Civ. P. 12(b)(6)................................................................................. passim

Fed. R. Civ. P. 23....................................................................1, 27, 28, 29

S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960) .....................................10

U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282...........................10, 11, 13

Defendant Mike Bloomberg 2020, Inc. ("Defendant" or the "Campaign") respectfully moves this Court for an Order dismissing with prejudice the claims asserted in the Second Amended Class and Collective Action Complaint (Dkt. 86) ("Second Amended Complaint" or "SAC") under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. (the "FLSA"), and the common law claims for fraudulent inducement and promissory estoppel (the "Common Law Claims"), pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, striking the class allegations with respect to the Common Law Claims, pursuant to Fed. R. Civ. P. 23(d)(1)(D).

## PRELIMINARY STATEMENT

Plaintiffs were employed as field organizers and other organizing employees of the Campaign beginning in or around January 2020. In connection with the commencement of their employment, Plaintiffs signed offer letters and were provided with an employee handbook for which they signed an acknowledgment form. All of the foregoing specifically stated that Plaintiffs' employment was "at will" and could be terminated "at any time." These documents also made clear that no statement varying the at-will nature of Plaintiffs' employment would be effective unless set forth in a signed writing from an authorized representative of the Campaign. A few weeks after Mr. Bloomberg withdrew from the race in March 2020, the Campaign terminated Plaintiffs' employment.

Plaintiffs allege that the Campaign misclassified them as exempt from the FLSA and failed to pay them overtime during the few weeks in which they were employed by the Campaign. They also allege—notwithstanding their express acknowledgment of their at-will status—that they were "promised" continued employment through the general election in November 2020 regardless of whether Mr. Bloomberg won the Democratic nomination. Plaintiffs' FLSA claim and Common Law Claims are barred as a matter of law and should be dismissed in full for several independent

reasons.

*First*, Plaintiffs' FLSA claim fails at the outset because the FLSA does not, as a matter of law, apply to political campaign organizations like the Campaign.  Congress enacted the FLSA to regulate labor conditions in "industries engaged in commerce or in the production of goods for commerce," so as to prevent "unfair method[s] of competition" and employment practices that "burden[ ] commerce and the free flow of goods in commerce" and "interfere[ ] with the orderly and fair marketing of goods in commerce."  29 U.S.C. § 202.  The statute prescribes minimum wages and overtime requirements for such "industries," and makes it unlawful for any person to "ship, deliver, or sell in commerce, . . . any goods" produced in violation of those requirements. 29 U.S.C. §§ 206, 207, 215.

The Campaign is not such an enterprise.  It is a tax-exempt, nonprofit political advocacy organization.  The Campaign did not engage in any "industry" or the "marketing of goods in commerce," nor engage in "competition" with any businesses; it was formed for the sole purpose of advocating for the election of Michael Bloomberg to the Presidency.  Plaintiffs, who were field organizers and other organizing employees of the Campaign's various state operations, were responsible for carrying that message to individual voters at the most grassroots level: engaging local voters, recruiting and managing volunteers, and performing "get out the vote" activities, including knocking on doors, posting yard signs, and making phone calls within their state, to share Mr. Bloomberg's ideas and philosophy and to urge his election to the Presidency.

*Second*, Plaintiffs' fraudulent inducement claim fails because Plaintiffs do not satisfy any of the requisite elements for such a claim: (i) they do not allege any material representation of any present facts, and instead rely only on purported future promises of continued employment, which are not cognizable; (ii) they do not allege any specific facts giving rise to a strong inference of

fraudulent intent; (iii) they cannot establish reasonable reliance given the at-will nature of their employment; and (iv) they do not allege any legally cognizable injuries.  The Second Amended Complaint also fails to satisfy the heightened pleading standard for fraud claims, which requires Plaintiffs to state with particularity the circumstances constituting fraud.

*Third*, Plaintiffs' promissory estoppel claim is equally meritless.  As a threshold matter, New York does not recognize promissory estoppel in the employment context.  Moreover, the Second Amended Complaint does not satisfy the essential elements of reasonable reliance or an unconscionable injury.

*Finally*, in the unlikely event that the Common Law Claims survive this motion to dismiss, which they should not, Plaintiffs' class allegations with respect to those claims should be stricken because it is clear from the face of the Second Amended Complaint that Plaintiffs' Common Law Claims are highly individualized and not suitable for class treatment.

For these reasons, and as discussed more fully below, Plaintiffs' FLSA claims and Common Law Claims should be dismissed in their entirety and the class allegations with respect to the Common Law Claims should be stricken.

## STATEMENT OF RELEVANT FACTS ALLEGED

Michael Bloomberg announced his candidacy for President of the United States on November 24, 2019.  (SAC ¶ 1.)[1]  The Campaign began hiring field organizers and other organizing employees in or around January 2020.  (*Id.* ¶ 2.)  When Plaintiffs started work on the Campaign each of them signed an offer letter in which they acknowledged and agreed to the terms

---

[1] A copy of the Second Amended Complaint is annexed as Exhibit 1 to the accompanying Declaration of Elise M. Bloom, Esq. ("Bloom Declaration" or "Bloom Decl.").  For purposes of this motion, Defendant assumes the truth of any well-pled factual allegations contained in the Second Amended Complaint, but not any conclusory allegations or legal conclusions contained therein.  While assuming the truth of such allegations for the purposes of this motion only, Defendant otherwise unequivocally denies and will vigorously contest Plaintiffs' allegations should the instant motion be denied.

of their employment (the "Offer Letters").[2]  The Offer Letters made clear that Plaintiffs would be

"at-will" employees, providing in pertinent part:

> The nature of your employment at the [Campaign] is and will continue to be **"at
> will,"** as defined by applicable law, meaning that either we or you *may terminate
> your employment at any time*, with or without notice and with or without cause,
> for any reason or for no reason.  (*Id*.; Sayers Decl., Exs. 1 – 50 at p. 1, emphasis
> added.)

The Offer Letters also contained the following express provision making clear that any

changes to the terms and conditions of Plaintiffs' employment must be in a signed writing:

> No statement varying any of the terms of this offer letter shall be enforceable unless
> set forth in a writing signed by a duly authorized officer of the Organization.  (*Id.*
> at p. 2.)

The at-will nature of Plaintiffs' employment and the fact that no representative of the

Campaign could enter into any oral agreement to alter their at-will status was reiterated in the

Campaign's employee handbook (the "Employee Handbook") and in a Confidentiality, Non-

Interference and Invention Assignment Agreement attached to the Offer Letters (the

"Confidentiality Agreements").  Specifically, the Employee Handbook provides as follows:

**Employment Is At Will**

> Your employment with the Organization is ***"at will,"*** which means that it is *for no
> definite period of time, and may be terminated at any time* by either you or the
> Organization, with or without cause, notice or procedural requirements. Neither this
> Employee Handbook, nor any other Organization policy, procedure or
> communication, shall impose any express or implied contractual obligations on the

---

[2] Copies of the Offer Letters signed by each of the Plaintiffs are attached as Exhibits 1 – 50 to the accompanying
Declaration of Katherine Sayers (the "Sayers Declaration" or "Sayers Decl.").  The Court may consider the Offer
Letters in conjunction with this Rule 12(b)(6) motion to dismiss because Plaintiffs' claims arise entirely from their
employment relationship with the Campaign and the Offer Letters therefore are integral to the SAC.  *See, e.g.*,
*Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002); *see also Hamzaraj v. ABM Janitorial Ne. Inc*., No.
15-cv-2030 (ER), 2016 WL 3571387, at *1 n.2 (S.D.N.Y. June 27, 2016) (collective bargaining agreement that was
"neither attached to nor incorporated by explicit reference into the Complaint" could still be considered on a motion
to dismiss because plaintiff's "complaint is based entirely on his employment relationship with [Defendant], of which
the CBA is an integral part"); *Berman v. Neo@Ogilvy LLC*, No. 14-cv-00523 (GHW)(SN), 2014 WL 6865718, at *4
(S.D.N.Y. Aug. 15, 2014) ("Given that the Complaint references the codes and policies [in the employee handbook]
and two of Berman's claims 'rel[y] heavily upon [the handbook's] terms and effect, ... the document [is] integral to
the complaint,' and the Court will consider it on the motion to dismiss.") (quoting *Chambers*, 282 F.3d at 153).

