# EXHIBIT 1

DocuSign Envelope ID: 5B41299D-A600-4B68-A367-AA30E31095CE

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Donna Wood

Re:      Offer of Employment

Dear Donna:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.    The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.    As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

    1.    No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team. We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
1/24/2020

_____
Katherine Sayers
January 23, 2020

DocuSigned by:

_____
Donna Wood

D3D0F1E3B1C0446...

_____
Donna Wood

DocuSign Envelope ID: 5B41295B-A600-4B68-A367-AA30E21095CE

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.  Employee's regular rate of pay: $3,000.00 semi-monthly

    3.  FLSA Status: Exempt

    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Donna Wood*

D3D0F1E3B1C0446...

_____

Donna Wood

1/24/2020

_____

Date

-3-

<div align="right">**EXHIBIT A**</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 5B41129D8A600-4B68-9A67-4A30E2A005CE

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)  "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)  "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)  Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.  **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.  **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.  **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 5B41295B-A600-4B68-A367-AA30E21005CE   Case 1:20-cv-02489-LTS-GWG   Document 113-1   Filed 06/17/20   Page 8 of 942

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 5B41299D8A600-4B68-A367-AA30F21095CE

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

> (e)    <u>Survival</u>. The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

> (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

**EXHIBIT A**

        I, Donna Wood, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/24/2020

DocuSigned by:

*Donna Wood*

D3D0F1E3B1C0446...

Donna Wood

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 23, 2020

DocuSign Envelope ID: 5B4129D8-A600-4B88-A2B7-AA39E9A035CE

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

*DocuSigned by:*

*Donna Wood*

D3D0F1E3B1C0446...

Name: Donna Wood

1/24/2020

DocuSign Envelope ID: 5B4129D8-A600-4B88-A267-A43059A035CE

**EXHIBIT C**

## Prevention of Coordination Policy
### Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 5B4129D9-A600-4B88-A267-AA39F94035CE

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

   a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

   b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

   a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

   b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

   c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature   *Donna Wood*
DocuSigned by:
D3D0F1E3B1C0446...

Name: Donna Wood

1/24/2020

-14-

# EXHIBIT 2

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 24, 2020

Caelan Doherty

Re:  <u>Offer of Employment</u>

Dear Caelan:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 3E0A0DFF-F631-4FE6-921F-B68CFAC9BEC5

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/24/2020

_____
Katherine Sayers
January 24, 2020

DocuSigned by:

_____
Caelan Doherty

-2-

DocuSign Envelope ID: 3E0A0DFF-F631-4FE6-921F-B68CEA29BEC5

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Caelan Doherty*
AD47E4466E7C4D7...
_____
Caelan Doherty

1/24/2020
_____
Date

<div align="right">**EXHIBIT A**</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)   "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)   "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)   Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.   **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.   **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.   **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

## 9. Cooperation.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

## 10. General Provisions.

(a)     Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 3E0A0DFF-F631-4FE6-921F-B68CEAC9BEC5

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*        *        *

**EXHIBIT A**

I, Caelan Doherty, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/24/2020

*[DocuSigned by:]*
*Caelan Doherty*
AD47E4466E7C4D7...

Caelan Doherty

Acknowledged, accepted and agreed:

By: _____
     Name: Katherine Sayers
     Title: Authorized Signatory
     Date: January 24, 2020

EXHIBIT B

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

*Caelan Doherty*
AD47E4466E7C4D7...

Name: Caelan Doherty

1/24/2020

DocuSign Envelope ID: 3E0A0DFF-F631-4FE6-921F-B68CFA29BEC5

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 24, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 3E0A0DFF-F631-4FE6-921F-B68CFAC9BEC5

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Caelan Doherty*
DocuSigned by:
AD47E4466E7C4D7...

Name: Caelan Doherty

1/24/2020

# EXHIBIT 3

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

December 30, 2019

Max Goldstein

Re:      Offer of Employment

Dear Max:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

<div align="right">**EXHIBIT A**</div>

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 12/30/2019

_____

Katherine Sayers
December 30, 2019

DocuSigned by:

*Max Goldstein*

E65027547E584A1...

_____

Max Goldstein

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Max Goldstein*

E65027547E584A1...

_____

Max Goldstein

12/30/2019

_____

Date

DocuSign Envelope ID: E6C04905-57B8-4B84-BB76-F57EBEF0075A05

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a) Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b) Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c) Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)      "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)      Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.      **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.      **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.      **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: E6C04905-57B8-4B84-BB70-F3EBEE077A05

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

DocuSign Envelope ID: E6C04905-57B8-4B84-BB76-F3EBFF077A05

**EXHIBIT A**

I, Max Goldstein, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

12/30/2019

_Max Goldstein_
E65027547E584A1...

Max Goldstein

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: December 30, 2019

-9-

EXHIBIT B

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**


I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.


DocuSigned by:

*Max Goldstein*

E65027547E584A1...


12/30/2019

EXHIBIT C

## Prevention of Coordination Policy
Effective December 30, 2019

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

    a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

    b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

    c. The means or mode of the Committee's public communications;

    d. The timing or frequency of the Committee's public communications;

    e. The intended geographic or demographic audience of the Committee's public communications;

    f. The size (in dollars, time, or media points) of any media buys;

    g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

    h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

*Max Goldstein*

E65027547E584A1...

Name: Max Goldstein

12/30/2019

# EXHIBIT 4

DocuSign Envelope ID: E396DD4D-9C65-4974-888B-1FCB1A95298B

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 20, 2020

Bridget Logan

Re:     Offer of Employment

Dear Bridget:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

1.　　No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                            Acknowledged and agreed to
                                                                        This Date,
                                                                         1/20/2020


_____                              _____
Katherine Sayers                                              Bridget Logan
January 20, 2020

DocuSign Envelope ID: E396D24D-9C65-4074-888E-EF091A9529B8

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Bridget Logan*

5AF3C80D746E4CB...

_____

Bridget Logan

1/20/2020

_____

Date

-3-

DocuSign Envelope ID: E396D2AD-9C65-4974-888E-1FCB1A9529B9

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.　　**Confidential Information**.

(a)　　Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)　　Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)　　Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: E396D2AD-9C65-4074-988B-1FCB1A9529B8

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     Restrictions on Interfering.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: E396D2AD-9C65-4974-888F-1EC81A95298B

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)      "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)      "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)      Non-Disparagement.   I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.      **Reasonableness of Restrictions**.   I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.   I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.      **Independence; Severability; Blue Pencil**.   Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.   If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.   If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.      **Injunctive Relief**.   I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.   Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: E396D2AD-9C65-4074-888B-1FC91A8D29B8

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

      (e)   <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

      (f)   <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

**EXHIBIT A**

       I, Bridget Logan, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/20/2020

DocuSigned by:

*Bridget Logan*

5AF3C80D746E4CB...

Bridget Logan

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 20, 2020

DocuSign Envelope ID: E396DD4D-9C65-4074-888E-EC81A05B29B8

**EXHIBIT B**

**CODE OF CONDUCT**

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

**I. Ethical and Appropriate Behavior**

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

**II. Confidential Information**

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

**III. Statements to the Press or Other Media Members**

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

**IV. Conflicts of Interest**

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: E396DD4D-9C65-4074-888E-1FCB1A9529B8

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

*Bridget Logan*

DocuSigned by:

5AF3C80D746E4CB...

Name: Bridget Logan

1/20/2020

-12-

DocuSign Envelope ID: E396DD1D-9C65-4274-888F-1FCB1A9529B8

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 20, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: E396DD4D-9C65-4974-888B-1FCB1A9529B8

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature   *Bridget Logan*
DocuSigned by:
5AF3C80D746E4CB...

Name: Bridget Logan

1/20/2020

# EXHIBIT 5

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 6, 2020

Kyle Newman

Re:    <u>Offer of Employment</u>

Dear Kyle:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                 Acknowledged and agreed to
                                                                               This Date,
                                                                                1/7/2020

_____                              _____
Katherine Sayers                                               Kyle Newman
January 6, 2020

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.  Employee's regular rate of pay: $3,000.00 semi-monthly

    3.  FLSA Status: Exempt

    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Kyle Newman*

1005B89271D24EA...

_____

Kyle Newman

1/7/2020

_____

Date

-3-

<div align="right">**EXHIBIT A**</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9. **Cooperation**.

(a) I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b) I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10. **General Provisions**.

(a) <u>Governing Law and Jurisdiction</u>. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c) <u>No Right of Continued Employment</u>. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d) <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 8EA9EB23-08A7-41C6-972B-FCD588674D1F

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

DocuSign Envelope ID: 8EA8EB23-08A7-41C6-972B-1CD588674D1F

**EXHIBIT A**

      I, Kyle Newman, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/7/2020

*Kyle Newman*
1005B89271D24EA...

Kyle Newman

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 6, 2020

<div align="right">

**EXHIBIT B**

</div>

<div align="center">

**CODE OF CONDUCT**

</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

**I. Ethical and Appropriate Behavior**

    The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

    The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

**II. Confidential Information**

    In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

**III. Statements to the Press or Other Media Members**

    Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

**IV. Conflicts of Interest**

    Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

<div align="center">

-10-

</div>

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Kyle Newman*

1005B89271D24EA...

1/7/2020

DocuSign Envelope ID: 8EA8EB29-08A7-41C6-972B-1CD588674D1E

**EXHIBIT C**

## Prevention of Coordination Policy
Effective January 6, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 8EA8EB22-08A7-41C6-972E-1CD588674D1E

**EXHIBIT C**

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

*Kyle Newman*

1005B89271D24EA...

Name: Kyle Newman

1/7/2020

# EXHIBIT 6

DocuSign Envelope ID: 567807FF-DAF2-4BF5-A3B8-492090077C0F

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 19, 2020

Zia Oram

Re:      Offer of Employment

Dear Zia:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 567907FF-DAF2-4BFF-43B8-4820SO077C0F

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                           This Date,
                                                                            1/19/2020


_____                          _____
Katherine Sayers                                           Zia Oram
January 19, 2020

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Zia Oram*

D97C7DDEA1884FC...

_____

Zia Oram

1/19/2020

_____

Date

EXHIBIT A

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization")
and in consideration of my employment with the Organization and my receipt of the compensation now
and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-
Interference, and Invention Assignment Agreement (the "Agreement"):

1.       **Confidential Information**.

(a)    Organization Group Information. I acknowledge that, during the course
of my employment (the "Employment Period"), I will have access to information about the Organization
and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group
Member" and, collectively, the "Organization Group") and that my employment with the Organization shall
bring me into close contact with confidential and proprietary information of one or more Organization
Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and
thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or
to disclose to any person, firm, corporation, or other entity without written authorization of the
Organization, any Confidential Information that I obtain or create. I further agree not to make copies of
such Confidential Information except as authorized by the Organization. I understand that "Confidential
Information" means non-public information, ideas, plans and/or strategies that one or more Organization
Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization
wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited
to, any and all non-public information that relates to the actual or anticipated political activities, strategies,
plans, positions, work product, analytics, research, or development of an Organization Group Member, or
to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited
to, research, campaign plans, or other information regarding an Organization Group Member's activities,
software, developments, inventions, processes, formulas, technology, designs, drawings, engineering,
hardware configuration information, marketing, finances, and other information disclosed by an
Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of
premises, parts, equipment, or other Organization Group property. Confidential Information also includes,
but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding
the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become
publicly and widely known through no unauthorized disclosure by me or others who were under
confidentiality obligations as to the item or items involved, or (ii) any information that I am required to
disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless
legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the
Organization Group may seek an appropriate protective order and/or waive in writing compliance with the
confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided,
shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's
prior written consent, use equipment, materials, data and/or network access provided by the Organization
(the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers,
telephones, Internet access, postage, copy and fax machines, computer equipment, other
hardware/software, mainframe access and networks, subscriptions to publications or other services and
communications media, for personal use or for any reason other than in the course of performing services
for the Organization. The Organization Materials are and shall remain the property of the Organization at
all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 567907F5-DAE2-4BE5-A3B8-402090A77C0F

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 567807F5-DAE2-4BE5-A3B8-492090A07C0F

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a) I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b) I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a) <u>Governing Law and Jurisdiction</u>. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c) <u>No Right of Continued Employment</u>. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d) <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 567907FF-DAF2-4BFE-A3B8-4920SO077C0F

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

        (e)   Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

        (f)   Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*     *     *</div>

DocuSign Envelope ID: 567907FF-DAE2-4BEE-A3B8-4920SO07EC0F

**EXHIBIT A**

I, Zia Oram, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/19/2020

*Zia Oram*
D97C7DDEA1884FC...

Zia Oram

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 19, 2020

DocuSign Envelope ID: 567807F5-DAE2-4BF5-A3B8-4820900077C0F

EXHIBIT B

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

*Zia Oram*

D97C7DDEA1884FC...

Name: Zia Oram

1/19/2020

-12-

DocuSign Envelope ID: 567907F5-DAE2-4BE5-A3B8-482090077C0F

EXHIBIT C

## Prevention of Coordination Policy
Effective January 19, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

  a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

  b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

  c. The means or mode of the Committee's public communications;

  d. The timing or frequency of the Committee's public communications;

  e. The intended geographic or demographic audience of the Committee's public communications;

  f. The size (in dollars, time, or media points) of any media buys;

  g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

  h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

  "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 567907FF-DAF2-4B5F-A3B8-402090A77C0F

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature [ *Zia Oram*

DocuSigned by:
D97C7DDEA1884FC...

Name: Zia Oram

1/19/2020

# EXHIBIT 7

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 25, 2020

Alan Robinson

Re:      Offer of Employment

Dear Alan:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.       The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.       As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 5C9A8DB7-D300-4F5A-AA75-34BEC60B1A3E

**EXHIBIT A**

1.  No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/25/2020

_____
Katherine Sayers
January 25, 2020

DocuSigned by:

7D1A2E045508402...

_____
Alan Robinson

DocuSign Envelope ID: 5C9A8DB7-D300-4F5A-AA75-34BEC69B1A3F

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001
2. Employee's regular rate of pay: $3,000.00 semi-monthly
3. FLSA Status: Exempt
4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

7D1A2E045508402...

_____
Alan Robinson

1/25/2020

_____
Date

DocuSign Envelope ID: 5C9A8DB7-D300-4F5A-AA75-34BE680B1A3F

**EXHIBIT A**

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization")
and in consideration of my employment with the Organization and my receipt of the compensation now
and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-
Interference, and Invention Assignment Agreement (the "Agreement"):

1.        **Confidential Information**.

(a)       Organization Group Information. I acknowledge that, during the course
of my employment (the "Employment Period"), I will have access to information about the Organization
and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group
Member" and, collectively, the "Organization Group") and that my employment with the Organization shall
bring me into close contact with confidential and proprietary information of one or more Organization
Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and
thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or
to disclose to any person, firm, corporation, or other entity without written authorization of the
Organization, any Confidential Information that I obtain or create. I further agree not to make copies of
such Confidential Information except as authorized by the Organization. I understand that "Confidential
Information" means non-public information, ideas, plans and/or strategies that one or more Organization
Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization
wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited
to, any and all non-public information that relates to the actual or anticipated political activities, strategies,
plans, positions, work product, analytics, research, or development of an Organization Group Member, or
to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited
to, research, campaign plans, or other information regarding an Organization Group Member's activities,
software, developments, inventions, processes, formulas, technology, designs, drawings, engineering,
hardware configuration information, marketing, finances, and other information disclosed by an
Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of
premises, parts, equipment, or other Organization Group property. Confidential Information also includes,
but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding
the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become
publicly and widely known through no unauthorized disclosure by me or others who were under
confidentiality obligations as to the item or items involved, or (ii) any information that I am required to
disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless
legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the
Organization Group may seek an appropriate protective order and/or waive in writing compliance with the
confidentiality provisions of this Agreement.

(b)       Ownership. All Confidential Information, in whatever form provided,
shall remain the property of the Organization or the Organization Group, as applicable.

(c)       Use of Organization Materials. I shall not, without the Organization's
prior written consent, use equipment, materials, data and/or network access provided by the Organization
(the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers,
telephones, Internet access, postage, copy and fax machines, computer equipment, other
hardware/software, mainframe access and networks, subscriptions to publications or other services and
communications media, for personal use or for any reason other than in the course of performing services
for the Organization. The Organization Materials are and shall remain the property of the Organization at
all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

DocuSign Envelope ID: 5G9A8DB7-D300-4F5A-4A75-34BE689B1A3F

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d) <u>Former Employer Information</u>.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "<u>Proprietary Rights</u>"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "<u>Interfering Activities</u>" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 5C9A8D87-D300-4F56-AA75-34BC680B1A3F

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii) "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii) "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c) Non-Disparagement. I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member. However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6. **Reasonableness of Restrictions.** I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group. I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7. **Independence; Severability; Blue Pencil.** Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity. If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions. If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8. **Injunctive Relief.** I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 5C9A8DB7-D300-4E5A-AA75-34BEC69B1A3F

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*        *        *</div>

**EXHIBIT A**

I, Alan Robinson, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/25/2020

DocuSigned by:

7D1A2E045508402...

Alan Robinson

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 25, 2020

DocuSign Envelope ID: 5C9A8097-D306-4F5A-AA75-S4BF0005 1A8F

EXHIBIT B

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 5C9A8297-D306-4F5A-AA75-S4BEQ0051A8F

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

—7D1A2E045508402...

Name: Alan Robinson

1/25/2020

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 25, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature   [signature: DocuSigned by: 7D1A2E045508402...]

Name: Alan Robinson

1/25/2020

# EXHIBIT 8

DocuSign Envelope ID: 4B82C09F-8716-42F3-B341-534EC6B54639

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 15, 2020

Alexandra Wheatley

Re:      Offer of Employment

Dear Alexandra:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

-1-

DocuSign Envelope ID: 4B82C29F-8716-42F3-8341-534FC6B54630

**EXHIBIT A**

1.  No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/16/2020

_____

Katherine Sayers
January 15, 2020

DocuSigned by:

_Alexandra Wheatley_
5E3B1CFB2A38491...

_____

Alexandra Wheatley

-2-

DocuSign Envelope ID: 4B82C99F-8716-42F3-B341-534EC6B54639

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.  Employee's regular rate of pay: $3,000.00 semi-monthly

    3.  FLSA Status: Exempt

    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Alexandra Wheatley*

5E3B1CFB2A38491...

_____

Alexandra Wheatley

1/16/2020

_____

Date

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    <u>Organization Group Information</u>. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    <u>Ownership</u>. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    <u>Use of Organization Materials</u>. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 4B82C29F-8716-42F3-B341-534E56B54463

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 4B82C29F-8716-42F3-B341-534EC6B54636

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

              (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

              (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*      *      *

**EXHIBIT A**

        I, Alexandra Wheatley, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/16/2020

DocuSigned by:

*Alexandra Wheatley*

5E3B1CFB2A38491...

Alexandra Wheatley

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 15, 2020

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 4B82C29F-8716-42F3-8341-534EC6B54638

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

<div align="right"><b>EXHIBIT B</b></div>

<div align="center">
<b>CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF<br>
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT</b>
</div>

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Alexandra Wheatley*

5E3B1CFB2A38491...

1/16/2020

DocuSign Envelope ID: 4B82C09F-8716-42F3-B341-534EC6B54639

**EXHIBIT C**

## Prevention of Coordination Policy
Effective January 15, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

*Alexandra Wheatley*

5E3B1CFB2A38491...

Name: Alexandra Wheatley

1/16/2020

# EXHIBIT 9

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 11, 2020

Cheryl Baldwin

Re:      Offer of Employment

Dear Cheryl:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 17, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

The Organization will provide eligible employees with a $5,000 relocation allowance (the "Relocation Allowance") to compensate them for certain expenses they have incurred or expect to incur in connection with their acceptance of our offer of employment. To receive this Relocation Allowance, you must submit documentation (such as a utility bill, a letter from a new landlord, etc.) showing that you moved more than 100 miles from your current home in order to be able to work for the Organization. Once such documentation is submitted, you will receive the full $5,000 Relocation Allowance on the next available pay date, in accordance with the Organization's regular payroll practices. Please note that the Relocation Allowance may constitute taxable income to you. Mike Bloomberg 2020 Inc. will "gross up" the Relocation Allowance by paying you an additional amount approximating the taxes that you are expected to owe on it.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

    1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                 Acknowledged and agreed to

                                                                                    2/11/2020

_____                              DocuSigned by:

                                                                            _____
                                                                            40E5062DCEFB458...

_____                              _____
Katherine Sayers                                              Cheryl Baldwin
February 11, 2020

DocuSign Envelope ID: 6C9D3856-3D48-449F-827F-9A191690439E

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

40E5062DCEFB458...

_____

Cheryl Baldwin

2/11/2020

_____

Date

<div align="right">

**EXHIBIT A**

</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

<div align="center">

-4-

</div>

DocuSign Envelope ID: 6C9D3856-3D48-449F-827B-9A1816904393

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9.   Cooperation.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10.   General Provisions.

(a)     Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 6C9D3856-3D48-440F-827B-9A181600439

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

**EXHIBIT A**

I, Cheryl Baldwin, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/11/2020

DocuSigned by:

40E5062DCEFB458...

Cheryl Baldwin

Acknowledged, accepted and agreed:

By: _____
Name: Katherine Sayers
Title: Authorized Signatory
Date: February 11, 2020

DocuSign Envelope ID: 6C9D3856-3D48-449F-827B-8A181600A393

<div align="right">

**EXHIBIT B**

</div>

<div align="center">

**CODE OF CONDUCT**

</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

40E5062DCEFB458...

Name: Cheryl Baldwin

2/11/2020

**EXHIBIT C**

### Prevention of Coordination Policy
Effective February 11, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

      a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

      b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

      a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

      b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

      c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  DocuSigned by:

40E5062DCEFB458...

Name: Cheryl Baldwin

2/11/2020

# EXHIBIT 10

DocuSign Envelope ID: 3F5D8D9A-4915-4053-9736-2965978D8970

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 14, 2020

Jonathan Barrio

Re:     Offer of Employment

Dear Jonathan:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $5,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

     1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/14/2020

_____
Katherine Sayers
January 14, 2020

_____
Jonathan Barrio

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $5,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

_____
1F861782A01544A...

_____
Jonathan Barrio

1/14/2020

_____
Date

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 3F5D809A-4915-4953-9736-296597B298970

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)  Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.  Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.  Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.  Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.  Restrictions on Interfering.

(a)  During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)  For purposes of this Agreement:

(i)  "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

        (ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

        (iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

        (c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

        6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

        7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

        8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a)    Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 3F5D8D9A-4915-4053-9736-2965978D8970

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

       (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

       (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p align="center">*     *     *</p>

**EXHIBIT A**

I, Jonathan Barrio, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/14/2020

DocuSigned by:

1F861782A01544A...

Jonathan Barrio

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 14, 2020

DocuSign Envelope ID: 3F5D8D9A-4915-4953-9736-2665978D8970

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 3F5D8D9A-4915-4053-9736-2965978D8970

EXHIBIT B

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 3F5D8D9A-4915-4053-9736-3065978D8970

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

1F861782A01544A...

1/14/2020

-12-

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 14, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

1F861782A01544A...

Name: Jonathan Barrio

1/14/2020

# EXHIBIT 11

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 3, 2020

Desmond Batts

Re:      Offer of Employment

Dear Desmond:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $4,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.   No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                            Acknowledged and agreed to
                                                     This Date,
                                                      1/5/2020

_____                              _____
Katherine Sayers                                     Desmond Batts
January 3, 2020

DocuSign Envelope ID: B354390B-3A38-465C-8647-9B9F10D0F50A7

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $4,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

_____

Desmond Batts

1/5/2020

_____

Date

DocuSign Envelope ID: B354399B-3A38-465C-9647-859710C050A7

EXHIBIT A

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization")
and in consideration of my employment with the Organization and my receipt of the compensation now
and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-
Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course
of my employment (the "Employment Period"), I will have access to information about the Organization
and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group
Member" and, collectively, the "Organization Group") and that my employment with the Organization shall
bring me into close contact with confidential and proprietary information of one or more Organization
Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and
thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or
to disclose to any person, firm, corporation, or other entity without written authorization of the
Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of
such Confidential Information except as authorized by the Organization.  I understand that "Confidential
Information" means non-public information, ideas, plans and/or strategies that one or more Organization
Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization
wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited
to, any and all non-public information that relates to the actual or anticipated political activities, strategies,
plans, positions, work product, analytics, research, or development of an Organization Group Member, or
to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited
to, research, campaign plans, or other information regarding an Organization Group Member's activities,
software, developments, inventions, processes, formulas, technology, designs, drawings, engineering,
hardware configuration information, marketing, finances, and other information disclosed by an
Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of
premises, parts, equipment, or other Organization Group property. Confidential Information also includes,
but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding
the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become
publicly and widely known through no unauthorized disclosure by me or others who were under
confidentiality obligations as to the item or items involved, or (ii) any information that I am required to
disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless
legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the
Organization Group may seek an appropriate protective order and/or waive in writing compliance with the
confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided,
shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's
prior written consent, use equipment, materials, data and/or network access provided by the Organization
(the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers,
telephones, Internet access, postage, copy and fax machines, computer equipment, other
hardware/software, mainframe access and networks, subscriptions to publications or other services and
communications media, for personal use or for any reason other than in the course of performing services
for the Organization. The Organization Materials are and shall remain the property of the Organization at
all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: B354390B-3A38-465C-9647-8F9719QQ50A7

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    Invention Assignment. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    Returning Organization Group Documents. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    Disclosure of Agreement. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    Restrictions on Interfering.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.    I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.    I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.    Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.    If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.    If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.    I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.    Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

     (e) <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

     (f) <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p align="center">*   *   *</p>

EXHIBIT A

I, Desmond Batts, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/5/2020

Desmond Batts

Acknowledged, accepted and agreed:

By: _____
Name: Katherine Sayers
Title: Authorized Signatory
Date: January 3, 2020

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: B354390B-3A38-465C-9647-859749QQ50A7

EXHIBIT B

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

80CCC8D0D2A14CD...

1/5/2020

EXHIBIT C

## Prevention of Coordination Policy
### Effective January 3, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

80CCC8D0D2A14CD...

Name: Desmond Batts

1/5/2020

# EXHIBIT 12

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Garrett Beckenbaugh

Re:    <u>Offer of Employment</u>

Dear Garrett:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

        1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                    Acknowledged and agreed to
                                                                             This Date,
                                                                              1/23/2020

_____                              _____
Katherine Sayers                                                    Garrett Beckenbaugh
January 23, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

5D06D1A4DD0545A...

_____

Garrett Beckenbaugh

1/23/2020

_____

Date

DocuSign Envelope ID: 89E18101-227E-46D3-8991-917B5F003FF2

EXHIBIT A

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 89E18101-227E-46D3-B981-91785F0C3FF2

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii) "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii) "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c) Non-Disparagement. I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member. However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6. **Reasonableness of Restrictions**. I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group. I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7. **Independence; Severability; Blue Pencil**. Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity. If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions. If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8. **Injunctive Relief**. I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.     **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)     <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 89E18161-227E-46D3-B931-91785FC03FF2

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

\*       \*       \*

DocuSign Envelope ID: 99E18101-227E-46D3-B931-91785F003FF2

**EXHIBIT A**

I, Garrett Beckenbaugh, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020

Garrett Beckenbaugh

Acknowledged, accepted and agreed:

By: _____
   Name: Katherine Sayers
   Title: Authorized Signatory
   Date: January 23, 2020

DocuSign Envelope ID: 89E18101-227E-46D3-9931-91785F003FF2

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 89E18101-227E-46D3-9931-91785F0D3FF2

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

5D06D1A4DD0545A...

Name: Garrett Beckenbaugh

1/23/2020

-12-

DocuSign Envelope ID: 89E18161-227E-46D3-8931-91785F003FF3

<div align="right"><b>EXHIBIT C</b></div>

<div align="center">

**Prevention of Coordination Policy**
Effective January 23, 2020

</div>

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

<div align="center">-13-</div>

**EXHIBIT C**

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

>  a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

>  b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

>  a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

>  b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

>  c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature

DocuSigned by:

5D06D1A4DD0545A...

Name: Garrett Beckenbaugh

1/23/2020

-14-

# EXHIBIT 13

DocuSign Envelope ID: 827C75G6-359B-47B4-9D6A-7E776BB4E38D

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 7, 2020

Cochiese Bowers

Re:     Offer of Employment

Dear Cochiese:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                         This Date,
                                                                          1/7/2020

_____                    _____
Katherine Sayers                                              Cochiese Bowers
January 7, 2020

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

_____
Cochiese Bowers

1/7/2020

_____
Date

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.       **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 827C7566-359B-47B4-9D6A-2E756B84E38D

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     Restrictions on Interfering.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii) "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii) "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c) Non-Disparagement. I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member. However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6. **Reasonableness of Restrictions**. I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group. I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7. **Independence; Severability; Blue Pencil**. Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity. If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions. If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8. **Injunctive Relief**. I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 827C75C6-359D-47B4-8D6A-7E756BB4E38D

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

        (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

        (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p style="text-align:center">*     *     *</p>

**EXHIBIT A**

I, Cochiese Bowers, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/7/2020

DocuSigned by:

FCD3D73AC6A4406...

Cochiese Bowers

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 7, 2020

DocuSign Envelope ID: 827C7666-359D-47B4-8D6A-FE756BB4E38D

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 827C7566-3598-47B4-BD6A-7E756BB4E38D

EXHIBIT B

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 827C75C6-359D-47B4-9D6A-7F756BB4E38D

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

FCD3D73AC6A4406...

1/7/2020

EXHIBIT C

## Prevention of Coordination Policy
Effective January 7, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).


FCD3D73AC6A4406...

Name: Cochiese Bowers

1/7/2020

# EXHIBIT 14

DocuSign Envelope ID: D417A19C-B523-4483-838C-EACA0E18F571

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 11, 2020

Miles Ceplecha

Re:     Offer of Employment

Dear Miles:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: D417A13C-B523-4483-838C-EACA0E16F574

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                Acknowledged and agreed to
                                                                              This Date,
                                                                               1/12/2020

_____                                   _____
Katherine Sayers                                                      Miles Ceplecha
January 11, 2020

DocuSign Envelope ID: D417A19C-B523-4483-8389-EACA0E18F571

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Miles Ceplecha*

0BB0D9E7904240A...

_____

Miles Ceplecha

1/12/2020

_____

Date

-3-

DocuSign Envelope ID: D417A19C-B523-4483-838C-EACA0E18F574

**EXHIBIT A**

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "<u>Organization</u>")
and in consideration of my employment with the Organization and my receipt of the compensation now
and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-
Interference, and Invention Assignment Agreement (the "<u>Agreement</u>"):

1.       **Confidential Information**.

(a)       <u>Organization Group Information</u>.  I acknowledge that, during the course
of my employment (the "<u>Employment Period</u>"), I will have access to information about the Organization
and any member(s) and affiliates, including Michael R. Bloomberg (each, an "<u>Organization Group
Member</u>" and, collectively, the "<u>Organization Group</u>") and that my employment with the Organization shall
bring me into close contact with confidential and proprietary information of one or more Organization
Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and
thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or
to disclose to any person, firm, corporation, or other entity without written authorization of the
Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of
such Confidential Information except as authorized by the Organization.  I understand that "<u>Confidential
Information</u>" means non-public information, ideas, plans and/or strategies that one or more Organization
Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization
wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited
to, any and all non-public information that relates to the actual or anticipated political activities, strategies,
plans, positions, work product, analytics, research, or development of an Organization Group Member, or
to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited
to, research, campaign plans, or other information regarding an Organization Group Member's activities,
software, developments, inventions, processes, formulas, technology, designs, drawings, engineering,
hardware configuration information, marketing, finances, and other information disclosed by an
Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of
premises, parts, equipment, or other Organization Group property. Confidential Information also includes,
but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding
the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become
publicly and widely known through no unauthorized disclosure by me or others who were under
confidentiality obligations as to the item or items involved, or (ii) any information that I am required to
disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless
legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the
Organization Group may seek an appropriate protective order and/or waive in writing compliance with the
confidentiality provisions of this Agreement.

(b)       <u>Ownership</u>. All Confidential Information, in whatever form provided,
shall remain the property of the Organization or the Organization Group, as applicable.

(c)       <u>Use of Organization Materials</u>. I shall not, without the Organization's
prior written consent, use equipment, materials, data and/or network access provided by the Organization
(the "<u>Organization Materials</u>"), including, but not limited to, electronic mail, voice mail, pagers,
telephones, Internet access, postage, copy and fax machines, computer equipment, other
hardware/software, mainframe access and networks, subscriptions to publications or other services and
communications media, for personal use or for any reason other than in the course of performing services
for the Organization. The Organization Materials are and shall remain the property of the Organization at
all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: D417A19C-B523-4483-838C-EACA0E48F571

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: B417-A10C-B523-4483-838C-EACA0E18F571
Case 1:20-cv-02489-LTS-GWG   Document 113-1   Filed 06/17/20   Page 203 of 942

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.     **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)     <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: D417A16C-B523-4483-838C-EACA0E18F574

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*          *          *

EXHIBIT A

I, Miles Ceplecha, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/12/2020

DocuSigned by:

*Miles Ceplecha*

0BB0D9E7904240A...

Miles Ceplecha

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 11, 2020

DocuSign Envelope ID: D417A19C-B523-44838-89C9-EACA0F1BF571

**EXHIBIT B**

**CODE OF CONDUCT**

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

**I. Ethical and Appropriate Behavior**

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

**II. Confidential Information**

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

**III. Statements to the Press or Other Media Members**

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

**IV. Conflicts of Interest**

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: D417A1CC-B523-4483-838C-FACA0E18F574

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: D417A19C-B523-4483-838C-EACA0E18F574

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Miles Ceplecha*

0BB0D9E7904240A...

1/12/2020

EXHIBIT C

### Prevention of Coordination Policy
Effective January 11, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: D417A19C-B523-4483-838C-EACA0E18F571

**EXHIBIT C**

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

Miles Ceplecha

0BB0D9E7904240A...

Name: Miles Ceplecha

1/12/2020

# EXHIBIT 15

DocuSign Envelope ID: 79BB204A-D703-4280-A835-8DB5FA66332D

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 28, 2020

Robin Ceppos

Re:     Offer of Employment

Dear Robin:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

EXHIBIT A

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                          Acknowledged and agreed to
                                                   This Date,
                                                    1/28/2020

_____                 DocuSigned by:

                                     _Robin Ceppos_
                                     CCDEA177E09248B...
_____                 _____
Katherine Sayers                    Robin Ceppos
January 28, 2020

DocuSign Envelope ID: 79BBB34A-D703-4200-A835-8DB5FA668332D

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Robin Ceppos*

CCDEA177E09248B...

_____

Robin Ceppos

1/28/2020

_____

Date

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 79BBB94A-D703-4299-A835-8DB5FA668332D

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     Restrictions on Interfering.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 79BB?94A-D703-4289-A835-?DB5FA663320

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e) <u>Survival</u>. The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f) <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*     *     *</div>

DocuSign Envelope ID: 79BB894A-D703-4299-A835-2DB5EA663320

**EXHIBIT A**

I, Robin Ceppos, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/28/2020

Robin Ceppos

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 28, 2020

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 79BBB24A-D703-4289-A835-8DB5FA68332D

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

*Robin Ceppos*

CCDEA177E09248B...

Name: Robin Ceppos

1/28/2020

-12-

EXHIBIT C

## Prevention of Coordination Policy
### Effective January 28, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 79BB894A-D703-4289-A835-8DB5F466332D

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Robin Ceppos*
DocuSigned by:
CCDEA177E09248B...

Name: Robin Ceppos

1/28/2020

# EXHIBIT 16

DocuSign Envelope ID: 98E79CA6-96FD-4E55-8897-B5437D63C79B

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 5, 2020

Melinda Cirilo

Re:     Offer of Employment

Dear Melinda:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

The Organization will provide eligible employees with a $5,000 relocation allowance (the "Relocation Allowance") to compensate them for certain expenses they have incurred or expect to incur in connection with their acceptance of our offer of employment. To receive this Relocation Allowance, you must submit documentation (such as a utility bill, a letter from a new landlord, etc.) showing that you moved more than 100 miles from your current home in order to be able to work for the Organization. Once such documentation is submitted, you will receive the full $5,000 Relocation Allowance on the next available pay date, in accordance with the Organization's regular payroll practices. Please note that the Relocation Allowance may constitute taxable income to you. Mike Bloomberg 2020 Inc. will "gross up" the Relocation Allowance by paying you an additional amount approximating the taxes that you are expected to owe on it.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

DocuSign Envelope ID: 98E72AA6-96FD-4E55-8897-B5137D63C70B

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to

                                                                        2/5/2020

_____                      _____
Katherine Sayers                                              Melinda Cirilo
February 5, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.  Employee's regular rate of pay: $3,000.00 semi-monthly

    3.  FLSA Status: Exempt

    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

C28F2FC79CD544B...

