**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA WOOD, CAELAN DOHERTY, MAX GOLDSTEIN, BRIDGET LOGAN, JAMES KYLE NEWMAN, ZIA ORAM, ALAN ROBINSON, ALEXANDRA MARIE WHEATLEY-DIAZ, individually and on behalf all others similarly situated, and CHERYL BALDWIN, JONATHAN BARRIO, DESMOND BATTS, GARRETT BECKENBAUGH, COCHIESE BOWERS, MILES CEPLECHA, ROBIN CEPPOS, MELINDA CIRILO, JANE CONRAD, ROBERT CORDOVA, JR., CHRISTINE DOCZY, RACHEL DOUGLAS, THERESA EDWARDS, ELIZA FINK, JASON FINKELSTEIN, ILSE MENDEZ FRAGA, JOSH FREDRICKSON, MARIA GONZALEZ, NATHANIEL ROBERT GROH, BRANDI HARRIS, PETER KAMARA, MACK KENNEDY, MADISON OLIVER MAYS, PATRICK MCHUGH, FRIDA MICHELLE NARANJO, PAUL MONTEROSSO, REY MURPHY, JOSEPH NESTOR, LUKE NICHOLAS, JOSEPHINE OLINGER, ALEC SILVESTER, DANIEL SMITH, CHRIS SOTH, AUDRA TELLEZ, CARLOS TORRES, ELLIOTT TRICOTTI, GLORIA TYLER, LAKISHA WATSON-MOORE, JESSE WEINBERG, CLEM WRIGHT, ANOOSH YARAGHCHIAN, and JESUS ZAMORA, individually, | No. 20 Civ. 2489 (LTS) (GWG) |
| Plaintiffs, | |
| v. | |
| MIKE BLOOMBERG 2020, INC., | |
| Defendants. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**CONDITIONAL CERTIFICATION OF A COLLECTIVE AND**
**COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.    The Campaign Concedes that Plaintiffs and FOs are Similarly Situated ........................... 1

II.   The Court Should Reject the Campaign's Premature Attempt to Create Factual
Disputes and Raise Merits Arguments at this Stage ........................................................ 3

III.  The Court Should Disregard the Campaign's Other Merits Arguments............................ 7

IV.  As Plaintiffs Will Argue in Their Opposition to Defendant's Forthcoming Motion to
Dismiss, the Bloomberg Campaign Is a Covered Entity Under the FLSA...................... 10

       A.     The Campaign Satisfies the FLSA's Enterprise Requirements ............................ 10

       B.     The Campaign Is Not Exempt From the FLSA's Overtime Requirements .......... 12

       C.     Political Organizations Are Not Exempt from the FLSA's Coverage as a
Matter of Law ...................................................................................................... 14

       D.     Plaintiffs and Other FOs Are Individually Covered Under the FLSA ................. 17

CONCLUSION................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agonath v. Interstate Home Loans Ctr., Inc.*,
  No. 17 Civ. 5267, 2019 WL 1060627 (E.D.N.Y. Mar. 6, 2019) ...............................................9

*Archie v. Grand Cent. P'ship, Inc.*,
  997 F. Supp. 504 (S.D.N.Y. 1998) .......................................................................................10

*Balderas v. Barmadon Mgmt. LLC*,
  No. 17 Civ. 7489, 2019 WL 1258921 (S.D.N.Y. Mar. 19, 2019) .........................................10

*Barry v. S.E.B. Serv. of N.Y., Inc.*,
  No. 11 Civ. 5089, 2013 WL 6150718 (E.D.N.Y. Nov. 22, 2013) ...........................................5

*Bittencourt v. Ferrara Bakery & Café, Inc.*,
  310 F.R.D. 106 (S.D.N.Y. 2015) ..........................................................................................9

*Boekemeier v. Fourth Universalist Soc'y in the City of N.Y.*,
  86 F. Supp. 2d 280 (S.D.N.Y. 2000)......................................................................................17

*Bowrin v. Catholic Guardian Soc'y*,
  417 F. Supp. 2d 449 (S.D.N.Y. 2006)....................................................................................17

*Brennan-Centrella v. Ritz-Craft Corp. of Pa.*,
  942 F.3d 106 (2d Cir. 2019)...................................................................................................14

*City of Chicago v. Envtl. Def. Fund*,
  511 U.S. 328 (1994)..........................................................................................................15, 16

*Colozzi v. St. Joseph's Hospital Health Center*,
  595 F. Supp. 2d 200 (N.D.N.Y. 2009) ................................................................................8, 9

*Curry v. High Springs Family Practice & Diagnosis Ctr., Inc.*,
  No. 08 Civ. 8, 2009 WL 3163221 (N.D. Fla. Sept. 30, 2009) ...............................................17

*Davis v. Patel*,
  No. 14 Civ. 764, 2016 WL 4160967 (M.D. Tenn. Aug. 5, 2016) ..........................................17

*Divins v. Hazeltine Elecs. Corp.*,
  163 F.2d 100 (2d Cir. 1947)...................................................................................................17

*Foster v. Gold & Silver Private Club, Inc.*,
  No. 14 Civ. 698, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015) ..............................................18

*Franze v. Bimbo Foods Bakeries Distribution, LLC*,
　　No. 17 Civ. 3556, 2019 WL 1417125 (S.D.N.Y. Mar. 29, 2019) ............................................4

*Guillen v. Marshalls of MA, Inc.*,
　　750 F. Supp. 2d 469 (S.D.N.Y. 2010)......................................................................................3

*Hines v. State Room, Inc.*,
　　665 F.3d 235 (1st Cir. 2011)....................................................................................................6

*Hoffmann v. Sbarro, Inc.*,
　　982 F. Supp. 249 (S.D.N.Y. 1997) ..........................................................................................2

*Jacobs v. N.Y. Foundling Hosp.*,
　　577 F.3d 93 (2d Cir. 2009)......................................................................................................12

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
　　985 F. Supp. 2d 439 (S.D.N.Y. Dec. 3, 2013) .........................................................................4

*Jia Hu Qian v. Siew Foong Hui*,
　　No. 11 Civ. 5584, 2012 WL 1948820 (S.D.N.Y. May 30, 2012).............................................8

*Johnson v. Trump for President, Inc.*,
　　No. 19 Civ. 475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) ............................................13

*Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*,
　　885 F. Supp. 1169 (S.D. Ind. 1995) .......................................................................................13

*Jones v. SCO Family of Servs.*,
　　No. 15 Civ. 8733, 2016 WL 7188152 (S.D.N.Y. Dec. 2, 2016)..............................................17

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
　　393 F. Supp. 2d 1282 (M.D. Fla. 2005)..............................................................................13, 17

*Locke v. St. Augustine's Episcopal Church*,
　　690 F. Supp. 2d 77 (E.D.N.Y. 2010) ..............................................................................11, 17

*Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*,
　　955 F. Supp. 2d 50 (D.D.C. 2013)..........................................................................................13

*Marshall v. Chala Enters., Inc.*,
　　645 F.2d 799 (9th Cir. 1981) .................................................................................................16

*Marzuq v. Cadete Enters., Inc.*,
　　807 F.3d 431 (1st Cir. 2015)..................................................................................................16

*Mayo v. Jean Nicole Hair Salons, Inc.*,
　　No. 15 Civ. 115, 2015 WL 4751202 (M.D. Fla. Aug. 11, 2015)............................................17

*Mendoza v. Ashiya Sushi 5, Inc.*,
   No. 12 Civ. 8629, 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013) ............................................5

*Meo v. Lane Bryant, Inc.*,
   18 Civ. 6360, 2019 WL 5157024 (E.D.N.Y. Sept. 30, 2019) .............................................7, 9

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000) ...........................................................................................6

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ......................................................................................................7

*Nikolaeva v. Home Attendant Servs. of Hyde Park*,
   No. 15 Civ. 6977, 2018 WL 6984837 (E.D.N.Y. Nov. 16, 2018) ...........................................13

*O'Conner v. Agilant Solutions, Inc.*,
   419 F. Supp. 3d 739 (S.D.N.Y. 2019) .......................................................................................5

*Owusu v. Corona Tire Shop, Inc.*,
   No. 09 Civ. 3744, 2013 WL 1680861 (E.D.N.Y. Apr. 17, 2013) ...........................................17

*Pichardo v. Carmine's Broadway Feast Inc.*,
   No. 15 Civ. 3312, 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016) ............................................8

*Reagor v. Okmulgee Cty. Fam. Res. Ctr.*,
   501 F. App'x 805 (10th Cir. 2012) .....................................................................................13, 17

*Ruggles v. WellPoint, Inc.*,
   591 F. Supp. 2d 150 (N.D.N.Y. 2008) .......................................................................................9

*Salustio v. 106 Columbia Deli Corp.*,
   264 F. Supp. 3d 540 (S.D.N.Y. 2017) .....................................................................................10

*Scarpinato v. E. Hampton Point Mgmt. Corp.*,
   No. 12 Civ. 3681, 2013 WL 5202656 (E.D.N.Y. Sept. 13, 2013) ............................................6

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d Cir. 2020) ........................................................................................1, 3, 7, 14

*SEC v. Straub*,
   921 F. Supp. 2d 244 (S.D.N.Y. 2013) .....................................................................................18

*SEC v. Straub*,
   No. 11 Civ. 9645, 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016) ..........................................18

*Shajan v. Barolo, Ltd.*,
   No. 10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ...............................................7

*Smith v. Dasyua Enters. LLC,*
No. 17 Civ. 17895, 2020 WL 210277 (E.D. La. Jan. 14, 2020) ........................................8, 17

*Sobczak v. AWL Indus., Inc.,*
540 F. Supp. 2d 354 (E.D.N.Y. 2007) ....................................................................................9

*Stocker v. Marjakaj,*
No. 14 Civ. 13386, 2015 WL 13861151 (E.D. Mich. 2015) ..................................................17

*Tony & Susan Alamo Found. v. Sec'y of Labor,*
471 U.S. 290 (1985)...............................................................................................12, 13, 14

*Torralba v. Little India Stores,*
No. 14 Civ. 595, 2016 WL 771192 (S.D.N.Y. Feb. 29, 2016) ...............................8, 14, 17, 18

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,*
484 U.S. 365 (1988)..............................................................................................................15

*United States v. Hornaday,*
392 F.3d 1306 (11th Cir. 2004) ............................................................................................18

*United States v. Vonn,*
535 U.S. 55 (2002)................................................................................................................14

*Varghese v. JP Morgan Chase & Co.,*
No 14 Civ. 1718, 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) ..........................................4, 5

*Velez v. Vassallo,*
203 F. Supp. 2d 312 (S.D.N.Y. 2002)....................................................................................8

*Walston v. Edward J. Young, Inc.,*
No. 15 Civ. 457, 2016 WL 3906522 (E.D.N.Y. Feb. 22, 2016)..............................................6

*Winfield v. Citibank, N.A.,*
843 F. Supp. 3d 397 (S.D.N.Y. 2012).....................................................................................5

*Young v. Cooper Cameron Corp.,*
229 F.R.D. 50 (S.D.N.Y. 2005) .............................................................................................9

*Zeledon v. Dimi Gyro LLC,*
No. 15 Civ. 7301, 2016 WL 6561404 (S.D.N.Y. Oct. 13, 2016) ...........................................9

**Statutes**

26 C.F.R. § 1-527-3 ...............................................................................................................15

29 C.F.R. § 541.200(a)...........................................................................................................4

29 C.F.R. § 779.103 ...............................................................................................................18

29 C.F.R. § 779.214 ........................................................................................................12, 14, 15

29 C.F.R. §§ 779.265-.269........................................................................................................11

26 U.S.C. § 527 ........................................................................................................................15, 16

29 U.S.C. § 203 ........................................................................................................................10, 14

**Other Authorities**

*Here's How Presidential Candidates Sell Your Personal Information*, CNN
 Money (July 7, 2016), https://money.cnn.com/2016/07/07/news/presidential-
 candidate-sell-donor-data/index.html ....................................................................................19

S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960) .................................................................14, 15

## INTRODUCTION

Plaintiffs have met their minimal burden for conditional certification.  The Campaign's own opposition brief admits that Plaintiffs and other Field Organizers ("FOs") nationwide had the same primary job duties, were uniformly classified as exempt, and were not paid overtime wages for all hours worked beyond 40 each work week.  These admissions, along with Plaintiffs' ample evidence — including the declarations from 23 FOs from 15 states and common job postings, *see* ECF Nos. 65-1 through 65-25 — demonstrate that Plaintiffs and other FOs are similarly-situated, and notice should be issued to the proposed Collective of FOs.

