# EXHIBIT OO

Winchester, Virginia

May 23, 2023

The Honorable Richard M. Berman
United States District Judge for the
 Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Dear Judge Berman,

This letter provides my views of Steve Buyer as the man, soldier, lawyer, husband, father, and grandfather I have known since 1990.

I testified at the trial in March, and thus am aware that Steve was convicted.

In order to make what I say here more relevant, I will relate some of my own background, some, but not all, of which I stated at the trial.

I am a graduate of Kentucky Wesleyan College and the University of Kentucky College of Law.  I am now fully retired, and in "Senior Counselor" status — a kind code for "old lawyer" — with the Kentucky Bar Association, Most of my professional life was in the U.S. Army Judge Advocate General's Corps (JAG).

My last active-duty assignment was as legal advisor to the U.S. Army Inspector General in the Pentagon. Previously, I had been a judge on the Army's court of criminal appeals.  And, during Operations Desert Shield/Desert Storm (First Gulf War), I was chief legal advisor to the theater senior logistician and head of Army contracting in Southwest Asia.

It was in Saudi Arabia that I first met Steve Buyer, then a young Army reserve captain mobilized for the First Gulf War.

The "Bottom Line Up Front" is that Steve was, without question in my mind, the best and brightest of the captains among the 50 Army lawyers who served in my command's legal office and subordinate units for which I was the technical supervisor.

During the course of the eight or so months that we served together in that combat theater, I had ample opportunity to get to know all of the JAG's. Steve very quickly rose to the top in my estimation, but not only because he was responsive to my requests or a quick study on some unique legal issues. He was those, of course, but he also set himself above and apart from his peers by his sensitivity to "people issues" of all sorts.

In fact, Steve was so responsive to "hot projects," that he quickly became my first "Go to" captain among the many.

At the trial, I testified about Steve's truly extraordinary work at the EPW camps for Iraqi POW's. Yet, I wish to restate with more clarity how truly significant that was for the image of the United States in the eyes of the media and thus the court of public opinion. The press was, I think, eager for stories, and expected — and even possibly hoped! — that the International Committee of the Red Cross (ICRC) would find our EPW camps in shameful condition.

But Steve met the ICRC delegations with the same commitment to candor and openness that I have known him to bring to all personal and professional challenges. He did a simply remarkable job, surprising the ICRC, and disappointing the press! Before it was over, he even had the media telling a "good news" story, and the ICRC finding our treatment of the Iraqi prisoners as a model for the future. Steve deserves so much credit for that almost-forgotten story. Had it turned out otherwise — and that was what would have happened but for Steve — it would not have been pretty, and we would still be reading about it.

I am also mindful that when Steve and I talked, in office "BS sessions" or alone in a vehicle when traveling the long distances between our various in-country sites, he most often focused on his wife, Joni, and family in a touching, endearing, and clearly heartfelt way.

Over the years after we both returned to the U.S., we continued to have professional and social contact.

For example, while serving in Congress, Steve accepted several of invitations to speak at Judge Advocate Association functions. I was then president of that national organization, and I suspect that Steve wished I might have asked him to appear less often! But he did make time, and his down-to-earth demeanor and candor won over many in those sessions.

Those professional meetings and his occasional visits to the Pentagon while I served there did not, of course, have the closeness of our military service overseas. That said, they were frequent enough for me to see that Steve had not allowed his congressional and other successes to work the evil of hubris on his core values. And, even after he left Congress, he seemed to me to remain genuine and humble.

A small matter that occurred about five years ago here at our home in rural Virginia may illustrate my point. Standing alone, this hardly rises as significant, but it was and remains meaningful to me because I think it reaches the heart of the Steve Buyer I know.

As we walked Steve around our property, he noted an old farm wagon near the gate. I often tell people that this vintage display of a mule-drawn manure spreader is the perfect "yard art" for a retired lawyer!

But Steve stopped, looked at it, and chided me a bit for letting such a vestige of history decay in the elements. He said, essentially, "That old machine represents so many years of a farmer's sweat, and deserves better than to rot out in the elements. It'll soon be gone and no one will remember."

Well, that machine is still out there, but I was struck by Steve's reflective words. Most people would never even have noticed, much less remarked about such a poignant reminder of the past and the work that a long-dead farmer did. My own Kentucky family has long "poor dirt farmer" roots, so I still feel a bit guilty when I look at that wagon decay and recall Steve's comments.

After decades in the legal profession, and with most of that in the prosecution function, I would never question the outcome of a federal criminal trial. When, however, the focus shifts to sentencing, I cannot put aside the Steve Buyer I knew and know — and hope to continue to know. I thus trust that, within the framework of the sentencing guidelines and the discretion available to you as the sentencing judge, the sentence will take into account Steve's myriad contributions to this Nation as a lawyer, soldier, and congressman.

The thought of Steve being apart from his ailing wife, Joni, during any prison term is difficult for me to imagine. Certainly all prisoners wish that they were free. Yet, having seen Steve's devotion to family "back in the day," and his present care for Joni since the onset of her illness, I would suggest that their

relationship and her medical condition warrant crafting a sentence that makes its point for Steve and others without separating this husband and wife.

Moreover, without intending in the slightest to question the jury's verdict of what that body found, if your discretion permits, I urge that, for the same reasons that justify consideration with respect to confinement, you allow Steve to remain free during any appellate process. Steve's overall character is, in my opinion, so uncommonly representative of innate honesty, integrity, selfless service, and all-around goodness that that such a measure risks little for much gain.

Thank you for your time in considering my view of Steve Buyer as you go about the difficult process to do the right thing for all.

Sincerely,

William R. Hagan
Colonel, U.S. Army, Retired