## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DONNA WOOD, CAELAN DOHERTY, MAX
GOLDSTEIN, BRIDGET LOGAN, JAMES
KYLE NEWMAN, ZIA ORAM, ALAN
ROBINSON, ALEXANDRA MARIE
WHEATLEY-DIAZ, individually and on behalf
all others similarly situated, and CHERYL
BALDWIN, JONATHAN BARRIO, DESMOND
BATTS, GARRETT BECKENBAUGH,
COCHIESE BOWERS, MILES CEPLECHA,
ROBIN CEPPOS, MELINDA CIRILO, JANE
CONRAD, ROBERT CORDOVA, JR.,
CHRISTINE DOCZY, RACHEL DOUGLAS,
THERESA EDWARDS, ELIZA FINK, JASON
FINKELSTEIN, ILSE MENDEZ FRAGA, JOSH
FREDRICKSON, MARIA GONZALEZ,
NATHANIEL ROBERT GROH, BRANDI
HARRIS, PETER KAMARA, MACK
KENNEDY, MADISON OLIVER MAYS,
PATRICK MCHUGH, FRIDA MICHELLE
NARANJO, PAUL MONTEROSSO, REY
MURPHY, JOSEPH NESTOR, LUKE
NICHOLAS, JOSEPHINE OLINGER, ALEC
SILVESTER, DANIEL SMITH, CHRIS SOTH,
AUDRA TELLEZ, CARLOS TORRES,
ELLIOTT TRICOTTI, GLORIA TYLER,
LAKISHA WATSON-MOORE, JESSE
WEINBERG, CLEM WRIGHT, ANOOSH
YARAGHCHIAN, and JESUS ZAMORA,
individually,

       Plaintiffs,

  v.

MIKE BLOOMBERG 2020, INC.,

       Defendant.

No. 20 Civ. 2489 (LTS) (GWG)

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

I. Procedural Background............................................................................... 2

II. The Campaign's False Promises Injured Thousands of Former Employees. .................... 3

III. The Campaign Misclassified Field Organizers and Failed to Pay Overtime..................... 4

LEGAL STANDARD...................................................................................................... 4

ARGUMENT ................................................................................................................. 6

I. Plaintiffs State a Claim of Fraudulent Inducement............................................. 6

    A. Plaintiffs Adequately Allege the Elements of Fraudulent Inducement. ................ 6

        1. Plaintiffs Allege the Campaign Misrepresented Present Facts and Made Future Promises It Did Not Intend to Perform. ........................................... 6

        2. Plaintiffs Allege the Campaign Had Motive and Opportunity to Defraud. ...... 9

        3. Plaintiffs Allege Reasonable Reliance........................................... 11

        4. Plaintiffs Allege Injuries Unrelated to Termination. ..................... 14

    B. Plaintiffs Plead Facts Sufficient to Meet Rule 9(b)'s Heightened Pleading Standard. ................................................................................ 15

II. Plaintiffs Properly Plead Their Promissory Estoppel Claim............................... 17

    A. New York Law Permits Promissory Estoppel Claims in the Employment Context.................................................................................... 17

    B. Plaintiffs Have Properly Pleaded All Promissory Estoppel Elements................. 19

        1. The Campaign Unambiguously Promised to Employ Plaintiffs Through the General Election, a Fixed Duration. .......................................... 19

        2. Plaintiffs Reasonably and Foreseeably Relied on the Campaign's Promises. 19

        3. Plaintiffs Properly Allege That They Were Injured...................... 20

III. Plaintiffs Properly Plead Their FLSA Claims. ........................................... 23

    A. The Campaign Satisfies the FLSA's Enterprise Requirements. ...................... 23

B.     The Campaign Is Not Exempt from the FLSA's Overtime Requirements. .......... 25

C.     Plaintiffs Are Covered Individuals Under the FLSA. .............................................. 28

IV.    The Court Should Not Strike Plaintiffs' Class Allegations. ............................................. 29

V.     Should the Court Grant Any Portion of the Campaign's Motion, Plaintiffs Request Leave to Amend Their Complaint. ............................................................................................. 34

CONCLUSION ...................................................................................................................... 35

**Cases**                                                                                                 **Page(s)**

*ABA Refinery Corp. v. Republic Metals Ref. Corp.*,
    No. 15 Civ. 8731, 2017 WL 4481170 (S.D.N.Y. Oct. 5, 2017) ..............................................21

*Alfus v. Pyramid Tech. Corp.*,
    764 F. Supp. 598 (N.D. Cal. 1991) .......................................................................................17

*Allison v. Clos-ette Too, LLC*,
    No. 14 Civ. 1618, 2014 WL 4996358 (S.D.N.Y. Sept. 15, 2014) .........................................18

*Andrews v. Sotheby Int'l Realty, Inc.*,
    No. 12 Civ. 8824, 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014) ...........................................18

*Archie v. Grand Cent. P'ship, Inc.*,
    997 F. Supp. 504 (S.D.N.Y. 1998) .................................................................................23, 26

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ...................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................4, 5

*Baguer v. Spanish Broad. Sys., Inc.*,
    No. 04 Civ. 8393, 2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) ....................................18, 22

*Balderas v. Barmadon Mgmt. LLC*,
    No. 17 Civ. 7489, 2019 WL 1258921 (S.D.N.Y. Mar. 19, 2019) .........................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................4, 5

*Berger v. Roosevelt Investment Grp. Inc.*,
    28 A.D.3d 345 (N.Y. App. Div. 2006) ................................................................................14

*Berman v. Neo@Ogilvy LLC*,
    No. 14 Civ. 00523, 2014 WL 6865718 (S.D.N.Y. Aug. 15, 2014) .........................................8

*Bessemer Tr. Co. v. Branin*,
    498 F. Supp. 2d 632 (S.D.N.Y. 2007)...................................................................................19

*Boekemeier v. Fourth Universalist Soc'y in City of N.Y.*,
    86 F. Supp. 2d 280 (S.D.N.Y. 2000)........................................................................24, 26, 29

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008)...................................................................................................5

*Brady v. Calyon Sec. (USA)*,
  406 F. Supp. 2d 307 (S.D.N.Y. 2005) ..................................................................9

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .......................................................................5, 7

*Chen-Oster v. Goldman, Sachs & Co.*,
  325 F.R.D. 55 (S.D.N.Y. 2018) ...................................................................32

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) .............................................................30

*Chenensky v. New York Life Ins. Co.*,
  No. 07 Civ. 11504, 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) ........................29

*Chepak v. Metro. Hosp.*,
  555 F. App'x 74 (2d Cir. 2014) ....................................................................5

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018) ........................................................................5

*City of Chicago v. Envtl. Def. Fund*,
  511 U.S. 328 (1994) ...................................................................................27

*Cloke-Brown v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
  No. 10 Civ. 2249, 2011 WL 666187 (S.D.N.Y. Feb. 9, 2011) .......................11, 17

*Cohen v. Avanade, Inc.*,
  874 F. Supp. 2d 315 (S.D.N.Y. 2012) ...........................................................17

*Cole v. Kobs & Draft Adver., Inc.*,
  921 F. Supp. 220 (S.D.N.Y. 1996) ..........................................................13, 15

*In re Columbia Sec. Litig.*,
  747 F. Supp. 237 (S.D.N.Y. Sept. 26, 1990) ...................................................16

*Conn. Nat'l Bank v. Fluor Corp.*,
  808 F.2d 957 (2d Cir. 1987) .........................................................................9

*Cunnison v. Richardson Greenshields Sec., Inc.*,
  485 N.Y.S.2d 272 (1st Dep't 1985) ...............................................................22

*Dalton v. Union Bank of Switzerland*,
  520 N.Y.S.2d 764 (N.Y. App. Div. 1987) ..................................................18, 23

*Davis v. Grp. Homes For Children, Inc.*,
  No. 09 Civ. 415, 2009 WL 2905767 (M.D. Ala. Sept. 8, 2009) .................25, 26, 33

v

*Davis v. Navient Corp.*,
  No. 17 Civ. 992, 2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) ...........................................32

*Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
  No. 06 Civ. 5474, 2008 WL 857492 (S.D.N.Y. Mar. 31, 2008) ...................................9, 11, 14

*Divins v. Hazeltine Elecs. Corp.*,
  163 F.2d 100 (2d Cir. 1947)...............................................................................................29

*DiVittorio v. Equidyne Extractive Industries*
  822 F.3d 1242 (2d Cir. 1987)..............................................................................................15

*Doehla v. Wathne Ltd.*,
  No. 98 Civ. 6087, 2000 WL 987280 (S.D.N.Y. July 17, 2000) ........................................8, 15

*Downey v. Adloox Inc.*,
  238 F. Supp. 3d 514 (S.D.N.Y. 2017).................................................................................9, 14

*Drexel Burnham Lambert Grp. v. Microgenesys, Inc.*,
  775 F. Supp. 660 (S.D.N.Y 1991) ...........................................................................................9

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) ............................................................................................31

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................................................31

*Fishoff v. Coty Inc.*,
  676 F. Supp. 2d 209 (S.D.N.Y. 2009)...................................................................................22

*Foman v. Davis*,
  371 U.S. 178 (1962).............................................................................................................34

*Foster v. Gold & Silver Private Club, Inc.*,
  No. 14 Civ. 698, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015) .............................................28

*Galper v. JP Morgan Chase Bank, N.A.*,
  802 F.3d 437 (2d Cir. 2015)....................................................................................................4

*Garnier v. J.C. Penney Co.*,
  863 F. Supp. 139 (S.D.N.Y. 1994) ..................................................................................13, 15

*George v. Thomas*,
  No. 19 Civ. 3020, 2020 WL 1643486 (E.D.N.Y. Mar. 31, 2020) ........................................22

*Ginsberg v. Fairfield-Noble Corp.*,
  440 N.Y.S.2d 222 (N.Y. App. Div. 1981) ............................................................................23

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006)............................................................................5

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016)............................................................................5

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
    No. 15 Civ. 2030, 2016 WL 3571387 (S.D.N.Y. June 27, 2016)..........................7, 8

*Hayden v. Cty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999)...........................................................................5, 34

*Hudson v. Delta Air Lines, Inc.*,
    90 F.3d 451 (11th Cir. 1996) ..........................................................................33

*Hyman v. Int'l Bus. Machines Corp.*,
    No. 98 Civ. 1371, 2000 WL 1538161 (S.D.N.Y. Oct. 17, 2000) ....................13, 14

*Ironforge.com v. Paychex, Inc.*,
    747 F. Supp. 2d (W.D.N.Y. Oct. 5, 2010) ............................................................30

*Jacobs v. Carsey-Werner Distrib.*,
    No. 93 Civ. 6825, 1994 WL 116077 (S.D.N.Y. Mar. 30, 1994) ...............18, 20, 21

