UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>        Defendant. | 20 Civ. 2489 (LTS)(GWG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
LIMITED MOTION TO STAY DISCOVERY**

Pursuant to this Court's June 29, 2020 Order, *see* Dkt. No. 119, Defendant Mike Bloomberg 2020, Inc. ("Defendant" or the "Campaign") respectfully moves this Court for an Order staying any discovery beyond that ordered by the Court during the July 16, 2020 Initial Case Management Conference ("ICMC") for the brief period needed to resolve the Campaign's pending partial motion to dismiss or to strike the class claims (the "Motion to Dismiss or Strike").[1]

## INTRODUCTION

Plaintiffs were employed as field organizers for the Campaign beginning in January 2020. In connection with the commencement of their employment, Plaintiffs signed four separate acknowledgements that their employment was "at will" and could be terminated "at any time." These documents also explicitly provided that no statement varying the at-will nature of Plaintiffs' employment would be effective unless set forth in a signed writing from an authorized representative of the Campaign. A few weeks after Mr. Bloomberg withdrew from the race in March 2020, the Campaign terminated Plaintiffs' employment.

Plaintiffs filed this action on March 23, 2020. *See* Dkt. No. 1. On March 30, 2020, Plaintiffs filed a First Amended Complaint, and on May 18, 2020 they filed a Second Amended Complaint ("SAC"). *See* Dkt. Nos. 29, 86. The SAC, which is styled as a putative class and collective action, alleges that the Campaign misclassified Plaintiffs as exempt from the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA") and various state wage-and-hour laws and failed to pay them overtime during the few weeks in which they were employed by the Campaign. Plaintiffs also allege—notwithstanding their express written acknowledgment that their employment was at-will—that they were "promised" continued employment through the general election in November 2020, and assert common law claims for fraudulent inducement and

---

[1] The Motion to Dismiss or Strike will be fully briefed in less than two weeks, on July 31, 2020. *See* Dkt. No. 106.

promissory estoppel based on that alleged promise (the "Common Law claims").

The Campaign filed the Motion to Dismiss or Strike on June 17, 2020 as to the FLSA and Common Law claims. *See* Dkt. Nos. 110-113.[2] On June 19, 2020, this Court scheduled the ICMC and directed the parties to file a proposed scheduling order in advance of the conference date. *See* Dkt. No. 115. On June 24, 2020, the Campaign filed a letter requesting a pre-motion conference to address its anticipated motion for a stay of discovery pending resolution of the Motion to Dismiss or Strike. *See* Dkt. No. 117. By Order dated June 29, 2020, this Court waived its pre-motion conference requirement and directed the parties to agree to a briefing schedule pursuant to this Court's Individual Practices. *See* Dkt. No. 119. The Court also noted that "[w]hile there is no stay in effect pending the briefing and decision on the motion for a stay, the Court directs the parties to attempt to agree on a phased discovery schedule in an effort to postpone the most burdensome aspects of discovery." *Id*.

The parties subsequently met and conferred and reached agreement on certain aspects of a phased discovery schedule, as memorialized in the parties' proposed scheduling order. *See* Dkt. No. 130. Specifically, the parties agreed to serve initial disclosures concerning the 50 Named Plaintiffs by August 3, 2020 and to propound limited initial document requests and interrogatories by August 14, 2020 ("Written Discovery"). *See id*. at ¶¶ 3(a), 4. The Campaign also agreed to produce the following categories of non-ESI information ("Non-ESI Discovery")[3] concerning the Named Plaintiffs' hiring/onboarding with the campaign: (i) hiring/onboarding documents; (ii) personnel files; and (iii) general employment policies and practices (including the Campaign's

---

[2] The state wage-and-hour claims are not subject to the Motion to Dismiss or Strike.

[3] Although most or all of the documents comprising Non-ESI Discovery are stored electronically, the term Non-ESI Discovery is intended to distinguish documents that can be produced from the Campaign's files without applying search terms from those documents consisting of electronic communications and attachments to such communications, which are referred to herein as "ESI Discovery."

2

Employee Handbook Policies & Procedures, Code of Conduct, Confidentiality, Non-Interference and Invention Assignment Agreements, and Prevention of Coordination Policy). *See id*. at ¶¶ 3(a)(ii), 4(b). In addition, the Campaign agreed to produce payroll records relevant to the state wage-and-hour claims of the Named Plaintiffs and a limited number of opt-in plaintiffs whose state wage-and-hour claims are not the subject of the Campaign's pending motion to dismiss. *See id*. at ¶¶ 3(a)(ii), 4(b).

