# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: :

WOOD, : Docket #20cv2489 1:20-cv-02489-LTS-GWG

Plaintiff, :

- against - :

MIKE BLOOMBERG 2020, INC., :

Defendant. : New York, New York July 16, 2020

------------------------------------: TELEPHONE CONFERENCE

PROCEEDINGS BEFORE
THE HONORABLE GABRIEL W. GORENSTEIN,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff Wood: OUTTEN & GOLDEN, LLP
BY: SALLY ABRAHAMSON, ESQ.
HANNAH COLE-CHU, ESQ.
685 Third Avenue, 25th Floor
New York, New York 10017

SHAVITZ LAW GROUP, PA
BY: MICHAEL PALITZ, ESQ.
830 Third Avenue, 5th Floor
New York, New York 10022

For Plaintiff Sklair: EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
BY: ILANN MAAZEL, ESQ.
DAVID BERMAN, ESQ.
600 Fifth Avenue, 10th Floor
New York, New York 10020

Transcription Service: Carole Ludwig, *Transcription Services*
155 East Fourth Street #3C
New York, New York 10009
Phone: (212) 420-0771
Email: Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (CONTINUED):

For Defendant:

PROSKAUER ROSE LLP
BY: ELISE BLOOM, ESQ.
RACHEL PHILION, ESQ.
MARK BATTEN, ESQ.
PINCHOS GOLDBERG, ESQ.
Eleven Times Square
New York, New York 10036

VENABLE LLP
BY: NICHOLAS REITER, ESQ.
1270 Avenue of the Americas
New York, New York 10020

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

THE CLERK: All right, everyone, as you just heard we are currently being recorded. This is the matter of Sklair, et al. versus Mike Bloomberg 2020, Inc., 20cv2495 and Wood versus Mike Bloomberg 2020, Inc., 20cv2489. If you have not identified yourself, you are going to be placed on mute, so if you would like that to not happen and you have not identified yourself, please speak up now. The judge will be joining us shortly, he's going to ask the parties to state their appearances starting with the plaintiffs. I'm assuming the Wood matter but it's anybody's guess.

THE COURT: Hello, this is Judge Gorenstein, you can call the case. Hello, this is Judge Gorenstein, you can call the case, I can't hear anything right now.

THE CLERK: Sorry, Judge, I just did that on mute. This is the matter of Wood versus Mike Bloomberg 2020, Inc., 20cv2489 and Sklair, et al. versus Mike Bloomberg 2020, Inc., 20cv2495, can counsel please state their appearances starting with the Wood matter.

MS. SALLY ABRAHAMSON: Yes, this is, good afternoon, this is Sally Abrahamson from Outten & Golden for the plaintiff in Wood, and with me is Hannah Cole-Chu also from Outten & Golden, and Michael Palitz from Shavitz Law Group.

MR. ILANN MAAZEL: Good morning, Your Honor,

Ilann Maazel from Emery Celli for the Sklair plaintiffs, and I'm joined by, with David Berman from my office.

MS. ELISE BLOOM: Good morning, Your Honor, this is Elise Bloom from Proskauer Rose on behalf of the defendants in both cases. I'm joined on this call by my colleagues Rachel Philion, Mark Batten and Pinny Goldberg from Proskauer, as well as Nicholas Reiter from Venable.

THE COURT: Okay, thank you, everyone. Let me just remind any members of the public press that any copying or dissemination of the recording of this proceeding is forbidden by law, any party or outside person can order a transcript at any time.

All right, so I have the proposed scheduling order and I think I need to talk out a little bit what's going on with discovery. Let me give you a few parameters. First, I understand there is going to be a motion for a stay. I gave permission for a motion three months ago in Wood. I guess there was a decision not to file it but what that means is there is no stay here. I don't know when the motion for a stay would be decided. So we have to go down a path on the assumption there is no stay. And having said

that, I am not adverse to staging things so that if there were a motion for a stay things were, are done in a manner that was economically rational, but I'm not going to hold up discovery in any way in order to achieve that. So it can't be done, whatever staging can't be done in a way that is going to prejudice the forward movement of the case, so there will be a little bit of a balancing act there. I understand that, but I am hopeful we can work through it.

