UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>          Defendant. | 20 Civ. 2489 (KMW)(GWG) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................... 1

LEGAL ARGUMENT...................................................................................................... 1

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FLSA................................... 1

        A.      THE CAMPAIGN IS NOT A COVERED ENTERPRISE UNDER THE FLSA. ..................... 1

                1.      The Campaign Did Not "Engage in Commerce.".................................... 1

                2.      The Campaign Was Not Conducted for a "Business Purpose." ................ 3

        B.      THE PLAINTIFFS ARE NOT COVERED INDIVIDUALS. ................................................ 4

II.     PLAINTIFFS' AT-WILL EMPLOYMENT STATUS PRECLUDES THEIR
        FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL CLAIMS.............. 6

III.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE REMAINING
        ELEMENTS OF FRAUDULENT INDUCEMENT. ........................................................ 8

        A.      PLAINTIFFS DO NOT ALLEGE A MISREPRESENTATION OF PRESENT FACT. ............. 9

        B.      PLAINTIFFS DO NOT ALLEGE AN INJURY INDEPENDENT OF TERMINATION. .......... 11

        C.      PLAINTIFFS FAIL TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING
                STANDARD. ................................................................................................................ 12

IV.     PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE REMAINING
        ELEMENTS OF PROMISSORY ESTOPPEL................................................................ 13

        A.      GENERALIZED STATEMENTS REPORTED IN THE PRESS DO NOT CONSTITUTE
                A "CLEAR AND UNAMBIGUOUS PROMISE." ............................................................. 13

        B.      PLAINTIFFS CANNOT ESTABLISH AN UNCONSCIONABLE INJURY. .......................... 14

V.      PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN. ........................... 14

VI.     PLAINTIFFS SHOULD NOT BE ALLOWED A THIRD AMENDMENT................... 15

CONCLUSION............................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Araujo v. Macaire*,
    No. 16-cv-9934, 2020 WL 1816189 (S.D.N.Y. Apr. 10, 2020) ................................7

*Ashmore v. CGI Grp. Inc.*,
    No. 11-cv-8611, 2012 WL 2148899 (S.D.N.Y. June 12, 2012) ...............................8

*Baguer v. Spanish Broad. Sys., Inc.*,
    No. 04-cv-8393, 2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) ..............................8

*Baron v. Port Auth. of N.Y. & N.J.*,
    271 F.3d 81 (2d Cir. 2001) .....................................................................................7

*Butala v. Agashiwala*,
    916 F. Supp. 314 (S.D.N.Y. 1996) ......................................................................13

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...................................................................................7

*CMC Transaction Servs., LLC v. IDEX Corp.*,
    No. 18-cv-4925, 2019 WL 3496643 (S.D.N.Y. Aug. 1, 2019) ..............................14

*Cohen v. Avanade, Inc.*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012) ...................................................................8

*Cole v. Kobs & Draft Adver., Inc.*,
    921 F. Supp. 220 (S.D.N.Y. 1996) ........................................................................8

*Doehla v. Wathne Ltd., Inc.*,
    No. 98-cv-6087, 2000 WL 987280 (S.D.N.Y. July 17, 2000) ...............................11

*Downey v. Adloox Inc.*,
    238 F. Supp. 3d 514 (S.D.N.Y. 2017) .................................................................10

*Egan v. Marsh & McLennan Cos.*,
    No. 07-cv-7134, 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) .................................8

*Felske v. Hirschmann*,
    No. 10-cv-8899, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ................................14

*Garnier v. J.C. Penney Co.*,
    863 F. Supp. 139 (S.D.N.Y. 1994) ........................................................................8

*Hyman v. Int'l Bus. Mach. Corp.*,
   No. 98-cv-1371, 2000 WL 1538161 (S.D.N.Y. Oct. 17, 2000)................................................8

*In re Columbia Sec. Litig.*,
   747 F. Supp. 237 (S.D.N.Y. 1990)........................................................................................13

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) ....................................................................................................13

*Jacobs v. Carsey-Werner Distribution, Inc.*,
   No. 93-cv-6825, 1994 WL 116077 (S.D.N.Y. Mar. 30, 1994)................................................8

*Jacobson v. Kings Cty. Democratic Cty. Comm.*,
   788 F. App'x 770 (2d Cir. 2019) ..........................................................................................15

*Joles v. Johnson Cty. Youth Serv. Bureau, Inc.*,
   885 F. Supp. 1169 (S.D. Ind. 1995)........................................................................................5

*Katsoolis v. Liquid Media Grp., Ltd.*,
   No. 18-cv-9382, 2019 WL 4735364 (S.D.N.Y. Sept. 27, 2019) .............................................8

*Kissner v. Inter-Cont'l Hotels Corp.*,
   No. 97-cv-8400, 1998 WL 337067 (S.D.N.Y. June 25, 1998) ..............................................11

*Kitchings v. Florida United Methodist Children's Home, Inc.*,
   393 F. Supp. 2d 1282 (M.D. Fla. 2005)..................................................................................5

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
   132 A.D.3d 164 (1st Dep't 2015) .........................................................................................11

*Lamex Agrifoods, Inc. v. MSC Mediterranean Shipping Co. S.A.*,
   No. 16-cv-8462, 2017 WL 4803923 (S.D.N.Y. Oct. 23, 2017)............................................12

