```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DONNA WOOD, et al., individually and on            :
behalf of all others similarly situated,                        OPINION & ORDER
                                                   :
            Plaintiffs,                                         20 Civ. 2489 (KMW) (GWG)
                                                   :
     -v.-
                                                   :
MIKE BLOOMBERG 2020, INC.,
                                                   :

            Defendant.                             :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Donna Wood has sued her former employer, Mike Bloomberg 2020, Inc. (the "Bloomberg campaign") asserting, among other claims, that the Bloomberg campaign violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), by failing to pay overtime to Wood while she was employed as a field organizer ("FO"). Before the Court is the motion of Wood --- as well as a number of other plaintiffs who have since joined the action --- for approval of a collective action pursuant to 29 U.S.C. § 216(b).[1] For the reasons stated below, plaintiffs'

---

[1] Notice of Plaintiffs' Motion for Conditional Certification of a Collective and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), filed April 17, 2020 (Docket # 63) ("Mot."); Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification of a Collective and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), filed April 17, 2020 (Docket # 64) ("Pl. Mem."); Declaration of Sally J. Abrahamson in Support of Plaintiffs' Motion for Conditional Certification of a Collective and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), filed April 17, 2020 (Docket # 65) ("Abrahamson Decl."); Defendant Mike Bloomberg 2020 Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification, filed June 1, 2020 (Docket # 94) ("Def. Mem."); Declaration of Hayden Horowitz, dated May 27, 2020 (Docket # 95); Declaration of Daniel Kanninen, dated May 31, 2020 (Docket # 96) ("Kanninen Decl."); Declaration of Scott Kosanovich, dated May 28, 2020 (Docket # 97) ("Kosanovich Decl."); Declaration of James Mitchell, dated May 28, 2020 (Docket # 98) ("Mitchell Decl."); Reply in Support of Plaintiffs' Motion for Conditional Certification of a Collective and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), filed June 17, 2020 (Docket # 114) ("Pl. Reply").

motion is granted.

I. BACKGROUND

On November 24, 2019, Mike Bloomberg announced his candidacy for President of the United States. See Second Amended Class and Collective Action Complaint, filed May 18, 2020 (Docket # 86) ("SAC") ¶ 1. Shortly thereafter, the Bloomberg campaign began hiring campaign employees for various roles, including the role of FO. Id. ¶ 2. According to plaintiffs, FOs' primary duties included engaging with potential voters via phone calls or door-to-door canvassing, as well as the recruitment of campaign volunteers. See, e.g., Declaration of Donna Wood, dated Mar. 31, 2020 (Docket # 65-1) ("Wood Decl.") ¶¶ 9-10; Declaration of Cochiese Bowers, dated Mar. 31, 2020 (Docket # 65-2) ("Bowers Decl.") ¶¶ 9-10; Declaration of Matthew Kelly, dated Mar. 30, 2020 (Docket # 65-3) ("Kelly Decl.") ¶¶ 9-10; see also SAC ¶ 59.[2] A job posting for the position of FO, which applied to "[m]ultiple locations," stated that FOs "execute the overall field strategy in each state and maximize the campaign's outreach to key constituency groups." (Docket # 65-24) ("FO Job Posting"). Responsibilities listed on the job posting included "[b]eing accountable for reaching individual goals and metrics outlined in the field plan by Regional Organizing Directors," "[i]dentifying and tracking field staff progress to daily and weekly goals," and "[s]erving as a campaign representative within the state with community members, voters and volunteers." Id. FOs were typically paid a salary of approximately $6,000 per month. SAC ¶ 64; see also Kanninen Decl. ¶ 15; Kosanovich Decl. ¶ 16; Mitchell Decl.

---

[2] Plaintiffs submit declarations from 23 former Bloomberg campaign FOs. See Abrahamson Decl. Where the declarations contain substantively identical information supporting a proposition, we occasionally cite to just a few of them.

¶ 14. The FOs regularly worked over 40 hours a week.[3] However, the Bloomberg campaign classified FOs as exempt from overtime pay and did not pay FOs overtime wages. See, e.g., Wood Decl. ¶¶ 8, 20-21; Bowers Decl. ¶¶ 8, 20-21; Kelly Decl. ¶¶ 8, 20-21; SAC ¶ 63; see generally 29 U.S.C. § 213 (listing "exemptions" from overtime pay requirements).

