# EXHIBIT B

```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


TRACY YVETTE SCOTT,              .  4:20-CV-02261
                                 .  HOUSTON, TEXAS
     PLAINTIFF,                  .  OCTOBER 19, 2020
VS.                              .  2:29 P.M.
                                 .
MIKE BLOOMBERG 2020, INC.,       .
                                 .
     DEFENDANTS.                 .
.................................


           TRANSCRIPT OF TELEPHONIC MOTION HEARING
           BEFORE THE HONORABLE KEITH P. ELLISON
                UNITED STATES DISTRICT JUDGE



                          APPEARANCES



FOR THE PLAINTIFF:

     Carroll G. Robinson
     ROBINSON LAW GROUP
     4203 Yoakum Boulevard
     Suite 310
     Houston, Texas   77006



FOR THE DEFENDANTS:

     Rex D. VanMiddlesworth
     THOMPSON & KNIGHT LLP
     98 San Jacinto Boulevard
     Suite 1900
     Austin, Texas   78701
```

```
 1                    APPEARANCES - CONTINUED

 2

 3

 4   ALSO FOR THE DEFENDANTS:

 5        Meghan McCaig
          Gregory W. Curry
 6        THOMPSON & KNIGHT LLP
          1722 Routh Street
 7        Suite 1500
          Dallas, Texas   75201
 8

 9

10   OFFICIAL COURT REPORTER:

11        Mayra Malone, CSR, RMR, CRR
          U.S. Courthouse
12        515 Rusk
          Room 8004
13        Houston, Texas   77002
          713-250-5787
14

15

16   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
17
```

```
                 1                      PROCEEDINGS
                 2          (All participants appeared by telephone)
                 3          THE COURT:  Good afternoon.  This is Keith Ellison.
                 4   Welcome to all of you.
14:19            5               We will take appearances of counsel beginning
                 6   with plaintiff, please.
                 7          MR. ROBINSON:  Carroll G. Robinson for plaintiff.
                 8          THE COURT:  Thank you.
                 9               For defendant?
14:20           10          MR. VANMIDDLESWORTH:  Good afternoon, Judge.  This is
                11   Rex VanMiddlesworth for defendant.  And with me is Greg Curry
                12   and Meghan McCaig.
                13          THE COURT:  Welcome to all of you.  We are here on a
                14   motion to remand and a motion to dismiss.  Before I get into
14:20           15   the merits of either motion, let me just clarify a couple
                16   questions -- a couple issues.  There is some confusion about
                17   how long Ms. Scott was paid.  It looks as if she was paid
                18   through March 31st.  Is that correct, Mr. Robinson?
                19          MR. ROBINSON:  Yes, Your Honor.
14:20           20          THE COURT:  Okay.  And then in considering the motion
                21   to dismiss, it's not entirely clear that we can rely on the
                22   contract.
                23               Does the plaintiff have any objection to our
                24   incorporating the contract as something we can rely upon in
14:21           25   deciding the motion to dismiss?
```

14:21    1    MR. ROBINSON: Well, yes, Your Honor, because the
         2 contract was not completely complied with. At this stage --
         3    THE COURT: I'm not asking whether it is enforceable
         4 or anything. I said is the document itself something we can
14:21    5 talk about in the motion to dismiss?
         6    MR. ROBINSON: Yes, Your Honor. I'm amenable to that.
         7    THE COURT: Okay. And then I notice in the original
         8 complaint that was filed in state court, the petition, Scott
         9 noted that she was proceeding individually on behalf of all
14:21   10 others similarly situated, but the rest of the pleadings didn't
        11 refer back to that.
        12        This is just a single-plaintiff lawsuit, isn't
        13 it, Mr. Robinson?
        14    MR. ROBINSON: Well, Your Honor, when we filed it down
14:21   15 in state court, we intended, because we have two other clients,
        16 and we were ultimately hoping to recruit more. So we were
        17 looking at this being a class action. There is also a case in
        18 New York. I'm sure --
        19    THE COURT: I know about that case. Yeah. Yeah.
14:22   20    MR. ROBINSON: And I think they have just recently
        21 been certified for class action status by the magistrate on at
        22 least one issue in that case.
        23    THE COURT: Well, for today's hearing, I'm going to
        24 treat this as an individual claim and not as a collective
14:22   25 claim.

