```
                     UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                               :
                                           Docket #20cv2489
 WOOD,                               : 1:20-cv-02489-LTS-GWG

                    Plaintiff,       :

   - against -                       :

 MIKE BLOOMBERG 2020, INC.,          :
                                           New York, New York
                    Defendant.       : December 15, 2020

-----------------------------------: TELEPHONE CONFERENCE


                       PROCEEDINGS BEFORE
              THE HONORABLE GABRIEL W. GORENSTEIN,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff - Wood:    OUTTEN & GOLDEN, LLP
                         BY:  DEIRDRE AARON, ESQ.
                         685 Third Avenue, 25th Floor
                         New York, New York  10017

For Plaintiff - Sklair: EMERY CELLI BRINCKERHOFF ABADY
                         WARD & MAAZEL LLP
                         BY:  DAVID BERMAN, ESQ.
                         600 Fifth Avenue at
                         Rockefeller Center, 10th Floor
                         New York, New York  10020




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

```
APPEARANCES (CONTINUED):

For Defendant:            PROSKAUER ROSE LLP
                          BY:  ELISE BLOOM, ESQ.
                               RACHEL PHILION, ESQ.
                               MARK BATTEN, ESQ.
                               PINCHOS GOLDBERG, ESQ.
                               ALLISON MARTIN, ESQ.
                          Eleven Times Square
                          New York, New York  10036

