# Exhibit E


Neutral
As of: March 1, 2021 9:33 PM Z

# *Mason v. Reed's Inc.*

United States District Court for the Southern District of New York

January 28, 2021, Decided; January 28, 2021, Filed

18-cv-10826 (JGK)

**Reporter**
2021 U.S. Dist. LEXIS 16556 *; 2021 WL 293326

DENISE MASON, Plaintiff, - against - REED'S INC., Defendant.

**Prior History:** *Mason v. Reed's Inc., 2020 U.S. Dist. LEXIS 16013 (S.D.N.Y., Jan. 30, 2020)*

## Core Terms

citric acid, products, preservative, alleges, misleading, label, motion to dismiss, consumer, injunctive relief, unjust enrichment, defendant argues, courts, safe harbor provision, express warranty, advertised, pleaded, niger, food, warning letter, particularity, Organic, naturally occurring, breach of warranty, fraud claim, non-restitutionary, disgorgement, Ingredients, functioning, regulations, ambiguous

**Counsel: [*1]** For Denise Mason, individually and on behalf of other similarly situated individuals, Plaintiff: Michael Joseph Gabrielli, Law Office of Michael J. Gabrielli.

For Reed's Inc., doing business as Virgil's Sodas, Defendant: David J Scharf, LEAD ATTORNEY, Gravitas Law Group APC, Fullerton, CA.

**Judges:** John G. Koeltl, United States District Judge.

**Opinion by:** John G. Koeltl

## Opinion

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Denise Mason, brings this putative class action against Reed's Inc. ("Reed's") alleging that the defendant improperly labeled its soda as being, among other things, "All-Natural" and containing "no preservatives." The defendant alleges that those labels are in fact truthful and accurate. Seeking injunctive and monetary relief, the plaintiff asserts five claims: (1) violation of *New York General Business Law Section 349*, (2) violation of *New York General Business Law Section 350*, (3) breach of an express warranty, (4) unjust enrichment, and (5) common law fraud. The defendant moves to dismiss pursuant to *Federal Rules of Civil Procedure 12(b)(1)* and (6) for lack of standing and failure to state a claim.

I

The following facts are taken from the Second Amended Complaint ("SAC") and assumed to be true for the purposes of the motion to dismiss.

Reed's is a California corporation with its principal place of **[*2]** business in California. SAC ¶ 16. It manufactures, advertises, and distributes various soft drinks in New York and throughout the United States. SAC ¶ 2, 16. The plaintiff resides in New York and purchased the defendant's allegedly misleading products. SAC ¶ 13.

The plaintiff alleges that the defendants put several

misleading and false statements on its products. First, the plaintiff alleges that the defendant's products include the statement "No Preservatives." SAC ¶ 17. Second, the products include various statements indicating that the products are "All-Natural," "Brewed with 100% Natural Ingredients," "Made Naturally," and "Made with Natural Ingredients," but the products contain citric acid. SAC ¶¶ 17, 55. The plaintiff alleges that citric acid is a preservative and, due to the way it is manufactured for the products at issue in this case, not "natural." SAC ¶¶ 17-36, 55-76. The plaintiff further alleges that she and the members of the putative class relied on these misleading statements when they purchased the defendant's products, and that the defendant knew these statements were false and included the false statements with the intent to deceive consumers. SAC ¶¶ 39, 41-46. The **[*3]** plaintiff alleges she paid a price premium for a product she believed to be all natural and without preservatives. SAC ¶ 47.

