

May 27, 2021

**Via CM/ECF**
The Honorable Gabriel W. Gorenstein
United States District Court for the
  Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)
              *Sklair et al. v. Mike Bloomberg 2020, Inc. et al.*, No. 20 Civ. 2495 (LTS) (GWG)

Dear Judge Gorenstein:

      Along with co-counsel, we represent Plaintiffs and opt-in Plaintiffs in the above-referenced matter. We write jointly with *Sklair* counsel to request a pre-motion conference regarding whether Defendant should begin to undertake a limited search for responsive electronically-stored information ("ESI"). Specifically, Plaintiffs propose that Defendant undertake a search for ESI in the possession of just a single custodian, who is already known to possess highly relevant communications.

**I.**      **Discovery Overview**

      Full discovery has not yet commenced in the *Wood* or *Sklair* cases pending the Court's decisions on the motions to dismiss. At the July 16, 2020 hearing, Plaintiffs' counsel agreed to a phased approach to ESI searches, beginning with an "initial phase of just searching our own plaintiffs' emails" because "having this preliminary ESI would help us see who potential witnesses would be as the case moved along." Ex. 1 (July 16, 2020 Hr'g Tr.) at 14:11-15, 15:5-7 The Court confirmed that in future phases of ESI searches, "the reasons you would want other custodians down the road is you want to see if other custodians talk to each other about whatever these promises and inducements were." *Id.* at 14:16-19. Following the July conference, the parties exchanged initial discovery requests and began initial document productions. At the December 15, 2020 hearing, the Court declined to grant Defendant's request for a stay of discovery, and asked the parties to find "some path . . . short of . . . the full ESI" for continued discovery, including "some kind of ESI that isn't burdensome." Ex. 2 (Dec. 15, 2020 Hr'g Tr.) at 15:17-19, 19:19-22. At that time, the motions to dismiss had been pending for approximately five months. The Court noted that its instruction was "for what might be a few months until we get a decision on the motion to dismiss." *Id.* at 15:19-20.

      In the five months since the December 15 hearing, the parties have engaged in very

**New York**  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
**San Francisco**  One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
**Washington DC**  601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

The Honorable Gabriel W. Gorenstein
May 27, 2021
Page 2 of 4

limited additional discovery.  In response to Plaintiffs' requests, Defendant has produced a small number of documents relating to its interview and hiring guidelines for Field Organizers.  In the *Wood* matter, in response to Plaintiffs' requests Defendant has also produced documents that it had previously produced in other lawsuits asserting similar claims.  Defendant has not agreed to negotiate searches for ESI beyond the production of plaintiffs' email inboxes, and no depositions have taken place in either case.

## II.     Plaintiffs' Limited Request for ESI Search

Plaintiffs request that the Court require Defendant to conduct an initial limited ESI search.  Specifically, at this time Plaintiffs request a search of just a single custodian: Dan Kanninen, the Campaign's States Director.  Given his senior role in the Campaign, Mr. Kanninen is very likely to possess communications that are relevant to *Wood* Plaintiffs' and all Field Organizers' state wage and hour claims, which are not subject to the motion to dismiss.  For example, in its interrogatory responses in the *Wood* matter, Defendant identified Mr. Kanninen as a person with knowledge of the work, job duties, and daily tasks performed by Plaintiffs, as well as someone who participated in the creation of the job description for Field Employees and the decision to classify Field Organizers as exempt.  Mr. Kanninen also submitted a declaration in support of Defendant's opposition to the *Wood* Plaintiffs' motion for conditional certification, attesting to the purported job duties of Field Organizers.  *See* ECF No. 96.  Mr. Kanninen is therefore very likely to have communications including discussion of organizers' job duties, training, hours worked, and other issues relevant to the wage claims.

In addition, as one of the most senior officials within the Campaign overseeing field employees, Mr. Kanninen is certain to possess relevant communications regarding Plaintiffs' common-law claims.  Plaintiffs are already aware from public court filings in other lawsuits—and Defendant's production to *Wood* Plaintiffs of the documents produced in those cases—that Mr. Kanninen possesses communications that go to the heart of their common law claims.  For example, in a March 9, 2020 email, Mr. Kanninen wrote to other Campaign officials that "the campaign and candidate repeatedly promised" that "all organizing staff . . . will be slotted into a position of some sort (location not guaranteed) through November."  Ex. 3 (Mar. 9, 2020 Email).  In a March 10, 2020 email chain between National Operations Director Daniel Ensign and several individuals, including Mr. Kanninen, they also discussed recruitment documents, interview templates, and ads that all referenced employment through November.  Ex. 4 (Mar. 10, 2020 Email).  In that chain, National Organizing Director Megan Simpson also noted that "[w]e were told early on that we could verbally tell folks that they would have a job through November" and that "the recruiting firm also used this language."  *Id.*  These emails are just two examples of the communications that Mr. Kanninen possesses.[1]  As the States Director in charge of all field operations, he is highly likely to possess a large number of additional responsive

