```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #1:20-cv-02489-
WOOD,                               : LTS-GWG

                 Plaintiff,         :

   - against -                      :

MIKE BLOOMBERG 2020, INC.,          : New York, New York
                                      June 9, 2021
                 Defendant.         :
                                      TELEPHONE CONFERENCE
------------------------------------ :


                    PROCEEDINGS BEFORE
          THE HONORABLE JUDGE GABRIEL W. GORENSTEIN,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          OUTTEN & GOLDEN, LLP
                        BY:  MICHAEL CHRISTOPHER DANNA, ESQ.
                             DEIRDRE ANNE AARON, ESQ.
                             DANIEL S. STROMBERG, ESQ.
                        685 Third Avenue, 25th Floor
                        New York, New York 10017
                        212-245-1000

                        LON MIZZELL, ESQ.
                        PETER FRIEDMAN, ESQ.
                        DAVID BERMAN, ESQ.



Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

For Defendant:              PROSKAUER ROSE LLP
                            BY:  MARK W. BATTEN, ESQ.
                            One International Place
                            Boston, Massachusetts 02110
                            617-526-9600

                            PROSKAUER ROSE LLP
                            BY:  ELISE MICHELLE BLOOM, ESQ.
                            11 Times Square
                            New York, New York 10036
                            212-969-3000 x3410

                            PROSKAUER ROSE LLP
                            BY:  ALLISON LYNN MARTIN, ESQ.
                            One Newark Center 18th Floor
                            Newark, New Jersey 07102
                            973-274-6065

                            VENABLE LLP
                            BY:  NICHOLAS M. REITER, ESQ.
                            1270 Avenue of the Americas
                            New York, New York 10020
                            212-307-5500

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS              4

 2            THE CLERK:  This is the matter of Wood versus

 3   Bloomberg.  Counsel, state your name for the record,

 4   starting with the plaintiff, please.

 5            MR. MICHAEL DANNA:  Good morning.  This is Michael

 6   Danna from Outten & Golden for the Wood plaintiffs.  And

 7   with me are my colleagues, Deirdre Aaron and Dan Stromberg,

 8   also from Outten & Golden, for the plaintiffs.

 9            MR. LON MIZZELL:  And, your Honor, for the

10   [indiscernible] plaintiffs, Lon Mizzell, along with Peter

11   Friedman and David Berman.

12            MR. MARK BATTEN:  And for the defendants, your

13   Honor, Mark Batten.  With me are Elise Bloom and Allison

14   Martin, the three of us from Proskauer; and Nick Reiter

15   from the Venable firm.

16            HONORABLE GABRIEL W. GORENSTEIN (THE COURT):

17   Okay.  Welcome, everyone.  We're here based upon two

18   letters, Docket 189 and 190.  So I guess, Mr. Danna, we've

19   come to the point that I was hoping to avoid in December.

20   What I had asked the parties to do then was to, I think as

21   I put it, limp along until we get a decision and see what

22   they can work out that was nonburdensome, but if I had to

23   decide whether someone's entitled to a stay or not, I

24   would.  So I guess that's what I'm supposed to do, am I

25   right?
```

```
 1                      PROCEEDINGS              5
 2              MR. DANNA:  Thank you, your Honor.  So I don't
 3   think the Court has to decide whether to stay discovery.
 4   What we're asking for is a very limited and narrow approach
 5   to beginning ESI discussions that we view as actually in
 6   line with your instructions and your suggestion at the
 7   December conference.  At that point, the campaign had asked
 8   the Court to grant a partial stay of discovery; and as you
 9   just mentioned, you did not rule either way on that, and
10   you asked us to continue working forward on discovery in
11   some limited way, sort of full-blown ESI because
12   depositions plus the full-blown ESI process was what the
13   campaign was concerned about, the burden of undertaking
14   while the Motion to Dismiss was pending.  So since
15   December, the parties have worked forward in a limited way
16   for discovery.  The campaign has produced about 288
17   documents plus three more of our clients' email inboxes.
18   And since last July the parties have discussed a phased
19   approach to conducting ESI searches.
20              Throughout the December hearing you had suggested
21   finding some way to continue that approach short of the
22   full-blown ESI process.  And that's what we've proposed
23   here.  We're proposing a very reasonable and very, very
24   narrow place to start with ESI discussions using just one
25   custodian, Dan Kannien, who's the campaign's states
```

```
 1                              PROCEEDINGS                    6

 2   director and who oversaw --

 3              THE COURT:  No, I understand that.  And if there

 4   was agreement, we wouldn't be here.  Once there's any

 5   disagreement at all, then it seems like I'm going to have

 6   to make a judgment about whether a stay is appropriate or

 7   not.  I don't know how -- I don't expect you folks to argue

 8   it today.  I have all I need.  But I don't see how I avoid

 9   that.  I mean, if there was an agreement, that's fine; but

10   what I gave was merely a suggestion to avoid my having to

11   decide the stay issue.  I can't possibly rule on this

12   question, if it's disputed, without making a judgment about

13   the stay, right?

14              MR. DANNA:  Yes, your Honor.  I appreciate that.

15   So I have two points there.  One is the campaign never

16   requested a stay of discovery for plaintiff's state wage

17   and hour claims.  And the ESI custodian that we're

18   proposing to start with we feel very confident will have

19   relevant communications for the state wage and hour claim.

20   So even if you were inclined to at this point rule on the

21   stay request, those claims are not covered, and discovery

22   going to those claims would not be covered by that stay, at

23   least in line with the campaign's request.  And so we would

24   still be pushing forward or keeping to push forward with

25   discovery and ESI for the wage claims that are not subject
```

```
 1                          PROCEEDINGS                    7
 2   to the Motion to Dismiss.  I think that's the main point
 3   for why we want to start here with this custodian.
 4           I'll also say that --
 5           THE COURT:  All right.
 6           MR. DANNA:  -- because the Court did not actually
 7   grant a stay of discovery but instructed the parties to
 8   figure out a way to move forward, we think we're proposing
 9   what is a way to move forward without an actual stay.  It's
10   a very narrow and, we think, without much burden approach
11   to letting plaintiff move forward with just a little bit of
12   discovery without having the Court decide whether all
13   discovery should be stayed.
14           THE COURT:  Okay.  Let me -- let me hear from, I
15   guess, defendants.
16           MR. BATTEN:  So thank you, your Honor.  The ESI
17   that they're seeking now is really not relevant to the
18   state law wage claims.  It was prompted, in fact, by a
19   significant production of documents that we made from
20   Mr. Kannien's materials in other cases that have now been
21   dismissed.  And that's what provoked their interest and
22   their proposal.  As we said in the papers, I do think that
23   the Court needs to consider the stay issue because we're
24   talking about now a very small piece of ESI that, if done,
25   would impose burdens on us and really yield no benefit to
```

```
 1                         PROCEEDINGS                      8
 2   the litigation because it's not tailored to the state law
 3   wage claims.  And even if this were done, once the motions
 4   are decided, we're going to have to really start over,
 5   anyway.  And if we were to produce additional ESI as a
 6   result of this search of Kannien's materials, plaintiffs
 7   couldn't really do anything with that, anyway.  So they
 8   get no measurable benefit from putting us through the
 9   exercise.
10            THE COURT:  Let me ask Mr. Danna, if I -- I'm not
11   saying I'm going to do this -- but if I were to go down a
12   path where you got only wage and hour discovery from
13   Kannien, does that advance this case in any material way?
14            MR. DANNA:  Thank you, your Honor.  It would, of
15   course, advance the case because we've been in this
16   holding pattern where there is essentially a quasi-stay --
17            THE COURT:  I didn't ask that question.
18            MR. DANNA:  -- on our ability to get any
19   discovery --
20            Right.  Understood.
21            THE COURT:  So I didn't ask if it would --
22   Mr. Danna, I did not ask if it would advance the case; I
23   asked if it would advance the case in any material way.
24            MR. DANNA:  Yes, your Honor, we believe that it
25   would.  As we're looking to develop discovery on the wage
```

