# Exhibit 1

9

COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**  **SUPERIOR COURT**
**CIVIL ACTION**
**NO. 2020-01192**

**TIFFANY FONTAINE & others,[1]**
**individually and on behalf of others similarly situated**

**vs.**

**MICHAEL BLOOMBERG & another[2]**

**MEMORANDUM OF DECISION AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Tiffany Fontaine, Nygel O'Bannon, Wendell McCoy, and Gregoire Poirier (collectively, "plaintiffs") allege that defendants Mike Bloomberg 2020, Inc. ("Bloomberg campaign") and Michael Bloomberg ("Bloomberg") (collectively, "defendants") promised them employment through election day in November 2020 even if Bloomberg did not receive the Democratic presidential nomination. This case is before the court on the defendants' motion to dismiss. For the following reasons, the defendants' motion is **ALLOWED** in part and **DENIED** in part.

**BACKGROUND**

For purposes of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the plaintiffs' complaint and draw every reasonable inference in his favor. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).[3]

---

[1] Nygel O'Bannon, Wendell McCoy, and Gregoire Poirier

[2] Mike Bloomberg 2020, Inc.

[3] The court reserves for discussion below facts relevant to the issue of personal jurisdiction. See, e.g., Good Hope Indus. v. Ryder Scott Co., 378 Mass. 1, 3 (1979) (determining facts relevant to personal jurisdiction by considering "pleadings supporting affidavits, depositions, and exhibits"); Kleinerman v. Morse, 26 Mass. App. Ct. 819, 821 n.4

After Michael Bloomberg announced his candidacy for the 2020 Democratic presidential nomination on November 24, 2019, the Bloomberg campaign hired thousands of field organizers and campaign staffers throughout the country. The plaintiffs were among the approximately sixty employees hired in Massachusetts.

In hiring the staff members, Bloomberg, through his campaign, guaranteed them a job on the campaign through November 2020, regardless of how he did in the presidential race. The staff members in charge of hiring made this promise during the interviews; the script they used for interviews included the guarantee. Specifically, "[a]pplicants were told that, even if . . . Bloomberg did not win the Democratic nomination, the campaign would continue to operate up to Election Day and through November 2020 to work in support of whichever candidate became the Democratic presidential nominee." Complaint, par. 13.

The thousands of campaign members across the country, including the sixty employees in Massachusetts, accepted their positions with the Bloomberg campaign in reliance on the promise of guaranteed wages and benefits through November 2020, regardless of whether Bloomberg won the nomination. Many employees relocated far from their homes, turned down other work opportunities, and stopped looking for other work opportunities, in reliance on this promise.

After a poor showing on March 3, 2020, when primary elections were held in fifteen jurisdictions,[4] Bloomberg announced on March 4, 2020, that he was suspending his campaign. Campaign staff learned of Bloomberg's decision during an all-staff conference call on March 4, 2020. Staff also learned that Bloomberg intended to establish a political action committee

---

(1989) ("A determination of jurisdiction – or the lack of it – may rest on the facts alleged in the complaint. . . . In aid of the task of determining jurisdiction over a person, a court may receive and consider affidavits." (internal citations omitted)).

[4] Bloomberg won only in American Samoa and came in third or fourth place in the other jurisdictions.

2

("PAC") that would seek to defeat President Donald Trump in certain electoral states, and that they would be able to continue to work for Bloomberg's PAC.

On March 20, 2020, the Bloomberg campaign held another all-staff conference call during which staff members learned that they were being laid off, and would receive their last paychecks on March 31, 2020. Rather than form a PAC, Bloomberg would donate funds to the Democratic National Committee ("DNC"). The Bloomberg campaign would submit interested staff members' information to the DNC, but they were not guaranteed employment. Several plaintiffs and many other members of Bloomberg's staff submitted their information to be passed along to the DNC, but they received no response.