Organization or create or grant any right to or guarantee of employment for any period. ***No representative of the Organization may enter into any oral agreement to alter your at-will status or otherwise create a contractual obligation to you***. In addition, no contractual relationship, or alteration of an employee's at-will status, shall arise except to the extent explicitly set forth in a writing signed by the Organization's Treasurer or, in the absence of one, its senior-most officer (and provided further that the other requisites to a binding contractual obligation shall have been satisfied).

(Sayers Decl., Ex. 51 at p. 5, emphasis added.)[3]  Each of the Plaintiffs signed an acknowledgement form agreeing that they had received and read the Employee Handbook, and again affirming that they understood that "absent an executed employment contract that says otherwise, either I or [the Campaign] can terminate the at-will employment relationship at any time, for any reason." (*Id*. at 30.)

The Confidentiality Agreements similarly reiterate these points:

<u>Entire Agreement</u>.   This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. (Sayers Decl., Exs. 1 – 50 at p. 7.)

<u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and ***the right of the Organization to terminate my employment at any time and for any reason***, with or without cause, is specifically reserved.  (*Id*., emphasis added.)

In early March 2020, the Campaign announced that Mr. Bloomberg would no longer seek the Democratic nomination.  (SAC ¶ 39.)  Later that month, the Campaign terminated Plaintiffs' employment.  (*Id.* ¶¶ 4-6.)

---

[3] A copy of the Employee Handbook, and Plaintiffs' signed acknowledgement forms, are attached as Exhibits 51 – 95 to the Sayers Declaration.  The Court may consider the Employee Handbook in conjunction with this Rule 12(b)(6) motion to dismiss for the same reason that it may consider the Offer Letters.  *See* n.2, *supra*.

The Second Amended Complaint, which is styled as a putative class and collective action, alleges that the Campaign violated the FLSA by failing to pay Plaintiffs overtime (*Id.* ¶¶ 314-324) and asserts the Common Law Claims premised on Plaintiffs' allegation that they and other field organizing staff were promised employment through the November 2020 general election (*Id.* ¶¶ 415-432).[4]

## LEGAL ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.

## I.    THE FAIR LABOR STANDARDS ACT DOES NOT APPLY TO THE CAMPAIGN.

Plaintiffs' FLSA claim fails as a matter of law because the Campaign is not a covered enterprise subject to the FLSA and Plaintiffs are not subject to individual coverage under the FLSA. The FLSA extends only to certain commercial enterprises that do business, and that do so at a certain scale, and also to employees of non-covered enterprises who nevertheless individually engage in such commerce. 29 U.S.C. §§203(r), 203(s), 206(a). Neither the Campaign nor its

---

[4] Plaintiffs also assert claims pursuant to various state wage-and-hour laws, which are not subject to this motion. (*See* SAC ¶¶ 325-414.)

employees engaged in any "commerce" with a "business purpose"; the Campaign was not a business and its employees had no products or services to buy or sell. Its mission was not to earn a profit but to elect a candidate, and Plaintiffs' responsibilities were to advocate, to spread ideas, to share a political philosophy, and to persuade voters. The FLSA simply does not cover political campaigns, and Plaintiffs' FLSA claim should therefore be dismissed with prejudice.

A.   THE CAMPAIGN IS NOT A COVERED ENTERPRISE UNDER THE FLSA.

1.   *The Campaign Was Not Conducted for a "Business Purpose."*

At the very threshold, the FLSA simply does not apply to organizations that lack a business purpose – the buying and selling of goods or services. The statute defines a covered enterprise as the sum of "related activities performed (either through unified operation or common control) by any person or persons for a common *business purpose* . . . ." 29 U.S.C. §203(r)(1) (emphasis added). As a result, nonprofit organizations, founded for some purpose other than to conduct business, are not subject to the FLSA, except to the extent that they engage in activities that "compete in the marketplace with ordinary commercial enterprises." 29 C.F.R. §779.214; *see also Anderson v. Hearts with Hope Found.*, 713 F. App'x 278, 280 (5th Cir. 2017) (per curiam) (nonprofit organizations "are generally exempt" from enterprise coverage); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009) ("Generally, non-profit organizations that do not 'engage in ordinary commercial activities' . . . operate without a 'business purpose' and therefore are not enterprises"); *Wirtz v. Columbian Mut. Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967) (noting that "a company's nonprofit activities do not fall within the 'common business' requirement").

Thus, for example, in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 292 (1985), the defendant was a nonprofit religious enterprise that, in addition to significant charitable work, derived income from service stations, retail clothing and grocery stores, and candy

7

production and distribution, manufacturing, and other activities.  The Supreme Court held the Foundation's activities to be subject to the FLSA only to the extent that they "serve the general public in competition with ordinary commercial enterprises."  *Id*. at 299.  Paying "substandard wages" in those commercial activities would give the Foundation an unfair advantage as compared to other service stations, grocery stores, and other commercial businesses that had to pay workers the statutory minimum wage and overtime, and that unfair competition warranted inclusion of the Foundation's commercial activities (and therefore the employees who worked specifically in those commercial businesses) within the scope of the FLSA.  *Id*.  The Court went on to note, however, that because the FLSA's requirements extend only to "commercial activities undertaken with a 'business purpose,'" the statute would have "no impact on petitioners' own evangelical activities or on individuals engaged in volunteer work for other religious organizations."  *Id*. at 305; *see also Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 55 (D.D.C. 2013) ("In determining whether a non-profit entity operates with a business purpose, courts examine 'whether the non-profit is primarily engaging in competition in the public with commercial enterprises'"); *Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.*, 501 F. App'x 805, 810 (10th Cir. 2012) ("Generally, activities of nonprofits 'are not considered to be conducted for a common business purpose unless they engage in commercial activity.'") (quoting *Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 459 (S.D.N.Y. 2006)).[5]

---

[5] Many other courts have similarly excluded non-profit organizations from enterprise coverage where the organization does not compete with ordinary businesses.  *See, e.g. Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG) (RER), 2018 U.S. Dist. LEXIS 197155, at *7 (E.D.N.Y. Nov. 16, 2018) (relevant inquiry in enterprise analysis is whether the organization is in competition with "ordinary commercial enterprises"); *Reagor*, 501 F. App'x at 809 ("But the question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises...");  *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 (M.D. Fla. 2005) ("Thus, the test is an 'economic reality test,' where the focus is on whether 'the enterprise is primarily engaged in competition in the public with ordinary commercial enterprises.'") *Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995) ("Unless it engages in commercial activities in competition with private entrepreneurs or qualifies as one of the organization[s] listed in 29 U.S.C. §203(r)(2), a non-profit charitable organization is not an 'enterprise' under §203(r) because it is not conducted for a 'business purpose.'").

The Campaign did not engage in "business," nor did it "compete" with any "ordinary commercial enterprises."  It did not operate any grocery stores or retail clothing shops.  It existed, of course, solely to advocate on behalf of Mr. Bloomberg's candidacy for president, not to engage in commerce.  Like any advocacy organization, its stock in trade was not commercial goods or services but expression, ideas, a core First-Amendment-protected effort to persuade voters, and nothing more.  To the extent the Campaign "competed" at all, it competed with other political campaigns for attention to and endorsement of Mr. Bloomberg's ideas and policy proposals, not with any commercial enterprise.  *See, e.g.*, *Johnson v. Trump for President, Inc.*, No. 19-cv-475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) (rejecting enterprise coverage for a political campaign, and questioning whether a campaign could ever be a covered enterprise because of a lack of "business purpose").  Thus the Second Amended Complaint's suggestion that "raising revenue, collecting voter data, and marketing the Campaign" are "commercial activities," SAC ¶ 186, ignores the substantial difference between political advocacy and commerce.

Federal law specifically recognizes that political campaigns are not conducted for a "business purpose."  As the Second Amended Complaint admits, ¶ 183, the Campaign was organized as a political organization under Section 527 of the Internal Revenue Code, 26 U.S.C. §527.  (Bloom Decl. Exs. 2 and 3.)[6]  That section establishes political organizations as tax-exempt with respect to their activity "influencing or attempting to influence the selection, nomination, election, or appointment of any individual" to public office, including the Presidency.  26 U.S.C.