_____

Melinda Cirilo

2/5/2020

_____

Date

-3-

DocuSign Envelope ID: 98E72AA6-96FD-4E58-8897-85437D63C70B

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 98E7CAA6-96FD-4E58-8897-85437D63C70B

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 98E72AA6-96FD-4E55-8897-B5137D63C79B

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)       "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)      "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)      Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.      **Reasonableness of Restrictions**.   I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.   I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.      **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.      **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 98E72CAA6-96FD-4E55-8897-85137D63C70B
Case 1:20-cv-02489-LTS-GWG   Document 113-1   Filed 06/17/20   Page 234 of 942

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

      (e) <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

      (f) <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*   *   *</div>

**EXHIBIT A**

I, Melinda Cirilo, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/5/2020

Melinda Cirilo

Acknowledged, accepted and agreed:

By: _____
   Name: Katherine Sayers
   Title: Authorized Signatory
   Date: February 5, 2020

DocuSign Envelope ID: 98E72AA6-96ED-4E55-8897-B5f37D63C79B

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 98E72AA6-96FD-4E55-8897-B5137D63C79B

**EXHIBIT B**

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

Name: Melinda Cirilo

2/5/2020

**EXHIBIT C**

### Prevention of Coordination Policy
Effective February 5, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature [DocuSign signature: C28F2FC79CD544B...]

Name: Melinda Cirilo

2/5/2020

# EXHIBIT 17

DocuSign Envelope ID: 2018A751-E168-43B4-B4EB-C1038D85659D

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 12, 2020

Jane Conrad

Re:     Offer of Employment

Dear Jane:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 17, 2020.

You will be compensated at the rate of $4,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

The Organization will provide eligible employees with a $5,000 relocation allowance (the "Relocation Allowance") to compensate them for certain expenses they have incurred or expect to incur in connection with their acceptance of our offer of employment. To receive this Relocation Allowance, you must submit documentation (such as a utility bill, a letter from a new landlord, etc.) showing that you moved more than 100 miles from your current home in order to be able to work for the Organization. Once such documentation is submitted, you will receive the full $5,000 Relocation Allowance on the next available pay date, in accordance with the Organization's regular payroll practices. Please note that the Relocation Allowance may constitute taxable income to you. Mike Bloomberg 2020 Inc. will "gross up" the Relocation Allowance by paying you an additional amount approximating the taxes that you are expected to owe on it.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.    The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.    As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

   1.    No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                    Acknowledged and agreed to

                                                                                2/13/2020

_____                                  _____
Katherine Sayers                                                   Jane Conrad
February 12, 2020

DocuSign Envelope ID: 2018A2F1-E168-43B4-B4EB-C1038D05659D

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $4,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

_____
Jane Conrad

2/13/2020

_____
Date

-3-

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.     **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 2018A951-E168-43B4-B4EB-C1638D05659D

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 2018A251-E168-43B4-84EB-C1838DA5659D

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions.**   I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.   I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil.**  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief.**  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 2018A951-E168-43B4-B4E8-C1638D05659D

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

## 9.    Cooperation.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

## 10.    General Provisions.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

-7-

DocuSign Envelope ID: 2018AA51-E168-43B4-B4EB-C1038DA5659D

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*     *     *</div>

DocuSign Envelope ID: 2018A4E1-E168-43B4-84E8-C1038D05659D

**EXHIBIT A**

    I, Jane Conrad, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

   2/13/2020

*Jane Conrad*
2622B083A7FC4F8...

Jane Conrad

Acknowledged, accepted and agreed:

By: _____
  Name: Katherine Sayers
  Title: Authorized Signatory
  Date: February 12, 2020

DocuSign Envelope ID: 2018AA51-E168-43B4-84EF-C1038D05659D

<div align="right">

**EXHIBIT B**

</div>

<div align="center">

**CODE OF CONDUCT**

</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

**I. Ethical and Appropriate Behavior**

    The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

    The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

**II. Confidential Information**

    In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

**III. Statements to the Press or Other Media Members**

    Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

**IV. Conflicts of Interest**

    Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 2018A361-F168-43B4-B4EB-C1038D85659D

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

_DocuSigned by:_

_Jane Conrad_

2622B083A7FC4F8...

Name: Jane Conrad

2/13/2020

-12-

DocuSign Envelope ID: 2018A2E1-E168-43B4-B4EB-C1038D05659D

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective February 12, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

      a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

      b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

      a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

      b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

      c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature    *Jane Conrad*
DocuSigned by:
—2622B083A7FC4F8...

Name: Jane Conrad

2/13/2020

# EXHIBIT 18

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Robert Cordova

Re:    Offer of Employment

Dear Robert:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

  1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                      Acknowledged and agreed to
                                                                This Date,
                                                                 1/23/2020

_____                    _____
Katherine Sayers                                        Robert Cordova
January 23, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Robert Cordova*

63411AFB02FC497...

_____

Robert Cordova

1/23/2020

_____

Date

DocuSign Envelope ID: 4E8A199B-347B-4959-AEBC-6BEF5189EEDF

EXHIBIT A

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a) Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b) Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c) Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 4E8A199B-347B-4959-AEB6-6BE5E189EEDF

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 4E8A199B-347B-4050-9AEB-C6BEF5189EEDF

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 4E8A199B-347B-4959-AEBC-6BEE6189EEDF

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a)     Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 4E8A193B-347B-4050-AEBC-6BEEE189EEDF

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

**EXHIBIT A**

I, Robert Cordova, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020

DocuSigned by:

*Robert Cordova*

63411AFB02FC497...

Robert Cordova

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 23, 2020

DocuSign Envelope ID: 4E8A199B-247B-4959-AEBC-6BEEE189EEDF

<div align="right">**EXHIBIT B**</div>

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

*Robert Cordova*

63411AFB02FC497...

Name: Robert Cordova

1/23/2020

-12-

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature ⌈ DocuSigned by:
*Robert Cordova*
63411AFB02FC497...

Name: Robert Cordova

1/23/2020

# EXHIBIT 19

DocuSign Envelope ID: AB8D9F17-0278-49C4-BB4E-571507A0128B

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 11, 2020

Christine Doczy

Re:     Offer of Employment

Dear Christine:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 17, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: AB8D9F17-0275-49C4-BB4E-F71507A0128D

**EXHIBIT A**

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
2/11/2020

_____
Katherine Sayers
February 11, 2020

DocuSigned by:
*Christine Doczy*
6E330CD598ED4F2...

_____
Christine Doczy

DocuSign Envelope ID: AB8D3F17-0276-49C4-BB4E-E71507A0128D

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

    1.   Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001
    2.   Employee's regular rate of pay: $3,000.00 semi-monthly
    3.   FLSA Status: Exempt
    4.   Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Christine Doczy*

6E330CD598ED4F2...
_____
Christine Doczy

2/11/2020
_____
Date

DocuSign Envelope ID: AB8D9F17-0276-49Q4-8B4E-E7150700128D

<div align="right">EXHIBIT A</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)     Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    <u>Former Employer Information</u>.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "<u>Proprietary Rights</u>"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "<u>Interfering Activities</u>" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: AB8D9F17-0276-49C4-BB4E-E71507A0128D

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)  Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)  Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*       *       *</div>

**EXHIBIT A**

I, Christine Doczy, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/11/2020

DocuSigned by:

*Christine Doczy*

6E330CD598ED4F2...

Christine Doczy

Acknowledged, accepted and agreed:

By: _____
      Name: Katherine Sayers
      Title: Authorized Signatory
      Date: February 11, 2020

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: AB8D9F17-0276-49C4-BB4E-F7507A0128D

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

*Christine Doczy*

6E330CD598ED4F2...

Name: Christine Doczy

2/11/2020

-12-

EXHIBIT C

## Prevention of Coordination Policy
### Effective February 11, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Christine Doczy*
DocuSigned by:
6E330CD598ED4F2...

Name: Christine Doczy

2/11/2020

# EXHIBIT 20

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 15, 2020

Rachel Douglas

Re:      <u>Offer of Employment</u>

Dear Rachel:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 547BD2C5-9337-49A9-BEE5-4E39920880FB

**EXHIBIT A**

    1.       No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

                                            Acknowledged and agreed to
This Date,
 1/15/2020

_____

Katherine Sayers
January 15, 2020

DocuSigned by:
_Rachel Douglas_
67C06BBB9F2A482...

_____

Rachel Douglas

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Rachel Douglas*

67C06BBB9F2A482...

_____

Rachel Douglas

1/15/2020

_____

Date

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 547B29C5-9337-49A9-BFEF-4F39320830FB

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d) <u>Former Employer Information</u>. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2. **Invention Assignment**. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "<u>Proprietary Rights</u>"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3. **Returning Organization Group Documents**. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4. **Disclosure of Agreement**. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5. **Restrictions on Interfering**.

(a) During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b) For purposes of this Agreement:

(i) "<u>Interfering Activities</u>" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a) I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b) I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a) _Governing Law and Jurisdiction_. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b) _Entire Agreement_. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c) _No Right of Continued Employment_. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d) _Successors and Assigns_. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 547BD2C5-9337-49A9-BFE5-4F39920830FB

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*      *      *

**EXHIBIT A**

I, Rachel Douglas, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/15/2020

DocuSigned by:

*Rachel Douglas*

67C06BBB9F2A482...

Rachel Douglas

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 15, 2020

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Rachel Douglas*

67C06BBB9F2A482...

1/15/2020

DocuSign Envelope ID: 547BD9C5-9337-49A0-8FE5-4F39920830FB

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 15, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

DocuSign Envelope ID: 547BD2C5-9335-49A9-8FEF-4F39920830FB

**EXHIBIT C**

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

*Rachel Douglas*

67C06BBB9F2A482...

Name: Rachel Douglas

1/15/2020

# EXHIBIT 21

DocuSign Envelope ID: B0A5285F-C218-4925-BBCB-438E66703405

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 14, 2020

Theresa Edwards

Re:    <u>Offer of Employment</u>

Dear Theresa:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 20, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

The Organization will provide eligible employees with a $5,000 relocation allowance (the "Relocation Allowance") to compensate them for certain expenses they have incurred or expect to incur in connection with their acceptance of our offer of employment. To receive this Relocation Allowance, you must submit documentation (such as a utility bill, a letter from a new landlord, etc.) showing that you moved more than 100 miles from your current home in order to be able to work for the Organization. Once such documentation is submitted, you will receive the full $5,000 Relocation Allowance on the next available pay date, in accordance with the Organization's regular payroll practices. Please note that the Relocation Allowance may constitute taxable income to you. Mike Bloomberg 2020 Inc. will "gross up" the Relocation Allowance by paying you an additional amount approximating the taxes that you are expected to owe on it.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

   1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                     Acknowledged and agreed to

                                                                        2/14/2020

_____                          _____
Katherine Sayers                                          Theresa Edwards
February 14, 2020

DocuSign Envelope ID: B0A5285F-C218-4925-BBC8-438E667034D5

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.  Employee's regular rate of pay: $3,000.00 semi-monthly

    3.  FLSA Status: Exempt

    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*[signature]*

D8C8CCE44FA9465...

_____

Theresa Edwards

2/14/2020

_____

Date

-3-

DocuSign Envelope ID: B0A5285F-C218-4925-BBC8-438E567034D5

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a)  Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d) Former Employer Information. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2. **Invention Assignment**. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3. **Returning Organization Group Documents**. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4. **Disclosure of Agreement**. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5. **Restrictions on Interfering**.

(a) During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b) For purposes of this Agreement:

(i) "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: B0A5285F-C218-4925-BBC8-438E567034D5

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

             (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

             (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p style="text-align:center">*      *      *</p>

**EXHIBIT A**

        I, Theresa Edwards, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/14/2020

Theresa Edwards

Acknowledged, accepted and agreed:

By: _____
     Name: Katherine Sayers
     Title: Authorized Signatory
     Date: February 14, 2020

DocuSign Envelope ID: B0A5285F-C218-4925-BBC8-438E56703405

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: B0A5285F-C218-4925-8BC8-438E667034D5

EXHIBIT B

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: B0A5285F-C218-4925-BBC8-438E667034D5

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

D8C8CCE44FA9465...

Name: Theresa Edwards

2/14/2020

<div align="right"><strong>EXHIBIT C</strong></div>

<div align="center">

**Prevention of Coordination Policy**

Effective February 14, 2020

</div>

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  [DocuSigned by: *Theresa Edwards* D8C8CCE44FA9465...]

Name: Theresa Edwards

2/14/2020

-14-

# EXHIBIT 22

DocuSign Envelope ID: B0B1776D-EABD-4830-B458-778F9F09A303

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 11, 2020

Eliza Fink

Re:     Offer of Employment

Dear Eliza:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 17, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: D0B175BD-FABB-4830-B458-778F0F00A393

**EXHIBIT A**

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 2/21/2020

_____

Katherine Sayers
February 11, 2020

DocuSigned by:
*Eliza Fink*
E210E78B5EF4437...

_____

Eliza Fink

DocuSign Envelope ID: D0B1779D-FADB-4930-B458-778F9F69A383

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2.  Employee's regular rate of pay: $3,000.00 semi-monthly

3.  FLSA Status: Exempt

4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Eliza Fink*

E210E78B5EF4437...

_____

Eliza Fink

2/21/2020

_____

Date

DocuSign Envelope ID: B0B175BD-FADD-4930-B458-77850F99A393

**EXHIBIT A**

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization")
and in consideration of my employment with the Organization and my receipt of the compensation now
and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-
Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course
of my employment (the "Employment Period"), I will have access to information about the Organization
and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group
Member" and, collectively, the "Organization Group") and that my employment with the Organization shall
bring me into close contact with confidential and proprietary information of one or more Organization
Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and
thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or
to disclose to any person, firm, corporation, or other entity without written authorization of the
Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of
such Confidential Information except as authorized by the Organization.  I understand that "Confidential
Information" means non-public information, ideas, plans and/or strategies that one or more Organization
Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization
wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited
to, any and all non-public information that relates to the actual or anticipated political activities, strategies,
plans, positions, work product, analytics, research, or development of an Organization Group Member, or
to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited
to, research, campaign plans, or other information regarding an Organization Group Member's activities,
software, developments, inventions, processes, formulas, technology, designs, drawings, engineering,
hardware configuration information, marketing, finances, and other information disclosed by an
Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of
premises, parts, equipment, or other Organization Group property. Confidential Information also includes,
but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding
the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become
publicly and widely known through no unauthorized disclosure by me or others who were under
confidentiality obligations as to the item or items involved, or (ii) any information that I am required to
disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless
legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the
Organization Group may seek an appropriate protective order and/or waive in writing compliance with the
confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided,
shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's
prior written consent, use equipment, materials, data and/or network access provided by the Organization
(the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers,
telephones, Internet access, postage, copy and fax machines, computer equipment, other
hardware/software, mainframe access and networks, subscriptions to publications or other services and
communications media, for personal use or for any reason other than in the course of performing services
for the Organization. The Organization Materials are and shall remain the property of the Organization at
all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

DocuSign Envelope ID: B0B1778D-FADD-4830-B458-77850509A383

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)      Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.      **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.      **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.      **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.      **Restrictions on Interfering**.

(a)      During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)      For purposes of this Agreement:

(i)      "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: B0B176D-FAD9-4830-B458-7785969A393

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: B0B175BD-FADD-4830-B458-77F59F09A393

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

        (e)    Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

        (f)    Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

**EXHIBIT A**

       I, Eliza Fink, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/21/2020

DocuSigned by:

*Eliza Fink*

E210E78B5EF4437...

Eliza Fink

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 11, 2020

DocuSign Envelope ID: B0B17F9D-FADD-4830-B458-77850F00A303

<div align="right"><strong>EXHIBIT B</strong></div>

<div align="center"><strong>CODE OF CONDUCT</strong></div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: D0B1575D-FABD-4930-B458-778F9F09A303

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

*Eliza Fink*

E210E78B5EF4437...

Name: Eliza Fink

2/21/2020

-12-

DocuSign Envelope ID: B0B1776D-FABB-4830-B458-77B50F09A393

**EXHIBIT C**

### Prevention of Coordination Policy
Effective February 11, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

DocuSign Envelope ID: B0B1775D-FABB-4830-B458-778E9F69A383

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Eliza Fink*
DocuSigned by:
E210E78B5EF4437...

Name: Eliza Fink

2/21/2020

-14-

# EXHIBIT 23

DocuSign Envelope ID: D8354B3A-C5E5-4858-AB5E-E057922560F5

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 16, 2020

Jason Finkelstein

Re:      Offer of Employment

Dear Jason:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: D83543B3A-C555-4958-AB5E-E05702256055

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                        This Date,
                                                                         1/16/2020

_____                              _____
Katherine Sayers                                            Jason Finkelstein
January 16, 2020

DocuSign Envelope ID: D83549B3A-C5E5-4958-AB5E-E067D02560E5

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

_____

Jason Finkelstein

1/16/2020

_____

Date

DocuSign Envelope ID: D8354B3A-C555-4958-AB5F-E067D225605F5

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.        **Confidential Information**.

(a)        Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)        Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)        Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: D8354B3A-C5E5-4958-AB5E-E057002560E5

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    **Restrictions on Interfering**.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: D8354B3A-C5F5-4955-AB5E-E057D0256055

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii) "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii) "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c) Non-Disparagement. I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member. However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6. **Reasonableness of Restrictions**. I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group. I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7. **Independence; Severability; Blue Pencil**. Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity. If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions. If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8. **Injunctive Relief**. I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a) I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b) I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a) <u>Governing Law and Jurisdiction</u>. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c) <u>No Right of Continued Employment</u>. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d) <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: D83549B3A-C555-4858-AB5C-E057022560E5

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

-8-

**EXHIBIT A**

I, Jason Finkelstein, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/16/2020

DocuSigned by:

C9F3226D363349D...

Jason Finkelstein

Acknowledged, accepted and agreed:

By: _____
 Name: Katherine Sayers
 Title: Authorized Signatory
 Date: January 16, 2020

DocuSign Envelope ID: D8354B3A-C555-4958-AB5E-E067B02560E5

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: D83548B3A-C555-4958-AB5C-E057D2256DF5

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

C9F3226D363349D...

Name: Jason Finkelstein

1/16/2020

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 16, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

>    a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

>    b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

>    a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

>    b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

>    c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature   [DocuSigned by:
            C9F3226D363349D...]

Name: Jason Finkelstein

1/16/2020

# EXHIBIT 24

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 4, 2020

Ilse Mendez Fraga

Re: <u>Offer of Employment</u>

Dear Ilse:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.    The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.    As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.    No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                   Acknowledged and agreed to
                                                            This Date,
                                                             2/4/2020


_____                    _____
Katherine Sayers                                          Ilse Mendez Fraga
February 4, 2020

DocuSign Envelope ID: BF9911AE-820A-4EE9-8B74-2B006D8E823F

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001
    2.  Employee's regular rate of pay: $3,000.00 semi-monthly
    3.  FLSA Status: Exempt
    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

596E3FAD8A6241D...
_____
Ilse Mendez Fraga

2/4/2020
_____
Date

DocuSign Envelope ID: BF9910E-820A-2EF9-8B74-2B06808E823F

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.        **Confidential Information**.

(a)       Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)       Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)       Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: BF99110F-820A-4FF9-8B74-2B060D8E823F

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: BF9919AF-820A-4FF9-8B74-8300A08E823F

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: BF9910E-820A-4EF9-8B74-2800D8E823F

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9.    Cooperation.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10.    General Provisions.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: BF9910E-820A-4FE9-8B74-2B06D98E823F

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

            (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

            (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p align="center">*       *       *</p>

DocuSign Envelope ID: BF99116E-820A-4FF8-8B74-2B006D8E823F

**EXHIBIT A**

      I, Ilse Mendez Fraga, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/4/2020

DocuSigned by:

596E3FAD8A6241D...

Ilse Mendez Fraga

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 4, 2020

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

596E3FAD8A6241D...

Name: Ilse Mendez Fraga

2/4/2020

**EXHIBIT C**

## Prevention of Coordination Policy
Effective February 4, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

    a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

    b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

    a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

    b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

    c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature   *[DocuSigned by: signature]*
596E3FAD8A6241D...

Name: Ilse Mendez Fraga

2/4/2020

# EXHIBIT 25

DocuSign Envelope ID: 9A2B846D-75Q5-4A50-BC2A-437478A3F23D

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 8, 2020

Josh Fredrickson

Re:       Offer of Employment

Dear Josh:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $4,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.        The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.        As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 9A2B845D-75C5-4AE0-BC2A-437478A2F22D

**EXHIBIT A**

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/16/2020

_____
Katherine Sayers
January 8, 2020

DocuSigned by:

_____
425C6535BDE8462...

Josh Fredrickson

-2-

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $4,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

425C6535BDE8462...

_____

Josh Fredrickson

1/16/2020

_____

Date

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.     **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 9A2B845D-75Q5-4A5B-BC2A-437479A3F22D

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 9A2B845D-75Q5-4AF9-BC2A-437478A2F22D

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)      Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)      Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

DocuSign Envelope ID: 9A2B945D-75CF-4AE9-BC3A-437470A2F22D

**EXHIBIT A**

     I, Josh Fredrickson, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

    1/16/2020


425C6535BDE8462...

Josh Fredrickson

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 8, 2020

DocuSign Envelope ID: 9A2B845D-75CF-4A5B-BC3A-437478A2F22D

<div align="right">

**EXHIBIT B**

</div>

<div align="center">

**CODE OF CONDUCT**

</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 9A2B845D-75Q5-4A5B-BC2A-437478A3F22D

EXHIBIT B

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

425C6535BDE8462...

1/16/2020

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 8, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 9A2B845D-75C5-4A5B-BC2A-437A70A2F22D

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

425C6535BDE8462...

Name: Josh Fredrickson

1/16/2020

# EXHIBIT 26

DocuSign Envelope ID: 0B9C186D-9E73-42E4-AE1B-50567AF52BD3

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Maria Susan Gonzalez

Re:     Offer of Employment

Dear Maria Susan:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

   1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                        Acknowledged and agreed to
                                                                  This Date,
                                                                   1/23/2020

_____                          _____
Katherine Sayers                                            Maria Susan Gonzalez
January 23, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

B57EA5096F52407...

_____

Maria Susan Gonzalez

1/23/2020

_____

Date

DocuSign Envelope ID: 0B9C168D-9E73-42E4-AE1B-50567AF52BD3

**EXHIBIT A**

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.       **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

DocuSign Envelope ID: 0B9C168D-9E73-42E4-AE1B-50667AF52BD9

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    Restrictions on Interfering.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 0B9C168D-9E77-42F4-AE1B-50567AF52BD3

<div align="right">**EXHIBIT A**</div>

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*        *        *</div>

DocuSign Envelope ID: 0B9C168D-9E77-42E4-AE1B-50567AF62BD3

**EXHIBIT A**

       I, Maria Susan Gonzalez, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020

DocuSigned by:

B57EA5096F52407...

Maria Susan Gonzalez

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 23, 2020

DocuSign Envelope ID: 0B9C168D-9E77-42E4-AE1B-50567AF52BD3

**EXHIBIT B**

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

B57EA5096F52407...

Name: Maria Susan Gonzalez

1/23/2020

EXHIBIT C

### Prevention of Coordination Policy
Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature ⌐DocuSigned by:
         [signature]
         B57EA5096F52407...

Name: Maria Susan Gonzalez

1/23/2020

# EXHIBIT 27

DocuSign Envelope ID: 3D5A0E1A-3008-49A8-9361-S7DF0A0A3F4F

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 21, 2020

Nathaniel Groh

Re:   <u>Offer of Employment</u>

Dear Nathaniel:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $4,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

     1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/21/2020

DocuSigned by:

*Nathaniel Groh*

F711014B9C2D409...

_____

Katherine Sayers

_____

Nathaniel Groh

January 21, 2020

DocuSign Envelope ID: 3D5A0E1A-3008-49A9-9561-S7DEOA0A3F4F

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $4,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Nathaniel Groh*

F711014B9C2D409...

_____

Nathaniel Groh

1/21/2020

_____

Date

DocuSign Envelope ID: 3D5A0E1A-3008-49A8-9561-S7DE0A0A3F4F

EXHIBIT A

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 3D5AQE1A-3008-49A8-9561-S7DEQA0A3F4F

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d) <u>Former Employer Information</u>. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2. **Invention Assignment**. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "<u>Proprietary Rights</u>"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3. **Returning Organization Group Documents**. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4. **Disclosure of Agreement**. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5. **Restrictions on Interfering**.

(a) During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b) For purposes of this Agreement:

(i) "<u>Interfering Activities</u>" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9.    Cooperation.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10.    General Provisions.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 3D5AOE1A-3008-49A9-9561-S7DEOA0A3F4F

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

        (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

        (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

**EXHIBIT A**

I, Nathaniel Groh, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/21/2020

Nathaniel Groh

Acknowledged, accepted and agreed:

By: _____
Name: Katherine Sayers
Title: Authorized Signatory
Date: January 21, 2020

DocuSign Envelope ID: 3D5AQF1A-3008-49A8-9561-S7DEQA0A3F4F

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 3D5AQF1A-3008-49A8-95C1-S7DFOA0A3F4F

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

*Nathaniel Groh*

F711014B9C2D409...

Name: Nathaniel Groh

1/21/2020

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 21, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature [ *Nathaniel Groh*
—— DocuSigned by: ——
F711014B9C2D409... ]

Name: Nathaniel Groh

1/21/2020

-14-

# EXHIBIT 28

DocuSign Envelope ID: 82DB3F05-C7E9-4F05-8B2D-8CF949983953

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 5, 2020

Brandi Harris

Re:      Offer of Employment

Dear Brandi:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.   No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                Acknowledged and agreed to
                                                         This Date,
                                                          2/5/2020



_____                          _____
Katherine Sayers                                 Brandi Harris
February 5, 2020

DocuSign Envelope ID: 82DB3F05-C7E9-4F05-8B2D-8CF949983953

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1.   Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2.   Employee's regular rate of pay: $3,000.00 semi-monthly

3.   FLSA Status: Exempt

4.   Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

_____

Brandi Harris

2/5/2020

_____

Date

<div align="right">EXHIBIT A</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a)   Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)   Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)   Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 82DB3F05-C7E0-4E05-8B2D-8QF949983953

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    Restrictions on Interfering.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 82DB3F05-C7E9-4F05-8B2D-8CF949083953

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a)     Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*      *      *

**EXHIBIT A**

I, Brandi Harris, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/5/2020

DocuSigned by:

447C5FDFDC30416...

Brandi Harris

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 5, 2020

<div align="right">

**EXHIBIT B**

</div>

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 82DB3F05-C7E9-4E05-8B2D-8CF949983953

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

*Brandi Harris*

447C5FDFDC30416...

Name: Brandi Harris

2/5/2020

-12-

DocuSign Envelope ID: 82DB3F05-C7E6-4F05-8B2D-8CF949983953

**EXHIBIT C**

### Prevention of Coordination Policy
Effective February 5, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

      a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

      b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

      c. The means or mode of the Committee's public communications;

      d. The timing or frequency of the Committee's public communications;

      e. The intended geographic or demographic audience of the Committee's public communications;

      f. The size (in dollars, time, or media points) of any media buys;

      g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

      h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

    "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

    a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

    b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

    a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

    b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

    c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  _DocuSigned by:_
447C5FDFDC30416...

Name: Brandi Harris

2/5/2020

# EXHIBIT 29

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 11, 2020

Peter Kamara

Re:     Offer of Employment

Dear Peter:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: B5203554-959A-46E0-9A04-20E5DF32C1C7

**EXHIBIT A**

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 1/13/2020

_____
Katherine Sayers
January 11, 2020

DocuSigned by:

Peter Marrale kamara

—78FE3C1F918A476…
_____
Peter Kamara

-2-

DocuSign Envelope ID: B5203554-959A-46E8-9A04-20E5DF32C1CF

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Peter Marrah Kamara*

DocuSigned by:
78FE3C1F918A476...

_____

Peter Kamara

1/13/2020

_____

Date

-3-

DocuSign Envelope ID: B5203564-959A-46E8-9A04-29E5FDF32C61C7

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.　　**Confidential Information**.

(a)　　Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)　　Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)　　Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

## 9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

## 10.    **General Provisions**.

(a)    <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: B5203554-959A-46E0-9A04-29E5DF32C1C7

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

**EXHIBIT A**

I, Peter Kamara, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/13/2020

DocuSigned by:

*Peter Marrali kamara*

78FE3C1F918A476...

Peter Kamara

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 11, 2020

DocuSign Envelope ID: B5203554-959A-46E8-9A04-29E5F6732C1CF

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Peter Marrah Kamara*

78FE3C1F918A476...

1/13/2020

EXHIBIT C

**Prevention of Coordination Policy**
Effective January 11, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

*Peter Marrali kamara*

78FE3C1F918A476...

Name: Peter Kamara

1/13/2020

# EXHIBIT 30

DocuSign Envelope ID: 9A5B0460-D13B-498F-A63C-3AFAB1C6EAB0

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Macklin Kennedy

Re:     Offer of Employment

Dear Macklin:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00 cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

-1-

DocuSign Envelope ID: 9A5B9A80-D13B-498F-A63C-2AFAD1C6EAB0

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

    1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                              Acknowledged and agreed to
                                                        This Date,
                                                         1/23/2020

_____                    _____
Katherine Sayers                                        Macklin Kennedy
January 23, 2020

DocuSign Envelope ID: 9A5B9460-D13B-498F-A63C-2AFAD1C6EAB0

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

8F38E95F6612479...

_____

Macklin Kennedy

1/23/2020

_____

Date

DocuSign Envelope ID: 9A5B9460-D13B-498E-A63C-2AFA01C6EAB0

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 9A5B0A60-D13B-498F-A63C-2AFAD1C6EAB0

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d) Former Employer Information. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2. **Invention Assignment**. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3. **Returning Organization Group Documents**. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4. **Disclosure of Agreement**. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5. **Restrictions on Interfering**.

(a) During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b) For purposes of this Agreement:

(i) "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9.      Cooperation.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10.      General Provisions.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

        (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

        (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

\*       \*       \*

EXHIBIT A

I, Macklin Kennedy, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020



DocuSigned by:

8F38E95F6612479...

Macklin Kennedy

Acknowledged, accepted and agreed:

By: _ 
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 23, 2020

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 9A5B0A60-D13B-498F-A63C-2AFAD1C6EAB0

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

8F38E95F6612479...

Name: Macklin Kennedy

1/23/2020

-12-

DocuSign Envelope ID: 9A5B0A60-D13B-498F-A63C-2AFA01C5EAB0

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature

Name: Macklin Kennedy

1/23/2020

# EXHIBIT 31

DocuSign Envelope ID: 31F8C2EB-BE82-4709-BB39-95E59F2D4B89

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 2, 2020

Madison Oliver-Mays

Re:     <u>Offer of Employment</u>

Dear Madison:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                   This Date,
                                                                    2/2/2020


_____                         _____
Katherine Sayers                                                Madison Oliver-Mays
February 2, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001
2. Employee's regular rate of pay: $3,000.00 semi-monthly
3. FLSA Status: Exempt
4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

06B53374E6E6414...
_____
Madison Oliver-Mays

2/2/2020
_____
Date

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.     **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 31F8C2EB-BF89-4769-BB3D-65E5BF2524B9D

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)  Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.  Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.  Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.  Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.  Restrictions on Interfering.

(a)  During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)  For purposes of this Agreement:

(i)  "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

         (ii)    "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

         (iii)    "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

     (c)    <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

     6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

     7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

     8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

DocuSign Envelope ID: 31F8C2FEB-BF89-4719-BB3D-45E59E2D4B8D

**EXHIBIT A**

        I, Madison Oliver-Mays, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/2/2020

Madison Oliver-Mays

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 2, 2020

DocuSign Envelope ID: 31F8C0EB-BF89-4769-BB3D-65E5BF2B4B9D

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

06B53374E6E6414...

Name: Madison Oliver-Mays

2/2/2020

EXHIBIT C

### Prevention of Coordination Policy

Effective February 2, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 31F8C9EB-BF89-4749-BB3D-45E5BE2D4B8D
Case 1:20-cv-02489-LTS-GWG   Document 113-1   Filed 06/17/20   Page 465 of 942

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature [DocuSigned by: _Madison Oliver-Mays_ 06B53374E6E6414...]

Name: Madison Oliver-Mays

2/2/2020

# EXHIBIT 32

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 16, 2020

Patrick McHugh

Re:   Offer of Employment

Dear Patrick:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

EXHIBIT A

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                Acknowledged and agreed to
                                                         This Date,
                                                          1/16/2020


_____                    DocuSigned by:
Katherine Sayers                         *Patrick McHugh*
January 16, 2020                         50E835F5D5B14A6...
                                         _____
                                         Patrick McHugh

-2-

DocuSign Envelope ID: E4BD9266-0A7C-4E16-B7A0-CAB0B574897D

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

    1.   Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.   Employee's regular rate of pay: $3,000.00 semi-monthly

    3.   FLSA Status: Exempt

    4.   Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Patrick McHugh*

50E835F5D5B14A6...

_____

Patrick McHugh

1/16/2020

_____

Date

DocuSign Envelope ID: E4BD9266-DA73-4E10-B7A0-CAB9B674897D

<div align="right">

**EXHIBIT A**

</div>

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

    (a)  Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

    (b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

    (c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: E4BD9266-DA7C-4F10-B7A0-CAB9B674897D

the contents of the Organization Materials.  Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)  Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.  **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.  **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.  **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.  **Restrictions on Interfering**.

(a)  During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)  For purposes of this Agreement:

(i)  "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: E4BD9266-DA7C-4E10-B7A0-CAB0B574897D

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

              (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

              (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p align="center">*      *      *</p>

**EXHIBIT A**

        I, Patrick McHugh, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

    1/16/2020

DocuSigned by:

*Patrick McHugh*

50E835F5D5B14A6...

Patrick McHugh

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 16, 2020

DocuSign Envelope ID: E4BD9266-DA72-4E10-B7A0-CAB0B674897D

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: E4BD9266-DA72-4E10-B7A0-CAB0B5748B7D

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature: _____

*DocuSigned by:*

*Patrick McHugh*

50E835F5D5B14A6...

Name: Patrick McHugh

1/16/2020

-12-

DocuSign Envelope ID: E4BD9266-DA72-4E10-B7A0-CAB0B5748975

<div align="right"><strong>EXHIBIT C</strong></div>

<div align="center">

**Prevention of Coordination Policy**

Effective January 16, 2020

</div>

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

<div align="center">-13-</div>

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature 

Name: Patrick McHugh

1/16/2020

# EXHIBIT 33

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Paul Monterosso

Re:     Offer of Employment

Dear Paul:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

    1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                Acknowledged and agreed to
                                                          This Date,
                                                           1/23/2020


_____                                     _____
Katherine Sayers                                          Paul Monterosso
January 23, 2020

-2-

DocuSign Envelope ID: 3BB166C4-A8F7-4207-AC0D-27F907954677

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001
2. Employee's regular rate of pay: $3,000.00 semi-monthly
3. FLSA Status: Exempt
4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Paul Monterosso*

4244A2F3F0164EF...
_____
Paul Monterosso

1/23/2020
_____
Date

-3-

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a)  Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 3BB186C4-A8F7-4407-AC0D-27F907264677

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     Restrictions on Interfering.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.     **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)     <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 3BB186C4-A8F7-4207-AC0D-27F807264673

DocuSign Envelope ID: 3BB186C4-A8E7-4207-AC0D-27F967254677

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*        *        *</div>

EXHIBIT A

I, Paul Monterosso, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020

DocuSigned by:

*Paul Monterosso*

4244A2F3F0164EF...

Paul Monterosso

Acknowledged, accepted and agreed:

By: _____

Name: Katherine Sayers
Title: Authorized Signatory
Date: January 23, 2020

DocuSign Envelope ID: 3BB166C4-A8E7-4207-AC0D-27F967264675

<div align="right">EXHIBIT B</div>

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 3BB186C4-A8F7-4207-AC0D-27F867264677

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

*Paul Monterosso*

4244A2F3F0164EF...

Name: Paul Monterosso

1/23/2020

-12-

EXHIBIT C

## Prevention of Coordination Policy

Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 3BB186C4-A8F7-4207-AC0D-27F807264677

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Paul Monterosso*
DocuSigned by:
4244A2F3F0164EF...

Name: Paul Monterosso

1/23/2020

# EXHIBIT 34

DocuSign Envelope ID: E25FA053-B605-4D23-B342-8CC1D2F5E1B1

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 11, 2020

Reymon Murphy

Re:     Offer of Employment

Dear Reymon:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

# EXHIBIT 35

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 4, 2020

Frida Michelle Naranjo

Re:    Offer of Employment

Dear Frida Michelle:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.     The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.     As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: AE14DA8F-618E-4780-AB17-8E8A9FDEF703

**EXHIBIT A**

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                Acknowledged and agreed to
                                                                              This Date,
                                                                               2/4/2020


_____                                    _____
Katherine Sayers                                                  Frida Michelle Naranjo
February 4, 2020

DocuSign Envelope ID: AE14DA8F-6185-4780-AB17-8E8A9F0EF703

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

8CE64FBF25CE4ED...

_____

Frida Michelle Naranjo

2/4/2020

_____

Date

-3-

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.     **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: AE14DA8F-6185-4180-A817-8F8A9F0EEF79

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a) I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b) I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a) <u>Governing Law and Jurisdiction</u>. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c) <u>No Right of Continued Employment</u>. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d) <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: AE14DA8F-6185-4480-AB17-8E8A9FDEF703

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*        *        *

**EXHIBIT A**

I, Frida Michelle Naranjo, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/4/2020

DocuSigned by:

8CE64FBF25CE4ED...

Frida Michelle Naranjo

Acknowledged, accepted and agreed:

By: _____
Name: Katherine Sayers
Title: Authorized Signatory
Date: February 4, 2020

DocuSign Envelope ID: AE14DA8F-6185-4780-A817-8E8A9FDEF783

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

8CE64FBF25CE4ED...