Further, the Court should reject the Campaign's merits-based arguments regarding whether the Campaign and FOs are covered under the Fair Labor Standards Act ("FLSA"), as such arguments are not appropriate at this early stage of the litigation.  Regardless of timing, the Campaign's arguments also fail because the Campaign is a covered employer under the FLSA, and Plaintiffs and FOs are also covered employees.

## ARGUMENT

### I.      The Campaign Concedes that Plaintiffs and FOs are Similarly Situated.

Employees are similarly situated when they "share one or more issues of law or fact that are material to the disposition of their FLSA claims."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  The Campaign admits that all FOs nationwide shared the same primary duties and do not dispute that they were uniformly classified as exempt — two issues of law and fact material to the disposition of their claims in this action.  On this basis alone, Plaintiffs' motion should be granted.

The Campaign admits repeatedly in its brief and in three supporting declarations that all FOs had the same primary duties.  *See* Def. Mike Bloomberg 2020, Inc.'s Mem. of Law in Opp. to Pls.' Mot. for Conditional Cert. ("Opp.") (ECF No. 94) at 3, 16, 23.  The declarants state that

"FOs' primary job duties were to engage local voters, recruit and manage volunteers, and perform 'get out the vote' activities."[1]   All FOs across the country were "responsible for recruiting and engaging new volunteers, and discussing policy issues with voters and volunteers."[2]   All FOs attended the same two campaign-wide calls per week,[3] and used the same campaign-issued equipment, which was purchased centrally,[4] and each state had the same organizational structure.[5]   The Campaign dedicates more than a half-page of its brief explaining the uniform primary duties of FOs nationwide.[6]   The consistency in the Campaign's own evidence shows that this case is suitable for collective adjudication.   *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261-64 (S.D.N.Y. 1997) (defendant's repeated admissions that it applied uniform policies to plaintiffs supported order granting conditional certification).

Notably, the primary job duties conceded by the Campaign are the same primary job duties pled in the complaint and identified by the 23 FOs who worked in 15 states and filed declarations in support of Plaintiffs' motion.[7]   The Second Amended Complaint ("SAC") alleges that "Plaintiffs' and other FOs' primary duties included calling prospective voters to promote

---

[1]      Decl. of Daniel Kanninen ("Kanninen Decl.") (ECF No. 96) ¶ 6; Decl. of James Mitchell ("Mitchell Decl.") (ECF No. 98) ¶ 5; Decl. of Scott Kosanovich ("Kosanovich Decl.") (ECF No. 97) ¶ 5.

[2]      Mitchell Decl. (ECF No. 98) ¶ 20; Kosanovich Decl. (ECF No. 97) ¶ 22; Kanninen Decl. (ECF No. 96) ¶ 19.

[3]      Mitchell Decl. (ECF No. 98) ¶ 8; Kosanovich Decl. (ECF No. 97) ¶ 10; Kanninen Decl. (ECF No. 96) ¶ 9.

[4]      Mitchell Decl. (ECF No. 98) ¶ 13; Kosanovich Decl. (ECF No. 97) ¶ 15; Kanninen Decl. (ECF No. 96) ¶ 14.

[5]      Kanninen Decl. (ECF No. 96) ¶¶ 5-6; Mitchell Decl. (ECF No. 98) ¶ 5; Kosanovich ¶ 5; Opp. (ECF No. 94) at 16.

[6]      Opp. (ECF No. 94) at 16; *see also id.* at 3 (suggesting that FOs' job duties nationwide were to call voters, knock on doors, and organize events).

[7]      *See* Mem. of Law in Supp. Pls.' Mot. for Conditional Cert. ("Pls.' Br.") (ECF No. 64) at 6-7.

Mr. Bloomberg's candidacy for president, door-to-door canvassing, and recruiting volunteers."[8] Accordingly, the parties agree that FOs are similarly situated. Further, the Campaign does not dispute that FOs were uniformly classified as exempt or that they performed non-exempt duties.[9] *See* Opp. (ECF No. 94) at 23, 24. While the Campaign cites this Court's decision in *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010), for the proposition that Plaintiffs' showing "must be based on some substance," *see* Opp. (ECF No. 94) at 19-20, here Plaintiffs' *and* the Campaign's submissions clearly demonstrate that Plaintiffs and FOs nationwide are similarly situated with respect to their FLSA claims and job duties.[10]

## II. The Court Should Reject the Campaign's Premature Attempt to Create Factual Disputes and Raise Merits Arguments at this Stage.

The Campaign's only attempt to show that job duties varied between FOs is its claim that certain unidentified FOs had primary duties that included "organiz[ing] campaign events" to varying degrees.[11] This argument fails for three reasons.

First, assuming for the sake of argument that FOs engaged in event planning to varying degrees, minor dissimilarities in job duties do not defeat a finding that the employees are similarly situated. *Scott*, 954 F.3d at 516 (holding that if employees "share legal or factual similarities material to the disposition of their claims, 'dissimilarities in other respects should not

---

[8]     SAC (ECF No. 86) ¶ 59; *see also* Pls.' Br. (ECF No. 64) at 6-7, 6 n.12; Decl. of Donna Wood ("Wood Decl.") (ECF No. 65-1) ¶¶ 9-10 (primary duties were phone banking, voter canvassing, and recruiting volunteers).

[9]     The Campaign concedes that FOs' telephone and in-person outreach duties—which Plaintiffs contend are their primary duties—are non-exempt. Opp. (ECF No. 94) at 23 (describing "calling voters on the telephone and knocking on doors" as non-exempt).

[10]     In *Guillen*, this Court determined that a nationwide collective could not be certified because the plaintiffs' evidence was specific only to New York City retail stores and there was no common evidence of employees nationwide performing non-exempt duties. Here, Plaintiffs submit declarations from 15 different states, and the Campaign admits that all FOs perform the same duties, including the non-exempt duties stated in Plaintiffs' Complaint and testimony.