*Jacobs v. N.Y. Foundling Hosp.*,
    483 F. Supp. 2d 251 (E.D.N.Y. 2007) .................................................................29

*Jacobs v. N.Y. Foundling Hosp.*,
    577 F.3d 93 (2d Cir. 2009)...............................................................................25

*Jaquith v. Newhard*,
    No. 91 Civ. 7503, 1993 WL 127212 (S.D.N.Y. Apr. 20, 1993).............................11

*Johnson v. Trump for President, Inc.*,
    No. 19 Civ. 475, 2019 WL 2492122 (M.D. Fla. June 14, 2019) ...........................27

*Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker
    Real Estate Corp.*,
    281 F.R.D. 422 (C.D. Cal. 2012) .......................................................................31

*Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*,
    885 F. Supp. 1169 (S.D. Ind. 1995)...............................................................28, 29

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
    213 F.R.D. 689 (S.D. Ga. 2002) ........................................................................33

*Katsoolis v. Liquid Media Grp., Ltd.*,
    No. 18 Civ. 9382, 2019 WL 4735364 (S.D.N.Y. Sept. 27, 2019) ....................18, 20

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..................................................................19, 22

*Kinsella v. Powerguard Specialty Ins. Servs., LLC*,
    112 A.D.3d 414 (1st Dep't 2013) ........................................................15

*Kissner v. Inter-Continental Hotels Corp.*,
    No. 97 Civ 8400, 1998 WL 337067 (S.D.N.Y. June 25, 1998)...............8

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
    393 F. Supp. 2d 1282 (M.D. Fla. 2005)...............................................28, 29

*Kramsky v. Chetrit Grp., LLC*,
    Nos. 10 Civ. 2638, 10 Civ. 9458, 2011 WL 2326920 (S.D.N.Y. June 13,
    2011) ..............................................................................................18, 20

*Laduzinski v. Alvarez & Marsal Tax & LLC*,
    132 A.D.3d 164 (1st Dep't 2015) ........................................................14

*Leschak v. Raiseworks, LLC*,
    No. 14 Civ. 8072, 2016 WL 11695068 (S.D.N.Y. Mar. 7, 2016) ...........20

*Locke v. St. Augustine's Episcopal Church*,
    690 F. Supp. 2d 77 (E.D.N.Y. 2010) ...................................................24

*Lord v. Marilyn Model Mgmt., Inc.*,
    104 N.Y.S.3d 622 (N.Y. App. Div. 2019) ............................................17

*Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)................................................................11, 15

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986)..................................................................15, 34, 35

*Luedke v. Delta Airlines, Inc.*,
    155 B.R. 327 (S.D.N.Y. 1993).............................................................33

*Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*,
    955 F. Supp. 2d 50 (D.D.C. 2013) .......................................................28

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y. Mar. 31, 2015) .....................................30

*Melvin v. Cty. of Westchester*,
    No. 14 Civ. 2995, 2016 WL 1254394 (S.D.N.Y. Mar. 29, 2016) ...........34

*Meyercord v. Curry*,
    38 A.D.3d 315 (N.Y. App. Div. 2007) ................................................14

*Miller v. Pac. Inv. Mgmt. Co. LLC*,
   No. 12 Civ. 4122, 2013 WL 12305507 (S.D.N.Y. Apr. 23, 2013)........................35

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)....................................................................31, 33

*Nemo Tile Co. v. Shawmut Nat'l Corp.*,
   No. 95 Civ. 0757, 1995 WL 1682315 (E.D.N.Y. Nov. 1, 1995)..........................16

*Nikolaeva v. Home Attendant Servs. of Hyde Park*,
   No. 15 Civ. 6977, 2018 WL 6984837 (E.D.N.Y. Nov. 16, 2018)........................28

*Ouaknine v. MacFarlane*,
   897 F.2d 75 (2d Cir. 1990).....................................................................6, 15

*Pearce v. Manhattan Ensemble Theater, Inc.*,
   528 F. Supp. 2d 175 (S.D.N.Y. 2007)............................................... *passim*

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*,
   No. 08 Civ. 10578, 2010 WL 1257326 (S.D.N.Y. Mar. 12, 2010) .....................21

*Powers v. British Vita, P.L.C.*,
   57 F.3d 176 (2d Cir. 1995)...........................................................................9

*Reagor v. Okmulgee Cty. Fam. Res. Ctr.*,
   501 F. App'x 805 (10th Cir. 2012) ...........................................................27, 29

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013)......................................................................33

*Reynolds v. BLM Co., Inc.*,
   No. 12 Civ. 1105, 2014 WL 12888364 (W.D. Ark. Mar. 17, 2014) .....................33

*Rivera v. City of N.Y.*,
   392 F. Supp. 2d 644 (S.D.N.Y. 2005)..............................................................22

*Rogers v. Town of Islip*,
   646 N.Y.S.2d 158 (N.Y. App. Div. 1996) ....................................................17, 18

*Ronzani v. Sanofi S.A.*,
   899 F.2d 195 (2d Cir. 1990).........................................................................34

*Rowell v. Voortman Cookies, Ltd.*,
   No. 02 Civ. 681, 2005 WL 1026715 (N.D. Ill. Apr. 27, 2005) ..........................34

*Sabo v. Delman*,
   143 N.E.2d 906 (N.Y. 1957)...........................................................................8

*Salon Fad v. L'Oreal USA, Inc.*,
  No. 10 Civ. 5063, 2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011) .........................................33

*Sateriale v. RJ Reynolds Tobacco Co.*,
  No. 09 Civ. 8394, 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014) ..........................................33

*Schlenger v. Fidelity Emp. Servs. Co.*,
  785 F. Supp. 2d 317 (S.D.N.Y. 2011)...................................................................................17

*SEC v. Straub*,
  No. 11 Civ. 9645, 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016) ........................................28

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)...........................................................................................10, 34

*Smalley v. Dreyfus Corp.*,
  882 N.E.2d 882 (N.Y. 2008)..................................................................................................15

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .................................................................................................33

*Stamelman v. Fleishman-Hillard, Inc.*,
  No. 02 Civ. 8318, 2003 WL 21782645 (S.D.N.Y. July 31, 2003) ...........................6, 8, 10, 15

*Stewart v. Jackson & Nash*,
  976 F.2d 86 (2d Cir. 1992).......................................................................................... *passim*

*Stillman v. Townsend*,
  No. 05 Civ. 6612, 2006 WL 2067035 (S.D.N.Y. July 26, 2006) ..........................................22

*Tellez v. OTG Interactive, LLC*,
  No. 15 Civ. 8984, 2016 WL 5376214 (S.D.N.Y. Sept. 26, 2016) ...................................14, 15

*TIAA Glob. Investments, LLC v. One Astoria Square LLC*,
  127 A.D.3d 75 (N.Y. App. Div. 2015) ...................................................................................12

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993)......................................................................................................16

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
  471 U.S. 290 (1985).................................................................................................25, 26, 27

*Torralba v. Little India Stores*,
  No. 14 Civ. 595, 2016 WL 771192 (S.D.N.Y. Feb. 29, 2016) .............................................28

*Trugman-Nash, Inc. v. New Zealand Dairy Bd.*,
  942 F. Supp. 905 (S.D.N.Y. 1996) ......................................................................................7, 9

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................32

*United States v. Hornaday*,
    392 F.3d 1306 (11th Cir. 2004) ..................................................................28

*Walia v. Veritas Healthcare Sols., L.L.C.*,
    No. 13 Civ. 6935, 2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015) ......................8, 15

*Walney v. SWEPI LP*,
    No. 13 Civ. 102, 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015) ................33

*Wirtz v. Columbian Mut. Life Ins. Co.*,
    380 F.2d 903 (6th Cir. 1967) ......................................................................26

*Woods-Early v. Corning Inc.*,
    330 F.R.D. 117 (W.D.N.Y. 2019) ..........................................................29, 30

*Wurtsbaugh v. Banc of Am. Sec., LLC*,
    No. 05 Civ. 6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006) ...........13

*Yarger v. ING Bank, FSB*,
    285 F.R.D. 308 (D. Del. 2012) ....................................................................33

**Statutes**

26 U.S.C. § 527 ...............................................................................................27

29 U.S.C. § 203(s)(1)(A) ...............................................................................23

N.Y. Gen. Oblig. Law § 5-701(a)(1) .............................................................21

**Other Authorities**

26 C.F.R. § 1.527-3 .........................................................................................27

29 C.F.R. § 779.103 .........................................................................................28

29 C.F.R. § 779.214 .............................................................................25, 26, 27

Federal Rule of Civil Procedure 9(b) ............................................................9

2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 9.03 (2d ed. 1986)............34

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter 2 (Sept. 29, 2008),
    https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2008_09_29_08_FL
    SA.pdf ..........................................................................................................24

## <u>INTRODUCTION</u>

Plaintiffs are campaign workers who agreed to work for Defendant Mike Bloomberg 2020, Inc. ("the Campaign"), relying on the Campaign's promises that it would pay them through November 2020, even if Mike Bloomberg lost, and give them the opportunity to work on the general election campaign. They worked long hours for the Campaign, often 70 hours per week, without any overtime compensation. Then the Campaign fired all of them in March 2020, leaving them out of work in the midst of a global pandemic. The Campaign now seeks to avoid accountability for the harm it caused and to deny Plaintiffs the discovery that will shed further light on the Campaign's intentions. The Court should allow the case to proceed.

Throughout its Motion, the Campaign claims that Plaintiffs did not meet the minimal pleading requirements that apply at this stage of the case, attempting to elevate Plaintiffs' low pleading burden to a burden of proof. The Court should not take the bait. Plaintiffs have pleaded more than enough facts that, if true, establish the Campaign's liability.

The Campaign does not appear to take issue with the crux of Plaintiffs' allegations — that the Campaign promised to provide its field staff the opportunity to work on the general election, and to get paid for their work, even if Mr. Bloomberg was not the nominee. It virtually ignores the more than 65 specific promises that Plaintiffs allege in their Complaint. The Campaign also ignores detailed allegations that Plaintiffs and other field staff left their jobs, moved, and forewent opportunities in reliance on the Campaign's false promises. Plaintiffs clearly plead that, within days of Mr. Bloomberg ending his bid for the Democratic presidential nomination, the Campaign terminated its field staff, and that this supports the implication that the Campaign never intended to provide them with an opportunity to work on the general election.

Similarly, the Campaign attempts to escape judicial scrutiny of its pay practices by asking

1

the Court to create a sweeping rule that *all* political campaigns are exempt from the Fair Labor Standards Act's ("FLSA") requirements. The Campaign turns a blind eye to Plaintiffs' specific allegations regarding the Campaign's sale of goods and Plaintiffs' role in interstate commerce. It merely argues that the Court should accept its unsupported argument that the sale of goods and the interstate nature of Plaintiffs' work should be ignored because the Campaign was a political entity. Even if this argument had merit, which it does not, Plaintiffs are entitled to discovery regarding the Campaign's sales and the field staffs' engagement in interstate commerce.