The Campaign objected to producing the remaining additional categories of Non-ESI Discovery sought by Plaintiffs: (i) Campaign staff call outlines; (ii) general interview forms; (iii) talking points generated by the Campaign; (iv) documents concerning the job duties of the representative Plaintiffs; and (v) documents concerning the termination of the representative Plaintiffs' employment. *See id*. at ¶¶ 4(a).

With respect to ESI Discovery, the parties agreed to negotiate an ESI protocol concerning the manner in which ESI will be produced. *See id*. at ¶¶ 3(a)(ii), 4. However, the Campaign objected to Plaintiffs' proposal to begin substantive ESI Discovery before resolution of the pending Motion to Dismiss or Strike, given that the scope of such discovery may be substantially reduced depending on the outcome of that motion and the burden of conducting ESI Discovery falls disproportionately on the Campaign. *See id*. at ¶¶ 3(a)(ii).

On July 16, 2020, this Court held the ICMC. During that conference, the parties noted that the Campaign had agreed to produce certain categories of Non-ESI Discovery and that the parties would continue to meet and confer regarding the other categories of Non-ESI Discovery sought by Plaintiffs. The parties also confirmed that they would negotiate an ESI protocol concerning the manner in which ESI will be produced. With respect to the production of substantive ESI Discovery, Plaintiffs' counsel represented that Plaintiffs were only seeking emails sent or received

3

by the eight representative Plaintiffs at this initial stage. The Court directed that discovery proceed as proposed by Plaintiffs. The Campaign now moves to stay any additional discovery.

## LEGAL ARGUMENT

A district court has considerable discretion to stay discovery under Rule 26 for good cause pending the determination of a dispositive motion. *See, e.g., O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709 (LTS)(GWG), 2018 WL 1989585, at *3-4 (S.D.N.Y. Apr. 26, 2018) (Gorenstein, M.J.). In determining whether to stay discovery pending a motion to dismiss, courts generally consider the following factors: (1) the strength of defendant's motion to dismiss; (2) the breadth of discovery; and (3) any prejudice that would result from a stay. *Id.; Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69 (S.D.N.Y. 2013) (Gorenstein, M.J.). All three factors militate in favor of a limited stay of discovery here.

### A. THE CLAIMS SUBJECT TO THE MOTION TO DISMISS LACK MERIT.

As to the first factor, a limited stay of discovery is warranted because, as described more fully in the Motion to Dismiss or Strike (*see* Dkt. No. 111), the Campaign's pending motion presents several "substantial arguments" for dismissal of Plaintiffs' FLSA and Common Law claims. *O'Sullivan*, 2018 WL 1989585, at *4. Specifically, Plaintiffs' FLSA and Common Law claims are barred as a matter of law and should be dismissed in full for several independent reasons.

*First*, Plaintiffs' FLSA claim fails at the outset because the FLSA does not, as a matter of law, apply to political campaign organizations like the Campaign. Congress enacted the FLSA to regulate labor conditions in "industries engaged in commerce or in the production of goods for commerce," so as to prevent "unfair method[s] of competition." 29 U.S.C. § 202. The statute prescribes minimum wages and overtime requirements for such "industries," and makes it unlawful for any person to "ship, deliver, or sell in commerce, . . . any goods" produced in violation of those requirements. 29 U.S.C. §§ 206, 207, 215. The Campaign is not such an enterprise. It is

4

a tax-exempt, nonprofit political advocacy organization. The Campaign did not engage in any "industry" or the "marketing of goods in commerce," nor engage in "competition" with any businesses; it was formed for the sole purpose of advocating for the election of Michael Bloomberg to the Presidency. Plaintiffs respond that the Campaign engaged in "commerce" by selling t-shirts and bumper stickers (albeit at a loss), *see* Dkt. No. 133 at 23-24, but the case law overwhelmingly refuses to count such contributions to a nonprofit's mission as commercial transactions for purposes of FLSA coverage.