So I wanted to say that, and I think I want to talk about what the differences in terms of the parties proposals in terms of how discovery is being conducted. And the parties should keep in mind that I became a judge in 1998, and never in my entire practice had to conduct electronic discovery. I've learned something on the bench, but having never actually done it I always feel at a little bit of a disadvantage. So don't assume that I know what a practitioner today knows about how it's conducted.

What else did I want to say? I think I kind of also want to understand kind of what the plaintiff and the defendant think are going to be the nature of discovery putting aside any staging issues. Because it seems to me this case, putting aside the FLSA New

York Labor Law wage piece, the case is going to revolve around, assuming it passes the motion to dismiss which of course we're assuming, who said what to whom during what the parties call the hiring process which include the onboarding process, I'm just going to use the word hiring. Which seems like a pretty narrow factual matter, I mean either people said the things the plaintiffs claim or they didn't, and either there's emails saying that they said it to the plaintiffs or they didn't. I guess maybe there might be some internal documents during this period on the topic, but it doesn't seem like this is terribly complex. And I guess one would have to come up with an ESI protocol to actually find these particular communications but, you know, in terms of the issue of staging, I am not sure it's going to be that much more work to do it for everybody as opposed to a few people and, again, I'm not quite certain what it is that the defendants are objecting to.

So why don't we do this. I mean I read your proposal several times and I'm not sure I'm following it. So maybe we should have the plaintiffs lay out what they think this progress with discovery is going to be and then the defendants can say rather than

framing it of what we would like, tell me what's wrong or what's burdensome about what the plaintiffs are asking specifically. All right, so having said all that I'll turn to the plaintiffs just to talk about the issue of staging of discovery.

MS. ABRAHAMSON: Thank you, Your Honor, this is Sally Abrahamson from Outten & Golden on behalf of Wood plaintiff, and we're moving collaboratively forward with Sklair's counsel. And so I'll go forward and then if that works for everyone Sklair's counsel can make any additional comments they think would be helpful.

I think plaintiffs agree with Your Honor's perception of this is a fairly narrow case. The one distinction is I think that our fraudulent inducement and promissory estoppel claims rest also on communications during the employment in inducing people to stay on. And so I don't know that it would just be limited to hiring communications but I do, given the short period of employment, I don't think that really complicates the case or the discovery any further.

And so my understanding now is the way the staging would work is that the parties are in

agreement, pending any motions to stay, that we would start with written discovery, initial disclosures and then written discovery.

THE COURT: Can you tell me what written discovery means?

MS. ABRAHAMSON: Sure. So the campaign has agreed that it would produce hiring and onboarding documents, personnel files and payroll records for the Wood plaintiff, you know, I think we would want that for plaintiffs in both cases. Additional documents that do not require ESI that plaintiff anticipate requesting include staff call outlines. There were campaign wide staff calls that had outlines of what would be covered and we think communication was made about the length of the employment through the general election during those calls. General interview form talking points generated by the defendants regarding employment. Documents regarding training of new hires including guidance given to the supervisors of field organizers and field staff. Job duty documents, termination communications or documents, and documents regarding the field organizers classifications.

THE COURT: Okay, just if you can help me on this, you used the word written documents, so is that some

kind of term you're using to say non-ESI documents or non-email or, well, I assume these are not on paper necessarily. So I'm just trying to understand what's the generic category, I don't want to go through all the little ones again, but why is this called written documents?

MS. ABRAHAMSON: Yes, Your Honor, so this would not be, these would not be documents that were emailed, but documents that defendant would have to review their documents that are not necessarily in print but may be on a hard drive or in the cloud somewhere and produce it to plaintiffs. And so this would be a process in which they would review their documents, it wouldn't be applying search terms to ESI custodians.