*Leonard v. Pepsico, Inc.*,
   88 F. Supp. 2d 116 (S.D.N.Y. 1999) (Wood, J.), *aff'd*, 210 F.3d 88 (2d Cir.
   2000) .....................................................................................................................................10

*Leschak v. Raiseworks, LLC*,
   No. 14-cv-8072, 2016 WL 11695068 (S.D.N.Y. Mar. 7, 2016)..............................................8

*Lord v. Marilyn Model Mgmt., Inc.*,
   173 A.D.3d 606 (1st Dep't 2019) ...........................................................................................8

*Nemo Tile Co. v. Shawmut Nat'l Corp.*,
   No. 95-cv-0757, 1995 WL 1682315 (E.D.N.Y. Nov. 1, 1995) .............................................13

*Nicholas v. Wyndham Hotel Grp., LLC*,
   No. 14-cv-5726, 2015 WL 1011724 (S.D.N.Y. Mar. 9, 2015)................................................7

*Pearce v. Manhattan Ensemble Theater, Inc.*,
528 F. Supp. 2d 175 (S.D.N.Y. 2007)..............................................................8

*Pilchman v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO*,
No. 10-cv-4976 (KMW), 2011 WL 4526455 (S.D.N.Y. Sept. 29, 2011)
(Wood, J.)...............................................................................................15

*President Container Grp. II, LLC v. Systec Corp.*,
No. 18-cv-4441, 2020 WL 3318248 (S.D.N.Y. June 17, 2020) ...........................13

*Reagor v. Okmulgee County Family Resource Center, Inc.*,
501 F. App'x 805 (10th Cir. 2012) ...................................................................5

*Roelcke v. Zip Aviation, LCC*,
No. 15-cv-6284, 2018 WL 1792374 (S.D.N.Y. Mar. 26, 2018).............................8

*Rogers v. Town of Islip*,
230 A.D.2d 727 (2d Dep't 1996) ......................................................................8

*Sang Lan v. Time Warner, Inc.*,
No. 11-cv-2870, 2013 WL 1703584 (S.D.N.Y. Apr. 19, 2013) .......................13, 14

*Schiro v. Cemex, S.A.B. de C.V.*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019)..............................................................13

*Smalley v. Dreyfus Corp.*,
10 N.Y.3d 55 (2008) ......................................................................................7

*Stewart v. Jackson & Nash*,
976 F.2d 86 (2d Cir. 1992)...................................................................9, 10, 11

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
471 U.S. 290 (1985)..............................................................................1, 3, 6

*Walia v. Veritas Healthcare Sols., L.L.C.*,
No. 13-cv-6935, 2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015)...........................11

*Wittig v. Mount Sinai Med. Ctr., Inc.*,
No. 14-cv-5808, 2014 WL 7234612 (S.D.N.Y. Dec. 18, 2014)............................8

**STATUTES**

26 U.S.C. § 527(c)(3) .........................................................................................2

29 U.S.C. § 203(r)(1) .........................................................................................3

29 U.S.C. § 206(a) ............................................................................................4

29 U.S.C. § 207(a)(1).........................................................................................4

**OTHER AUTHORITIES**

29 C.F.R. § 779.214 .................................................................................................3

Fed. R. Civ. P. 9(b) ................................................................................................12

S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960) ........................................4

U.S. Dept. of Labor, Opinion Letter FLSA2008-8, 2008 WL 4906282 ..........................................3

Defendant submits this reply memorandum of law in further support of its partial motion to dismiss or to strike the class claims.[1]

## PRELIMINARY STATEMENT

Plaintiffs largely have no answer to the overwhelming statutory and case law establishing that the Campaign is not subject to the FLSA.  They rely entirely on the Campaign's sale of merchandise, assume without explanation that those sales were "in commerce" for FLSA coverage purposes, and respond to the Campaign's purely legal argument as to those sales primarily by seeking discovery, which could not cure the legal flaws in their theory.

Plaintiffs fare no better with their common law claims.  In an attempt at misdirection, Plaintiffs urge the Court to ignore their at-will offer letters and the other signed acknowledgements of at-will employment.  They do not and cannot deny those facts, and their at-will employment dooms their fraud and estoppel claims as a matter of law.  And even if those claims survived, they would depend on thousands of individual oral promises that would prevent resolution on a class basis.  The Campaign's motion should be granted.

## LEGAL ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FLSA.

#### A.    THE CAMPAIGN IS NOT A COVERED ENTERPRISE UNDER THE FLSA.

##### 1.    *The Campaign Did Not "Engage in Commerce."*

As the Supreme Court held in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 292 (1985), and as many courts have held since, a non-profit entity is subject to the FLSA only to the extent that it engages in commercial activity.  *See* Mot. at 7-10.  Such an organization's activity and revenue must be segregated into two parts: income received as a result

---

[1] Defined terms used herein have the same meaning as in Defendant's opening brief (Dkt. 111), which is referred to herein as "Mot."  Plaintiffs' opposition brief (Dkt. 133) is referred to herein as "Opp."

of charitable activity or otherwise not in the course of trade or business does not give rise to FLSA coverage, whereas revenue that does come from trade or business activity is governed by the statute.  The Supreme Court expressly drew that distinction: the foundation in that case received revenue from grocery stores and gas stations, but also from non-commercial sources.  471 U.S. at 292 n.2.  Only activities related to the former were held subject to the FLSA.  *Id*. at 305.