The original complaint in this action was filed on March 23, 2020. See Class and Collective Action Complaint, filed Mar. 23, 2020 (Docket # 1). The Bloomberg campaign filed a partial motion to dismiss on June 17, 2020. See Notice of Motion to Dismiss, filed June 17, 2020 (Docket # 110). On July 20, 2020, the Bloomberg campaign filed a motion to stay discovery pending disposition of its partial motion to dismiss. See Notice of Motion for Limited Stay of Discovery, filed July 20, 2020 (Docket #134). Both of these motions are pending.

The instant motion was filed on April 17, 2020. Wood seeks an order allowing this case to proceed as a collective action, with the proposed persons to be notified consisting of "all individuals who have worked as Bloomberg campaign Field Organizers nationwide between November 24, 2019 and the present." See Pl. Mem. at 15. While no notice has been distributed, over 100 FOs have already signed forms joining this action. See Pl. Mem. at 2.

II. GOVERNING STANDARDS OF LAW

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

---

[3] See SAC ¶¶ 62, 82, 84, 86, 88, 90, 92, 94, 96, 98, 104, 106, 108, 110, 112, 116, 118, 120, 122, 124, 126, 128, 132, 136, 138, 140, 142, 144, 146, 148, 150, 154, 156, 157, 159, 161, 163, 165, 167, 169, 171, 173, 175, 177, 179; see also, e.g., Wood Decl. ¶¶ 8, 21; Bowers Decl. ¶¶ 8, 21; Kelly Decl. ¶¶ 8, 21.

3

29 U.S.C. § 216(b).  While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to permit notices to be sent to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs") (citations omitted); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted).  "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though [the] FLSA does not contain a certification requirement." Damassia v. Duane Reade, Inc., 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006).  The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to potential class members."  Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (internal quotation marks and citation omitted), cert. denied, 565 U.S. 930 (2011).  The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169, 174).

The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made."  Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted). Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a

collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment." Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and citation omitted).

The Second Circuit has endorsed a "two-step process" for treatment of a proposed collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. [Myers,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. Id.

Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2015). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)).

In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012). Therefore, a court "should not weigh the merits of the underlying claims" at the conditional approval stage, and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).

Once plaintiffs have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are

similarly situated to the original plaintiffs." Indergit, 2010 WL 2465488 at *4; accord Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010).  If the court determines at that stage that the opt-in plaintiffs are not similarly situated to the named plaintiff, then "[t]he action may be 'de-certified' . . . and the opt-in plaintiffs' claims may be dismissed without prejudice."  Myers, 624 F.3d at 555 (citations omitted).

III. DISCUSSION

    A. Merits Arguments

The Bloomberg campaign dedicates the lion's share of its brief to arguing that the FLSA does not apply to it because it is not an "enterprise engaged in commerce," see Def. Mem. at 4-12, and that plaintiffs are not otherwise covered by the FLSA through the law's "individual coverage" provision, see id. at 12-19.  Case law makes clear, however, that "[a]t this procedural stage, the court does not . . . decide substantive issues going to the ultimate merits."  Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted); accord Zeledon v. Dimi Gyro LLC, 2016 WL 6561404, at *7 (S.D.N.Y. Oct. 13, 2016) ("this Court has identified no persuasive authority supporting" a court addressing "the adequacy of a complaint's allegations of FLSA coverage") (finding it "inappropriate for the Court to address any general question of FLSA coverage"); Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 527 (S.D.N.Y. 2015) (arguments that "attack the merits of the case" should not be "addressed at this juncture") (internal quotation marks and citation omitted); Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013) (finding "irrelevant" defendants' contention that plaintiff "was exempt from the FLSA minimum wage and overtime requirements" because to consider that argument would require the court to "undertake the very type of premature merits determination that is proscribed at the preliminary certification stage").  While one court has

found an exception to this rule where there are "manifestly deficient pleadings," Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013), we are not prepared to conclude at this time that the complaint in this case meets that high standard.