| | | |
|---|---|---|
| 14:22 | 1 | The motion to remand, let's take that up first. |
| | 2 | Anything, Mr. Robinson, you would like to add to |
| | 3 | what's in the papers? |
| | 4 | MR. ROBINSON: No, Your Honor. Not at this point. |
| 14:22 | 5 | THE COURT: It seems to me that the legal standard |
| | 6 | is -- the summons in the plaintiff's complaint is taken at face |
| | 7 | value, asserting good faith. Here we don't have a specific |
| | 8 | amount alleged. And in those instances, to remove, the |
| | 9 | defendant must prove by a preponderance of the evidence the |
| 14:23 | 10 | amount in controversy exceeds 75,000. It seems like the amount |
| | 11 | that she is owed is, according to the allegations, something in |
| | 12 | the neighborhood of 60 to 70,000, and attorneys' fees and |
| | 13 | punitive damages are also being claimed. It seems to me that |
| | 14 | reasonably assessing the allegations, there is more than 75,000 |
| 14:23 | 15 | at stake. Is that not right, Mr. Robinson? |
| | 16 | MR. ROBINSON: Well, Your Honor, in state court, it |
| | 17 | would depend on how much the Court would ultimately award us |
| | 18 | because we took the case on a contingency fee contract. And |
| | 19 | under state case law, that would have to be proved up, |
| 14:24 | 20 | depending on what we finally won, against what portion of the |
| | 21 | judgment we would be entitled to. |
| | 22 | THE COURT: A conservative estimate of contingency |
| | 23 | fees would be one third of recovery, wouldn't it? That's not |
| | 24 | excessive. |
| 14:24 | 25 | MR. ROBINSON: If, under the Lone Star method, the |

14:24  1  Court agreed with that.
2  THE COURT: Mr. VanMiddlesworth, do you want to add
3  anything to your opposition to the motion to remand?
4  MR. VANMIDDLESWORTH: Well, Judge, I was going to let
14:24  5  Mr. Curry deal with the remand issue.
6  THE COURT: Okay. Mr. Curry?
7  MR. CURRY: No, Your Honor. Just to point out that
8  under this Court's prior ruling, the settlement demands have
9  been appropriate evidence to consider, and here, that clearly
14:25  10  shows the amount of controversy is in excess of 75,000.
11  And the only other thing to note is on the
12  attorneys' fee issue, it's not what is ultimately awarded.
13  It's what is alleged, what it's alleged to be. So, yes, it may
14  be less than the amount -- some amount than they have alleged.
14:25  15  It would certainly put it over $75,000, and health care
16  expenses, as well. I don't think there is much controversy
17  that we have met our burden to establish federal jurisdiction.
18  THE COURT: Yeah. I'm afraid I agree. I think that a
19  preponderance of the evidence standard in counting attorneys'
14:25  20  fees, I think the threshold is met. It's been held that a
21  removing defendant need not prove to a specific number the
22  amount of controversy, including attorneys' fees and punitive
23  damages. Only by a preponderance of the evidence does the
24  amount have to exceed 75,000. I think that's established Fifth
14:26  25  Circuit law. That's Manguno, M-A-N-G-U-N-O, versus Prudential

14:26  1   Property and Casualty, a Fifth Circuit decision in 2002.
       2                Did somebody want to say something?
       3                MR. ROBINSON:  Yeah.  This is Attorney Robinson.
       4                It sounds like you are going to find that the
14:26  5   Court has subject matter jurisdiction, and if that's the case,
       6   then I would like to ask the Court to move this case to New
       7   York to be joined with the Woods case.
       8                THE COURT:  Well, you can certainly file a motion to
       9   transfer.  I think defendants are entitled to their day in
14:26 10   court on the motion to dismiss.  It's been properly pleaded,
      11   and if there is nothing to transfer, that kind of moots the
      12   other motion.
      13                So, Mr. Curry or Mr. VanMiddlesworth and -- I'm
      14   sorry, I didn't catch the young woman's name -- do one of you
14:27 15   want to add anything to what's in the writings?
      16                MR. VANMIDDLESWORTH:  This is Rex VanMiddlesworth,
      17   Your Honor.
      18                I don't think I need to add a lot to it.  This is
      19   fairly straightforward.  I will be happy to answer any
14:27 20   questions, but before complaint, promissory estoppel,
      21   fraudulent inducement, breach of warranty or contracts, and
      22   breach of warranty clearly is out because there is no sale of
      23   goods and services.  And the others I think fail as a matter of
      24   law in light of the written contract, which says, in the middle
14:27 25   of page 1 of a one-and-a-half-page document, it's an employment