                          VENABLE LLP
                          BY:  NICHOLAS REITER, ESQ.
                               SANDY SCHLESINGER, ESQ.
                          1270 Avenue of the Americas
                          New York, New York  10020
```

**<u>INDEX</u>**

**<u>E X A M I N A T I O N S</u>**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-<br>Direct</u> | <u>Re-<br>Cross</u> | <u>Court</u> |
|---|---|---|---|---|---|
| None | | | | | |

**<u>E X H I B I T S</u>**

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir<br>Dire</u> |
|---|---|---|---|---|
| None | | | | |

1

1                                                              4

2              THE CLERK:  This is Wood v. Mike Bloomberg 2020,

3    Inc., 20cv2489, and Sklair v. Mike Bloomberg 2020, Inc. and

4    Michael Bloomberg, 20cv295.  Counsel, please state your

5    names and appearances for the record.

6              MS. DEIRDRE AARON:  Good afternoon, Your Honor,

7    this is Deirdre Aaron from Outten & Golden for the

8    Wood plaintiffs.

9              MR. DAVID BERMAN:  Good afternoon, Your Honor,

10   this is David Berman from Emery Celli Brinckerhoff

11   Abady Ward & Maazel for the Sklair plaintiffs.

12             MS. SALLY ABRAHAMSON:  Yes, this is, good

13   afternoon, this is Sally Abrahamson from Outten & Golden for

14   the plaintiff in Wood, and with me is Hannah Cole-Chu also

15   from Outten & Golden, and Michael Palitz from Shavitz Law

16   Group.

17             MS. ELISE BLOOM:  Good afternoon, Your Honor,

18   this is Elise Bloom from Proskauer Rose and just on

19   the line I'm joined by my colleagues Allison Martin,

20   Rachel Philion, Mark Batten and Pinny Goldberg from

21   Proskauer, and Nick Reiter and Sandy Schlesinger from

22   the Venable Law Firm.

23             THE COURT:  Welcome, everyone, it's been a

24   while.  Let's start by talking about where we are in

25   discovery and what's down the road if I don't do

5

1

2  anything or if I do do something, let's start with the

3  plaintiffs (indiscernible) situation?

4       MS. AARON:  Thank you, Your Honor, this is

5  Deirdre Aaron on behalf of the Wood plaintiffs again.

6  In terms of discovery, the parties have exchanged

7  initial discovery and agreed to exchange discovery

8  regarding the sample of plaintiff, including the class

9  representative and the sample of named plaintiff and

10  opt-in plaintiffs and served responses back in October

11  and have begun producing documents and had an initial

12  meet and confer about some of the defendant's

13  objections to the plaintiffs' requests for production

14  and interrogatories.  We aren't yet at a phase where

15  we have, we're trying to resolve some of the disputes

16  that we have at the moment and see if they can be

17  resolved without a Court intervention, but we are also

18  still in the process of receiving documents from

19  defendant and producing documents so -- as part of the

20  initial phase that the parties discussed. So at this

21  point we are still sort in the initial first phase of

22  discovery that we discussed with the Court at the July

23  hearing.

24       THE COURT:  Well, I mean why don't you remind

25  me a little more and maybe you can turn it over to Ms.

6

1
2 Bloom, but I don't have a good sense of what has been
3 permitted. So if you're relying on my remembering it,
4 don't do that.  Tell me what you think is being
5 permitted and what you've sought and what's left to
6 do.  We can hear from Ms. Bloom and we'll come back to
7 you, Ms. Aaron.
8          MS. AARON:  Okay.
9          MS. BLOOM:  This is Ms. Bloom.  So in terms of
10 the discovery that was permitted and that's been
11 provided so far, I think it falls into two categories.
12 The first category were what we call hard copy
13 documents and just to be a little bit more specific
14 than that, I'm going to say it was a document that was
15 kept electronically but could be retrieved absent the
16 use, the identification of custodians or the use of
17 search terms, and it has some global application to
18 the plaintiffs. It would be included in the hard copy
19 documents. And just to give Your Honor a sense of the
20 types of documents that have been produced by the
21 defendant, things like organizational charts, resumes,
22 cover letters, job descriptions, employee handbooks,
23 documents that really went to the hiring process and
24 terms and conditions of the plaintiff's employment
25 with the campaign.

1

2          We have produced information for six

3  representative plaintiffs and eight opt-ins.  When we

4  were before Your Honor initially, we had contemplated

5  doing it for a larger group of the named plaintiffs,

6  but almost immediately after the conference, after we