In support of her allegations that the product is not natural and contains preservatives, the plaintiff points to the definition of "chemical preservative" by the Food and Drug Administration (the "FDA") as a chemical that "tends to prevent or retard deterioration" of the food to which it is added, with certain exceptions. SAC ¶ 18 (citing *21 C.F.R. § 101.22(a)(5)*). Moreover, on its website, the FDA lists citric acid as a preservative. SAC ¶ 21. The FDA also has sent at least one warning letter to a company in which it suggests that citric acid is a preservative. See SAC Ex. B. The plaintiff also includes a declaration of a food scientist, Dr. Meyers, in which Dr. Meyers asserts that citric acid functions as a preservative. SAC Ex. C ¶¶ 24, 27. In addition to functioning as a preservative, citric acid can be used for flavoring purposes. SAC ¶¶ 22, 36.

While citric acid is naturally occurring in citrus fruits, the plaintiff alleges that the citric acid used in the defendant's products is not naturally occurring. Instead, the plaintiff alleges that the defendant used citric acid fermented **[*4]** by a strain of black mold fungus known as Aspergillus niger. SAC ¶ 56. The FDA has identified citric acid produced in this fashion as synthetic. SAC ¶ 57. The FDA does not provide a definition of "natural," but it has said that it has not objected to the use of the term "natural" where the food does not contain "added color, artificial flavors, or synthetic substances." SAC ¶¶ 62-65. The FDA has also sent entities warning letters suggesting that supplemental citric acid is not a "natural" ingredient. SAC ¶¶ 68, 71, Ex. D.

The defendant moves to dismiss the Second Amended Complaint, arguing that the plaintiff does not have standing to seek injunctive relief and that the defendant's statements were not misleading.

II

When presented with a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(1)* for lack of subject matter jurisdiction, and a motion to dismiss on other grounds, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)*.[1] The defendant argues that the plaintiff lacks standing to seek injunctive relief because she fails to allege that she will purchase the defendant's products in the future.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" **[*5]** and "Controversies." See *Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*. To satisfy the requirements of Article III standing, a plaintiff must show that (1) the plaintiff has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. See *id. at 560-61*. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id. at 561*; see also *Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 U.S. Dist. LEXIS 171734, 2015 WL 9462083, at *3 (S.D.N.Y. Dec. 23, 2015)*. In a class action, a court must analyze the injuries allegedly suffered by the named plaintiff, not unnamed members of the potential class, to determine whether the plaintiff has Article III standing. See *Warth v. Seldin, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*. The defendant only contests whether the plaintiff has standing to pursue injunctive relief.

In this case, the plaintiff has not alleged that she would buy the defendant's products again. The plaintiff argues that she does not need to allege that she would buy the products again to have standing to pursue injunctive relief. She cites to Belfiore v. Procter & Gamble Co.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, emphasis, and internal quotation marks in quoted text.

(Belfiore I) for the proposition that requiring a plaintiff to allege that the plaintiff **[*6]** would continue to purchase a product the plaintiff knew was materially misleading "would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated" because "once the consumer learned of the deception, [the consumer] would voluntarily abstain from buying[.]" 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015). Indeed, some courts in this Circuit have held that "plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." Ackerman v. Coca-Cola Co., No. 09-cv-395, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013). Those cases were based on an interpretation of the public policy rationale of the New York consumer protection statutes. The court in Belfiore I explicitly noted that it based its decision on the fact that the Court of Appeals had not "addressed the issue of whether a plaintiff, with no claim of probable future injury, may pursue an injunction under state consumer protection statutes." Belfiore I, 94 F. Supp. 3d at 444. However, the Court of Appeals for the Second Circuit has since held that "[a] plaintiff seeking to represent a class must personally have standing" and that while "past injuries may provide a basis for standing to seek money damages, **[*7]** they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016). The plaintiff's reliance on the public policy rationale for standing in this context advanced in Belfiore I, which predated Nicosia, is unavailing. See, e.g., Troncoso v. TGI Friday's Inc., No. 19-cv-2735, 2020 U.S. Dist. LEXIS 100695, 2020 WL 3051020, at *4 (S.D.N.Y. June 8, 2020) ("As other courts in this Circuit have acknowledged, Nicosia trumps the public policy rationale presented in Belfiore I.") (collecting cases). Indeed, courts that have addressed this issue after Nicosia have concluded that a plaintiff in these circumstances does not have Article III standing to pursue injunctive relief. See, e.g., Ashour v. Arizona Beverages USA LLC, No. 19-cv-7081, 2020 U.S. Dist. LEXIS 171505, 2020 U.S. Dist. LEXIS 171505, 2020 WL 5603382, at *4 (S.D.N.Y. Sept. 18, 2020); Troncoso, 2020 U.S. Dist. LEXIS 100695, 2020 WL 3051020, at *4; Quiroz v. Beaverton Foods, Inc., No. 17-cv-7348, 2019 U.S. Dist. LEXIS 57313, 2019 WL 1473088, at *3-4 (E.D.N.Y. Mar. 31, 2019).