---

[1]     Defendant produced to *Wood* Plaintiffs a very limited number of other emails from Mr. Kanninen from these same email chains.  Defendant designated these emails as confidential despite portions of them being publicly filed in other lawsuits.  To avoid burdening the Court with a motion to seal, Plaintiffs refer only to publicly-available documents here as examples of the ESI that Mr. Kanninen is known to possess.

The Honorable Gabriel W. Gorenstein
May 27, 2021
Page 3 of 4

communications, relating both to the common law claims and wage claims.

Plaintiffs' proposed approach is both efficient and proportional for this stage of the litigation, in line with the Court's December 15 instruction. Plaintiffs have limited their request as much as possible—to a single custodian. Given the very limited scope of the search, Plaintiffs' proposal imposes little burden on Defendant,[2] and advances discovery because it is highly likely to uncover relevant communications. Plaintiffs' understanding is that Mr. Kanninen's ESI is primarily maintained in Defendant's Google Workspace account, which is easily exported. Starting now with a search for Mr. Kanninen also confers future benefits, regardless of the outcome on the motion to dismiss. Because Mr. Kanninen is already known to possess relevant communications, the parties have the opportunity to negotiate a refined, effective search process—either with search terms or TAR—that can be informed by the review of Mr. Kanninen's ESI and easily adapted to future custodians who may possess documents relevant to the wage and/or common law claims.

In order to facilitate an efficient process, Plaintiffs further request that the Court order the following schedule for this limited search:

| Date | Event |
| --- | --- |
| Within 3 business days of the Court's Order | Defendant completes collection and export of Mr. Kanninen's email and other Google-based ESI to its ESI vendor. |
| Within 7 days of the Court's Order | The parties confer on a search process, namely search terms or TAR. If search terms, Plaintiffs will propose an initial set of terms by this date. If TAR, the parties will agree upon industry standard benchmarks for validation by this date. To the extent Mr. Kanninen possesses non-email ESI, such as text messages or WhatsApp, the parties will also confer on an approach for collecting and searching such non-email ESI. |
| Within 10 days of the Court's Order | The Campaign produces a hit report showing the de-duplicated results of each search term.[3] |
| Within 21 days of the Court's Order | The parties will work cooperatively to reach agreement on a set of search terms. |
| Within 28 days of the Court's Order | The Campaign begins rolling production of Mr. Kanninen's responsive ESI. |

---

[2]  Defendant's burden is further limited because it appears to have already conducted a collection, review, and production of at least some of Mr. Kanninen's ESI, though Plaintiffs have no information regarding the scope of the search conducted in the other lawsuits.

[3]  Given the small universe of documents associated with one custodian and a very short time period, Plaintiffs believe that Defendant's vendor should require no more than a few days to generate a hit report. This hit report should include the industry standard data points of: (a) total searched population, (b) total number of documents with any hits, (c) total number of documents with any hit *plus* sources and attachments, (d) per search term hit count, (e) per search term hit count including sources and attachments, and (f) per search term unique document count (documents that hit on the given search term only).

The Honorable Gabriel W. Gorenstein
May 27, 2021
Page 4 of 4

### III. Meet and Confer Requirement

Plaintiffs sent Defendant a letter on May 7, 2021 outlining their request for an ESI search and the reasons for conducting such a search now. In accordance with Your Honor's Individual Rule 2.A, the parties conferred in good faith regarding this issue by telephone on May 17, 2021 at 2:00 p.m. ET. The call lasted approximately 20 minutes. Michael Danna, Deirdre Aaron, and Dan Stromberg participated for the *Wood* Plaintiffs, Peter Romer-Friedman participated for the *Sklair* Plaintiffs, and Mark Batten participated for the Defendant. During the call, Defendant's counsel indicated that Defendant was unlikely to agree to the proposal, but would consider the issue further. On May 21, 2021, Defendant's counsel informed Plaintiffs's counsel by email that Defendant would not agree to conduct any ESI searches. On May 27, 2021, Plaintiffs' Counsel informed Defendant that they believed the parties had reached impasse and would be requesting a conference with the Court.

*   *   *

We thank the Court for its attention to this matter.

Respectfully submitted,

Michael C. Danna

CC: All Counsel of Record (via ECF)