PROCEEDINGS                              9

1

2   claims, we'll be seeking to take depositions, seeking to

3   request additional documents, starting with this one

4   custodian who was at a very high level in the campaign and

5   oversaw the field operations, which are the employees who

6   we have wage claims for.  That would allow us to learn a

7   lot of information and see a lot of documents going to

8   those claims and will allow us to further develop, you

9   know, a list of additional custodians, additional document

10   requests, that type of discovery project that we have not

11   yet been able to make.

12          I'd like to note, if I can, also that the

13   [indiscernible] campaign has already begun, as we

14   understand it, to collect Mr. Kannien's emails to review

15   and search and produce in other cases.  We're not sure that

16   there's a lot of efficiency benefits for just looking at

17   Mr. Kannien's ESI for only the wage claims.  We think it's

18   probably a much more efficient approach to just search his

19   communications for relevant ESI for all of the claims and

20   then take what we learn from that process and apply it to

21   future custodians.  You know, if the Court ultimately does

22   dismiss the common law claims, then they impact future

23   custodians that are selected.  But the search process that

24   we're hoping to negotiate now will be, you know, broadly

25   applicable to whether we're using custodians for just the

```
 1                          PROCEEDINGS              10
```

 2  wage claims going forward, the common law claims or both.

 3  　　　　THE COURT:  Mr. Batten, do you want to respond to

 4  that?

 5  　　　　MR. BATTEN:  Yes.  Thank you.  Thank you, your

 6  Honor.  We certainly agree that doing ESI on a custodian on

 7  certain claims right now is wildly inefficient.  But it

 8  also makes no sense to do ESI on one witness for all of the

 9  claims when most of those claims may be dismissed; and, in

10  any case, after the motion is decided, we would have to

11  retrain the TAR system, we would have to negotiate search

12  terms; we would be starting over, anyway.

13  　　　　MR. DANNA:  Your Honor, if I could just respond

14  to that last point?