## DISCUSSION

I. **Motion to Dismiss Claims against Michael Bloomberg Under Mass. R. Civ. P. 12(b)(2)**

The defendants contend that Michael Bloomberg is not subject to this court's jurisdiction and thus move under Mass. R. Civ. P. 12(b)(2) to dismiss him from this case. Rule 12(b)(2) of the Massachusetts Rules of Civil Procedure provides for the dismissal of an action on the basis of "[l]ack of jurisdiction over the person . . . ." "The plaintiff has the burden of production as to jurisdictional facts once jurisdiction is challenged." Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP, 89 Mass. App. Ct. 718, 720-721 (2016). "A prima facie showing of facts sufficient to establish personal jurisdiction . . . is usually sufficient to survive a motion to dismiss." Cepeda v. Kass, 62 Mass. App. Ct. 732, 739 (2004). "That these facts may be controverted by the defendant does not overcome a prima facie showing . . . ." Id. The plaintiffs rely solely on their complaint to establish Bloomberg's jurisdiction, whereas the defendants have filed Declarations from Katherine Sayers, the Bloomberg campaign's human resources manager, and Hayden Horowitz, the Bloomberg campaign's treasurer. As the plaintiffs have failed to meet

3

their burden under Rule 12(b)(2), Bloomberg must be dismissed from this action. See <u>Fern</u> v. <u>Immergut</u>, 55 Mass. App. Ct. 577, 580 n.7 (2002) (noting that "the specific, non-conclusory facts alleged in a complaint may so clearly manifest a lack of jurisdiction that dismissal on the basis of the complaint alone would be warranted").

Michael Bloomberg is a resident of New York. The Bloomberg campaign is Bloomberg's presidential campaign committee; it is a Delaware corporation with a principal place of business in New York City, and with an office in Brookline, Massachusetts. The defendants do not challenge this court's exercise of jurisdiction over the Bloomberg campaign.

With respect to Bloomberg himself, the complaint alleges only that "Bloomberg, *through his campaign*, made an unusual promise in hiring these staff members: it guaranteed them a job on the campaign through November 2020, regardless of how . . . Bloomberg fared in the primary election." Complaint, par. 11 (emphasis added). The complaint then clarifies that "[t]he Bloomberg campaign made this promise to all staff that they would remain employed through the general election." Complaint, par. 14.

"[J]urisdiction over a corporation does not automatically secure jurisdiction over its officers[;] . . . active entrepreneurial or managerial conduct in the State where jurisdiction is asserted[, however,] will cause jurisdiction to attach." <u>Kleinerman</u> v. <u>Morse</u>, 26 Mass. App. Ct. 819, 824 (1989). Not only does the complaint not allege that Bloomberg was an officer of the Bloomberg campaign, but it also does not allege that Bloomberg engaged in "active entrepreneurial or managerial conduct" in Massachusetts. See <u>Kleinerman</u>, 26 Mass. App. Ct. at 824; see also Hayden Horowitz Declaration, par. 4 (attesting that Bloomberg was not "an officer . . . of the [c]ampaign"). Therefore, jurisdiction cannot attach to Bloomberg himself through the Bloomberg campaign's action of making this promise. See <u>id.</u>

4

Additionally, "'[j]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him[.]'" Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., 901 F. Supp. 2d 255, 263 (D. Mass. 2012) (alterations in original), quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). "On the other hand, 'status as [an] employee[] does not somehow insulate [that individual] from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.'" Id. (alterations in original), quoting Calder v. Jones, 465 U.S. 783, 790 (1984). The court must therefore determine "whether there is an independent basis for jurisdiction based on an individual's actions, regardless of the capacity in which those actions were taken." Id. As the Bloomberg campaign made this promise, and not Bloomberg himself, Bloomberg took no action that provides an "independent basis for jurisdiction . . . ." See Rissman Hendricks & Oliverio, LLP, 901 F. Supp. 2d at 263; see also Hayden Horowitz Declaration, par. 4 (attesting that Bloomberg was not "an employee of the [c]ampaign"). Additionally, in her Declaration, Katherine Sayers attests that "Bloomberg visited Massachusetts only twice, on December 18, 2019, and February 26, 2020, according to the [c]ampaign's official schedule of events as maintained in the [c]ampaign's business records. Those campaign visits were not related to the hiring or termination of any staff member." Katherine Sayers Declaration, par. 7.