---

[6] Copies of the Campaign's Certificate of Incorporation, filed with the Secretary of State of the State of Delaware, and Statement of Organization, filed with the Federal Election Commission ("FEC"), are attached as Exhibits 2 and 3 to the Bloom Declaration.  The Court may take judicial notice of these documents in conjunction with this Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Staehr v. Mack*, No. 07-cv-10368 (DAB), 2011 WL 1330856, at *6 n.5 (S.D.N.Y. Mar. 31, 2011) ("Courts may take judicial notice of a certificate of incorporation on a motion to dismiss."); *Gray v. Wesco Aircraft Holdings, Inc.*, No. 19-cv-8528 (LJL), 2020 WL 1904019, at *10 (S.D.N.Y. Apr. 16, 2020) (court may take judicial notice of regulatory filings) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

§527(e)(1), (e)(2).  Congress adopted this exemption because it recognized that "political activity (including the financing of political activity) as such ***is not a trade or business*** which is appropriately subject to tax."  S. Rept. 93-1357 (1974) (emphasis added); *see also* U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282, at *1 ("Enterprise coverage . . . typically does not extend to the eleemosynary . . . or similar activities of [nonprofit] organizations . . . where such activities are not in substantial competition with other businesses").

Plaintiffs attempt to avoid this failure of their claim by alleging that the Campaign "did not operate with any charitable, educational, or religious purpose." (SAC ¶ 184.)  That inconsequential distinction misunderstands the law; charitable institutions are excluded from FLSA coverage not because they are charitable or religious, but because they lack a business purpose.  As the Senate Committee Report on the 1961 amendments explained in discussing the "common business purpose" requirement:

> [the] definition would not include eleemosynary, religious, or educational organizations not operated for profit. The key word in the definition which supports this conclusion is the word "business." Activities of organizations for the type referred to, if they are not operated for profit, are not activities performed for a "business" purpose.

S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960).  The Campaign acted with no more of a business purpose than any tax-exempt organization, and therefore falls outside the statute.

## 2. *The Campaign Did Not "Engage in Commerce."*

Further, even organizations that qualify as "enterprises" – that is, pursuing a "common business purpose" in "compet[ition] . . . with ordinary commercial enterprises" – still fall outside the FLSA unless they also "engage in commerce," which the statute defines as having employees who are directly engaged in commerce or handle material that has moved in commerce, and having gross annual sales or business done exceeding $500,000. 29 U.S.C. § 203(s)(1)(A).  The Campaign had no such employees, as described further in Part B below.  In any case, the Campaign had no

10

"sales" or "business," as a matter of law, and so Plaintiffs' attempt to establish enterprise coverage fails for this independent reason.

The terms "gross annual sales or business done," again, refer to the buying and selling of goods and services, "the gross dollar volume of the sales . . . which [the entity] makes, as measured by the price paid by the purchaser for the property or service . . . and the gross dollar volume of any other business activity in which the enterprise engages which can be similarly measured on a dollar basis." 29 C.F.R. § 779.258 (quoting S. Rept. No. 1487, 89th Congress, 2nd session, at 7-8). Thus, the mere receipt of money in excess of $500,000 annually is not sufficient; the revenue must be generated through commercial activity. *See, e.g.*, *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 89 (E.D.N.Y. 2010) (church's income from charitable contributions is "not included in this calculation," and so is not relevant to enterprise coverage, even though it exceeded $500,000; its "commercial income" did not exceed the threshold); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 n.28 (M.D. Fla. 2005) ("The fact that an eleemosynary organization receives income in the form of fees or gifts does not itself render it a 'for profit' or 'business' enterprise. Obviously, the organization will have expenses which must be offset by revenues from some source."); U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282, at *2 ("it has long been our position that income derived from eleemosynary activity should not be included as sales made or business done").

The Campaign did not engage in ***any*** such commercial activity, let alone $500,000 worth. Unlike most other political campaigns, the Campaign did not accept individual contributions or donations; instead, it accepted contributions only from those who purchased merchandise like hats or t-shirts communicating political messages through the Campaign's online store. (SAC ¶¶ 201-

207.)[7]  Those merchandise sales were not "commercial income," however; they were nontaxable campaign contributions.  Again, federal law specifically so provides, as the Second Amended Complaint admits.  (SAC ¶ 206.)  Under 26 U.S.C. § 527, a political organization's income is exempt from tax to the extent it arises from an "exempt function," which the statute defines to include, among other things, "a contribution of money or other property" and "proceeds from the sale of campaign materials, *which are not received in the ordinary course of any trade or business*."  26 U.S.C. §527(c)(3) (emphasis added).  The regulations further clarify the exemption:

> Proceeds from the sale of political memorabilia, bumper stickers, campaign buttons, hats, shirts, political posters, stationery, jewelry, or cookbooks are related to such a political activity [and are therefore exempt] where such items can be identified as relating to distributing political literature or organizing voters to vote for a candidate for public office.

29 C.F.R. §1.527-3(e).

Indeed, the FEC specifically required the Campaign to treat the funds received from its sales of merchandise as contributions, rather than as income from any trade or business.  Because the Campaign sold these items at cost and earned no profit on them, the Campaign initially reported the sales to the FEC as part of "other receipts," describing them as "sales of merchandise at cost." (Bloom Decl. Ex. 4.)  In response the FEC instructed the Campaign to disclose the merchandise sales as "contributions from individuals" rather than as "other receipts."  (*Id.*, Ex. 5.)  The Campaign accordingly amended its reports to show the merchandise sales as contributions.  (*Id.*, Ex. 6.)[8]  The FEC thus instructed the Campaign to designate receipts from the sale of merchandise

---

[7] As noted in a media article relied on by Plaintiffs in the Second Amended Complaint, the Campaign was "entirely self-funded" by campaign contributions from Mr. Bloomberg personally.  (*See* SAC ¶ 15 n.4 (citing Lisa Lerer, *Michael Bloomberg Is Open to Spending $1 Billion to Defeat Trump*, N.Y. Times (Jan. 11, 2020), https://www.nytimes.com/2020/01/11/us/politics/michael-bloomberg-spending.html.)

[8] The Court may take judicial notice of Exhibits 4 – 6 to the Bloom Declaration, which are regulatory filings that are publicly available at https://www.fec.gov/data/committee/C00728154/?tab=filings.  *See* n.6, *supra*.

as tax-exempt, and not as income arising from any "trade or business."  *See* 26 U.S.C. §527(c)(3)(C); *Mobile Republican Assembly v. U.S*., 353 F.3d 1357, 1359 (11th Cir. 2003) ("Congress enacted 26 U.S.C. §527 in 1975 in order to shield contributions to political organizations from taxation as income.").

For the same reason, it makes no difference that other online sellers also offered items related to Mr. Bloomberg's candidacy, as the Second Amended Complaint alleges.  (SAC ¶¶ 192-200.)  Because the Campaign's merchandise sales were noncommercial campaign contributions, the resulting revenue was not received "in the ordinary course of any trade or business," as was the grocery store revenue in *Alamo Foundation*; as a matter of law, the political contributions that the merchandise sales represent are akin to the charitable contributions in *Locke*, *Kitchings*, and DOL Opinion Letter FLSA2008-8 that were held not to arise from commercial activity.  More practically speaking, the Campaign was not competing with any other sellers of merchandise; Plaintiffs do not allege that the Campaign had an interest in outselling anyone else; if a voter bought a hat or t-shirt from another seller, the Campaign's sole mission – to raise awareness of and encourage support for Mr. Bloomberg's candidacy – was clearly accomplished.  The Campaign did not engage in commerce, and is not an "enterprise" subject to the FLSA.

### B.   THE PLAINTIFFS ARE NOT COVERED INDIVIDUALS.

Plaintiffs' alternative route to FLSA coverage, through the "individual coverage" provision, requires evidence that they, and those to whom they propose to send notice, were subject to a common policy that required them to be "engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a) (minimum wage), 207(a)(1) (overtime).  Plaintiffs have no hope of making that showing, because they do not contend (nor could they) that they were engaged in "the production of goods," and as a matter of law they were not engaged in "commerce."

Just as the FLSA's enterprise coverage provisions extend only to entities conducting

commercial activity with a "business purpose" in competition with other businesses, the individual provisions extend coverage only to employees who are "engaged in commerce."  None of the Plaintiffs are alleged to have had such job duties, and the FLSA therefore does not apply to them.

In its effort to satisfy the individual-coverage requirements for campaign employees whose predominant work was entirely within a single state, the Second Amended Complaint alleges only that the Plaintiffs participated in some telephone calls or emails, either with the Campaign's New York headquarters about the status of the campaign, or calling voters in other states, to urge them to turn out and vote for Mr. Bloomberg.  (*See* SAC ¶¶ 68-73.)  As a matter of law, however, these interstate communications cannot satisfy the FLSA's requirement that the individual be "engaged in commerce," because the indisputable purpose of the communications was to advance the campaign, not to conduct business.  For example, Plaintiffs allege that their jobs included "making phone calls nationwide to potential voters to promote Mr. Bloomberg's candidacy for President of the United States and to recruit volunteers to aid in phone banking and canvassing efforts for Mr. Bloomberg's Campaign."  (SAC ¶ 224.)  Taking that allegation as true for these purposes, none of those calls was "commercial"; it was work performed in the course of providing tax-exempt political advocacy for a candidate, and that non-commercial activity falls outside the scope of the FLSA.