Name: Frida Michelle Naranjo

2/4/2020

DocuSign Envelope ID: AE14DA8F-6185-4780-AB17-8E8A9F0EF783

**EXHIBIT C**

## Prevention of Coordination Policy
### Effective February 4, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

        a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

        b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

        a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

        b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

        c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature

Name: Frida Michelle Naranjo

2/4/2020

# EXHIBIT 36

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 16, 2020

Joseph Nestor

Re:     Offer of Employment

Dear Joseph:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

EXHIBIT A

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                              Acknowledged and agreed to
                                                        This Date,
                                                         1/16/2020

_____                    _____
Katherine Sayers                                        Joseph Nestor
January 16, 2020

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

_____

Joseph Nestor

1/16/2020

_____

Date

DocuSign Envelope ID: 7B38B96A-3F91-4B8D-B14A-5E240A90A7F5

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 7B38B96A-3F91-4B8D-B14A-3E240A90A77

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    Restrictions on Interfering.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 7B38B9CA-3F91-4B8D-B14A-6E240A90A77

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.  **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.  **General Provisions**.

(a)     Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 7B38B96A-3F91-4B8D-B14A-5E2401A90A77

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*     *     *

**EXHIBIT A**

      I, Joseph Nestor, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/16/2020

DocuSigned by:

EB1CCBD67F5A4DF...

Joseph Nestor


Acknowledged, accepted and agreed:


By: _____

      Name: Katherine Sayers
      Title: Authorized Signatory
      Date: January 16, 2020

### CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

EB1CCBD67F5A4DF...

Name: Joseph Nestor

1/16/2020

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 16, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature 

Name: Joseph Nestor

1/16/2020

# EXHIBIT 37

DocuSign Envelope ID: 4F06 1386-EF88-4005-9E5E-2A707BAEF38C

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 26, 2020

Luke Nicholas

Re:     Offer of Employment

Dear Luke:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

EXHIBIT A

1.    No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                      Acknowledged and agreed to
                                                                This Date,
                                                                 1/26/2020

_____                        _____
Katherine Sayers                                            Luke Nicholas
January 26, 2020

DocuSign Envelope ID: 4F06-13B6-FF88-4005-9F5F-2A707BAEF38C

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

Luke Nicholas
D48BDE6E599B4B2...

_____

Luke Nicholas

1/26/2020

_____

Date

DocuSign Envelope ID: 4F06-1386-E588-4005-9E55-2A7C7DAEF380

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    <u>Organization Group Information</u>. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    <u>Ownership</u>. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    <u>Use of Organization Materials</u>. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 4F06-13B6-FF88-4005-9F5E-2A7C7BAEF38C

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)  Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.  **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.  **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.  **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.  **Restrictions on Interfering**.

(a)  During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)  For purposes of this Agreement:

(i)  "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 4F0613B6-EF88-4005-9F5E-2A707BAEF38C

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 4F06-13B6-EF88-4005-9F5E-2A707BAEF38C

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 4F06-13B6-FF88-4005-8F5F-2A7C7BAEF38C

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*     *     *

**EXHIBIT A**

I, Luke Nicholas, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/26/2020

DocuSigned by:

*Luke Nicholas*

D48BDE6E599B4B2...

Luke Nicholas

Acknowledged, accepted and agreed:

By: _____
   Name: Katherine Sayers
   Title: Authorized Signatory
   Date: January 26, 2020

DocuSign Envelope ID: 4F0613B6-FF88-4005-9F5E-2A7C7BAEF38C

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

*Luke Nicholas*
DocuSigned by:
D48BDE6E599B4B2...

Name: Luke Nicholas

1/26/2020

**EXHIBIT C**

## Prevention of Coordination Policy
Effective January 26, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature

DocuSigned by:

*Luke Nicholas*

D48BDE6E599B4B2...

Name: Luke Nicholas

1/26/2020

# EXHIBIT 38

DocuSign Envelope ID: 7C44A156-D326-4E08-835E-B7559D023FF5

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022


February 4, 2020


Josephine Olinger



Re:    Offer of Employment



Dear Josephine:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00 cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.     The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.     As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to

                                                                          2/4/2020

_____                    _____

Katherine Sayers                                           Josephine Olinger
February 4, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

070125CAD1BE43C...

_____

Josephine Olinger

2/4/2020

_____

Date

DocuSign Envelope ID: 7C44A156-D326-4F08-835E-B7759D023FF

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.     **Confidential Information**.

(a)     Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 7C44A156-D326-4F08-835E-B7755D0023FF

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 7C44A156-D326-4E08-835E-B7759D023FF

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)      "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)      "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)      Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.      **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.      **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.      **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 7C44A156-D326-4F08-835F-B7759D023FF5

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.     **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)     Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 7C44A456-D326-4F08-835E-B7759D023FF

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e) <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f) <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p style="text-align:center">*       *       *</p>

**EXHIBIT A**

    I, Josephine Olinger, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/4/2020



Josephine Olinger

Acknowledged, accepted and agreed:

By: _____
  Name: Katherine Sayers
  Title: Authorized Signatory
  Date: February 4, 2020

DocuSign Envelope ID: 7C44A156-D326-4F08-835E-B7559D023FB

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 7C44A156-D326-4F08-835E-B7759D023FF

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

_DocuSigned by:_

070125CAD1BE43C...

Name: Josephine Olinger

2/4/2020

EXHIBIT C

### Prevention of Coordination Policy
Effective February 4, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature

070125CAD1BE43C...

Name: Josephine Olinger

2/4/2020

# EXHIBIT 39

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 23, 2020

Alec Silvester

Re:      Offer of Employment

Dear Alec:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

DocuSign Envelope ID: C5FB974C-DA50-4E8-B8C0-EE79CF841875

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.     The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.     As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                              Acknowledged and agreed to
                                                        This Date,
                                                         1/23/2020

_____                    _____
Katherine Sayers                                 Alec Silvester
January 23, 2020

DocuSign Envelope ID: C5FB974C-DA52-4E8-B8C0-EE78CF841875

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information
Name:  Mike Bloomberg 2020 Inc.
Doing Business As (DBA) Name(s):  n/a
Physical Address: 909 Third Avenue, NY, NY 10022
Mailing Address: 909 Third Avenue, NY, NY 10022
Phone: 212-583-6001
2. Employee's regular rate of pay: $3,000.00 semi-monthly
3. FLSA Status: Exempt
4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

————3E94A2D1329D4B9...
_____
Alec Silvester

1/23/2020
_____
Date

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
## AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.       **Confidential Information**.

(a)       Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)       Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)       Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: C5FB974C-DA50-4E8-B8C0-FE790F811875

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)      Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.      **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.      **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.      **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.      **Restrictions on Interfering**.

(a)      During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)      For purposes of this Agreement:

(i)      "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: C5FB974C-DAB0-4E8B-B8C0-EE790F811875

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

## 9.    Cooperation.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

## 10.    General Provisions.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: C5FB974C-DA50-4E8B-8C00-EE790F8411875

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<p style="text-align:center">*     *     *</p>

DocuSign Envelope ID: C5FB974C-DA50-4E8-B8C0-EE790F841875

**EXHIBIT A**

I, Alec Silvester, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020

_____
3E94A2D1329D4B9...

Alec Silvester

Acknowledged, accepted and agreed:

By: _____
Name: Katherine Sayers
Title: Authorized Signatory
Date: January 23, 2020

DocuSign Envelope ID: C5FB974C-DA50-4E8B-B90E-EE78CF811875

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature
DocuSigned by:

—3E94A2D1329D4B9...

Name: Alec Silvester

1/23/2020

DocuSign Envelope ID: C5FB974C-DA50-45B8-B8C0-EE79CF841875

EXHIBIT C

**Prevention of Coordination Policy**

Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

        a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

        b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

        c. The means or mode of the Committee's public communications;

        d. The timing or frequency of the Committee's public communications;

        e. The intended geographic or demographic audience of the Committee's public communications;

        f. The size (in dollars, time, or media points) of any media buys;

        g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

        h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

    "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: C55B974C-DA50-4E8-B8C0-EE780F841875

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

      a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

      b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

      a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

      b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

      c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature    *[DocuSigned by: signature]*
             3E94A2D1329D4B9...

Name: Alec Silvester

1/23/2020

# EXHIBIT 40

DocuSign Envelope ID: 10423561-4E95-4E8A-8FB2-32A82088DFAA

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 4, 2020

Dan Smith

Re:     <u>Offer of Employment</u>

Dear Dan:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 104235A1-4E05-4E8A-BF82-92A82068DFAA

**EXHIBIT A**

1.  No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                   This Date,
                                                                    1/4/2020

_____                                            _____
Katherine Sayers                                                   Dan Smith
January 4, 2020

-2-

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Dan Smith*

9BCE782D8F16490...

_____

Dan Smith


1/4/2020

_____

Date

DocuSign Envelope ID: 1042350A-4E95-4E8A-8FB2-92A82089FEA4

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.     **Confidential Information**.

(a)     Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)     Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)     Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 1042351-4E95-4E8A-BFB2-82A821080FAA

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

          (ii)    "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

          (iii)    "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

       (c)    <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

      6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

      7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

      8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

        (a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

        (b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

        (a)     <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

        (b)     <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

        (c)     <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

        (d)     <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

-7-

DocuSign Envelope ID: 104235A1-4E95-4E8A-BFB2-93AA21J89DFAA

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*        *        *

DocuSign Envelope ID: 1042351A1-4E95-4E8A-8FB2-92A82008DFAA

**EXHIBIT A**

        I, Dan Smith, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/4/2020

DocuSigned by:

*Dan Smith*

9BCE782D8F16490...

Dan Smith

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 4, 2020

DocuSign Envelope ID: 104235A1-4E95-4E8A-8FB2-92A82688DFAA

<div align="right">

**EXHIBIT B**

</div>

<div align="center">

**CODE OF CONDUCT**

</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

**I. Ethical and Appropriate Behavior**

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

**II. Confidential Information**

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

**III. Statements to the Press or Other Media Members**

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

**IV. Conflicts of Interest**

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 10423561-4E85-4E8A-BFB2-82A82088DFAA

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Dan Smith*

9BCE782D8F16490...

1/4/2020

**EXHIBIT C**

## Prevention of Coordination Policy
Effective January 4, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

DocuSigned by:

*Dan Smith*

9BCE782D8F16490...

Name: Dan Smith

1/4/2020

-14-

# EXHIBIT 41

DocuSign Envelope ID: 4AAE40A9-8E80-43E9-BFFA-588E4062E793

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 14, 2020


Chris Soth


Re:      Offer of Employment


Dear Chris:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization and to paid vacation, to be accrued and taken in accordance with Organization policy.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.    No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                              Acknowledged and agreed to
                                                                                             This Date,
                                                                                              1/14/2020

_____                                        _____
Katherine Sayers                                                           Chris Soth
January 14, 2020

DocuSign Envelope ID: 4AAE40A9-8E89-48E9-BFFA-588F4062E783

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name: Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s): n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Chris Soth*

44D211732F01497...

_____

Chris Soth

1/14/2020

_____

Date

DocuSign Envelope ID: 4AAE40A9-8E89-48B8-BFFA-588E4053E783

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.  **Confidential Information**.

(a)  Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 4AAE4DA9-8E89-4E89-BEFA-588E4062E783

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)      "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)      "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)      Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.      **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.      **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.      **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 4AAE40A9-8E89-42E9-BEFA-588E4063E783

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.    **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.    **General Provisions**.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 4AAE40A9-8E89-48E9-BFFA-588E4062E793

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

       (e)   <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

       (f)   <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

DocuSign Envelope ID: 4AAE40A9-8F89-43F9-BFFA-588E40E2E783

**EXHIBIT A**

      I, Chris Soth, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/14/2020

Chris Soth

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 14, 2020

DocuSign Envelope ID: 4AAE4DA9-8E86-43E9-BFFA-588E4063E783

<div align="right">EXHIBIT B</div>

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 4AAE4DA9-8E89-48E9-BFFA-588E4063E78B

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

DocuSigned by:

*Chris Soth*

44D211732F01497...

1/14/2020

DocuSign Envelope ID: 4AAE4DA9-8E89-43E9-BFFA-588E4063E783

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 14, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

*Chris Soth*
44D211732F01497...

Name: Chris Soth

1/14/2020

# EXHIBIT 42

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 20, 2020

Audra Tellez

Re:      Offer of Employment

Dear Audra:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                                         Acknowledged and agreed to
                                                                                        This Date,
                                                                                         1/20/2020

_____                                        _____
Katherine Sayers                                                            Audra Tellez
January 20, 2020

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

1E9EF775F23943A...

_____

Audra Tellez

1/20/2020

_____

Date

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a) Organization Group Information. I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members. In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Organization. I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b) Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c) Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

DocuSign Envelope ID: 75E2C906-0336-4082-BF9B-EB2DF0E9EADE

EXHIBIT A

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    Restrictions on Interfering.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 75E2C9D6-0336-4083-BF9B-EB2DF078EADF

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii) "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii) "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c) Non-Disparagement. I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member. However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6. **Reasonableness of Restrictions**. I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group. I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7. **Independence; Severability; Blue Pencil**. Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity. If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions. If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8. **Injunctive Relief**. I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 75E2C906-0336-4062-BE9B-EB2BF08FEADE

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a)    <u>Governing Law and Jurisdiction</u>. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    <u>No Right of Continued Employment</u>. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 75E2C9D6-0336-4D89-BE9B-EB2BE078EADE

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*        *        *

DocuSign Envelope ID: 75E2C9D6-0336-4088-BE9B-EB2BE088EADF

**EXHIBIT A**

I, Audra Tellez, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/20/2020

Audra Tellez

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 20, 2020

EXHIBIT B

**CODE OF CONDUCT**

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

**I. Ethical and Appropriate Behavior**

> The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

> The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

**II. Confidential Information**

> In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

**III. Statements to the Press or Other Media Members**

> Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

**IV. Conflicts of Interest**

> Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 75E2C906-0336-4268-BE9B-EB2BE078EADE

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 75E2C9D6-0336-4269-BE9B-EB2BF085EADE

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

Name: Audra Tellez

1/20/2020

-12-

DocuSign Envelope ID: 75E2C9D6-0336-4069-BE9B-EB2BF085EADE

**EXHIBIT C**

### Prevention of Coordination Policy
Effective January 20, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

      a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

      b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

      c. The means or mode of the Committee's public communications;

      d. The timing or frequency of the Committee's public communications;

      e. The intended geographic or demographic audience of the Committee's public communications;

      f. The size (in dollars, time, or media points) of any media buys;

      g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

      h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature ⎡ DocuSigned by:

⎣ 1E9EF775F23943A...

Name: Audra Tellez

1/20/2020

# EXHIBIT 43

DocuSign Envelope ID: C79A1263-54C8-4DC0-BAF1-AA7B9125C5B9

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022


January 23, 2020


Carlos Torres


Re:     Offer of Employment


Dear Carlos:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

DocuSign Envelope ID: C78A1D03-54C8-4DC0-BAF1-4A7B9125C529

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

    1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                      Acknowledged and agreed to
                                                                This Date,
                                                                 1/23/2020

_____                           _____
Katherine Sayers                                          Carlos Torres
January 23, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

E9E7D625FF4649E...

_____

Carlos Torres

1/23/2020

_____

Date

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

      (d)    <u>Former Employer Information</u>.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

      2.    **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "<u>Proprietary Rights</u>"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

      3.    **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

      4.    **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

      5.    **Restrictions on Interfering**.

      (a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

      (b)    For purposes of this Agreement:

      (i)    "<u>Interfering Activities</u>" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

     (ii) "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

     (iii) "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

   (c) <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

   6. **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

   7. **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

   8. **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.     **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)     Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: C79A1A03-54C8-4BC9-BAF1-4A7B9105C529

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*        *        *

DocuSign Envelope ID: C79A1163-54C8-4BC0-BAF1-4A7B9125C5B9

**EXHIBIT A**

        I, Carlos Torres, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/23/2020

DocuSigned by:

_E9E7D625FF4649E..._

Carlos Torres

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 23, 2020

DocuSign Envelope ID: C79A1163-54C9-4BC9-BAF1-AA7B9185C5D0

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 679A1A03-54C8-4DC0-BAF1-4A7B9185C5D9

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

E9E7D625FF4649E...

Name: Carlos Torres

1/23/2020

EXHIBIT C

## Prevention of Coordination Policy
Effective January 23, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature

Name: Carlos Torres

1/23/2020

# EXHIBIT 44

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 3, 2020

Eliot Tricotti-Mookarjee

Re:      Offer of Employment

Dear Eliot:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.     No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                         This Date,
                                                                          2/3/2020

_____                        _____
Katherine Sayers                                          Eliot Tricotti-Mookarjee
February 3, 2020

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:



DocuSigned by:

DC728CDEA36C4CF...

_____

Eliot Tricotti-Mookarjee

2/3/2020

_____

Date

<div align="right">**EXHIBIT A**</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.    **Confidential Information**.

(a)    Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)    Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)    Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 74BD379C-A838-4409-85CE-97F20EA74889

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 74DD379C-A838-4409-85CE-97F20EA74889

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*          *          *

DocuSign Envelope ID: 74BD379C-A838-4490-85CF-97F20EA74889

**EXHIBIT A**

      I, Eliot Tricotti-Mookarjee, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/3/2020

DocuSigned by:

DC728CDEA36C4CF...

Eliot Tricotti-Mookarjee

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 3, 2020

<div align="right">**EXHIBIT B**</div>

<div align="center">**CODE OF CONDUCT**</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 74BD379C-A838-4409-B5CE-97F20EA74889

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DC728CDEA36C4CF...

Name: Eliot Tricotti-Mookarjee

2/3/2020

-12-

DocuSign Envelope ID: 74DD379C-A838-4409-85CE-97F20EA74889

**EXHIBIT C**

## Prevention of Coordination Policy
### Effective February 3, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature _____

DocuSigned by:

DC728CDEA36C4CF...

Name: Eliot Tricotti-Mookarjee

2/3/2020

# EXHIBIT 45

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 5, 2020

Gloria Tyler

Re:      Offer of Employment

Dear Gloria:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

DocuSign Envelope ID: CF34F232-7429-4EF6-88E3-7506F2AA184E

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                  Acknowledged and agreed to

                                                                    2/5/2020

_____                    _____
Katherine Sayers                                    Gloria Tyler
February 5, 2020

DocuSign Envelope ID: CF34F292-7429-4EE6-88E3-7506F2AA184E

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

Gloria Tyler

09C6176A0011400...

_____

Gloria Tyler

2/5/2020

_____

Date

-3-

DocuSign Envelope ID: CF34F232-7429-4EF6-88E3-7506F2A484E

**EXHIBIT A**

### CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

   (d) <u>Former Employer Information</u>. I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

   2. **Invention Assignment**. I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "<u>Proprietary Rights</u>"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

   3. **Returning Organization Group Documents**. I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group. I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

   4. **Disclosure of Agreement**. As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

   5. **Restrictions on Interfering**.

   (a) During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

   (b) For purposes of this Agreement:

    (i) "<u>Interfering Activities</u>" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: CF34F232-7428-4E56-88E3-7500F2A4184E

EXHIBIT A

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.     **Cooperation**.

(a)     I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)     I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.     **General Provisions**.

(a)     Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)     Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)     No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)     Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: CF34F232-742A-4EF6-88E3-7506F2A4184E

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

**EXHIBIT A**

I, Gloria Tyler, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/5/2020

DocuSigned by:

*Gloria Tyler*

09C6176A0011400...

Gloria Tyler

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 5, 2020

DocuSign Envelope ID: CF34F292-7429-4EE6-88E3-F505F2AA184E

**EXHIBIT B**

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

*Gloria Tyler*

09C6176A0011400...

Name: Gloria Tyler

2/5/2020

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective February 5, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: CF34F232-742A-4EE6-88E3-7500F2A4184F

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature
> DocuSigned by:
> *Gloria Tyler*
> 09C6176A0011400...

Name: Gloria Tyler

2/5/2020

# EXHIBIT 46

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 28, 2020

Lakisha Watson-Moore

Re:    Offer of Employment

Dear Lakisha:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 16BD95B5-C7B9-48A4-B2C5-CC581A5FD04C

**EXHIBIT A**

1.  No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                       Acknowledged and agreed to
                                                                This Date,
                                                                 1/29/2020


_____                                 _____
Katherine Sayers                                        Lakisha Watson-Moore
January 28, 2020

-2-

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Lakisha Watson-Moore*

B8480050A57E4BA...

_____

Lakisha Watson-Moore

1/29/2020

_____

Date

<div align="right">**EXHIBIT A**</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1. **Confidential Information**.

(a)   Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)   Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)   Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 16BD9FB5-C7B8-48A6-B8C5-CC581AFED04C

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

         (ii)     "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

         (iii)     "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

    (c)    <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

    6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

    7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

    8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 16BD96B5-C7B9-48A4-B2C5-CC581AFFD04C

EXHIBIT A

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 16BD9585-C7B9-48A4-B2C5-C0581A5FD04C

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     Survival.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     Counterparts. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*       *       *

**EXHIBIT A**

    I, Lakisha Watson-Moore, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/29/2020

DocuSigned by:

*Lakisha Watson-Moore*

B8480050A57E4BA...

Lakisha Watson-Moore

Acknowledged, accepted and agreed:

By: _____

  Name: Katherine Sayers
  Title: Authorized Signatory
  Date: January 28, 2020

<div align="right"><b>EXHIBIT B</b></div>

# CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 16BD95B5-C7B9-48A4-B8C5-C0581A5FD04C

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

DocuSign Envelope ID: 16BD95B5-C7B2-48A4-B2C5-C0581A5FD04C

EXHIBIT B

**CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT**

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

*Lakisha Watson-Moore*

B8480050A57E4BA...

Name: Lakisha Watson-Moore

1/29/2020

-12-

DocuSign Envelope ID: 16BD9FB5-C7B9-48A4-B2C5-CC581A5FD04C

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective January 28, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

      a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

      b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

      c. The means or mode of the Committee's public communications;

      d. The timing or frequency of the Committee's public communications;

      e. The intended geographic or demographic audience of the Committee's public communications;

      f. The size (in dollars, time, or media points) of any media buys;

      g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

      h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

    "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Lakisha Watson-Moore*
DocuSigned by:
B8480050A57E4BA...

Name: Lakisha Watson-Moore

1/29/2020

# EXHIBIT 47

DocuSign Envelope ID: 40F1DA60-43A8-49B0-93F0-767BE67A1CF

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

January 30, 2020

Jesse Weinberg

Re:    Offer of Employment

Dear Jesse:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  We look forward to your coming onboard.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

In addition, the Organization will reimburse the actual and reasonable out-of-pocket relocation expenses ("Relocation Expenses") you incur, in an amount not to exceed $5,000.00. Qualified Relocation Expenses, subject to the $5,000.00  cap, may include: (1) travel expenses for you and your family in conjunction with house hunting and other relocation matters, (2) lease termination fees, brokerage fees and commissions and closing costs related to the purchase or sale of your primary home, (3) fees for consultants associated with your transition, (4) rent or mortgage expenses during the first year of employment, and (5) relocation of household goods and cars. To be reimbursed for any out-of-pocket relocation expenses, please promptly submit receipts reflecting each such expense to humanresources@mikebloomberg.com. Please note that the aforementioned may be subject to taxation. Mike Bloomberg 2020 Inc. will assume the cost of any payroll tax liabilities associated with these relocation expenses.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

   1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                          Acknowledged and agreed to
                                                                    This Date,
                                                                    1/30/2020

_____                    _____
Katherine Sayers                                          Jesse Weinberg
January 30, 2020

DocuSign Envelope ID: 40F1D460-43A8-49B0-93F0-767BE67A1CF

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Jesse Weinberg*

C33D6376E2FF4BD...

_____

Jesse Weinberg

1/30/2020

_____

Date

**EXHIBIT A**

**CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT
AGREEMENT**

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.  **Confidential Information**.

(a)  Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

-4-

DocuSign Envelope ID: 40F1D460-43A8-49B0-93E0-767BE67A11CF

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)     "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)     "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)     Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.     **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.     **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.     **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

DocuSign Envelope ID: 40F1D460-43A8-49B0-93E0-767BE697A11CF

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9.      **Cooperation**.

(a)      I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)      I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10.      **General Provisions**.

(a)      Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)      Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)      No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)      Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 40F1D460-43A8-49B0-93F0-767BF6C7A1CF

EXHIBIT A

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

        (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

        (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">*      *      *</div>

DocuSign Envelope ID: 40F1D460-43A8-49B0-93F0-767BE67A1CF

**EXHIBIT A**

      I, Jesse Weinberg, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

1/30/2020

*Jesse Weinberg*

C33D6376E2FF4BD...

Jesse Weinberg

Acknowledged, accepted and agreed:

By: _____

    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: January 30, 2020

DocuSign Envelope ID: 40F1DA60-43A8-49B0-93F0-767BE67A1CF1

<div align="right">EXHIBIT B</div>

<div align="center">

**CODE OF CONDUCT**

</div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

*Jesse Weinberg*
C33D6376E2FF4BD...

Name: Jesse Weinberg

1/30/2020

EXHIBIT C

**Prevention of Coordination Policy**

Effective January 30, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

        a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

        b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

        c. The means or mode of the Committee's public communications;

        d. The timing or frequency of the Committee's public communications;

        e. The intended geographic or demographic audience of the Committee's public communications;

        f. The size (in dollars, time, or media points) of any media buys;

        g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

        h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

-13-

DocuSign Envelope ID: 40F1DA60-43A8-49B0-93F0-767BE67A1CF

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

      a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

      b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

      a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

      b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

      c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature   

Name: Jesse Weinberg

1/30/2020

# EXHIBIT 48

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 13, 2020

Clem Wright

Re:     Offer of Employment

Dear Clem:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization.  Assuming the required documentation is complete, we look forward to welcoming you on February 17, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

The Organization will provide eligible employees with a $5,000 relocation allowance (the "Relocation Allowance") to compensate them for certain expenses they have incurred or expect to incur in connection with their acceptance of our offer of employment. To receive this Relocation Allowance, you must submit documentation (such as a utility bill, a letter from a new landlord, etc.) showing that you moved more than 100 miles from your current home in order to be able to work for the Organization. Once such documentation is submitted, you will receive the full $5,000 Relocation Allowance on the next available pay date, in accordance with the Organization's regular payroll practices. Please note that the Relocation Allowance may constitute taxable income to you. Mike Bloomberg 2020 Inc. will "gross up" the Relocation Allowance by paying you an additional amount approximating the taxes that you are expected to owe on it.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization.  Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits

DocuSign Envelope ID: 2690A5B3-2CA0-4EE0-A624-C65007D00CB9

to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

    1.      No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                      Acknowledged and agreed to

                                                                        2/13/2020

_____                          _____
Katherine Sayers                                         Clem Wright
February 13, 2020

Notice and Acknowledgement of Pay Rate and Pay Day

    1.   Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.   Employee's regular rate of pay: $3,000.00 semi-monthly

    3.   FLSA Status: Exempt

    4.   Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

*Clem Wright*

6FB85644A87B4BE...

_____

Clem Wright

2/13/2020

_____

Date

<div align="right">**EXHIBIT A**</div>

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.  **Confidential Information**.

(a)  Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

DocuSign Envelope ID: 2690A5B3-2CA0-4FE0-A624-C6690FD00CB9

<div align="right">EXHIBIT A</div>

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)    Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.    Invention Assignment.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.    Returning Organization Group Documents.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.    Disclosure of Agreement.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.    Restrictions on Interfering.

(a)    During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)    For purposes of this Agreement:

(i)    "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 2690A5B3-2CA0-4FE0-A624-C66007D200CB9

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

9. **Cooperation**.

(a) I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge. As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b) I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

10. **General Provisions**.

(a) Governing Law and Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b) Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement. No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c) No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d) Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 2690A5B3-2CAD-4EF0-A624-C66907D00CB9

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)     <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)     <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

*        *        *

**EXHIBIT A**

I, Clem Wright, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/13/2020

Clem Wright

Acknowledged, accepted and agreed:

By: _____
Name: Katherine Sayers
Title: Authorized Signatory
Date: February 13, 2020

DocuSign Envelope ID: 2690A5B3-2CAD-4EE0-A624-C65087D00CB9

EXHIBIT B

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

DocuSign Envelope ID: 2690A5B3-2CA0-4EF0-A624-C65007D00CB9

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature:

DocuSigned by:

*Clem Wright*

6FB85644A87B4BE...

Name: Clem Wright

2/13/2020

EXHIBIT C

**Prevention of Coordination Policy**
Effective February 13, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  *Clem Wright*
DocuSigned by:
6FB85644A87B4BE...

Name: Clem Wright

2/13/2020

# EXHIBIT 49

DocuSign Envelope ID: 055CCF88-45F5-4EB6-BD09-AB94A5239CPA

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 14, 2020

Anoosh Yaraghchian

Re:     Offer of Employment

Dear Anoosh:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 17, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly. Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices. In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation. In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

**EXHIBIT A**

1.  No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,

Acknowledged and agreed to
This Date,
 2/14/2020

_____

Katherine Sayers
February 14, 2020

DocuSigned by:

3820215C5ACE4CC...

_____

Anoosh Yaraghchian

DocuSign Envelope ID: 055CCF88-45F5-4EB6-BD09-AB94A5239CDA

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

    1.  Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

    2.  Employee's regular rate of pay: $3,000.00 semi-monthly

    3.  FLSA Status: Exempt

    4.  Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

DocuSigned by:

3820215C5ACE4CC...

_____

Anoosh Yaraghchian

2/14/2020

_____

Date

-3-

DocuSign Envelope ID: 055CCF88-45F5-4EB6-BD09-AB9AA5239CPA

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.      **Confidential Information**.

(a)      Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)      Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)      Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

DocuSign Envelope ID: 055CCF88-45F5-4EB6-BD89-AB24A5239CDA

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "<u>Person</u>" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "<u>Post-Termination Non-Interference Period</u>" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    <u>Non-Disparagement</u>.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9. Cooperation.

(a)  I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)  I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10. General Provisions.

(a)  <u>Governing Law and Jurisdiction</u>.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)  <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)  <u>No Right of Continued Employment</u>.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)  <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

DocuSign Envelope ID: 055CCF88-45F5-4EB6-BD09-AB94A5239CDA

**EXHIBIT A**

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

          (e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

          (f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<div align="center">

*     *     *

</div>

**EXHIBIT A**

       I, Anoosh Yaraghchian, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

    2/14/2020

DocuSigned by:

3820215C5ACE4CC...

Anoosh Yaraghchian

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 14, 2020

DocuSign Envelope ID: 055CCF88-45F5-4EB6-BD09-AB94A5239CDA

<div align="right"><strong>EXHIBIT B</strong></div>

<div align="center"><strong>CODE OF CONDUCT</strong></div>

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

## I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

## II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

## III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

## IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

**EXHIBIT B**

### CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
### MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

DocuSigned by:

3820215C5ACE4CC...

Name: Anoosh Yaraghchian

2/14/2020

**EXHIBIT C**

**Prevention of Coordination Policy**
Effective February 14, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;
>
> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;
>
> c. The means or mode of the Committee's public communications;
>
> d. The timing or frequency of the Committee's public communications;
>
> e. The intended geographic or demographic audience of the Committee's public communications;
>
> f. The size (in dollars, time, or media points) of any media buys;
>
> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or
>
> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

"Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature
_DocuSigned by:_
3820215C5ACE4CC...

Name: Anoosh Yaraghchian

2/14/2020

# EXHIBIT 50

DocuSign Envelope ID: 34E91768-B55D-4E85-802E-8A27FAA5198D

Mike Bloomberg 2020 Inc.
c/o 909 Third Avenue, 15th floor
New York, NY 10022

February 5, 2020

Jesus Zamora

Re:     Offer of Employment

Dear Jesus:

On behalf of Mike Bloomberg 2020 Inc. (the "Organization"), it is my pleasure to formally confirm our offer to you to join the Organization. Assuming the required documentation is complete, we look forward to welcoming you on February 10, 2020.

You will be compensated at the rate of $3,000.00 semi-monthly.  Such compensation shall be payable biweekly or bimonthly in accordance with the Organization's regular payroll practices.  In light of your job duties and compensation, this position is classified as exempt from the overtime provisions of federal and applicable state laws.

You will be eligible to participate in all employee benefits plans from time to time adopted by the Organization and in effect for similarly situated employees of the Organization. Notwithstanding the foregoing, the Organization expressly reserves the right to amend, modify or terminate any employee benefit plan or policy at any time, with or without notice.

The Organization may withhold and deposit all federal, state, and local income and employment taxes that are owed with respect to all amounts paid or benefits provided to or for you by the Organization.

The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.  Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

1.      The Organization's offer hereunder is contingent on the acceptable results of a background investigation.  In the event that the results of the background check are not acceptable to the Organization in its reasonable discretion, this offer shall be void *ab initio*.

2.      As a condition of, and prior to commencement of, your employment with the Organization, you shall have executed and delivered to the Organization the Confidentiality, Non-Interference, and Invention Assignment Agreement and Code of Conduct attached hereto as Exhibits A and B, respectively.

DocuSign Envelope ID: 34E91768-B55D-4E8E-802B-8AD7EAA8198D

**EXHIBIT A**

1.  No statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization.

We are very excited to have you as a part of the Organization's team.  We have many exciting challenges ahead and we are confident you can make a significant contribution to our future growth.

Sincerely,                                                    Acknowledged and agreed to
                                                             This Date,
                                                              2/5/2020

_____                        DocuSigned by:
Katherine Sayers                                  Jesus Zamora
February 5, 2020                                  A4ACECC78EE147F...
                                                  _____
                                                  Jesus Zamora

**EXHIBIT A**

Notice and Acknowledgement of Pay Rate and Pay Day

1. Employer Information

Name:  Mike Bloomberg 2020 Inc.

Doing Business As (DBA) Name(s):  n/a

Physical Address: 909 Third Avenue, NY, NY 10022

Mailing Address: 909 Third Avenue, NY, NY 10022

Phone: 212-583-6001

2. Employee's regular rate of pay: $3,000.00 semi-monthly

3. FLSA Status: Exempt

4. Regular Payday: Semi-Monthly on the 15th and last business day of the month

I acknowledge receipt of this notice of my pay rate and designated pay day:

*Jesus Zamora*

A4ACECC78EE147F...

_____

Jesus Zamora

2/5/2020

_____

Date

DocuSign Envelope ID: 34E91768-B55B-4E8E-802B-8A07E4A6198D

**EXHIBIT A**

## CONFIDENTIALITY, NON-INTERFERENCE AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed by Mike Bloomberg 2020 Inc. (the "Organization") and in consideration of my employment with the Organization and my receipt of the compensation now and hereafter paid to me by the Organization, I agree to the following terms of this Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Agreement"):

1.  **Confidential Information**.

(a)  Organization Group Information.  I acknowledge that, during the course of my employment (the "Employment Period"), I will have access to information about the Organization and any member(s) and affiliates, including Michael R. Bloomberg (each, an "Organization Group Member" and, collectively, the "Organization Group") and that my employment with the Organization shall bring me into close contact with confidential and proprietary information of one or more Organization Group Members.  In recognition of the foregoing, I agree, at all times during the Employment Period and thereafter, to hold in confidence, and not to use, except for the benefit of Organization Group Members, or to disclose to any person, firm, corporation, or other entity without written authorization of the Organization, any Confidential Information that I obtain or create.  I further agree not to make copies of such Confidential Information except as authorized by the Organization.  I understand that "Confidential Information" means non-public information, ideas, plans and/or strategies that one or more Organization Group Members has or will develop, acquire, create, compile, discover, or own, and that the Organization wishes to maintain as confidential.  I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated political activities, strategies, plans, positions, work product, analytics, research, or development of an Organization Group Member, or to an Organization Group Member's technical data, trade secrets, or know-how, including, but not limited to, research, campaign plans, or other information regarding an Organization Group Member's activities, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other information disclosed by an Organization Group Member either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Organization Group property. Confidential Information also includes, but is not limited to, the strategies and non-public activities of the Organization Group. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items that have become publicly and widely known through no unauthorized disclosure by me or others who were under confidentiality obligations as to the item or items involved, or (ii) any information that I am required to disclose to, or by, any governmental or judicial authority; *provided*, *however*, that in such event (unless legally prohibited from doing so) I will give the Organization prompt written notice thereof so that the Organization Group may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Agreement.

(b)  Ownership. All Confidential Information, in whatever form provided, shall remain the property of the Organization or the Organization Group, as applicable.

(c)  Use of Organization Materials. I shall not, without the Organization's prior written consent, use equipment, materials, data and/or network access provided by the Organization (the "Organization Materials"), including, but not limited to, electronic mail, voice mail, pagers, telephones, Internet access, postage, copy and fax machines, computer equipment, other hardware/software, mainframe access and networks, subscriptions to publications or other services and communications media, for personal use or for any reason other than in the course of performing services for the Organization. The Organization Materials are and shall remain the property of the Organization at all times. The Organization reserves the right to access, inspect, review, copy, remove, change or disclose

the contents of the Organization Materials. Accordingly, I should not expect privacy in communications through the Organization Materials.

(d)     Former Employer Information.  I represent that my performance of all of the terms of this Agreement as an employee of the Organization has not breached and will not breach any agreement to keep in confidence any information, knowledge, or data acquired by me in confidence or trust prior or subsequent to the commencement of my employment with the Organization, and I will not disclose to any Organization Group Member, or induce any Organization Group Member to use, any developments, or confidential or proprietary information or material I may have obtained in connection with employment with any prior employer in violation of a confidentiality agreement, nondisclosure agreement, or similar agreement with such prior employer.