[11]     Opp. (ECF No. 94) at 24.

defeat collective treatment'" (citation omitted)).  The Campaign's exemption defense will turn on FOs' "*primary*" job duties.  29 C.F.R. § 541.200(a) (administrative exemption).  The Campaign does not argue that planning events is the primary duty of any FO.  *See* Opp. (ECF No. 94) at 3-4, 23.  Through declarations, job postings, and the SAC, Plaintiffs have shown that FOs had the same primary job duties and were uniformly classified as exempt, which is sufficient to support a finding that they are similarly situated.  *See Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 17 Civ. 3556, 2019 WL 1417125, at *2 (S.D.N.Y. Mar. 29, 2019) (plaintiffs established that collective members had "similar job requirements").

Second, whether FOs planned and organized campaign events highlights a common factual dispute, which is not appropriate for resolution at this stage.  *Varghese v. JP Morgan Chase & Co.*, No 14 Civ. 1718, 2016 WL 4718413, at *6, 8 (S.D.N.Y. Sept. 9, 2016) (in assistant manager misclassification case, certifying collective despite employer declaration that some assistant managers were hourly and eligible for overtime); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 449 (S.D.N.Y. Dec. 3, 2013) (stating that defendants "largely ignor[ed] the applicable case law" by submitting their own evidence and resolving factual disputes "is not a task that the Court should undertake" at conditional certification).  Specifically, Mitchell and Kosanovich, the State Directors in North Carolina and Florida, respectively, testify generally that FOs in their states planned campaign events.[12]  However, the testimony of four FOs who worked under Mitchell and Kosanovich rebut their claims, as do the declarations of 19 other FOs nationwide and the Campaign's own job postings, stating duties that do not include planning events.[13]  Instead of addressing this testimony, the Campaign asks the Court to assume

---

[12]     Kosanovich Decl. (ECF No. 97) ¶¶ 19-20; Mitchell Decl. (ECF No. 98) ¶¶ 17-18.
[13]     Decl. of McKevin King (ECF No. 65-5) ¶¶ 2, 9-10, 12 (worked out of the Tampa, Florida office and does not testify that he planned events); Decl. of Justin Odhiambo (ECF No. 65-12)

that FOs who did not submit declarations did plan events and, accordingly, to conclude they are dissimilar from FOs who submitted declarations.

This is not a reasonable inference and even if it was, it only highlights a factual dispute that can only be resolved after discovery. Moreover, it is not a permissible inference in this context because courts draw inferences in favor of plaintiffs on early conditional certification motions like this one. *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013). Finally, the Campaign "may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." *Varghese*, 2016 WL 4718413, at *7 (internal citation omitted); *see also Winfield v. Citibank, N.A.*, 843 F. Supp. 3d 397, 407 n.6 (S.D.N.Y. 2012) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process.").

Third, to the extent the Campaign claims that planning and organizing events *is* part of the primary job duties of the FO position, it reinforces Plaintiffs' argument that FOs are similarly situated and provides a fact issue that is perfectly suited for collective adjudication — after discovery. While the Campaign argues that the exemption analysis requires "individualized analysis," *see* Opp. (ECF No. 94) at 22-23, courts regularly reject such arguments at this stage. *See, e.g.*, *O'Conner v. Agilant Solutions, Inc.*, 419 F. Supp. 3d 739, 739 (S.D.N.Y. 2019) (rejecting argument "that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable" as courts "put these issues off until the decertification stage, when discovery is complete" (quoting *Barry v. S.E.B. Serv. of N.Y., Inc.*, No. 11 Civ. 5089, 2013 WL 6150718, at *6

---

¶¶ 2, 9-11, 13 (same); Wood Decl. (ECF No. 65-1) ¶¶ 2, 9-10, 12 (worked out of the Miami, Florida office and does not testify that she planned events); Decl. of James Kyle Newman (ECF No. 65-4) ¶¶ 2, 9, 10 (worked out of the Winston-Salem, North Carolina office, and same).

(E.D.N.Y. Nov. 22, 2013)).[14]

The Campaign also argues that event planning is an exempt duty.  Opp. Br. at 23.  This contention is a merits issue inappropriate for consideration at this stage.  *Walston v. Edward J. Young, Inc.*, No. 15 Civ. 457, 2016 WL 3906522, at *6 (E.D.N.Y. Feb. 22, 2016) ("Ultimately, the issue of whether or not one or more exemptions to the FLSA apply in this case present[s] factual matters that are inappropriate to decide in the context of a motion for conditional collective action certification.").  Plaintiffs note, however, that the summary judgment decisions the Campaign cites on this point are factually inapposite and only show that event planning *can* be an exempt duty where it is an employee's primary job duty.  *See Scarpinato v. E. Hampton Point Mgmt. Corp.*, No. 12 Civ. 3681, 2013 WL 5202656, at *12-13 (E.D.N.Y. Sept. 13, 2013) (at summary judgment, plaintiff determined to be exempt after testifying that her primary duty was "booking events," she received substantial commission for each event, she "coordinat[ed] the customers' menu, music, entertainment, number of attendees and other selections," and further negotiated and executed contracts, disbursed funds, and hired and fired employees); *Hines v. State Room, Inc.*, 665 F.3d 235, 245 (1st Cir. 2011) (holding that plaintiffs were exempt because they had authority and discretion to "create a truly custom event for each client" that was "personalized to individual tastes and budgets," and required them to exercise "creative freedom" as well as "invention, imagination, and talent" (citation omitted)).

*       *       *

---

[14]     Cases cited by the Campaign on this point do not support its argument.  For example, in *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000), the court determined that the plaintiffs and proposed collective were not similarly situated because they worked in numerous different job titles and departments and the plaintiffs had "made no showing that the job responsibilities of the named plaintiffs are the same or similar to those of the remaining members of the proposed class."  *Id.* at 497-98.  Here, in stark contrast, Plaintiffs and the proposed Collective all share the same job title and identical job duties.

The Campaign's own evidence shows that FOs had the same primary duties and were uniformly classified as exempt. "Nothing more is needed at this stage of the litigation. Weighing of the merits is absolutely inappropriate." *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (citation omitted). Accordingly, the Court should conditionally certify the FLSA Collective and authorize notice.

## III.   The Court Should Disregard the Campaign's Other Merits Arguments.

Having no grounds to dispute that FOs are similarly situated with respect to their job duties (and having admitted as much), the Campaign turns to another merits-based inquiry, arguing that, to be allowed to send notice of the lawsuit, Plaintiffs must "establish that they are within the legal scope of the FLSA." Opp. (ECF No. 94) at 5. This is wrong.