The Campaign also misstates New York law, claiming that employers have blanket immunity from promissory estoppel and fraudulent inducement claims. They do not.

Finally, the Campaign's attempt to dismiss and/or strike the class claims are premature and unsupported. The Campaign's Motion should be denied in its entirety.

## BACKGROUND

### I. Procedural Background.

Plaintiff Donna Wood filed a Class and Collective Action Complaint against the Campaign on March 23, 2020. ECF No. 1. A week later, Ms. Wood filed a First Amended Class and Collective Action Complaint, joined by 49 additional Plaintiffs. ECF No. 29. On April 21, 2020, the Campaign notified Plaintiffs of its intent to file a motion to dismiss, and the parties stipulated to the filing of a Second Amended Class and Collective Action Complaint. ECF No. 80. Plaintiffs did so on May 18, 2020. ECF No. 86 ("SAC"). Plaintiffs also filed a motion for conditional certification of a FLSA collective on April 17, 2020. ECF Nos. 63-64. As of June 17, 2020, that motion is fully briefed. ECF No. 114. On June 17, 2020, Defendant filed its Partial Motion to Dismiss, ECF No. 110-111 ("Mot."), moving to dismiss Plaintiffs' fraudulent inducement, promissory estoppel, and FLSA claims.

**II.     The Campaign's False Promises Injured Thousands of Former Employees.**

Plaintiffs are 50 former Campaign field staffers who worked between January 2020 and March 2020 in field offices nationwide.  *See* SAC ¶¶ 81-179.  Each Plaintiff accepted a field position with the Campaign, such as Field Organizer ("FO").  *See id.*  During the job application process, the Campaign uniformly told Plaintiffs that it would provide them with a paid opportunity to work on the primary and general presidential elections, through November 2020, even if Mike Bloomberg was not the Democratic nominee.  *Id.* ¶¶ 3-24.  The promise was reduced to writing in the Campaign's interview scripts that were used for its job interviews.  *Id.* ¶¶ 19-22.  It was also repeated by Campaign officials for months in media interviews and public appearances.  *Id.* ¶¶ 12-18.  For example, Kevin Sheekey, the Campaign manager, said in an interview published on February 24, 2020 that the Campaign had signed leases and hired its staff through November.  *Id.* ¶ 13.  Similarly, Tim O'Brien, the Campaign's Senior Advisor, stated in an interview published on January 11, 2020 that the Campaign was "building a machine . . . to put in service for whoever the Democratic nominee is" and "we've said this a lot publicly now–we're hiring people for a year.  This office is going to be open till November.  Everybody is being hired through the election."  *Id.* ¶ 14.  These promises were reiterated by Campaign officials to Plaintiffs after they were hired, including during the onboarding process.  *Id.* ¶¶ 19, 35.

These promises were false and intentionally misrepresented the Campaign's intentions and other material facts.  *Id.* ¶¶ 3, 5-10, 46.  The Campaign was motivated to make these misrepresentations to induce its field staff to accept the positions due to Mike Bloomberg's late entry into the primary race and his inability to otherwise hire the thousands of Campaign staffers necessary for his campaign.  *Id.* ¶¶ 4, 6, 8, 49, 51.  Plaintiffs relied on these promises and forewent other opportunities.  *Id.* ¶¶ 28, 38-39, 51-54, 56.  Plaintiffs reliance was reasonable because the

Campaign reiterated the direct promises to Plaintiffs with public statements and because Mr. Bloomberg referenced his vast personal wealth to demonstrate that he would fund such an operation. *Id.* ¶¶ 26-27.

## III. The Campaign Misclassified Field Organizers and Failed to Pay Overtime.

The Campaign employed Plaintiffs and other FOs to call prospective voters to promote Mr. Bloomberg's candidacy for president, and to engage in door-to-door canvassing and recruiting volunteers. *Id.* ¶ 59. FOs regularly worked over 40 hours per week, but the Campaign uniformly classified them as exempt and did not pay overtime wages. *Id.* ¶¶ 62-64. At least once a week, FOs called into a nationwide conference call led by the Campaign's New York City headquarters, and regularly called prospective voters across state lines, using an internet-based auto-dialer software program. *Id.* ¶ 60. FOs used Campaign email addresses to communicate across state lines. *Id.* ¶ 68

The Campaign also engaged in commercial activities including selling branded merchandise through its online store, with the business purposes of raising revenue, collecting voter data, and marketing the Campaign. *Id.* ¶ 186. The Campaign's merchandise sales amounted to approximately $890,000 in revenue and the merchandise, including anti-President Trump paraphernalia, competed with other goods in the marketplace. *Id.* ¶ 204. Plaintiffs also participated in the sale of this merchandise by, among other things, directing attendees at campaign events to the Campaign's online store to make purchases. *Id.* ¶ 209.

## <u>LEGAL STANDARD</u>

At the pleading stage, the district court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). For plaintiffs to "'nudge[] their claims across the line from conceivable to plausible,' they must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (alteration in original) (quoting *Twombly*, 550 U.S. at 570, 556).

Plausibility is "not akin to a 'probability requirement'" but requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "The standard is one of 'flexible plausibility[.]'" *Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008)); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]" (alteration in original) (quoting *Twombly*, 550 U.S. at 556)).

The Court, when reviewing a motion to dismiss, "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). This is because "[a] motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint," and takes "no account of its basis in evidence." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). The test of the "substantive merits" of a plaintiff's claims, in contrast, is reserved for the summary judgment phase of the case, which occurs after the parties have exchanged discovery, taken depositions, and can submit that evidence as contemplated by Rule 56. *Glob. Network Commc'ns, Inc.*, 458 F.3d at 155 (quoting *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 154 (2d Cir. 2002)).

**ARGUMENT**

**I.      Plaintiffs State a Claim of Fraudulent Inducement.**

Plaintiffs exceed the pleading requirements for their fraudulent inducement claim because they allege that: (1) the Campaign misrepresented present facts; (2) it intended to deceive them; (3) Plaintiffs reasonably relied on the Campaign's misrepresentations; and (4) Plaintiffs suffered legally cognizable injuries. *Stamelman v. Fleishman-Hillard, Inc.*, No. 02 Civ. 8318, 2003 WL 21782645, at *5 (S.D.N.Y. July 31, 2003) (setting forth the elements of a fraudulent inducement claim). Further, Plaintiffs meet the heightened standard for Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") because they plead their fraud claims with sufficient particularity. *See Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). Plaintiffs specify what statements constituted false promises, who made them, when and where they made them, and allege that the Campaign intended to defraud Plaintiffs to induce them to forgo other opportunities and work for the Campaign. *See id.* (requiring plaintiff to identify "the time, place, speaker, and . . . the content of the alleged misrepresentation" for claims of fraudulent inducement).

**A.      Plaintiffs Adequately Allege the Elements of Fraudulent Inducement.**

**1.      Plaintiffs Allege the Campaign Misrepresented Present Facts and Made Future Promises It Did Not Intend to Perform.**

Plaintiffs allege that the Campaign misrepresented present facts and made future promises that the Campaign never intended to perform. *See Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (holding that misrepresentations of present fact or future promises that defendant "knew that it did not intend to fulfill" sufficient to plead a claim for fraudulent inducement). Plaintiffs allege that the Campaign misrepresented present facts that: (1) it signed

6

real estate leases through November 2020; (2) "buil[t] a machine" to operate through November; and (3) committed resources to have offices "open till November." SAC ¶¶ 13-15. Because these statements were false at the time they were made, they were misrepresentations of present facts. *See Stewart*, 976 F.2d at 89 (holding that defendant's statements that it "had recently secured a large environmental law client" and "was in the process of establishing an environmental law department" were representations of present facts).

In addition, Plaintiffs allege that the Campaign made future promises that it had a preconceived and undisclosed intention of not performing. Specifically, the Campaign promised Plaintiffs "the opportunity to work on the primary and general elections." SAC ¶ 5; *see also id.* ¶¶ 3, 7. Plaintiffs point to the speed at which the Campaign uniformly terminated its entire field staff as circumstantial evidence that the Campaign knew that the future promises were false. *Id.* ¶¶ 45-46. At the pleading stage, plaintiffs may rely on circumstantial evidence that defendant was aware the promises were false. *Trugman-Nash, Inc. v. New Zealand Dairy Bd.*, 942 F. Supp. 905, 924 (S.D.N.Y. 1996) ("Allegations supporting an inference of fraudulent intent frequently include . . . circumstances indicating that the statement was false when made.").

The Campaign is wrong that at-will employees are barred from pleading fraudulent inducement claims based on future promises.[1] *Stewart*, 976 F.2d at 89 (finding fraudulent intent

---

[1]    Of note, Plaintiffs do not allege that they were employees at-will anywhere in their Complaint. It is improper at the pleading stage for the Campaign to enter evidence (a purported offer letter and handbook) regarding Plaintiffs' employment status that Plaintiffs do not reference in their Complaint, is not integral to the Complaint, and that Plaintiffs have not had the opportunity to cross examine. *See Chambers*, 282 F.3d at 153 (holding that the evidence outside the pleadings is only appropriate at the motion to dismiss stage where plaintiff relied "on the terms and effect of a document in drafting the complaint"). Further, that the parties "disagree as to whether and how [the documents] relate to or affect" the claims at issue demonstrates that the documents are not integral to the Complaint. *Id.* at 154.

The Campaign's cases supporting the introduction of evidence at the pleading stage are factually inapposite. In *Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15 Civ. 2030, 2016 WL

where defendant made a future promise to an at-will employee with "preconceived and undisclosed intention of not performing it" (quoting *Sabo v. Delman*, 143 N.E.2d 906, 908 (N.Y. 1957))). Allegations that a defendant-employer did not intend to keep a future promise "makes [the representation] an allegation of present fact which gives rise to a claim of fraudulent inducement." *Stewart*, 976 F.2d at 89; *see also Stamelman*, 2003 WL 21782645, at *6 (allegation that defendant, "at the time it made the future promises, 'knew them to be false,'" renders those representations allegations of existing fact").