*Second*, Plaintiffs' Common Law claims are precluded in light of Plaintiffs' acknowledged at-will status, which renders any reliance on purported promises of continued employment unreasonable as a matter of law. In addition, Plaintiffs fail to satisfy the requisite elements for the Common Law claims. With respect to their fraudulent inducement claim, Plaintiffs: (i) do not allege any material representation of any present facts, and instead rely only on purported future promises of continued employment, which are not cognizable; (ii) do not allege any specific facts giving rise to a strong inference of fraudulent intent; (iii) cannot establish reasonable reliance (given the at-will nature of their employment); and (iv) do not allege any legally cognizable injuries. Plaintiffs' promissory estoppel claim is equally meritless because New York does not recognize promissory estoppel in the employment context, and, in any event, Plaintiffs do not satisfy the essential elements of reasonable reliance or an unconscionable injury.

The Motion to Dismiss or Strike also seeks, in the alternative, to strike the class allegations under Rule 23(d)(1)(D) with respect to the Common Law claims. In the unlikely event that these claims withstand the Motion to Dismiss or Strike, which they should not, the Campaign also has made a strong showing that Plaintiffs' class allegations should be stricken because it is clear from the face of the Complaint that the Common Law claims are highly individualized and not suitable

5

for class treatment. If granted, this prong of the motion would significantly narrow the scope of discovery on the Common Law claims to only Plaintiffs' individual claims, as opposed to a nationwide putative class.

The Motion to Dismiss or Strike, and case law cited therein, therefore presents a strong showing in favor of dismissal of the claims asserted in the Second Amended Complaint under the FLSA and the Common Law claims, and to proceed, if at all, solely as an individual rather than class action. Accordingly, the first factor supports a limited stay of discovery. *See, e.g., O'Sullivan*, 2018 WL 1989585, at *4-7 (granting motion to stay discovery pending resolution of defendants' motion to dismiss); *Hong Leong*, 297 F.R.D. 69 (same); *N.Y. by James v. Penn. Higher Educ. Assistance Agency*, No. 19-cv-9155 (ER), 2020 WL 605944, at *2 (S.D.N.Y. Feb. 7, 2020) (staying discovery where defendant's arguments for dismissal "are not frivolous and constitute the 'strong showing' necessary to weigh in favor of stay"); *Spinelli v. Nat'l Football League*, No. 13-cv-7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (stay of discovery warranted when "the viability of the Plaintiffs' claims is in at least some doubt pending the resolution of the motions to dismiss").

### B. DISCOVERY BEYOND THAT ALREADY ORDERED WOULD BE BROAD AND WOULD DISPROPORTIONALLY BURDEN THE CAMPAIGN.

The second factor also weighs in favor of a limited stay. Full-blown ESI Discovery in this case is likely to be significantly and disproportionally burdensome given that Plaintiffs purport to bring: (i) FLSA misclassification claims on behalf of themselves and all similarly situated persons nationwide who work or have worked for the Campaign as "Field Organizers," or other "similar job titles" ("including but not limited to, State Directors of Outreach to the LGBTQ Community and State Directors of Outreach to the Latino Community"); and (ii) the Common Law claims on behalf of a putative Rule 23 class of "thousands" of "Field Employees throughout the United

6

States." (SAC ¶¶ 217, 226-29 & n.1.)  Moreover, discovery is likely to be highly individualized for the Common Law claims because each turns on the alleged oral promises made to each of the Plaintiffs and the alleged opportunities they purportedly forewent to join the Campaign, and, for the wage and hour claims, with respect to the hours worked and duties performed by each of the Plaintiffs.  Because Plaintiffs' activities were highly localized, engaging in ESI Discovery will require the parties to expend significant time and resources in connection with identifying a multitude of potential ESI custodians, collecting relevant data sources for these custodians, engaging a vendor to host the data, processing the data, and negotiating search terms and search parameters, among other interim steps, when the parties do not yet know what the potential scope of discovery will be (and with respect to the *Sklair* case, whether there will be a need for any discovery at all).  The burden of collecting, processing, searching, reviewing and producing communications sent or received by the "thousands" of members of the putative class and collective will be borne disproportionately by the Campaign.