THE COURT: Okay, and you have categorized different types of documents that you want and you say defendants have agreed to produce them, so we're calling those the written documents, is that it?

MS. ABRAHAMSON: The first, there were three areas that in the proposed scheduling order defendants have agreed they would initially produce. Plaintiffs think there's a broader scope of documents that should be produced in the first wave but, again, are prepared

to negotiate with defendants to insure it's not overly burdensome on them as an initial phase.

So the parties are in agreement about three buckets. Plaintiffs have identified approximately seven other buckets of documents at this point we think should be produced and don't need to go through an ESI process.

THE COURT: And by the bucket you mean topic areas?

MS. ABRAHAMSON: Yes, Your Honor.

THE COURT: Okay, got it. All right, so I don't need to deal with these seven other topic areas, you're still working on those, is that it?

MS. ABRAHAMSON: We haven't served discovery requests yet, and so we anticipate our discovery requests will include these areas. I did not interpret defendants' position as being that they refuse to produce these, so I don't know that we're at a stage yet that we would need guidance from the Court.

THE COURT: Okay. All right, keep going then. And so we would then propose that we would simultaneously begin negotiating an ESI protocol which we have a draft of and that, the ESI protocol only deals with the manner in which ESI should be produced, it doesn't deal with the scope of ESI. And so it's

going to be needed regardless of whether defendants were successful in their motion to dismiss. In the Wood matter, our state wage and hour claims are not at issue, and so there's no reason to stay that.

And then we would propose moving forward with narrow ESI, and this is where the parties disagree. We think as a preliminary matter we should get ESI from the representative plaintiff's emails. And so there are eight representative plaintiffs in the Wood matter and they have, aside from plaintiff Wood they all have state wage and hour claims that will survive any motion to dismiss. And so we would want to start with their emails. We are willing to negotiate how that production works. We would be willing to just take the emails without any kind of search process, if that's how defendants wanted to do that, and that we would apply our own search process. We would also be open to negotiating search terms. I think these are narrow scope of custodians. We don't think there's merit to an argument that that creates any additional work if and when we succeed and get past the motion to dismiss. Because the process of producing these, if we do apply search terms, is that defendants will apply the search terms, they will then dedupe and thread the emails so that

we don't get multiple emails that, you know, several different custodians received. When additional custodians are identified and search terms are run against those, the processing tool would just need to apply what had been deduped and thread by the custodians that had already been produced. So it doesn't mean that they have to redo anything, most programs would run that process automatically. And so that's where we would propose ESI start so that the parties don't end up in a place where we're really behind in discovery before the motion to dismiss decision is entered.

And, you know, we mentioned in our --

THE COURT: Can you hold whatever thought you have right now because I want to go back.

MS. ABRAHAMSON: Sure.

THE COURT: I'm a little confused on custodians because I thought what you were telling me was you were content for the moment to have the universe be every email your client or the particular eight clients, whatever it is, received, am I right on that?

MS. ABRAHAMSON: From the campaign, they had campaign email addresses.

THE COURT: Yes, right, you want their campaign emails to be searched or produce the whole thing or

whatever.

MS. ABRAHAMSON: Yes.

THE COURT: So it doesn't seem like there is any issue of custodians because you don't care who emailed them. Your client is essentially the custodian and there's no one else's emails need to be searched, am I right or am I wrong?

MS. ABRAHAMSON: Yes, Your Honor, I was referring to the plaintiff as the custodian, I'm sorry if that was unclear. So as the case progresses we would want to search other custodians' emails but we would be content at the initial phase of just searching our own plaintiffs' emails that are in the possession of defendants right now.

THE COURT: And the reasons you would want other custodians down the road is you want to see if other custodians talk to each other about whatever these promises and inducements were, is that right?

MS. ABRAHAMSON: Yes, Your Honor.

THE COURT: Okay, but you are ready to start just with your plaintiffs?

MS. ABRAHAMSON: Yes, Your Honor.

THE COURT: Okay. So anyway, I told you to hold the thought, keep going.