Plaintiffs simply assume that the sale of campaign t-shirts and bumper stickers to promote a candidate is "commercial activity," but nowhere explain the basis for that assumption, much less cite any authority.  They do no more than to insist that the FEC's designation of such sales as political contributions is "no basis" to consider them non-commercial, Opp. at 24, and to note, circularly, that revenue from "a nonprofit entity's commercial activity" counts toward the $500,000 threshold for coverage.  *Id*.

The whole question, though, is whether a political campaign's sale of memorabilia counts as "commercial activity."  That question is not a factual matter on which discovery is necessary, as Plaintiffs argue, Opp. at 25; such income is not commercial as a matter of law.  Plaintiffs cannot so easily avoid the connection between the tax-exempt status of the merchandise sales (which they do not deny) and FLSA coverage.  The statute governing such merchandise explicitly provides that "proceeds from the sale of political campaign materials . . . ***are not received in the ordinary course of any trade or business***."  26 U.S.C. §527(c)(3) (emphasis added); *see also* S. Rept. 93-1357 (1974) "political activity (including the financing of political activity) as such ***is not a trade or business*** which is appropriately subject to tax") (emphasis added).

That legal treatment of political campaigns' merchandise sales is conclusive.  Though the merchandise was not sold in competition with any other seller, whether or not Plaintiffs could make out an argument on that issue (and whether discovery might shed light on the degree of

competition) is beside the point.  Because the revenue was not received in the ordinary course of any trade or business, and so is unlike the grocery store revenue in *Alamo*, it was – as a matter of law – revenue that arose from non-profit, non-commercial activity, and therefore was not subject to the FLSA.  The Campaign did not engage in commerce, and is not an "enterprise" subject to the FLSA.

### 2.      *The Campaign Was Not Conducted for a "Business Purpose."*

Plaintiffs' next argument similarly mischaracterizes the Campaign's position.  The point is not that a political campaign falls outside the scope of the FLSA "simply because it is a tax-exempt organization," Opp. at 25; such an argument, as the Campaign acknowledged in the opening brief, is foreclosed by *Alamo*.  The question is whether the activities at issue were conducted for a "business purpose."[2]

Ignoring that broad statutory language, Plaintiffs insist that "[t]here are only three specific types of entities that are presumed to lack the 'business purpose' necessary for establishing FLSA coverage": charitable, religious, or educational organizations.  Opp. at 25.  The regulation on which they solely rely for that claim, 29 C.F.R. §779.214, does not define the category as rigidly as Plaintiffs claim; it cites such organizations as examples of entities that lack a "business purpose," the statutory term, which extends broadly to non-profits.  *See* Mot. at 7, 8 n.5 and cases cited; *see also* U.S. Dept. of Labor, Opinion Letter FLSA2008-8, at 2 ("Enterprise coverage . . . typically does not extend to the eleemosynary . . . ***or similar*** activities of [nonprofit] organizations . . . where such activities are not in substantial competition with other businesses") (emphasis added).  Congress explained that the governing principle is not the narrow classification of an organization as educational, or religious, or charitable, but rather whether it operated with a business purpose:

---

[2] 29 U.S.C. §203(r)(1) (defining a covered enterprise as the sum of "related activities performed (either through unified operation or common control) by any person or persons for a common *business purpose* . . .") (emphasis added).

> [the] definition would not include eleemosynary, religious, or educational organizations not operated for profit. The key word in the definition which supports this conclusion is the word "business." Activities of organizations for the type referred to, if they are not operated for profit, are not activities performed for a "business" purpose.

S. Rep. No. 1744, 86th Cong., 2d Sess., 28 (1960).

Plaintiffs then return to the purchases of campaign merchandise, and again simply assert that these sales constitute "commercial activity" without offering any argument as to why the sales should be so characterized.  Opp. at 26.  They simply take the supposed commercial nature of the sales as a given, and argue that an otherwise non-profit organization cannot escape the FLSA if it engages in commercial activity.  But the point is that merchandise sales by a political campaign are not commercial, as Congress and the FEC have both plainly stated.  Plaintiffs have no answer to that authority, and they cannot establish enterprise coverage.

**B.   THE PLAINTIFFS ARE NOT COVERED INDIVIDUALS.**

Plaintiffs devote just two paragraphs to defense of their contention that they can establish that they individually were "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a) (minimum wage), 207(a)(1) (overtime).  The argument flatly fails to respond to the motion in most respects.  Plaintiffs briefly point out that the SAC alleges telephone and Internet use, and suggest that that should be enough to move past the motion and conduct discovery.  They cannot dispense with the issue so summarily.

The particular details of phone calls and internet use that the Plaintiffs want to explore in discovery are irrelevant, because the SAC concedes (as it must) that the activities the Plaintiffs were engaged in were not in "commerce," but rather were in furtherance of the Campaign's non-commercial mission to win votes for Michael Bloomberg.  SAC ¶¶ 68-73; *see id*. at ¶ 224 (alleging that Plaintiffs' jobs included "making phone calls nationwide to potential voters to promote Mr. Bloomberg's candidacy for President of the United States and to recruit volunteers to aid in phone

banking and canvassing efforts for Mr. Bloomberg's Campaign").  As explained in Part I.B. of the motion, pp. 13-16, it is not enough that the individuals seeking coverage have used interstate communications; they must have done so in furtherance of commercial activity.