The Bloomberg campaign points to language in Myers noting that "plaintiffs must show that they and the proposed collective 'together were victims of a common policy or plan that violated the law.'" Def. Mem. at 4 (quoting Myers, 624 F.3d at 555) (emphasis added). The Bloomberg campaign points to this phrase to argue that there can be no FLSA collective in the absence of proof that the FLSA was violated. Id. at 1, 5. But the phrase "that violated the law" in Myers cannot bear the weight the Bloomberg campaign attempts to place on it. As we have previously noted, the inquiry in a motion for approval of a collective "is not on whether there has been an actual violation of law[,] but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (emphasis added). In other words, a court considers whether the proposed collective and the plaintiff allege a similar violation of the law, not on whether the law has in fact been violated. This conclusion is supported by the ample case law holding that consideration "of the merits is absolutely inappropriate" at the conditional approval stage. Shajan v. Barolo, Ltd., 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010); accord Gorey v. Manheim Servs. Corp., 2010 WL 5866258, at *4 (S.D.N.Y. Nov. 10, 2010) ("Defendants may ultimately be correct that no unlawful policy exists regarding the way it classifies its employees, but that decision should wait" until after the conditional approval decision.). We note that cases have specifically declined to consider at the conditional approval stage the very types of arguments that the Bloomberg campaign raises here. See Smith v. Dasuya Enters. LLC, 2020 WL 210277, at *2, 4 (E.D. La. Jan. 14, 2020) (declining to consider argument that FLSA

"individual coverage does not apply because Plaintiffs were not engaged in interstate commerce" given that "the resolution of issues regarding FLSA coverage is premature at" the conditional approval stage); Arzeno v. Big B World, Inc., 2016 WL 9049939, at *1 (S.D.N.Y. July 20, 2016) (argument that defendant "is not an 'enterprise' as defined under the FLSA" goes "to the merits of Plaintiffs' underlying claims and [is] thus beyond the scope of the conditional certification stage").

    B.  Whether Plaintiffs Are Similarly Situated

The only remaining question is whether plaintiffs have made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman, 982 F. Supp. at 261.  As to the quantum of proof that must be offered by plaintiffs, we have recognized in the past that, while the burden on the plaintiffs is "modest," it is "not non-existent and the factual showing, even if modest, must still be based on some substance." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

Here, the plaintiffs easily meet this burden.  Plaintiffs provide 23 declarations from FOs across 15 different states supporting the claim that FOs nationwide performed the same duties and were subject to the same overtime policy.  See Abrahamson Decl.  Each of these declarations states that the declarant's main duties were voter outreach and volunteer recruitment, that all other FOs observed by the declarant performed these same duties, that the declarant was not paid overtime despite working over 40 hours per week, and that the declarant observed other FOs working over 40 hours per week without receiving overtime pay.  See, e.g., Wood Decl. ¶¶ 8-10, 20-21; Bowers Decl. ¶¶ 8-10, 20-21; Kelly Decl. ¶¶ 8-10, 20-21.

These affidavits identify a specific common policy: the Bloomberg campaign's decision

8

to consider FOs exempt from the FLSA overtime requirements.  See SAC ¶ 321.  Where a number of employees are subject to the same classification, courts routinely find that the "similarly situated" standard is met.  See, e.g., Sealock v. Covance, Inc., 2018 WL 2290698, at *2 (S.D.N.Y. May 18, 2018) (granting conditional approval motion where plaintiff offered "sufficient general proof that members of the putative collective were victims of a common policy to wrongfully exempt them from the FLSA and, thus, to not pay them overtime wages."); Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 649 (S.D.N.Y. 2010) ("show[ing] that potential plaintiffs were classified as exempt pursuant to a common policy or scheme" and not paid overtime wages is sufficient at the conditional approval stage); Young, 229 F.R.D. at 55 (plaintiffs were similarly situated at the conditional approval phase where defendant "admitted that it classified [position] as exempt from the FLSA and that it did in fact have a policy not to compensate [employees in that position] for hours worked in excess of 40 hours per week"). Multiple corroborating declarations, such as the declarations provided by plaintiffs here, are sufficient to satisfy the "modest factual showing" required at the conditional approval phase. See Pettenato v. Beacon Health Options, Inc., 425 F. Supp. 3d 264, 282 (S.D.N.Y. 2019) ("Each declaration describes the declarant's job duties, job titles, and hours worked, as well as [defendant's] policy of denying him or her — and other employees classified as exempt who performed similar duties — overtime pay. . . .  These declarations, which generally corroborate one another, provide a sufficient evidentiary foundation for conditional certification."); Colon v. Major Perry St. Corp., 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action.").

      More significantly, plaintiffs have submitted an advertised FO job posting that provides a

single description of FO duties and that is consistent with the duties described by the declarants. See FO Job Posting. This job posting provides further support that the FOs were subject to a "common policy or plan." Glatt, 811 F.3d at 540; see, e.g., Gorey, 2010 WL 5866258 at *4 ("[D]eclarations, coupled with the corroborating job descriptions . . . are sufficient to warrant conditional treatment of this case as a collective action."); Indergit, 2010 WL 2465488 at *5 (granting conditional approval based on affidavits and "nationwide job descriptions").