14:27   1   document.  That we or you may terminate at any time.  It may be
        2   terminated with or without notice.  It may be terminated for
        3   any reason, or for no reason, and that no further payments will
        4   be due.  The written agreement could not be more clear.  It's
14:28   5   not ambiguous in the least.
        6           And as you know, promissory estoppel claims are
        7   not permitted where there is an actual contract.  It actually
        8   doesn't matter whether it's the written one, as we assert, or
        9   an alleged oral contract, there is still an agreement that
14:28  10   would preclude the promissory estoppel claim, fraudulent
       11   inducement.
       12           Again, Texas law is quite clear, as you are
       13   aware, that fraudulent inducement requires that there be
       14   justifiable reliance.  And there can be no justifiable reliance
14:28  15   on an alleged promise of X, when there is a contract, the
       16   contract itself says, Not X.  You can't rely on a term that's
       17   contradicted by the written agreement.  Those cases are set
       18   forth.
       19           And on the breach of the oral agreement claim,
14:29  20   the fourth claim, that throughout negotiations, Ms. Scott was
       21   told that she would be employed to November.  Well, again,
       22   there is a written agreement that covers -- governs this
       23   employment relationship and the specific issue of how long the
       24   employment will last.  It says up front and repeatedly that it
14:29  25   can be terminated at any time.  Again, it is well established

14:29   1   in Texas that parol evidence, extrinsic evidence about
        2   statements contrary to a written contract, the unambiguous
        3   terms of a written contract can't be introduced and,
        4   accordingly, dismissal is appropriate for that.  So we would
14:29   5   request 12(b)(6) dismissal on all counts, Your Honor.
        6           THE COURT:  Mr. Robinson?
        7           MR. ROBINSON:  Well, Your Honor, even by their own
        8   response, they made the observation that after the fraud claim,
        9   there is some basis to it.  More importantly, under state law,
14:30  10   this is a contract that's -- their alleged written contract
       11   that's performable in less than one year.  So it is not the
       12   four corners of the document.
       13           More importantly, even on the facts in this case,
       14   they paid the employees they terminated beyond the terms of the
14:30  15   written contract.  They provided health care benefits beyond
       16   the term of the written contract.  And their essential argument
       17   is, yeah, we said it, yeah, we allege we have a contract.  We
       18   kept saying it, and even though we allege we have a written
       19   contract, we don't even have to comply with what we said was
14:30  20   the written contract.  And we point all of these facts out in
       21   the pleadings and across the documentation.
       22           THE COURT:  Help me understand why the contract is not
       23   valid.
       24           MR. ROBINSON:  Well, for a couple reasons, Your Honor.
14:30  25   One, because they themselves didn't comply with what they

14:31   1   allege is the written contract.  Because when they terminated
        2   the employees, they went beyond the terms of the contract in
        3   terms of compensation and health care benefit.
        4           Second, under state law, the issue here is the
14:31   5   factual circumstances surrounding this.  Prior to them
        6   employing Ms. Scott and other employees but Ms. Scott, they
        7   made an oral promise during the course of recruiting.  They
        8   made the same promise, and they even had her and other
        9   employees pointing out that they would be employed until the
14:31  10   November election.  And even when Bloomberg decided to shut
       11   down his campaign, they promised that there would be employment
       12   beyond -- until November, whether it was with Bloomberg 2020 or
       13   some other entity.
       14           So all along, the campaign itself has
14:31  15   contradicted what they claim to be the contract with the plain
       16   and clear statement that you can be terminated at any time.
       17   They consistently made the guaranteed promise that there would
       18   be employment until 2020.
       19           THE COURT:  What I'm really looking for is a reason
14:32  20   the contract is not valid.  The fact they paid your client more
       21   than they were obligated to I don't think invalidates the
       22   contract.  And the fact that there were other promises out
       23   there, I don't think that invalidates the contract either.
       24   Maybe you can sue them for some promissory estoppel theory that
14:32  25   maybe is based on representations that were not in the contract