7  served our discovery, plaintiffs' counsel reached out

8  to us and asked whether we would agree to do it for a

9  smaller sample than that and we reached a stipulation

10 with them.  And so that's why there's a smaller sample

11 of individuals for whom information was produced. But

12 the hard copy documents that I just identified, again,

13 very broad categories, are ones that would have had

14 application beyond just the small sample of

15 individuals for whom we produced documents.

16          In addition to that, we produced the email

17 boxes for the same 14 individuals, the 6

18 representative plaintiffs and the 8 opt-in plaintiffs.

19 Again, we produced the email boxes without applying

20 search terms. I would say just so the Court sort of

21 has a point of reference, in total we produce dover

22 80,000 pages of documents in terms of how that, for

23 document's sake it's a little bit more than 15,000

24 consisting of over 80,000 pages. And in terms of just

25 the email boxes for the 14 plaintiffs, they ranged in

8

1   size from 500 to anywhere from 1,000 to 2,000 document

2   per email box.

3          With regard to what we've obtained from the

4   plaintiff, they provided to us some hard copy

5   documents and they have also provided some

6   electronically stored emails for their plaintiffs, but

7   the volume was much lower.  For some of the

8   individuals it was as little as 1, I think the highest

9   was about 200, most of the 14 plaintiffs that we had

10  agreed to do discovery for had produced something less

11  than 100. And as opposing counsel indicated to the

12  Court, there's some, we've had some back and forth

13  just in terms of the, some of the objections and

14  information that the defendants believe that the

15  plaintiffs should be provided and have not, but we're trying

16  to work that out among ourselves and hoping that we'll be

17  able to resolve that without Court intervention.

18          With regard to the Sklair case, and for the Sklair

19  case there are six named plaintiffs and the plan was to

20  produce the same two buckets of information for the six

21  named plaintiffs. In terms of what the plaintiffs have

22  provided to us, we got for the first time some documents

23  last night and we're just looking through them, I think it

24  was about 170 documents. So I'm not, I don't have a

9

clear picture of what was in them.  We're going to be

producing, and as I said, the same categories of

information of one of the things that has slowed down

the production in that case is agreement on a

confidentiality order.  Frankly, we assumed that we

would use the same one that Your Honor had signed off

on for the Wood case, the Sklair plaintiffs have

raised some concerns about that, and we are trying to

work that through with them.  So that is where we are

in terms of the discovery that has been provided to

date and would the Court like me to address what the

discover is that we are seeking as stay as to in terms

of, you know, further information?

          THE COURT:  Eventually, but just so that I

understand, when you used the term two buckets, you

are referring to the hard copy documents of the email

boxes --

          MS. BLOOM:  That's correct, Your Honor,

exactly.

          THE COURT:  Okay.  And did I order anything

else in July?

          MS. BLOOM:  You did not, Your Honor.

          THE COURT:  That was it, okay.  So let me hear

from, does the Sklair attorney want to add anything

1                                                  10

2  before I go forward?

3          MR. BERMAN:  Your Honor, this is David Berman,

4  I would just, I can clarify since defense counsel

5  understandably didn't know the scope of the documents

6  produced yesterday.  We had agreed to run searches of

7  emails that our clients had, you know, they had

8  forwarded to themselves that were, you know, emails

9  that were in their Gmail account rather than their

10 Bloomberg account box. And I think that explains

11 largely why there are less, most of their emails that

12 are relevant are in their campaign emails that are

13 solely within defendant's possession, but to the

14 extent they had their own emails we made a production

15 of the majority of those yesterday with a few more to

16 come that we're sort of just working out some tech

17 issues on.

18          And then as far as, but otherwise I agree with

19 defendants, as far as what the current status is with

20 the note that all the documents defendants laid out

21 have only been produced in the Wood matter, though I

22 understand their representation that once we hammer

23 out all these issues with the protective order that

24 the same documents for our plaintiffs should be

25 produced in the Sklair matter.