The Court of Appeals for the Second Circuit recently noted that "[w]hether plaintiffs seeking injunctive relief for consumer deception have standing where they allege that they would buy the products in the future if not mislabeled is unsettled in this Circuit." Axon v. Florida's Nat. Growers, Inc., 813 F. App'x 701, 703 n.1 (2d Cir. 2020). However, in this case the plaintiff has not alleged in the Second Amended Complaint that she would purchase the defendant's **[*8]** products again if not mislabeled, and the Court of Appeals has made clear that a plaintiff in a consumer protection suit does not have standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to suffer a similar injury in the future. See Nicosia, 834 F.3d at 239. Rather, the plaintiff specifically alleged that she, and the members of the putative class, would not have purchased the defendant's products at their advertised price had she and the members of the putative class known the labels were misleading. SAC ¶¶ 47, 137, 149, 158. And because the named plaintiff must personally have standing, even if other members of the putative class may suffer future injury, that is not sufficient for the plaintiff to have standing to seek injunctive relief. See Nicosia, 834 F.3d at 239.

Accordingly, the plaintiff does not have standing to sue for injunctive relief.

III

A

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally **[*9]** sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

While the Court should construe the factual allegations

in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## B. New York General Business Law §§ 349 & 350

The defendant argues that the plaintiff cannot state plausibly that the defendant violated sections 349 and 350 of the New York General Business Law because the defendant's conduct is protected by the laws' safe harbor provisions. Sections 349 and 350 prohibit respectively "[d]eceptive acts or practices [*10] in the conduct of any business, trade or commerce" and "[f]alse advertising in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. L. §§ 349 & 350. "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349." Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 774 N.E.2d 1190, 1195 n.1, 746 N.Y.S.2d 858 (N.Y. 2002). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." City of New York v. Smokes-Spirits.Com, Inc., 12 N.Y.3d 616, 911 N.E.2d 834, 838, 883 N.Y.S.2d 772 (N.Y. 2009); see also Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015). Conduct is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 647 N.E.2d 741, 745, 623 N.Y.S.2d 529 (N.Y. 1995). A plaintiff need not plead with the particularity required by Federal Rule of Civil Procedure 9(b). Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

First, there is no dispute that the defendant engaged in consumer-oriented conduct. The defendant marketed and sold its products in New York and elsewhere, and the plaintiff purchased those products.

Second, the plaintiff alleges that the "All-Natural" and "no preservative" labels were materially misleading because they were false and likely to mislead a reasonable consumer acting reasonably. The plaintiff alleges that there were two types of misleading statements: that the [*11] products contained no preservatives and that the products were all natural.

The plaintiff alleges that the defendant's labeling is false and misleading because the products contain citric acid, a preservative. To support this claim, the plaintiff provided detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages. Based on these allegations, the plaintiff has stated plausibly that the "no preservatives" label was false and misleading. See, e.g., Quiroz, 2019 U.S. Dist. LEXIS 57313, 2019 WL 1473088, at *8 (holding that the court could not conclude that citric acid was not a preservative at the motion to dismiss phase); Hu v. Herr Foods, Inc., No. 16-cv-5037, 2017 U.S. Dist. LEXIS 222806, 2017 WL 11551822, at *1 n.4 (E.D. Pa. Sept. 26, 2017) (concluding that, based on an expert declaration, the plaintiff plausibly pleaded that citric acid was a preservative).