15  　　　　THE COURT:  Go ahead.  Go ahead.

16  　　　　MR. DANNA:  We view this as a very efficient use

17  of the parties' time and resources.  So in terms of ESI,

18  we'll be seeking ESI regardless of how the Motion to

19  Dismiss is decided.  And so these are discussions that the

20  parties will need to do at some point and largely don't

21  turn on the outcome of that motion.  And what we're hoping

22  to negotiate is the overall search process.  And if it's

23  TAR, you know, the approach to that is how to validate

24  that process, its search terms, what those might be, with

25  this single custodian as a reference point, because we

```
 1                          PROCEEDINGS                    11
 2   feel very certain that he has documents that are relevant
 3   for all of the claims.  And so, for example, the search
 4   terms, the search terms that the parties develop for the
 5   common law class for the wage claims for Mr. Kannien can be
 6   directly, you know, tested with this review and then used
 7   for future wage-claim related custodians going forward.
 8             This is a custodian who the campaign has
 9   identified numerous times in its interrogatory responses as
10   having knowledge of the field organizer's job duties and
11   being part of the decision to classify organizers as
12   exempt.  And he also submitted a declaration about job
13   duties in opposition to plaintiff's 216(b) notice motion.
14   So this is not a custodian that the campaign is saying is
15   not likely to have relevant documents or is otherwise not
16   an appropriate custodian.  The campaign is mostly just
17   arguing for delaying the process.  And we think there's a
18   lot of benefit to just starting now because it will allow
19   us to hit the ground running, once the Motion to Dismiss is
20   ultimately decided, using the search process that we can
21   negotiate now with this one custodian.
22             THE COURT:  So --
23             MR. DANNA:  [indiscernible].
24             THE COURT:  -- it's not like you're allocating a
25   whole lot of time to the process of collection and agreeing
```

```
 1                          PROCEEDINGS              12
 2   on the search terms of the TAR.  I mean, seven days in your
 3   proposal, right?
 4            MR. DANNA:  Yes, that's right.  We feel that we
 5   can --
 6            THE COURT:  So I mean, all -- you're buying seven
 7   days in the future, unless I'm misunderstanding you.
 8            MR. DANNA:  What we're hoping to accomplish with
 9   the search process here is to work out, you know, identify
10   with the campaign what the issues are, what the approach
11   will be to the search -- searching for documents and
12   working with them on, you know, any issues, any disputes
13   that arise.  That will likely take more time than we've
14   proposed.  We think it can be an efficient process, but
15   there's a lot to be gained now rather than waiting --
16            THE COURT:  Okay, well, let's --
17            MR. DANNA:  -- to start the --
18            THE COURT:  Let's talk about the details because
19   maybe that's where the problem is.  And you folks are going
20   to have to bear with me because I became a judge after
21   anyone did ESI, so my knowledge does not come from
22   practical experience but from cases.
23            So, you know, looking at -- I'm going to ask both
24   sides this question, but -- in fact, maybe I'll -- no, I'll
25   start with plaintiff.  I'm trying to understand if there
```

```
 1                        PROCEEDINGS              13
 2  really are any stages that would have to go forward in the
 3  same form, anyway, regardless of the outcome.  So, you
 4  know, so there has to be a collection of email and so forth
 5  to a vendor.  I assume in your view that's going to have to
 6  happen no matter what, right?
 7            MR. DANNA:  Yes, that's right, your Honor.  I
 8  think all of --
 9            THE COURT:  These are questions for plaintiff.
10  Okay.
11            Now, you were talking generally about conferring
12  about a search process.  Now, did you mean something other
13  than figuring out terms or using TAR?
14            MR. DANNA:  That's essentially what we're asking
15  for, your Honor.  You know, that process, our hope is that
16  it would be able to be decided pretty quickly between the
17  parties, but there are a lot of factors that go into it.
18  If we're using either search process, we need to figure out
19  the sources of ESI.  We are aware of emails on the campaign
20  Gmail accounts.  We're not sure what other communications
21  are out there, whether there are text messages or messaging
22  platforms.  So having a discussion about those sources of
23  ESI, if it's search terms, then, yes, the search terms
24  themselves, coming up with those, testing them with hit
25  reports.  If it's a TAR process, agreeing upon --
```

```
 1                         PROCEEDINGS                    14