In the absence of any action Bloomberg himself took in Massachusetts, the court need not conduct the two-prong personal jurisdiction analysis. See Bulldog Investors Gen. P'ship v. Secretary of the Commonwealth, 457 Mass. 210, 215 (2010) ("For a nonresident to be subject to personal jurisdiction in Massachusetts, [1] there must be a statute authorizing jurisdiction and [2] the exercise of jurisdiction must be 'consistent with basic due process requirements mandated by

5

the United States Constitution.'" (citations omitted)).[5] The defendants' motion to dismiss the claims against Michael Bloomberg is therefore **ALLOWED**.[6]

II. **Motion to Dismiss Complaint Under Mass. R. Civ. P. 12(b)(6)**

The defendants also seek to dismiss the plaintiffs' complaint on the merits for failing to state a claim under Mass. R. Civ. P. 12(b)(6).

A. Standard of Review

A party moving to dismiss pursuant to Mass. R. Civ. P. 12(b)(6) contends that the complaint fails "to state a claim upon which relief can be granted . . . ." "'While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions . . . .'" Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (ellipses and alteration in original), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Id.

---

[5] The plaintiffs allege, and the defendants dispute, that G.L. c. 223A, § 3(a), provides the basis for exercising jurisdiction over Bloomberg. Pursuant to that provision, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this Commonwealth . . . ." G.L. c. 223A, § 3(a). "'For jurisdiction to exist under § 3(a), the facts must satisfy two requirements – the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant.'" Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 318 (2018), quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). As the plaintiffs have not made a prima facie showing of facts to establish personal jurisdiction over Bloomberg himself, see Cepeda, 62 Mass. App. Ct. at 739, and as the complaint fails to allege facts plausibly suggesting the existence of any sort of agency relationship between Bloomberg and the Bloomberg campaign, see G.L. c. 223A, § 3(a); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55-56 (1st Cir. 2002), this provision is not satisfied. See Ross v. Ross, 371 Mass. 439, 441 (1976) ("The statute's reference to 'transacting any business' does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial."); Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC, 84 Mass. App. Ct. 75, 98 (2013) (holding that "'anything but the most incidental commercial contact is sufficient'" to satisfy this provision (citation omitted)). If, as here, "the long-arm statute does not provide a basis to confer personal jurisdiction over the defendant, [courts] need not consider the constitutional question of due process." Fletcher Fixed Income Alpha Fund, Ltd., 89 Mass. App. Ct. at 720.

[6] The court notes that the plaintiffs in the four Texas federal district court cases that the defendants submitted as supplemental authority asserted their claims against the Bloomberg campaign only.

6

(ellipses and alteration in original), quoting Bell Atl. Corp., 550 U.S. at 555. At the pleading stage, then, the plaintiff must assert "factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement . . . that the plain statement possess enough heft to show that the pleader is entitled to relief." Id. (internal quotations and alterations omitted), quoting Bell Atl. Corp., 550 U.S. at 557.

B. Documents in Support of Motion to Dismiss[7]

As an initial matter, the defendants submitted a number of documents in support of their motion to dismiss: the plaintiffs' offer letters (Exhibits A-D); confidentiality agreements that were attached as exhibit A to the offer letters (Exhibit E-H); written acknowledgments that the plaintiffs had received and read the Bloomberg campaign's Code of Conduct, that was attached as exhibit B to the offer letters (Exhibits *I*-L); written acknowledgements of the plaintiffs' receipt of the Bloomberg campaign's Employee Handbook (Exhibits M-P); and the Employee Handbook (Exhibit Q). Generally, "[t]he only facts appropriate for consideration in deciding a motion to dismiss [under Mass. R. Civ. P. 12(b)(6)] are . . . those drawn from factual allegations contained within the complaint or within attached exhibits." Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007); see Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) ("'It is a well-settled rule that when a written instrument contradicts allegations in the complaint *to which it is attached*, the exhibit trumps the allegations.'" (emphasis added) (citation omitted)); Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 173 (2014) (noting that, in reviewing motion to dismiss "court must accept plaintiff's factual allegations as true unless they are contradicted by terms of document *attached to complaint*" (emphasis added) (citation omitted)).