Congress's limitation of covered employees to those "engaged in commerce," rather than those whose work activities "affect" or "involve" commerce, has long been interpreted to mean that "Congress did not choose to exert its power to the full."  *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 128 (1943); *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 500 (5th Cir. 1975) ("the 'engaged in commerce' language was far short of the reach of federal power under the Commerce

Clause").[9]  The Supreme Court has similarly interpreted the phrase in the Federal Arbitration Act, 9 U.S.C. §§1, *et seq.*, which uses both the "engaged in commerce" phrase in describing exceptions from the Act, and "involving commerce" in describing the reach of the Act.  *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) ("the general words 'in commerce' and the specific phrase 'engaged in commerce' are understood to have a more limited reach" than the terms "affecting" or "involving" commerce).  An incidental or passing effect on commerce, accordingly, is not enough; Plaintiffs must show that they are directly engaged in commerce.  As the court explained in *Joles v. Johnson County Youth Service Bureau, Inc*., 885 F. Supp. 1169, 1178 (S.D. Ind. 1995): "For an employee to be 'engaged in commerce' she must be either directly participating in the actual movement of persons or things in interstate commerce or doing work directly supporting the movement of goods in interstate commerce."  Political advocacy does not come close to meeting that definition.

For these reasons, where facilities of interstate commerce are used to further a non-commercial mission, the FLSA does not apply.  In *Kitchings*, for example, the plaintiffs were "houseparents" who cared for abused or neglected children at a non-profit center.  393 F. Supp. 2d at 1285-86.  Their work was performed intrastate, and their only use of interstate communications was accessing the Internet to assist the children with homework assignments.  *Id*. at 1286.  The court rejected their claim to individual FLSA coverage, because their use of the Internet for non-commercial purposes to assist them in their charitable work was not sufficiently commercial.  *Id*. at 1292.  Similarly, in *Reagor*, the court held that the plaintiff, a worker at a domestic violence

---

[9] *See also Kirschbaum v. Walling*, 316 U.S. 517, 522-23 (1942) ("The history of the [FLSA] leaves no doubt that Congress chose not to enter areas which it might have occupied. . . . [T]he scope of the Act is not coextensive with the limits of the power of Congress over commerce"); *Walling v. Jacksonville Paper Co*., 317 U.S. 564, 570 (1943) ("In this connection we cannot be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states. Moreover as we stated in [*Kirschbaum Co*.], Congress did not exercise in this Act the full scope of the commerce power.").

shelter, could not establish individual coverage through her work in helping the shelter's residents obtain or upgrade cellular telephone service, because she "provided that help as part of the charitable activities of [the center], not as a competitor in the cellular telephone business." 501 F. App'x at 810.  The same reasoning applies here: any interstate calls, emails, or other communications were entirely to further the non-commercial activities of the Campaign.

More broadly, in *Divins v. Hazeltine Electronics Corp*., 163 F.2d 100 (2d Cir. 1947), the plaintiffs' employer contracted with the U.S. Navy to recruit and train field engineers to install and repair radar equipment on Navy ships.  The Court held that the FLSA did not extend to their work on most ships, because they were "war vessels operated . . . in the prosecution of the war," and therefore were "instrumentalities of war, not of commerce."  *Id*. at 102.  While the ships occasionally were used for transportation of personnel or the transmission of messages, activities that "literally satisf[y] the statutory definition of commerce," the work still was not covered by the FLSA because "such transportation or communication is merely incidental to the war purpose for which the vessel is actually being used."  *Id*.[10]

The Campaign was no more in commerce than the warships in *Divins*, and Plaintiffs' efforts to persuade voters to favor Mr. Bloomberg's candidacy fall outside the FLSA's individual coverage provisions.  Plaintiffs' FLSA claim should therefore be dismissed.[11]

---

[10] The court remanded the matter because certain other ships, including "armed cargo transports" and "armed transports," appeared to be use more for commercial purposes "even though the goods or persons they transport will be devoted to the war effort after arrival at destination."  *Id*.

[11] As set forth in Defendant's opposition to Plaintiffs' pending motion for conditional certification, any claim to individual coverage also fails because Plaintiffs' political advocacy, even if it were misinterpreted as "commerce," was both too tangentially related to interstate commerce and too infrequent to qualify for such coverage.  (*See* Dkt. 94 at 15-19.)  Because dismissal of Plaintiffs' FLSA claim would moot Plaintiffs' motion for conditional certification of a collective with respect to that claim, Defendant respectfully submits that the instant motion to dismiss should be decided before the Court considers the motion for conditional certification.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM OF FRAUDULENT INDUCEMENT.

Plaintiffs' fraudulent inducement claim fails as a matter of law because Plaintiffs cannot establish the requisite elements of such a claim.  The Second Amended Complaint also fails to satisfy the heightened pleading standard applicable to fraud claims under Fed. R. Civ. P. 9(b).

### A.    PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM FAILS ON THE MERITS.

To state a claim for fraudulent inducement under New York law, a plaintiff must allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012).[12]  Plaintiffs' allegations do not satisfy any of these elements.

#### 1.    *Plaintiffs Do Not Allege A Misrepresentation of Present Fact.*

A fraudulent inducement claim requires a "misrepresentation of a present, material existing fact." *MCI Worldcom Commc'ns, Inc. v. N. Am. Commc'ns Control, Inc.*, No. 98-cv-6818 (LTS),

---

[12] New York law governs Plaintiffs' claims under the choice-of-law clause in the Confidentiality Agreements attached to the Offer Letters. (Sayers Decl., Exs. 1 – 50 at p. 7.)  *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) ("Under New York law, 'courts will generally enforce choice-of-law clauses'") (citing *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015)).  Moreover, to the extent that Plaintiffs worked in other states, SAC ¶ 228, there is no conflict between the substantive laws of those states and New York regarding the elements of a fraudulent inducement claim. *See Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1152 (D. Ariz. 2016) (Arizona law); *Oster v. Caithness Corp.*, No. 16-cv-03164, 2017 WL 3727174, at *13 (N.D. Cal. Aug. 30, 2017) (California law); *Kirzhner v. Silverstein*, No. 09-cv-02858, 2011 WL 4382560, at *9 (D. Colo. Sept. 20, 2011) (Colorado law); *Centennial Bank v. Servisfirst Bank Inc.*, No. 16-cv-88-T-36JSS, 2016 WL 6037539, at *5 (M.D. Fla. Oct. 14, 2016) (Florida law); *Dow v. Cradlepoint, Inc.*, No. 16-cv-3341, 2017 WL 10562980, at *9 (N.D. Ga. June 13, 2017) (Georgia law); *Martinez-Cruz v. N. Central Coll.*, 2013 WL 6498761, at *4 (N.D. Ill. Dec. 11, 2013) (Illinois law); *Rodden v. Savin Hill Enterprises, LLC*, No. 15-03194-C, 2016 WL 1688688, at *6 (Mass. Super. Apr. 21, 2016) (Massachusetts law); *Leininger v. Reliastar Life Ins. Co.*, No. 06-cv-12249, 2007 WL 2875283, at *19 (E.D. Mich. Sept. 28, 2007) (Michigan law); *Dupuis v. GATR of Sauk Rapids, Inc.*, 2018 WL 3614320, at *2 (Minn. Ct. App. 2018) (Minnesota law); *Worbetz v. Ward N. Am., Inc.*, 54 F. App'x 526, 532 (3d Cir. 2002) (New Jersey law); *McQuade v. Xerox Corp.*, 2011 WL 344091, at *7-8 (E.D.N.C. Feb. 1, 2011) (North Carolina law); *Woods v. Era Med LLC*, 677 F. Supp. 2d 806, 823 (E.D. Pa. 2010) (Pennsylvania law); *Lucio v. Fern at Tenth LLC*, No. 19-cv-189, 2019 WL 4993418, at *4 (S.D. Tex. Oct. 8, 2019) (Texas law); *Kassin v. Select Grp., LLC*, No. 16-cv-1263, 2016 WL 7331556, at *5 (E.D. Va. Dec. 16, 2016) (Virginia law); *Cousins Subs Sys., Inc. v. McKinney*, 59 F. Supp. 2d 816, 820-21 (E.D. Wis. Aug. 5, 1999) (Wisconsin law).  Accordingly, because there is no substantive conflict of law, "New York dispenses with the choice-of-law analysis." *Dhir v. Carlyle Grp. Emp. Co.*, No. 16-cv-06378 (RJS), 2017 WL 4402566, at *4 (S.D.N.Y. Sept. 29, 2017) (citation omitted).