2.     **Invention Assignment**.  I agree that all data, reference materials, memoranda, documentation, and any and all work product conceived, created, reduced to any medium or expression in any way incorporating or reflecting any Confidential Information, and any original works of authorship, derivative works, inventions, developments, concepts, trade secrets or ideas, which are or have been conceived or developed in whole or in part by me alone or in conjunction with others, whether or not conceived or developed during regular working hours, and which are made through the use of any Confidential Information or any of the Organization Group's equipment, facilities, supplies or trade secrets, or which relate to the Organization Group's business, or which result from any work performed by me for the Organization Group (collectively, "Proprietary Rights"), belong exclusively to the Organization Group, and I agree to assign all rights, title and interest in and to all such Proprietary Rights to the Organization at any time before or after the termination of my employment, and to take such other actions, and to execute such other documents, to give effect to the foregoing as may be requested at any time or from time to time by the Organization.

3.     **Returning Organization Group Documents**.  I agree that, at the time of termination of my employment with the Organization for any reason, I will return to the Organization and/or fully delete (and, in the case of deletion, demonstrate such deletion to the Organization's satisfaction) (and will not keep in my possession, recreate, or deliver to anyone else) any and all Confidential Information and all other documents, materials, information, and property developed by me pursuant to my employment or otherwise belonging to the Organization Group.  I agree further that any property situated on the Organization's premises and owned by the Organization (or any other Organization Group Member), including disks and other storage media, filing cabinets, and other work areas, is subject to inspection by personnel of any Organization Group Member at any time with or without notice.

4.     **Disclosure of Agreement**.  As long as it remains in effect, I will disclose the existence of this Agreement to any prospective employer, venture or client prior to entering into an employment, consulting, or other business relationship with such person or entity.

5.     **Restrictions on Interfering**.

(a)     During the Employment Period and the Post-Termination Non-Interference Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities.

(b)     For purposes of this Agreement:

(i)     "Interfering Activities" shall mean (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any Organization Group Member to terminate

such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Organization Group; (B) hiring any Person who was employed by the Organization Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting or inducing, or in any manner attempting to encourage, solicit or induce any client, account, licensee or other business relation of any Organization Group Member to cease doing business with or reduce the amount of business conducted with the Organization Group, or in any way interfere with the relationship between any such client, account, licensee or business relation and the Organization Group.

(ii)    "Person" shall mean any individual, corporation, partnership, limited liability Organization, joint venture, association, joint-stock Organization, trust (charitable or non-charitable), unincorporated organization or other form of business entity.

(iii)    "Post-Termination Non-Interference Period" shall mean the period commencing on the date of the termination of the Employment Period for any reason and ending on the thirty-six (36) month anniversary of such date of termination.

(c)    Non-Disparagement.  I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any Organization Group Member or their respective current or former owners, directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any Organization Group Member or any conduct or events which precipitated any termination of my employment from any Organization Group Member.  However, my obligations under this subparagraph (c) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

6.    **Reasonableness of Restrictions**.  I recognize and acknowledge that the restrictions and limitations set forth in this Agreement are reasonable and valid in geographical and temporal scope and in all other respects, and are essential to protect the value of the business and assets of the Organization Group.  I further acknowledge that the restrictions and limitations set forth in this Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Organization and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Organization.

7.    **Independence; Severability; Blue Pencil**.  Each of the rights enumerated in this Agreement shall be independent of the others and shall be in addition to and not in lieu of any other rights and remedies available to the Organization Group at law or in equity.  If any of the provisions of this Agreement or any part of any of them is hereafter construed or adjudicated to be invalid or unenforceable, the same shall not affect the remainder of this Agreement, which shall be given full effect without regard to the invalid portions.  If any of the covenants contained herein are held to be invalid or unenforceable because of the duration of such provisions or the area or scope covered thereby, I agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision to the maximum and/or broadest duration, scope and/or area permissible by law and in its reduced form said provision shall then be enforceable.

8.    **Injunctive Relief**.  I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing and irreparable injury to the members of the Organization Group.  Therefore, I hereby agree that, in addition to any other remedy that may be available to the Organization, any Organization Group Member shall be entitled to seek injunctive relief, specific performance or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

Notwithstanding any other provision to the contrary, I acknowledge and agree that the Post-Termination Non-Interference Period, as applicable, shall be tolled during any period of violation of any of the covenants in Section 5 hereof and during any other period required for litigation during which the Organization or any other Organization Group Member seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants.

### 9.    Cooperation.

(a)    I agree that, following any termination of my employment, I will continue to provide reasonable cooperation to the Organization and/or any other Organization Group Member and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during my employment in which I was involved or of which I have knowledge.  As a condition of such cooperation, the Organization shall reimburse me for reasonable out-of-pocket expenses incurred at the request of the Organization with respect to my compliance with this paragraph.

(b)    I also agree that, in the event I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relates to my employment by the Organization and/or any other Organization Group Member, I will give prompt notice of such request to Diane Gubelli, Geller & Co. (or his/her successor or designee) and will make no disclosure until the Organization and/or the other Organization Group Member have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

### 10.    General Provisions.

(a)    Governing Law and Jurisdiction.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the principles of conflict of laws. The parties hereto agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this Agreement and to waive any objection to the propriety or convenience of venue in such courts.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Organization and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.  No waiver by the Organization of my breach of this Agreement shall operate as a waiver of any subsequent breach.

(c)    No Right of Continued Employment.  I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

(d)    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Organization, its successors, and its assigns. I expressly acknowledge and agree that this Agreement may be assigned by the Organization without my consent to any other Organization Group Member as well as any purchaser of all or substantially all of the assets or stock of the Organization, whether by purchase, merger or other similar

corporate transaction; provided that any license or rights to intellectual property, or rights to receive the assignment thereof, granted pursuant to Section 2 may be assigned by the Organization without my consent to any third party.

(e)    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Organization and/or the assignment of this Agreement by the Organization to any successor in interest or other assignee.

(f)    <u>Counterparts</u>. This Agreement, and any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile. Any such facsimile shall constitute the final agreement of the parties and conclusive proof of such agreement.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and which together shall be deemed to constitute one instrument.

<center>*    *    *</center>

DocuSign Envelope ID: 34E91768-B55D-4E95-802B-8AD7E4A8198D

**EXHIBIT A**

       I, Jesus Zamora, have executed this Confidentiality, Non-Interference and Invention Assignment Agreement on the date set forth below:

2/5/2020

Jesus Zamora

Acknowledged, accepted and agreed:

By: _____
    Name: Katherine Sayers
    Title: Authorized Signatory
    Date: February 5, 2020

DocuSign Envelope ID: 34E91768-B55D-4E85-802B-8A27E4A8198D

<div align="right">**EXHIBIT B**</div>

## CODE OF CONDUCT

All employees, interns, and campaign workers (collectively, "Covered Individuals") who perform services for Mike Bloomberg 2020, Inc. (the "Organization") are expected to conduct themselves at all times in an honest, ethical manner and to comply with all laws and regulations. To that end, all Covered Individuals are bound by the following rules and standards:

### I. Ethical and Appropriate Behavior

The Organization expects that all Covered Individuals will act in accordance with the professional ethics applicable to their field and the professional and business goals of the Organization. Covered Individuals are required to act responsibly and reasonably if they become aware of behavior that may violate any ethical standard, and report it to the appropriate agent of the Organization.

The Organization also prohibits the following conduct: (i) insubordination; (ii) willful misconduct; (iii) negligence; (iv) possession of weapons or illegal drugs; (v) bribery; (vi) theft, fraud, or embezzlement; (vii) bullying or violence; (viii) falsification of records or documentation; and (ix) encouragement, directing, facilitation, or permitting a violation of laws or Organization policies and procedures.

### II. Confidential Information

In addition to any obligations Covered Individuals may have under a confidentiality agreement with the Organization, Covered Individuals must not use, disclose, or comment on any highly sensitive confidential and proprietary information concerning the Organization and its personnel. This prohibition extends to any medium, including the use of social media platforms.

### III. Statements to the Press or Other Media Members

Covered individuals shall not make unauthorized statements to the press or other members of the media regarding the Organization, the Organization's officers, or the Organization's constituents. This prohibition against unauthorized statements to the press or other members of the media shall prohibit all Covered Individuals from, directly or indirectly, participating in the creation or preparation of any books, memoirs, articles, blogs, vlogs, movies, television programs, or stories of any kind concerning the Organization, the Organization's Officers, or the Organization's constituents, unless such activities are in furtherance of the Covered Individual's authorized performance of services on behalf of the Organization.

### IV. Conflicts of Interest

Covered Individuals must avoid all actual, potential, or perceived Conflicts of Interest while employed or engaged by the Organization. A "Conflict of Interest" is a transaction or relationship which presents or may present a conflict between the Covered Individual's obligations to the Organization and any personal, business, or other interests of a Covered Individual. Conflicts of Interest include, without limitation, relationships or activities which may be directly or indirectly

adverse to the interests of the Organization. For the avoidance of doubt, and without limiting the foregoing examples, any financial interest or business relationship that a Covered Individual may have with or in a vendor or other business partner of the Organization shall be considered a Conflict of Interest for purposes of this Code of Conduct. A Covered Individual's obligation to avoid all Conflicts of Interest includes the obligation to ensure that he or she does not accept financial consideration from another Covered Individual in exchange for or directing business to such Covered Individual. In the event an actual or potential Conflict of Interest arises during a Covered Individual's employment, engagement, or other business association with the Organization, the Covered Individual must promptly disclose to the Organization the circumstances of such actual or potential Conflict of Interest.

## V. Social Media

While the Organization recognizes the importance of social media in the achievement of its professional and business goals, Covered Individuals must be mindful of their participation on social media and the impact it may have on the Organization or any of its agents or representatives. As a result, Covered Individuals must not participate on behalf of the Organization in social media discussions, comments, or postings without the express written authorization of the Organization. Instead, Covered Individuals must make clear to the public when communicating via social media that their communications reflect their own personal opinions and not the opinions of the Organization, unless the Covered Individual is expressly authorized to communicate on behalf of the Organization. Covered Individuals are also reminded of their obligations to maintain confidential information and abide by laws and internal policies on discrimination, harassment, and retaliation when communicating via social media.

## VI. Policies and Procedures

Covered Individuals must abide by the policies and procedures set forth in the Employee Handbook and any documents or agreements incorporated therein, including the Anti- Coordination policy.

The above rules and standards may not address every issue a Covered Individual may face during his or her employment or engagement with the Organization, but is meant to demonstrate the general guidelines by which Covered Individuals must abide. Failure to abide by the foregoing rules and standards may result in disciplinary action, up to and including termination of employment, at the sole discretion of the Organization.

If you have any questions about the applicability or interpretation of the rules or expectations set forth in this Code of Conduct, or the propriety of any of your contemplated actions, please contact humanresources@mikebloomberg.com.

Covered Individuals must sign, date, and return the attached Certification stating that they received this Code of Conduct and that they agree to comply with it to humanresources@mikebloomberg.com. **Please note that Covered Individuals are bound by the Code of Conduct regardless of whether they execute and return the attached certification**.

EXHIBIT B

## CERTIFICATION OF RECEIPT AND ACKNOWLEDGMENT OF TERMS OF
## MIKE BLOOMBERG 2020, INC. CODE OF CONDUCT

I hereby acknowledge that I have received, read, and understood the Code of Conduct and agree to abide by the policies and terms contained therein. I understand that the Code of Conduct may be amended from time to time at the sole discretion of Mike Bloomberg 2020, Inc. (the "Organization"), and that my obligations with respect to abiding by any altered or amended terms shall not change. I understand that observance of the Code of Conduct is a material condition of employment or engagement with the Organization and that any violation of any provision of the Code of Conduct by me or my agents may be grounds for immediate termination of my employment/engagement/association with the Organization. I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter that at-will nature of any employment relationship with the Organization.

By signing below, I agree to abide by the Code of Conduct and affirm that I have not previously violated any provisions contained therein.

Signature

*DocuSigned by:*

*Jesus Zamora*

A4ACECC78EE147F...

Name: Jesus Zamora

2/5/2020

**EXHIBIT C**

## Prevention of Coordination Policy

Effective February 5, 2020

By signing below, I indicate that I agree to the following:

1. At no time while I am an officer, director, employee, independent contractor, or volunteer of Mike Bloomberg 2020, Inc. ("Committee") will I discuss with any individual organization, corporation, nonprofit, or other person, who is considering undertaking independent efforts to support Michael R. Bloomberg or oppose any of his opponents ("Independent Entity") nonpublic information regarding any of the following:

> a. The plans, projects, activities or needs of the Committee or Michael R. Bloomberg;

> b. Content or messaging regarding any of the Committee's public communications or its general media strategy;

> c. The means or mode of the Committee's public communications;

> d. The timing or frequency of the Committee's public communications;

> e. The intended geographic or demographic audience of the Committee's public communications;

> f. The size (in dollars, time, or media points) of any media buys;

> g. The specific media outlets that the Committee plans to use (or is considering using) for communications; or

> h. The size or prominence of a printed communication, or duration of a communication by means of broadcast, cable, or satellite, for any of the Committee's communications.

> "Discuss" includes (1) providing information about any of the topics identified above to the Independent Entity, (2) listening to suggestions or requests from the Independent Entity about any of the topics identified above, (3) making suggestions about any of the topics identified above to the Independent Entity, or (4) having the Committee assent to proposals about the topics identified above from the Independent Entity.

2. I have not and will not accept from the Independent Entity any polling data, polling questions, media ratings information, or results of focus groups paid for by the Independent Entity.

3. If I am an employee, vendor, or independent contractor to the Committee, I agree that I will not use or

DocuSign Envelope ID: 34E91768-B55D-4E8E-802B-8AD7E4AB198B

EXHIBIT C

share any information about the Committee (other than information that is publicly available) for 120 days after I cease being an employee, vendor, or independent contractor to the Committee, for purposes of doing any of the following for any Independent Entity:

> a. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that expressly advocate the election of Michael R. Bloomberg or the defeat of any of the other candidates in a primary, general, runoff, special, or any other election in which Michael R. Bloomberg is on the ballot; or

> b. Creating, producing, or distributing a communication disseminated by radio, television, outdoor advertisement, mailing 500 substantially similar mail pieces, or making 500 substantially similar telephone calls that refers to Michael R. Bloomberg or any of the other candidates that will be disseminated within 120 days of a primary, general, runoff, special, or any other election in which the Supported Candidate will be on the ballot.

4. If I raise funds for an Independent Entity, I will abide by the following:

> a. I will not tell any potential donor that Michael R. Bloomberg would appreciate a contribution made to the Independent Entity;

> b. I will not inform Michael R. Bloomberg or any agents of the Committee that I have solicited an individual or inform Michael R. Bloomberg of any contributions I raised for the Independent Entity;

> c. I will not accept information from the Independent Entity to use in fundraising that would otherwise violate this Policy.

5. If I am (or my company is) a contractor to the Committee, I will require all employees of my company who work on matters for the Committee to sign this Coordination Policy and abide by it. I will be responsible for maintaining signed copies for my employees (or I may return them to the Committee's counsel).

Signature  ┌─ DocuSigned by:
           │ *Jesus Zamora*
           └─ A4ACECC78EE147F...

Name: Jesus Zamora

2/5/2020

# EXHIBIT 51

# MIKE BLOOMBERG 2020, INC.

# EMPLOYEE HANDBOOK
## POLICIES & PROCEDURES

# Table of Contents

**General Human Resources Policies** ................................................................**5**
    Employment Is At Will ...........................................................................5
    Equal Employment Opportunity .............................................................5
    Workplace Accommodation ...................................................................5
    Immigration Issues and Work Authorization ...........................................6
    Unlawful Discrimination and Harassment ...............................................6
    Reporting and Investigation ...................................................................7
    Non-Retaliation ....................................................................................8
    Legal Protections and External Remedies for Harassment and Discrimination ..........9
    Communication and Employee Problem Solving .......................................9
    Violence in the Workplace .....................................................................9
    Reporting Relationships ........................................................................9
    Travel and Business Expenses, including Meals and Entertainment .......................10
    Leaving the Organization .....................................................................10

**Employee Responsibilities** .........................................................................**10**
    General Standards of Conduct and Ethical Behavior .............................10
    Conflicts of Interest ............................................................................12
    Improper Disclosure of Confidential Information ..................................13
    Whistle Blowing and Self Reporting .....................................................14
    Gifts ..................................................................................................14
    Pre-Approval of Outside Business Activities ..........................................14
    Social Media Activities ........................................................................15
    Personal Data .....................................................................................16
    Announcements, References, Responses to Press Inquiries and Other Requests for
    Information .........................................................................................17
    Substance Abuse and Testing ...............................................................18
    No Smoking ........................................................................................19
    Political Contributions .........................................................................19
    Use of Mobile Communications, Texting and Hand-Held Devices While Driving ..19
    Intellectual Property ...........................................................................19
    Improper Foreign Payments .................................................................20

**Absences, Time Off, and Holidays** ..............................................................**21**
    Absences and Tardiness ......................................................................21
    Paid Time Off ........................................................... **Error! Bookmark not defined.**
    Safe & Sick Leave ...............................................................................21
    Holidays .............................................................................................22
    Family/Medical Leave .........................................................................22
    Military Leave ....................................................................................25
    Jury Duty/Civic Duty Leave .................................................................25

**Security, Facilities and Equipment** ............................................................**25**
    Organization Equipment ......................................................................25

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Use of Software and Electronic Communications..................................................26

Telephone Monitoring.............................................................................................28

Personal Property....................................................................................................29

Property Inspection...............................................**Error! Bookmark not defined.**

Security....................................................................................................................29

Health and Safety....................................................................................................29

**Employee Acknowledgement Form**.....................................................................30

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

# Mike Bloomberg 2020, Inc.

Welcome to Mike Bloomberg 2020, Inc. (the "Organization").

In order for the Organization to succeed, we each need to embrace its values and conduct ourselves with integrity, honesty and dignity.  We believe that each and every employee contributes directly to the success of the Organization, its accomplishments, our growth and our success.  We hope you take pride in being part of our team.

One of the unique values at the Organization is the importance of "collaboration."  We work as a team with others so that we can leverage our people, our resources and our ideas.  Collaboration is a positive partnership.  It requires open and constant communication.  If you have any questions about your work with the Organization, please let us know.

This Employee Handbook Policies & Procedures (the "Employee Handbook"), was developed to describe some of the expectations of our employees and to outline the policies, programs and benefits available to eligible employees.  Employees should familiarize themselves with the contents of the Employee Handbook, for it will answer many questions about employment here.

This Employee Handbook incorporates by reference specific agreements and policies named herein, but otherwise supersedes any and all previous handbooks, policies, practices, manuals, or statements and applies to all employees.  This Employee Handbook is intended to comply with all applicable federal, state and local laws.  To the extent there is a conflict with any such law, the Organization will follow the law of the applicable jurisdiction.  It is important that you read this Employee Handbook carefully and understand the policies and procedures it contains.  It is also important that you review the Multi-State Addendum attached to this Employee Handbook as Addendum B.  The Multi-State Addendum sets forth state-specific rules and policies applicable to your employment in a particular state.  In the event a conflict exists between this Employee Handbook and the Multi-State Addendum, the Multi-State Addendum shall control.  The Organization reserves the right to revise, supplement, or rescind any policies or portion of the Employee Handbook or the Multi-State Addendum at any time as it deems appropriate, in its sole and absolute discretion.

We hope that your experience here will be challenging, enjoyable and rewarding.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

# General Human Resources Policies

## Employment Is At Will

Your employment with the Organization is "at will," which means that it is for no definite period of time, and may be terminated at any time by either you or the Organization, with or without cause, notice or procedural requirements.  Neither this Employee Handbook, nor any other Organization policy, procedure or communication, shall impose any express or implied contractual obligations on the Organization or create or grant any right to or guarantee of employment for any period.  No representative of the Organization may enter into any oral agreement to alter your at-will status or otherwise create a contractual obligation to you. In addition, no contractual relationship, or alteration of an employee's at-will status, shall arise except to the extent explicitly set forth in a writing signed by the Organization's Treasurer or, in the absence of one, its senior-most officer (and provided further that the other requisites to a binding contractual obligation shall have been satisfied).

## Equal Employment Opportunity

The Organization is committed to a policy of attracting, retaining, developing and promoting the most qualified individuals without regard to race, color, age, religion, creed, sex (including pregnancy, childbirth, or related medical conditions), sexual orientation, national origin or ancestry, marital or familial status, genetic information, gender, transgender or gender identity status, disability, veteran status, military status, or any other condition or characteristic protected by federal, state or local law. As such, the Organization is committed to treating all applicants and employees in a non-discriminatory manner with respect to all terms and conditions of employment.

This policy governs all aspects of employment, including recruitment, selection, job assignment, promotion, lay-off, recall from lay-off, training, education, social and recreation programs, transfer, compensation, discipline, termination and access to benefits.

As discussed more fully below, employees are prohibited from engaging in any type of unlawful discrimination.  Anyone who believes that they have been the subject of discrimination should contact their supervisor, or Human Resources.

## Workplace Accommodation

The Organization is firmly committed to complying with all applicable laws designed to ensure equal employment opportunities to persons with disabilities.  The Organization prohibits discrimination on the basis of disability in regard to all employment practices or terms, conditions, and privileges of employment.  Consistent with this policy and applicable law, upon an employee's request, the Organization will make a reasonable accommodation to the known physical or mental limitations of qualified applicants or employees who are able to perform the functions of the job, unless the accommodation would cause an undue hardship on the Organization's business.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

In addition, upon request and consistent with its obligations under applicable law, the Organization will provide a reasonable accommodation for an employee whose ability to perform the essential functions of the employee's job are affected by pregnancy, childbirth, related medical conditions, or breastfeeding.

If an employee feels that they need an accommodation, please provide the request in writing to your supervisor, who may then seek additional appropriate information.

**Immigration Issues and Work Authorization**

The Organization is committed to employing only individuals who are legally authorized to work in the United States, but it does not unlawfully discriminate on the basis of citizenship or national origin. Foreign nationals who require visa sponsorship to work in the United States for the Organization must notify the Organization of that requirement at the time of application. The Organization, in its sole discretion, will determine whether it would be appropriate and desirable for the Organization to sponsor the foreign national for a visa, but does not guarantee such sponsorship. If the Organization is unable or unwilling to provide sponsorship for any reason, including the unavailability of visas or the foreign national's inability to meet the applicable requirements, the Organization must decline employment to the foreign national unless they obtain lawful sponsorship by another person or entity or otherwise establishes their lawful authorization to work in the United States.   In the case of a foreign national already employed by the Organization pursuant to independent work authorization, upon the natural expiration of such authorization, the employee shall be removed from the payroll as required by law.

Employees with questions or seeking more information on immigration law issues are encouraged to contact Human Resources. Employees may raise questions or complaints about immigration law compliance without fear of reprisal.

**Unlawful Discrimination and Harassment**

The Organization is committed to providing employees with a professional working environment that is free from all forms of harassment and discrimination as defined under applicable law ("Harassment" and "Discrimination"). Harassment of, or Discrimination against, an individual or group on the basis race, color, age, religion, (including religious dress and grooming practices), creed, sex (including pregnancy, childbirth, or related medical conditions), sexual orientation, national origin or ancestry, (including language use restrictions, subject to applicable job requirements), marital or familial status, genetic information, requesting or taking family and medical care leave, gender, transgender or gender identity status, gender expression, disability, veteran status, military status, or any other condition or characteristic protected by federal, state or local law, is absolutely prohibited.

The law prohibits co-workers and third parties, as well as supervisors and managers with whom the employee comes into contact, from engaging in unlawful harassment and discrimination.   The Organization will not tolerate, discrimination against, or harassment of, any of its employees or independent contractors by any manager, supervisor or other employee.   The Organization will also protect its employees and independent contractors from discrimination and harassment in the workplace by non-employees.

Harassment includes conduct based on a protected classification to which submission is made a term or

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

condition of employment or which forms the basis for any employment decision; which has the purpose or effect of unreasonably interfering with an individual's work performance; or which otherwise creates an intimidating, hostile or offensive working environment.   Sexual Harassment is a form of sex discrimination and is unlawful under applicable federal, state and local law.   Sexual harassment includes harassment on the basis of sex, sexual orientation, self-identified or perceived sex, gender expression, gender identity and the status of being transgender.   Harassers can be a superior, a subordinate, a coworker or anyone in the workplace including a contingent worker, vendor, client, customer, or visitor.

Harassment, including sexual Harassment, may take different forms, and may involve, but is not limited to, visual displays, suggestive or offensive remarks or jokes, slurs or epithets of any kind, gestures, leering, unwanted sexual advances or demands, propositions, unwanted physical contact such as pinching, patting, kissing, hugging, or grabbing, sexual stereotyping, and/or graphic or degrading verbal comments or questions. Sexual Harassment also occurs when a person in authority tries to trade job benefits for sexual favors. This can include hiring, promotion, continued employment or any other terms, conditions or privileges of employment. The foregoing list is only illustrative of types of conduct that would violate this policy and, as such, by no means represents an exclusive list of conduct or types of conduct that would violate this policy.   Whatever form it takes, the Organization will not permit any employee to harass others with whom he/she has business interactions including, but not limited to, other employees, contingent workers, customers and vendors, or permit any contingent workers, customers or vendors to harass its employees. This is true, not only in the workplace, but in any work-related setting including business trips and business-related social events. Calls, texts, e-mails and social media usage by employees can constitute unlawful Harassment even if they occur away from the workplace premises, on personal devices or during non-work hours. All employees must comply with this policy and take appropriate measures to ensure that such conduct does not occur.

Harassment and Discrimination are offensive, a form of employee misconduct, a violation of our policies and unlawful. Employees who engage in Harassment or Discrimination, including supervisors who engage in Harassment or Discrimination or who knowingly allow such behavior to continue, will be subject to disciplinary action, up to and including termination of employment. Every employee should be aware that all supervisors are absolutely prohibited from making any decision regarding job assignment or reassignment, performance evaluation, compensation, promotion or demotion, termination or commencement of employment, or any other decision involving any tangible employment action, based in whole or in any part on any person's exposure to, submission to, acquiescence in, or complaint about, sexual harassment or any other form of unlawful Harassment or Discrimination.

### Reporting and Investigation

It is the responsibility of every employee to further the implementation of the Organization's policies forbidding Discrimination and Harassment. The Organization cannot prevent or remedy Harassment unless it knows about it.

Employees who believe they have been subjected to any kind of Discrimination or Harassment, even a single incident, whether or not they have confronted their alleged discriminator or harasser, or whether they were discriminated against or harassed by an employee or non-employee, and employees who witness or are aware of Discrimination or Harassment, must immediately notify their supervisor or a member of Human Resources.  If the employee is uncomfortable reporting the misconduct to her or his supervisor (whether because the supervisor has committed the misconduct, or for any other reason

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

whatsoever), the employee should report the misconduct to the next higher level of management above the supervisor or, if the employee prefers, to Human Resources. Supervisors and managers are required to promptly report any complaint that they receive, or any Harassment or Discrimination that they witness or observe, to Human Resources. In addition to being subject to discipline if they engaged in harassing or discriminatory conduct, the Organization will enforce disciplinary actions, up to and including termination of employment, against supervisory and managerial personnel who knowingly allow behavior prohibited by this policy to continue or engage in any retaliatory behavior.

Reports of Harassment or Discrimination can be made verbally or in writing. Employees who wish to submit a complaint in writing are encouraged to use the Complaint Form that can be found attached to this Employee Handbook as Addendum A. Employees are prohibited from making knowingly false reports of Harassment or Discrimination. Additionally, employees may report any complaints of sexual harassment to all appropriate administrative agencies, including the Equal Employment Opportunity Commission, the state and local equivalents. Employees can also file complaints regarding sexual harassment in state or federal court, in accordance with the applicable judicial procedure.

The Organization will thoroughly, impartially and promptly investigate any complaint, and such investigation will, to the maximum extent feasible without compromising the investigation, remain confidential. However, investigation of such complaints may require disclosure to the accused individual and to other witnesses in order to gather pertinent facts. All persons involved, including complainants, witnesses and alleged offenders will be entitled to a fair and impartial investigation. While the investigation process may vary from case to case, investigations will generally include conducting a review of the allegations and taking appropriate interim actions to protect the complaining party; conducting interviews of relevant parties involved; obtaining and reviewing relevant documents; and preparing a written report of the investigation. If, based on the investigation, the Organization believes that it is more likely than not that conduct in violation of this policy has occurred, it will take appropriate remedial measures to resolve the situation, on a case by case basis. At the conclusion of the investigation, the Organization will promptly notify the individual who reported and the individual(s) about whom the complaint was made of the final determination and implement any applicable corrective action, up to and including termination. The Organization will retain an investigations file in a secure and confidential location. All employees are expected to cooperate with any internal investigation of sexual harassment as a term and condition of remaining employed.

**Non-Retaliation**

It is unlawful and expressly against Organization policy for any person to retaliate in any manner against any other person for making a good faith complaint of Discrimination or Harassment, or for cooperating in an investigation of any allegations of Discrimination or Harassment. Retaliation includes any adverse employment action against any individual who files a Harassment or Discrimination complaint or who participates in a Harassment or Discrimination investigation. Additionally, retaliation can also be any action that could reasonably discourage an individual from coming forward to make or support a Harassment or Discrimination claim. Accordingly, individuals who in good faith report incidents of Discrimination or Harassment, or who cooperate in an investigation regarding any such allegations will not be subject to any form of retaliation, even if the underlying complaint of retaliation is not substantiated. An employee who believes that they have been retaliated against, or who believes that they have become aware of any form of unlawful retaliation, is required to report it immediately to their supervisor or a member of Human Resources. If the employee is uncomfortable reporting the retaliation

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

to her or his supervisor (whether because the supervisor has committed the retaliation, or for any other reason whatsoever), the employee should report the misconduct to the next higher level of management above the supervisor or, if the employee prefers, to Human Resources. The reporting and investigation of allegations of retaliation will follow the procedures set forth above for the reporting and investigation of allegations of Discrimination and Harassment.

**Legal Protections and External Remedies for Harassment and Discrimination**

Harassment and Discrimination are prohibited not only under Organization policy, but also under state, federal, and, where applicable, local law. Aside from the Organization's internal complaint procedure, employees may also choose to pursue legal remedies with the Equal Employment Opportunity Commission or the State or Local administrative agency. Employees can contact the appropriate office via the internet or by checking the local government listings.

**Communication and Employee Problem Solving**

For the Organization to succeed, we all must effectively and openly communicate with one another. Since information is only as good as its source, we encourage you to consult your supervisor, this Employee Handbook, or Human Resources should you have any questions.

Since we recognize that no job or organization is perfect and that problems or misunderstandings may arise from time to time, we are committed to working with our employees to solve problems and learn from mistakes. Employees experiencing any problems or complaints regarding the application of Organization policies, payment of wages, Harassment or Discrimination (as discussed above), discipline or other concerns are encouraged to confer with their supervisor to resolve such issues. Thereafter, if the issue is not resolved, or if the problem involves their supervisor, employees are encouraged to contact Human Resources without fear of reprisal. The Organization wants to listen to and handle your problems promptly and fairly, but needs your cooperation to make the problem-solving procedure work.

**Violence in the Workplace**

The Organization is committed to maintaining a working environment that is free from all forms of violence. The Organization does not tolerate violence or the threat of violence against any employee, client, visitor or other individual in, or arising out of, the workplace, or through the Organization's communication systems. This prohibition also includes statements made in jest or any activity which can be perceived as having intended to result in physical harm to any individual or physical damage to the Organization's property. Employees aware of any threat (express or implied) or act of violence must immediately report such conduct to the Treasurer, Security and/or Human Resources. Violations of this policy may result in disciplinary action up to and including termination of employment.

**Reporting Relationships**

While it is not the Organization's intent to unreasonably delve into the personal lives of its employees, problems can arise when employees are involved in personal relationships with each other. Such problems include but are not limited to conflicts of interest, the appearance of favoritism and/or

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

coercion, exposure to rivalry and discord, work scheduling conflicts, access to otherwise unavailable information, the undermining of the integrity of the Organization's operations, and difficulties in discipline and performance assessment. For that reason, the Company does not allow employees who are involved in a personal romantic relationship to be in the same chain of command. If such a relationship arises, the employees should notify Human Resources of that fact so that appropriate steps can be taken to ensure that the relationship is in no way coercive, and will take appropriate steps to resolve the situation as it deems necessary including, but not limited to, re-assignment, transfer, decision not to hire a candidate and/or termination of employment.

**Travel and Business Expenses, including Meals and Entertainment**

The Organization recognizes that many employees incur travel and business expenses in the course of performing their jobs. In accordance with the Organization's Travel & Expense Policy, employees may be reimbursed for actual, reasonable and necessary expenditures incurred while traveling and conducting business for the Organization. All requests for reimbursement must be accompanied by a scanned copy of expenses and/or receipt. For questions on the requirements of the Travel & Expense Policy, or the reimbursement amount for a particular expense, an employee should contact Human Resources or their manager prior to incurring such expense.

**Leaving the Organization**

Employees who resign from the Organization should consult their offer letter, where applicable, for the appropriate notice period. While all employees are at-will, the Organization asks that they provide at least two weeks' written notice. Employees who leave the Organization for any reason are required to (i) return all Organization property including, but not limited to, such items as identification cards, Employee Handbook, telephones, hand-held devices, beepers, contact lists, software, books, confidential information and computer equipment; (ii) remedy all outstanding loans, expense reports and credit card bills; and (iii) complete the applicable benefit forms.

# Employee Responsibilities

**General Standards of Conduct and Ethical Behavior**

Employees have an obligation to conduct themselves and the Organization's operations with the highest ethical standards, with integrity and within guidelines that prohibit actual or potential conflicts of interest or the perception of impropriety. This high degree of ethics imposed upon the Organization applies to everything employees do and if not adhered to can have serious implications and repercussions on the Organization's reputation and activities. Therefore, it is imperative that all employees are in compliance with the Organization's standards, policies and procedures relating to conduct (including the Code of Conduct), ethics, integrity, objectivity, confidentiality, use of inside information and conflicts of interest contained within this Employee Handbook and as set forth in the Confidentiality, Non-Interference and Invention Assignment Agreement (the "Confidentiality Agreement") executed at the start of employment.

Any employee who has a question about whether a situation they are in, or may enter into, may violate the Organization's standards of conduct should speak to their supervisor or Human Resources. The

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Organization prohibits retaliation against an employee who in good faith raises a concern or reports suspected or actual misconduct.

Depending on an employee's position, standards, guidelines and policies other than those set forth below may also apply and will be either discussed with or distributed to employees by their supervisor or other appropriate staff member.

Depending upon the circumstances, failure to comply with the following general standards may, in the Organization's sole discretion, result in disciplinary action up to and including termination of employment. Because it is not possible to list every type of inappropriate conduct, the following list is not exhaustive nor a limitation on the Organization's right to discipline or terminate the employment of its employees. Therefore, employees should talk to their supervisor or Human Resources if unsure of what to do in a given situation.

The following actions and conduct are illustrative of the types that are not tolerated by the Organization, and that can lead to a range of disciplinary actions including termination:

1.      Dishonesty, embezzlement, theft (including but not limited to theft of information or time), unauthorized removal or possession of property, or conviction of a crime that calls into question that employee's ability to perform his or her job duties.

2.      Fraud or deliberate entry of false or misleading information in the Organization's books or records.

3.      Misrepresentation, either verbal or written, or falsification of Organization documents including, but not limited to, employment related documents.

4.      Immoral or indecent conduct.

5.      Insubordination (including, but not limited to, refusal to perform work assigned, as well as unprofessional conduct toward superiors, co-workers, suppliers or customers).

6.      Unauthorized use, possession, distribution, purchase or sale of, or impairment caused by, controlled dangerous substances or alcohol on Organization time or in Organization facilities.

7.      Unlawful Harassment or Discrimination against others including, but not limited to, co-workers, subordinates, suppliers or customers.

8.      Accepting employment with, or providing services to, any person or entity other than the Organization, even outside of Organization time, without the Organization's prior written approval. (For further information on this policy, see "Pre-Approval of Outside Business Activities" below.)

9.      Sabotage, loss, or damage to property or merchandise of the Organization, customers, co-workers, vendors or contractors.

10.     Excessive or otherwise improper personal use of Organization equipment, facilities or services, including, but not limited to, electronic or voice mail, the Organization terminal, computers

Employee Handbook – December 2019

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

(including installing unauthorized software and/or hardware), telephones, copy machines, facsimile machines, postage or mail services.

11.     Accessing, or attempting to access, any Organization information or information contained in Organization files or databases without having a legitimate business reason for doing so.

12.     Failure to project a positive and professional image including, but not limited to, failing to wear attire appropriate for one's position and/or engaging in unprofessional conduct with or in front of constituents.

13.     Unprofessional statements about the Organization or people or entities with which the Organization conducts business, or any other statement that harms the reputation of the Organization or its officers.

14.     Incompetence, inefficient and/or careless performance of duties, failure to maintain proper work standards or other poor performance, as determined in the sole discretion of the Organization.

15.     Excessive or patterned absence or tardiness, or failure to promptly contact managers regarding absences and tardiness.

16.     Possession, use, or distribution of dangerous weapons, such as knives, guns, explosives or any other devices that jeopardize the safety or security of individuals and/or property on Organization premises.

17.     Disrespectful, unprofessional or intimidating conduct of any kind including, but not limited to, threats, whether express, implied or in jest.