As Plaintiffs explain above, courts should not decide the merits of a dispute at the notice stage. Accordingly, in order to show that Plaintiffs and other FOs were "victims of a common policy or plan that violated the law," *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010), for conditional certification, Plaintiffs need not *prove* that the policy or plan violated the law, as the Campaign contends is necessary. Plaintiffs need not win their case in order to send notice. Even at the second, more stringent decertification stage, they must only show that they and other FOs were "alike with regard to some material aspect of their litigation," *Scott*, 954 F.3d at 516, which they have done here with respect to their job duties. To require plaintiffs to prove or "establish" an FLSA violation at the notice stage would undermine the two-step approach to collective certification and contravene entirely the principle that courts should not wade into the merits at the notice stage of an FLSA action. *See Meo v. Lane Bryant, Inc.*, 18 Civ. 6360, 2019 WL 5157024, at *1 (E.D.N.Y. Sept. 30, 2019) (granting conditional certification, and noting that "Plaintiff is not required to 'prove' an actual FLSA violation at this juncture"). The Campaign's

suggestion that it will prove the legality of its policies further supports conditional certification. *See Pichardo v. Carmine's Broadway Feast Inc.*, No. 15 Civ. 3312, 2016 WL 5338551, at *4 (S.D.N.Y. Sept. 23, 2016) (granting Rule 23 certification under stricter analysis and noting that "[t]o the extent Defendants argue that they will prove . . . that no illegal policy existed for any Plaintiff, their ability to proffer such evidence only reinforces the . . . conclusion that the class's claims may be resolved by generalized proof").  Indeed, the Campaign fails to cite a single FLSA case where a court has denied conditional certification based on its view of the merits of plaintiffs' claims at the notice stage.

In fact, the weight of authority holds that the specific merits argument that the Campaign advances here — the FLSA coverage issue — is premature.  "[W]hether defendants qualify as an 'enterprise engaged in commerce' is an issue that 'goes to the merits of Plaintiff['s] claims.'" *Torralba v. Little India Stores*, No. 14 Civ. 595, 2016 WL 771192, at *3 (S.D.N.Y. Feb. 29, 2016) (Gorenstein, M.J.) (quoting *Jia Hu Qian v. Siew Foong Hui*, No. 11 Civ. 5584, 2012 WL 1948820, at *2 (S.D.N.Y. May 30, 2012)); *see also Velez v. Vassallo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002) (denying motion to dismiss for lack of subject matter jurisdiction based on lack of FLSA coverage because FLSA coverage is a merits issue, not a jurisdictional issue); *Smith v. Dasyua Enters. LLC*, No. 17 Civ. 17895, 2020 WL 210277, at *4 (E.D. La. Jan. 14, 2020) (declining to consider argument that plaintiffs were not individually covered by the FLSA at notice stage).

In support of its contention that Plaintiffs must prove or "establish" that a violation of the FLSA has occurred, the Campaign cites *Colozzi v. St. Joseph's Hospital Health Center*, 595 F. Supp. 2d 200 (N.D.N.Y. 2009).  *See* Opp. at 4.  *Colozzi* clearly states, however, that courts are not permitted to "weigh the merits" at this stage.  595 F. Supp. 2d at 205.  In fact, directly

following the Campaign's cherry-picked phrase that the "similarly situated analysis 'centers upon the features which make the particular policy or practice unlawful,'" *see* Opp. at 4, the *Colozzi* court cites *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 158-59 (N.D.N.Y. 2008), a case that squarely rejects the notion that the similarly situated inquiry should include any premature merits scrutiny. *Id.* at 158 ("To adopt this stricter standard . . . would invariably defeat the very nature of the two-tier approach and the statutory intent to facilitate a broad remedial purpose, to expedite disposition of the action because of the relatively short statute of limitations, and to promote efficient case management.").  The Court should reject the Campaign's attempt to impose new requirements on Plaintiffs' low standard of proof.

The overwhelming precedent in this Circuit rejects the Campaign's position that Plaintiffs must somehow "prove" the unlawfulness of the Campaign's policies at the early conditional certification stage. *See, e.g.*, *Meo*, 2019 WL 5157024, at *8 ("Defendant's merit-based arguments at this pre-certification stage are premature."); *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17 Civ. 5267, 2019 WL 1060627, at *3 (E.D.N.Y. Mar. 6, 2019) ("To be entitled to conditional certification, a movant is not required to prove an actual FLSA violation, 'but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs.'" (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007))); *Zeledon v. Dimi Gyro LLC*, No. 15 Civ. 7301, 2016 WL 6561404, at *6 (S.D.N.Y. Oct. 13, 2016) (same); *Bittencourt v. Ferrara Bakery & Café, Inc.*, 310 F.R.D. 106, 114 (S.D.N.Y. 2015) ("[T]he focus of this inquiry [] is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005))).

IV.    **As Plaintiffs Will Argue in Their Opposition to Defendant's Forthcoming Motion to Dismiss, the Bloomberg Campaign Is a Covered Entity Under the FLSA.**

Although the Court should not reach this issue because, as explained above, merits issues are not relevant to the conditional certification determination, Plaintiffs preview the reasons why the FLSA applies to the Campaign.

A.    **The Campaign Satisfies the FLSA's Enterprise Requirements.**

Under the FLSA's straightforward analysis, Plaintiffs have pled sufficient facts to establish that the Campaign is a covered enterprise under the FLSA because it engaged in the sale of goods in competition with other sellers and had a gross volume of sales exceeding $500,000.  29 U.S.C. §§ 203(s)(1)(A)(i), (ii); *see also* SAC (ECF No. 86) ¶¶ 180-210.  As this Court has previously stated, "[e]nterprise coverage . . . applies when an employer (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]"  *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 551 (S.D.N.Y. 2017) (Gorenstein, M.J.) (quoting 29 U.S.C. § 203(s)(1)(A)).  Plaintiffs have alleged sufficient facts to establish both prongs.  SAC (ECF No. 86) ¶¶ 180-210.  Additionally, courts have stated that where the $500,000 sales threshold is satisfied, "the plaintiff is 'virtually' guaranteed to satisfy the first prong."  *Balderas v. Barmadon Mgmt. LLC*, No. 17 Civ. 7489, 2019 WL 1258921, at *3 (S.D.N.Y. Mar. 19, 2019) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 528 (S.D.N.Y. 1998)).