Further, courts recognize specifically that "a valid fraud claim can arise out of misrepresentations leading to the acceptance of an at-will employment contract." *Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, at *8 (S.D.N.Y. Aug. 11, 2015); *see also Doehla v. Wathne Ltd.*, No. 98 Civ. 6087, 2000 WL 987280, at *5-6 (S.D.N.Y. July 17, 2000) (allegation that defendants "knew that the representations they made to [plaintiff] about what his position would be and what he would be allowed to do were not true when they made them" sufficient to show misrepresentation); *Kissner v. Inter-Continental Hotels Corp.*, No. 97 Civ 8400, 1998 WL 337067, at *3 (S.D.N.Y. June 25, 1998) (allegation that plaintiff's promised future advancement within defendant-company to vice president role was "keyed" to plaintiff agreeing to relocate for job sufficient to show misrepresentation). As explained further in Part I.A.4, Plaintiffs' fraudulent inducement claim does not hinge on the promise of continued employment itself, it challenges that promise as a ploy to induce Plaintiffs to quit their jobs, drop

---

3571387 (S.D.N.Y. June 27, 2016), the procedures in the collective bargaining agreement bore directly on the grievance procedures relating to the plaintiff's claims, as well as whether they should be submitted to arbitration. *Id.* at *1. Similarly, the court concluded in *Berman v. Neo@Ogilvy LLC*, No. 14 Civ. 00523, 2014 WL 6865718 (S.D.N.Y. Aug. 15, 2014), that the handbook was integral to the complaint because the complaint "references the codes and policies," and the claims "rel[ied] heavily on [the handbook's] terms and effect." *Id.* at *4. Here, Plaintiffs do not rely on or even reference the documents.

out of school, and/or relocate to work for the Campaign.

The cases on which the Campaign relies show that "at-will employees can recover for fraudulent statements that induce them into accepting positions of employment," *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 525 (S.D.N.Y. 2017) (citation omitted); *see also Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 317 n.4 (S.D.N.Y. 2005) (noting that at-will employees can plead a fraud claim when they allege a "present fact"), or do not reach the exception regarding future promises articulated in *Stewart*. *See Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 Civ. 5474, 2008 WL 857492, at *15-16 (S.D.N.Y. Mar. 31, 2008) (statement that defendant promised plaintiff "job security" was a future promise and, at summary judgment, plaintiff did not adduce any evidence that defendant had no intention of fulfilling promise when made).

### 2. Plaintiffs Allege the Campaign Had Motive and Opportunity to Defraud.

Plaintiffs' allegations regarding the Campaign's motive and opportunity to fraudulently induce field staff give rise to a strong inference of fraudulent intent, which at the pleading stage "may be alleged generally." Fed. R. Civ. P. 9(b); *see also Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (providing that plaintiffs may "allege fraudulent intent generally"). Prior to discovery, "it would be unrealistic to expect a plaintiff to plead a defendant's actual state of mind." *Drexel Burnham Lambert Grp. v. Microgenesys, Inc.*, 775 F. Supp. 660, 664 (S.D.N.Y 1991); *see also Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987). Accordingly, "great specificity [is] not required," *Conn Nat'l Bank*, 808 F.2d at 962, and a "minimal factual basis" in support of the allegations is sufficient, *id.* Further, when the "facts are peculiarly within the opposing party's knowledge," as they are here, allegations of intent may be based on information and belief. *Trugman-Nash, Inc.*, 942 F. Supp. at 924.

Fraudulent intent can be sufficiently pleaded by alleging that a defendant "had both motive and opportunity to commit fraud." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Motive can be alleged based on "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures." *Id.* at 1130. Opportunity, similarly, "entail[s] the means and likely prospect of achieving concrete benefits by the means alleged." *Id.* "The usual finding of clear opportunity arises when the defendant is already well positioned to carry out the fraudulent transaction, such as when he possesses the necessary trust and authority." *Stamelman*, 2003 WL 21782645, at *6 n.3.

Here, Plaintiffs allege that the Campaign had the requisite motive because it urgently needed to attract thousands of field staffers, most of whom would not take a job on a campaign that was limited to a few months of work during the Democratic primaries (especially because it meant leaving long-term, stable employment). *Id.* ¶ 1. Because Mr. Bloomberg was late to join the primary race, the Campaign falsely promised prospective employees the opportunity to work on the general election, regardless of who the ultimate Democratic nominee was, to quickly attract thousands of employees, even though the Campaign knew the promises were false. *Id.* ¶¶ 4, 6, 49. The promises were made "in order to induce [them] to accept positions on the Campaign and continue to work on the Campaign until the Campaign decided to terminate them." *Id.* ¶ 51. These allegations show non-generalized, concrete benefits that the Campaign realized by making these false promises.

Plaintiffs also sufficiently pleaded that the Campaign had opportunity to commit fraud. "The Campaign was well-positioned to carry out its fraudulent promises because, among other reasons, it advertised open positions nationally and publicly disseminated the false promises through its extensive media presence." *Id.* ¶ 9. Mr. Bloomberg and senior campaign staff made

public statements, including in various national media outlets conveying the promise before and during the campaign. *Id.* ¶¶ 11, 13-24. Further, "[a]s a longtime politician and national figure, Mr. Bloomberg possessed trust and authority that provided him with the opportunity to carry out the false promises that he and the Campaign made." *Id.* ¶ 10; *see also Jaquith v. Newhard*, No. 91 Civ. 7503, 1993 WL 127212, at *7 (S.D.N.Y. Apr. 20, 1993) (holding that president of company had opportunity to commit fraud due to his position).

Critically, the Campaign concedes that it is a permissible inference that the Campaign knew, contrary to its promises, that it would terminate the field staff. Mot. at 19 (stating that Plaintiffs' allegations are "equally compatible with the opposite inference"). At this stage, all inferences must be drawn in favor of Plaintiffs. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015) (providing that "the alleged fraud need only be plausible based on the complaint; it need not be more likely than other possibilities").

The Campaign's cases are inapposite. In *Cloke-Brown v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 10 Civ. 2249, 2011 WL 666187 (S.D.N.Y. Feb. 9, 2011), the plaintiff alleged "no specific facts demonstrating that the [defendants] had both motive and opportunity to commit fraud." *Id.* at *5. That is not the case here, where Plaintiffs allege numerous facts showing that the Campaign had motive and opportunity to commit fraud. The decision in *Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, is similarly irrelevant because it is a summary judgment decision where, even after full discovery, the plaintiff had "adduced no evidence" showing that the defendant's promises were false when made. 2008 WL 857492, at *16.

### 3. Plaintiffs Allege Reasonable Reliance.

The Complaint alleges sufficient facts to show that Plaintiffs' reliance on the Campaign's

repeated false promises was reasonable.[2]  A party sufficiently pleads that their reliance on a false promise was justifiable where they allege that they relied on information "peculiarly in the possession of defendants" and "that issues of fact exist[] as to whether plaintiffs' due diligence efforts were sufficient and their reliance reasonable."  *TIAA Glob. Investments, LLC v. One Astoria Square LLC*, 127 A.D.3d 75, 84 (N.Y. App. Div. 2015).

Here, Plaintiffs reasonably relied on the Campaign's repeated, consistent, and specific promises that it would provide field staff with the opportunity to work on the general election and that it had created the infrastructure to support such an endeavor.  SAC ¶¶ 3, 5, 7, 18, 25, 35, 37; *see also Stewart*, 976 F.2d at 89 (holding that promises that defendant did not intend to keep "makes [the representation] an allegation of present fact which gives rise to a claim of fraudulent inducement").  The false promises were repeated dozens of times in the media, in one-on-one conversations before Plaintiffs were hired, throughout their employment, and with reference to actions the Campaign had taken to implement the promises, for instance, leasing real estate through November.  SAC ¶¶ 13-24.  The false promises were incorporated into a written interview guide and stated by director-level staffers during interviews with Plaintiffs.  *Id.* ¶¶ 19-20.  When hired, the Campaign repeated these promises yet again, *id.* ¶¶ 19, 22, and simultaneously pressured Plaintiffs "to act very quickly" to start working, giving them "little to no time" to pack up and move to new work locations.  *Id.* ¶¶ 31-33.  The Campaign even encouraged Plaintiffs to repeat the false promises (of course, the falsehood was unknown to Plaintiffs) "in their talking points" in order to "increase support for Mr. Bloomberg."  *Id.* ¶ 40. Mr. Bloomberg, a billionaire businessman who has spent decades on the public stage, repeatedly

---

[2]      The Campaign does not argue that Plaintiffs failed to adequately allege actual reliance on the Campaign's false promises in their Complaint.

affirmed his commitment to defeating Donald Trump regardless of whether he was the nominee, pointing to his own vast wealth as proof that his commitment was possible. *Id.* ¶¶ 16, 18, 26.

The Campaign's argument that Plaintiffs' purported status as at-will employees undermines any reasonable reliance on their false promises is wrong because Plaintiffs' fraudulent inducement claim does not flow from their termination by the Campaign; it flows from the harm they endured by forgoing other opportunities when they were induced to take the job. *See, e.g.*, *Hyman v. Int'l Bus. Machines Corp.*, No. 98 Civ. 1371, 2000 WL 1538161, at *3 (S.D.N.Y. Oct. 17, 2000) (denying summary judgment because "the measure of reliance here centers on the representation of a five-year contract that induced [p]laintiffs to leave [their former employer]"); *Cole v. Kobs & Draft Adver., Inc.*, 921 F. Supp. 220, 224-26 (S.D.N.Y. 1996) (holding that plaintiff's reliance was not unreasonable *per se* because she "[did] not seek to hold her former employer liable for damages arising out of her termination, and therefore the employment-at-will doctrine is not implicated"); *Garnier v. J.C. Penney Co.*, 863 F. Supp. 139, 143 (S.D.N.Y. 1994) (holding that plaintiff, who remained in defendant's employ in reliance on false promises, presented genuine issue of material fact as to reliance). Plaintiffs reasonably relied on the Campaign's promises when they forwent other opportunities and moved.

The cases cited by the Campaign are inapposite because they only concern future promises and do not fall within the ambit of *Stewart*, as this case does. For example, the decision in *Wurtsbaugh v. Banc of Am. Sec., LLC*, No. 05 Civ. 6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006), gives no indication the plaintiff alleged facts that his employer's vague, one-off assurance that his employment "was not in jeopardy" was a future promise that it never intended to fulfill. *Id.* at *3. Here, like in *Stewart*, Plaintiffs allege that the employer made specific and false representations about its current endeavors and future promises that it

never intended to fulfill.

The Campaign's remaining cases are equally unpersuasive. *See, e.g.*, *Downey*, 238 F. Supp. 3d at 525 (no allegation that employer made *any* misrepresentations, present or future); *Deluca*, 2008 WL 857492, at *16 (alleged fraudulent statement was a future promise and plaintiff did not allege that defendant never intended to fulfill it); *Meyercord v. Curry*, 38 A.D.3d 315, 316 (N.Y. App. Div. 2007) (fraudulent inducement claim only involved allegations of "future intentions"); *Berger v. Roosevelt Investment Grp. Inc.*, 28 A.D.3d 345, 345-46 (N.Y. App. Div. 2006) (holding that "plaintiff failed to show a misrepresentation or material omission of fact that was false and known to be so by the defendant").