A stay of discovery beyond that ordered by the Court during the ICMC therefore will prevent the parties from engaging in onerous and disproportionately burdensome ESI Discovery on claims and issues that ultimately may be unnecessary depending on the outcome of the Campaign's pending dispositive motion.  Given the narrow scope of the state law wage-and-hour claims that are not subject to the Campaign's pending motion, staying discovery beyond that ordered by the Court during the ICMC will promote efficiency and reduce duplicative efforts for both parties.  *See, e.g., Spinelli,* 2015 WL 7302266, at *2 ("A stay may also have the advantage of simplifying and shortening discovery in the event that some of Plaintiffs' claims are dismissed and others survive, by limiting the scope of the parties' inquiry to claims that have been established as potentially viable"); *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 116

(E.D.N.Y. 2006) ("[I]n the event that only some of the causes are dismissed…by staying discovery now it will serve to substantially reduce the economic burden of full party discovery. By waiting until a decision is reached on the pending motion, the areas of discovery may well be substantially reduced, if not eliminated … ."); *Buffalo Emergency Assocs., LLP v. Unitedhealth Grp., Inc.*, No. 19-cv-1148S, 2020 WL 3259252, at *1 (W.D.N.Y. June 16, 2020) (granting motion to stay discovery because defendants' pending motion to dismiss "may shape the number and nature of the claims going forward in a manner that could significantly impact the breadth of discovery.").

### C. THERE IS NO RISK OF UNFAIR PREJUDICE TO PLAINTIFFS.

As to the third factor, a limited stay of discovery pending a determination on the Campaign's Motion to Dismiss or Strike will not be prejudicial to Plaintiffs. *See, e.g., O'Sullivan*, 2018 WL 1989585, at *9 (explaining that "the passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery."). This is particularly true here where, according to Plaintiffs' own allegations, they were only hired temporarily for less than one year, this action was commenced less than four months ago, and the parties are actively briefing on a reasonable agreed-upon schedule threshold legal issues that may drastically limit the scope of discovery. *See Negrete v. Citibank, N.A.*, No. 15-cv-7250 (RWS), 2015 WL 8207466, at *2 (S.D.N.Y. Dec. 7, 2015) ("Any prejudice stemming from delay is likely to be minimal in any event, since this case is in its infancy and the hearing date for the motion is less than two months away.").

Indeed, the pending Motion to Dismiss or Strike will be fully briefed in less than two weeks, on July 31, 2020. It can be promptly argued and decided thereafter, depending on the Court's schedule. And although the issues in the *Wood* and *Sklair* cases are not identical, the Court's decision on the *Wood* motion is likely to inform the issues presented in the *Sklair* motion. The issues likely to be relevant to discovery will become clear before much more time passes.

8

Plaintiffs also will not be prejudiced because the Campaign is only seeking a limited stay of discovery beyond that ordered by the Court during the ICMC, and will otherwise engage in discovery and move this case forward by: (i) exchanging Written Discovery; (ii) producing Non-ESI Discovery;[4] (iii) negotiating an ESI protocol; and (iv) producing emails for the eight representative Plaintiffs. There is no basis for Plaintiffs' expressed concern that the termination of the Campaign makes discovery more urgent, because the Campaign has preserved documents and other discoverable materials and there is no reason to believe that documents or witnesses will be any less available if further discovery awaits, for a brief period, the outcome of the Campaign's pending motions.

\* \* \*

In sum, the Court should stay the following categories of discovery until resolution of the Motion to Dismiss or Strike:

- Written Discovery beyond the limited Written Discovery agreed-to by the parties;[5]

- ESI Discovery other than emails for the eight representative Plaintiffs; and

- Depositions.

---

[4] To the extent the Campaign agrees after meeting and conferring to produce additional categories of Non-ESI Discovery sought by Plaintiffs, the Campaign reserves the right ask Plaintiffs for authorizations to obtain relevant records from their previous employers and/or schools.

[5] The Campaign will continue to meet and confer with Plaintiffs regarding the disputed categories of Non-ESI Discovery sought by Plaintiffs. Accordingly, and as the Court noted during the ICMC, this issue is not ripe for the Court's intervention.

## **CONCLUSION**

For all of the foregoing reasons, the Court should stay discovery beyond that ordered by the Court during the ICMC pending a decision on the Motion to Dismiss or Strike.

Dated: July 20, 2020                           PROSKAUER ROSE LLP

*/s/ Elise M. Bloom*
Elise M. Bloom
Rachel S. Philion
Pinchos N. Goldberg

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
ebloom@proskauer.com
rphilion@proskauer.com
pgoldberg@proskauer.com

Mark W. Batten
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(T)  617.526.9850
mbatten@proskauer.com
(admitted *pro hac vice*)

VENABLE LLP

Nicholas M. Reiter
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(T)  212.307.5500
nmreiter@venable.com

*Attorneys for Defendant*
MIKE BLOOMBERG 2020, INC.