MS. ABRAHAMSON: The one additional thought is just the reason there is some urgency to this is that the campaign no longer exists and we do have concerns about the accessibility of the witnesses. And we think that having this preliminary ESI would help us see who potential witnesses would be as the case moved along. And it has been our experience as attorneys that when witnesses are not within the control of the defendant it is harder to contact them, it’s harder to get documents from them, and it is harder to schedule depositions for them. And so we think there is some timeliness urgency in moving forward.

You know, we also do have, there have been times even when both parties are proceeding in complete good faith that there is a discrepancy in the way preservation is interpreted. And the longer it goes before we are able to receive any of the documents, the more we have concerns that there might be some preservation issues that would be harder to address.

THE COURT: Okay, are you done on the discovery issue?

MS. ABRAHAMSON: Yes, Your Honor.

THE COURT: All right, I’m going to do

something slightly unusual, I'm going to ask you to say what your understanding is of the defendants' disagreement with this and why and what your response is and I'm going to do the same thing with the defendants.

MS. ABRAHAMSON: Yes, Your Honor, I believe they do not want to start ESI because they think it will be burdensome and costly.

THE COURT: I see, the don't want to do any ESI at all, they want to wait until, I'm not sure when, but their theory that there's an inefficiency in doing the ESI on your eight clients rather than doing the eight clients plus all their internal people, is that essentially it under your understanding?

MS. ABRAHAMSON: Yes, Your Honor, that's my understanding.

THE COURT: Okay. I'll hear from them, well I guess from your co-counsel, and then I'll hear from them and we'll get a little back and forth, anything from the Sklair, Mr. Maazel, anything?

MR. MAAZEL: Yes, Your Honor, I'm in full agreement with Ms. Abrahamson, we have a unified discovery position, we feel that all that discovery that was just discussed should go to both Wood and the

Sklair plaintiffs.

THE COURT: Okay, Ms. Bloom.

MS. BLOOM: Okay and, Your Honor, I think one, sort of, well two points of clarification that I just wanted to raise. In terms of the stay, that was something that the parties had agreed that they would discuss during their Rule 26 conference and we are planning to file that motion on Monday. With regard to sort of the underlying bases for the claims, in reading the complaint both in the Wood case and the newly filed amended complaint in the Sklair case, it's pretty clear that the alleged promises are attributed, they're oral statements that are attributed to specific individuals, that for each of the plaintiffs there's a different individual that that plaintiff claims promised them something different. So I think the nature of the claims or these alleged liked pre-hire promises are really, they're oral statements as opposed to written promises that were made. The only written documents that embody what the nature of the employment was are these hiring and onboarding documents which all establish the at will nature of the plaintiffs' employment and, you know, specifically go to the issue of, you know, no previous oral

representations would alter that.

But I agree with Ms. Abrahamson in that we have agreed that for the named plaintiffs, and I'm differentiating the named plaintiffs from the representative plaintiffs because I believe there's about fifty named plaintiffs in the Wood case as opposed to a representative plaintiff, but what we have said we would do is produce hiring, onboarding and personnel files for the named plaintiffs, the larger subset. And then for the Sklair plaintiffs where the numbers were limited, we would produce the same hardcopy non-ESI documents. And then with regard to the opt-ins we would produce payroll records but we would meet and confer with the other side on some percentage.

As to the other seven buckets, I agree that we have not completely fleshed that out and not sure that that's, we're actually at a point yet where we would need the Court's intervention on that. And there may be some additional written documents that we would look to from particularly the Sklair plaintiffs that go to some of these alleged oral promises. But I think on the non-ESI part we're probably, I think that parties are still in the process of working on that.

Does the Court have any questions about that before I move on to the ESI?

THE COURT: No, I mean it sounds like that's not ripe for any decision so keep going.