Plaintiffs have no answer.  While it is undoubtedly true that "the internet is an instrumentality of interstate commerce," Opp. at 28 (citation omitted), the question is whether those seeking individual coverage used that instrumentality "in commerce" or "in the production of goods for commerce."  These Plaintiffs, by their own description in the Second Amended Complaint, did not do that.  They do not allege that they ordered, or sold, or handled the merchandise on which they exclusively rely as the Campaign's commercial activity.  That admission is fatal to individual coverage.  *See, e.g.*, *Joles v. Johnson Cty. Youth Serv. Bureau, Inc*., 885 F. Supp. 1169, 1178 (S.D. Ind. 1995) ("For an employee to be 'engaged in commerce' she must be either directly participating in the actual movement of persons or things in interstate commerce or doing work directly supporting the movement of goods in interstate commerce.").

Thus, Plaintiffs can only ignore the holding in *Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1285-86, 1292 (M.D. Fla. 2005), where the court held that use of the Internet solely to help provide charitable services was not commercial and therefore could not establish individual coverage.  Nor do they address *Reagor v. Okmulgee County Family Resource Center, Inc.*, 501 F. App'x 805, 810 (10th Cir. 2012), where the court held that the plaintiff's assistance to shelter residents in obtaining cell phone service was "provided . . . as part of the charitable activities of [the center], not as a competitor in the cellular telephone business."[3]  The same reasoning applies here: any interstate calls, emails, or other communications

---

[3] Plaintiffs dismiss both cases without discussion, arguing that they were decided after discovery.  Opp. at 29 n.12.  In fact, *Reagor* was decided on a motion to dismiss.  And, again, the distinction is meaningless here, because the facts are not in dispute: taking the Second Amended Complaint's allegations as true, Plaintiffs' telephone and Internet use

were entirely to further the non-commercial activities of the Campaign. The Supreme Court followed the same reasoning in *Alamo*: where an otherwise exempt organization engages in commercial activity, as the Alamo Foundation did, it is the individuals engaged in the commercial activities of the organization, and only those employees, who are subject to the FLSA: "Nor is there any reason to fear that, as petitioners assert, coverage of the Foundation's business activities will lead to coverage of volunteers who drive the elderly to church, serve church suppers, or help remodel a church home for the needy." 471 U.S. at 302. "These requirements apply only to commercial activities undertaken with a 'business purpose,' and would therefore have no impact on petitioners' own evangelical activities." *Id.* at 305. The same is true here: individuals like the Plaintiffs who worked only on the non-commercial project of promoting Mr. Bloomberg's candidacy and policy positions cannot point to sales of merchandise – even if they were commercial, which as shown above they were not – to establish individual coverage under the FLSA. Plaintiffs were not subject to the FLSA, and cannot assert claims under that statute as a matter of law.

## II.   PLAINTIFFS' AT-WILL EMPLOYMENT STATUS PRECLUDES THEIR FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL CLAIMS.

Because Plaintiffs' employment undeniably was at-will, they could not reasonably rely upon a promise of future continued employment as a matter of law. *See* Mot. at 20-21, 25-26 (citing cases). Plaintiffs do not dispute that they were at-will employees; instead, they merely argue that they "do not *allege* that they were employees at-will" and plead with the Court to ignore the multiple documents in which they repeatedly acknowledged their at-will status. *See* Opp. at 7, n.1 (emphasis added). Their effort to ignore the facts should be rejected.

---

were not "in commerce" as a matter of law. Plaintiffs concede that their activities were entirely in furtherance of the campaign's political mission, not any commercial activity.

*First*, whether or not Plaintiffs *allege* that they were at-will employees is irrelevant, because there is a legal presumption that their employment was at-will. "In New York, it has long been 'settled' that 'an employment relationship is *presumed* to be a hiring at will, terminable at any time by either party.'" *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (citation omitted) (emphasis added). This presumption of at-will employment applies "[a]bsent an agreement establishing a fixed duration." *Araujo v. Macaire*, No. 16-cv-9934, 2020 WL 1816189, at *11 (S.D.N.Y. Apr. 10, 2020) (citation omitted); *see also Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008). Notably, "[i]t is [Plaintiffs'] burden to allege facts showing that the at-will presumption has been overcome." *Nicholas v. Wyndham Hotel Grp., LLC*, No. 14-cv-5726, 2015 WL 1011724, at *4 n.3 (S.D.N.Y. Mar. 9, 2015) (granting motion to dismiss). Here, Plaintiffs allege nothing to rebut the presumption that they were at-will employees as a matter of law. They do not (and cannot) allege that they entered into an employment contract with the Campaign for a fixed duration and they do not (and cannot) assert a claim for breach of any such contract.

*Second*, Plaintiffs are incorrect that the Court may not consider the Offer Letters and Employee Handbook acknowledgments, in which Plaintiffs repeatedly acknowledged in writing their at-will status. *See* Mot. at 3-5. Plaintiffs do not dispute that they signed these documents or otherwise contest their authenticity. *Cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 n.5 (2d Cir. 2002) ("Courts have declined to consider *unsigned* documents in ruling on motions to dismiss.") (emphasis added). Like the collective bargaining agreement in *Hamzaraj* and the employee handbook in *Berman*, these documents can be considered at this stage because they memorialize the terms of Plaintiffs' employment relationship with the Campaign, and therefore are integral to Plaintiffs' claims, which arise entirely from that relationship. *See* Mot. at 4, n.2.