The cases cited by the Bloomberg campaign are distinguishable because the plaintiffs in those cases proffered evidence far weaker than the evidence provided by plaintiffs here: 23 declarations from FOs across 15 states and a FO job posting for "multiple locations." See Qiang Lu v. Purple Sushi Inc., 2020 WL 1303572, at *4 (S.D.N.Y. Mar. 19, 2020) (declining to include certain positions in a collective action where no declarations were submitted by individuals in the other positions, and plaintiffs did "not have personal knowledge of Defendants' pay policies as to the waiters and kitchen staff that they claim are similarly situated to them"); Sanchez v. JMP Ventures, L.L.C., 2014 WL 465542, at *1-2 (S.D.N.Y. Jan. 27, 2014) (denying motion for conditional approval of "all tipped employees, at three restaurants, over a three-year period" where "[t]he factual record supporting [the] motion" was limited to a single affidavit by the plaintiff, who "worked solely as a delivery person at two of the three restaurants . . . for a total of approximately seven months"); Guillen, 750 F. Supp. 2d at 477 (denying nationwide conditional approval where plaintiffs' "evidence essentially consists of affidavits from five ASMs who experienced the allegedly illegal activities at nine of the 820 Marshalls stores nationwide" and "[t]he nine stores [were] exclusively in the New York City metropolitan area"); Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 209 (N.D.N.Y. 2009) (declining to approve inclusion in a collective action where "[n]o affidavits [were] given from employees at th[e]

facility, nor d[id] the affirmations provided by the plaintiffs state that they ha[d] personal knowledge that health care workers of that entity [were] subject to similar short staffing and . . . the need regularly to work through or during scheduled meal breaks, without compensation").

The Bloomberg campaign uses evidence that some FOs had "event planning responsibilities," Def. Mem. at 23, to argue that there is no "commonality between Plaintiffs and the group they hope to represent," id. at 19.  But even if we accepted defendant's evidence on this point, the Bloomberg campaign universally classified FOs as exempt.  Thus, "[t]he consistent manner in which [defendant] classified its own [employees] is sufficient to carry [plaintiffs'] burden" at the conditional approval stage, "even in the presence of minute factual variances in treatment between . . . locations."  Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 106 (D. Conn. 2007); accord Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 161 (S.D.N.Y. 2014) ("Other judges in this District have similarly recognized that the possible existence of exemptions is a merits issue that is not relevant at the conditional certification stage."); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010) ("[T]he court rejects Defendant's objection that conditional certification was inappropriate because the class . . . required individualized factual inquiries to determine whether or not they were exempt from the FLSA.").

We note that other cases cited by the Bloomberg campaign to support its exemption argument are either irrelevant or distinguishable.  O'Donnell v. Robert Half Int'l, Inc., 429 F. Supp. 2d 246 (D. Mass. 2006), see Def. Mem. at 22-23, denied plaintiffs' conditional approval motion where the individual plaintiffs were "two former Staffing Managers in a single division . . . of a single office" of "a large company with a business presence throughout the country." O'Donnell, 429 F. Supp. 2d at 250.  The court found it was "far from clear that the

11

plaintiffs [were] similarly situated with: 1) Account Executives and Account Managers, 2) employees outside [their] Division or 3) employees in other parts of the country." Id.  Here, by contrast, plaintiffs seek to bring a collective action on behalf of other individuals who held the same position of FO, and provide evidence that they are similarly situated to potential opt-in plaintiffs across the country by submitting 23 declarations from FOs across 15 states, as well as a job posting for the FO position.  See Abrahamson Decl.; FO Job Posting.  In Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493 (D.N.J. 2000), see Def. Mem. at 23, the Court denied plaintiffs' conditional approval motion because the proposed members of the collective held "a wide variety of positions and perform[ed] a wide variety of job duties." Morisky, 111 F. Supp. 2d at 498.  Here, plaintiffs have proffered evidence that the proposed members of the collective shared the same job title and performed the same duties.

IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional approval of a collective action as to all field organizers who worked for Mike Bloomberg 2020, Inc. (Docket # 63) is granted.[4]

SO ORDERED

Dated: September 3, 2020
       New York, New York

*[signature]*
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[4] Plaintiffs have submitted a proposed notice, as well as a proposed reminder, for Court approval.  See Docket ## 65-26, 65-27.  The Bloomberg campaign does not make objections to the form of notice or methods of distribution.  The parties are directed to confer on these matters and may bring any disagreements to the Court's attention.