14:32  1  or made after the contract was entered, but I don't think any
       2  of that invalidates the contract itself.
       3               MR. ROBINSON:  Your Honor, again, this is Carroll
       4  Robinson for the plaintiff.
14:33  5               That's why we included that as one of the causes
       6  of action in our original petition that was removed to federal
       7  court.
       8               THE COURT:  That there were other representations
       9  made?
14:33 10               MR. ROBINSON:  Yes.
      11               MR. VANMIDDLESWORTH:  Your Honor, Rex VanMiddlesworth.
      12               If I may, I encourage you to review the petition,
      13  but it does say that there were representations made.  And this
      14  is a motion to dismiss, so we have to accept that allegation.
14:33 15  But even accepting that allegation, which we don't accept, of
      16  course, for the merits but for purposes of the motion to
      17  dismiss, the complaint asserts that those representations were
      18  made over and over again and that in reliance to that
      19  representation, the plaintiff entered into the agreement, the
14:33 20  written agreement.  And there can be no promissory estoppel or
      21  fraudulent inducement when a plaintiff enters into the
      22  agreement that says, I can be terminated at any time.  So the
      23  agreement is valid.  The facts alleged in the complaint do not
      24  allege a cause of action because of the written contract.
14:34 25               MR. ROBINSON:  Well, Your Honor, this is Carroll

14:34   1   Robinson again.
        2           Even if a written contract in state law was
        3   performable in less than a year and so the oral promises after
        4   the contract modified the contract, that's the whole issue
14:34   5   here.
        6           MR. VANMIDDLESWORTH:  Your Honor, that's --
        7           THE COURT:  You think the written contract was
        8   modified by subsequent representation?  Is that right?
        9           MR. ROBINSON:  I'm sorry?
14:34  10           THE COURT:  When you amend a written contract, you do
       11   that in writing, don't you?
       12           MR. ROBINSON:  You should, Your Honor.
       13           MR. VANMIDDLESWORTH:  Your Honor, this is Rex
       14   VanMiddlesworth.
14:35  15           I would note that we are dealing with the
       16   complaint that has been filed, not whatever other thoughts the
       17   plaintiff may come up with.  And that complaint is clear about
       18   what the action was:  Paragraph 11, the conduct that induced
       19   plaintiff to enter into employment; paragraph 15, his reliance
14:35  20   on these promises, the plaintiffs left their jobs to accept
       21   these positions.  In paragraph 20, they made representations to
       22   induce plaintiff to go to work.  Paragraph 22, those
       23   misrepresentations caused plaintiff to accept a position.
       24   Paragraph 28, plaintiff accepted employment based on being
14:35  25   employed through November.

14:35   1            So the complaint says promises were made that
        2   induced the plaintiff to accept employment, and that's what the
        3   reliance was.  That's what she was induced to do, and Texas law
        4   is clear that those prior contemporaneous statements, if they
14:36   5   were made, cannot be relied on to invalidate the terms of the
        6   written agreement.
        7            THE COURT:  Here's what we are going to do.  I'm going
        8   to dismiss the promissory estoppel claim but without prejudice.
        9   I'm going to dismiss the fraudulent inducement claim with
14:36  10   prejudice.  I'm dismissing the breach of express warranty claim
       11   and breach of oral contract claim without prejudice.  So I will
       12   give you a chance to replead the claims dismissed without
       13   prejudice.  I don't want to hold out a lot of hope though.
       14   Texas law is always skeptical of agreements that are allegedly
14:37  15   made outside of a written contract, but I will give you one
       16   more chance to plead that, Mr. Robinson.
       17            If you want to file a motion to transfer, you can
       18   do that.  I think we ought to finish the motion to dismiss
       19   before we transfer it though.
14:37  20            Thank you all very much for your participation.
       21   You are excused.  Thank you.
       22            MR. ROBINSON:  Thank you, Your Honor.
       23            MR. VANMIDDLESWORTH:  Thank you, Your Honor.
       24       *(Court adjourned at 2:47 p.m.)*
       25

1                              * * * *

2

3        I certify that the foregoing is a correct transcript from

4   the record of proceedings in the above-entitled cause.

5

6   Date: October 21, 2020

7

                            /s/ Mayra Malone
8                           ---------------------------------------
                            Mayra Malone, CSR, RMR, CRR
9                           Official Court Reporter