```
 1                                              11
 2          THE COURT:  Okay.
 3          MS. BLOOM:  Your Honor, this is Ms. Bloom, I'm
 4   sorry, I forgot one category of the hard copy
 5   documents that were produced that I just want to make
 6   sure the Court is aware of.  We also gave payroll
 7   records for the same group of plaintiffs.
 8          THE COURT:  Okay.  Is there some way to
 9   characterize, Ms. Aaron, what discovery is coming down
10   the road that you think we haven't hit the need that
11   makes you think that we haven't hit the need to
12   actually decide the stay question yet?  In other
13   words, there was, you know, suggestion in your papers
14   everything is just fine, you don't have to deal with
15   this right now, is this still the case, what is the
16   timing on that?  Anything you want to say to
17   elaborate, go ahead.
18          MS. AARON:  Thank you, Your Honor.  While it's
19   true in our paper that we stated that any stay would
20   be premature at that point, that was prior to the
21   parties beginning discovery.  And certainly we are
22   still trying to approach discovery and ESI from the
23   perspective of trying to, you know, avoid any undue
24   burden on the defendants which is why as part of the
25   initial conference and the discussion with Your Honor
```

1
2   at that time we agreed to do a phased approach of ESI
3   beginning with the production of the client email
4   inboxes.  I think we're certainly getting to the point
5   where, you know, we're nine months into the case, five
6   months after the motion to dismiss has been fully
7   briefed, and, you know, getting to the point where we
8   are going to, you know, we can agree to just forego
9   ESI indefinitely. And on that point, I think one
10  example would be, referring back to the hard copy
11  documents that Ms. Bloom mentioned.  And while we
12  certainly have not raised any disputes with the Court
13  yet and don't think it's appropriate to go into detail
14  yet, we, you know, we think there are still some
15  documents outstanding in terms of hard copy documents
16  from the defendants.
17          And our understanding is that those may be
18  forthcoming, but that there already has been
19  disagreement between the parties in terms of documents
20  fall into the categories of what the Court ordered the
21  parties to produce as part of the initial conference.
22  So, for example, the parties agree to hiring and
23  onboarding documents and general employment policies
24  and, you know, it appears even from our initial meet
25  and confer that there may be some issues about what

1

2  the parties understand those documents to encompass.

3  And so even with respect to what may or may not be

4  covered by the stay, there are going to be questions

5  that may, you know, that we certainly will have to

6  meet and confer about may need to raise with the

7  Court.

8         And so in our view, you know, the idea of a

9  stay just sort of doesn't make sense because it's just

10 going to create additional inefficiency and back and

11 forth between the parties and potentially before the

12 Court.

13        THE COURT:  Wait, wait, what's going to create

14 inefficiency, having a stay or, I'm sorry, I lost you,

15 I was with you until the last sentence.

16        MS. AARON:  Certainly. So in terms of, in

17 terms of getting back to the question you asked about

18 whether it's premature, we think that we're, you know,

19 we're getting to the point where, you know, we can't

20 forego ESI discovery indefinitely while a motion to

21 dismiss is pending, that's the first point. And the

22 second point is that, you know, a motion, their stay

23 and the idea that we can sort of proceed with respect

24 to just certain categories of documents now, I think

25 is a bit of a fiction because the parties already

14

appear to possibly have some disagreement about what
is covered by the category of documents defendants
have agreed to produce.

So if the Court were to order a stay we would
be dealing with questions about what is properly
covered by the stay and what is not and creating
additional layers of meet and confer and potential
disputes to be raised with the Court just about the
question of what is and is not subject to the stay.

THE COURT:  Well, I mean what I'm thinking
about is the following which is I'm ready to, you
know, issue an order today, but someone is going to be
unhappy. And I wonder if it's not possible that the
status quo or maybe the status quo plus might be more
palatable than taking the all or nothing risk that
each side is taking on the stay question.  I know I
kind of sprung that on you but it's not as if it's a
slam dunk for either side on the stay point and on the
merits. And there's some value in letting the parties
decide their own fates if they can come to an
agreement on it.  And, you know, if it reaches a point
where, you know, you've exhausted all, I mean it
sounds like ESI is the big issue in terms of burden on
the defendant.  Before I go any further, let me

15

1

2 confirm that, Ms. Bloom, is that the big burden, ESI?

3        MS. BLOOM:  Yes.  Yes, Your Honor.  And if our

4 papers are not clear with regard to a stay, what we're

5 asking the Court for is a stay as to ESI discovery

6 that requires identification of custodians and then

7 the application of search terms. So, yes, it is the