The plaintiff also alleges that the defendant falsely advertises the products as "All-Natural" even though the products contain citric acid as extracted from Aspergillus niger. The plaintiff alleges that the citric acid, as manufactured from Apergillus niger [*12] , contains synthetic solvents, which would make the "All-Natural" label misleading. The plaintiff also points to two FDA warning letters that suggest that citric acid, as produced by Aspergillus Niger, makes an "All-Natural" label misleading. SAC Exs. D & E. The defendant contends that Apergillus niger creates citric acid in a natural process, but the operative question is whether the plaintiff has stated plausibly that the label is likely to be misleading to a reasonable consumer acting reasonably. See, e.g., Ault v. J.M. Smucker Co., No. 13-cv-3409, 2014 U.S. Dist. LEXIS 67118, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) ("The question is whether a reasonable consumer would be misled by Crisco Oil's use of the 'All Natural' label."). The FDA's views, while relevant, are not dispositive on this question. See id. ("While any FDA views on what 'natural' means may be relevant to this inquiry, they are not dispositive."); see also Segedie v. Hain Celestial Grp., Inc., No. 14-cv-5029, 2015 U.S. Dist. LEXIS 60739, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) ("[T]he FDA's and USDA's respective policies


concerning 'natural,' while potentially relevant, are not controlling."). Nonetheless, the FDA material, at minimum, makes the plaintiff's allegations plausible rather than merely possible, see *Iqbal, 556 U.S. at 678*, and as a result, the plaintiff has **[*13]** pleaded adequately that the "All-Natural" statements are likely to be materially misleading.

Third, the plaintiff alleges injury in that she paid a price premium for the product that she thought was all natural and without preservatives. A plaintiff alleges an injury under *sections 349* and *350* when the plaintiff alleges that "on account of a materially misleading practice, [the plaintiff] purchased a product and did not receive the full value of [the] purchase." *Orlander, 802 F.3d at 302*. And, as the plaintiff alleges in this case, several courts have found that paying a price premium is sufficient injury to state a claim under *sections 349* and *50*. See, e.g., *Axon, 813 F. App'x at 703-04*; *Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014)*; *Lazaroff v. Paraco Gas Corp., 38 Misc. 3d 1217(A), 967 N.Y.S.2d 867, 867 (Sup. Ct. 2011)*.

Accordingly, the plaintiff has alleged adequately that the defendant engaged in consumer-oriented activity that was materially misleading and caused the plaintiff a cognizable injury.

The defendant argues that, even if the plaintiff can allege prima facie claims under *Sections 349* and *350*, those claims should be dismissed nonetheless because the defendant complied with the statutes' safe harbor provisions. New York General Business Law provides that "it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations **[*14]** of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts." *N.Y.G.B.L. § 349(d)*; see also *§ 350-d* (similar language).

The defendant argues initially that citric acid is natural, as defined and interpreted by the FDA and the United States Department of Agriculture (the "USDA"). To support its argument, the defendant points to a 2015 Technical Evaluation Report by the USDA that stated that citric acid is natural. The defendant also cites to a regulation issued by the United States National Organic Program that states that citric acid produced by Aspergillus niger can be included in products listed as organic. See *7 C.F.R. § 205.605*. The USDA also issued guidance listing citric acid as non-synthetic. The defendant points out that Aspergillus niger is a naturally occurring organism and that the fermentation that produces citric acid is a naturally occurring process. The defendant also points to language from some FDA regulations suggesting that citric acid is naturally occurring and other **[*15]** warning letters suggesting that, in certain contexts, citric acid could be considered natural. See *21 C.F.R. § 184.1033(a)*.