 2            THE COURT:  Okay, no, now you can stop.  I was
 3   trying to figure out the point where we start diverging
 4   between something that's going to have to happen anyway and
 5   something that's going to  specific to the claims that are
 6   in the case.  So there seemed to be something after, you
 7   know, the exports and a vendor and so forth that didn't
 8   quite hit search terms or TAR, you know, something about --
 9   you said about discussing text messages and platforms and
10   so forth.  But then you pretty quickly got into search
11   terms and TAR, so now we're back where I have my concerns,
12   which is there's a big difference between doing search
13   terms and TAR that relate to the wage claims alone and
14   those that relate to both wage and the hour claims.  So I
15   gather you understand that and you think it's worth it even
16   if some of that ends up -- some of that ends up being a
17   complete waste of time?  That's a question for Mr. Danna.
18            MR. DANNA:  Yes, your Honor.  Thank you.  We do
19   think it's worth it, one, because there is no -- you know,
20   there is no even contemplated stay right now of discovery
21   going to the wage claims.  And so, you know, plaintiffs
22   would like to be able to make some progress there, and we
23   view this as a very reasonable place to start.
24            And in terms of, you know, whether it's worth the
25   parties' time, like I mentioned, the campaign has already
```

```
 1                          PROCEEDINGS                    15
 2   undertaken some of the burden here by already collecting
 3   and beginning to review this particular custodian's ESI
 4   towards productions in other cases.  We haven't sort of
 5   just selected this custodian out of a hat; we selected him
 6   for that very reason because we're looking -- you know, we
 7   understand the Court's instruction to figure out a way
 8   forward that limits the burden on defendant.  And so here
 9   defendant has already undertaken some or all of the burden
10   of collecting this person's emails and beginning to review
11   them.  We think that makes it a particularly good place to
12   start now and while still holding off on the full-blown ESI
13   searches for all the other custodians, which we can
14   continue to hold until after the motion is decided.
15               THE COURT:  All right, I'll get to the defendant.
16   And I guess I would want to -- you know, I didn't review
17   the briefing from last time, but I would assume this issue
18   has come up, which is that defendant must have been saying
19   there has to be some stay of the wage discovery to the
20   extent it's going to require duplication of effort.  Is
21   this the first time that this is -- this notion's being
22   raised, Mr. Batten?
23               MR. BATTEN:  I don't think so, your Honor.  We
24   would have to go back -- I would have to go back and look
25   at those briefs myself.  But it doesn't make any sense to
```

```
 1                            PROCEEDINGS                      16
 2   do one without the other because we would, obviously, be
 3   duplicating efforts, not to mention that search terms will
 4   change.  And even if they got this additional ESI from
 5   Mr. Kannien, they still couldn't do anything with it.  It's
 6   not like we're then going to move into depositions on the
 7   wage and hour claims of the same people who would need to
 8   be deposed on the other claims, as well.  That doesn't make
 9   any sense.  So we're talking about undertaking the burden
10   to collect some additional documents, although they already
11   have the results of the searches that were done in the
12   other, the dismissed cases.  And we've already offered,
13   separately from this process, to produce anonymized payroll
14   records and email boxes of additional plaintiffs who are
15   part of -- within the states that are covered by the wage
16   and hour claims.  We're talking about just getting into ESI
17   for the sake of ESI with no -- but it doesn't do anything
18   to advance the litigation.
19             THE COURT:  Did you -- so you had to produce the
20   wage and hour data or that you were going to do it?
21             MR. BATTEN:  We offered to do it, and there was
22   never a response to that proposal.
23             THE COURT:  Oh.  So, Mr. Danna, that seems like
24   much more important for your wage and hour claims to get
25   that data.  Shouldn't the efforts be directed there?
```

```
 1                      PROCEEDINGS                    17
 2               MR. DANNA:  Thank you, your Honor.  So I think --
 3  I believe the data that Mr. Batten is referring to might be
 4  payroll data, which we're certainly interested in seeking.
 5  But ESI from Mr. Kannien and other sources goes to the
 6  heart of the claims, you know, what were the job duties of
 7  field organizers, why were they classified as exempt, what