---

[7] The defendants attached these documents to the Declaration of Katherine Sayers, who attested to the authenticity of the documents.

7

Therefore, on a motion to dismiss, a court may not consider documents outside the complaint and its attachments without converting the case into a motion for summary judgment. See Mass. R. Civ. P. 12(b) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). One exception to this rule is "[w]here . . . the plaintiff [1] had notice of these documents *and* [2] relied on them in framing the complaint . . . ." Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004) (emphasis added). "'[M]atters of public record . . . also may be taken into account.'" Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (citation omitted).

Here, the court can infer that the plaintiffs had notice of the documents the defendants submitted, as their electronic signatures appear on Exhibits A-P, and as Exhibit Q is the Employee Handbook that they all purportedly received. See Marram, 442 Mass. at 45 n.4. With respect to whether the plaintiffs relied on these documents in framing the complaint, see id., the defendants contend that the court can consider these documents because the offer letter itself is the contract that the plaintiffs allege was breached. To the contrary, the complaint alleges only that the promise of continued employment was made orally during the hiring process and after Bloomberg suspended his campaign. The defendants themselves even acknowledge this point, stating that "[t]he alleged statements apparently all were oral; the Complaint neither attaches nor even mentions any written promise." Defendants' Motion, at 2.

As the plaintiffs neither attached these documents to their complaint nor relied on these documents in framing their complaint, the court cannot rely on them without converting this

8

matter to a motion for summary judgment.[8]  See Mass. R. Civ. P. 12(b); Marram, 442 Mass at 45 n.4.  The court declines to do so, and thus does not consider the documents that the defendants have submitted.

### C. Breach of Contract – Count II and Promissory Estoppel – Count III

In Count II, the plaintiffs allege that the Bloomberg campaign's premature termination of them and failure to pay the plaintiffs wages and benefits through November 2020 constitute a breach of contract.  In Count III, in which they allege promissory estoppel, the plaintiffs contend that they accepted positions with the Bloomberg campaign, forgoing other job responsibilities and, in many cases, relocating far from home, in reasonable reliance on the Bloomberg campaign's representation that it would employ the plaintiffs through November 2020.  The Bloomberg campaign bases its arguments that the court must dismiss these two claims on its submission of written agreements.  This argument accordingly fails, as the court declines to consider those documents.

The plaintiffs have stated claims for breach of contract and promissory estoppel.  The plaintiffs have alleged in their complaint that, in November 2020, during the hiring process,

---

[8] As the plaintiffs point out, the cases on which the defendants rely as support for considering the exhibits they submitted – Montlouis v. Pirus Networks, Inc., 2005 WL 1009523 (Mass. Super. March 15, 2005); Tinkham v. Jenny Craig, Inc., 1996 WL 1186939 (Mass. Super. April 19, 1996), reversed in part on other grounds, 45 Mass. App. Ct. 567 (1998) – arose in the context of summary judgment.  Additionally, three of the four cases that the defendants submitted as supplemental authority concerning similar cases brought against the Bloomberg campaign in the United States District Court for the Northern District of Texas also arose in the context of summary judgment.  The fourth case the defendants submitted, Scott v. Mike Bloomberg 2020 Inc., No. 20 Civ. 2261 (KPE), brought in the United States District Court for the Southern District of Texas, did arise in the context of a motion to dismiss.  There, the plaintiff's amended complaint had a video attached to it which the plaintiff alleged established that Bloomberg made public statements about continuing employment until November.  Scott Transcript, at 7, 11.  The court held that "these public statements cannot amount to a meeting of the mind sufficient to modify the express term of a written contract.  And the nature of the statements are such that they don't reference [the plaintiff] in forming agreement specifically."  Scott Transcript, at 11.  It is unclear from the transcript if the plaintiff had also attached a written agreement to her complaint, but the court did note that he could not consider the plaintiff's affidavit because it was "not referenced in the amended complaint, and the court is limited to pleadings when considering a motion to dismiss."  Scott Transcript, at 11-12.  Therefore, it is likely that, if the court did consider a written agreement, it was attached to or referenced in the plaintiff's complaint.  Regardless, the court is not bound by these federal court decisions from Texas.