2003 WL 21279446, at *10 (S.D.N.Y. June 4, 2003) (Swain, J.) (granting motion to dismiss fraudulent inducement claim where plaintiffs failed to allege a misrepresentation of a present fact); *see also Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 525 (S.D.N.Y. 2017) ("the false representation must be one 'of present fact' rather than a future promise, [] because breach of a future promise sounds in contract"). Consistent with that rule, and as dispositive here, "'claims of fraudulent inducement based on future promises of continued employment in an at-will employment context are not cognizable' under New York law." *Id.*; *see also Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-cv-5474 (JGK), 2008 WL 857492, at *16 (S.D.N.Y. Mar. 31, 2008) (same); *Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 316 (S.D.N.Y. 2005) (same).

In support of their fraudulent inducement claim, Plaintiffs allege that the Campaign promised to "employ and/or provide them with the opportunity to work on the primary and general elections to support the Democratic presidential nominee, pay them wages, and provide healthcare and other benefits through November 2020," regardless of whether Mr. Bloomberg won the Democratic nomination. (*See, e.g.*, SAC ¶¶ 3, 7, 231, 416.) Because the alleged misrepresentations described in the Second Amended Complaint concern a purported ***future*** promise of continued employment, and do not concern any present existing facts, Plaintiffs cannot establish the first element of a fraudulent inducement claim. That failure alone requires dismissal of the claim.

### 2. *Plaintiffs Do Not Allege An Intent to Deceive.*

Under Rule 9(b)'s heightened pleading standard, Plaintiffs must "allege facts giving rise to a *strong inference* of fraudulent intent." *Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 10-cv-2249 (LTS), 2011 WL 666187, at *5 (S.D.N.Y. Feb. 9, 2011) (Swain, J.) (emphasis added) (granting motion to dismiss fraudulent inducement claim); *see also infra* Point II.B (discussing heightened pleading standard for fraud claims). "The requisite 'strong inference' of

18

fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *see also Wexler v. Allegion (UK) Ltd.*, No. 16-cv-2252 (ER), 2018 WL 1626346, at *7 (S.D.N.Y. Mar. 30, 2018) ("To qualify as 'strong,' an inference of fraud must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of the other explanations.") (citation omitted).

Here, Plaintiffs rely entirely on the suggestion that the Campaign's late start provided a motive to make allegedly false promises so as to speed up hiring.  (SAC ¶¶ 3-6.)  But even if they could prove that promises were made, a need to build staff quickly does not permit a "strong inference" that the Campaign knew *at the time* that it would terminate the field staff's employment before November 2020.  To the contrary, even taking Plaintiffs' allegations as true, they are equally compatible with the opposite inference: that the Campaign made offers in good faith, and only later decided to terminate employment after considering the election results on Super Tuesday and re-assessing the best way to assist the party going forward.  *See Cloke-Browne*, 2011 WL 666187, at *5 (granting motion to dismiss where the complaint "fail[ed] to allege facts giving rise to a strong inference of fraudulent intent"); *Deluca*, 2008 WL 857492, at *16 (granting motion to dismiss; "Beyond conclusory allegations, the plaintiff has adduced no evidence to show that Mr. Yasuda's alleged promises were false *and known to be false when made*.") (emphasis added).  Thus, Plaintiffs fail to support the "strong inference" of scienter necessary to state a claim for fraud.[13]

---

[13]The only other allegation in the Second Amended Complaint regarding the Campaign's motive to deceive is the entirely conclusory allegation, based upon "information and belief," that "the Campaign knew the promises to be false and had the undisclosed intent of not performing the promises at the time the promises were made."  (SAC ¶ 8.)  This is precisely the type of circular, conclusory allegation of scienter that Rule 9(b) precludes.  *See Shaoxing Daqin Imp.*

### 3. *Plaintiffs Cannot Establish Reasonable Reliance.*

Plaintiffs also cannot establish the essential element of reasonable reliance because "reliance on a future promise of employment by an at-will employee is unreasonable as a matter of law." *Downey*, 238 F. Supp. at 525; *see also Deluca*, 2008 WL 857492, at *16 ("Any reliance upon a promise of future employment is unreasonable because an employee can be dismissed at any time."); *Brady*, 406 F. Supp. 2d at 17 (same); *Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007) (in light of at-will status, "any reliance on representations of future intentions, such as job security or future changes, would be deemed unreasonable as a matter of law"); *Berger v. Roosevelt Inv. Grp. Inc.*, 28 A.D.3d 345, 346 (1st Dep't 2006) ("plaintiff could not establish reasonable reliance on any alleged misrepresentation of defendant with respect to the length of his employment, since he was an at-will employee").

The decision in *Wurtsbaugh v. Banc of America Securities LLC*, No. 05-cv-6220 (DLC), 2006 WL 1683416 (S.D.N.Y. June 20, 2006) is instructive.  In that case, the plaintiff alleged that he was told that his "classification as an at-will employee was merely a formality and that his employment [] would not be at jeopardy during the term of the Agreement." *Id*., at *7.  The Court granted the defendant's motion to dismiss the fraudulent inducement claim, holding that because "[Plaintiff]'s employment contract defined his status as that of an at-will employee[,] [a]ny reliance on oral representations about the term of his employment was therefore unreasonable under New York law." *Id*.

So too here.  Because Plaintiffs acknowledged and agreed in the Offer Letters that their employment was "at will" and could be terminated "at any time, with or without notice and with

---

*& Exp. Co. v. Notations, Inc.*, No. 19-cv-2732 (JSR), 2019 WL 6498397, at *6 (S.D.N.Y. Dec. 3, 2019) ("[M]ere failure of promised performance has never permitted a factual finding that defendants never intended to perform.") (citation omitted).

or without cause, for any reason or for no reason" (Sayers Decl., Exs. 1 – 50 at p. 1), and reiterated this understanding when they acknowledged the Employee Handbook (*id.*, Ex. 51 at p. 5), any reliance on an alleged promise of continued employment through the general election in November 2020 was unreasonable as a matter of law.

### 4.    *Plaintiffs Do Not Allege Any Legally Cognizable Injury.*

Plaintiffs' fraudulent inducement claim also fails because they do not allege a legally cognizable injury.  "[A] party seeking to establish a fraud claim independent of a breach of contract claim in the employment context must plead an 'injury independent of termination.'"  *Tellez v. OTG Interactive, LLC*, No. 15-cv-8984 (LTS), 2016 WL 5376214, at *4 (S.D.N.Y. Sept. 26, 2016) (Swain, J.) (quoting *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 59 (2008)).

Here, in pleading the damages element of their fraudulent inducement claim, Plaintiffs allege that they "have been damaged by losing their jobs with the Campaign approximately eight months early, losing their income, and losing their healthcare and other benefits."  (SAC ¶ 423.) In other words, Plaintiffs' alleged damages flow directly from their terminations.  Because Plaintiffs "allege[] no injury separate and distinct from termination of their at-will employment … [P]laintiffs cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort."  *Smalley*, 10 N.Y.3d at 59; *see also Kinsella v. Powerguard Specialty Ins. Servs., LLC*, 112 A.D.3d 414, 415 (1st Dep't 2013) (affirming grant of motion to dismiss fraudulent inducement claim where "Plaintiff failed to sufficiently allege … damages separate from his termination from PowerGuard, his at-will employer").

### B.    THE SECOND AMENDED COMPLAINT FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARD FOR FRAUD CLAIMS.

Plaintiffs' fraudulent inducement claim must also be dismissed because the Second Amended Complaint fails to satisfy the heightened pleading standards applicable to fraud claims

under Fed. R. Civ. P. 9(b).  Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud ...."  Fed. R. Civ. P. 9(b).  To satisfy that standard, a complaint must "allege facts giving rise to a *strong inference* of fraudulent intent."  *Cloke-Browne*, 2011 WL 666187, at *5 (emphasis added).  More specifically, it "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Id*.; *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (same). "Failure to satisfy the Rule 9(b) standard is grounds for dismissal."  *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012) (citing *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).