18.     Failure to comply with applicable country, state or local tax requirements.

19.     Unauthorized comments to a media member regarding the Organization or its officers, irrespective of whether such comments are "off the record."

20.     Violation of any other Organization policy, procedure or rule, including the Code of Conduct or a procedure or rule listed herein.

**Conflicts of Interest**

Employees must avoid situations where their personal interests could conflict with the interests of the Organization or could be perceived by others as doing so. Conflicts of interest arise when an individual's position or responsibilities with the Organization present an opportunity for personal gain separate and apart from the direct rewards of employment, or when an employee's personal interests are inconsistent with those of the Organization and could lead to their responsibilities with the Organization being compromised.

A conflict of interest, or the appearance of a conflict, may arise in a variety of circumstances and it is not possible to describe every situation. By example, however, a conflict occurs when an employee, relative of an employee, or individual with whom an employee has a personal relationship:

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

1.      Directly or indirectly has a personal or financial interest in any transaction which is, or may be, adverse to the Organization.

2.      Engages in, or recommends, a business transaction for the Organization that results in personal profit or gain.

More information about conflicts of interest and employees' obligations to avoid conflicts of interest is set forth within the Code of Conduct.

Beyond the clear cases of conflicts of interest described above, there are situations that are inconsistent with the high standards of business ethics required by the Organization, which cannot be compromised. If there is room for suspicion that an interest in, or connection with, another venture might affect, or reasonably appear to affect, an employee's exercise of judgment on behalf of the Organization, the interest or connection should not be entered into and, once identified, should be brought to the employee's manager's attention immediately.

Those who fail to adhere to their obligations and this policy will be subject to disciplinary action up to, and including, termination of employment and/or legal action.

**Improper Disclosure of Confidential Information**

As a condition of employment, upon hire employees are required to sign the Confidentiality Agreement. This requirement reflects the fact that Organization employees have access to, and become familiar with, a broad range of highly sensitive confidential and proprietary information concerning the Organization and its personnel. The protection of this information is critically important to the Organization's operations, mission and reputation.

Consistent with the Organization's strict insistence on the protection of its Confidential Information (as defined in the Confidentiality Agreement), Organization employees may not use or disclose information obtained on the job for any non-job-related purpose, including the terms of this Employee Handbook. This prohibition includes, but is not limited to, employees' use or disclosure of such information for their own or someone else's personal or financial gain.  Employees shall only use Confidential Information for the purpose of performing the services for which they are hired.

Certain employees may also be subject to separate confidentiality restrictions pursuant to additional agreements.

In the event any employee receives a request by subpoena, document request, or otherwise for the production or disclosure of any Confidential Information, employees shall not produce such Confidential Information without first notifying the Organization and enabling the Organization to secure protective custody and controlled access.  Further, any compelled disclosure shall be limited strictly to the permissible request and pursuant to the assertion of all rights and privileges applicable thereto, as the Organization shall direct.  Those who fail to adhere to the restrictions set forth above or any other applicable confidentiality requirements will be subject to disciplinary action up to and including termination of employment. In addition, the Organization reserves the right to take legal action, including against current or former employees, to protect its interests in its Confidential Information.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Nothing in this section, or in our employees' confidentiality agreements with the Company, is intended to prohibit or restrict you from initiating communications directly with, or responding to any inquiry from, or participating in any investigation or proceeding by any federal or state regulatory authority or self-regulatory authority, without notice to the Company.

## Whistle Blowing and Self Reporting

### Whistle Blowing

If an Organization employee suspects or becomes aware of a violation or possible violation of any policy or procedure contained in the Employee Handbook or other improper behavior, the employee must immediately notify Legal, Human Resources, or the Treasurer. It is the Organization's policy that "whistle blowers" will be protected from retaliation provided that the whistle blower acted in good faith (i.e., they believed that their actions were reasonably founded and not merely a malicious action towards another employee) and as otherwise required by law.

### Self-Reporting

Supervised Persons who have violated any policy or procedure contained in the Employee Handbook are strongly encouraged to self-report the violation to Compliance. Self-reporting will be taken into account favorably as a factor in the Organization's consideration of any disciplinary action to be taken.

## Gifts

No employee or member of their family may, directly or indirectly, offer, request, receive, or accept bonuses, fees, gifts, entertainment or sports tickets, or any other item ***of any amount*** from any entity or person with whom the Organization has an existing, proposed, or potential business relationship. There are no exceptions to this policy. In the event a person or entity with whom the Organization has an existing, proposed, or potential relationship, attempts to offer an employee a bonus, payment, gift, or any other item of value, the employee must decline the offer. If an employee has any uncertainty about whether this policy prohibits receipt of an item or payment, the employee must contact Human Resources for guidance before accepting the item or payment.

## Pre-Approval of Outside Business Activities

Given the potential for actual or perceived conflicts of interest, all employees must obtain the approval from the Legal Department and their supervisor prior to engaging in any outside business activity. For purposes of this requirement, outside business activities include, without limitation, acting as an employee, independent contractor or agent of any other Organization; serving on the board of directors of an organization; speaking publicly for non-Organization purposes while representing yourself as an employee or agent of the Organization (e.g., wearing a name badge with the Organization's name, being introduced as an employee or agent of the Organization, etc.); or engaging in your own commercial endeavor. Any employee wishing to engage in any such activity must first submit a written request to Legal setting forth in detail the nature of the proposed activity, and why it would not interfere or conflict with the employee's obligations to the Organization. The Organization reserves the right, in its sole discretion, to deny any such request.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Employees must also disclose all outside business activities of close relatives that may raise an actual or potential conflict of interest for the Organization.

**Social Media Activities**

The Organization recognizes that, from time to time, certain of its employees may choose to participate in social media, such as internet blogs, micro-blogs (including Twitter) and social networking sites. The Organization recognizes that those media allow users to learn new information, share ideas, engage in public discussion on matters of importance to their communities and stay connected with family and friends. At the same time, careless use of social media could cause the Organization or colleagues serious harm. Consequently, employees who choose to engage in social media activities should keep in mind their obligations to the Organization, including those set forth in the Confidentiality Agreement they sign upon joining the Organization and in this Employee Handbook. Those policies are meant to protect the Organization's confidential information and to ensure that our employees adhere to the highest standards of ethics.

   With that in mind, employees should follow the following guidelines in connection with their personal social media activities:

   1.   If you maintain a personal blog, or participate in other social media, avoid making any statement that could be read to suggest that you are writing on behalf of, or expressing the views of, the Organization or any of its personnel, unless you are instructed by the Organization to do so.

   2.   Never reveal confidential or proprietary information about the Organization. This includes (but is not limited to) information about the Organization's strategies, donor information, and financial information.

   3.   Never reveal any other organization's confidential or proprietary information that you learned in connection with your employment at the Organization. This includes information about vendors, and other companies with which the Organization conducts business.

   4.   Personal social media activities should not interfere with your work commitments. You should restrict those activities to non-working hours, using your own equipment.

   5.   Ensure that your social media activities will not help another person or entity compete with the Organization.

   6.   Never make any unprofessional statements about the Organization or any of its employees (past or present). In addition, never make unprofessional statements about the Organization's vendors (or their employees).

   These guidelines are meant to strike an appropriate balance between an individual's right to engage in social media activities and the Organization's need to protect its business interests. There may be other instances in which an employee's social networking activities would violate an employee's obligations to the Organization. In addition, certain entities may have additional rules on social networking activities. The Organization expects that, in all instances, its employees will not only follow

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

the explicit policies and provisions that apply to them, but also show good judgment and professionalism in their social media activities. This requires refraining from activities that could undermine the Organization's objective harm its competitive position within its industry. Nothing in this policy is intended to interfere with employees' rights under Section 7 of the National Labor Relations Act. If you have any questions, you should consult your supervisor or Human Resources.

**Personal Data**

At various times during their employment, employees will be required to provide the Organization with (or the Organization may collect) certain personally-identifying data and information ("Personal Data and Information"). The Organization uses this Personal Data and Information for purposes of the employment relationship, for administration and management purposes, for safety or security purposes, for business purposes, and to ensure compliance with Organization policies and applicable laws and regulations. Personal Data and Information may include work authorization forms, address and contact information, dates of birth, emergency contact information, identification documents (e.g., driver's license, social security numbers, ID numbers), financial account information (e.g., compensation and banking information), information regarding education and employment history, medical/health information, data collected by Closed Circuit Television (CCTV) camera systems, location data (including as collected by a security badge system, Organization-issued devices and/or personal portable or mobile devices used for business purposes), and any other personal or sensitive personal data, including, but not limited to, EEO information, information in connection with background checks and concerning a prior criminal record (where applicable), and any other information required by law or requested by Human Resources or the Organization.

In addition, as a condition of employment, employees' personal telephone numbers will be made available so that other Organization employees and certain vendors of the Organization (e.g., advisors or consultants) may contact them outside the office, if necessary, for business-related reasons.

Similarly, employees' pictures will be made available for identification purposes. CCTV footage will also be recorded and reviewed by Organization's Risk Management team and/or security team for safety and security purposes.

The Organization will ensure that appropriate security measures are taken to prevent unlawful or unauthorized processing of Personal Data and Information and against the accidental loss of or damage to Personal Data and Information. Human Resources will hold, retain and destroy all Personal Data and Information in accordance with the policies of the Human Resources department and applicable law. Employees must provide the Organization with accurate Personal Data and must notify Human Resources of any changes to their Personal Data and Information so that the Organization can maintain accurate records, and may request access to their Personal Data and Information to ensure that it is correct and complete. Employees are also encouraged to forward all documents and materials containing Personal Data and Information, including without limitation all evaluations, compensation and performance-related materials (whether they relate to the employee forwarding the materials or to other employees) to Human Resources for storage in accordance with Organization policies. Managers and other supervisory employees outside of Human Resources should not maintain any such documents or materials for their own records.

The Organization may share employees' Personal Data and Information under the following

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

circumstances:

1. With, between or among its offices, affiliates, subsidiaries and any successor entity;

2. With third parties who provide services to the Organization such as benefit and payroll providers, administrators, legal and other advisors, tax consultants and security contractors;

3. In response to a subpoena, as part of a court order or tribunal process, government investigation, government request, or other legal or regulatory process; and

4. As is necessary to protect the rights, property, interests, safety, or reputation of the Organization, its clients or others.

Personal Data and Information may be shared with and/or transferred to offices or third parties located outside the country in which the employee is based, which may have different levels of privacy protection than the employee's country.

Employees are prohibited from using employees' Personal Data and Information for non-business reasons.

**Announcements, References, Responses to Press Inquiries and Other Requests for Information**

In accordance with their obligation to keep Organization confidences, employees are required to refer all requests or inquiries from outside of the Organization to a member of the Communications team. The media may request statements or information regarding "Organization Information," which includes the following information, regardless of form or the media in which it is maintained: (i) information relating to an identified or unidentified individual irrespective of whether such individual is an Organization employee, volunteer, activist, contractor, or vendor (including, but not limited to, demographic information, social media account names, relationships, or unique identifiers); (ii) non-public business or financial information of the Organization, its affiliates, and/or any of their respective employees or agents; and (iii) any other non-public information, regardless of type, whether or nor marked "Private" or "Confidential."

Employees shall not make any reference to Organization Information in any advertising, publicity releases, or to the press without prior written consent from the Organization. Consequently, if you receive any inquiry from a government official, newspaper, magazine, blogger, reporter, book publisher, photographer, film producer or any other person seeking to publish Organization Information, or any other information concerning the Organization, you must decline comment and refer the inquiry to a member of the Communications team. This includes questions from reporters, solicitations for information or inquiries about the Organization from participants in social media, as well as requests to use the Organization name or logo in advertisements, websites, publications and press releases. Employees may not make or confirm statements on behalf of, or concerning, the Organization to the press or on social media (blogs, websites, social networks and Twitter) without prior approval from an authorized member of the Communications team.

Moreover, since it is the Organization's policy to only verify former and current employees' positions

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

and dates of employment, all requests for employment references must be referred to Human Resources. No employee may give former or current employees a personal reference for employment or other purposes without authorization from Human Resources beforehand. However, employees may submit a request to their supervisor for a reference for entry into a school program and/or for condominium/co-operative acceptance purposes if they have acceptable performance in their current job. Employees and their managers must bring such requests to the attention of Human Resources, and their supervisors and Human Resources will review such requests on a case-by-case basis to determine whether a reference will be given. Violations of this policy may result in further action, up to and including termination of employment.

**Substance Abuse and Testing**

The Organization has a vital interest in providing safe and healthy working conditions for its employees as well as its vendors. The Organization, therefore, is committed to maintaining a drug-free workplace, and at the same time is committed to assisting in the rehabilitation of those employees who voluntarily request assistance with a drug or alcohol problem.

In furtherance of this policy, employees may not use, possess, store, distribute, purchase, manufacture or be under the influence of illegal or non-prescribed drugs while working or otherwise on the Organization's premises or Organization vehicles. The Organization reserves the right to, and may, in its sole discretion, require an employee to undergo drug screening where it reasonably suspects the employee to be under the influence of illegal or non-prescribed drugs while working or otherwise on the Organization's premises or Organization vehicles, or as otherwise permitted by law. Any employee refusing to cooperate in such testing as required may be subject to termination.

In addition, the Organization expects its employees to drink responsibly when alcohol is served at work-related events, and they must act professionally and respectfully at all times. Employees are strictly prohibited from driving while under any impairment or influence whatsoever from alcohol.

Under certain circumstances, the Organization will engage in the cooperative dialogue/interactive process to determine the appropriate next steps for the employee. Employees who test positive for illegal or non-prescribed drugs, or who are otherwise determined to have violated this policy, may, depending on the circumstances and in the sole discretion of the Organization, be terminated or permitted to undergo rehabilitation, counseling and/or treatment. If after such treatment, satisfactory evidence of rehabilitation is presented, the Organization, in its sole discretion, may return the employee to work, subject to periodic random testing for a period of time deemed appropriate by the Organization or as may be required by applicable law. If the employee refuses to follow the recommended rehabilitation, counseling, treatment and/or after-care program or refuses to be subject to follow-up testing or tests positive in any subsequent test or otherwise violates this policy, the employee may be subject to immediate termination.

Employees with drug and/or alcohol problems are encouraged to come forward and voluntarily seek help. Prior to conduct leading to a request to submit to a drug/alcohol screen, an employee may request to participate in an approved rehabilitation, counseling and/or treatment program. The Organization, in its sole discretion, may grant such employees a leave of absence or time off to attend such program(s). Following the completion of such program(s), the employee may be periodically tested on a random basis for a period of time deemed appropriate by the Organization or as may be required by applicable

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

law. If the employee refuses to follow the recommended treatment program and/or after-care program or refuses to be subject to follow-up testing or tests positive in any subsequent test or otherwise violates this policy, the employee may be subject to immediate termination.

Testing information and results under this policy will not be disclosed to anyone at the Organization who does not have a legitimate need to know.

## No Smoking

All the Organization employees must work together to maintain the highest possible level of safety and mutual comfort. Accordingly, smoking is not permitted in the Organization facilities, including Organization vehicles, or within close proximity of the entrances to our facilities. Employees may leave the building to smoke as long as their breaks for such purpose do not become excessive or otherwise disrupt Organization operations. This policy applies equally to all employees, vendors, and visitors. Violation of this policy may subject employees to disciplinary action up to and including termination.

No retaliatory adverse personnel action will be taken with respect to any employee for lodging complaints or concerns regarding compliance with this policy. Any employee or applicant who believes they have suffered any such retaliatory action should contact Human Resources.

## Political Contributions

The Organization is not actively soliciting political contributions at this time. Accordingly, no employee should solicit political contributions from actual or potential donors without approval from the Treasurer. Additionally, in the context of conducting the Organization's business, no employee shall apply any pressure or make any suggestion or threat, direct or implied, that failure to make a political contribution or participate in political activity will result in some disadvantage, or that making a contribution may result in some advantage, nor may any person provide or withhold any benefit, inducement or reward, concerning the Organization's business, to another employee, consultant, vendor or client in an effort to influence that person's decision to support a political candidate or party.

## Use of Mobile Communications, Texting and Hand-Held Devices While Driving

Cellular telephone conversations, the use of hand-held devices and other similar distractions are to be avoided while driving. While the Organization supports the use of cellular telephones and hand-held devices for business purposes, we prohibit employees from driving while distracted by the use of a cellular telephone or hand-held device . If an employee needs to make or take a business call or send or view a text message or e-mail while driving, the employee must pull off the road and stop in a safe location, if practicable, prior to using the cellular telephone or hand-held device. In addition, the Organization expects that all employees comply with applicable laws regarding the use of cellular telephones and hand-held devices while operating a motor vehicle.

## Intellectual Property

The Organization requires all of its employees to help protect its intellectual property and to respect the intellectual property rights of others. Employees may not misuse the confidential or proprietary information or trade secrets of the Organization or a third party, regardless of how they discover this

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

information. Employees must not use third-party copyrighted material without the authority of the owner, unless the Organization's lawyers have advised that such use is lawful. In addition, employees must not consciously misuse a third party's trademarks or service marks or seek to appropriate the goodwill associated with such marks. Employees are reminded of their obligations under the Confidentiality Agreement. Violation of this policy may result in further action, up to and including termination of employment.

## Improper Foreign Payments

The Organization values its reputation for ethical behavior and has a zero-tolerance commitment against bribery and corruption in any form in any jurisdiction in which we operate.

The Organization prohibits the offering, giving, soliciting or acceptance of any bribe, whether in cash or other form of inducement, to or from any person or Company wherever situated, and whether it is a public official, political candidate or body, private person or Company, or by any individual employee, agent or other person or body, acting on their own or the Organization's behalf in order to gain any advantage or benefit for the Organization, or in order to gain any personal, pecuniary or other advantage for the Organization, the individual or anyone connected with the individual or the Organization. For the avoidance of doubt, the Organization specifically prohibits the making of, or promise to make or give any payments or benefit to any individual (including public officials), Company or anyone else in order to secure or obtain any advantage. These practices are strictly prohibited by the Organization, no matter how commonplace they are or how small the payment is. There is also a risk that corporate hospitality, such as entertainment, and the giving and receiving of gifts may be regarded as bribery. While the Organization already has a policy regarding the provision and receipt of gifts, please note that lavish hospitality is strictly prohibited. Inevitably, decisions regarding what is acceptable may not always be easy. If there is any doubt whatsoever as to whether a potential act may constitute bribery, guidance should be sought from Legal. The prevention, detection and reporting of bribery is the responsibility of everyone engaged by Organization. As such concerns must be raised about any instance of bribery or corruption at the earliest possible opportunity.

Such disclosure can be made to managers or Human Resources in order that remedial steps can be taken. Failing to report your suspicions will be considered a failure to comply with this policy. Failure to comply with this policy may result in disciplinary action up to and including termination of employment. Failure to comply with the provisions of this policy will also be a failure to comply with the relevant laws and may result in a custodial sentence and a financial penalty.

## Reporting Criminal Activity During Employment

Employees are obligated as a condition of continued employment to conduct themselves in conformity with this Employee Handbook and the Code of Conduct. In the event that any employee during his or her employment by the Organization becomes arrested, convicted, or the subject of a criminal investigation by law enforcement, such employee must notify Human Resources immediately of the circumstances regarding the arrest, conviction, or criminal investigation. In addition, employees who learn of another employee becoming arrested, convicted, or the subject of a criminal investigation by law enforcement during such employee's employment by the Organization must similarly notify Human Resources about the arrest, conviction, or criminal investigation. An employee's arrest, conviction, or criminal investigation during his or her employment by the Organization will not automatically result in

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

disciplinary action for the employee. However, the nature of the Organization's objectives requires that the Organization stay informed of its employees' behavior. An employee's failure to comply with this reporting obligation may result in disciplinary action, up to and including termination of employment. For the avoidance of doubt, this reporting obligation applies only to conduct that occurs while an individual is employed by the Organization, and it does not require any reporting of arrests, convictions, or other criminal background information that pertain solely to behavior outside the period of employment.

# Absences, Time Off, and Holidays

## Absences and Tardiness

Employees are expected to be at work and to report on time. If they expect to be late, employees must promptly contact their supervisor to state the reason for such lateness and when they expect to arrive at work. Employees who are unable to report to work due to illness, injury or any other reason, must notify their manager and provide the reason for their absence as far in advance as possible, but in no instance less than one hour before their normal starting time unless otherwise impossible due to the nature of the injury, illness, or other circumstance. Employees are required to contact their supervisor on each additional day of absence unless they have submitted a note from a physician certifying their absence for a longer period or have otherwise been relieved of this obligation by their supervisor.

Subject to applicable law, and the limitations described herein, the Organization may, at any time, require employees to submit a physician's certification to verify the necessity of their absence. Employees who are absent for more than three consecutive working days must provide a physician's certification for their absence. In addition, on the fourth consecutive day of absence the employee must contact Human Resources in order to determine whether they are eligible for short term disability or other available leave.

Failure to contact a supervisor as required or the failure to submit requested documentation and/or excessive or patterned absence or tardiness may result in disciplinary action up to and including termination of employment.

## Safe & Sick Leave

Employees who work more than 80 hours in a year accrue up to 40 hours of paid leave to be used for the care of themselves or a family member, and to seek assistance or take safety measures if the employee or a family member may be the victim of any act or threat of domestic violence or unwanted sexual contact, stalking or human trafficking.

Foreseeable requests for Safe & Sick leave should be made well in advance of the required time off. If the need for leave is unforeseeable, the request for the leave must be made as soon as practicable. Documentation may be required in support of the request for Safe & Sick Leave. Any requirement that an Employee provide documentation from a licensed health care provider in order to be paid for the first 40 hours of sick time used (1) is limited to circumstances in which the Employee uses sick time for more than three consecutive work days, (2) does not require the Employee to disclose the nature of the illness, injury, or health condition, (3) only requires documentation from one licensed health care provider, and

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

(4) allows an Employee at least seven days from the date the Employee returns to work to submit such documentation.  The Organization does not require that an Employee provide documentation for non-medical absences but employees are generally required to provide an explanation for their absence within the time frame outlined above.  Any information and/or documentation provided in support of a request for Safe & Sick Leave shall be treated as confidential and shall not be disclosed except by the affected employee, with the written permission of the affected Employee.

## Holidays

The Organization may provide employees with paid holidays.  Employees will be notified in advance if the Organization will be off due to a holiday.  Employees may be required to work on an Organization-recognized holiday subject to the sole discretion of the Company.  Non-exempt employees who are required to work on an Organization-recognized holiday will be paid their regular hourly rate for all hours worked.

## Family/Medical Leave

### Covered Leave

The Organization recognizes that from time to time employees may require a leave of absence to attend to certain family or medical situations.  Therefore, and in compliance with applicable federal and state laws, the Organization will provide leave to eligible employees requiring time off for the following reasons (all definitions shall be in accordance with the Family and Medical Leave Act ["FMLA"]):

> o To care for their newborn child or for the adoption or foster placement of a child (within 12 months of the birth, adoption or placement) (referred to as "family leave" for FMLA and "parental leave" for the Organization's purposes).

> o To provide necessary care for the serious health condition of their spouse, qualified domestic partner, parent, or minor or disabled child (referred to as "family leave" for FMLA and "parental leave" for the Organization's purposes).

> o For their own serious health condition, including pregnancy and on-the-job illnesses or injuries, which make them unable to perform the essential functions of their job (referred to as "medical leave").

> o For certain "qualifying exigencies," while the employee's spouse, son, daughter or parent is on active duty or has been notified of an impending call or order to active duty status in the Armed Forces in support of a contingency operation (referred to as "service member exigency leave").

> o To care for a spouse, qualified domestic partner, son, daughter, parent or "next of kin" who is a member of the Armed Forces (a "covered service member") who needs medical treatment, recuperation or therapy, is otherwise in out-patient status, or is otherwise on the temporary disability retired list for a serious injury or illness sustained in the line of duty while on active duty (referred to as "service member family leave"). For purposes of

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

this paragraph, "next of kin" means the employee is the nearest blood relative of the covered service member.

Eligibility

Employees, who have been employed at the Organization for at least 12 months and have worked at least 1,250 hours during the 12-month period preceding their leave are eligible to receive up to 12 weeks of family/medical/qualifying exigency leave in a 12-month period (measured from the date an employee's first family/medical/service member exigency/service member family leave begins). Employees taking service member family leave are eligible to receive up to 26 weeks of leave in a single 12-month period. However, during that single 12-month period, an eligible employee shall only be entitled to a maximum combined total of 26 weeks of all types of FMLA leave. Employees with disabilities who do not meet the above eligibility requirements may be granted medical leave in the discretion of the Organization in order to accommodate their disability. Any leaves under state law will run concurrently with the federal leave; as applicable. Since, in some states, employees may be entitled to additional leave, benefits and rights, employees considering family/medical leave should contact Human Resources for further information.

Form of Leave

Leave may be taken in one consecutive period of up to 12 weeks (or 26 weeks in the case of service member family leave). When medically necessary to care for their own serious health condition, that of their eligible family members, the serious injury or illness of a covered service member, or in the case of a qualifying exigency, employees may take leave intermittently (in separate blocks of time), or work on a reduced-leave schedule (fewer hours in a day or days in a week). Employees must attempt to schedule medical treatment or other bases for intermittent or reduced schedule leave so as not to disrupt the Organization's operations. Employees who wish to take planned intermittent or reduced schedule leave may, at the Organization's discretion, be transferred to a position for which they are qualified and for which they will receive equivalent pay and benefits, which may better accommodate such leave.

Notice to Human Resources and Required Forms

Employees seeking leave; to the extent that such leave is foreseeable and not inconsistent with state or federal law, must provide at least 30 days' notice to Human Resources prior to the requested leave. In emergency circumstances or other situations where 30 days' notice is not feasible, employees must provide notice to Human Resources as soon as practicable. Failure to provide proper notice may result in a delay of leave. Upon requesting leave, Human Resources will issue the appropriate leave paperwork, including a Certification of Health Care Provider form, which must be completed and returned to Human Resources within 15 calendar days. In the event that the Certification of Health Care Provider Form is deemed insufficient, the employee shall be provided written notice and shall be allowed 7 calendar days to cure the deficiency. Certifications for service member exigency and service member family leaves must also be completed as appropriate, and will be issued by Human Resources. Employees may be required to provide recertification of their or their family members' condition as necessary. Failure to return or complete the appropriate paperwork and/or failure to cure any deficiencies may result in the delay of your leave request and your salary continuation benefits. It is the responsibility of the employee, and not their physician, to ensure that forms are completed in a timely manner.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Certification of a serious health condition may be required every 30 days or upon the expiration of a previous certification, as appropriate.  In all cases, the Organization may request recertification of a medical condition every six months.  If a serious health condition of an employee or employee's covered family member lasts beyond a year, the Organization may require a new certification in each subsequent year in which the employee takes FMLA leave.

Pay During Leave/ Use of Paid Time

Leave taken under the FMLA will be unpaid, unless otherwise required under state law.   More information about state law leave requirements may be found within the Multi-State Addendum attached to this Employee Handbook as Addendum B.  Employees are required to use any accrued but unused paid sick leave or family leave, unless prohibited under the applicable law.

Maintenance of Benefits

The Organization will continue to maintain coverage under its benefits plans (e.g., health, dental, vision, life, long-term disability) while an employee is out on an approved family/medical/service member exigency/service member family leave under this policy.

Coverage for employees may be extended in the discretion of the Organization.  After the cessation of coverage, employees may continue coverage under such plans at their own expense through the provisions of COBRA, subject to all eligibility requirements.  Taking leave will not result in the loss of any employment benefit that accrued prior to the start of the leave.

Notice of Intent to Return

Every 30 days of their leave, employees may be required to notify Human Resources of their status and whether they intend to return to work after their leave.  The Organization may seek reimbursement of benefit premiums paid for employees who fail to return from their leave for a reason other than their own serious health condition or other situation beyond their control.

Reinstatement

Upon the expiration of an approved family/medical/service member exigency/service member family leave under this policy, the Organization will reinstate employees to their same or an equivalent position, with no loss in salary, benefits or other terms and conditions of employment as a result of the leave. Employees on medical leave who are permitted to remain on leave past 12 weeks may be reinstated to a position if practicable, which may or may not be equivalent to their prior position, except as required by law. Employees who would have been affected by a reduction in force or layoff, or would have otherwise been subject to separation of employment had they not taken leave, are not entitled to reinstatement.

Upon return to work, employees who took leave due to their own serious health condition must submit a fitness-for-duty certificate stating that they are able to perform the essential functions of their position (a copy of such functions will be provided to the employee) either with or without reasonable accommodation.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Employees should contact Human Resources for further information about entitlement to family/medical/service member exigency/service member family leave and the required procedures.

**Military Leave**

If required by the applicable law, the Organization grants employees a leave of absence, together with reemployment rights in accordance with federal and state law, for military service. Employees who are members of the National Guard or Reserve units will be paid the difference between their military pay and the regular pay they would have received from the Organization had their employment not been interrupted by military duty. Such differential pay shall be provided for up to a maximum of 12 months during a rolling four-year period. The rolling four-year period will commence on the first day an employee goes out on Military Leave and end four years from that date. Employees requesting military leave must submit a copy of their military orders to their manager and Human Resources soon as they receive them.

**Jury Duty/Civic Duty Leave**

The Organization encourages its employees to fulfill civic responsibilities by granting time off to serve jury duty/civic duty leave. Where applicable, the Organization may pay employees their full salary while on such leave.

Before such leave will be granted, employees must submit a copy of their jury certificate or other acceptable proof to their manager as soon as they receive it. Employees who are not required to serve as a juror on a scheduled work day, or who are released prior to the end of the regular workday, must return to work. To be paid for such leave, proof of actual jury service or other acceptable proof must be presented to Human Resources upon return to work.

**Voting Leave**

The Organization will provide time off for its employees to serve civic duty in accordance with applicable law. Specific provisions on Voting Leave can be found in the Multi-State Addendum attached hereto as Addendum B.

# Security, Facilities and Equipment

**Organization Equipment**

In order to assist employees in performing their jobs, the Organization provides certain equipment and materials including, but not limited to, electronic mail, voice mail, telephones, Internet, postage, copy and fax machines, personal computers, laptop computers, cellular and mobile devices, other hardware/software, mobile applications, wireless and wired networks, and communications media (collectively, "Organization Equipment"). Such Organization Equipment and all files and data stored on Organization Equipment are and shall remain the property of the Organization at all times. Employees do not have an expectation of privacy in the use of any Organization Equipment. For purposes of recruitment and the employment relationship, to ensure compliance with the Organization policies and

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

applicable laws and regulations, and to maintain the safety and security of employees, contractors, customers, vendors, visitors, data and facilities, the Organization reserves the right to access, inspect, review, monitor, copy, remove, change, transfer and/or disclose the data and contents of such Organization Equipment, or of any communications made using the Organization Equipment, at any time and without notice, by any means.

Organization Equipment is made available to employees for use in connection with the Organization's business. Accordingly, employees should not expect privacy in their communications made using Organization Equipment. All equipment and software installed on Organization Equipment and/or used to access Organization information assets must be approved by the Organization and installed by a PC support representative. This includes, but is not limited to, all software packages and mobile applications (including those placed on personal devices for business purposes), hardware, keyboards, mice, USB keys, and cameras. Employees are responsible for the safekeeping of the Organization Equipment in their possession. Unauthorized use, abuse, loss, destruction or personal use of Organization Equipment is strictly prohibited. If one or more of your devices has been potentially compromised or if you have lost one or more of your devices, or if one or more of your devices have been stolen, **immediately** attempt to contact Campaign IT staff or security to inform them of the event.

Personal Data and Information may be acquired by or as a result of use of Organization Equipment and such Personal Data and Information shall be treated in accordance with this policy.

Employees may be required to sign a receipt confirming that they have received specific Organization Equipment. Upon request and/or separation from the Organization, all Organization Equipment must be returned immediately to Organization, and all software and/or mobile applications must be deleted.

**Use of Software and Electronic Communications**

In addition to the above, the following guidelines, which are not all-inclusive, have been established to ensure that employees understand the Organization's expectations with regard to the use of software, the Internet, and email systems, as well as any other means of electronic communication, provided by the Organization (collectively, "Organization Communications Systems"). While the Organization uses its discretion in blocking access to certain types of websites due to malicious and/or inappropriate content, for purposes of recruitment and the employment relationship, to ensure compliance with Organization policies and applicable laws and regulations, and to maintain the safety and security of employees, clients, vendors, visitors, data and facilities, the Organization reserves the right to inspect, review, access or monitor employees' use of Organization Communications Systems, at any time and without further notice, to ensure compliance with these guidelines, other Organization policies and/or applicable law. In this regard, employees should be aware that the use of Internet, email and blogging accounts, including without limitation Gmail, AOL, Hotmail, Yahoo, Facebook, MySpace and Twitter, leaves trace data and information on Organization Communications Systems and Organization Equipment and, as such, may be subject to review by the Organization. Employees are prohibited from improperly using Organization Communications Systems and Organization Equipment.

- Organization Equipment and Communications Systems, including Internet access are made available to employees for use in connection with the Organization's business. Limited personal use is acceptable provided it otherwise complies with Organization policies and does

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

not interfere with the performance of the employee's job.  In addition, employees are not to engage in any discussion using Organization Equipment or Communications Systems that may create potential conflicts of interest or the appearance of impropriety.  Employees shall not "hack" or otherwise obtain unauthorized access or exceed authorized access into Organization Equipment, Organization Communications Systems or any other network or computer system, whether owned or operated by the Organization or a third party.

- In order to protect the security of Organization Equipment and Organization Communications Systems, downloading or uploading of any programs, data, or other material, unless expressly approved by management, is strictly prohibited.  Not only is the Organization concerned about inappropriate materials and copyright infringement, but also special care is especially needed to protect against the spread of viruses.  Employees who have a legitimate business need to upload or download any material are expected to exercise good judgment, and if they have any questions about the safety, security or appropriateness of their actions with respect to the material at issue, they should consult their manager.

- The Organization is committed to protecting its confidential and proprietary information and prohibiting the unauthorized use, disclosure, reproduction and/or distribution of its property.  Since confidentiality and the security of data cannot be assured when using the Internet or email, including but not limited to third party email (e.g., Yahoo!, Gmail, Hotmail, mail.163, me.com) or cloud storage services (e.g., iCloud, Google Docs, Dropbox, or Amazon Cloud), transmission of confidential or proprietary information via these means, even if only temporary, is prohibited. If employees feel there is a legitimate business need to utilize any such third-party services, they should consult their manager.

- The Organization's Anti-Harassment policy applies fully to the use of all Organization Communications Systems and Organization Equipment, including, but not limited to, Internet, and email.    Accordingly, acquisition and/or dissemination of inappropriate materials, including, but not limited to those which contain sexual innuendo, pornographic material, improper jokes, harassing or threatening statements, or any statement which could be negatively perceived by others or considered hostile or offensive based on any protected classification, including, but not limited to sex, race, color, age, religion, ancestry, marital status, national origin, sexual orientation, gender identity, genetic predisposition or carrier status, or disability is strictly prohibited.  No abusive, profane, or offensive language or defamatory statements are to be transmitted through Organization Communications Systems or Organization Equipment.  Attempts to circumvent Organization safeguards in this regard are also prohibited.

- The use of Organization Communications Systems or Organization Equipment to solicit non-Organization business or otherwise for personal gain is strictly prohibited.

- Employees shall not share their passwords or review other employee, intern, or volunteer files without permission.

- Visiting any game or entertainment sites (e.g., online gambling sites, music download sites, video-streaming sites, sexually explicit sites, social networking sites, personal blogs, etc.) for non-business reasons using Organization Communications Systems or Organization

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Equipment is prohibited.

- Unless job related and approved by management, the sending of "chain letters" or "broadcast" messages to lists of individuals using Organization Communications Systems or Organization Equipment, or the use of Organization Communications Systems or Organization Equipment in a way that may cause congestion of the network, is prohibited.

- All messages transmitted on the Internet and via email using Organization Communications Systems or Organization Equipment shall have your name attached and no messages shall be transmitted under an assumed name. Employees shall be aware that emails, as well as all other communications made using Organization Communications Systems or Organization Equipment, are Organization records and can be used as evidence in a court of law or for any dispute, subject to applicable laws. The Organization retains copies of all emails and other electronic communications transmitted over its Organization Communications Systems and Organization Equipment.

- Employees must comply with policies requiring particular means of authentication to access the terminal and other Organization Equipment or Organization Communications Systems.

- Employees shall not use Organization Equipment and Organization Communications Systems to conduct or facilitate any unlawful activities.

- Employees shall not use Organization Equipment and/or Organization Communications Systems in any way that could be damaging to Organization's public image, is for purposes contrary to the interests of the Organization, or is abusive, offensive, defamatory, obscene, or indecent, or of such a nature as to bring the Organization or employees into disrepute.

- Employees shall not use Organization Equipment and Organization Communications Systems in a manner that will disrupt the intended use of system or network resources and such use shall be appropriate for the task. Employees shall avoid excessive, unnecessary consumption of computing resources for either business or personal use.

- Any business applications developed by Employees shall be supportable and maintainable and not degrade the existing IT infrastructure. Employees are expected to exercise strong security practices when connecting to the Organization's wireless networks using Organization-issued or personally-owned devices not issued by the Organization. Organization does not maintain firewall software on personal devices. Employees, therefore, using personally-owned devices not issued by the Organization should install personal firewall software where appropriate, and keep updated personal firewall software, anti-virus, and anti-malware software.

Nothing in this Policy is intended to interfere with an employee's rights under Section 7 of the National Labor Relations Act.