Here, the Campaign admits or does not dispute all facts relevant to this analysis:

- The Campaign admits that it sold merchandise online.  Opp. (ECF No. 94) at 3.

- The Campaign admits that it received revenue only from two sources—the sale of

- 10 -

merchandise and from the candidate personally—meaning the approximately $890,000 reported in its public filings were entirely the result of its online sales. *Id.* at 3, 10.

- The Campaign admits that its online sale of products was integral to its general operations because it intended that such sales would "communicate messages concerning Michael Bloomberg's candidacy . . . and energize his supporters." *Id.* at 11 n.6.

- The Campaign does not dispute that it was in competition with other commercial sellers of similar products. *Id.* at 11.

- The Campaign admits that it did not operate with any charitable, religious, or educational purpose. *Id.* at 8.

There is therefore no dispute that the Campaign meets the basic requirements for enterprise coverage. Accordingly, the Campaign is a covered entity under the FLSA.

The only argument advanced by the Campaign on these basic elements is whether its $890,000 in product sales should count towards the FLSA's $500,000 threshold. *Id.* at 9-10. The Campaign wrongly argues that because the FEC requires that sales of merchandise be reported publicly as contributions then these proceeds are not included in the $500,000 calculation. The Campaign cites no authority for this point.[15] The DOL regulations expressly provide for how to calculate an entity's gross dollar volume of sales. *See* 29 C.F.R. §§ 779.265-.269. These regulations do not allow the Campaign to subtract merchandise sales from the gross dollar calculation merely because for FEC reporting purposes those sales are publicly reported as contributions. *See id.*

---

[15] The Campaign cites only to irrelevant cases regarding whether charitable donations to religious institutions count toward the $500,000 threshold. In Opinion Letter FLSA2008-8, the DOL stated that they do not, though it notes that the FLSA and supporting regulations are silent on this question. In *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77 (E.D.N.Y. 2010), the court stated that the donations to the defendant, a church, would not count toward the threshold, but such religious donations could count toward the threshold if used in "furthering commercial activities." *Id.* at 89.

### B.     The Campaign Is Not Exempt From the FLSA's Overtime Requirements.

The Court should reject the Campaign's novel argument that it is exempt from FLSA

coverage simply because it is a tax-exempt organization.  Congress's 1961 amendment to the

FLSA, which added enterprise coverage, was intended to "substantially broaden[] the scope of

the Act to include any employee of an enterprise engaged in interstate commerce."  *See Tony &*

*Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985); *see also Jacobs v. N.Y.*

*Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009).  After the 1961 amendment, there are only

three specific types of entities that are presumed to lack the business purpose necessary for

establishing FLSA coverage: charitable, religious, or educational organizations.  *See* 29 C.F.R.

§ 779.214.  Notably, even these types of organizations are covered by the FLSA if they are

engaged in commercial activities.  *See Id.*; *see also Tony & Susan Alamo Found.*, 471 U.S. at

296 ("The statute contains no express or implied exception for commercial activities conduct by

religious or other nonprofit organizations[.]").  The Campaign admits that it did not operate with

any charitable, religious, or educational purpose.  *See* Opp. at 8.  No provision of the FLSA or its

supporting regulations provide an exemption for political organizations.  This is where the

inquiry should end.

Even if, contrary to the Campaign's admission, the Campaign's activities were analogous

to those of charitable, religious, or educational entities, the FLSA applies.  Where an entity,

regardless of tax status, "engage[s] in ordinary commercial activities" or "serve[s] general public

in competition with ordinary commercial enterprises," it operates with a "business purpose" and

is a covered enterprise under the FLSA.  *See Tony & Susan Alamo Found.*, 471 U.S. at 297-99

(citing 29 C.F.R. § 779.214); *see also Jacobs*, 577 F.3d at 97.

Here, the Campaign sold nearly $1 million of merchandise in the online marketplace in competition with other sellers.  While the Campaign asserts generally that it has a political mission and did not earn a profit on its sales, these facts are not relevant.  The Supreme Court has made clear that even nonprofit entities with a "religious character" are covered where they have engaged in commercial activities.  *Tony & Susan Alamo Found.*, 471 U.S. at 306.  No statute or judicial opinion suggests that making a profit is a prerequisite to FLSA coverage.  Other cases cited by the Campaign do not support its arguments.  For example, in *Johnson v. Trump for President, Inc.*, No. 19 Civ. 475, 2019 WL 2492122 (M.D. Fla. June 14, 2019), the court determined that the plaintiff's complaint lacked sufficient allegations regarding enterprise, as they had been made only in opposition to a motion to dismiss.[16]  Notably, none of these cases even consider the question of conditional certification, never mind deny authorization of notice on this issue.

Accordingly, even if the Court were to determine that political campaigns were similar to charitable, religious, or educational organizations, it should still find that the FLSA applies.

---

[16]   Similarly, none of the Campaign's remaining cases involve allegations that the defendants sold nearly $1 million in merchandise in direct competition with other private businesses.  *See, e.g.*, *Reagor v. Okmulgee Cty. Fam. Res. Ctr.*, 501 F. App'x 805, 809 (10th Cir. 2012) (affirming dismissal where plaintiffs had not alleged defendant was engaged in business in competition with others); *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15 Civ. 6977, 2018 WL 6984837, at *3 (E.D.N.Y. Nov. 16, 2018) (in decision setting aside default judgment, court found only that lack of enterprise coverage is a possible merits defense); *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 56-57 (D.D.C. 2013) (dismissing without prejudice where plaintiff did not allege competition with other enterprises and there was "not even a bare allegation" regarding the $500,000 threshold); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 (M.D. Fla. 2005) (at summary judgment, court found that plaintiffs had not presented sufficient facts regarding enterprise coverage on the question of competition); *Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995) (following bench trial, court found that plaintiffs had not introduced evidence regarding question of competition).  Here, Plaintiffs have already plead facts directly on this issue.  *See* SAC (ECF No. 86) ¶¶ 180-210.