### 4. Plaintiffs Allege Injuries Unrelated to Termination.

Plaintiffs allege a cognizable injury because "the injury alleged stems from leaving a former place of employment or agreeing to remain in a compromised position at a current place employment." *Hyman*, 2000 WL 1538161, at *3 (citing *Stewart*, 976 F.2d at 88-90). These injuries are distinct from those arising from termination because they precede termination and stem from the harm caused by abandoning or losing other opportunities—such as another job or forsaking career development—in reliance on the false promises. *See, e.g.*, *Laduzinski v. Alvarez & Marsal Tax & LLC*, 132 A.D.3d 164, 168 (1st Dep't 2015) (that defendant "misrepresented the nature of the job [it was] hiring him to do" was an injury that "preceded his termination").

Courts in this Circuit routinely conclude that fraudulent statements that induce employees to leave previous employers—or to remain employed—to their detriment are sufficient to state an injury for a fraud claim. *See, e.g.*, *Stewart*, 976 F.2d at 89 (holding that promises inducing plaintiff to leave her job for a position with defendant caused injuries unrelated to her termination); *Tellez v. OTG Interactive, LLC*, No. 15 Civ. 8984, 2016 WL 5376214, at *4

(S.D.N.Y. Sept. 26, 2016) (allegations that plaintiff "lost the benefits of his prior employment" sufficient to state injury); *Stamelman*, 2003 WL 21782645, at *5 (fraudulent statements that plaintiff would be able to develop an entertainment marketing practice did not arise out of plaintiff's termination); *Doehla*, 2000 WL 987280, at *3-4 (allegation that defendant induced plaintiff to resign his job, causing him damages in excess of $6 million, was cognizable injury); *Cole*, 921 F. Supp. at 224 (allegations of "phantom promises of a promotion and sustained employment," which induced plaintiff to remain employed by defendant to her detriment); *Garnier*, 863 F. Supp. at 143 (allegations that fraudulent statements that induced plaintiff to stay in defendant's employ to his detriment sufficient to state injury).

The cases cited by the Campaign are either consistent with this rule, *Tellez*, 2016 WL 5376214, at *4, or are state cases that do not apply the rule articulated in *Stewart*, which is binding on federal courts in this Circuit. *See Smalley v. Dreyfus Corp.*, 882 N.E.2d 882, 884 (N.Y. 2008) (distinguishing *Stewart* "[w]ithout adopting or rejecting" it); *Kinsella v. Powerguard Specialty Ins. Servs., LLC*, 112 A.D.3d 414 (1st Dep't 2013) (relying on *Smalley*); *cf. Walia*, 2015 WL 4743542, at *8 (discussing *Smalley*).

### B. Plaintiffs Plead Facts Sufficient to Meet Rule 9(b)'s Heightened Pleading Standard.

Rule 9(b) requires that a complaint alleging fraud identify "the time, place, speaker, and . . . the content of the alleged misrepresentation." *Ouaknine*, 897 F.2d at 79; *DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir. 1987) (same); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (same). Rule 9(b) does not require Plaintiffs to plead facts showing incontrovertible proof of the fraud at the pleading stage, or even that the fraud was "more likely than other possibilities." *Lorely Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 174 (Rule 9(b) "does not require factual pleadings that demonstrate the *probability* of wrongdoing").

15

Here, the Complaint references more than 65 specific occasions where a Campaign official made misrepresentations.  SAC ¶¶ 11-24.  As an example, the Complaint alleges that Campaign Manager Kevin Sheekey stated to Joe Hagan, a journalist at Vanity Fair, in an article that was published on February 24, 2020: "Mike [Bloomberg] has been very clear that he's in this for the long term.  That was Mike's idea.  'All those leases, sign them through November.  Hire those people through November and if they're working for us, that's going to be great, and if they're not, they're still going to be working towards what I've said is the most important thing to me this year.'"  *Id.* ¶ 13.  Senior Campaign Advisor Tim O'Brien stated to Dan Solomon, a reporter at TexasMonthly, in an article that was published on March 10, 2020: "and we've said this a lot publicly now—we're hiring people for a year.  This office is going to be open till November.  Everybody is being hired through the election."  *Id.* ¶ 15.  The Complaint also alleges that, on December 15, 2019, Mr. Bloomberg publicly stated to employees at an event to mark the opening of the Campaign's Charlotte, North Carolina office that the employees would remain employed through November 2020.  *Id.* ¶ 11.

Plaintiffs also allege numerous other public, quoted statements from identified, high-ranking campaign officials that were published in news outlets—which show when and where the statements were made—repeating the Campaign's false promise to provide Plaintiffs with the opportunity to work on the primary and general elections.  *Id.* ¶¶ 12-19.  Statements to the press, like the ones made here, can serve as the basis for a fraud claim.  *In re Columbia Sec. Litig.*, 747 F. Supp. 237, 241-42, 245 (S.D.N.Y. Sept. 26, 1990) (holding that statements to reporters attributable to defendant sufficient to state fraud claim); *see also Nemo Tile Co. v. Shawmut Nat'l Corp.*, No. 95 Civ. 0757, 1995 WL 1682315, at *2 (E.D.N.Y. Nov. 1, 1995) (same); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265 (2d Cir. 1993) (same); *Alfus v. Pyramid Tech.*

*Corp.*, 764 F. Supp. 598, 602-03 (N.D. Cal. 1991) (same).

In addition to public statements to the press, the Complaint identifies more than 60 director-level staffers who communicated the false promises to Plaintiffs, and identifies when they did so, and, if known, from where. SAC ¶¶ 23-24. The Complaint alleges that individual Plaintiffs relied on the Campaign's false promises because they heard the promises made in the media and from director-level staffers. *See, e.g.*, *id.* ¶¶ 81, 83, 85, 87, 89, 91.[3]

For these reasons — and those set forth above in Part I.A.2 — Plaintiffs plead their fraud claims with particularity, sufficient to give rise to a strong inference of fraudulent intent.

## II. Plaintiffs Properly Plead Their Promissory Estoppel Claim.

### A. New York Law Permits Promissory Estoppel Claims in the Employment Context.

Contrary to the Campaign's representations, promissory estoppel claims are permissible under New York law in the employment context. *See, e.g.*, *Lord v. Marilyn Model Mgmt., Inc.*, 104 N.Y.S.3d 622, 624 (N.Y. App. Div. 2019) (reversing order granting motion to dismiss promissory estoppel claim in employment context); *Rogers v. Town of Islip*, 646 N.Y.S.2d 158, 158-59 (N.Y. App. Div. 1996) (affirming denial of motion to dismiss promissory estoppel claim

---

[3]   Contrary to the Campaign's argument, *Walia v. Veritas Healthcare Solutions, LLC* was dismissed not for failing to identify whether the plaintiff heard the statement, but for failing to allege a fraudulent statement at all. 2015 WL 4743542, at *8. The other cases cited by the Campaign were deficient in ways Plaintiffs' Complaint is not. In *Cloke-Brown*, the plaintiff did not allege the time or place of any of the statements, 2011 WL 666187, at *5, unlike Plaintiffs' Complaint, which does allege the time and place of statements. *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315 (S.D.N.Y. 2012), was dismissed because the plaintiff only provided a "general description" of the fraudulent statements and failed to state "when and where the statements were made," *id.* at 324, unlike here, where Plaintiffs allege what statements were fraudulent and when and where they were made. In *Schlenger v. Fidelity Emp. Servs. Co.*, 785 F. Supp. 2d 317 (S.D.N.Y. 2011), the plaintiff failed to "name individuals, identify detailed statements, or identify particular dates," *id.* at 352, which is not a deficiency in Plaintiffs' Complaint, which identifies the statements, names the individuals who made them, and states when the statements were made.

in employment context). Accordingly, courts in this District properly follow New York law by permitting such claims and denying motions seeking to dismiss them. *See Katsoolis v. Liquid Media Grp., Ltd.*, No. 18 Civ. 9382, 2019 WL 4735364, at *4 (S.D.N.Y. Sept. 27, 2019) (denying motion to dismiss promissory estoppel claim in employment context); *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 181 (S.D.N.Y. 2007) (same); *Jacobs v. Carsey-Werner Distrib.*, No. 93 Civ. 6825, 1994 WL 116077, at *4 (S.D.N.Y. Mar. 30, 1994) (denying summary judgment on promissory estoppel claim regarding employment agreement).

The Campaign misstates the law on this threshold issue. While some courts have stated that New York law typically does not allow for promissory estoppel claims in the context of *indefinite* but at-will employment, *see, e.g.*, *Dalton v. Union Bank of Switzerland*, 520 N.Y.S.2d 764, 766 (N.Y. App. Div. 1987), courts recognize that there is no "categorical rejection of promissory estoppel in the employment context" under New York law, *Baguer v. Spanish Broad. Sys., Inc.*, No. 04 Civ. 8393, 2007 WL 2780390, at *6, 5 (S.D.N.Y. Sept. 20, 2007). Moreover, courts permit claims involving promises of employment for a specific duration of time less than one year. *See, e.g.*, *Pearce*, 528 F. Supp. 2d at 181. Here, Plaintiffs have alleged that employment was for a fixed duration of time of less than one year: through the November 2020 presidential election. *See, e.g.*, SAC ¶¶ 3, 5, 7. Cases cited by the Campaign are not relevant and do not support dismissal because, among other reasons, they involve allegations of indefinite at-will employment or for payment of certain bonuses, neither of which are at issue here.[4]

---

[4]   *See Allison v. Clos-ette Too, LLC*, No. 14 Civ. 1618, 2014 WL 4996358, at *9 (S.D.N.Y. Sept. 15, 2014) (dismissing claim where alleged employment agreement was not for "a fixed duration" and there were insufficient allegations regarding reasonable reliance); *Andrews v. Sotheby Int'l Realty, Inc.*, No. 12 Civ. 8824, 2014 WL 626968, at *10 (S.D.N.Y. Feb. 18, 2014) (dismissing claim regarding non-payment of bonus and severance); *Kramsky v. Chetrit Grp., LLC*, Nos. 10 Civ. 2638, 10 Civ. 9458, 2011 WL 2326920, at *3-4 (S.D.N.Y. June 13, 2011) (dismissing claim where promise was for "a long-term position" of indefinite duration);

**B.      Plaintiffs Have Properly Pleaded All Promissory Estoppel Elements.**

Under New York law, "promissory estoppel has three elements: (1) an unambiguous promise; (2) reasonable and foreseeable reliance on the promise; and (3) injury as a result of the reliance." *Pearce*, 528 F. Supp. 2d at 181 (citing *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)).  The court in *Pearce* held that the plaintiff properly pleaded the elements of promissory estoppel where, like here, the plaintiff alleged that "the parties had an unambiguous agreement," that the plaintiff relied on the promise and forwent other career opportunities, and that the plaintiff was "financially and emotionally harmed by her reliance." *Id.*

**1.      The Campaign Unambiguously Promised to Employ Plaintiffs Through the General Election, a Fixed Duration.**

The Campaign appears to concede that dismissal is not warranted based on the first element of a promissory estoppel claim – that Defendant made an unambiguous promise to Plaintiffs.  *See* Mot. at 25-27 (arguing for dismissal only on second and third elements). Plaintiffs' Complaint details the many unambiguous promises the Campaign made of employment through the general election.  SAC ¶¶ 3, 5-7, 11, 13, 15-18.  Plaintiffs quoted the Campaign's top campaign officials, including Mr. Bloomberg, who made such promises publicly.  *See id.*; *supra* Background Part II.  The Campaign does not even attempt to set forth a reasoned argument that these explicit promises are not clear or unambiguous.