MS. BLOOM: So in terms of the ESI, first of all, we are in agreement with the plaintiff that we are prepared to discuss an ESI protocol which would also include the manner in which information would subsequently be produced. Our area of disagreement that was identified by the plaintiffs and by the Court is whether or not any type of ESI review should begin now or whether it should await the decision on the respective motions to dismiss. And I think the basic misconception here that the plaintiffs have with regard to, and I understand when you first listen to it, it sounds like this should be, why is this a big deal, it doesn't sound like a big deal, I think what's missing in the equation is a misconception that the alleged ESI, even if it's just for the named plaintiff, is somehow sitting somewhere in a database that is processed and ready to be searched. And in truth, there are several steps that have to occur, each of which can be time consuming and expensive that predate any ability to search.

And so in this case what we would need to do is we would need to identify the data sources of the email for the plaintiff. We would then have to process that data. We would then have to -- which would involve identifying a vendor, then some type of appropriate vendor collection, then vendor processing and once all the data was collected it then gets transferred to the vendor. The vendor then processes the data in order to make it searchable, and the searchable piece is not determined by whether or not there's going to be search terms, the searchable aspect needs to be done regardless of whether someone is just going to go through all of it or whether somebody is going to try to just look for particular words. It has to be processed and put in a searchable form before anything can be done.

In addition to that, there are hosting fees that go along with the vendor maintaining the data. These are fees that are not insubstantial, they're fees that would, that occur on a monthly basis. So all of that needs to happen before you even get to the point of either searching, just going through their email, or agreeing on search terms and then applying those search terms, reviewing the documents and turning them over. So from our perspective, there's not a preservation issue here, and it will, we will

be able to proceed with e-discovery in a much more effective and efficient manner once the motions to dismiss have been decided. Because at that point, to the extent that they're claims that survive, we will be able to work with the other side, we will have our ESI protocol in place. We'll be able to work with the other side, at that point identify custodians, and maybe the custodians are the named plaintiffs, I assume there would be some additional ones, we would be able to collect the data all at once, process the data all at once working with the vendor, then have the data developed into searchable form, have one set of search terms, search through the data and then produce the information.

So a very longwinded way of saying that it always sounds very easy to do when you say we just want their email boxes, but there are so many steps that have to go before that. And sort of given where each of these cases are in the pending motions, we just, we don't see the urgency in having to do that and we do think it would be more efficient. And the burden and expense also is always all on the defendant in this process, so in thinking about proportionality and, again, not just where the cases are, but in taking a careful review of the complaint and seeing to

the extent they're talking about representations, they're talking about oral statements which they attribute to particular people. So the likelihood that there's a lot in the email, I guess anybody's guess, but they are talking about oral statements. And to the extent that they're saying we don't know who the right people are, well both of the complaints in this case are very, very, very detailed and they have specific names of specific individuals that they claim made statements. So I think the likelihood of information, knowledge not being available, is very low.

THE COURT: Okay. I mean I still have to ask you, on April 16th I said to you feel free to move for a stay on the collective action motion and any other aspect of this case, and apparently nothing happened. I'm just wondering, you know, my life would be a lot simpler if you'd done it then because I may have been able to decide it, but now we've lost three months, I'm wondering why that happened?

MS. BLOOM: I'm going to ask Ms. Philion if she can respond to that, because I believe that there was an intervening correspondence there that she may be in a better position to address. Because when the Court had indicated that it wanted to have a

conference, we had actually asked for permission about filing the motion to stay, but I'll ask Ms. Philion to address that so that I don't misspeak.

MS. PHILION: Sure, good afternoon, Your Honor, this is Rachel Philion. And so, you know, I think after we filed our letters, the parties did decide that they would meet and confer to see if we could come to some sort of staged process. During our Rule 26(F) conference the parties did exchange proposals which is what you heard today, and we were not able to come to an agreement. So I know the parties were trying to see if they could try to work it out so it did not come to motion practice, both parties were in agreement that we would try to do that, we couldn't get there and we agreed on a briefing schedule that's very truncated that we will submit on Monday. But in short, we're filing our motion for stay on Monday and it will be fully briefed by July 31st based on the briefing schedule that the parties have already agreed to and will be reflected in our notice of motion.