Precisely because at-will employees cannot reasonably rely on representations promising them continued employment in the future, courts routinely grant motions to dismiss on this basis. *See* Mot. at 20-21, 24-26 (citing cases). Indeed, for this same reason, courts do not even recognize promissory estoppel as a valid cause of action in the at-will employment context. *See* Mot. at 24 (citing cases).[4]

Unsurprisingly, Plaintiffs cannot identify a single case holding that an employee can "reasonably" rely on a promise of continued employment, where, like here, they were employed at-will. The cases relied on by Plaintiffs regarding their fraudulent inducement claim, *see* Opp. at 13, only *confirm* that at-will employees cannot reasonably rely on representations of continued employment where they are seeking damages arising out of their termination, as Plaintiffs are seeking here (*see infra* Point III.B).[5] The cases relied on by Plaintiffs regarding their promissory estoppel claim (Opp. at 17-18, 20), do not involve at-will employees and therefore are inapposite.[6]

## III. PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE REMAINING ELEMENTS OF FRAUDULENT INDUCEMENT.

Plaintiffs also fail to establish the remaining elements of this claim.

---

[4] *See also Roelcke v. Zip Aviation, LCC*, No. 15-cv-6284, 2018 WL 1792374, at *12 (S.D.N.Y. Mar. 26, 2018); *Leschak v. Raiseworks, LLC*, No. 14-cv-8072, 2016 WL 11695068, at *8 (S.D.N.Y. Mar. 7, 2016); *Wittig v. Mount Sinai Med. Ctr., Inc.*, No. 14-cv-5808, 2014 WL 7234612, at *2 (S.D.N.Y. Dec. 18, 2014); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 322 (S.D.N.Y. 2012); *Ashmore v. CGI Grp. Inc.*, No. 11-cv-8611, 2012 WL 2148899, at *7 (S.D.N.Y. June 12, 2012); *Egan v. Marsh & McLennan Cos.*, No. 07-cv-7134, 2008 WL 245511, at *5 (S.D.N.Y. Jan. 30, 2008); *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-cv-8393, 2007 WL 2780390, at *6 (S.D.N.Y. Sept. 20, 2007).

[5] *See Hyman v. Int'l Bus. Mach. Corp.*, No. 98-cv-1371, 2000 WL 1538161, at *3 (S.D.N.Y. Oct. 17, 2000) (fraudulent inducement claim cannot arise from termination of at-will employment); *Cole v. Kobs & Draft Adver., Inc.*, 921 F. Supp. 220, 226 (S.D.N.Y. 1996) (same); *Garnier v. J.C. Penney Co.*, 863 F. Supp. 139, 143 (S.D.N.Y. 1994) (same).

[6] *See Lord v. Marilyn Model Mgmt., Inc.*, 173 A.D.3d 606, 607 (1st Dep't 2019) (alleging employment contract providing for "six months' severance if plaintiff were terminated without cause"); *Rogers v. Town of Islip*, 230 A.D.2d 727, 727 (2d Dep't 1996) (alleging termination "in violation of [plaintiff's] considerable seniority rights"); *Katsoolis v. Liquid Media Grp., Ltd.*, No. 18-cv-9382, 2019 WL 4735364, at *2 (S.D.N.Y. Sept. 27, 2019) (alleging employment contract providing for substantial severance pay if employment was terminated other than for "just and sufficient cause"); *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 178 (S.D.N.Y. 2007) (alleging employment contract for a definite term); *Jacobs v. Carsey-Werner Distribution, Inc.*, No. 93-cv-6825, 1994 WL 116077, at *5 (S.D.N.Y. Mar. 30, 1994) (plaintiff was employed pursuant to a two-year employment contract).

A.     PLAINTIFFS DO NOT ALLEGE A MISREPRESENTATION OF PRESENT FACT.

Plaintiffs claim, citing to paragraphs 13-15 of the SAC, that they sufficiently allege a misrepresentation of present facts by the Campaign, relying on three statements reported in media articles: "(1) it signed real estate leases through November 2020; (2) 'buil[t] a machine' to operate through November; and (3) committed resources to have offices 'open till November.'"  Opp. at 6-7.  On their face, none of these statements constitute a specific promise to employ any particular Plaintiff through November.  What is more, Plaintiffs themselves misrepresent the statements that they claim misled them.

- **Jan. 11, 2020 _The Arizona Republic_ Article** – Tim O'Brien purportedly said that the Campaign had "'buil[t] a machine' to operate through November."  Opp. at 7 (alteration in original).  Plaintiffs misquote the article.  Mr. O'Brien actually was reported to have said "we're <u>building</u> a machine to support Mike Bloomberg's candidacy" (in the present tense, referring to the Campaign's intent at the time to continue building its resources).  _See_ SAC ¶ 14, n.3.  Regardless, Plaintiffs do not allege that the statement that the Campaign had built (or was building) a "machine" was a misrepresentation of present fact as of January 11, 2020.  To the contrary, Plaintiffs allege that the Campaign hired "thousands" of employees and "maintained offices nationwide."  _See_ SAC ¶¶ 180, 229.