8 ESI which based on the discovery requests that were

9 served and what the plaintiffs have indicated that

10 they were looking for, will be, the burden will be 100

11 percent on the defendant. And I can give you some

12 quantification of that if that would at all be useful,

13 but --

14        THE COURT:  Well we're not there yet, we're

15 not there yet, because what I'm trying to do, and it

16 may not work, is to explore, given that, you know,

17 both sides have a lot to lose here, whether some path

18 can be found short of, you know, the full ESI, that

19 can let us limp along for what might be a few months

20 until we get a decision on the motion to dismiss.  I

21 mean is there any, it seems to me both sides should be

22 incentivized to figure this out.  And I -- I am not

23 creative enough in terms of discovery to figure out

24 maybe there is some aspect of ESI, I know you're

25 (indiscernible) mailboxes of the plaintiffs and that's

16

something, but is there some playing out of what's

going on here combined with something that I can't

think of that involves ESI that's not burdensome that

might be in the interest of both sides?  And one

answer could be, I mean Ms. Bloom may have the

greatest stake here since she's the one who is paying

for the discovery. The answer may be, you know, I can

tell you right now, no, the answer may be, you know,

you have to decide this, Judge, because that's it. Or

the answer might be I want to think about it, in which

case we'll come back in a couple of weeks.

          MS. BLOOM:  Your Honor, this s Ms. -- I'm

sorry.

          THE COURT:  No, go ahead.

          MS. BLOOM:  No, I was going to say I think

giving the parties an opportunity to think about it a

little bit, at least from the defendant's perspective,

we would very much appreciate.

          THE COURT:  Okay.  And I mean the plaintiff is

an equal player here, so?

          MS. AARON:  Yes, thank you, Your Honor --

          THE COURT:  If you, this is a very awkward way

for us to have a conference, and I have a mechanism by

which I can have my clerk take a break, and I can even

17

1
2    put you and your people in a room privately if, for
3    some reason, you want to think about this and talk
4    before you answer my question.  Or you may have your
5    own method, I don't know if you have a texting system
6    or something else that you want to talk to each other.
7    But I think we can put you into a room if you want us
8    to do that if you don't want to answer the question
9    right now.
10          MS. AARON:  I am happy to answer it, at least
11   I have some additional points of information that may
12   allow defendants to assess whether they're in a
13   position to discuss it with us further.  But just
14   getting back to the question of, you know, what we've
15   been talking about is hard copy documents, at the
16   prior conference we had discussed with the Court, you
17   know, the categories of documents that the parties
18   would agree to or that defendants would agree to
19   produce. And I think those, Ms. Bloom has discussed,
20   but just to recap those included hiring and onboarding
21   personnel files, payroll records and general
22   employment policies, and in addition to that they've
23   produced inboxes for the plaintiffs. But there were
24   several other categories of what plaintiffs believed
25   would be hard copy type documents that we outlined at

1
2    the conference including staff call out lines, general
3    interview or talking points, training documents, job
4    duty documents going to the job duties of the field
5    organizers, guidance given to supervisors of field
6    organizers, termination communications and documents
7    regarding the (indiscernible) classification or the
8    job classification of the field officers, of field
9    organizers. And I believe we have an understanding
10   that some of those documents may be forthcoming but
11   some of them defendants may be withholding on the
12   basis of what the Court ordered at the initial case
13   management conference. And plaintiffs' position is,
14   first of all, to the extent they --
15            THE COURT:  Before you get into it, Ms. Aaron,
16   before you get into it, this was kind of my point
17   which is if the defendants are interested in
18   bargaining, as it were, this is a chip that you could
19   use to say to them I'm willing to hold off on the ESI
20   if you produce those materials, and they can either
21   say no, I'll take my chances on this thing and come
22   back to me at any time. Or they could say, okay, yeah,
23   fine, I'll give it to you as long as we put this off
24   now for two months or whatever it is.  I don't want to
25   do it, I don't want you to bargain here in front of

1

2  me, but it seems to me that's exactly what the two of

3  you might discuss if you want to avoid kind of what

4  may be the all or nothing for my decision.

5          So my question is, Ms. Aaron, do you want the

6  chance to talk about it and see if you can, you know,

7  decided on something that could stretch this out for,

8  I mean I think it's going to have to be at least, I

9  don't imagine Judge Swain is going to have anything

10 out, you know, tomorrow or the next day or perhaps

11 even in the next month, just looking at other cases

12 and where she is in her schedule. I mean obviously I