The plaintiff responds that the FDA, not the USDA or the National Organic Program, has primary authority to establish labeling requirements for food and ingredients, and therefore as it relates to the safe harbor provisions for *Sections 349* and *350*, the FDA's interpretation of "natural" should control. See *Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq.*; Nutrition Labeling and Education Act, *21 U.S.C. § 343*. The plaintiff points out that the standards for what is considered organic by the National Organic Program and the USDA is a distinct inquiry from what is considered natural for the purposes of labeling, and that the FDA has the authority to regulate labeling on most food products. See *In re KIND LLC "Healthy & All Natural" Litig. (In re Kind LLC I), 209 F. Supp. 3d 689, 695 (S.D.N.Y. 2016)* ("[T]he issue of whether the particular ingredients referenced in the Complaint rendered the 'all natural' label misleading seems to be particularly within the FDA's discretion."). The FDA has not defined the term "natural," and the plaintiff has alleged sufficiently that the FDA guidance interpreting "natural" precludes the application of the relevant safe harbor provisions. The plaintiff points **[*16]** out that the citric acid, as used in the defendant's products may have synthetic solvent residues from the way in which it is produced, which would argue against its being natural. The inconsistent definitions and descriptions by the FDA and USDA suggest the conclusion that the definition of "natural" is ambiguous. Accordingly, it would be premature to conclude at the motion to dismiss phase that the plaintiff failed to state a claim that the "All-Natural" label is misleading or that the defendant complied with the relevant safe harbor provisions. See, e.g., *Ault, 2014 U.S. Dist. LEXIS 67118, 2014 WL 1998235, at *6* ("In fact, the FDA has not developed a definition for the term 'natural' because of the 'complexities' of the factual inquiries involved."); *In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-md-2413, 2013 U.S. Dist. LEXIS 123824, 2013 WL 4647512, at *22 (E.D.N.Y. Aug. 29, 2013)* (holding that ambiguity regarding the "all natural" label precluded dismissal pursuant to the safe harbor provisions).


The defendant next argues that citric acid, at least as used in the defendant's product, does not function as a preservative. The defendant argues that the citric acid in the defendant's products does not "tend[] to prevent or retard deterioration" of the products because it is used as a flavoring agent as opposed **[*17]** to as a preservative. The defendant argues that because the citric acid is not acting as a preservative, the labeling is protected by the safe harbor provisions. The defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains preservatives. The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives. However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent. In support of its argument, the defendant states that the plaintiff failed to allege that the defendant intended the citric acid in its products to act as a preservative and the defendant contends that citric acid actually functions as a flavoring agent in its products. But whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer. The plaintiff alleges in some detail that citric acid is a preservative **[*18]** and acts as a preservative in the defendant's products. In his declaration, Dr. Meyers asserts that citric acid is a preservative and can act as one in the defendant's products. See SAC Ex C. Moreover, the FDA lists citric acid as a preservative on its website. And several courts have concluded that, at least at the motion to dismiss stage, it would be improper to conclude that citric acid is not a preservative. See, e.g., *Ashour, 2020 U.S. Dist. LEXIS 171505, 2020 WL 5603382, at *3*; *Quiroz, 2019 U.S. Dist. LEXIS 57313, 2019 WL 1473088, at *8*; *Hu, 2017 U.S. Dist. LEXIS 222806, 2017 WL 11551822, at *1 n.4*.

Accordingly, it is at least ambiguous whether citric acid can be considered a preservative in the defendant's products. Therefore, it cannot be concluded on a motion to dismiss that the defendant complied with the safe harbor provisions.