 8  were the hours they worked, so on, all the factors that go
 9  to the actual, you know, claims at issue.  And that's what
10  we're hoping to get started on.
11               THE COURT:  All right.  You know, my -- okay, so
12  give me one second to see if I have any questions written
13  down.
14               I mean, I assume that if I thought a stay was
15  appropriate for the common law claims, the plaintiffs are
16  not interested in going forward in the way they proposed
17  on the understanding that they'll have to -- let me strike
18  that for a second.
19               Let me ask the plaintiffs this.  I mean, in terms
20  of -- you know, I'm -- let me just explain what my thinking
21  is.  It seems like this is really not going to advance the
22  case in any material way to get the ESI from one custodian,
23  you know, when we're not moving forward on any other
24  fronts.  I just -- you know, on the other hand, I'm
25  prepared to push the limit on discussions that you should
```

```
 1                         PROCEEDINGS                18
 2   have about how this is going to work once you do know which
 3   claims are in the case, you know, what vendor's involved,
 4   what platforms there are and things like that.  I assume
 5   there hasn't been recalcitrance on the defendant's part to
 6   discuss those issues with you, Mr. Danna, has there?
 7            MR. DANNA:  The parties have not yet started to
 8   discuss those issues.  It is something that we discussed
 9   interest in in the past, yes.
10            THE COURT:  All right, Mr. Batten, any objection
11   to giving that information and having those discussions,
12   short of actual search terms and TAR?
13            MR. BATTEN:  No, your Honor.  And, in fact, the
14   TAR procedures, which would be one component of what you're
15   talking about, have already been negotiated and are set out
16   in the ESI protocol.  So we have made some progress on
17   those kinds of preliminary issues, and of course we're
18   willing to talk about other such things.
19            THE COURT:  All right, well, certainly, the
20   plaintiff should, you know, feel that that's the subject
21   of discussion that should happen now.  Plaintiff should
22   also, I mean, if they want to hit the ground running, be
23   prepared with terms on the two possible eventualities,
24   either there are common law claims or there aren't.  That
25   shouldn't just start happening once the decision is
```

```
 1                        PROCEEDINGS                    19

 2   issued.

 3            But I feel I need to reach the stay issue.  I

 4   don't see how I decide otherwise.  And I will not go over

 5   all the arguments; it's all in the parties' briefs.  I had

 6   written up something rather lengthy at the time of our

 7   last hearing in December.  I'm not going to go through it

 8   all.  The standards for a stay are set forth in the case

 9   of Hong Leong Finance, 297 F.R.D. 69.  On the three

10   factors the defendant has made a strong showing that

11   plaintiff's claims, the common law claims are

12   unmeritorious; the breadth of discovery being sought and

13   the burden of responding to it, well, once we hit ESI, I'm

14   finding that there is burden in having -- if the

15   defendants were ever required to do it twice or if they

16   were required to do it once for claims that are not part

17   of the case; and I'm not seeing prejudice to the

18   plaintiffs.  I am very hopeful that there's going to be a

19   decision in the coming weeks.  You know, if someone wants

20   to come back to me in two months and say we just can't go

21   on like this, I'd be willing to hear from them.  I think

22   there'd have to be some showing of prejudice that I

23   haven't heard yet.  But maybe it will be different from

24   what it was when it was briefed last time.  So the

25   plaintiff's application is denied except to the extent that
```

```
 1                        PROCEEDINGS                    20
 2  I just said.
 3           Any questions about my ruling, Mr. Danna?
 4           MR. DANNA:  No, your Honor.  We appreciate your
 5  time and attention to this.
 6           THE COURT:  Mr. Batten, any questions?
 7           MR. BATTEN:  Nothing.  Thank you, your Honor.
 8           THE COURT:  Okay.  All right, anything else we
 9  need to do today?  Mr. Danna?
10           MR. DANNA:  No, not from the plaintiffs, your
11  Honor.
12           THE COURT:  Mr. Batten?
13           MR. BATTEN:  No.  Thank you, your Honor.
14           THE COURT:  Okay.  Thank you, everyone.  Good-
15  bye.
16           (Whereupon, the matter is adjourned.)
17
18
19
20
21
22
23
24
25
```

21

<u>C E R T I F I C A T E</u>

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Wood v. Mike Bloomberg 2020, Inc., Docket #20-cv-02489-LTS-GWG, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

                Carole Ludwig

Date:    June 10, 2021