9

Bloomberg campaign employees in charge of hiring promised the plaintiffs that, if Bloomberg did not win the Democratic nomination, the plaintiffs would not lose their jobs; they have also alleged that the Bloomberg campaign did not retain the plaintiffs after Bloomberg suspended his campaign in March 2020. These facts plausibly suggest that the Bloomberg campaign offered, and the plaintiffs accepted, continued employment with the campaign regardless of whether Bloomberg won the Democratic nomination, and thus state a claim for breach of contract. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016) ("To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result."); Vasconcellos v. Arbella Mut. Ins. Co., 67 Mass. App. Ct. 277, 280 (2006) ("An oral contract, like any other, requires an offer, acceptance, and consideration.").

The plaintiffs have also stated a claim for promissory estoppel as the facts in their complaint plausibly suggest that they relied on the Bloomberg campaign's promises of continued employment to their detriment, forgoing other work opportunities and relocating far from home. See Anzalone v. Administrative Office of Trial Court, 457 Mass. 647, 661 (2010) (holding that, to state claim for promissory estoppel, plaintiff must demonstrate that there was "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission"); see also Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 850 (1995) (explaining that claim for promissory estoppel "is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration"); Johnny's Oil Co., Inc. v. Eldayha, 82 Mass.

App. Ct. 705, 714 (2012) ("Detrimental reliance on an offer or a promise (also known as promissory estoppel) is a substitute for consideration. Therefore, an offer that reasonably induces the other party to act is enforceable as a contract in the same manner as any other contract to the extent necessary to avoid injustice.").

The defendants' motion to dismiss Counts II and III is consequently **DENIED**.

D. <u>Violation of the Wage Act – Count I</u>

The plaintiffs allege that the Bloomberg campaign violated the Wage Act, G.L. c. 149, § 148, by failing to pay them their promised wages and benefits since March 31, 2020. The Bloomberg campaign argues that the court must dismiss this claim because the Wage Act applies only to wages that have been earned; as the Bloomberg campaign paid the plaintiffs their wages through the date of their termination, the Wage Act claim fails. The court agrees.

"The basic purpose of the [Wage] [A]ct is to 'prevent the unreasonable detention of wages.'" Weems v. Citygroup Inc., 453 Mass. 147, 150 (2009) (citation omitted). Therefore, "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the *wages earned by him* to within six [or seven] days of the termination of the pay period during which the wages were *earned*[,]" depending on the number of days the employee worked each week. G.L. c. 149, § 148, first par. (emphasis added); see G.L. c. 149, § 150 ("An employee claiming to be aggrieved by a violation of [G.L. c. 149, § 148] . . . may . . . institute and prosecute . . . a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits").

"The word 'earn' is not statutorily defined, but its plain and ordinary meaning is '[t]o acquire by labor, service, or performance,' or '[t]o do something that entitles one to a reward or result, whether it is received or not.'" Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 492

11

(2011) (alterations in original) (citation omitted). "Where an employee *has completed* the labor, service, or performance required of him, therefore, according to common parlance and understanding he has 'earned' his wage." Id. (emphasis added). Thus, "[t]he extraordinary relief the Wage Act provides – individual liability, treble damages, and possible criminal liability – is directed at particularly egregious behavior, i.e., not paying wages for *work actually performed*, and not at other employment violations." Calixto v. Coughlin, 481 Mass. 157, 161 (2018) (emphasis added).

Massachusetts State Police Commissioned Officers Ass'n v. Commonwealth, 462 Mass. 219 (2012) ("State Police"), on which the Bloomberg campaign relies, is instructive. There, a "mandatory furlough plan . . . required" the plaintiffs, among others, "to take a prescribed number of unpaid furlough days" during a certain year. Id. at 220; see Webster's College Dictionary 541 (1991) (defining "furlough" as "to lay (an employee or worker) off from work, usu[ally] temporarily"). The plaintiffs argued that the furlough violated G.L. c. 149, § 148, as it deprived them of their wages under G.L. c. 22C, § 28A, which fixed their salaries as lieutenants and captains of the State police. Id. at 221. The Supreme Judicial Court agreed with the defendant Commonwealth that "the right to payment of 'earned' wages is secured by virtue of work or service *actually performed*." Id. at 225 (emphasis added). Thus, "the plaintiffs did not 'earn[]' the money to which they claim they [were] entitled pursuant to G.L. c. 22C, § 28A, because the furlough plan applied prospectively and did not force the plaintiffs to forfeit retrospectively any wages 'earned' from days they had already worked." Id. (first alteration in original). "[A] prospective reduction in the number of days to be worked does not deprive the plaintiffs of any wages 'earned.'" Id. at 226.