Here, the Second Amended Complaint fails altogether to identify *who* made the allegedly false statements to each of the Plaintiffs, *when* or *where* such statements were purportedly made, or any specific facts whatsoever to suggest fraudulent intent.  *See supra* Point II.A.2.  For example, the Second Amended Complaint alleges that "on or about December 15, 2019, Mr. Bloomberg publicly stated *to employees* at an event to mark the opening of the Campaign's Charlotte, North Carolina office that the employees would remain employed through November 2020."  (SAC ¶ 11, emphasis added.)  But the Second Amended Complaint does not allege that any particular Plaintiff was present at this event; nor can it, as the Campaign only began hiring Plaintiffs as employees weeks *after* this event in January 2020.  (SAC ¶ 2.)  The Second Amended Complaint also refers to purported "promises" in various public statements and media articles, SAC ¶¶ 12-16, 18, but does not allege that any particular Plaintiff was aware of any specific alleged statement or article when they joined the Campaign.  Similarly, the Second Amended Complaint refers to "an email sent to all Campaign employees on or about January 13, 2020" from Dan Kanninen, the States

Director for the Campaign, SAC ¶ 17, but does not allege that any particular Plaintiff was employed on that date or received that email.[14]  Finally, the Second Amended Complaint alleges that various Campaign employees and managers made "false statements," SAC ¶ 24, but does not specify the content of those statements or identify any particular Plaintiff to whom such statements were made.

Such failures are fatal to Plaintiffs' fraudulent inducement claim.  *See Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13-cv-6935 (KPF), 2015 WL 4743542, at *8 (S.D.N.Y. Aug. 11, 2015) (granting motion to dismiss fraudulent inducement claim where the complaint failed to allege "a specific statement *to Plaintiff*") (emphasis added); *see also Cloke-Browne*, 2011 WL 666187, at *5 (granting motion to dismiss fraudulent inducement claim where the complaint only identified the speakers but "proffer[ed] no specification of time and place as to any of the alleged statements" and failed "to allege facts giving rise to a strong inference of fraudulent intent"); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 324 (S.D.N.Y. 2012) (granting motion to dismiss fraudulent inducement claim where the complaint gave "only a general description of the statements that [plaintiff] contends were fraudulent and fail[ed] altogether to identify 'where and when the statements were made'"); *Schlenger v. Fid. Emp'r Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) ("Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9.").

---

[14] Indeed, approximately half of the Plaintiffs did not join the Campaign as employees until February 2020, more than two weeks *after* the email was purportedly sent.  (SAC ¶¶ 87, 97, 99, 111, 113, 117, 119, 121, 127, 131, 135, 141, 149, 155, 162, 166, 168, 170, 172, 174, 176.)  Moreover, the email, which purportedly stated "We will have folks on the ground talking to voters every single day from now to November 3, 2020," SAC ¶ 17, says nothing about any particular Plaintiff remaining employed with the Campaign through that date.

### III.    PLAINTIFFS FAIL TO STATE A CLAIM OF PROMISSORY ESTOPPEL.

Plaintiffs' promissory estoppel claim similarly fails as a matter of law for at least two independent reasons.  *First*, promissory estoppel is not recognized in the employment context. *Second*, Plaintiffs cannot establish the requisite elements of a promissory estoppel claim.

#### A.    PROMISSORY ESTOPPEL IS NOT RECOGNIZED IN THE EMPLOYMENT CONTEXT.

Plaintiffs' promissory estoppel claim fails at the very outset because it is well settled that "New York law does not recognize promissory estoppel in the employment context."  *Bessemer Tr. Co. v. Branin*, 498 F. Supp. 2d 632, 639 (S.D.N.Y. 2007), *aff'd*, 618 F.3d 76 (2d Cir. 2010); *see also Andrews v. Sotheby Int'l Realty, Inc.*, No. 12-cv-8824 (RA), 2014 WL 626968, at *10 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586 F. App'x 76 (2d Cir. 2014) (granting motion to dismiss on this basis); *Allison v. Clos-ette Too, LLC*, No. 14-cv-1618 (LAK)(JCF), 2014 WL 4996358, at *9 (S.D.N.Y. Sept. 15, 2014), *report and recommendation adopted*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014) (same).  Accordingly, Plaintiffs' promissory estoppel claim "must be dismissed without further analysis."  *Kramsky v. Chetrit Grp., LLC*, No. 10-cv-2638 (HB), 2011 WL 2326920, at *4 (S.D.N.Y. June 13, 2011).

#### B.    PLAINTIFFS' PROMISSORY ESTOPPEL CLAIM FAILS ON THE MERITS.

Even if New York law recognized promissory estoppel in the employment context, which it does not, dismissal of Plaintiffs' promissory estoppel claim would still be mandated because the Second Amended Complaint fails to state a cognizable claim for promissory estoppel.  To state a claim for promissory estoppel under New York law, a plaintiff must allege "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). "[P]romissory estoppel is a narrow doctrine typically applied only when the plaintiff has suffered an 'unconscionable injury' or when otherwise 'necessary to avoid injustice.'"  *Dhir v. Carlyle Grp.*

*Emp. Co.*, No. 16-cv-06378 (RJS), 2017 WL 4402566, at *9 (S.D.N.Y. Sept. 29, 2017) (citation omitted).[15]  Plaintiffs' allegations are palpably insufficient to satisfy the second or third elements of a promissory estoppel claim.[16]

### 1.   *Plaintiffs Cannot Establish Reasonable Reliance.*

As discussed above in the context of Plaintiffs' fraudulent inducement claim, the Second Amended Complaint fails to allege reasonable reliance.  *See supra* Point II.A.3.  Because Plaintiffs were at-will employees who expressly acknowledged and agreed in the Offer Letters that their employment could be terminated at any time, and who had no way of knowing whether their performance would meet the Campaign's standards, they could not, as a matter of law, "reasonably" have relied on an alleged promise of continued employment.  *See Leschak v.*

---

[15]As with Plaintiffs' fraudulent inducement claim, *see* n.12, *supra*, there is no conflict between the substantive laws of the states in which Plaintiffs worked (except for Virginia, which does not recognize promissory estoppel as a cause of action), on the one hand, and New York, on the other, with respect to the elements of a promissory estoppel claim. *See Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (Ct. App. 2002) (Arizona law); *Oster*, 2017 WL 3727174, at *13 (California law); *Alvariza v. Home Depot*, No. CIV.A. 05-cv-02590EW, 2007 WL 794187, at *10 (D. Colo. Mar. 14, 2007) (Colorado law); *Winnie v. Infectious Disease Assocs., P.A.*, No. 15-cv-2727-T-35MAP, 2016 WL 11670293, at *6 (M.D. Fla. Sept. 21, 2016) (Florida law); *Simpson v. Carolina Builders Corp.*, No. 03-cv-0758 (HTW), 2005 WL 8157403, at *5 (N.D. Ga. Mar. 15, 2005) (Georgia law); *Ross v. May Co.*, 377 Ill.App.3d 387, 393 (Ill. App. Ct., 1st Div., 2007) (Illinois law); *Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 245 (D. Mass. 2019) (Massachusetts law); *Shaughnessy v. Interpublic Grp. of Cos., Inc.*, 506 F. App'x 369, 377 (6th Cir. 2012) (Michigan law); *Burns v. Kraft Foods N. Am., Inc.*, 2004 WL 2283548, at *3 (D. Minn. Aug. 26, 2004) (Minnesota law); Worbetz., 54 F. App'x at 537 (New Jersey law); *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 590-91 (M.D.N.C. Aug. 21, 2003) (North Carolina law); *Woods*, 677 F. Supp. 2d at 822 (Pennsylvania law); *Lucio*, 2019 WL 4993418, at *5 (Texas law); *Harmon v. Dyncorp Int'l, Inc.*, No. 13-cv-1597, 2015 WL 518594, at *14 (E.D. Va. Feb. 6, 2015), *aff'd*, 624 F. App'x 104 (4th Cir. 2015) (Virginia law); *Reif v. Assisted Living by Hillcrest LLC*, 2018 WL 5810514, at *4 (E.D. Wis. Nov. 6, 2018) (Wisconsin law).