**Telephone Monitoring**

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

In order to ensure compliance with Organization policies and applicable laws and regulations, to maintain the safety and security of employees, customers, vendors, visitors, data, and facilities, and for legitimate business purposes Organization reserves the right, whether on its own or through its third-party security contractors to monitor all telephone conversations of its employees (including voicemail messages left for or by such employees) using Organization Communications Systems, at any time with or without notice, and in accordance with applicable laws and regulations.

## Personal Property

The Organization does not assume responsibility or reimburse employees or others for the loss, theft, or destruction of any personal property that is brought onto Organization premises. Employees are urged to exercise care in regard to leaving their personal belongings on Organization premises.

## Security

The Organization's premises contain valuable equipment, furnishings and merchandise.   It is extremely important, in order to protect the safety of everyone, that all employees pay close attention to the security of our facility.  Please notify Security and/or Human Resources immediately if you see anyone or anything suspicious.  In the event an employee is issued an identification badge, they must wear it all times while on the Organization's property or performing services for the Organization.

Where there is a compelling need to protect personal safety or the Organization's proprietary and confidential information, the Organization and our security representatives must reserve the right to conduct reasonably inspections of work areas (including desk drawers) and property.   Employees who refuse to cooperate with reasonable requests face termination. The Organization does not accept the delivery of personal mail at any of our premises, unless otherwise pre-approved by the Organization.

## Health and Safety

The Organization promotes maintaining a safe and healthy environment at the workplace. Employees should make themselves familiar with the Organization's fire, medical and security procedures.

## Contacts

**Human Resources** – humanresources@mikebloomberg.com
**Treasurer** – Hayden Horowitz – hhorowitz@mikebloomberg.com
**Security** – 212-205-0111
**IT Help Desk** – helpdesk@mikebloomberg.com

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

_Donna Wood_

| Signature | Donna Wood |
|---|---|
| | (Please Print Name) |

02 / 07 / 2020

| | Miami |
|---|---|
| Date | Office |

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

**ADDENDUM A**

**Mike Bloomberg 2020, Inc.**

**Complaint Form**

**If you believe that you have been subject to inappropriate or unfair treatment, please complete this form and submit it to Katherine Sayers (ksayers@mikebloomberg.com) or Dolores Tersigni (dtersigni@mikebloomberg.com) either in person or via email.**

**If you are reporting more than one incident, please use a separate form for each incident.  If the space provided below is insufficient, please use additional pages as necessary.**

Name: _____     Phone Number: _____

Job Title: _____     Email: _____

Department: _____     Supervisor:_____

Preferred Communication Method:     ☐Email   ☐Phone   ☐In person

Identify individual(s) who allegedly committed harassment:

| Name | Department | Job Title |
|---|---|---|
| 1) | | |
| 2) | | |
| 3) | | |

Please describe information about the complained-of conduct, including date, location, type of behavior, how it affects your work, etc.:

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Is the conduct continuing? ☐ Yes    ☐ No

Identify individual(s) who may have knowledge of complained-of conduct:

<u>Name</u>                                    <u>Department</u>

1) _____

2) _____

3) _____

Identify any documents or physical evidence (e.g., notes, emails, letters, etc.) which contain information supporting the complained-of conduct:

Other Comments:

<u>ACKNOWLEDGMENTS</u>

- The information provided in this complaint is true and accurate to the best of my knowledge.

- I understand that the Organization will investigate the conduct complained of, and that I will be asked to participate in the investigation, including, but not limited to, answering questions and providing documentary evidence.  I am willing to cooperate fully in the investigation of my complaint and to provide whatever evidence the Organization deems relevant.

- In order to investigate the Complaint, it may be necessary to interview the person(s) accused of misconduct, and any witnesses with knowledge of the allegations or defenses.  The Organization will notify all persons involved in the investigation that it is confidential, and that unauthorized disclosures of information concerning the investigation could result in disciplinary action, up to and including discharge.

Signature: _____

Date: _____

# MIKE BLOOMBERG 2020, INC.

# MULTI-STATE ADDENDA TO EMPLOYEE HANDBOOK

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

## APPLICABILITY OF THESE ADDENDA

These Multi-State Addenda to the Organization's Employee Handbook (the "Addenda") apply to employees working in the specific geographic areas listed herein.  Where the policies in the Addenda conflict with the policies in the Organization's Employee Handbook, the policies in the Addenda are controlling.

This document does not change the at-will nature of your employment with the Organization. **Nothing in the Addenda or any of the Organization's policies, practices or procedures constitutes an express or implied contract of employment or warranty of any benefits**. **Employment with the Organization is a voluntary employment-at-will relationship for no definite period of time, unless otherwise specified**.

If you have any questions about the Organization's Employee Handbook or the Addenda, you are invited to discuss your questions with Human Resources.

| Arizona |
| --- |

## Paid Sick Leave

*This policy is in addition to the policies outlined in the Employee Handbook.*

Eligible employees accrue one hour of earned paid sick leave for every 30 hours worked within the State of Arizona, up to a maximum of 40 hours of paid sick leave each calendar year. Employees may carry over unused paid sick leave from one year to the next year, but no employees may use more than 40 hours of paid sick leave each calendar year. Unused paid sick leave is not paid upon the end of employment.

Eligible employees may use paid sick time for the following purposes:

- Medical care or mental or physical illness, injury, or health condition of the employee or any of the employee's family members;
- A public health emergency affecting the employee or a family member of the employee; or
- An absence due to domestic violence, sexual violence, abuse, or stalking involving the employee or any of the employee's family members.

For purposes of this paid sick leave policy, family member includes a biological or adopted child, a biological or adopted parent or step parent, a spouse, a domestic partner, a grandparent, a sibling, a grandchild, or any other person related by blood or affinity whose close association with the employee is the equivalent of a family relationship.

| CALIFORNIA |
|---|

# Unlawful Discrimination and Harassment

*This policy supplements the Unlawful Discrimination and Harassment Policy in the Employee Handbook.*

### Additional Protected Characteristics

The Organization specifically prohibits all harassment and discrimination based on holding or Presenting a Driver's License issued under Vehicle Code § 12801.9.

### Government Enforcement Procedure

Complaints of discrimination and harassment may also be directed to the federal Equal Employment Opportunity Commission or the California Department of Fair Employment and Housing. You may contact the appropriate office via the Internet or by checking the government listings in your local telephone directory.

### Disability Discrimination

The Organization is committed to providing equal employment opportunities to otherwise qualified individuals who have a disability, a record of a disability or are regarded as having a disability. The Organization will provide reasonable accommodation to such individuals to the full extent required under the Americans with Disabilities Act, the California Fair Employment and Housing Act, and any other applicable law, regulation or ordinance. If you require a reasonable accommodation by the Organization, you must notify the Human Resources. The Organization will then engage in an interactive process with you to attempt to determine if you are a qualified individual with a disability and what type of reasonable accommodation would be effective. Your suggestions and input throughout that process are encouraged. Under certain circumstances, the Organization may ask you: (a) to provide specified documentation (to the extent permitted by law) concerning the functional limitations requiring reasonable accommodation; or (b) if such documentation is necessary and is not available, to visit an appropriate healthcare professional of the Organization's choice to substantiate the existence of a disability and the need for reasonable accommodation.

# Overtime Work & Exempt/Non-Exempt Statuses

*This policy supplements any overtime wage policies in the Employee Handbook.*

If you are a non-exempt California employee, you will be paid overtime at the rate of one and one-half times your regular rate of pay for all hours worked in excess of forty (40) straight-time hours in a workweek, and for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any workday, and for the first eight (8) hours worked on the seventh consecutive day of work in a workweek; and double your regular rate of pay for all hours worked in excess of twelve (12) hours in any workday and for all hours worked in excess of eight (8) on the seventh consecutive day of work in a workweek. The amount of overtime work and employees assigned to work such overtime hours is established by the Organization.

Paid Time Off (PTO) and holiday pay will <u>not</u> be considered as time worked when calculating overtime.

There will be no duplication or pyramiding in the computation of overtime and other premium wages.  No employee will be paid more than once for the same hours worked.

Non-exempt California employees may elect to take time off within the same workweek with supervisory approval, but under no circumstances can time be carried over from one week to the next.  In accordance with applicable laws, time off in lieu of pay (also known as comp time) is not allowed.

Exempt employees are not eligible for overtime pay or comp time.  Please refer to your offer letter or speak with your direct supervisor or Human Resources if you have questions about whether you are exempt or non-exempt.

## Rest and Meal Periods
*This policy supplements any break policies in the Employee Handbook.*

### Rest Periods

All non-exempt employees are entitled to, and must take, a 10-minute paid rest period sometime in the middle of every consecutive four hours worked or major fraction thereof.  This means that non-exempt employees are entitled to a total 10 minutes' rest (one rest period) for shifts from three and one-half to six hours in length, 20 minutes (two rest period) for shifts of more than six hours up to 10 hours, and 30 minutes (three rest period) for shifts of more than 10 hours up to 14 hours. For 8-hour shifts, as a general matter, one rest break should fall on either side of the employee's meal break. The rest periods may not be combined with other breaks or the lunch period, nor may the rest periods be taken at the beginning or end of the shift.  Please coordinate the timing of your rest periods with your immediate supervisor.

The following chart summarizes the number of rest periods for non-exempt employees:

| Shift (Hours Worked in a Day) | # Paid Rest Periods |
|---|---|
| Less than 3.5 hours | 0 |
| At least 3.5 but less than 6 hours | 1 |
| At least 6 but less than 10 hours | 2 |
| At least 10 but less than 14 hours | 3 |

Employees are relieved of all duty during their rest periods and should feel free to use their rest period time as they wish. Supervisors are not authorized to instruct employees how to spend their personal time during rest periods.  Employees should immediately report any violation of this policy to Human Resources.

*Meal Periods*

During each shift of more than five hours, non-exempt employees are also entitled to, and must take, an unpaid meal period of not less than 30 minutes and not more than one hour.  During the meal period, non-exempt employees are relieved of all duties and at liberty to use the meal period for whatever purpose the employee desires.  Please coordinate the timing of your meal periods with your immediate supervisor.

The following table describes the number of meal periods for non-exempt employees:

| Shift (Hours Worked in a Day) | # Unpaid Meal Periods | Timing & Waiver |
|---|---|---|
| 5 hours or less | 0 | No meal period is available for employees who work 5 hours or less. |
| More than 5 and less than or equal to 10 hours | 1 | First meal period must be taken before the end of the 5th hour of work, unless the employee is working 6 hours or less and elects to waive the meal period. |
| More than 10 hours | 2 | Second meal period must be taken before the end of the 10th hour of work, unless the employee is working 12 hours or less, did not waive the first meal period, and elects to waive the second meal period. |

# Paid Sick Leave

*This policy replaces any safe and sick leave policies in the Employee Handbook.*

All California employees accrue Paid Sick Leave at a rate of one (1) hour of Paid Sick Leave for every thirty (30) hours worked beginning at the start of employment. California employees may carry over accrued but unused paid sick leave from one calendar year to the next. However, at no time may any such employee have accrued more than 72 hours of Paid Sick Leave. Once an employee uses enough Paid Sick Leave to fall below this 72-hour cap, the employee will again accrue Paid Sick Leave until the cap is again reached. New employees may not use paid sick leave until the 90th day of employment.

Paid Sick Leave is available for use upon the oral or written request of an employee for themselves or a family member for the diagnosis, care or treatment of an existing health condition or preventive care, or for an employee who is a victim of domestic violence, sexual assault, or stalking.  Family members include the employee's parent, child, spouse, registered domestic partner, grandparent, grandchild, and sibling.

Paid Sick Leave is paid at the employee's regular hourly rate.  For partial day absences, Paid Sick Leave can be used in increments of 2 hours.

If the need for Paid Sick Leave is foreseeable, then the employee must give the Organization reasonable advance notice.  Where the need is unforeseeable, the employee need only give notice as soon as practicable.

# Paid Time Off ("PTO")

*This policy replaces any paid time off policies in the Employee Handbook.*

The Organization provides PTO to all California employees. All California employees accrue PTO on a pro-rata basis of 40 hours (5 days) per year or as otherwise set forth in your offer letter. You will begin accruing PTO on your first day of employment. However, you may not use PTO until your 90th day of employment at the Organization.

To encourage employees to take PTO, the Organization has placed a cap on the amount of PTO that can accrue. No employee may accumulate more than a cap equal to one-and-a-half times his or her annual PTO accrual. For example, if an employee's accrual rate is 40 hours per year, the employee's accrual cap is 60 hours. Any time an employee reaches his or her cap, PTO stops accruing until the employee reduces his or her balance by using some PTO time.

Requests to use vacation time should be submitted to your supervisor in writing (with a copy to Human Resources) as early as possible, and generally not later than two weeks prior to the date on which you want your PTO to begin. All PTO scheduling must be approved in advance by your supervisor. Taking PTO without supervisor approval may result in disciplinary action, up to and including termination of employment.

The Organization has full discretion to deny vacation scheduling requests based on workflow, scheduling conflicts and any other factors relevant to the operational or staffing needs of the department or the Organization.

The Organization encourages its employees to enjoy the restorative benefit of paid time away from work. Therefore, except upon termination of employment, accrued vacation time cannot be exchanged for monetary compensation.

Advances in PTO are not permitted. No PTO will accrue during a paid or unpaid leave of absence.

When a holiday observed by the Organization falls during a PTO period, you may change that day to holiday leave, except in the case of a leave of absence.

Approved PTO is not counted as time worked when computing time toward overtime. You will be compensated for all accrued unused PTO upon termination of employment.

# Breaks for Nursing Mothers

The Organization supports employees who choose to express milk in the workplace and complies with all federal, state and/or local laws relating to breastfeeding employees.

Unless it would constitute an undue hardship, the Organization will provide breastfeeding employees a place (that is not a bathroom) to express breastmilk within close proximity to the work area that is shielded from view and free from intrusion from co-workers and the public (the "Lactation Space"). The Lactation Space will:

- Be safe, clean, and free of toxic or hazardous materials;
- Contain a place to sit, a surface to place a breast pump and personal items;
- Have access to electricity; and
- Have access to a sink with running water and a refrigerator (or other cooling device) in close proximity to employee work area.

The Lactation Space may include the place where the employee normally works or other multipurpose room if it otherwise meets the requirements outlined above.

All employees have a right to request lactation accommodation. To request a lactation accommodation, please contact Human Resources in writing. The Organization will respond to each request in a timely manner. If the Organization cannot accommodate a request or otherwise provide a Lactation Space, as described above, the Organization will provide employee a response in writing.

The Organization expressly prohibits discrimination against any woman who chooses to express breast milk at work.  Complaints of discrimination or other violation the law should be directed to Human Resources. Complaints may also be directed to the California Labor Commissioner.  You may contact the appropriate office via the Internet or by checking the government listings in your local telephone directory.

## Leaves Related to Judicial Proceedings

You will be permitted to take time off for any of the following reasons:   (1) to serve on a jury always; (2) to appear in court, in compliance with a subpoena or other court order, as a witness in any judicial proceeding always; (3) if you are a victim of domestic violence, to seek judicial relief to help ensure the health, safety or welfare of yourself or your children always; and (4) if you are a victim of domestic violence or a victim of sexual assault, to seek medical attention for injuries caused by the domestic violence or sexual assault, to obtain services from a shelter or crisis center, to obtain psychological counseling, or to take action to increase safety from future domestic violence or sexual assault; and (5) always if you are the victim, the immediate family member of a victim, the domestic partner of a victim, or the child of a domestic partner of a victim of  a violent or serious felony (as defined in sections 667.5 and 1192.7 of the California Penal Code) or  a felony crime involving theft or embezzlement, you may take time off work in order to attend judicial proceedings related to the crime.

Unless otherwise provided by law, Non-Exempt Employees will not be paid for time off taken for any of the leaves discussed above.  Exempt Employees will receive their full weekly salary while serving as a witness or on jury duty, or for the leaves discussed above, only to the extent required by law.  For more specific information regarding these types of leave, please contact the Human Resources.

Any employee who needs to take time off for any purpose specified in this section must notify Human Resources as soon as possible.  If you cannot provide advance notice of your absence for any reason specified in this section, the Organization may require you to provide certification as

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

to the reason for your absence.  Moreover, it is your responsibility to keep the Organization updated as to how long you expect to be absent due to any of the foregoing reasons.

# Leaves Under the Family Medical Leave Act and the California Family Rights Act

*This policy supplements any leave policies in the Employee Handbook.*

The Organization grants periods of unpaid leave to California employees who request time off for family or medical reasons, in accordance with the Family and Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA"). It is the intention of the Organization to comply fully with both the FMLA and CFRA concurrently. The eligibility criteria and general guidelines used in administering this policy are set forth below.

### Eligibility

An employee who:

(1) has more than 12 months of service with the Organization; and

(2) has worked for the Organization at least 1,250 hours during the 12 months preceding the date the leave is to begin; and

(3) works at a site where the Organization employs at least 50 employees at the site, or within 75 miles of the site will be eligible to take Family/Medical Leave if the leave is for one or more of the following reasons:

  (a) to care for the employee's child (as defined by applicable law) following the child's birth or following placement of the child with the employee for adoption or foster care (NOTE: Family/Medical Leave taken for this purpose must be completed within 12 months after the child is born or placed with the employee);

  (b) to care for the employee's spouse, child or parent (as defined by applicable law), who has a serious health condition (as defined by applicable law);

  (c) to care for the employee's spouse, parent, child, or next of kin (as defined by applicable law) who incurred a serious injury or illness (as defined by applicable law) while on active duty in the Armed Forces  (NOTE: Family/Medical Leave taken for this purpose must be completed within 12 months after such leave begins);

  (d) because the employee has a serious health condition (as defined by applicable law) that makes the employee unable to perform his or her job; or

  (e) because the employee has a spouse, parent, or child (as defined by applicable law) who is on or has been called to "covered active duty" in the Armed Forces and the employee has experienced a "qualifying exigency" (as defined by applicable law).

### Calculation of Family/Medical Leave Available

An employee will be eligible to take up to a maximum of 12 workweeks of unpaid Family/Medical Leave during a 12-month period except when the leave is taken to care for the employee's spouse, parent, child, or next of kin who is a "covered service member," in which case the employee is eligible to take up to a maximum of 26 workweeks of Family/Medical Leave.  A covered service

member is (i) a member of the Armed Forces (including a member of the national Guard or Reserves) who incurred a serious injury while on active duty; or (ii) a veteran who incurred a serious injury while on active duty and who was a member of the Armed Forces (including a member of the National Guard or Reserves) at any time during the five years preceding the date on which the treatment that necessitates the leave of absence began.

To determine how much Family/Medical Leave is available to an employee, the Organization uses the following method:  The Organization subtracts from 12 weeks (or 26 weeks if applicable) the amount of Family/Medical Leave taken by the employee during the 12 months immediately preceding the date on which the requested leave is to begin.  The difference is the amount of Family/Medical Leave available.

If parents who are both employed by the Organization take Family/Medical Leave for the birth or placement of their child, the parents may only use a combined total of 12 weeks of Family/Medical Leave for that purpose during a 12-month period.

### Requests for Leave

An employee must provide Human Resources at least 30 days' advance notice of the need to take Family/Medical Leave for foreseeable events (such as the expected birth of a child or a planned medical treatment for the employee or a family member).  For events that are unforeseeable, the employee should notify Human Resources as soon as the employee learns that a leave will be necessary.

### Medical Certification

When Family/Medical Leave is requested due to the serious health condition of an employee or an employee's family member, the Organization requires written certification from a licensed health care provider verifying the date on which the serious health condition began or will begin, the probable duration of the serious health condition, the need for the employee to provide care for his or her relative (if applicable), and the employee's expected date of return to work.

If there is a dispute between the employee and the Organization about the medical opinion provided by the health care provider of an employee, the Organization may require a second opinion by a physician of its choice, at its expense.  If the opinions are inconsistent and a third opinion is necessary, a third medical care provider agreeable to both the employee and the Organization may be selected, also at the Organization's expense.

### Intermittent or Reduced Leave

Family/Medical Leave may be taken intermittently subject to the following restrictions:  (a) intermittent leave must be taken in increments no smaller than the Organization's payroll system uses to account for other absences; (b) intermittent leave for baby bonding in increments of less than two weeks will be granted on no more than two occasions; and (c) the Organization may temporarily transfer the employee to another position of equivalent pay and benefits in order to better accommodate the need for intermittent leave.

### Compensation during Family/Medical Leave

Family/Medical Leave is unpaid.   However, in some circumstances an employee on Family/Medical Leave may be eligible to receive payments from the California State Disability Insurance Fund, the California Paid Family Leave Fund.  In addition, an employee may elect to use some or all accrued PTO during a Family/Medical Leave.  In no situation will the use of available PTO extend the maximum amount of Family/Medical Leave available under this policy.

### Family/Medical Leave and Pregnancy

A California employee who is disabled by pregnancy, childbirth or a related medical condition is entitled (even if she is not eligible for Family/Medical Leave) to take a Pregnancy Disability Leave ("PDL") of up to four months.  (The Organization's PDL policy is explained in more detail in the following section.)  Although PDL counts as time used for FMLA purposes, it does not count as time used under the CFRA.  Therefore, a California employee who has taken PDL and who is eligible for CFRA has the right to take an additional 12 workweeks of unpaid leave under CFRA after the birth of a child, following the end of the PDL.

> _Example of how PDL interacts with CFRA and FMLA_: *A California employee who is eligible for twelve (12) weeks of CFRA and twelve (12) weeks of FLMA becomes disabled by pregnancy for three (3) weeks prior to birth and provides appropriate certification from her medical provider of her need for leave. Those three (3) weeks of leave taken prior to birth as a result of a pregnancy-related disability would count as both unpaid PDL and unpaid FMLA (which runs concurrently with PDL). However, those three (3) weeks would not count as CFRA leave (which runs consecutively with PDL). Therefore, the employee would still have twelve (12) weeks of unpaid CFRA leave available for use after birth for baby bonding. The employee's remaining nine (9) weeks of FMLA would run concurrently with her CFRA baby bonding leave, so the employee's total available baby bonding leave after the conclusion of her pregnancy disability leave is twelve (12) weeks.*

### Effect on Benefit Accrual

Employees on Family/Medical Leave accrue other employment benefits – such as paid PTO – only during periods when paid leave is being substituted for unpaid leave and only if the employee would otherwise be entitled to such accrual.

While on Family/Medical Leave, an employee is entitled to participate in any pension and retirement plan or supplemental insurance plan then offered by the Organization, in accordance with the terms of those plans, to the same extent as an employee on any other unpaid personal leave or disability leave.

### Effect on Health Insurance Benefits

During an employee's Family/Medical Leave, for up to a maximum of 12 weeks in a 12-month period (or up to 26 weeks where applicable), the Organization will continue providing the opportunity to participate in, and paying the premium for the employee's participation in, any Organization group-health plan to the same extent it would have done so if the employee had not taken leave.  The employee must continue to pay timely any portion of a premium normally paid by the employee, and failure to make timely payments will result in lapse of coverage.  It is the employee's responsibility to make arrangements with Human Resources for such payment.  At the end of the 12-week period, if the employee has not returned from leave, the employee will have

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

the option to continue insurance benefits at his or her own expense through the federal law known as COBRA and/or the California law known as Cal-COBRA.

If an employee fails to return from Family/Medical Leave for a reason other than the recurrence or continuation of the health condition that brought about the leave (or other circumstances beyond the employee's control), the Organization reserves the right to recover from the employee, to the extent permitted by law, any health insurance premiums paid by the Organization on the employee's behalf during any unpaid periods of the leave.

### *Return from Family/Medical Leave*

Under most circumstances (subject only to exceptions permitted under applicable law), upon return from Family/Medical Leave an employee will be reinstated to his or her original position or to an equivalent position with equivalent pay, benefits and other employment terms and conditions. However, an employee has no greater right to reinstatement than if he or she had not taken the leave.

An employee returning from leave of less than four months due to a pregnancy-related disability will be reinstated in accordance with the Organization's PDL policy.

Before returning to work from Family/Medical leave taken for the employee's own serious health condition, the employee may be required by the Organization (as in the case of all medical leave) to submit to Human Resources a certificate of fitness from the employee's licensed health care provider confirming that the employee is able to resume his or her regular duties or describing any limitations, with or without reasonable accommodation, that the employee may have in performing the essential functions of his or her job.  The Organization may deny certain "key" employees (as defined under applicable law) reinstatement if such denial is necessary to prevent substantial economic injury to the Organization's operations and conforms to all other requirements under the law.

# New Parent Leave
*This policy supplements any leave policies in the Employee Handbook.*

Under California's New Parent Leave Act, an employee who is not covered by CFRA or FMLA is permitted to take up to 12 weeks of unpaid leave to bond with a child within 1 year of birth, adoption, or foster care placement if the employee meets all of the following conditions: (i) worked for the Organization for more than 12 months; (ii) worked at least 1,250 hours during the previous 12 months, and (iii) works at a California worksite in which the Organization employs at least 20 employees within 75 miles.  Employees may use any accrued PTO during the period of leave.  The Organization will continue to provide the same level of health insurance benefits that would have been provided if the employee had continued to work in his or her position for the duration of the leave, subject to the Organization's right to recover premiums paid on the employee's behalf if the employee chooses not return to work at the end of the leave for reasons within the employee's control.  This leave is in addition to any Pregnancy Disability Leave for which the employee may be eligible.

# Pregnancy Disability Leave

*This policy supplements any leave policies in the Employee Handbook.*

Eligibility.  Any employee temporarily unable to perform her usual and customary duties due to pregnancy, childbirth or a related medical condition will be granted an unpaid pregnancy disability leave of absence ("PDL") for the actual duration of a disability, up to a maximum of four months per pregnancy on the basis of a physician's statement that the employee is not able to work due to the pregnancy-related disability.  A "four-month" leave means time off for the number of days or hours the employee would normally work within four calendar months (one-third of a year or 17⅓ weeks).  For a full-time employee who works 40 hours per week, "four months" is 693 hours of leave entitlement, based on 40 hours per week times 17⅓ weeks.  Time off needed for prenatal care, severe morning sickness, doctor-ordered bed rest, childbirth, and recovery from childbirth are all covered by PDL.  Thus, PDL does not need to be taken in one continuous period of time, but instead can be taken on an as-needed basis.

Requests for Leave.  An employee who plans to take PDL must provide the Organization with at least 30 days' advance notice of the date on which it is anticipated that the leave will commence, the estimated duration of the leave, and the date on which the employee expects to be able to return to work.  When an emergency occurs that does not allow the employee to provide advance notice of the need for PDL, the employee must notify the Organization of the situation immediately.

Requests for Less Strenuous Duties.  If a physician informs you that it would be medically advisable for you to transfer temporarily to a less strenuous position or less strenuous duties, please provide the Organization with your physician's written certification.  Upon the Organization's receipt of the certification, the request will be accommodated if the Organization can do so without undue hardship.

Medical Certification.  Employees will be required to submit a certification from their health care provider of their pregnancy disability or the medical advisability for a transfer or accommodation. The certification should include the following information:

(a) The date on which the employee becomes disabled due to pregnancy or the date of the medical advisability for the transfer or accommodation;
(b) The probable duration of the period or periods of disability or the period or periods for the advisability of the transfer or accommodation; and
(c) A statement that, due to the disability, the employee is unable to work at all or to perform any one or more of the essential functions of her position without undue risk to herself, or to other persons, or a statement that, due to her pregnancy, a transfer or other accommodation is medically advisable.

Compensation During PDL.  PDL is unpaid.  However, in some circumstances an employee on PDL may be eligible to receive payments from the California State Disability Insurance Fund.  In addition, an employee may elect to substitute some or all of her accrued PTO for unpaid leave during a Pregnancy Disability Leave.  In no situation will the use of available PTO extend the maximum amount of Pregnancy Disability Leave available under this policy.

Effect on Benefit Accrual.  While on PDL, an employee is entitled to participate in any other insurance plans then offered by the Organization only in accordance with the terms of the summary plan documents controlling those plans.  PTO does not accrue while on Pregnancy Disability Leave.

Effect on Health Insurance Benefits.  During an employee's PDL, for up to the maximum amount of time required by law, the Organization will continue providing the opportunity to participate in, and will continue paying the employer's share of the cost of the premium for the employee's participation in, the Organization group-health plan to the same extent it would have done if the employee had not taken leave.  The cost of coverage normally borne by the employee will remain the sole responsibility of the employee, and failure to make timely payments will result in lapse of coverage.  It is the employee's responsibility to make arrangements with the Organization to pay the employee's share of the cost of coverage during the PDL.  If the employee has not returned from leave at the time the Organization's obligation to pay the employer's share of the employee's premiums ends, the employee will have the option to continue health insurance benefits at her own expense through the federal law known as COBRA and/or the California law known as Cal-COBRA.

Return from PDL.  An employee who is released by her doctor to return to her original job after an approved pregnancy-related disability leave, or who previously has been transferred to a less strenuous or hazardous position because of pregnancy, childbirth or a related medical condition, may return to her original job, subject to any exceptions permitted under state and federal laws.  An employee returning to work after a pregnancy-related disability must have a written release from a physician verifying that the employee has been disabled and is now able to return to work and safely perform all of her duties.

## California State Disability Insurance & Paid Family Leave

*This policy supplements any disability insurance and leave policies in the Employee Handbook.*

California State Disability Insurance ("SDI") provides short-term partial wage-replacement benefits to eligible employees who suffer a loss of wages because they are unable to work due to a non work-related illness or injury, or due to pregnancy or childbirth.  SDI is funded through employee payroll deductions.  There is a seven calendar-day waiting period following the date on which an employee's doctor determines that the employee is disabled before payment of SDI benefits begins.

It is the employee's responsibility to apply for SDI benefits.  All decisions regarding eligibility are made by the California Employment Development Department.

California Paid Family Leave ("PFL") provides eligible employees with up to six weeks of partial wage-replacement benefits if they take time off work for one of the following reasons (a) to care for a seriously ill child, spouse, parent, domestic partner; or (b) to bond with a minor child within one year of the child's birth or placement of the child in connection with foster care or adoption.

PFL is not a leave of absence for employees; it is a wage replacement benefit.  PFL is funded through employee payroll deductions.  Prior to receiving PFL benefits, employees must fulfill a

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

seven-day waiting period.  Employees with available PTO will be required to use such PTO during that waiting period.  Upon completion of the seven-day waiting period, the Organization may require an employee to use up to an additional one week of PTO prior to the employee's initial receipt of PFL benefits.

Employees who are receiving SDI or PFL benefits do not have a guaranteed right to return to their jobs unless they are on an approved leave of absence which guarantees that right, such as a FMLA/CFRA leave or PDL, or unless otherwise required by law.

For SDI or PFL-covered events that are foreseeable, you must notify the Organization of your intention to apply for SDI or PFL at the same time that you submit a request for a leave of absence or request to take time off work.  For events that are not foreseeable, you must notify the Organization as soon as you determine that you intend to request SDI or PFL benefits.

| Colorado |
|---|

## Paid Time Off

*This policy is in addition to the policies outlined in the Employee Handbook.*

Employees accrue paid time off ("PTO") pursuant to the accrual rate set forth in the Employee Handbook.  Unused PTO may not be carried over from one year into another year.  At the end of employment, an employee will be paid for his or her unused PTO that accrued in the same year as the employee's separation from employment.

## HAWAII

# Unpaid Family Leave
*This policy is in addition to the leave policies outlined in the Employee Handbook.*

In the event the Organization employs more than 100 employees within the State of Hawaii, all eligible Organization employees in Hawaii are entitled to take up to four (4) weeks of unpaid Family Leave ("FL") in a given twelve (12) month period in accordance with Hawaii's Family Leave Law.  Eligible employees may elect to designate up to ten (10) days of accrued paid time off to be used during the Family Leave period.

**Employee Eligibility**: In order to be eligible for Family Leave, employees must have worked for the Organization for a minimum of six (6) months prior to the first day on which Family Leave is taken.

**Reasons for Leave**: Eligible employees may take Family Leave for the birth or adoption of a child or to care for the employee's child, sibling, spouse, reciprocal beneficiary, parent, parent-in-law, grandparent, or grandparent-in-law with a serious health condition.

An eligible employee may not use Family Leave for his or her own serious health condition.

**Notice and Certification**:

*Foreseeable FL*: If the need to use FL is foreseeable, then the employee must provide the Organization with at least thirty (30) days' advance written notice of the need to use such FL and expected commencement and termination of leave.

*Unforeseeable FL*:  Where the need to use FL is unforeseeable, the employee need only provide verbal notice, either by phone or email, as soon as practicable to his or her supervisor.  If the employee cannot reach his or her supervisor, the employee must leave a voicemail.

The Organization may request from the employee medical certification substantiating the need for such leave.

| MAINE |
| --- |

## Family Medical Leave
*This policy is in addition to the leave policies outlined in the Employee Handbook.*

All eligible Organization employees are entitled to take up to ten (10) weeks of Family Medical Leave ("FML") for the care of the employee's ill child, spouse, or parent.  Employees may elect to use their accrued paid time off for the FML period.

**Employee Eligibility**: In order to be eligible for Family Leave, employees in Maine must have worked for a minimum of twelve (12) consecutive months at the Organization.

**Notice and Medical Certification**:

Absent an unforeseeable emergency, eligible employees should give the Organization at least thirty (30) days' notice of the intended date upon which the leave will commence and terminate.

The organization may request from the employee medical certification substantiating the need for such leave.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

## MASSACHUSETTS

## Paid Sick Time
*This policy is in addition to the paid sick leave policies outlined in the Employee Handbook.*

Employees whose primary workplace is in Massachusetts are entitled to forty (40) hours of Paid Sick Time ("PST") at the beginning of each calendar year under the Earned Sick Time Law.

**Use of PST**:  New employees may not use PST until they have been employed for ninety (90) days.  PST must be used in minimum initial increments of one (1) hour per day.  PST may only be used in connection with hours that an employee is scheduled to work.  Using PST will not count as hours worked for the purpose of determining whether an employee has met or exceeded any applicable overtime thresholds.

PST may be used for the following purposes:

- Care for the employee's own physical or mental illness, injury, or other medical condition that requires home, preventative, or professional care;
- Care for a child, parent, spouse, or parent of a spouse who is suffering from a physical or mental illness, injury, or other medical condition that requires home, preventative or professional care;
- Attend routine medical and dental appointments for the employee or for their child, parent, spouse, or parent of a spouse;
- Address the psychological, physical, or legal effects of domestic violence;
- Travel to and from an appointment, pharmacy, or other location related to the purpose for which the time was taken; or
- Other reasons stated under the applicable law.

**Notice and Medical Certification**:

*Foreseeable PST*: If the need to use PST is foreseeable, then the employee must provide the Organization with at least seven (7) days' advance written notice of the need to use such PST.

*Unforeseeable PST*:  Where the need to use PST is unforeseeable, the employee need only provide verbal notice, either by phone or email, as soon as practicable to his or her supervisor.  If the employee cannot reach his or her supervisor, the employee must leave a voicemail.

If an employee uses PST for more than three (3) consecutive days, more than twenty-four (24) consecutive work hours, or has more than four (4) unforeseeable and undocumented absences within a three (3) month period, the employee may be required to submit medical certification substantiating the need for such leave and, upon the conclusion of the leave, confirming that the employee is well enough to return to work. The Organization may not require the disclosure of details relating to an employee's or his or her family member's medical condition or require the disclosure of details relating to an employee's or his or her family member's status as a victim of family or domestic violence offenses. Required documentation should be submitted within seven (7) days of the employee's absence.

**Other Leave**:  To the extent permitted by law, all PST time must be used concurrently with any other available leave.

**Unused PST**:  At the end of each calendar year, employees may not carry over into the subsequent calendar year any remaining unused PST.  Under no circumstance will employees be compensated for accrued but unused PST, either at the end of the calendar year, the end of employment, or at any other time.

| MICHIGAN |
|---|

# Paid Medical Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

**Eligible Employees**:  Nonexempt employees whose primary workplace is in Michigan and who worked at least twenty-five (25) hours per week on average in the preceding calendar year.

**Amount of Leave**:  Eligible employees are entitled to forty (40) hours of Paid Medical Leave ("PML") at the beginning of each calendar year.

**Use of PML**:  PML must be used in minimum initial increments of one (1) hour per day.  PML may only be used in connection with hours that an employee is scheduled to work.  Using PML will not count as hours worked for the purpose of determining whether an employee has met or exceeded any applicable overtime thresholds.  Employees are required to use accrued paid time off prior to taking PML.

> PML may be used for the following purposes:

- Physical or mental illness, injury, or health condition of the employee or his or her family member;
- Medical diagnosis, care, or treatment of the employee or employee's family member;
- Preventative care of the employee or his or her family member;
- Closure of the employee's primary workplace by order of a public official due to a public health emergency;
- The care of his or her child whose school or place of care has been closed by order of a public official due to a public health emergency;
- The employee's or his or her family member's exposure to a communicable disease that would jeopardize the health of others as determined by health authorities or a health care provider;
- Medical care, psychological or other counseling, victims' services, legal services, or legal proceedings related to domestic violence or assault; or
- Other reasons stated under the applicable law.

**Notice and Medical Certification**:

*Foreseeable PML*: If the need to use PML is foreseeable, then the employee must provide the Organization with at least thirty (30) days' advance written notice of the need to use such PML, by calling and sending an email to his or her supervisor.