### C.    Political Organizations Are Not Exempt from the FLSA's Coverage as a Matter of Law.

The Campaign asks the Court to make a sweeping, first-of-its-kind ruling that all political organizations are exempt from FLSA coverage because they are tax-exempt, regardless of whether they engage in commercial activity in competition with other businesses as defined by the Act.  *See* Opp. at 2.  The Court should reject this argument.  Such a broad exemption from the FLSA does not exist, whether for political organizations or any other tax-exempt entity.  "The statute contains no express or implied exception for commercial activities conduct by . . . nonprofit organizations[.]"  *Tony & Susan Alamo Found.*, 471 U.S. at 296.

In any event, the merits issue that the Campaign raises, while not appropriate to answer at this early stage of the case, has the same answer for Plaintiffs and all other members of the potential collective.  This further supports Plaintiffs' conditional certification motion.  *Scott*, 954 F.3d at 516; *Torralba*, 2016 WL 771192, at *3.

Should the Court consider the Campaign's contention, however, it should look to familiar interpretative canons to conclude that Congress did not intend to wholly exempt political campaigns from the FLSA's coverage.  For example, under the *expressio unius est exclusio alterius* canon, courts regularly analyze whether "expressing one item of [an] associated group or series excludes another left unmentioned."  *United States v. Vonn*, 535 U.S. 55, 65 (2002); *Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019).  Here, Congress and the DOL carefully considered and stated which types of entities would not be covered by the FLSA and did not expressly exempt political organizations.  *See* 29 U.S.C. § 203(r); 29 C.F.R. § 779.214.  The legislative history highlighted by the Campaign also provides that Congress only intended that "eleemosynary, religious, or educational organizations not operated for profit" should be considered to lack a business purpose.  *See* Senate Committee Report of 1961, S. Rep.

No. 1744, 86th Cong., 2d Sess., 28 (1960).  The DOL issued regulations codifying Congress's intent, and under the law only "eleemosynary, religious, or educational organizations" are *presumed* to lack a business purpose (unless they engage in commercial activity).  29 C.F.R. § 779.214.  Because Congress and the DOL listed other types of entities that are either exempt or presumed to lack a business purpose, and did not include political organizations, the Court should conclude that these organizations were not intended to be exempt.

The Court should also reject the Campaign's assertions that various other provisions of tax law and FEC reporting requirements establish that it is exempt from the FLSA. Unsurprisingly, the Campaign could not identify a single case that has determined that tax laws or FEC reporting requirements provide a blanket exemption to FLSA coverage for any entity. The Campaign incorrectly argues that because Congress determined that political campaigns should not be subject to *income tax*, then they cannot be engaged in commercial activity for the purposes of FLSA coverage.  *See* Opp. (ECF No. 94) at 8, 10 (citing 26 U.S.C. § 527 and 26 C.F.R. § 1-527-3).  No court decisions support this argument.  Moreover, the DOL's regulations and Supreme Court caselaw are clear that tax-exempt organizations *are* covered by the FLSA where they are engaged in commercial activity in competition with other sellers, as the Campaign was.  Therefore, despite the Campaign's argument to the contrary, the mere fact that it is a tax-exempt organization does not render its sales of merchandise non-commercial.

The Campaign's references to other statutes further emphasize that Congress did not intend to exempt political organizations from the FLSA's coverage.  "Statutory construction . . . is a holistic endeavor."  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).  To consider whether Congress intended there to be an exemption in a particular statute, courts consider other statutory schemes.  *See, e.g.*, *City of Chicago v. Envtl.*

*Def. Fund*, 511 U.S. 328, 337-38 (1994).  As the Campaign repeatedly emphasizes, Congress

affirmatively legislated to exempt political organizations from the income tax provisions of the

Internal Revenue Code.  *See generally* Opp. (ECF No. 94); *see also* 26 U.S.C. § 527(a).

Congress's explicit statutory exemption for political organizations in the tax laws demonstrates

that when it wishes to exempt such organizations from an area of the law it will do so expressly.

The FLSA, however, contains no such exemption.  While Congress has enacted a multitude of

legislation regarding political organizations and elections throughout several other titles of the

U.S. Code, including Titles 18 (criminal law), 26 (tax law), and 52 (voting and elections), it has

not done so within the FLSA, whether to provide an exemption or otherwise.  Comparing these

statutory schemes clearly indicates that "Congress knew how to draft [an] . . . exemption . . .

when it wanted to."  *City of Chicago*, 511 U.S. at 338.  And here, Congress has not exempted

political organizations such as the Campaign from the FLSA's coverage.

  Plaintiffs do not dispute the importance of political campaigns and political advocacy in

American society.  Indeed, they and thousands of others quit their jobs, cancelled their health

insurance, withdrew from school, moved states, and forwent other opportunities for the

opportunity to work for the Campaign on the primary and general elections, in reliance on its

promises.  Plaintiffs and all FOs worked grueling hours to advance the Campaign's goals.  This

case highlights one of the primary purposes of the FLSA's overtime provisions, which is to

spread employment.  *See Marzuq v. Cadete Enters., Inc.*, 807 F.3d 431, 445 (1st Cir. 2015)

(describing as a "principal goal[] of the FLSA's overtime provision" "to spread employment

more widely through the work force by discouraging employers from requiring more than forty

hours per week from each employee" (quoting *Marshall v. Chala Enters., Inc.*, 645 F.2d 799,

803 (9th Cir. 1981))).  Because the Campaign demanded its employees work up to 80 hours a

week, it should have hired more people, rather than require so much overtime work.

Accordingly, because the Campaign satisfies the basic requirements for enterprise coverage, the Court should find that it is covered by the FLSA, and this common answer for all Plaintiffs and FOs further supports issuance of notice.