**2.      Plaintiffs Reasonably and Foreseeably Relied on the Campaign's Promises.**

Plaintiffs' Complaint properly alleges that they reasonably and foreseeably relied on the

---

*Bessemer Tr. Co. v. Branin*, 498 F. Supp. 2d 632, 639 (S.D.N.Y. 2007) (granting summary judgment where evidence showed that there was no unambiguous promise).

Campaign's promises.[5]  As was set forth above in Part I.A.3, with respect to Plaintiffs'

fraudulent inducement claim, Plaintiffs reasonably relied on the Campaign's representations that

it would provide an opportunity for them to work on the primary and general elections by

accepting the positions and forgoing other opportunities.  *See supra* Background Part II.  Further,

the Campaign not only foresaw this reliance; it *intended* this reliance because it understood it

needed to provide prospective employees with a promise for a longer-term employment to

quickly hire necessary staff for Mr. Bloomberg's primary race.  *Id.*

Plaintiffs' allegations more than satisfy the pleading standard for this element.  *See*

*Katsoolis*, 2019 WL 4735364, at *1-2, *4 (plaintiff sufficiently alleged reliance on promise of

payment by asserting that she continued working for defendant); *Pearce*, 528 F. Supp. 2d at 181

(allegations that plaintiff "relied on the promise [of employment] in learning her lines and

forgoing other career opportunities" sufficient to satisfy this element).  Even after discovery,

courts have denied summary judgment motions where there was a dispute about whether a

plaintiff's reliance was reasonable.  *See Jacobs*, 1994 WL 116077, at *4-5 (denying summary

judgment in case involving oral promise to pay wages not mentioned in employment agreement).

The two cases cited by the Campaign on this element do not support dismissal.  *See*

*Leschak v. Raiseworks, LLC*, No. 14 Civ. 8072, 2016 WL 11695068, at *4, 8 (S.D.N.Y. Mar. 7,

2016) (dismissing estoppel claims because reliance on an agreement for indefinite employment is

not reasonable in at-will context); *Kramsky*, 2011 WL 2326920, at *4 (same).

### 3.      Plaintiffs Properly Allege That They Were Injured.

Under New York law, Plaintiffs must allege an "injury as a result of [the alleged]

---

[5]      SAC ¶¶ 25-28, 35-40, 50, 52-53, 56, 81, 83, 85, 87, 89, 91, 93, 95, 97, 99, 101, 103, 105, 107, 109, 111, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 137, 139, 141, 143, 145, 147, 149, 151, 153, 155, 157, 158, 160, 162, 164, 166, 168, 170, 172, 174, 176, 178, 428-430.

reliance," *Pearce*, 528 F. Supp. 2d at 181, which they did.  SAC ¶¶ 28, 47, 53, 57, 451.  Plaintiffs

alleged that "[t]he Campaign's termination of the field staff deprived them of promised income,

healthcare and other benefits, and the meaningful opportunity to work on the primary and

general election campaign, leaving them without a source of income and their families

potentially uninsured in the face of a global pandemic." *Id.* ¶¶ 47, 53, 54, 57.  That Plaintiffs

plead financial and opportunity losses is sufficient to meet the damages element of a promissory

estoppel claim.  *Pearce*, 528 F. Supp. 2d at 181; *Jacobs*, 1994 WL 116077, at \*4-5 (at summary

judgment, injury of lost wages from unpaid vacation time was sufficient injury); *see also Piven*

*v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578, 2010 WL 1257326, at \*9

(S.D.N.Y. Mar. 12, 2010) (allegations of financial injury sufficient to state claim).

The Campaign misstates the law and argues that Plaintiffs must meet a higher standard by

alleging that they suffered "injury of unconscionable proportions."  Mot. at 26-27.  The law

requires only that Plaintiffs allege "an injury sustained as a result of [their] reliance." *Jacobs*,

1994 WL 116077, at \*4-5 (citation omitted).  The more demanding requirement of "injury of

unconscionable proportions" is applicable "only where promissory estoppel is invoked as a

defense to the Statute of Frauds."[6] *Pearce*, 528 F. Supp. 2d at 181 (collecting cases); *accord*

*ABA Refinery Corp. v. Republic Metals Ref. Corp.*, No. 15 Civ. 8731, 2017 WL 4481170, at \*5

(S.D.N.Y. Oct. 5, 2017) ("When promissory estoppel is employed to overcome the statute of

frauds, the doctrine only applies 'in those rare cases where the circumstances [are] such as to

render it *unconscionable* to deny the oral promise upon which the promisee has relied.'" (citation

---

[6]     New York's Statute of Frauds requires a written agreement if "by its terms [it] is not to
be performed within one year from the marking thereof."  N.Y. Gen. Oblig. Law § 5-701(a)(1).
Here, Plaintiffs allege that their employment was promised for less than one year, until
November 2020. *See, e.g.*, SAC ¶¶ 3, 5, 7.

omitted)).  Because the Campaign has not raised the Statute of Frauds as a defense, and because

Plaintiffs' estoppel claims are not in response to such a defense, this higher standard is not

applicable.  *See Pearce*, 528 F. Supp. 2d at 181.

The additional cases cited by the Campaign do not support dismissal and are not factually

analogous to the specific, well-pleaded allegations Plaintiffs have provided.  Two of these cases

expressly state that they required allegations of an "unconscionable injury" because the Statute

of Frauds applied.  *See George v. Thomas*, No. 19 Civ. 3020, 2020 WL 1643486, at \*2-3

(E.D.N.Y. Mar. 31, 2020) (applying higher standard because case involved "a contract that is

unenforceable under the statute of frauds"); *Stillman v. Townsend*, No. 05 Civ. 6612, 2006 WL

2067035, at \*4-5 (S.D.N.Y. July 26, 2006) (same).  The remaining cases themselves misstate the

law by citing to Statute of Frauds cases without saying so or otherwise misciting authority.  For

example, in *Fishoff v. Coty Inc.*, 676 F. Supp. 2d 209, 216 & n.57 (S.D.N.Y. 2009), the court

states that a plaintiff must prove an "unconscionable injury," but relies on the Second Circuit's

opinion in *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000), which affirms that the law

requires only "injury to the relying party as a result of the reliance[,]" never even mentions the

word "unconscionable" in the entire opinion, and does not apply any heightened requirements to

the facts.  Similarly, in *Baguer v. Spanish Broad. Sys., Inc.*, No. 04 Civ. 8393, 2007 WL

2780390, at \*1, 5 (S.D.N.Y. Sept. 20, 2007), the court states that "several New York courts"

have applied an "unconscionable" standard to promissory estoppel claims but cites only cases

that required this standard because defendants raised the Statute of Frauds as a defense.[7]

---

[7]     *See also Rivera v. City of N.Y.*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005) (at summary
judgment, citing Statute of Frauds case for proposition that, where Statute of Frauds applies, a
change of residence or job is not a sufficient injury) (citing *Cunnison v. Richardson Greenshields
Sec., Inc.*, 485 N.Y.S.2d 272, 275-76 (1st Dep't 1985) ("The choice to forgo current employment
. . . does not put the stigma of unconscionability upon the defendants' right to assert the Statute

Because the Campaign has not invoked the Statute of Frauds in this case, nor could it given the fixed duration of Plaintiffs' employment for less than one year, there is no basis to apply a heightened standard and Plaintiffs need only plead what they have already alleged: an "injury as a result of [the alleged] reliance." *Pearce*, 528 F. Supp. 2d at 181.

III.     **Plaintiffs Properly Plead Their FLSA Claims.**

A.        **The Campaign Satisfies the FLSA's Enterprise Requirements.**

Plaintiffs have pleaded sufficient facts to establish that the Campaign is a covered enterprise under the FLSA because it had employees engaged in the sale of goods, in competition with other sellers, and had a gross volume of sales exceeding $500,000. *See* 29 U.S.C. §§ 203(s)(1)(A)(i), (ii); SAC ¶¶ 180-210. Enterprise coverage "applies when an employer ([i]) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A). Plaintiffs have alleged sufficient facts to establish these prongs. SAC ¶¶ 180-210. Additionally, where the $500,000 sales threshold is satisfied, "the plaintiff is 'virtually' guaranteed to satisfy the first prong." *Balderas v. Barmadon Mgmt. LLC*, No. 17 Civ. 7489, 2019 WL 1258921, at *3 (S.D.N.Y. Mar. 19, 2019) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 528 (S.D.N.Y. 1998)).

Here, the Campaign admits or does not dispute the facts relevant to this analysis: (1) it sold merchandise online, Mot. at 11; SAC ¶¶ 186-203; (2) its gross revenue from these sales was

---

of Frauds."); *Dalton*, 520 N.Y.S.2d at 766 (1st Dep't 1987) (citing Statute of Frauds case involving employment for more than one year for standard regarding alleged injuries including *Ginsberg v. Fairfield-Noble Corp.*, 440 N.Y.S.2d 222, 224-25 (N.Y. App. Div. 1981)).

approximately $890,000, Mot. at 11-12; SAC ¶¶ 203-207; (3) its online sale of products was integral to its general operations, ECF No. 94 at 11 n.6; SAC ¶¶ 186, 210; and (4) it sold products in competition with other commercial sellers of similar products, Mot. at 13; SAC ¶¶ 192-94, 198-200. There is no dispute that the Campaign meets the basic requirements for enterprise coverage.