THE COURT: Okay, I mean I think we're talking about a different time period. I think the, you're talking about a much later time period where there was

discussion about the conference and so forth, but I mean the issue was raised in April and it would be a lot simpler if it were dealt with, had been dealt with before. I would like to believe that I can do something by the time the motion is decided that would obviate a lot of this but, you know, I can't guarantee it.

So I mean I guess, you know, I don't have any numbers in terms of the expense, also the parties, that they're able to afford it is an issue, all kinds of factors here that I have been presented with. But let me just ask plaintiffs since the defendants raised it, I mean, you know, if I'm one of your clients and there's some promise made to me in an email to my work account or something suggesting that I'm going to have a job for a while, you know, it wouldn't be crazy that I would forward that to my personal email account, or save it, or remember it or something. So I mean is there literally not one email that you can cite to now suggesting that this is going to be a fruitful exercise?

MS. ABRAHAMSON: Your Honor, this is Sally Abrahamson. So I need to check, I think we do have some that were emailed to the personal email accounts but I need to verify that's correct. I also note that

the defendant had a pretty strict confidentiality agreement and the plaintiffs were instructed not to forward emails to their personal email address. And so I'm not sure how many of those emails were forwarded on or if they should have been. And I did, if I can I'd like to respond to two points, if I can?

THE COURT: Go ahead.

MS. ABRAHAMSON: The, you know, the one issue that I think, as far as the promises, they weren't just oral promises or oral statements, we do allege that they were in writing. We also, the promises did not stop once people were hired. Part of the fraudulent inducement and the promissory estoppel claims were that the continued employment was promised throughout the employment so that people forewent the opportunity of other jobs and educational pursuits.

And then as far as ESI, these steps that opposing counsel outlined are going to have to be taken at least in the Wood matter, regardless. The custodians who are plaintiffs that we'd like to get their email addresses have claims that will survive the motion to dismiss because they have state wage and hour claims. And so any purported burden will have to be addressed either now or later, and for the reasons I stated

before we think there is some urgency here in moving forward.

I also don't anticipate the hosting fees are going to be that expensive because the email span, the database for these folks are going to be for a couple of months and there aren't that many people that we were going to initially ask for. And we are open to negotiate if that sample size is something defendants are amenable to. And the difference between the burden between the two parties is a billionaire defendant versus out of work plaintiffs, you know, and I don't anticipate this is actually a very expensive hosting cost for this number of people and the amount of data that would actually be there.

MS. BLOOM: Your Honor, this is -- I'm sorry.

THE COURT: Ms. Bloom, do you want to add anything?

MS. BLOOM: What I will, in looking back at my file and maybe I have this incorrect, but I thought that in April what the application was, was an application to stay plaintiffs' permission to file a motion for conditional cert. I don't think that it was towards discovery, I think the discovery stay application was made later and maybe towards the end

of June. And the stay application was really, I mean it was geared towards, there were two aspects of it, one obviously with regard to the Sklair case because at that point the Sklair plaintiffs had indicated to us that they were going to amend their complaint and they were going to do so before July 6th. And so our position was that we wanted to see the amended complaint, we thought we would still be moving to dismiss and moving to dismiss the entire case. And with regard to the Wood case, there has always been a question of the state law wage and hour claims and we've always taken the position that we would be billing to engage in some discovery with regard to the state wage and hour claims that were not subject to dismissal. And as to those claims, we've said that we'll produce the payroll records and, you know, personnel files, so that would not necessarily be things that are implicated by the emails, they're not things that go to what promises were or were not made to them either pre-employment, during employment, post-employment, the state wage and hour claims that are not subject to the motion to dismiss in this case are wage and hour claims. And as I've said, we've said that we will produce those, the wage records with

regard to those claims.

MS. ABRAHAMSON: Your Honor, if I may?

THE COURT: Sure, go ahead.