- **Feb. 20, 2020 _Vanity Fair_ Article** – Kevin Sheekey purportedly said that Mr. Bloomberg had directed that "All those leases, sign them through November."  SAC ¶ 13.  Plaintiffs do not, however, allege whether or not the Campaign did _in fact_ sign leases through November, or that the Campaign ever represented that it had _already_ signed leases through November as of the date of Mr. Sheekey's statement.

- **March 10, 2020 _Texas Monthly_ Article** – Mr. O'Brien purportedly said that the Campaign had "committed resources to have offices 'open till November.'"  Opp. at 7.  Plaintiffs could not have relied on a statement first reported on March 10, 2020, the day _after_ they were allegedly terminated.  _See_ SAC ¶ 41.  In any event, in the actual article, Mr. O'Brien was reported to have said during an interview held in January 2020, in reference to the office in South Austin, Texas, that "[t]his office is going to be open till November."  _See_ SAC ¶ 15, n.5.  Mr. O'Brien did not say, as Plaintiffs misleadingly claim, that the Campaign had already "committed resources" to operate through November as of the date of his statement, but merely referred to the Campaign's future expectations at the time.

Plaintiffs are also wrong that the Second Circuit's decision in _Stewart v. Jackson & Nash_, 976 F.2d 86 (2d Cir. 1992) supports the proposition that they can state a claim for fraud based on a future promise of continued employment which the promisor had no intent of performing when

made.  *See* Opp. at 6-7.  In *Stewart*, the plaintiff was an attorney who accepted employment at a law firm based on representations that the firm had recently secured a large environmental law client, the firm was in the process of establishing an environmental law department, and the plaintiff would head the new department.  *Stewart*, 976 F.2d at 89.  The major client and work never materialized, and the plaintiff brought a fraudulent inducement claim after she was terminated.  The Second Circuit concluded that even though the law firm's promise that plaintiff would head the environmental law department appeared at first blush to be a future promise, it should be treated as a representation of present fact because the plaintiff alleged that the firm "knew that it did not intend" to fulfill the promise at the time it made it (as demonstrated by its collateral misrepresentations of present fact regarding the client and department).  *Id.*  As this Court subsequently explained in *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116 (S.D.N.Y. 1999) (Wood, J.), *aff'd*, 210 F.3d 88 (2d Cir. 2000), the rule articulated in *Stewart* only applies when a plaintiff alleges that they were "induced to enter into a contract by some collateral misrepresentation," but not where they merely allege "that defendant never had any intention of making good on its 'offer.'"  *Leonard*, 88 F. Supp. 2d at 132 (dismissing fraud claim); *see also Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 525 (S.D.N.Y. 2017) (to recover for fraudulent inducement, at-will employees must show "that the fraudulent misrepresentation was collateral or extraneous to the employment agreement").

Here, Plaintiffs do not allege any collateral misrepresentations; rather, they claim that the Campaign promised them "the opportunity to work on the primary and general elections" and that the Campaign never intended to perform this promise.  *See* Opp. at 7 (citing SAC ¶¶ 3, 5, 7). Plaintiffs do not allege, for example, any facts suggesting that the Campaign did not intend to

continue efforts through the general election when it hired them.[7]  Nor do Plaintiffs allege, like the

plaintiff in *Stewart* alleged, that the Campaign misrepresented the *nature* of the job they were hired

to do.  They complain only that the Campaign misrepresented its future intentions as to the

*duration* of their employment (*see* SAC ¶ 416), which does not give rise to a fraudulent inducement

claim.  *See Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 168 (1st Dep't 2015)

(noting that at-will employee cannot state a claim based upon "representations of future intentions

as to the duration or security of his employment" but allowing claim to proceed because plaintiff

alleged that defendants "misrepresented the nature of the job that they were hiring him to do").[8]

### B.  PLAINTIFFS DO NOT ALLEGE AN INJURY INDEPENDENT OF TERMINATION.

With respect to injury, Plaintiffs again fail to respond to the Campaign's argument, and

ignore their own allegations.  As the Campaign pointed out in its opening brief, Plaintiffs do not

allege any legally cognizable injury because their alleged damages flow directly from their

terminations.  *See* Mot. at 21 (citing SAC ¶ 423); *see also* SAC ¶ 47.  Although Plaintiffs argue

that "the injury alleged stems from leaving a former place of employment or agreeing to remain in

a compromised position at a current place [of] employment" (Opp. at 14), they tellingly do not

identify a single paragraph in their 432-paragraph SAC with such an allegation (there are none).

Plaintiffs cannot raise a new theory of damages for the first time in opposition to a motion

to dismiss based on an argument that is contradicted by their allegations in the SAC.  *See Lamex*

---

[7] Accordingly, Plaintiffs also fail to allege facts giving rise to a "strong inference" of fraudulent intent.  Contrary to Plaintiffs' argument, *see* Opp. at 11, a merely *permissible* inference is not enough.  *See* Mot. at 18-19.