13 don't know.  But we have to assume the possibility

14 that it could be several months.

15         So, you know, taking us out for a two weeks I

16 don't think will solve it.  Taking us out for a few

17 months might solve it.  So if you think we could get

18 to that point, then it would be worth seeing if you

19 could work out something with the other side. And in

20 order to take us down a few months, who knows, you

21 might bargain for some kind of ESI that isn't

22 burdensome, I don't know if it exists, but I'm

23 assuming the parties are more creative about this than

24 I could ever be.  But it would have to take us out for

25 a few months I would think for it to be of any value,

                                                    20

otherwise we might as well just get this over with and
I'll turn the switch on or off.

        MS. BLOOM:  It's acceptable for the defendant
to do that.

        THE COURT:  Okay. I mean it's not a big ask,
as it were, because you can come back to me
essentially at any time and say either we've worked
out a deal and we don't need you right now, or we
couldn't reach anything and you're going to have to
decide this thing. In which case I'll do it on the
spot, I'll do it, you know, in an oral argument.  So
Ms. Aaron, so the real question is if you want I'll
decide this thing right now and if you don't, I will
be happy to essentially put the motion for a stay in
abeyance until I hear from you that I have to decide
it.

        MS. AARON:  Plaintiffs are agreeable to having
a discussion with defendant's counsel and see if we
can reach some sort of interim agreement. I don't know
whether defendant is in a position to discuss that
today as you proposed in some sort of a breakout, or
want to schedule something separately.

        THE COURT:  No, no, my idea of a breakout was
not for the two of you to discuss it, it was for you

1
2    to be able to respond to my proposal in case you
3    wanted to discuss it with anyone else on your team,
4    that's all. So if you don't need that, you already
5    answered the question which is you'd be willing to, it
6    sounds like you'd be willing to take a shot at it.  So
7    what I would propose is, is I just need a report in
8    the next few weeks that says either, you know, either
9    we want you to decide the issue, the stay now, we
10   couldn't reach any agreement, or we've reached an
11   agreement and we don't need you to decide the stay
12   until you hear from us again. So I would propose that
13   that letter come, you know, sometime beginning to mid-
14   January.

15          MS. BLOOM:  Understood, Your Honor, that's
16   acceptable to defendants, I would ask just after January
17   7.

18          THE COURT:  Okay.  Ms. Aaron, any thoughts about
19   when this letter should come? I'm thinking the 15th.

20          MS. AARON:  That probably is, that's fine with us,
21   as well, given the holidays probably realistic --

22          THE COURT:  The two of you can at any time agree
23   to do it later, that's not a magic date for me. At some
24   point for bureaucratic reasons I may deem the motion to stay
25   withdrawn with leave to be instated any time just because

1                                                          22

2   it's not really reflective of the pending motion if

3   you two are able to hobble along without my making a

4   decision. But that will have no practical effect on

5   anything.

6           So I'll expect a letter on the 15th or

7   something telling me that you're extending it or, you

8   know, one of those two. And the letter will either say

9   we're fine for some indefinite period and we'll get

10  back to you, or we would like you to decide this

11  motion now.

12          MS. BLOOM:  Thank you, Your Honor, from the

13  defendants.

14          THE COURT:  Okay, I don't think I have anything --

15  Mr. Berman, I realize I left you out of this whole thing.

16          MR. BERMAN:  That's all right, Your Honor, we

17  agree with everything that's been agreed to and will

18  join the conversation with the Wood plaintiffs and

19  defendants.

20          THE COURT:  Okay.  All right, I think I, I

21  don't have any other agenda for today, Ms. Aaron, is

22  there anything else we should do?

23          MS. AARON:  Nothing else from the plaintiff,

24  the Wood plaintiff, thank you, Your Honor.

25          THE COURT:  Mr. Berman, anything?

```
 1                                                    23

 2              MR. BERMAN:  Nothing else from us, Your Honor.

 3              THE COURT:  Ms. Bloom, anything?

 4              MS. BLOOM:  No, Your Honor, thank you very

 5   much.

 6              THE COURT:  Okay, thank you, good-bye.

 7                 (Whereupon the matter is adjourned.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                                                24

2                      C E R T I F I C A T E

3

4          I, Carole Ludwig, certify that the foregoing

5   transcript of proceedings in the United States District

6   Court, Southern District of New York, Wood versus Mike

7   Bloomberg 2020, Inc., Docket #20cv2489, was prepared using

8   PC-based transcription software and is a true and accurate

9   record of the proceedings.

10

11

12  Signature_____

13                     Carole Ludwig

14  Date:  December 18, 2020

15

16

17

18

19

20

21

22

23

24

25