### C. Breach of Express Warranty

The defendant argues that the plaintiff's breach of warranty claim should be dismissed because the defendant's product description should not be construed as an express warranty. In order to state a claim for breach of express warranty, a plaintiff must show that there was "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiffs detriment." *Friedman v. Medtronic, Inc., 42 A.D.2d 185, 345 N.Y.S.2d 637, 643 (App. Div. 1973)*. The "natural tendency" element requires that **[*19]** the seller-defendant's statement be "definite enough" such that the natural tendency of the statement would be to induce purchase. See *Becker v. Cephalon, Inc., No. 14-cv-3864, 2015 U.S. Dist. LEXIS 123670, 2015 WL 5472311, at *7 (S.D.N.Y. Sept. 15, 2015)*. The reliance element requires "no more than reliance on the express warranty as being a part of the bargain between the parties." *CBS Inc. v. Ziff-Davis Pub. Co., 75 N.Y.2d 496, 553 N.E.2d 997, 1001, 554 N.Y.S.2d 449 (N.Y. 1990)*.

In this case, the plaintiff alleges that the defendant's products contained several express statements, such as "All-Natural," "No Preservatives," and others. The defendant contends those statements are merely product descriptions, rather than warranties. However, the statements, as alleged by the plaintiff, have the natural tendency to induce the buyer to purchase the defendant's product. And the plaintiff alleges that she relied on the defendant's statements as part of the bargain. Pursuant to New York Law, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *N.Y.U.C.C. Law § 2-313(1)(b)*. As a result, product labels and advertisements can create express warranties. See, e.g., *Atik v. Welch Foods, Inc., No. 15-cv-5405, 2016 U.S. Dist. LEXIS 136056, 2016 WL 5678474, at *12-13 (E.D.N.Y. Sept. 30, 2016)*; *In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 U.S. Dist. LEXIS 123824, 2013 WL 4647512, at *27*. Indeed, several courts in this Circuit have found that similar statements on product **[*20]** labels create actionable warranties. See, e.g., *Ault, 2014 U.S. Dist. LEXIS 67118, 2014 WL 1998235, at *6* ("All Natural"); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d. 467, 482-83 (S.D.N.Y. 2014)* ("Active Naturals" in a cosmetic product); *In re Frito-Lay N. Am., Inc. All Natural Litig., 2013 U.S. Dist. LEXIS 123824, 2013 WL 4647512, at *27* ("All Natural").

Therefore, the statements on the defendant's products can constitute an express warranty. Whether those warranties were breached is a question of fact that cannot be decided on a motion to dismiss. The plaintiff has pleaded enough to satisfy her burden to state a

claim for breach of express warranty.

### D. Unjust Enrichment

The defendant argues that the plaintiff's unjust enrichment claim should be dismissed because it is duplicative of other claims and not pleaded with sufficient particularity. Pursuant to New York law, a claim for unjust enrichment requires a showing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006)*. A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 967 N.E.2d 1177, 1185, 944 N.Y.S.2d 732 (N.Y. 2012)*.

In this case, the plaintiff has alleged that the defendant benefited at the plaintiff's expense. The plaintiff purchased **[*21]** the defendant's product. The plaintiff also has alleged that equity and good conscience require restitution because the defendant's profit was due to allegedly untrue or misleading statements. The defendant contends that an unjust enrichment action would be duplicative of the breach of warranty and *Section 349* and *350* claims. However, even if the plaintiff were unable to recover for the distinct theories of liability, *Federal Rule of Civil Procedure 8(d)(3)* permits a party to state "as many separate claims or defenses as it has, regardless of consistency." *Fed. R. Civ. P. 8(d)(3)*. Moreover, the Court of Appeals for the Second Circuit recently noted that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim[.]" *Axon, 813 F. App'x at 706*. Therefore, the plaintiff has pleaded adequately her unjust enrichment claim, and whether she can recover will turn on issues of fact that cannot be determined on the motion to dismiss.

Accordingly, "[a]t this stage of the proceedings, [the plaintiff's] unjust enrichment claim cannot be dismissed on what is basically a factual issue." *Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991)* (denying motion to dismiss unjust enrichment claim pleaded in the alternative to a breach of warranty claim).