12

The Court therefore rejected the "argument that the deprivation of wages they *would or should have earned* was the deprivation of 'earned wages' under the Wage Act." Calixto, 481 Mass. at 160-161 (emphasis added), citing State Police, 462 Mass. at 226. Moreover, "not only must the employees' work actually have been performed, but the wages also must be presently – not just prospectively or potentially – due to be paid by the employer." Id. at 161, citing State Police, 462 Mass. at 225; see, e.g., Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 69 & n.7 (2009) (noting that "'vacation time promised to an employee is compensation for services which vests as the employee's services are rendered'" and holding that "when an employer does provide for paid vacation and an employee is entitled to paid vacation under the terms of an employment agreement, the entitlement is another form of compensation, and *becomes 'due' day by day as the employee performs his or her duties*. It can be lost by disuse, but if an employee is 'discharged from . . . employment,' the value of the vacation benefit *earned up to that date* and that would still be available if the employee remained at the job must be 'paid in full on the day of his discharge'" (emphasis added) (ellipses in original) (footnote and citations omitted)); Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 603 (2003) (rejecting plaintiff's argument that "severance pay was a bargained-for component of his wage package" and thus "governed by the [W]age [A]ct[,]" because plaintiff's "severance pay was *not earned but contingent* upon severance" (emphasis added)).

Here, the Bloomberg campaign paid the plaintiffs their wages up to the date of their termination, March 31, 2020, and the plaintiffs seek payments for "promised wages" from the date of their termination through November 2020. As defined above, these wages were not "earned" because the plaintiffs had not completed any service or performance entitling them to payment; their termination, in essence, resulted in a prospective termination of wages, and the

13

deprivation of wages they allegedly would or should have earned but for their termination does not constitute a violation of the Wage Act.[9] See Calixto, 481 Mass. at 160-161; see also State Police, 462 Mass. at 225-226; Awuah, 460 Mass. at 492. The defendants' motion to dismiss Count I is accordingly **ALLOWED**.

## ORDER

The defendants' motion to dismiss Count I is **ALLOWED**; their motion to dismiss Counts II and III is **DENIED**; and their motion to dismiss Counts I, II, and III against Michael Bloomberg is **ALLOWED**.

*[signature]*
Patrick M. Haggan
Justice of the Superior Court

DATE: July 1, 2021

---

[9] Parker v. Enernoc, Inc., 484 Mass. 128 (2020), on which the plaintiffs rely, is not to the contrary. At issue in that case was unpaid commissions, which the Wage Act requires "to be paid when two conditions are met: (1) the amount of the commission 'has been definitely determined'; and (2) the commission 'has become due and payable.'" Id. at 133, quoting G.L. c. 149, § 148, fourth par.; see id. (expressly "contrast[ing] other forms of wages which, "*once earned*, are to be paid on a regular schedule" (emphasis added) (citing G.L. c. 149, § 148, first par.)). The Supreme Judicial Court considered whether earned "commissions that are not yet due may nonetheless constitute lost wages if the employer's violations of the [Wage] [A]ct prevent payment of those commissions." Id. at 135. The Court concluded that "[t]he retaliation, which took the form of terminating the plaintiff, had the effect of depriving the plaintiff of her right to be paid a commission under . . . [part of the employer's commission policy]. . . . [A]s a result of the retaliation, the plaintiff did not receive wages she otherwise would have received." Id. at 135-136; see id. at 136 n.12 (noting that "defendants' retaliatory termination of the plaintiff became the sole cause of the plaintiff's losing her . . . commission. . . . [That] commission was a wage that the plaintiff lost solely because of the defendants' retaliation").