[16] To the extent that Plaintiffs rely on generalized statements reported in the press regarding the Campaign's purported expectation that activities would continue through the general election in November 2020, *see* SAC ¶¶ 12-16, 18, none of those statements constitute a "clear and unambiguous promise" that any particular individual would be guaranteed to be part of that effort.  *See Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11-cv-6345 (RJS), 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012) ("A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel."); *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc*., No. 14-cv-1095 (SJF)(AKT), 2016 WL 11264722, at *39 (E.D.N.Y. Aug. 12, 2016) (dismissing promissory estoppel claim where plaintiff "fail[ed] to point to any specific statements … that could be construed as the type of explicit promise necessary to support a promissory estoppel claim); *Nardi v. Stevens Inst. of Tech.*, 60 F. Supp. 2d 31, 41 (E.D.N.Y. 1999) (finding that oral promises that plaintiff "would continue to remain employed at Stevens for as long as he obtained funding to support his research" were "less than clear in their articulation of the terms and conditions of plaintiff's employment," foreclosing plaintiff's claim based on promissory estoppel).

*Raiseworks, LLC*, No. 14-cv-8072 (FM), 2016 U.S. Dist. LEXIS 31785, at \*23-24 (S.D.N.Y. Mar. 7, 2016) ("[A] plaintiff ordinarily may not bring a promissory estoppel claim in the employment context … because at-will employment arrangements 'render[] any reliance on a representation of continuous employment unreasonable' … as a matter of law.); *Kramsky*, 2011 WL 2326920, at \*4 (same).

<strong>2.   <em>Plaintiffs Cannot Establish An Unconscionable Injury.</em></strong>

Plaintiffs' allegations also fail to satisfy the third element of promissory estoppel, which requires Plaintiffs to allege a missed opportunity "so valuable that injury of unconscionable proportions would flow from the failure to enforce the oral contract." *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-cv-8393 (KMK), 2007 WL 2780390, at \*6 (S.D.N.Y. Sept. 20, 2007) (citation omitted).

Here, Plaintiffs' allege that they relied on the Campaign's purported promises of continued employment by "resigning or taking leaves of absence from their then-current employment and relocating to different cities and/or states in order to work for the Campaign." (SAC ¶ 428.)  These allegations, even if credited as true for purposes of this motion, do not establish an unconscionable injury.  "It is well-settled that 'change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine.'"  *Stillman v. Townsend*, No. 05-cv-6612 (WHP), 2006 WL 2067035, at \*5 (S.D.N.Y. July 26, 2006) (granting motion to dismiss); *see also Rivera v. City of N.Y.*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005) (same); *Fishoff v. Coty Inc.*, 676 F. Supp. 2d 209, 219 (S.D.N.Y. 2009), *aff'd*, 634 F.3d 647 (2d Cir. 2011) (granting motion to dismiss; "Under New York law, the failure to switch employers does not create a promissory estoppel claim unless the plaintiff can show that unconscionable injury would result absent enforcement of the defendant's promise."); *George v. Thomas*, No. 19-cv-3020 (DLI)(PK), 2020 WL 1643486, at \*3 (E.D.N.Y. Mar. 31, 2020) (granting motion to dismiss promissory estoppel claim premised on

26

allegation that defendant persuaded plaintiff to close his business and move to the United States from Singapore causing hundreds of thousands of dollars in damages due to lost income he otherwise would have earned, holding that "[c]ourts routinely have held that these types of injuries do not qualify as unconscionable"); *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 176 (1st Dep't 1987) (affirming order granting motion to dismiss; "The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel.").

*   *   *

In sum, Plaintiffs have failed to state a legally cognizable claim of promissory estoppel.

## IV.  PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN.

As set forth above, the Second Amended Complaint should be dismissed in its entirety because Plaintiffs do not and cannot state a claim of fraudulent inducement or promissory estoppel. However, in the unlikely event that the Second Amended Complaint survives this motion to dismiss, which it should not, Plaintiffs' class allegations with respect to the Common Law Claims should be stricken because Plaintiffs' allegations are highly individualized and not suitable for class treatment.

### A.   THE COURT MAY STRIKE CLASS ALLEGATIONS AT THE PLEADING STAGE.

Rule 23, the rule governing class actions, authorizes the Court to strike class allegations. *See* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that [] require that the pleadings be amended to eliminate allegations about representation of absent persons."). "Although class certification typically occurs at a later stage of the proceedings, [a] motion to strike class allegations is procedurally permissible at the pleading stage." *Davis v. Navient Corp.*, No. 17-cv-00992 (LJV)(JJM), 2018 WL 1603871, at *4

(W.D.N.Y. Mar. 12, 2018), *report and recommendation adopted*, 2019 WL 360173 (W.D.N.Y. Jan. 29, 2019) (internal quotations omitted) (granting motion to strike class allegations); *see also Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 17-cv-0359 (LEK)(ATB), 2018 WL 679477, at *7 (N.D.N.Y. Feb. 1, 2018) ("A defendant may move to strike class claims before a plaintiff moves to certify the class."); *Murdock-Alexander v. Tempsnow Emp't & Placement Servs., LLC*, No. 16-cv-5182, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) ("The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage.").

The Campaign recognizes that, ordinarily, motions to strike class allegations are disfavored as premature where a plaintiff has not had an opportunity to conduct discovery. *Maddison*, 2018 WL 679477, at *7. But where, as here, "from the face of the complaint … it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery," courts may strike class allegations. *Id.* (internal citations and alterations omitted); *see also Santiago v. Merriman River Assocs., LLC*, No. 17-cv-2054 (VAB), 2018 WL 2465358, at *7 (D. Conn. June 1, 2018) ("A court may … exercise its discretion to strike parts of a class allegation at the motion-to-dismiss stage if those claims could not be maintained as a matter of law.").

## B.   THE HIGHLY INDIVIDUALIZED INQUIRIES NECESSARY TO PROVE PLAINTIFFS' COMMON LAW CLAIMS PRECLUDE CLASS TREATMENT.

Rule 23(a) contains four requirements for class certification: numerosity, commonality, typicality and adequacy. With regard to the commonality requirement, Rule 23(a)(2) requires that Plaintiffs' alleged common law claims are capable of being resolved class-wide "in one stroke." *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 274 (S.D.N.Y. 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). In addition to the requirements for certification in Rule 23(a), Plaintiffs must also satisfy the requirements of Rule 23(b)(1), (2), or (3). Here, Plaintiffs seek to

certify their putative class Common Law Claims under Rule 23(b)(3).  (*See* SAC ¶ 239.)  Class certification thus is only proper if Plaintiffs meet their burden to show not only that common questions will predominate over the individual questions raised by each putative class member's Common Law Claims, but also that class treatment is superior to individual litigation.  Fed. R. Civ. P. 23(b)(3).  The Supreme Court and the Second Circuit have cautioned that Rule 23(b)(3)'s predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997); *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017).

Here, Plaintiffs' class allegations with respect to the Common Law Claims cannot satisfy Rules 23(a) and 23(b) because proving each of the elements of Plaintiffs' fraudulent inducement and promissory estoppel claims would require highly individualized inquiries.[17]

**1.      *Plaintiffs' Common Law Claims Require Individualized Inquiries Into The Substance Of Their Communications With The Campaign.***

As an initial matter, proving that the Campaign made material misrepresentations of present fact (the first element of Plaintiffs' fraudulent inducement claim, *see supra* Point II.A.1), or a clear and unambiguous promise (the first element of Plaintiffs' promissory estoppel claim, *see supra* Point III.B), would require inquiries into each putative class member's individualized communications with the Campaign.  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (affirming denial of plaintiffs' class certification motion; "to recover for a defendant's fraudulent conduct, even if that fraud is the result of a common course of conduct, each plaintiff must prove that he or she personally received a material misrepresentation"); *Davis*, 2018 WL 1603871, at *7 (granting motion to strike class allegations in part due to need for individualized

---

[17] Plaintiffs also allege that the Common Law Claims are appropriate for certification under Rule 23(c)(4), SAC ¶ 240, but do not specify which common issues would be the subject of an issues class.

analysis of the putative class members' communications with the defendant); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 702 (S.D. Ga. 2002) (denying class certification for a promissory estoppel claim because to establish a promise, "each class member would be relying on representations made to him or her and no one else").

### 2. Plaintiffs' Common Law Claims Require Individualized Inquiries Into Plaintiffs' State Of Mind.

Even if (contrary to the actual facts) each and every putative class member had received a firm promise of guaranteed employment through November 2020, proving that Plaintiffs reasonably relied on the representations—an essential element of Plaintiffs' fraudulent inducement and promissory estoppel claims (*see supra* Points II.A.3 and III.B.1)—would require the Court to examine each putative class member's state of mind.