*Unforeseeable PML*:  Where the need to use PML is unforeseeable, the employee need only provide verbal notice, either by phone or email, as soon as practicable to his or her supervisor.  If the employee cannot reach his or her supervisor, the employee must leave a voicemail.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

The Organization may request from the employee medical certification substantiating the need for such leave and, upon the conclusion of the leave, confirming that the employee is well enough to return to work.  The Organization may not require the disclosure of details relating to an employee's or his or her family member's medical condition or require the disclosure of details relating to an employee's or his or her family member's status as a victim of family or domestic violence offenses.  Required documentation should be submitted within seven (7) days of the employee's absence.

**Other Leave**:  To the extent permitted by law, all PML time must be used concurrently with any other available leave.

**Unused PML**:  At the end of each calendar year, employees may not carry over into the subsequent calendar year any remaining unused PML time.   Under no circumstance will employees be compensated for accrued but unused PML, either at the end of the calendar year, the end of employment, or at any other time.

| NEW YORK |
| --- |

## Unlawful Discrimination and Harassment

*This policy supplements the Unlawful Discrimination and Harassment Policy in the Employee Handbook.*

**Legal Protections and External Remedies for Harassment and Discrimination**:

Harassment and Discrimination are prohibited not only under Organization policy, but also under state, federal, and, where applicable, local law. Aside from the Organization's internal complaint procedure, employees may also choose to pursue legal remedies with the Equal Employment Opportunity Commission or the State or Local administrative agency via the following:

A.     *United States Equal Employment Opportunity Commission (EEOC)*

Employees can file a complaint with the EEOC anytime within 300 days from the alleged Harassment or Discrimination. There is no cost to file a complaint with the EEOC. The EEOC will investigate the complaint, and determine whether there is reasonable cause to believe that Harassment or Discrimination has occurred, at which point the EEOC will issue a Right to Sue letter permitting the employee to file a complaint in federal court. The EEOC does not hold hearings or award relief, but may take other action including pursuing cases in federal court on behalf of complaining parties. Federal courts may award remedies if Harassment or Discrimination is found to have occurred. Employees who believe that they have been discriminated against at work can file a "Charge of Discrimination."

The EEOC has district, area, and field offices where complaints can be filed. Contact the EEOC by calling 1-800-669-4000 (1-800-669-6820 (TTY)), visiting their website at www.eeoc.gov or via email at info@eeoc.gov. If an individual filed an administrative complaint with DHR, DHR will file the complaint with the EEOC to preserve the right to proceed in federal court.

B.     *New York State Division of Human Rights ("DHR")*

Employees working in New York may file a complaint alleging violation of the New York Human Rights Law ("HRL") with DHR or New York State Supreme Court any time within one year of the alleged Harassment or Discrimination. Employees who do not file with DHR can still bring a lawsuit directly in state court within three years of the alleged Harassment or Discrimination. An employee may not file with DHR if they have already filed a HRL complaint in state court. Complaining internally to the Organization does not extend to an employee's time to file with DHR or in court. The one year or three years is counted from the date of the most recent incident of Harassment or Discrimination. Employees do not need an attorney to file a complaint and determine whether there is probable cause to believe that Harassment or Discrimination has occurred. Probable cause cases are forwarded to a public hearing before an administrative law judge. If discrimination is found after a hearing, DHR has the power to award relief, which varies but may include requiring the employer to take action to stop the Harassment or Discrimination, or redress the damage caused, including paying monetary damages, attorney's fees and civil fines.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

DHR's main office contact information is: NYS Division of Human Rights, One Fordham Plaza, Fourth Floor, Bronx, New York 10458. (718) 741-8400, www.dhr.ny.gov Contact HR at (888) 392-3644 or visit dhr.ny.gov/complaint for more information about filing a complaint. The website has a complaint form that can be downloaded, filled out, notarized and mailed to the DHR. The website also contains contact information for DHR's regional offices across New York State.

*C.    Local Protections*

Many localities enforce laws protecting individuals from Harassment and Discrimination. Employees should contact the county, city or town in which they live to find out if such a law exists. For example, employees who work in New York City may file complaints of Harassment and Discrimination with the New York City Commission on Human Rights. Contact their main office at Law Enforcement Bureau of the NYC Commission on Human Rights, 40 Rector Street, 10th Floor, New York, New York; call 311 or (212) 306-7450; or visit www.nyc.gov/html/cchr/html/home/home.shtml.

*D.    Local Police Department*

If the alleged Harassment or Discrimination rises to the level of assault, employees may always contact their local police department.

# Paid Safe and Sick Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

**Eligible Employees**: Employees who perform work in New York City and have been working for the requisite amount of hours under the law.

**Amount of Leave**: Eligible employees are entitled to forty (40) hours of Paid Safe and Sick Leave ("PSSL") at the beginning of each calendar year. Employees who begin work after the first day of the calendar year are entitled to a pro-rated amount of PSSL.

**Use of PSSL**: New employees may not use PSSL until they have been employed for one hundred twenty (120) days. PSSL must be used in minimum initial increments of four (4) hours per day. PSSL may only be used in connection with hours that an employee is scheduled to work. Using PSSL will not count as hours worked for the purpose of determining whether an employee has met or exceeded any applicable overtime thresholds.

PSSL may be used for the following purposes:

- The employee's mental or physical illness, injury, or health condition;
- The employee's need for medical diagnosis, care, or treatment of a mental or physical illness, injury, or health condition;
- The employee's need for preventive medical care;

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

- Care of a family member who needs medical diagnosis, care, or treatment of an illness, injury, or health condition, or who needs preventive medical care.  Family members include the employee's parent, child, spouse, registered domestic partner, grandparent, grandchild, child or parent of employee's spouse or domestic partner, and sibling;
- Care of a family member who has elective surgery, including organ donations;
- Closure of employee's place of business due to a public health emergency;
- The employee's need to care for a child whose school or childcare provider is closed due to a public health emergency;
- When the employee or a family member has been the victim of domestic violence, sexual offenses, stalking or human trafficking as defined in the bill:
  o to obtain services from a domestic violence shelter, rape crisis center, or other shelter or services program;
  o to participate in safety planning, temporarily or permanently relocate, or take other actions to increase the safety of the employee or employee's family members from future harm;
  o to meet with an attorney or other social service provider to obtain information and advice on, and prepare for or participate in any criminal or civil proceeding, including but not limited to, matters related to a family offense matter, sexual offense, stalking, human trafficking, custody, visitation, matrimonial issues, orders of protection, immigration, housing, and/or discrimination in employment, housing or consumer credit;
  o to file a complaint or domestic incident report with law enforcement or meet with a district attorney's office;
  o to enroll a child in a new school;
  o to take other actions necessary to maintain, improve, or restore the physical, psychological, or economic health or safety of the employee or the employee's family member or to protect those who associate or work with the employee; and/or
- Other reasons stated under the applicable law.

**Notice and Medical Certification**:

*Foreseeable PSSL*: If the need to use PSSL is foreseeable, then the employee must provide the Organization with at least seven (7) days' advance written notice of the need to use such PSSL, by calling and sending an email to his or her supervisor.

*Unforeseeable PSSL*:  Where the need to use PSSL is unforeseeable, the employee need only provide verbal notice, either by phone or email, as soon as practicable to his or her supervisor.  If the employee cannot reach his or her supervisor, the employee must leave a voicemail.

If an employee uses PSSL on more than three (3) consecutive days, the employee may be required to submit medical certification substantiating the need for such leave and, upon the conclusion of the leave, confirming that the employee is well enough to return to work. The Organization may not require the disclosure of details relating to an employee's or his or her family member's medical condition or require the disclosure of details relating to an employee's or his or her family member's status as a victim of family offenses, sexual offenses, stalking, or human trafficking as a condition of providing safe/sick time. Additionally, health information about an employee or an employee's family member, and information concerning an employee's or a family member's status or perceived status as a victim of family offenses, sexual offenses, stalking, or human trafficking obtained solely for the purposes of utilizing safe/sick time shall be treated as confidential and shall not be disclosed except by the affected employee, with the written permission of the affected employee or as required by law. Failure or delay in providing the required notice or documentation may result in a denial of the request or a delay in the approval of the request.

**Other Leave**: To the extent permitted by law, all PSSL time must be used concurrently with any other available leave.

**Unused PSSL**: At the end of each calendar year, employees may not carry over into the subsequent calendar year any remaining unused PSSL time. Under no circumstance will employees be compensated for accrued but unused PSSL, either at the end of the calendar year, the end of employment, or at any other time.

**Abuse or Misuse of PSSL**: Abuse or misuse of PSSL will not be tolerated by the Organization and may result in discipline, up to and including termination of employment. Examples of abuse or misuse of PSSL may include (i) use of unscheduled sick time on or adjacent to weekends, regularly scheduled days off, holidays, vacation, or paydays, (ii) taking scheduled sick time on days when requests for other types of leave have already been denied, (iii) misrepresentation of the need for, or the reason why employees are taking, paid sick or safe leave; and/or (iv) failure to notify a supervisor in advance or submit the required documentation.

**Retaliation Prohibited**: The Organization will not retaliate against an employee because the employee has exercised his or her right to use PSSL, has lodged a complaint about a violation of the law, or has cooperated in an investigation of a violation of the law.

# Paid Family Leave

*This policy is in addition to the policies outlined in the Employee Handbook.*

All eligible Organization employees are entitled to Paid Family Leave ("PFL") as part the Organization's disability insurance program, in accordance with New York State's Paid Family Leave Benefits Law (the "Law").

**Employee Eligibility:**

*Full-time Employees*: For purposes of this Paid Family Leave Policy only, full-time employees are defined as employees regularly scheduled to work twenty (20) hours or more in a workweek. In

order to be eligible for PFL, full-time employees must have worked for the Organization for a minimum of 26 consecutive weeks prior to the first day on which PFL is taken.

*Part-time Employees*: For purposes of this Paid Family Leave Policy only, part-time employees are defined as employees who are regularly scheduled to work less than twenty (20) hours in a workweek.  In order to be eligible for PFL, part-time employees must have worked for the Organization for a minimum of 175 days prior to the first day on which PFL is taken.

**Reasons for Leave**: Eligible employees may take PFL for the following reasons:

(1) To bond with a child during the first twelve (12) months after the child's birth, or the first twelve (12) months after the placement of a child for adoption or foster care with the employee.  For purposes of this Paid Family Leave Policy only, "child" is defined as a biological child, adopted child, stepchild, foster child, legal ward, son or daughter of a domestic partner, or a person to whom the employee stands *in loco parentis*; or

(2) To provide physical or psychological care for a family member with a serious health condition (as defined in the Law).  For purposes of this Paid Family Leave Policy only, "family member" includes child, parent, grandparent, grandchild, spouse, or domestic partner (as defined in the Law); or

(3) For a qualifying exigency arising out of the active duty of the employee's spouse, domestic partner, child, or parent (as defined in the Law).

An eligible employee may <u>not</u> use PFL for his or her own serious health condition, including pre-natal needs or conditions.

**Leave Time and Benefit Payments**:  Eligible employees are entitled to leave time and benefits as reflected in the following chart:

| Year | Maximum PFL Leave Time | PFL Benefit Payment Per Week (Cannot Exceed Maximum PFL Benefit) | Maximum PFL Benefit Per Week |
|---|---|---|---|
| January 1, 2020 | 10 weeks | 60% of Employee's Average Weekly Wage | 60% of NYS Average Weekly Wage |

Employees may not take more than a combined total of 26 weeks of disability leave and PFL in any 52-week period.

**Employee Contribution**:  PFL is funded entirely by way of employee payroll deductions.  The amount of the deduction is set by the New York State Department of Labor.  Under no circumstance will the Organization deduct more than the maximum amount allowed by law.

Employees who do not meet, or are not reasonably anticipated to meet, the PFL eligibility criteria may sign a waiver form enabling them to opt out of the above-noted employee contributions. Such waiver forms can be obtained from Human Resources. Employees who do not sign the waiver form will be subject to the same payroll deductions as eligible employees.

**Requests for PFL**:

*Leave Time*: If the need for PFL is *foreseeable*, employees must provide a written request for PFL to Human Resources at least thirty (30) days in advance. If the need for PFL is *unforeseeable*, employees must provide a written request for PFL to Human Resources as soon as practicable. In either case, failure to provide timely notice may result in a delay in the approval of, or a denial of, the employee's request. This written notice must include sufficient details including: (i) the reason for the PFL; and (ii) the anticipated timing and duration of the leave.

Employees may take PFL on an intermittent basis, but must use PFL in full-day increments. Employees must request to use intermittent leave as soon as practicable before the first day of leave.

*Benefit Payments*: Employees must provide completed claim forms to the insurance carrier. The carrier is then responsible for approving or denying benefit payments. These forms can be found on the New York State Department of Labor's website and can also be obtained from Human Resources. Employees must first complete their portion of the form, and must then provide the form to Human Resources for the completion of the employer's section of the form. Employees must submit the claim form to the insurance carrier for processing within thirty (30) days of the first day of their PFL. Please note that it may take some time for the insurance carrier to issue a determination on a request for payment. Employees will receive benefit payments (if at all) from the insurance carrier.

**Certification**: Employees must provide to the insurance carrier the required medical certification or proof of claim documentation along with their request for the paid benefit. Failure to do so may result in a delay in the approval of, or a denial of, the employee's request. The forms for this certification may be found on the New York State Department of Labor's website and with Human Resources.

**Interaction with Other Available Leave Benefits**:

If an employee is eligible for leave under the Family and Medical Leave Act ("FMLA"), and if the reason for PFL is also a qualifying basis for FMLA leave, then PFL taken in accordance with this policy will run concurrently with an employee's available leave entitlement under the FMLA. Please consult the Organization's FMLA policy for additional details.

In addition to FMLA benefits, employees may have available paid time off (i.e., sick leave, PTO, etc.). Employees may, but are not required to, choose to supplement PFL benefit payments with any available paid time off in order to receive 100% of their salary during PFL.

**Maintenance of Benefits and Reinstatement Rights**:

While on PFL, employees will continue to receive health insurance benefits under the same terms and conditions that existed prior to the leave. Employees must continue to pay their portion of the insurance premium during the PFL.

Upon return from PFL, employees will be restored to the position of employment held by the employee when the leave commenced, or to a comparable position with comparable employment benefits, pay, and other terms and conditions of employment.

PTO will not continue to accrue during PFL, unless otherwise required by law.

**Resignation/Termination**: Employees are not entitled to payment for unused PFL upon resignation or termination of employment, or under any other condition.

# Voting Leave

*This policy is in addition to the policies outlined in the Employee Handbook.*

All employees are encouraged to fulfill their civic responsibilities by participating in elections. Employees who perform work in New York City and are registered to vote may request up to three (3) hours of paid time off to vote. Such time should be at the beginning or end of their regular work schedule, unless otherwise approved by a supervisor.

Employees should request time off to vote from their supervisor at least two (2) working days prior to the day of the election. Advance notice is required so that the necessary time off can be scheduled at the beginning or end of the work shift, whichever provides the least disruption to the normal work schedule.

# Lactation Policy

*This policy is in addition to the policies outlined in the Employee Handbook.*

The Organization provides accommodations to employees who pump during work hours, as required under local law. This includes the following lactation accommodation policy administered by the Organization's Human Resources Department. In accordance with the New York City Human Rights Law, the Organization provides reasonable accommodations for employees' pregnancy, childbirth, or related medical conditions, including accommodations for lactation. Before an employee returns from leave, the Organization will seek to discuss with the employee whether the employee needs a reasonable accommodation to express breast milk at work. Employees who are nursing may have additional rights under New York Labor Law.

**Use of Lactation Room**:

The lactation room: is clean; is free from intrusion and shielded from view of others; contains at least one electrical outlet, a surface to place a pump and other personal items, and a chair; is near running water (i.e., for washing hands and/or cleaning breast pump parts); and can be locked from the inside. A refrigerator is available for employees to store breast milk.

When more than one employee needs to use the designated lactation room, the Organization will discuss various options with all employees who use the lactation room to determine what arrangement addresses each employee's needs such that each employee has access to the lactation room amenities. Any accommodation will ensure each employee is afforded a reasonable amount of time to pump.  For further information on this process, please contact Human Resources.

**Reasonable Time to Express Breast Milk**:

The Organization will provide a reasonable amount of time for an employee to express breast milk and will not unreasonably limit the amount of time or the frequency that an employee expresses breast milk.  The Organization will speak with the employee to determine a schedule of breaks that reasonably accommodates the pumping needs of the employee.  Subject to applicable law, an employee who uses their break time to express breast milk will be compensated to the same extent and in the same way that other employees are compensated for break time.

The Organization does not require the employee to work while pumping.  However, if the employee works while pumping, the employee must record the working time and will be paid at their regular rate for that time.

**Lactation Accommodation Request Process**:

Before an employee returns from parental leave, the Organization will resend this policy to the employee in writing (electronically or by mail) and request information from the employee regarding the need for a reasonable accommodation to express breast milk at work.

Employees may also independently request a lactation accommodation by contacting Human Resources. The request may be made orally or in writing and should indicate that the employee will need accommodations for expressing breast milk at work.

Human Resources will respond to a request for a lactation accommodation as quickly as possible. Under no circumstances will this amount of time exceed five (5) business days.  During the time it takes to respond to a request and/or engage in a cooperative dialogue to determine the accommodation, the Organization will provide a temporary accommodation to the employee so that the employee can pump in a manner that meets the employee's immediate needs, unless that poses an undue hardship for the Organization.

The Organization recognizes that employees' lactation accommodation needs may change over time. Employees may request changes to their existing lactation accommodation at any point.

**Undue Hardship**:

If the Organization believes that the lactation accommodation requested poses an undue hardship on it, the Organization will discuss reasonable alternatives with the employee to accommodate the employee's needs, initiating a cooperative dialogue as quickly as possible, but absolutely no later than five (5) business days from the date of the request.  The conversation between the Organization and the employee will be in good faith, may occur orally or in writing, and will conclude with a final written determination of the accommodation granted or denied. This process gives the employee an opportunity to have an open discussion about their needs, and the

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

Organization has an opportunity to hear its employee and work with them to come up with an appropriate accommodation for the employee.

During the time it takes to respond to a request and/or engage in a cooperative dialogue to determine the accommodation the Organization will provide a temporary accommodation to the employee so that the employee can pump in a manner that meets the employee's immediate needs unless doing so poses an undue hardship for the Organization.

**Discrimination and Harassment Prohibited**:  The Organization will not tolerate discrimination or harassment against any employee based on the request for or usage of lactation accommodations. Any discrimination, harassment, or other violations of this policy can be reported to Human Resources.

| TENNESSEE |
|---|

## Unpaid Family Medical Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

All eligible Organization employees in Tennessee are entitled to take up to four (4) weeks of unpaid Family Medical Leave ("FML") for adoption, pregnancy, childbirth or nursing an infant.

**Employee Eligibility**:  In order to be eligible for FML, an employee must have worked full-time for the Organization for a minimum of twelve (12) consecutive months prior to the first day on which FML is taken.

**Notice**: Absent an unforeseeable emergency, eligible employees should give the Organization at least three (3) months' notice of the intended date upon which FML will commence.

Employees who give at least three (3) months' advance notice to their employer of their anticipated date of departure for such leave, their length of leave, and their intention to return to full-time employment after leave, shall be restored to their previous or similar positions with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of their leave.

Employees who are prevented from giving three (3) months' advance notice because of a medical emergency that necessitates that leave begin earlier than originally anticipated shall not forfeit their rights and benefits under this section solely because of their failure to give three (3) months' advance notice.

Employees who are prevented from giving three (3) months' advance notice because the notice of adoption was received less than three (3) months in advance shall not forfeit their rights and benefits under this section solely because of their failure to give three (3) months' advance notice.

Taking FML shall not affect an employee's right to receive vacation time, sick leave, bonuses, advancement, seniority, length of service credit, benefits, plans or programs for which the employees were eligible at the date of their leave.

**UTAH**

## Voting Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

All employees are encouraged to fulfill their civic responsibilities by participating in elections. Employees who perform work in Utah and are registered to vote may request up to two (2) hours of paid time off to vote if the employee does not have three (3) or more off-duty hour during which the polls are open.  Employees should request time off to vote from their supervisor at least two (2) working days prior to the day of the election.  Such time will be scheduled at the Organization's sole discretion.

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

| VERMONT |
| --- |

## Paid Sick Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

**Eligible Employees**: Employees who primarily perform work in Vermont and have been working for the requisite amount of hours under the law.  Note certain temporary/seasonal employees are exempt from paid sick leave.

**Amount of Leave**:  Eligible employees are entitled to forty (40) hours of Paid Safe and Sick Leave ("PSSL") at the beginning of each calendar year.  Employees who begin work after the first day of the calendar year are entitled to a pro-rated amount of PSSL.

**Use of PSSL**:  New employees may not use PSSL until they have been employed for one (1) year. PSSL must be used in minimum initial increments of one (1) hour.  PSSL may only be used in connection with hours that an employee is scheduled to work.  Using PSSL will not count as hours worked for the purpose of determining whether an employee has met or exceeded any applicable overtime thresholds.

PSSL may be used for the following purposes:

- The injury or illness of the employee;
- For the employee to obtain professional diagnostic, preventive, routine or therapeutic health care;
- For the employee to care for a sick or injured parent, grandparent, spouse, child, brother, sister, parent-in-law, grandchild or foster child, including helping that family member obtain diagnostic, preventive, routine or therapeutic health care;
- To accompany the employee's parent, grandparent, spouse or parent-in-law to an appointment related to his or her long-term care;
- For the employee to arrange for social or legal services, or to obtain medical care or counseling for the employee or for the employee's family member who is a victim of domestic violence, sexual assault or stalking; and
- For the employee to care for a child or other family member because the school or business where that individual normally is during the employee's workday is closed for public health or safety reasons.

**Notice and Medical Certification**.

*Foreseeable PSSL*: If the need to use PSSL is foreseeable, then the employee must provide the Organization with reasonable notice of the need to use such PSSL, by calling and sending an email to his or her supervisor.

*Unforeseeable PSSL*:  Where the need to use PSSL is unforeseeable, the employee need only provide verbal notice, either by phone or email, as soon as practicable to his or her supervisor.  If the employee cannot reach his or her supervisor, the employee must leave a voicemail.

If an employee uses PSSL on more than three (3) consecutive days, the employee may be required to submit medical certification substantiating the need for such leave and, upon the conclusion of the leave, confirming that the employee is well enough to return to work.

Failure or delay in providing the required notice or documentation may result in a denial of the request or a delay in the approval of the request.

**Other Leave**:  To the extent permitted by law, all PSSL time must be used concurrently with any other available leave, including, by way of example, leave under the Vermont Parental and Family Leave Act.

**Unused PSSL**:  At the end of each calendar year, employees may not carry over into the subsequent calendar year any remaining unused PSSL time.   Under no circumstance will employees be compensated for accrued but unused PSSL, either at the end of the calendar year, the end of employment, or at any other time.

**Abuse or Misuse of PSSL**:  Abuse or misuse of PSSL will not be tolerated by the Organization and may result in discipline, up to and including termination of employment.  Examples of abuse or misuse of PSSL may include (i) use of unscheduled sick time on or adjacent to weekends, regularly scheduled days off, holidays, vacation, or paydays, (ii) taking scheduled sick time on days when requests for other types of leave have already been denied, (iii) misrepresentation of the need for, or the reason why employees are taking, paid sick or safe leave; and/or (iv) failure to notify a supervisor in advance or submit the required documentation.

**Retaliation Prohibited**:  The Organization will not retaliate against an employee because the employee has exercised his or her right to use PSSL, has lodged a complaint about a violation of the law, or has cooperated in an investigation of a violation of the law.

## Paid Parental and Family Leave ("PFL")

*This policy is in addition to the policies outlined in the Employee Handbook.*

**Employee Eligibility**: Employees who work in Vermont are eligible for PFL if they have worked an average of thirty (30) hours per week and have been employed by the Organization for at least twelve (12) months.

**Reasons for Leave**: Eligible employees may take PFL for the following reasons:

(1) During an employee's pregnancy or for leave to bond with a newborn or newly-adopted child within the first twelve (12) months after the birth or adoption; or
(2) For an employee's own serious health condition or the serious health condition of a family member, as defined by the applicable law

**Leave Time**:  Eligible employees are entitled to twelve (12) weeks of unpaid PFL during any 12-month period.

**Requests for PFL**:  Employees must give reasonable written advance notice to their supervisors to request leave.  Employees may be required to provide a note from a health care provider stating that the employee or his or her family member is seriously ill, and how long the doctor expects the employee will be out of work.

**Interaction with Other Available Leave Benefits**: Employees must use PFL concurrently with other leave, unless prohibited by law.  Employees may be required to use PTO concurrently with PFL.

**Maintenance of Benefits and Reinstatement Rights**:

While on PFL, employees will continue to receive health insurance benefits under the same terms and conditions that existed prior to the leave.  Employees must continue to pay their portion of the insurance premium during the PFL.

Upon return from PFL, subject to some exceptions, employees will be restored to the position of employment held by the employee when the leave commenced, or to a comparable position with comparable employment benefits, pay, and other terms and conditions of employment.

PTO will not continue to accrue during PFL, unless otherwise required by law.

**Resignation/Termination**: Employees are not entitled to payment for unused PFL upon resignation or termination of employment, or under any other condition.

# Short-Term Family Leave ("STFL")

*This policy is in addition to the policies outlined in the Employee Handbook.*

**Employee Eligibility**: Employees who work in Vermont are eligible for STFL if they have worked an average of thirty (30) hours per week and have been employed by the Organization for at least twelve (12) months.

**Reasons for Leave**: Eligible employees may take STFL for the following reasons:

- • Participate in preschool or school activities directly related to a family member's academic advancement such as a parent/teacher conference;
- • Routine doctor or dentist visit;
- • Accompany a family member to routine medical or dental appointments;
- • Respond to a medical emergency involving a family member; or
- • Accompany a family member to appointments for professional services related to their care and well-being such as interviewing for admission to a nursing home.

**Leave Time**:  Eligible employees are entitled to four (4) hours of unpaid STFL during any thirty (30) days, but no more than 24 hours in any 12-month period.  Employees may be required to take at least two (2) hours of STFL at any one time.

**Requests for STFL**:  Employees must give notice as early as possible, but no later than seven (7) days before taking STFL.  An employee can give less than seven (7) days' notice only in an emergency.

**Interaction with Other Available Leave Benefits**:

If an employee is eligible for leave under the Family and Medical Leave Act ("FMLA"), and if the reason for STFL is also a qualifying basis for FMLA leave, then STFL taken in accordance with this policy will run concurrently with an employee's available leave entitlement under the FMLA.  Please consult the Organization's FMLA policy for additional details.

An employee's use of STFL will count separately from an employee's use of PFL.

In addition to FMLA benefits, employees may have available paid time off (i.e., sick leave, PTO, etc.).  Employees may, but are not required to, choose to supplement STFL benefit payments with any available paid time off in order to receive 100% of their salary during STFL.

**Maintenance of Benefits and Reinstatement Rights**:

While on STFL, employees will continue to receive health insurance benefits under the same terms and conditions that existed prior to the leave.  Employees must continue to pay their portion of the insurance premium during the STFL.

Upon return from STFL, subject to some exceptions, employees will be restored to the position of employment held by the employee when the leave commenced, or to a comparable position with comparable employment benefits, pay, and other terms and conditions of employment.

PTO will not continue to accrue during STFL, unless otherwise required by law.

**Resignation/Termination**:  Employees are not entitled to payment for unused STFL upon resignation or termination of employment, or under any other condition.

## Washington

## Paid Family and Medical Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

In order to be eligible for paid leave under this policy, an employee must have worked 820 hours for the Organization within Washington during the 12 months prior to the leave period.

Eligible employees in Washington are entitled to up to 12 weeks of paid family and medical leave for:

- Bonding after the birth or placement of a child;
- An employee's serious health condition;
- A serious health condition of a qualifying family member; or
- Certain military events, such as spending time with a qualifying family member who is on a temporary leave from active military duty.

Employees may be eligible for up to 16 weeks of paid family and medical leave in the event they give birth to a child or experience a personal medical event and family caregiving event in the same year. Employees may be eligible for up to 18 weeks of paid family and medical leave in the event they are recovering from a medical condition related to a complication from a pregnancy. Employees should direct all questions about eligibility for paid family and medical leave to Human Resources.

Paid family and medical leave benefits will provide a percentage of the employee's gross wages during the approved leave period.

Employees seeking to take paid family and medical leave must provide the relevant state authorities with paperwork that proves they experienced a leave qualifying event, such as the events noted above. The Organization will report employees' work hours on behalf of all employees. During the leave application process, employees will have the opportunity to review the Organization's hours reporting in order to object if they believe the hours are inaccurate.

If the need for paid family and medical leave is foreseeable, employees must provide 30 days' notice of their intention to take leave. If the need for paid family and medical leave leave is not foreseeable, employees must provide notice of their intention to take leave as soon as practicable.

## Paid Sick Leave
*This policy is in addition to the policies outlined in the Employee Handbook.*

Employees accrue paid sick leave beginning from the start of their employment at the Organization. This leave will accrue at the rate of one hour of paid sick leave for every 40 hours worked. Employees do not accrue paid sick leave for hours paid while not working, such as

Doc ID: 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8

vacation, paid holidays, or while using paid sick leave.  Paid sick leave must be used in at least one-hour increments and does not count towards overtime wage eligibility.

Employees may use this accrued paid sick leave after 90 days from their first date of employment and for the following reasons:

- For an employee to care for himself/herself or his/her family member due to a mental or physical illness, injury, health condition, the need for preventative care, or a medical diagnosis;
- When an employee or an employee's family member is the victim of sexual assault, domestic violence, or stalking; and
- In the event the Organization's place of business or an employee's child's school or place of care is closed by order of a public official for any health-related reason.

For purposes of this sick leave policy, a family member includes a biological or adopted/foster placed child or stepchild, a biological or adopted/foster placed parent or stepparent, a spouse or registered domestic partner, a grandparent, a grandchild, or a sibling.

In the event a need for paid sick leave is foreseeable, an employee must provide the Organization at least 30 days' notice.  In the event a need for paid sick leave is not foreseeable, an employee must provide the Organization with as much notice as practicable.  If an employee's need for paid sick leave will require the employee to be absent for more than three consecutive work days, the Organization may require written verification from the employee's physician regarding the need for paid sick leave.

The Organization's accrual year for paid sick leave is from January 1 to December 30.

Accrued unused paid sick leave balances will be carried over into subsequent years, but an employee will not be entitled to use more than 40 hours of paid sick leave in a single year. At the end of employment, unused paid sick leave balances become unpaid and forfeited.

Retaliation for using paid sick leave is strictly prohibited.  No employee will suffer an adverse employment action for using paid sick leave pursuant to this policy.

 **HELLOSIGN**

<div align="right">Audit Trail</div>

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 45ee24d04b05d24a3cfc2f78db90ebdf6bd920a8 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| ↱ **SENT** | **01 / 24 / 2020**<br>15:13:29 UTC | Sent for signature to Donna Wood (██████████@hotmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| 👁 **VIEWED** | **02 / 07 / 2020**<br>16:53:47 UTC | Viewed by Donna Wood (██████████@hotmail.com)<br>IP: 107.77.216.124 |
| ✍ **SIGNED** | **02 / 08 / 2020**<br>04:44:47 UTC | Signed by Donna Wood (██████████@hotmail.com)<br>IP: 107.77.216.124 |
| ✓ **COMPLETED** | **02 / 08 / 2020**<br>04:44:47 UTC | The document has been completed. |

# EXHIBIT 52

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _[signature]_ | Caelan Doherty |
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 31 / 2020 | North Chicago |
| Date | Office |

Doc ID: 3224db65b5f5ca61905649c131b192b3150a2287

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 3224db65b5f5ca61905649c131b192b3150a2287 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| SENT | **01 / 24 / 2020**<br>23:16:45 UTC | Sent for signature to Caelan Doherty (███████@luc.edu)<br>from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| VIEWED | **01 / 31 / 2020**<br>15:18:22 UTC | Viewed by Caelan Doherty (███████@luc.edu)<br>IP: 147.126.10.129 |
| SIGNED | **01 / 31 / 2020**<br>15:19:43 UTC | Signed by Caelan Doherty (███████@luc.edu)<br>IP: 147.126.10.129 |
| COMPLETED | **01 / 31 / 2020**<br>15:19:43 UTC | The document has been completed. |

Powered by **HELLOSIGN**

# EXHIBIT 53

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


*Bridget Logan*

Bridget Logan

Signature                                                    (Please Print Name)


02 / 04 / 2020                                        MN/Rochester

Date                                                          Office

Doc ID: e6ca060fd902f9989eb1a8d0388d33149d4c8c49

 **HELLOSIGN**

<div align="right">Audit Trail</div>

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | e6ca060fd902f9989eb1a8d0388d33149d4c8c49 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 21 / 2020**<br>14:32:23 UTC | Sent for signature to Bridget Logan (█████@gmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **02 / 04 / 2020**<br>14:10:07 UTC | Viewed by Bridget Logan (█████@gmail.com)<br>IP: 73.228.221.45 |
| **SIGNED** | **02 / 04 / 2020**<br>14:13:05 UTC | Signed by Bridget Logan (█████@gmail.com)<br>IP: 73.228.221.45 |
| **COMPLETED** | **02 / 04 / 2020**<br>14:13:05 UTC | The document has been completed. |

# EXHIBIT 54

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


_Zia Oram_                                     Zia Oram
_____               _____
Signature                                      (Please Print Name)


01 / 24 / 2020                                 Oakland County
_____               _____
Date                                           Office

Doc ID: a1ddc56b5f1968d5d5515d17ab6c3165d5fb79f8

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | a1ddc56b5f1968d5d5515d17ab6c3165d5fb79f8 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 21 / 2020**<br>14:02:36 UTC | Sent for signature to Zia Oram (█████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **01 / 24 / 2020**<br>15:27:24 UTC | Viewed by Zia Oram █████@gmail.com)<br>IP: 71.227.73.55 |
| **SIGNED** | **01 / 24 / 2020**<br>15:35:18 UTC | Signed by Zia Oram (█████@gmail.com)<br>IP: 71.227.73.55 |
| **COMPLETED** | **01 / 24 / 2020**<br>15:35:18 UTC | The document has been completed. |

# EXHIBIT 55

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Alan C Tobinson |
| Signature | (Please Print Name) |


| | |
|---|---|
| 01 / 31 / 2020 | Wisconsin |
| Date | Office |

Doc ID: a93ab4926b21f724cc3deb41488b6362151a740e

 **HELLOSIGN**

<div align="right">Audit Trail</div>

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | a93ab4926b21f724cc3deb41488b6362151a740e |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

**SENT**
**01 / 26 / 2020**
17:24:28 UTC

Sent for signature to Alan Robinson ████ @wisconsinnorml.org) from hellosign@greenhouse.io
IP: 52.20.168.64

**VIEWED**
**01 / 31 / 2020**
16:04:16 UTC

Viewed by Alan Robinson (████ @wisconsinnorml.org)
IP: 166.182.251.223

**SIGNED**
**01 / 31 / 2020**
16:06:25 UTC

Signed by Alan Robinson ████ @wisconsinnorml.org)
IP: 166.182.251.223

**COMPLETED**
**01 / 31 / 2020**
16:06:25 UTC

The document has been completed.