### D. Plaintiffs and Other FOs Are Individually Covered Under the FLSA.

As with enterprise coverage, the Court should not reach the question of individual FLSA coverage because it is a merits determination. *See Torralba*, 2016 WL 771192, at *3; *Smith*, 2020 WL 210277, at *4 (declining to consider argument that plaintiffs were not individually covered by the FLSA at notice stage). Indeed, nearly all of the cases the Campaign cites in support of its argument were decided after discovery, at the summary judgment stage; moreover, each of these cases is distinguishable because Plaintiffs here allege sufficient facts to establish individual coverage.[17] As stated above, and as the record makes clear, Plaintiffs and all other

---

[17]     *See Reagor*, 501 F. App'x at 810 (no individual coverage where plaintiff did not allege that she used telephone regularly or for interstate communications); *Divins v. Hazeltine Elecs. Corp.*, 163 F.2d 100, 103 (2d Cir. 1947) (reversing summary judgment where at least some duties triggered individual FLSA coverage); *Jones v. SCO Family of Servs.*, No. 15 Civ. 8733, 2016 WL 7188152, at *3-4 (S.D.N.Y. Dec. 2, 2016) (denying motion to amend complaint where one interstate call per month and less than one interstate trip a year would not establish individual coverage); *Davis v. Patel*, No. 14 Civ. 764, 2016 WL 4160967, at *7-8 (M.D. Tenn. Aug. 5, 2016) (at summary judgment, plaintiffs did not present sufficient evidence regarding regularly using instrumentalities of commerce); *Stocker v. Marjakaj*, No. 14 Civ. 13386, 2015 WL 13861151, at *7-8 (E.D. Mich. 2015) (denying defendant's summary judgment motion where use of mail to locations outside the state two to three times a month sufficiently established individual coverage); *Mayo v. Jean Nicole Hair Salons, Inc.*, No. 15 Civ. 115, 2015 WL 4751202, at *2-3 (M.D. Fla. Aug. 11, 2015) (dismissal without prejudice for plaintiff who only alleged answering calls once a week); *Owusu v. Corona Tire Shop, Inc.*, No. 09 Civ. 3744, 2013 WL 1680861, at *4 (E.D.N.Y. Apr. 17, 2013) (at summary judgment, plaintiff presented insufficient evidence regarding frequency of engaging in commerce); *Locke*, 690 F. Supp. 2d at 90-91 (at summary judgment, plaintiff presented insufficient evidence regarding interstate nature of duties); *Curry v. High Springs Family Practice & Diagnosis Ctr., Inc.*, No. 08 Civ. 8, 2009 WL 3163221, at*3-4 (N.D. Fla. Sept. 30, 2009) (at summary judgment, plaintiff presented insufficient evidence regarding frequency of engaging in commerce); *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 468 (S.D.N.Y. 2006) (at summary judgment, plaintiffs

FOs performed the same job duties across the country, and so the question of individual FLSA coverage is a common one, which supports authorizing notice.

As Plaintiffs will explain further in response to the Campaign's forthcoming motion to dismiss, even if the Court finds that the Campaign is not a covered entity, Plaintiffs and other FOs are individually covered by the FLSA.  This type of coverage "applies to an employee who has 'engaged in commerce'" and whose work is "related to interstate commerce."  *Torralba*, 2016 WL 771192, at *4.  Individual coverage applies when employees "handle or otherwise work on goods moving in interstate commerce," such as the "regular[] use [of] the mails, telephone or telegraph for interstate communication."  29 C.F.R. § 779.103; *Foster v. Gold & Silver Private Club, Inc.*, No. 14 Civ. 698, 2015 WL 8489998, at *6 (W.D. Va. Dec. 9, 2015) (stating in FLSA case that "[i]t is well-settled that '[t]he internet is an instrumentality of [interstate] commerce.'" (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004))); *see also SEC v. Straub*, No. 11 Civ. 9645, 2016 WL 5793398, at *11 (S.D.N.Y. Sept. 30, 2016) ("The Internet unquestionably constitutes an 'instrumentality of interstate commerce.'" (quoting *SEC v. Straub*, 921 F. Supp. 2d 244, 262 (S.D.N.Y. 2013))).

Plaintiffs allege that all FOs used the internet and telephones to communicate with the Campaign's New York headquarters and other Campaign employees daily.  *See* SAC (ECF No. 86) ¶¶ 68-73.  Plaintiffs also allege that FOs used an internet-based auto-dialer to call prospective voters daily, including prospective voters across state lines.  *Id.*  Moreover, FOs used other campaign materials that were shipped to their offices across state lines.  *See id.*  These facts

---

presented insufficient evidence that they "used" telephones by answering resident calls); *Kitchings*, 393 F. Supp. 2d at 1292-93 (at summary judgment, plaintiffs did not present evidence regarding individual coverage); *Boekemeier v. Fourth Universalist Soc'y in the City of N.Y.*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) (granting plaintiff's summary judgment motion on individual coverage based on 14 to 30 purchases over five-year period).

are sufficient to establish individual FLSA coverage at the pleading stage, which the cases cited by the Campaign confirm.  As further discovery will show, FOs additionally used the internet to produce, upload, and transmit data generated by their outreach to potential voters, and such data is regularly bought and sold in the marketplace by former campaigns.[18]  Additionally, FOs used the internet to upload data generated by their outreach to potential voters, and such data is regularly bought and sold in the marketplace by former campaigns.  While the Campaign disputes the frequency of these activities or whether they establish individual coverage, this is a merits question that need not be resolved at this stage in order for the Court to authorize notice.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Plaintiffs' Memorandum, Plaintiffs respectfully request that the Court: (1) authorize the issuance of notice to Collective Members; (2) order the Campaign to produce a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known personal email addresses, last four digits of Collective Members' Social Security numbers (for those notices returned undeliverable), and work locations and dates of employment at each location for all Collective Members; and (3) approve Plaintiffs' Proposed Notice and the plan for its distribution.

Dated:  June 17, 2020                    Respectfully submitted,
        New York, NY                     */s/ Sally J. Abrahamson*

                                         Sally J. Abrahamson
                                         Hannah Cole-Chu*
                                         **OUTTEN & GOLDEN LLP**
                                         601 Massachusetts Avenue NW, Ste 200W
                                         Washington, D.C. 20001
                                         Telephone: 202-847-4400

---

[18]     *See, e.g.*, Jose Pagliery, *Here's How Presidential Candidates Sell Your Personal Information*, CNN Money (July 7, 2016), https://money.cnn.com/2016/07/07/news/presidential-candidate-sell-donor-data/index.html.

sabrahamson@outtengolden.com
hcolechu@outtengolden.com

Justin M. Swartz
Michael C. Danna
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: 212-245-1000
jms@outtengolden.com
mdanna@outtengolden.com

Gregg I. Shavitz*
Tamra Givens*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com

Michael Palitz
**SHAVITZ LAW GROUP, P.A.**
800 3rd Avenue, Suite 2800
New York, NY 10022
Telephone: (800) 616-4000
mpalitz@shavitzlaw.com

***Attorneys for Plaintiffs and the Putative Collective and Classes***

* Admitted *pro hac vice*