The only argument advanced by the Campaign on these basic elements is whether its $890,000 in product sales should count towards the FLSA's $500,000 threshold. Mot. at 10-13. The Campaign argues, without citing any authority, that because the Federal Elections Commission ("FEC") requires that sales of merchandise be reported publicly as "contributions," then these proceeds are not counted towards the $500,000 threshold. However, there is no basis for this argument. The Campaign's citations stand only for the irrelevant point that charitable donations made to religious institutions without receiving any goods in exchange may not count towards the $500,000 threshold. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter 2 (Sept. 29, 2008), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2008_09_29_08_FLSA.pdf; *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77 (E.D.N.Y. 2010) (also stating that charitable contributions to a church *may* count if used in "furthering commercial activities"). Neither supports the argument that purchases of a campaign's merchandise should not be counted. In fact, courts routinely count revenue raised by a nonprofit entity's commercial activity toward the $500,000 FLSA threshold. *See Boekemeier v. Fourth Universalist Soc'y in City of N.Y.*, 86 F. Supp. 2d 280, 285-86 (S.D.N.Y. 2000) (church's rental income included in calculation). Here, that the FEC classifies the Campaign's almost $1 million in sales revenue as "contributions" for the purposes of election financial reporting has no bearing on the commercial nature of the activity.

Viewing these facts in the light most favorable to Plaintiffs, the Complaint meets the limited burden at the pleading stage to demonstrate that the Campaign is a covered entity under the FLSA. At a minimum, Plaintiffs are entitled to discovery. *See Davis v. Grp. Homes For Children, Inc.*, No. 09 Civ. 415, 2009 WL 2905767, at *5 (M.D. Ala. Sept. 8, 2009) ("[T]he determination of whether a non-profit entity is covered by the FLSA generally is . . . more appropriately conducted on a Rule 56 motion for summary judgment rather than a Rule 12(b)(6) motion to dismiss.").

**B.     The Campaign Is Not Exempt from the FLSA's Overtime Requirements.**

The Court should reject the Campaign's novel and unsupported argument that it, and all other political campaigns, are exempt from FLSA coverage simply because it is a tax-exempt organization. Mot. at 7-10. Congress added enterprise coverage to the FLSA in 1961 to "substantially broaden[] the scope of the Act to include any employee of an enterprise engaged in interstate commerce." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985); *see also Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009). There are only three specific types of entities that are presumed to lack the "business purpose" necessary for establishing FLSA coverage: charitable ("eleemosynary"), religious, or educational organizations. *See* 29 C.F.R. § 779.214. Even these types of organizations are covered by the FLSA if they are engaged in commercial activities in competition with other businesses in the marketplace. *See id.*; *Alamo Found.*, 471 U.S. at 296 & n.13 ("The statute contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations[.]"). The Campaign admits that it did not operate with any charitable, religious, or educational purpose, *see* Mot. at 10, and so there is no basis under the FLSA to presume that its commercial activities lacked a business purpose. No provision of the FLSA or its supporting

regulations provide an exemption for political organizations, which would be a significant expansion of the statutory language. This is where the inquiry should end.

Even if, contrary to the Campaign's admission, the Campaign's activities were sufficiently analogous to those of charitable, religious, or educational entities, Plaintiffs have alleged sufficient facts to demonstrate that the FLSA still applies. Where an entity, regardless of tax status, "engage[s] in ordinary commercial activities" or "serve[s] the general public in competition with ordinary commercial enterprises," it operates with a "business purpose" and is a covered enterprise under the FLSA. *Alamo Found.*, 471 U.S. at 297-99 (citing 29 C.F.R. § 779.214). Here, Plaintiffs allege that the Campaign sold nearly $1 million of merchandise in its online marketplace in competition with other sellers. While the Campaign asserts generally that it also had a political mission and did not earn a profit on its sales, these facts are not relevant.[8] Even nonprofit entities with a "religious character" are covered by the FLSA where they have engaged in commercial activities. *Alamo Found.*, 471 U.S. at 306; *see also Boekemeier*, 86 F. Supp. 2d at 285-86 ("As the Church's rental activities are in direct competition with other short and long-term commercial landlords and special event locations, they are clearly commercial under the standard articulated by *Alamo* and its progeny[.]"); *Archie*, 997 F. Supp. at 529 (homeless services nonprofit's activities "serve the general public in competition with ordinary commercial enterprises," invoking enterprise coverage).[9]

---

[8]     These facts are not alleged in the Complaint. Even if they were relevant to the analysis, Plaintiffs are entitled to discovery. *See Davis*, 2009 WL 2905767, at *5 (noting that these issues are more appropriately decided following discovery).

[9]     *Wirtz v. Columbian Mutual Life Insurance Co.*, cited by the Campaign at page 7, further supports Plaintiffs. 380 F.2d 903, 907 (6th Cir. 1967). In *Wirtz*, the court found that the defendant's commercial activity, though minimal, furthered the defendant's business by "facilitating the internal operation of the business and from the standpoint of establishing a favorable public image" because it assisted with marketing the company. *Id.* at 906-07.

The Campaign also incorrectly argues that because Congress determined that political campaigns should not be subject to *income tax*, then they cannot be engaged in commercial activity for the purposes of FLSA coverage. *See* Mot. at 12 (citing 26 U.S.C. § 527 and 26 C.F.R. § 1.527-3). No court decisions support this argument. The U.S. Department of Labor regulations and Supreme Court caselaw are clear that tax-exempt organizations *are* covered by the FLSA where they are engaged in commercial activity in competition with other sellers, as the Campaign was. *Alamo Found.*, 471 U.S. at 296; 29 C.F.R. § 779.214.

The Campaign's references to other statutes further emphasize that Congress did not intend to wholly exempt political organizations from the FLSA's coverage. As the Campaign repeatedly emphasizes, Congress affirmatively legislated to exempt political organizations from the income tax provisions of the Internal Revenue Code. *See generally* Mot.; *see also* 26 U.S.C. § 527(a). Under statutory construction principles, Congress's explicit statutory exemption for political organizations in the tax laws demonstrates that when it wishes to exempt such organizations from an area of the law it will do so expressly. *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337-38 (1994) ("Congress knew how to draft a[n] . . . exemption . . . when it wanted to."). The FLSA, however, contains no such exemption.

The other cases cited by the Campaign do not support its arguments. In *Johnson v. Trump for President, Inc.*, the court's review was ultimately limited to a factual finding that the specific *allegations* regarding enterprise coverage in the complaint were insufficient, and so dismissed with leave to amend. No. 19 Civ. 475, 2019 WL 2492122 (M.D. Fla. June 14, 2019).[10] Here, Plaintiffs plead facts directly on this issue. *See* SAC ¶¶ 180-210. The court did

---

[10]     Similarly, none of the Campaign's remaining cases involve similar allegations that the defendants sold nearly $1 million in merchandise in direct competition with other private businesses. *See, e.g.*, *Reagor v. Okmulgee Cty. Fam. Res. Ctr.*, 501 F. App'x 805, 810 (10th Cir.

not hold that political campaigns cannot be covered by the FLSA, and no other court has either.

### C. Plaintiffs Are Covered Individuals Under the FLSA.

Even if the Court finds that the Campaign is not a covered entity, Plaintiffs have alleged sufficient facts to demonstrate that they and other FOs are individually covered by the FLSA. This type of coverage "applies to an employee who has 'engaged in commerce'" and whose work is "related to interstate commerce." *Torralba v. Little India Stores*, No. 14 Civ. 595, 2016 WL 771192, at *4 (S.D.N.Y. Feb. 29, 2016) (citations omitted). Individual coverage applies when employees "handle or otherwise work on goods moving in interstate commerce," such as the "regular[] use [of] the mails, telephone or telegraph for interstate communication." 29 C.F.R. § 779.103; *Foster v. Gold & Silver Private Club, Inc.*, No. 14 Civ. 698, 2015 WL 8489998, at *6 (W.D. Va. Dec. 9, 2015) (stating in FLSA case that "[i]t is well-settled that '[t]he internet is an instrumentality of [interstate] commerce.'" (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004))); *cf. SEC v. Straub*, No. 11 Civ. 9645, 2016 WL 5793398, at *11 (S.D.N.Y. Sept. 30, 2016) ("The Internet unquestionably constitutes an 'instrumentality of interstate commerce.'" (citation omitted)).

Plaintiffs allege that all FOs used the internet and telephones to communicate with the

---

2012) (affirming dismissal where plaintiffs had not alleged defendant was engaged in business purposes or competition with others); *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15 Civ. 6977, 2018 WL 6984837, at *3 (E.D.N.Y. Nov. 16, 2018) (in decision setting aside default judgment, court found only that lack of enterprise coverage is a possible merits defense); *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 56-57 (D.D.C. 2013) (dismissing without prejudice where plaintiff did not *allege* competition with other enterprises and there was "not even a bare allegation" regarding the $500,000 threshold); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 (M.D. Fla. 2005) (at summary judgment, finding that plaintiffs had not presented sufficient "specific" facts regarding enterprise coverage on the question of competition); *Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995) (following bench trial, court found that plaintiffs had not introduced evidence regarding question of competition).

Campaign's New York headquarters and other Campaign employees daily, that they used an internet-based auto-dialer to call prospective voters daily, including prospective voters across state lines, and that they were involved in the sale of Campaign merchandise because they were instructed to direct attendees at events to the Campaign's online store in order to purchase merchandise. SAC ¶¶ 68-73, 209.[11] These facts are sufficient to establish individual FLSA coverage at the pleading stage. As courts in this Circuit recognize, "determination of whether an individual employee is engaged in commerce is a fact-specific inquiry," and accordingly is more appropriate to consider following discovery, at summary judgment. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 264 (E.D.N.Y. 2007); *Boekemeier*, 86 F. Supp. 2d at 287-88 (granting summary judgment to plaintiff). Indeed, nearly all of the cases the Campaign cites were decided *after* discovery, at the summary judgment stage.[12]

## IV. The Court Should Not Strike Plaintiffs' Class Allegations.

Courts strongly disfavor striking class claims at the pleading stage. *See Chenensky v. New York Life Ins. Co.*, No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011); *see also Woods-Early v. Corning Inc.*, 330 F.R.D. 117, 122 (W.D.N.Y. 2019) (motions to strike class allegations "are disfavored and rarely granted"). At the pleading stage, courts apply the same plausibility standard to class claims, whether a defendant's motion is brought under Rule

---

[11]    As further discovery will show, FOs additionally used the internet to produce, upload, and transmit data generated by their outreach to potential voters, and such data is regularly bought and sold in the marketplace by former campaigns.

[12]    *See Reagor*, 501 F. App'x at 810 (no individual coverage where plaintiff did not allege that she used telephone regularly or for interstate communications); *Divins v. Hazeltine Elecs. Corp.*, 163 F.2d 100, 103 (2d Cir. 1947) (reversing summary judgment where at least some duties triggered individual FLSA coverage); *Joles*, 885 F. Supp. at 1178 (following bench trial, finding that plaintiff was not individually covered because, *inter alia*, she did not "make regular or recurrent use of interstate telephone calls, mail, or other instrumentalities or channels of interstate commerce"); *Kitchings*, 393 F. Supp. at 1292-93 (at summary judgment, plaintiffs did not present evidence beyond conclusory allegations regarding individual coverage).