MS. ABRAHAMSON: Sorry, this is Sally. The defendants have indicated that even for the state wage and hour claims they plan on arguing that the claims were exempt and so their job duties and email correspondence are squarely within appropriate discovery for the state wage and hour claims.

THE COURT: All right. Just to clear up what I was referring to, I mean I'm not going to say that you did anything wrong, but I was very specific in docket 62. I know you had asked for it with respect to the motion for the collective action approval, but I thought what was really going on was that you were trying to stay the litigation and I said in my endorsement, "It appears defendant seeks to move to stay the litigation and perhaps to stay only the disposition of plaintiffs' proposed motion. In any event, the Court's pre-motion conference requirement for either motion is waived." So I just wanted you to know what I was referring to, I wanted, frankly I wanted to hear at that time that this thing was going to be stayed. I understand you wanted to wait for the

amended complaint and perhaps that was the right thing to do, but in any event, we're here now and we're trying to move this forward and I don't have what I need to make a decision on the motion for the stay. So we have to proceed on the assumption that things are moving forward.

All right, having heard from both sides, I want the parties to go down the road in the way the plaintiffs have proposed. Which means doing the written, what's called the written document discovery to the extent there's agreement, starting down the ESI manner protocol, and starting the process with the vendor and with the particular plaintiffs that the parties have agreed are going to be the initial subjects of any discovery.

So we are going to move down that road. If in the middle of it I issue a stay then perhaps something will have been lost. But I'm just not prepared to today say there is going to be a stay because I don't have the basis for doing it.

So let's see where that leaves us on the rest of this. I'm almost leaning towards not issuing deadlines quite yet because people seem to want to time them based upon the decision on the motion for

collective action approval. And maybe it's simpler just to figure out whether that's going to be decided favorably to plaintiffs or not, and for me to try to decide that sooner rather than later. You are going to serve your initial disclosures by August 3rd, you're going to have initial document requests by August 14th, that's fine, I'm happy to order that now orally. And then, you know, this deadline for filing amended pleadings or joining parties, both sides seem to think that that should be contingent on the motion for approval of the collective action. I'm hoping that I can get to that in the short-term, I'm not sure it's worth figuring that, you know, having some contingent deadline now. Same thing for the date upon which, you know, the remaining discovery is to be done.

So I think at this point I'm just going to order the two deadlines I mentioned and maybe we'll, I'll ask for, you know, a status letter in a month. And if I've decide the motion for, you know, approval or the say motion by then, then you can give me actual hard dates to the extent that you can agree on them. If someone feels strongly I should do something differently, I'm happy to hear it, let me hear from Ms. Abrahamson.

MS. ABRAHAMSON: Your Honor, this plan works well for plaintiff, thank you.

THE COURT: Okay. Ms. Bloom, what do you think about my just ordering those deadlines and waiting for a month before we do anything else?

MS. BLOOM: Your Honor, subject to, I think I made our position clear on the record and I understand what Your Honor's direction is, and we'll certainly get our motion on file quickly.

THE COURT: No, I wasn't asking you to reargue my ruling about proceeding with ESI as to the named plaintiffs or whoever it was, I was asking with respect to my not ordering the other deadlines right now.

MS. BLOOM: That's agreeable to us.

THE COURT: Okay. All right, I think that was my agenda for today, happy to hear if there is something else people think can be accomplished today. Ms. Abrahamson, anything else we should be doing today?

MS. ABRAHAMSON: No, Your Honor, I think that's all for today, thank you.

THE COURT: Mr. Maazel?

MR. MAAZEL: No, Your Honor, I agree with the

Court's approach, thank you.

THE COURT: Okay. Ms. Bloom, anything else we should be doing today?

MS. BLOOM: Nothing, Your Honor.

THE COURT: Okay, thank you, everyone, good bye.

(Whereupon the matter is adjourned.)

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Wood versus Mike Bloomberg 2020, Inc., Docket #20cv2489, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature *Carole Ludwig*______________________________

Carole Ludwig

Date: July 20, 2020