[8] The remaining cases relied on by Plaintiffs therefore are not applicable, because those cases all involved alleged misrepresentations about the nature of the jobs the plaintiffs were hired to do, not the duration of those jobs.  *See Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13-cv-6935, 2015 WL 4743542, at *7 (S.D.N.Y. Aug. 11, 2015) (plaintiff alleged that "Defendants' description of the job and the nature of [defendant's business] were fraudulent"); *Doehla v. Wathne Ltd., Inc.*, No. 98-cv-6087, 2000 WL 987280, at *5 (S.D.N.Y. July 17, 2000) (plaintiff alleged that "[defendants] knew that the representations they made to [him] about what his position would be and what he would be allowed to do were not true when they made them"); *Kissner v. Inter-Cont'l Hotels Corp.*, No. 97-cv-8400, 1998 WL 337067, at *1 (S.D.N.Y. June 25, 1998) (plaintiff alleged that he agreed to relocate to another country based on the misrepresentation that he was receiving a promotion).

*Agrifoods, Inc. v. MSC Mediterranean Shipping Co. S.A.*, No. 16-cv-8462, 2017 WL 4803923, at
*2 (S.D.N.Y. Oct. 23, 2017) (refusing to consider assertion raised in opposition brief that was
contradicted by allegations in the complaint).

> C.     **PLAINTIFFS FAIL TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING STANDARD.**

Although they have already amended their complaint twice, Plaintiffs' third iteration of
their complaint still fails to plead any alleged fraud with the particularity required by Federal Rule
of Civil Procedure 9(b).  Plaintiffs claim that the SAC references "more than 65 specific occasions"
where a Campaign official made misrepresentations," Opp. at 16, but do not plead sufficient facts
linking a single one of these purported "misrepresentations" to any particular Plaintiff.

- **Individual Communications to Prospective Employees** – The vast majority of the
  purported misrepresentations alleged by Plaintiffs are contained in a single paragraph of
  the Second Amended Complaint.  SAC ¶ 24.  Plaintiffs do not, however, specify the *content*
  of any of those purported misrepresentations or allege *to whom* the statements were made.
  Plaintiffs simply ignore the Campaign's argument on this point.  *See* Mot. at 23.

- **Media Articles** – Plaintiffs also rely on statements attributed to Campaign officials in press
  reports (see SAC ¶¶ 12-16, 18), but as discussed above, they do not identify any false
  statements in any of those press reports.  *See supra* Point III.A.

- **Statement by Mr. Bloomberg at Dec. 15, 2019 Event** – Plaintiffs refer to a statement
  purportedly made by Mr. Bloomberg to Campaign *employees* at an event in Charlotte,
  North Carolina on December 15, 2019, but completely ignore that Plaintiffs were not yet
  employees on that date and do not allege they were aware of the statement.  *See* Mot. at 22.

- **Jan. 13, 2020 Email from Dan Kanninen** – Plaintiffs refer to an email purportedly sent
  to Campaign employees on January 13, 2020, but, again, fail to allege that any particular
  Plaintiff was aware of that email.  *See* Mot. at 22-23.

Plaintiffs do not identify a single case holding that generalized statements reported in the
press can satisfy Rule 9(b) in the employment context.  This is unsurprising, because such
statements have been held to be insufficiently specific even in cases involving a lower pleading

standard.  *See Sang Lan v. Time Warner, Inc.*, No. 11-cv-2870, 2013 WL 1703584, at *6 (S.D.N.Y.

Apr. 19, 2013) (dismissing promissory estoppel claim premised on statements to the press).[9]

Plaintiffs' failure to allege that any *specific* misrepresentation was made to any *specific*

plaintiff is fatal to Plaintiffs' fraudulent inducement claim.  *See* Mot. at 23 (citing cases); *see also*

*Butala v. Agashiwala*, 916 F. Supp. 314, 322 (S.D.N.Y. 1996) ("Insofar as the Complaint does not

identify *the specific plaintiffs to whom* enumerated communications were made … it is not pleaded

with sufficient particularity.") (emphasis added); *President Container Grp. II, LLC v. Systec Corp.*,

No. 18-cv-4441, 2020 WL 3318248, at *2 (S.D.N.Y. June 17, 2020) (granting motion to dismiss

where plaintiff failed to allege "*to whom*" misrepresentations were made) (emphasis added).

## IV.   PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE REMAINING ELEMENTS OF PROMISSORY ESTOPPEL.

Although Plaintiffs' promissory estoppel claim should be dismissed without further

analysis given their at-will status, *see supra* Point II, they also fail to allege the remaining elements.

### A.   GENERALIZED STATEMENTS REPORTED IN THE PRESS DO NOT CONSTITUTE A "CLEAR AND UNAMBIGUOUS PROMISE."

Plaintiffs suggest that the Campaign "does not even attempt to set forth a reasoned

argument that [the alleged] explicit promises are not clear or unambiguous." Opp. at 19.  Plaintiffs

are wrong.  In its opening brief, the Campaign demonstrated that none of the generalized

statements reported in the press upon which Plaintiffs rely constitute a "clear and unambiguous

promise."  *See* Mot. at 25, n.16 (citing cases); *see also Sang Lan*, 2013 WL 1703584, at *4-6

---

[9] Plaintiffs therefore are wrong that "[s]tatements to the press … can serve as the basis for a fraud claim" in this case. *See* Opp. at 16.  The cases they rely on are all statutory securities fraud cases, which implicate "the interest in deterring fraud in the securities markets."  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 263 (2d Cir. 1993).  In light of that important public interest, securities fraud cases are governed by the rule that "when corporate spokesmen make statements to the press, they must speak truthfully or risk 10b–5 liability."  *In re Columbia Sec. Litig.*, 747 F. Supp. 237, 245 (S.D.N.Y. 1990); *Nemo Tile Co. v. Shawmut Nat'l Corp.*, No. 95-cv-0757, 1995 WL 1682315, at *2 (E.D.N.Y. Nov. 1, 1995) (same).  Moreover, even in the securities fraud context, "statements about goals" are treated as "classic puffery" that do not give rise to a fraud claim.  *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 298 (S.D.N.Y. 2019) (granting motion to dismiss securities fraud case).