### E. Common Law Fraud

The defendant argues that the plaintiff's common law fraud **[*22]** claim should be dismissed because the plaintiff failed to plead with particularity that the defendant knew that its statements on its products were false or that the defendant acted with fraudulent intent. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)*. *Federal Rule of Civil Procedure 9(b)* provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Fed. R. Civ. P. 9(b)*. *Rule 9(b)* requires that a complaint "specify the time, place, speaker, and content of the alleged misrepresentations." *Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)*. Moreover, the plaintiff must "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Id.

In this case, there is sufficient ambiguity in the regulations and definitions of "natural" and "preservative" that regulatory guidance alone is not **[*23]** sufficient to infer the defendant's knowledge that its statements were false or misleading. The plaintiff alleges that the plaintiff's attorney gave the defendant a copy of the complaint, which put the defendant on notice that its statements were false. However, that notice came after the defendant already put its statements on its products and the plaintiff purchased those products. Therefore, the notice could not have given the defendant knowledge that its statements were false at the time the defendant put its statements on the products and at the time the plaintiff purchased the defendant's products. Moreover, whether citric acid is natural or a preservative in the defendant's products is so ambiguous that even with the plaintiff's notice, it cannot be inferred that the defendant had actual knowledge that its statements were false or even acted with reckless disregard of the statements' truth. Pursuant to *Rule 9(b)*, to pursue the common law fraud claim, the plaintiff would need to plead with more particularity allegations establishing that the defendant had the requisite knowledge and acted with fraudulent intent. *Quiroz, 2019 U.S. Dist. LEXIS 57313, 2019 WL 1473088, at *11* (granting motion to dismiss fraud claim

because the plaintiff did not allege **[*24]** scienter sufficiently where the defendant's product included citric acid but was advertised as having no preservatives). Accordingly, the common law fraud claim is dismissed.

### F. Non-Restitutionary Disgorgement

The defendant argues that the Court should dismiss the plaintiff's non-restitutionary disgorgement remedy because it would lead to a windfall for the plaintiff. Given that this case has not begun discovery, it would be premature to dismiss the plaintiff's potential remedy. The defendant cites to several cases where courts dismissed remedies for non-restitutionary disgorgement. However, the defendant only cites to cases from courts in California interpreting remedies available pursuant to California state law. The defendant provides no basis to conclude the same restrictions on remedies apply under New York law. And without a factual record, it would be inappropriate to conclude what remedies are available to the plaintiff. Until there is a more developed record, the Court defers ruling on whether non-restitutionary disgorgement could be an appropriate remedy in this case.

### G. Class Allegations

The defendant argues that the Court should strike the class allegations in the complaint **[*25]** due to the variations in state law across the country. However, "[c]ourts in this circuit hesitate to strike class allegations before a class certification motion is filed." *Ashour, 2020 U.S. Dist. LEXIS 171505, 2020 WL 5603382, at \*6*; see also *Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)* (declining to consider striking class allegations until a motion for class certification). The question of whether to strike the class allegations requires a more developed record on the facts and law. Accordingly, the motion to strike the class action allegations is denied without prejudice to renewal in connection with a motion for class action certification.

### CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted** with respect to the plaintiff's claims for injunctive relief. It is **denied** with respect to the causes of action pursuant *New York General Business Law Sections 349* and *350*, for breach of warranty, and for unjust enrichment as claims for non-injunctive relief. The motion to dismiss is **granted** with respect to the cause of action for common law fraud. The defendant's requests to strike the non-restitutionary disgorgement remedy and class allegations are **denied** without **[*26]** prejudice to renewal. The Clerk is directed to close Docket Nos. 41 and 46.

**SO ORDERED**.

**Dated: New York, New York**

**January 28, 2021**

**/s/ John G. Koeltl**

**John G. Koeltl**

**United States District Judge**

---

**End of Document**