In *Luedke v. Delta Airlines, Inc.*, former employees of Pan Am brought promissory estoppel and other claims against Delta Airlines premised on alleged assurances by Delta that it would provide financial assistance to Pan Am and assure continued employment with the airline as it reorganized in bankruptcy. *Luedke*, 155 B.R. 327, 328 (S.D.N.Y. 1993). Just like Plaintiffs allege here, *see* SAC ¶ 428, the plaintiffs in *Luedke* alleged that they declined to pursue other employment opportunities and relocated in reliance on Delta's representations. *Id*. at 328-29. The court denied plaintiffs' motion for class certification, explaining that the "task of evaluating the reasonableness of each claimant's belief that he or she was promised employment and could rely on such a promise has the potential to embroil the Court in thousands of fact-finding inquiries." *Id*. at 330. Here, although the Court should conclude that any reliance by Plaintiffs on purported promises of continued employment was unreasonable as a matter of law in light of their at-will status, *see supra* Points II.A.3 and III.B.1, in the event that the Court determines that it needs to evaluate the reasonableness of each proposed class member's reliance, it could not conduct that

30

analysis without engaging in "thousands of fact-finding inquiries." *Luedke*, 155 B.R. at 330.

For this reason, multiple other courts have similarly held that claims of promissory estoppel or fraud that include an element of reasonable reliance are not susceptible to class treatment. *See, e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (holding that "estoppel claims are typically inappropriate for class treatment" because they require individualized "proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment"); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) (recognizing that reliance element of fraud claim is not readily susceptible to class-wide proof); *Walney v. SWEPI LP*, No. 13-cv-102, 2015 WL 5333541, at *22 (W.D. Pa. Sept. 14, 2015) (holding promissory estoppel and fraud claims are not suitable for class-wide resolution in light of the individualized proof required to establish reasonable reliance); *Reynolds v. BLM Co., Inc.*, No. 12-cv-1105, 2014 WL 12888364, at *3 (W.D. Ark. Mar. 17, 2014) (denying class certification motion; "Without question, claims for promissory estoppel would require the consideration of individual evidence regarding reliance, which would overwhelm any common questions of law or fact presented by class claims.").[18]

### 3. *Plaintiffs' Promissory Estoppel Claim Requires Individualized Inquiries Into Plaintiffs' Purported Injuries.*

Likewise, proving the "injury" element of Plaintiffs' promissory estoppel claims would

---

[18] *See also Sateriale v. RJ Reynolds Tobacco Co.*, No. 09-cv-08394 (CAS), 2014 WL 7338877, at *12 (C.D. Cal. Dec. 19, 2014) (denying class certification for promissory estoppel claim because determining reliance requires an inquiry into each class member's state of mind and would "undermine any efficiencies that might be achieved by adjudicating this claim on a class-wide basis"); *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 328-29 (D. Del. 2012) (denying class certification for fraud and promissory estoppel claims for lack of predominance because, despite a common "promise" to all plaintiffs, "reliance will need to be proven on an individual class member basis" and analyzing reliance would "entail complicated mini-litigations focusing on the individual class members' knowledge and state of mind"); *Rowell v. Voortman Cookies, Ltd.*, No. 02-C-0681, 2005 WL 1026715, at *2 (N.D. Ill. Apr. 27, 2005) (denying class certification of promissory estoppel claims due to individual inquiries into question of reasonable reliance); *Thompson v. Cmty. Ins. Co.*, 213 F.R.D. 284, 296 n.8 (S.D. Ohio 2002) ("claims of fraud and promissory estoppel are generally inappropriate for class treatment, because of the need to provide individualized evidence of reliance").

also require highly individualized inquiries into each putative class member's specific circumstances, including any other opportunities they gave up to join the Campaign. *See Salon Fad v. L'Oreal USA, Inc.*, No. 10-cv-5063 (DLC), 2011 WL 4089902, at *11 (S.D.N.Y. Sept. 14, 2011) (denying class certification because plaintiffs "failed to demonstrate that the alleged injury … is susceptible of class-wide proof"); *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("When a case turns on individualized proof of injury, separate trials are in order."); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir. 1996) (holding that fraudulent inducement claim was "not susceptible to class-wide proof" because "[e]ven if the plaintiffs are able to prove that Delta disseminated a false and uniform message to all potential retirees that no such plan was in the works at the time they made their decision to retire, they would also have to show that all members of the class would have deferred their retirement … [which] would necessarily have been highly individualized for each potential retiree").

A recent decision in which a court in the Second Circuit granted a motion to strike class allegations is on point.  In *Davis v. Navient Corp.*, the plaintiff asserted claims against a student loan servicer on behalf of himself and a class premised on purported misrepresentations regarding his best loan repayment options.  *Davis*, 2018 WL 1603871, at *1 (W.D.N.Y. Mar. 12, 2018).  In granting the defendants' motion to strike the class allegations, the court held that "[t]he principles that render fraud claims unsuited for class certification are equally applicable here," and concluded that the lack of uniformity among the putative class members as to their alleged injuries precluded class certification.  *Id.* at *7.

The same reasoning applies here.  It is clear from the face of the Second Amended Complaint that Plaintiffs' allegation that they and members of the putative class were injured by

"resigning or taking leaves of absence from their then-current employment and relocating to different cities and/or states in order to work for the Campaign," SAC ¶ 428, cannot be established though common proof.  In order to determine whether the proposed class members sustained unconscionable injuries, *see supra* Point III.B.2, the Court will have to engage in a highly-individualized inquiry regarding these specific circumstances, which would depend on a specific, case-by-case analysis.

*   *   *

In sum, analyzing each of the elements of Plaintiffs' Common Law Claims would necessitate highly individualized inquiries that dwarf any claimed common issues of fact that could be decided for the class, making a class-wide trial unmanageable.  Accordingly, Plaintiffs' class allegations with respect to the Common Law Claims should be stricken.

## V.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE AND WITHOUT PERMITTING FURTHER ATTEMPTS TO AMEND.

Plaintiffs' FLSA claim and Common Law Claims should be fully dismissed with prejudice. Where plaintiffs are unable to demonstrate that amendments would permit the complaint to survive dismissal—and *especially* where they have already had an opportunity to amend—an opportunity to replead is "rightfully denied."  *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also Miller v. Pac. Inv. Mgmt. Co. LLC*, No. 12-cv-4122 (LTS)(JCF), 2013 WL 12305507, at *4 (S.D.N.Y. Apr. 23, 2013) (Swain, J.) ("leave to amend need not be granted in the face of prior attempts to cure pleading deficiencies").  Plaintiffs have already amended their original Complaint twice, *see* Dkt. 29 and 86, and therefore have had more than ample opportunity to attempt to cure the defects in their claims.  As set forth above, those amendments were futile; they do not cure the numerous, independent grounds warranting dismissal discussed above. *See Lefebvre v. Morgan*, 234 F. Supp. 3d 445, 461 (S.D.N.Y. 2017) (granting a motion to dismiss with prejudice where the

plaintiff had already benefited from two amended complaints); *Panzella v. City of Newburgh*, 231 F.Supp.3d 1, 10 n.4 (S.D.N.Y. 2017) (dismissing claims with prejudice where the plaintiffs had already amended their complaint once in response to the defendant's pre-motion conference letter). Plaintiffs cannot cure these defects in a future amended pleading, especially because there is no way to avoid the inescapable and dispositive conclusions that the FLSA does not apply to the Campaign and that Plaintiffs could not reasonably have relied on any purported promises regarding continued employment given their at-will status.  Therefore, Plaintiffs should not be given yet another bite at the proverbial apple when their first two attempts have proven fruitless.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant Defendant's motion to dismiss the FLSA claim and Common Law Claims with prejudice, or, in the alternative, strike the class allegations with respect to the Common Law Claims, together with such other and further relief as the Court deems just and proper.

Dated: June 17, 2020

PROSKAUER ROSE LLP

*/s/ Elise M. Bloom*
Elise M. Bloom
Rachel S. Philion
Pinchos N. Goldberg

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
ebloom@proskauer.com
rphilion@proskauer.com
pgoldberg@proskauer.com

Mark W. Batten
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(T)  617.526.9850
mbatten@proskauer.com

VENABLE LLP

Nicholas M. Reiter
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(T)  212.307.5500
nmreiter@venable.com

*Attorneys for Defendant*
MIKE BLOOMBERG 2020, INC.