# EXHIBIT 56

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Alexandra Wheatley |
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 21 / 2020 | California |
| Date | Office |

Doc ID: 8ba5a01dafcba4aaf2c05fdece9fdba3a246230b

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 8ba5a01dafcba4aaf2c05fdece9fdba3a246230b |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 16 / 2020**<br>23:32:13 UTC | Sent for signature to Alexandra Wheatley (██████████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **01 / 21 / 2020**<br>15:55:02 UTC | Viewed by Alexandra Wheatley (██████████@gmail.com)<br>IP: 108.185.141.217 |
| **SIGNED** | **01 / 21 / 2020**<br>16:16:43 UTC | Signed by Alexandra Wheatley (██████████@gmail.com)<br>IP: 108.185.141.217 |
| **COMPLETED** | **01 / 21 / 2020**<br>16:16:43 UTC | The document has been completed. |

Powered by **HELLOSIGN**

# EXHIBIT 57

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

|  | Cheryl Baldwin |
|---|---|
| Signature | (Please Print Name) |

|  | Tallahassee |
|---|---|
| 02 / 19 / 2020 | |
| Date | Office |

 Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | ca9a95a37691f046902a7aa0ef75d52c002925a1 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 12 / 2020**<br>13:34:06 UTC | Sent for signature to Cheryl Baldwin<br>(███████████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **02 / 19 / 2020**<br>06:15:49 UTC | Viewed by Cheryl Baldwin (███████████@gmail.com)<br>IP: 99.203.69.42 |
| **SIGNED** | **02 / 19 / 2020**<br>06:22:12 UTC | Signed by Cheryl Baldwin (███████████@gmail.com)<br>IP: 99.203.69.42 |
| **COMPLETED** | **02 / 19 / 2020**<br>06:22:12 UTC | The document has been completed. |

# EXHIBIT 58

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

*Jonathan Barrio*
_____        Jonathan Barrio
Signature                                                       (Please Print Name)


01 / 21 / 2020
_____        Charlotte
Date                                                              Office

Doc ID: bc2e174ad704c4aa9ad5a0c3b756b2ac18d7bb54

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | bc2e174ad704c4aa9ad5a0c3b756b2ac18d7bb54 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 16 / 2020**<br>20:15:52 UTC | Sent for signature to Jonathan Barrio (████@gmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **01 / 21 / 2020**<br>17:49:43 UTC | Viewed by Jonathan Barrio (████@gmail.com)<br>IP: 69.132.83.110 |
| **SIGNED** | **01 / 21 / 2020**<br>17:50:06 UTC | Signed by Jonathan Barrio (████@gmail.com)<br>IP: 69.132.83.110 |
| **COMPLETED** | **01 / 21 / 2020**<br>17:50:06 UTC | The document has been completed. |

# EXHIBIT 59

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Desmond Batts |
| Signature | (Please Print Name) |


| | |
|---|---|
| 01 / 12 / 2020 | Tampa |
| Date | Office |

Doc ID: 167524a1a8cec1ece31e5a09ca24cb62ca0fc101



<div align="right">Audit Trail</div>

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 167524a1a8cec1ece31e5a09ca24cb62ca0fc101 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 11 / 2020** 16:07:23 UTC | Sent for signature to Desmond Batts (███████████@gmail.com) from hellosign@greenhouse.io IP: 52.20.64.141 |
| **VIEWED** | **01 / 12 / 2020** 16:10:27 UTC | Viewed by Desmond Batts (███████████@gmail.com) IP: 174.228.146.174 |
| **SIGNED** | **01 / 12 / 2020** 16:19:51 UTC | Signed by Desmond Batts (███████████@gmail.com) IP: 174.228.146.174 |
| **COMPLETED** | **01 / 12 / 2020** 16:19:51 UTC | The document has been completed. |

# EXHIBIT 60

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Garrett Beckenbaugh |
| Signature | (Please Print Name) |
| 01 / 28 / 2020 | Bloomberg |
| Date | Office |

Doc ID: 157fe00de551b5898142b581a8b66019f10c0cf3

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 157fe00de551b5898142b581a8b66019f10c0cf3 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 24 / 2020**<br>14:29:38 UTC | Sent for signature to Garrett Beckenbaugh (███████@mail.usf.edu) from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **01 / 28 / 2020**<br>15:20:05 UTC | Viewed by Garrett Beckenbaugh (███████@mail.usf.edu)<br>IP: 107.72.178.56 |
| **SIGNED** | **01 / 28 / 2020**<br>15:23:07 UTC | Signed by Garrett Beckenbaugh (███████@mail.usf.edu)<br>IP: 107.72.178.56 |
| **COMPLETED** | **01 / 28 / 2020**<br>15:23:07 UTC | The document has been completed. |

# EXHIBIT 61

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _Miles Ceplecha_ | Miles Ceplecha |
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 14 / 2020 | Minneapolis - St. Paul |
| Date | Office |

Doc ID: f71c957114341d62236217e70bc382d47e575405

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | f71c957114341d62236217e70bc382d47e575405 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 13 / 2020** 16:25:26 UTC | Sent for signature to Miles Ceplecha (██████@gmail.com) from hellosign@greenhouse.io IP: 52.20.168.64 |
| **VIEWED** | **01 / 14 / 2020** 15:24:11 UTC | Viewed by Miles Ceplecha (██████@gmail.com) IP: 107.4.220.174 |
| **SIGNED** | **01 / 14 / 2020** 15:25:00 UTC | Signed by Miles Ceplecha (██████@gmail.com) IP: 107.4.220.174 |
| **COMPLETED** | **01 / 14 / 2020** 15:25:00 UTC | The document has been completed. |

# EXHIBIT 62

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Robin Ceppos |
| Signature | (Please Print Name) |
| 01 / 31 / 2020 | Downton Los Angeles |
| Date | Office |

Doc ID: df96d0c574fe012d73c89dba6f1a349327f60793

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | df96d0c574fe012d73c89dba6f1a349327f60793 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| ⤴ SENT | **01 / 28 / 2020**<br>17:24:10 UTC | Sent for signature to Robin Ceppos ███████@me.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| 👁 VIEWED | **01 / 31 / 2020**<br>22:48:12 UTC | Viewed by Robin Ceppos ███████@me.com)<br>IP: 73.163.85.149 |
| ✓ SIGNED | **01 / 31 / 2020**<br>23:07:50 UTC | Signed by Robin Ceppos ███████@me.com)<br>IP: 73.163.85.149 |
| ✓ COMPLETED | **01 / 31 / 2020**<br>23:07:50 UTC | The document has been completed. |

# EXHIBIT 63

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Melinda Cirilo |
| Signature | (Please Print Name) |

| | |
|---|---|
| 02 / 11 / 2020 | San Antonio |
| Date | Office |

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | a75d16c6e2777dda3fd215e6a91a38920909901f |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 05 / 2020**<br>19:33:58 UTC | Sent for signature to Melinda Cirilo (███████@yahoo.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **02 / 11 / 2020**<br>15:22:06 UTC | Viewed by Melinda Cirilo (███████@yahoo.com)<br>IP: 12.237.169.162 |
| **SIGNED** | **02 / 11 / 2020**<br>15:23:09 UTC | Signed by Melinda Cirilo (███████@yahoo.com)<br>IP: 12.237.169.162 |
| **COMPLETED** | **02 / 11 / 2020**<br>15:23:09 UTC | The document has been completed. |

# EXHIBIT 64

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _Jane conrad_ | |
| Signature | (Please Print Name) |

| | |
|---|---|
| 02 / 18 / 2020 | Minnesota |
| Date | Office |

Doc ID: ba4d6e782959127fe16350095da75956a40a2bff

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | ba4d6e782959127fe16350095da75956a40a2bff |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 13 / 2020**<br>15:32:21 UTC | Sent for signature to Jane Conrad (███████@outlook.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **02 / 18 / 2020**<br>14:33:09 UTC | Viewed by Jane Conrad (███████@outlook.com)<br>IP: 107.77.225.185 |
| **SIGNED** | **02 / 18 / 2020**<br>14:35:17 UTC | Signed by Jane Conrad (███████@outlook.com)<br>IP: 107.77.225.185 |
| **COMPLETED** | **02 / 18 / 2020**<br>14:35:17 UTC | The document has been completed. |

# EXHIBIT 65

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Robert Cordova |
| Signature | (Please Print Name) |
| | |
| 01 / 28 / 2020 | Florida |
| Date | Office |

Doc ID: dc49a8120236b37319a5bc1dc087dee430f01e19

 HELLOSIGN

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | dc49a8120236b37319a5bc1dc087dee430f01e19 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**01 / 24 / 2020**
15:06:28 UTC

Sent for signature to Robert Cordova
(███████@gmail.com) from hellosign@greenhouse.io
IP: 52.70.216.197

**VIEWED**
**01 / 28 / 2020**
18:14:51 UTC

Viewed by Robert Cordova (███████@gmail.com)
IP: 174.228.146.41

**SIGNED**
**01 / 28 / 2020**
18:16:09 UTC

Signed by Robert Cordova (███████@gmail.com)
IP: 174.228.146.41

**COMPLETED**
**01 / 28 / 2020**
18:16:09 UTC

The document has been completed.

# EXHIBIT 66

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | Rachel Douglas |
|---|---|
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 22 / 2020 | Los Angeles |
| Date | Office |

Doc ID: f6dd245294ea02f3b41a4e0a132f432177a2d679

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | f6dd245294ea02f3b41a4e0a132f432177a2d679 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**01 / 16 / 2020**
22:25:28 UTC
Sent for signature to Rachel Douglas (██████@aol.com) from hellosign@greenhouse.io
IP: 52.20.168.64

**VIEWED**
**01 / 22 / 2020**
17:26:40 UTC
Viewed by Rachel Douglas (██████@aol.com)
IP: 99.203.11.136

**SIGNED**
**01 / 22 / 2020**
17:44:26 UTC
Signed by Rachel Douglas (██████@aol.com)
IP: 99.203.11.136

**COMPLETED**
**01 / 22 / 2020**
17:44:26 UTC
The document has been completed.

# EXHIBIT 67

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


_Theresa Edwards_                         Theresa Edwards
_____          _____
Signature                                 (Please Print Name)


02 / 21 / 2020                            .
_____          _____
Date                                      Office

Doc ID: 039d7e1d830eb7d1d0293563dab9c0e649a7b287

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 039d7e1d830eb7d1d0293563dab9c0e649a7b287 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

---

**This document was signed on onboarding.greenhouse.io**

---

## Document History

**SENT**
**02 / 15 / 2020**
17:19:15 UTC
Sent for signature to Theresa Edwards
(███████████@gmail.com) from hellosign@greenhouse.io
IP: 52.20.64.141

**VIEWED**
**02 / 22 / 2020**
04:43:23 UTC
Viewed by Theresa Edwards (███████████@gmail.com)
IP: 107.77.219.209

**SIGNED**
**02 / 22 / 2020**
04:45:41 UTC
Signed by Theresa Edwards (███████████@gmail.com)
IP: 107.77.219.209

**COMPLETED**
**02 / 22 / 2020**
04:45:41 UTC
The document has been completed.

# EXHIBIT 68

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Eliza Fink |
| Signature | (Please Print Name) |
| 02 / 22 / 2020 | Connecticut |
| Date | Office |

Doc ID: f0e81d34ea606db204ed8c20040617ef24d7719a

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200219-42-qm58rs.pdf |
| **DOCUMENT ID** | f0e81d34ea606db204ed8c20040617ef24d7719a |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 21 / 2020**<br>22:35:04 UTC | Sent for signature to Eliza Fink (████@gmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **02 / 22 / 2020**<br>20:07:12 UTC | Viewed by Eliza Fink (████@gmail.com)<br>IP: 67.84.42.44 |
| **SIGNED** | **02 / 22 / 2020**<br>20:08:07 UTC | Signed by Eliza Fink (████@gmail.com)<br>IP: 67.84.42.44 |
| **COMPLETED** | **02 / 22 / 2020**<br>20:08:07 UTC | The document has been completed. |

# EXHIBIT 69

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| | Jason finkelstein |
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 21 / 2020 | Aventura |
| Date | Office |

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | d48db6174b5dbc206f449969d6e6d9ad9af0c68e |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| ↱ SENT | **01 / 18 / 2020** 22:21:43 UTC | Sent for signature to Jason Finkelstein (███████@gmail.com) from hellosign@greenhouse.io IP: 52.20.168.64 |
| 👁 VIEWED | **01 / 21 / 2020** 15:24:00 UTC | Viewed by Jason Finkelstein (███████@gmail.com) IP: 107.72.178.153 |
| ✓ SIGNED | **01 / 21 / 2020** 15:30:57 UTC | Signed by Jason Finkelstein (███████@gmail.com) IP: 107.72.178.153 |
| ✓ COMPLETED | **01 / 21 / 2020** 15:30:57 UTC | The document has been completed. |

# EXHIBIT 70

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

_____          Ilse mendez fraga
Signature                                              (Please Print Name)


02 / 11 / 2020
_____          Laredo
Date                                                     Office

Doc ID: 9c2f4c5af505ab08450ab068a4fa4a5f03673a0e

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 9c2f4c5af505ab08450ab068a4fa4a5f03673a0e |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

|  |  |  |
|---|---|---|
| ↱ SENT | **02 / 05 / 2020** 03:36:14 UTC | Sent for signature to Ilse Mendez Fraga (██████@gmail.com) from hellosign@greenhouse.io IP: 52.70.216.197 |
| ◉ VIEWED | **02 / 11 / 2020** 14:32:06 UTC | Viewed by Ilse Mendez Fraga (██████@gmail.com) IP: 54.218.45.144 |
| ⟋ SIGNED | **02 / 11 / 2020** 14:34:19 UTC | Signed by Ilse Mendez Fraga (██████@gmail.com) IP: 54.218.45.144 |
| ⊘ COMPLETED | **02 / 11 / 2020** 14:34:19 UTC | The document has been completed. |

# EXHIBIT 71

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Joshua Fredrickson |
| Signature | (Please Print Name) |
| 01 / 21 / 2020 | Illinois |
| Date | Office |

Doc ID: 0d8ec69f78ef66ae908f6206ff9655da554132ff

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 0d8ec69f78ef66ae908f6206ff9655da554132ff |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**01 / 17 / 2020**
21:05:09 UTC

Sent for signature to Josh Fredrickson
█████████@gmail.com) from hellosign@greenhouse.io
IP: 52.20.168.64

**VIEWED**
**01 / 21 / 2020**
18:50:36 UTC

Viewed by Josh Fredrickson (█████████@gmail.com)
IP: 99.203.79.99

**SIGNED**
**01 / 21 / 2020**
18:51:49 UTC

Signed by Josh Fredrickson (█████████@gmail.com)
IP: 99.203.79.99

**COMPLETED**
**01 / 21 / 2020**
18:51:49 UTC

The document has been completed.

Powered by **HELLOSIGN**

# EXHIBIT 72

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Maria susana ruiz gonzalez |
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 28 / 2020 | MB 2020 Hollywood |
| Date | Office |

Doc ID: 22ece65ce4ff3454cfe06f1c2785f14b03e9a95e

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 22ece65ce4ff3454cfe06f1c2785f14b03e9a95e |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 24 / 2020**  17:01:54 UTC | Sent for signature to Maria Susan Gonzalez (██████@gmail.com) from hellosign@greenhouse.io  IP: 52.70.216.197 |
| **VIEWED** | **01 / 28 / 2020**  15:26:57 UTC | Viewed by Maria Susan Gonzalez ██████@gmail.com)  IP: 172.58.158.128 |
| **SIGNED** | **01 / 28 / 2020**  15:30:37 UTC | Signed by Maria Susan Gonzalez (██████@gmail.com)  IP: 172.58.158.128 |
| **COMPLETED** | **01 / 28 / 2020**  15:30:37 UTC | The document has been completed. |

# EXHIBIT 73

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Nathaniel Groh |
| Signature | (Please Print Name) |
| 01 / 31 / 2020 | Chicago |
| Date | Office |

Doc ID: 7375ffa7dfebea7f07cbb224c225a08dddaf8502

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 7375ffa7dfebea7f07cbb224c225a08dddaf8502 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 23 / 2020**<br>16:02:16 UTC | Sent for signature to Nathaniel Groh<br>(███████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.70.216.197 |
| **VIEWED** | **01 / 31 / 2020**<br>16:26:28 UTC | Viewed by Nathaniel Groh (███████@gmail.com)<br>IP: 75.149.88.134 |
| **SIGNED** | **01 / 31 / 2020**<br>17:01:49 UTC | Signed by Nathaniel Groh (███████@gmail.com)<br>IP: 75.149.88.134 |
| **COMPLETED** | **01 / 31 / 2020**<br>17:01:49 UTC | The document has been completed. |

# EXHIBIT 74

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


_____          Brandi Harris
Signature                                 (Please Print Name)


02 / 11 / 2020                            San Antonio
_____          _____
Date                                      Office

Doc ID: 2198d04b73d6ba2da87b6b517fc3f62766f410f0

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 2198d04b73d6ba2da87b6b517fc3f62766f410f0 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 05 / 2020**<br>21:07:15 UTC | Sent for signature to Brandi Harris<br>█████████ @gmail.com) from hellosign@greenhouse.io<br>IP: 52.70.216.197 |
| **VIEWED** | **02 / 11 / 2020**<br>15:23:53 UTC | Viewed by Brandi Harris (████████ @gmail.com)<br>IP: 98.196.179.214 |
| **SIGNED** | **02 / 11 / 2020**<br>15:29:44 UTC | Signed by Brandi Harris (████████ @gmail.com)<br>IP: 98.196.179.214 |
| **COMPLETED** | **02 / 11 / 2020**<br>15:29:44 UTC | The document has been completed. |

# EXHIBIT 75

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


*Peter Marrah Kamara*

Peter Marrah Kamara
_____      _____
Signature                                                    (Please Print Name)


01 / 14 / 2020                                              Minnesota
_____      _____
Date                                                          Office

Doc ID: 5b68ec18447cc6a7080dace6b9b74f8945c1ba7a

                                                        Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 5b68ec18447cc6a7080dace6b9b74f8945c1ba7a |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**01 / 14 / 2020**
13:50:16 UTC

Sent for signature to Peter Kamara (███████@gmail.com)
from hellosign@greenhouse.io
IP: 52.70.216.197

**VIEWED**
**01 / 14 / 2020**
15:21:51 UTC

Viewed by Peter Kamara (███████@gmail.com)
IP: 76.17.135.190

**SIGNED**
**01 / 14 / 2020**
15:27:12 UTC

Signed by Peter Kamara (███████@gmail.com)
IP: 76.17.135.190

**COMPLETED**
**01 / 14 / 2020**
15:27:12 UTC

The document has been completed.

# EXHIBIT 76

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

|  | Macklin Kennedy |
| --- | --- |
| Signature | (Please Print Name) |

| 01 / 28 / 2020 | Florida |
| --- | --- |
| Date | Office |

Doc ID: 0f3c747c956e78537aab40770e49064c8df7b273

                                                    Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 0f3c747c956e78537aab40770e49064c8df7b273 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 24 / 2020**<br>14:50:56 UTC | Sent for signature to Macklin Kennedy<br>(███████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **01 / 28 / 2020**<br>17:31:34 UTC | Viewed by Macklin Kennedy (███████@gmail.com)<br>IP: 107.77.216.191 |
| **SIGNED** | **01 / 28 / 2020**<br>23:59:45 UTC | Signed by Macklin Kennedy (███████@gmail.com)<br>IP: 70.171.40.80 |
| **COMPLETED** | **01 / 28 / 2020**<br>23:59:45 UTC | The document has been completed. |

# EXHIBIT 77

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


*Madison Oliver-Mays*

Madison Oliver Mays

Signature                                                    (Please Print Name)


02 / 09 / 2020

Tampa

Date                                                          Office

Doc ID: 4fc5137c568166015116b1d3683217dcdb690c4a

 **HELLOSIGN**

<div style="text-align:right">Audit Trail</div>

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 4fc5137c568166015116b1d3683217dcdb690c4a |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**02 / 02 / 2020**
21:51:21 UTC
Sent for signature to Madison Oliver-Mays
(███████@gmail.com) from hellosign@greenhouse.io
IP: 52.20.168.64

**VIEWED**
**02 / 09 / 2020**
19:03:32 UTC
Viewed by Madison Oliver-Mays (███████@gmail.com)
IP: 72.186.136.45

**SIGNED**
**02 / 09 / 2020**
19:04:54 UTC
Signed by Madison Oliver-Mays (███████@gmail.com)
IP: 72.186.136.45

**COMPLETED**
**02 / 09 / 2020**
19:04:54 UTC
The document has been completed.

# EXHIBIT 78

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


*Patrick McHugh*
_____          Patrick McHugh
Signature                                                     (Please Print Name)


01 / 21 / 2020                                               West Palm Beach
_____          _____
Date                                                            Office

Doc ID: 914c147bfa23804546a2215b3dd987bd32a076af

 **HELLOSIGN**

## Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 914c147bfa23804546a2215b3dd987bd32a076af |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 17 / 2020**<br>20:32:10 UTC | Sent for signature to Patrick McHugh<br>(██████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.70.216.197 |
| **VIEWED** | **01 / 21 / 2020**<br>17:58:42 UTC | Viewed by Patrick McHugh (██████@gmail.com)<br>IP: 71.41.52.196 |
| **SIGNED** | **01 / 21 / 2020**<br>19:19:24 UTC | Signed by Patrick McHugh (██████@gmail.com)<br>IP: 71.41.52.196 |
| **COMPLETED** | **01 / 21 / 2020**<br>19:19:24 UTC | The document has been completed. |

# EXHIBIT 79

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Paul Monterosso |
| Signature | (Please Print Name) |
| | |
| 01 / 28 / 2020 | Bloomberg 2020 |
| Date | Office |

Doc ID: 53dfb23427be5c16f4f824cee6c61c4b1fc65e0c

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 53dfb23427be5c16f4f824cee6c61c4b1fc65e0c |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

|  | | |
|---|---|---|
| **SENT** | **01 / 24 / 2020**<br>14:40:51 UTC | Sent for signature to Paul Monterosso (███████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.70.216.197 |
| **VIEWED** | **01 / 28 / 2020**<br>16:01:27 UTC | Viewed by Paul Monterosso (███████@gmail.com)<br>IP: 174.227.14.201 |
| **SIGNED** | **01 / 28 / 2020**<br>16:02:45 UTC | Signed by Paul Monterosso ███████@gmail.com)<br>IP: 174.227.14.201 |
| **COMPLETED** | **01 / 28 / 2020**<br>16:02:45 UTC | The document has been completed. |

# EXHIBIT 80

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

|  |  |
|---|---|
|  | Reymon Murphy |
| Signature | (Please Print Name) |

|  |  |
|---|---|
| 01 / 15 / 2020 | Tucson |
| Date | Office |

Doc ID: 82c752c43da0d312a0659c2d9c665d8d62c9a839

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 82c752c43da0d312a0659c2d9c665d8d62c9a839 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

|   |   |   |
|---|---|---|
| **SENT** | **01 / 15 / 2020**<br>14:05:17 UTC | Sent for signature to Reymon Murphy (█████@hotmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **01 / 15 / 2020**<br>14:54:18 UTC | Viewed by Reymon Murphy (█████@hotmail.com)<br>IP: 68.226.111.139 |
| **SIGNED** | **01 / 15 / 2020**<br>14:56:03 UTC | Signed by Reymon Murphy (█████@hotmail.com)<br>IP: 68.226.111.139 |
| **COMPLETED** | **01 / 15 / 2020**<br>14:56:03 UTC | The document has been completed. |

# EXHIBIT 81

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _Signature_ | Frida Naranjo |
| | (Please Print Name) |

| | |
|---|---|
| 02 / 11 / 2020 | Frida Naranjo |
| Date | Office |

Doc ID: 7caad8ce3117c9e61e6aacf8919f902869eec9a8

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 7caad8ce3117c9e61e6aacf8919f902869eec9a8 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| SENT | **02 / 05 / 2020**<br>03:35:05 UTC | Sent for signature to Frida Michelle Naranjo<br>(████████@me.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| VIEWED | **02 / 11 / 2020**<br>16:04:25 UTC | Viewed by Frida Michelle Naranjo (████████@me.com)<br>IP: 66.25.2.130 |
| SIGNED | **02 / 11 / 2020**<br>16:05:29 UTC | Signed by Frida Michelle Naranjo (████████@me.com)<br>IP: 66.25.2.130 |
| COMPLETED | **02 / 11 / 2020**<br>16:05:29 UTC | The document has been completed. |

# EXHIBIT 82

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

<br>

| | |
|---|---|
| _(signature)_ | Joseph r nestor |
| Signature | (Please Print Name) |

<br>

| | |
|---|---|
| 01 / 21 / 2020 | Florida |
| Date | Office |

Doc ID: b7b18d4989b05fb9254dc8358c6a73de606acb6c

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | b7b18d4989b05fb9254dc8358c6a73de606acb6c |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 17 / 2020**<br>20:54:36 UTC | Sent for signature to Joseph Nestor (█████@gmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **01 / 21 / 2020**<br>19:08:05 UTC | Viewed by Joseph Nestor (█████@gmail.com)<br>IP: 107.72.178.128 |
| **SIGNED** | **01 / 21 / 2020**<br>19:09:51 UTC | Signed by Joseph Nestor (█████@gmail.com)<br>IP: 107.72.178.128 |
| **COMPLETED** | **01 / 21 / 2020**<br>19:09:51 UTC | The document has been completed. |

# EXHIBIT 83

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


*Luke Nicholas*
_____          Luke Nicholas
Signature                                                      (Please Print Name)


01 / 31 / 2020
_____          Prince William
Date                                                            Office

Doc ID: 3421b5a6bafba00180d1722e21a50cc2fa59023e

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 3421b5a6bafba00180d1722e21a50cc2fa59023e |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 27 / 2020** 14:46:27 UTC | Sent for signature to Luke Nicholas ████████@gmail.com) from hellosign@greenhouse.io IP: 52.20.168.64 |
| **VIEWED** | **01 / 31 / 2020** 17:17:37 UTC | Viewed by Luke Nicholas ████████@gmail.com) IP: 72.221.0.99 |
| **SIGNED** | **02 / 01 / 2020** 02:21:19 UTC | Signed by Luke Nicholas ████████@gmail.com) IP: 73.12.43.35 |
| **COMPLETED** | **02 / 01 / 2020** 02:21:19 UTC | The document has been completed. |

# EXHIBIT 84

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | Josephine Olinger |
|---|---|
| Signature | (Please Print Name) |


| | San Marcos |
|---|---|
| 02 / 11 / 2020 | |
| Date | Office |

Doc ID: b6428cd8613acb2fb6d4efa3469f6cb67a0fb680

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | b6428cd8613acb2fb6d4efa3469f6cb67a0fb680 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 05 / 2020**<br>03:31:35 UTC | Sent for signature to Josephine Olinger<br>(███████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **02 / 11 / 2020**<br>15:50:51 UTC | Viewed by Josephine Olinger ███████@gmail.com)<br>IP: 172.58.109.209 |
| **SIGNED** | **02 / 11 / 2020**<br>15:53:23 UTC | Signed by Josephine Olinger ███████@gmail.com)<br>IP: 172.58.109.209 |
| **COMPLETED** | **02 / 11 / 2020**<br>15:53:23 UTC | The document has been completed. |

# EXHIBIT 85

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason.  I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| *(signature)* | Alec Silvester |
| Signature | (Please Print Name) |


| | |
|---|---|
| 01 / 28 / 2020 | Tallahassee |
| Date | Office |

Doc ID: a50eee39d7492595ff1964efa1bfeadf4d945617

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | a50eee39d7492595ff1964efa1bfeadf4d945617 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 24 / 2020** 14:50:27 UTC | Sent for signature to Alec Silvester (███████@gmail.com) from hellosign@greenhouse.io IP: 52.70.216.197 |
| **VIEWED** | **01 / 28 / 2020** 17:14:27 UTC | Viewed by Alec Silvester (███████@gmail.com) IP: 172.58.175.197 |
| **SIGNED** | **01 / 28 / 2020** 17:34:41 UTC | Signed by Alec Silvester (███████@gmail.com) IP: 172.58.175.197 |
| **COMPLETED** | **01 / 28 / 2020** 17:34:41 UTC | The document has been completed. |

# EXHIBIT 86

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Chris Soth |
| Signature | (Please Print Name) |


| | |
|---|---|
| 01 / 21 / 2020 | Minnesota |
| Date | Office |

Doc ID: a66a6ccdea6b4b8f851021d66547e0947c73647e

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | a66a6ccdea6b4b8f851021d66547e0947c73647e |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 16 / 2020**<br>21:36:20 UTC | Sent for signature to Chris Soth (███@aol.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **01 / 21 / 2020**<br>14:16:25 UTC | Viewed by Chris Soth (███@aol.com)<br>IP: 68.198.203.14 |
| **SIGNED** | **01 / 21 / 2020**<br>17:20:14 UTC | Signed by Chris Soth (███@aol.com)<br>IP: 205.215.175.108 |
| **COMPLETED** | **01 / 21 / 2020**<br>17:20:14 UTC | The document has been completed. |

# EXHIBIT 87

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Audra N. Tellez |
| Signature | (Please Print Name) |

| | |
|---|---|
| 01 / 28 / 2020 | El Paso TX |
| Date | Office |

Doc ID: 27c4f29800d9998a5b95c7e7abdca0c4caa1e041

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 27c4f29800d9998a5b95c7e7abdca0c4caa1e041 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 21 / 2020** 14:19:45 UTC | Sent for signature to Audra Tellez (████████@gmail.com) from hellosign@greenhouse.io IP: 52.70.216.197 |
| **VIEWED** | **01 / 28 / 2020** 16:51:20 UTC | Viewed by Audra Tellez (████████@gmail.com) IP: 70.120.231.124 |
| **SIGNED** | **01 / 28 / 2020** 16:57:53 UTC | Signed by Audra Tellez ████████@gmail.com) IP: 70.120.231.124 |
| **COMPLETED** | **01 / 28 / 2020** 16:57:53 UTC | The document has been completed. |

# EXHIBIT 88

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

|  |  |
|---|---|
| *[signature]* | Carlos Torres |
| Signature | (Please Print Name) |

|  |  |
|---|---|
| 01 / 28 / 2020 | Tampa |
| Date | Office |

Doc ID: d96ffa4c7a9c61ad0e61750b2f08dad9064a44ec

 **HELLOSIGN**

# Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | d96ffa4c7a9c61ad0e61750b2f08dad9064a44ec |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

| | | |
|---|---|---|
| SENT | **01 / 24 / 2020**<br>14:01:39 UTC | Sent for signature to Carlos Torres (███████@gmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| VIEWED | **01 / 28 / 2020**<br>15:50:02 UTC | Viewed by Carlos Torres (███████@gmail.com)<br>IP: 172.58.11.35 |
| SIGNED | **01 / 28 / 2020**<br>16:39:46 UTC | Signed by Carlos Torres (███████@gmail.com)<br>IP: 172.58.11.89 |
| COMPLETED | **01 / 28 / 2020**<br>16:39:46 UTC | The document has been completed. |

# EXHIBIT 89

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

|  | Eliot S. Tricotti |
|---|---|
| Signature | (Please Print Name) |

| 02 / 11 / 2020 | Laredo |
|---|---|
| Date | Office |

Doc ID: 4b640a6ca5c1b5e04aea9c585847525464be3290

 HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 4b640a6ca5c1b5e04aea9c585847525464be3290 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was signed on onboarding.greenhouse.io

## Document History

**SENT**
**02 / 04 / 2020**
15:16:48 UTC

Sent for signature to Eliot Tricotti-Mookarjee
(⬛⬛⬛@eliottricotti.com) from hellosign@greenhouse.io
IP: 52.70.216.197

**VIEWED**
**02 / 11 / 2020**
17:11:38 UTC

Viewed by Eliot Tricotti-Mookarjee
(⬛⬛⬛@eliottricotti.com)
IP: 70.113.163.130

**SIGNED**
**02 / 11 / 2020**
17:14:17 UTC

Signed by Eliot Tricotti-Mookarjee
(⬛⬛⬛@eliottricotti.com)
IP: 70.113.163.130

**COMPLETED**
**02 / 11 / 2020**
17:14:17 UTC

The document has been completed.

# EXHIBIT 90

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| *Gloria Tyler (signature)* | Gloria Tyler |
| Signature | (Please Print Name) |


| | |
|---|---|
| 02 / 11 / 2020 | San Antonio |
| Date | Office |


Employee Handbook – December 2019

- 30 -

Doc ID: 81c2ce4d719cd8910aeaf64d40807d0d675a5012

 **HELLOSIGN**

## Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 81c2ce4d719cd8910aeaf64d40807d0d675a5012 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 06 / 2020**<br>17:53:39 UTC | Sent for signature to Gloria Tyler (████████@gmail.com)<br>from hellosign@greenhouse.io<br>IP: 52.70.216.197 |
| **VIEWED** | **02 / 11 / 2020**<br>17:25:56 UTC | Viewed by Gloria Tyler (████████@gmail.com)<br>IP: 174.246.192.21 |
| **SIGNED** | **02 / 11 / 2020**<br>17:29:18 UTC | Signed by Gloria Tyler (████████@gmail.com)<br>IP: 174.246.192.21 |
| **COMPLETED** | **02 / 11 / 2020**<br>17:29:18 UTC | The document has been completed. |

Powered by **HELLOSIGN**

# EXHIBIT 91

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


| | |
|---|---|
| _(signature)_ | Lakisha Watson-Moore |
| Signature | (Please Print Name) |


| | |
|---|---|
| 02 / 04 / 2020 | Michigan |
| Date | Office |

Doc ID: 4ea0a7c4d527aa698c5b6ca5f1fffedc2f23aa10

  Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 4ea0a7c4d527aa698c5b6ca5f1fffedc2f23aa10 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **01 / 30 / 2020**<br>15:36:51 UTC | Sent for signature to Lakisha Watson-Moore ▮▮▮▮▮@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **02 / 04 / 2020**<br>16:25:37 UTC | Viewed by Lakisha Watson-Moore ▮▮▮▮▮@gmail.com)<br>IP: 107.77.234.116 |
| **SIGNED** | **02 / 04 / 2020**<br>16:31:30 UTC | Signed by Lakisha Watson-Moore ▮▮▮▮▮@gmail.com)<br>IP: 107.77.234.116 |
| **COMPLETED** | **02 / 04 / 2020**<br>16:31:30 UTC | The document has been completed. |

# EXHIBIT 92

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


_(signature)_            Jesse Weinberg

Signature            (Please Print Name)


02 / 11 / 2020            Illinois

Date            Office

Doc ID: b1d75d525a281c6aab3d657ad2ef3fbc1b5a3ca1

                                                    Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | b1d75d525a281c6aab3d657ad2ef3fbc1b5a3ca1 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**01 / 31 / 2020**
14:01:01 UTC

Sent for signature to Jesse Weinberg
████████████ @gmail.com) from hellosign@greenhouse.io
IP: 52.20.64.141

**VIEWED**
**02 / 11 / 2020**
16:19:11 UTC

Viewed by Jesse Weinberg (████████████ @gmail.com)
IP: 174.221.4.232

**SIGNED**
**02 / 11 / 2020**
16:21:06 UTC

Signed by Jesse Weinberg ████████████ @gmail.com)
IP: 174.221.4.232

**COMPLETED**
**02 / 11 / 2020**
16:21:06 UTC

The document has been completed.

# EXHIBIT 93

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.


_Clem Wright_ | Clem Wright
--- | ---
Signature | (Please Print Name)


02 / 18 / 2020 | Detroit
--- | ---
Date | Office

Doc ID: ea263f974bc66510d5a34576a6489fd61fd3e28b

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | ea263f974bc66510d5a34576a6489fd61fd3e28b |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

**SENT**
**02 / 14 / 2020**
03:31:26 UTC

Sent for signature to Clem Wright (██████@gmail.com)
from hellosign@greenhouse.io
IP: 52.20.168.64

**VIEWED**
**02 / 18 / 2020**
15:22:51 UTC

Viewed by Clem Wright (██████@gmail.com)
IP: 163.116.135.113

**SIGNED**
**02 / 18 / 2020**
15:23:38 UTC

Signed by Clem Wright (██████@gmail.com)
IP: 163.116.135.113

**COMPLETED**
**02 / 18 / 2020**
15:23:38 UTC

The document has been completed.

# EXHIBIT 94

## EMPLOYEE ACKNOWLEDGEMENT FORM

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _(signature)_ | Anoosh Yaraghchian |
| Signature | (Please Print Name) |

| | |
|---|---|
| 02 / 18 / 2020 | Los Angeles |
| Date | Office |

Doc ID: 4833b59fe2f29163c8dd160182c8768ef9888eed

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 4833b59fe2f29163c8dd160182c8768ef9888eed |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 14 / 2020**<br>21:21:52 UTC | Sent for signature to Anoosh Yaraghchian<br>(█████████ @gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.64.141 |
| **VIEWED** | **02 / 18 / 2020**<br>16:07:54 UTC | Viewed by Anoosh Yaraghchian (█████████ @gmail.com)<br>IP: 72.203.100.49 |
| **SIGNED** | **02 / 18 / 2020**<br>16:09:11 UTC | Signed by Anoosh Yaraghchian █████████ @gmail.com)<br>IP: 72.203.100.49 |
| **COMPLETED** | **02 / 18 / 2020**<br>16:09:11 UTC | The document has been completed. |

# EXHIBIT 95

**EMPLOYEE ACKNOWLEDGEMENT FORM**

I acknowledge that I have received a copy of the Mike Bloomberg 2020, Inc. (the "Organization") Employee Handbook, the Harassment Complaint Form attached to the Employee Handbook as Addendum A, and the Multi-State Addenda attached to the Employee Handbook as Addendum B (collectively, the "Employee Handbook"). I also acknowledge that the terms of this Employee Handbook may be supplemented by the Organization from time to time and may be superseded by any applicable laws or by the terms of my contract of employment (if any) and/or offer letter. I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. I understand that the Organization reserves the right to alter, amend or terminate, in whole or in part, any of the policies described in this Employee Handbook, or to modify or deviate from them, at any time without notice, and in Organization's sole discretion, as permitted by applicable law. I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at- will employment relationship at any time, for any reason. I acknowledge that failure to comply with these policies and standards may be cause for disciplinary action, up to and including termination of employment.

| | |
|---|---|
| _Jesus Zamora_ | |

| | |
|---|---|
| Signature | (Please Print Name) |

02 / 11 / 2020                     Houston,Tx

| | |
|---|---|
| Date | Office |

Doc ID: 0aa93234ed446afaf66de0f2bb6ac4a1f091c7a4

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | E-signature Request |
| **FILE NAME** | esig_tmpl_upload20200109-47-110npqb.pdf |
| **DOCUMENT ID** | 0aa93234ed446afaf66de0f2bb6ac4a1f091c7a4 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

**This document was signed on onboarding.greenhouse.io**

## Document History

|  |  |  |
|---|---|---|
| **SENT** | **02 / 06 / 2020**<br>18:04:55 UTC | Sent for signature to Jesus Zamora (███████@gmail.com) from hellosign@greenhouse.io<br>IP: 52.20.168.64 |
| **VIEWED** | **02 / 11 / 2020**<br>15:30:16 UTC | Viewed by Jesus Zamora (███████@gmail.com)<br>IP: 107.77.219.8 |
| **SIGNED** | **02 / 11 / 2020**<br>15:57:30 UTC | Signed by Jesus Zamora (███████@gmail.com)<br>IP: 107.77.219.8 |
| **COMPLETED** | **02 / 11 / 2020**<br>15:57:30 UTC | The document has been completed. |

Powered by **HELLOSIGN**