12 or Rule 23. *Woods-Early*, 330 F.R.D. at 122 & n.1. Given this low standard, to succeed on its motion to strike, the Campaign faces the significant burden to "demonstrate from the face of the Complaint that it would be *impossible* to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 698 (S.D.N.Y. Mar. 31, 2015) (emphasis added) (citation omitted); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (such motions are only appropriate if they address issues "separate and apart from the issues that will be decided on a class certification motion" (citation omitted)). If a plaintiff's class allegations satisfy the plausibility standard, then the case proceeds with discovery to evaluate suitability for class treatment. *See Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d at 384, 404 (W.D.N.Y. Oct. 5, 2010) (noting there is "no undue prejudice to defendant by allowing these allegations to remain in the complaint at this point").

Plaintiffs have pleaded sufficient facts to demonstrate that they will plausibly be able to meet the Rule 23 standard following discovery. Plaintiffs allege that there are thousands of putative Class Members that held the same or similar positions, that there are numerous and specific common issues that predominate over any questions affecting only individual members of the Class, that Plaintiffs' claims are typical of the claims of the putative Class Members, that Plaintiffs and Plaintiffs' Counsel will fairly and adequately represent the interests of the Class, and that a class action is superior to all other methods for adjudication of these claims. *See* SAC ¶¶ 226-43. Further, prior to any discovery, Plaintiffs have already alleged facts sufficient to demonstrate that their class claims will turn on common evidence and are capable of class-wide resolution. *See supra* Background Part II.

Class certification of Plaintiffs' common law claims is plausible because "the

misrepresentations relied upon were materially uniform, allowing such misrepresentations to be demonstrated using generalized rather than individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1249 (2d Cir. 2002). Courts regularly certify common law class claims regarding deceptive communications where plaintiffs allege a "common course of conduct." *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *see also, e.g.*, *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 48 (E.D.N.Y. 2008) (certifying a class based on plaintiffs' allegations that defendant engaged in deceptive trade practices); *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 429 (C.D. Cal. 2012) (certifying class of individuals alleging securities fraud).

Contrary to the Campaign's argument, Mot. at 28-33, no "individualized inquiries" are required to determine whether the Campaign uniformly promised Class members the opportunity to work on the primary and general election campaigns through November 2020. Whether the statements were false and whether the Campaign had the intent of not performing the promise are also common issues that will be developed through discovery. These common issues predominate over any question affecting individual members, and a class action is superior because it will avoid conflicting judgments.

Furthermore, no "individualized inquiries" are required to determine whether Class members reasonably relied on the Campaign's misrepresentations. Here, unlike in cases cited by the Campaign, Plaintiffs and Class members relied on the promise in a uniform way by accepting, starting, and continuing employment with the Campaign. Whether that reliance was reasonable will turn on common evidence—for example, that the promise was rooted in Mr. Bloomberg's effort to defeat Mr. Trump's reelection effort, that the Campaign repeatedly pointed to Mr. Bloomberg's vast personal wealth to confirm that he would continue to employ Plaintiffs

and Class members in that effort, that the Campaign had already committed the resources to do so, including leasing offices, and that the Campaign had already begun the planning to continue this work even if Mr. Bloomberg lost the primary election. Any issues concerning Class members' damages will similarly be susceptible to common evidence because the Campaign promised all putative Class Members the same salaries and benefits, for approximately the same length of time (through the November 2020 general election) and laid them off on or around the same day. *Id.* ¶¶ 41, 43, 45.

Plaintiffs sufficiently plead facts to demonstrate that class certification is plausible. As is routine, the Campaign will have the opportunity to take discovery and raise arguments in opposition to Plaintiffs' future motion for class certification. To the extent that discovery reveals any differences in damages or other issues among Class members, this will not defeat certification, and does not support a finding at the pleading stage that certification is not plausible. *See Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 80 (S.D.N.Y. 2018) (granting class certification, and stating that "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members'" (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016))).

The cases cited by the Campaign do not support striking Plaintiffs' class allegations. Indeed, the Campaign cites *just one* case in which a court struck a plaintiff's class allegations. *See Davis v. Navient Corp.*, No. 17 Civ. 992, 2018 WL 1603871, at *5 (W.D.N.Y. Mar. 12, 2018). The facts of *Davis* are easily distinguishable. In *Davis*, the plaintiff alleged that the defendant breached an implied covenant of good faith and fair dealing and tortiously interfered

with a student loan promissory note by withholding information as to plaintiff's best repayment option during his personal interactions with the defendant. *Id.* at *1. The court struck the class allegations because the plaintiff failed to allege facts that the defendant acted uniformly in its interactions with all loan customers, or that customers would have relied on and been injured by the defendant's actions in a common way. *Id.* at *6-7. Here, in stark contrast, 50 plaintiffs uniformly allege the same common misrepresentations, reasonable reliance, and injuries, which demonstrates that it is plausible that they will satisfy Rule 23's requirements.

The remaining cases cited by the Campaign are class certification decisions, which further indicates that the Campaign's arguments should be addressed following discovery at the class certification stage. The facts of those other cases are already distinguishable based on the allegations in the Complaint because they involve misrepresentations that were not "uniform in nature." *See Moore*, 306 F.3d at 1252-53; *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 702 (S.D. Ga. 2002) (same, but finding that estoppel claim met Rule 23(a) requirements); *Luedke v. Delta Airlines, Inc.*, 155 B.R. 327, 330-31 (S.D.N.Y. 1993) (same).[13]

---

[13]     *See also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-55 (D.C. Cir. 2013) (in price fixing antitrust case, remanding class certification order to district court to re-consider use of class-wide damages model); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (in ERISA case, decertifying class of early retirees because the defendant's "statements . . . were not uniform," and varied based on retirement program, facility, etc.); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir. 1996) (in ERISA case, affirming denial of certification where plaintiffs could not show members of the class would have made different insurance benefits choices absent misrepresentation); *Walney v. SWEPI LP*, No. 13 Civ. 102, 2015 WL 5333541, at *22 (W.D. Pa. Sept. 14, 2015) (denying certification where it would be necessary "to examine the negotiation process for each individual lease transaction" because "specific terms and conditions of payment" differed); *Sateriale v. RJ Reynolds Tobacco Co.*, No. 09 Civ. 8394, 2014 WL 7338877, at *12 (C.D. Cal. Dec. 19, 2014) (same where there was no evidence of common reliance facts); *Reynolds v. BLM Co., Inc.*, No. 12 Civ. 1105, 2014 WL 12888364, at *3 (W.D. Ark. Mar. 17, 2014) (same where there was no evidence of common promise and reliance); *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 328-29 (D. Del. 2012) (same because no evidence of common reliance facts); *Salon Fad v. L'Oreal USA, Inc.*, No. 10 Civ. 5063, 2011 WL 4089902, at *11 (S.D.N.Y. Sept. 14, 2011) (same in false advertising case

These class certification decisions offer no support for the Campaign's premature request to strike Plaintiffs' class allegations at the pleading stage.

Because Plaintiffs demonstrate that their claims are susceptible to common evidence and common analysis, they have exceeded the minimal plausibility requirements at the pleading stage. The Court should deny the Campaign's motion to strike Plaintiffs' class allegations.

## V. Should the Court Grant Any Portion of the Campaign's Motion, Plaintiffs Request Leave to Amend Their Complaint.

The Campaign's motion should be denied. However, if the Court concludes that the motion should be granted as to any issue, Plaintiffs request that the Court permit them to amend the complaint to cure any deficiencies. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint," *Hayden*, 180 F.3d at 53, and "refusal to grant leave must be based on a valid ground." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as [Rule 15(a) requires] be 'freely given.'"). Complaints dismissed under Rule 9(b), in particular, are "'almost always' dismissed with leave to amend." *Luce*, 802 F.2d at 56 (quoting 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 9.03 at 9-34 (2d ed. 1986)). Further, when a plaintiff specifically requests leave to amend a complaint, it should be granted. *Shields*, 25 F.3d at 1132 (declining leave to amend because, *inter alia*, plaintiff "did not ask the district court for leave to amend it further").

When courts do deny leave to amend, it is typically because the complaint is facing its second successful motion to dismiss, which is not the situation here. *Melvin v. Cty. of*

---

because analysis involving class member-salons' customers' decision-making too individualized); *Rowell v. Voortman Cookies, Ltd.*, No. 02 Civ. 681, 2005 WL 1026715, at *2 (N.D. Ill. Apr. 27, 2005) (same because no common evidence of reliance).

*Westchester*, No. 14 Civ. 2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016); *Miller v. Pac. Inv. Mgmt. Co. LLC*, No. 12 Civ. 4122, 2013 WL 12305507, at *4 (S.D.N.Y. Apr. 23, 2013) (Swain, J.) (no leave to amend granted because complaint had been amended in response to earlier motions to dismiss).

The sufficiency of Plaintiffs' Complaint had not been tested in full until the Campaign filed its motion to dismiss. Its motion presents arguments for dismissal that it did not raise in its pre-motion letter briefs. Further, to the extent Plaintiffs' fraud claims are found to be deficient, leave to amend should be granted in light of the liberal policy of granting leave to amend claims governed by the Rule 9(b) pleading standard. *See Luce*, 802 F.2d at 56. For these reasons, the Court should give Plaintiffs leave to amend their Complaint to cure any deficiencies.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.

Dated: July 17, 2020        Respectfully submitted,
      New York, NY            */s/ Sally J. Abrahamson*

                        Sally J. Abrahamson
                        Hannah Cole-Chu*
                        **OUTTEN & GOLDEN LLP**
                        601 Massachusetts Avenue NW, Ste 200W
                        Washington, D.C. 20001
                        Telephone: 202-847-4400
                        sabrahamson@outtengolden.com
                        hcolechu@outtengolden.com

                        Justin M. Swartz
                        Michael C. Danna
                        **OUTTEN & GOLDEN LLP**
                        685 Third Avenue, 25th Floor
                        New York, NY 10017
                        Telephone: 212-245-1000
                        jms@outtengolden.com
                        mdanna@outtengolden.com

                        Gregg I. Shavitz*
                        Tamra Givens*

**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com

Michael Palitz
**SHAVITZ LAW GROUP, P.A.**
800 3rd Avenue, Suite 2800
New York, NY 10022
Telephone: (800) 616-4000
mpalitz@shavitzlaw.com

***Attorneys for Plaintiffs and the Putative Collective
and Classes***

\* Admitted *pro hac vice*

## CERTIFICATION OF SERVICE

I hereby certify that on July 17, 2020, the above document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Sally J. Abrahamson*
Sally J. Abrahamson