(granting motion to dismiss claim based on public statements reported in the press because those statements "did not constitute a clear and unambiguous promise").[10]

### B.   PLAINTIFFS CANNOT ESTABLISH AN UNCONSCIONABLE INJURY.

Plaintiffs do not allege any facts demonstrating that they suffered an "unconscionable injury."  *See* Mot. at 26-27.  Plaintiffs appear to concede this point and instead argue that they do not have to meet this demanding standard because they have not invoked promissory estoppel as a defense to the Statute of Frauds.  Opp. at 21-22.  However, as Plaintiffs acknowledge, courts in this district have dismissed estoppel claims for failure to allege an unconscionable injury even in cases in which estoppel was *not* invoked as a defense to the Statute of Frauds.  *See* Opp. at 20.

More importantly, Plaintiffs are wrong that the Statute of Frauds does not apply to this case.  Plaintiffs do not plead a claim for breach of contract; instead, they plead a claim for promissory estoppel.  They do so precisely because they recognize that the alleged promises on which they say they relied all were oral and therefore ineffective under New York's Statute of Frauds given the no-oral-modification clause in the Offer Letters.  *See* N.Y. Gen. Oblig. Law § 15-301(1).  "It is [therefore] proper to dismiss the cause of action due to lack of an unconscionable injury on the pleadings alone."  *CMC Trans. Servs., LLC v. IDEX Corp.*, No. 18-cv-4925, 2019 WL 3496643, at *5 (S.D.N.Y. Aug. 1, 2019).

## V.   PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN.

The class allegations should be stricken because it is apparent from the face of the SAC that no class can be certified with respect to the Common Law claims, regardless of what discovery

---

[10] Plaintiffs' opposition ignores this argument and therefore concedes that the statements reported in the press upon which Plaintiffs rely do not constitute clear and unambiguous promises.  *See Felske v. Hirschmann*, No. 10-cv-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").  Indeed, although Plaintiffs cite to inapplicable authority regarding the question of whether statements reported in the press can serve as the basis for a fraud claim (*see* n.9, *supra*), they notably do not cite a single case holding that such statements can serve as the basis for a promissory estoppel claim.

may reveal.  Plaintiffs allege that their claims are premised on "more than 65 specific promises," made by dozens of individuals in multiple locations over the course of several months to thousands of field organizing employees.  *See* Opp. at 1, 16; SAC ¶¶ 11-24.  Determining which specific alleged promises was made to each putative class member will require highly individualized inquiries into the substance of thousands of individual communications.  *See* Mot. at 29-30.  Moreover, Plaintiffs do not even attempt to distinguish the multiple cases cited by the Campaign holding that claims of promissory estoppel or fraud that include an element of reasonable reliance are not susceptible to class treatment.  *See* Mot. at 30-31 (citing cases).  Plaintiffs note that those cases were decided at the class certification stage, Opp. at 33, but make no attempt to explain how reasonable reliance will be proven through class-wide proof in *this* case.  Finally, Plaintiffs do not articulate how their alleged injuries which are premised on them leaving their respective prior employers and relocating to join the Campaign (SAC ¶ 428), can be proven on a class-wide basis.  *See* Mot. at 31-33.

## VI.   PLAINTIFFS SHOULD NOT BE ALLOWED A THIRD AMENDMENT.

Plaintiffs appear to understand the futility of any further amendments, since they "provided no proposed [third] amended complaint and did not indicate…what [they] might add to a new complaint to overcome the…defects found in the current one." *Jacobson v. Kings Cty. Democratic Cty. Comm.*, 788 F. App'x 770, 774 (2d Cir. 2019).  Because Plaintiffs have already unsuccessfully amended their complaint after the Campaign provided them with the factual and legal grounds for this motion (*see* Dkt. 110), any further amendments would be futile.  *See Pilchman v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO*, No. 10-cv-4976 (KMW), 2011 WL 4526455, at *14 (S.D.N.Y. Sept. 29, 2011) (Wood, J.) (denying leave to file Third Amended Complaint on the ground that any further amendment would be futile).

15

## CONCLUSION

For the foregoing reasons and those set forth in Defendant's initial moving papers, the Court should grant Defendant's motion.

Dated: July 31, 2020           PROSKAUER ROSE LLP

*/s/ Elise M. Bloom*
Elise M. Bloom
Rachel S. Philion
Pinchos N. Goldberg

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
ebloom@proskauer.com
rphilion@proskauer.com
pgoldberg@proskauer.com

PROSKAUER ROSE LLP

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(T)  617.526.9850
mbatten@proskauer.com

VENABLE LLP

Nicholas M. Reiter
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(T)  212.307.5500
nmreiter@venable.com

*Attorneys for Defendant*
MIKE BLOOMBERG 2020, INC.

16