UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DONNA WOOD, et al., individually and
on behalf of all others similarly situated,

               Plaintiffs,

   -v-                                        No.  1:20-CV-2489-LTS-GWG

MIKE BLOOMBERG 2020, INC.,

               Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this action, Plaintiffs Donna Wood, Caelan Doherty, Max Goldstein, Bridget Logan, James Kyle Newman, Zia Oram, Alan Robinson, and Alexandra Marie Wheatley-Diaz ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this collective and putative class action against Mike Bloomberg 2020, Inc. (the "Campaign"), asserting claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, <u>et</u> <u>seq.</u>, and also asserting claims for fraudulent inducement and promissory estoppel.  (<u>See</u> docket entry no. 86 (the "Second Amended Complaint" or the "SAC").)  The Second Amended Complaint asserts additional state wage and hour law claims against the Campaign, on behalf of  Cheryl Baldwin, Jonathan Barrio, Desmond Batts, Garrett Beckenbaugh, Cochiese Bowers, Miles Ceplecha, Robin Ceppos, Melinda Cirilo, Jane Conrad, Robert Cordova Jr., Christine Doczy, Rachel Douglas, Theresa Edwards, Eliza Fink, Jason Finkelstein, Ilse Mendez Fraga, Josh Fredrickson, Maria Gonzalez, Nathaniel Robert Groh, Brandi Harris, Peter Kamara, Mack Kennedy, Madison Oliver Mays, Patrick McHugh, Paul Monterosso, Rey Murphy, Frida Michelle Naranjo, Joseph Nestor, Luke Nicholas, Josephine Olinger, Alec Silvester, Daniel Smith, Chris Soth, Audra Tellez, Carlos Torres, Elliott Tricotti, Gloria Tyler, Lakisha Watson-Moore, Jesse Weinberg,

Clem Wright, Anoosh Yaraghchian, and Jesus Zamora, individually and behalf of all those similarly situated.

The case is before the Court on Defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint in part, for failure to state a claim upon which relief can be granted.  (See docket entry no. 110.)  Defendant seeks the dismissal of Plaintiffs' claims for unpaid overtime compensation under the FLSA and for fraudulent inducement and promissory estoppel.  (See SAC Counts 1, 16-17.)  The Court has jurisdiction of Plaintiffs' FLSA claim pursuant to 28 U.S.C. sections 1331 and 1337 and 29 U.S.C. section 216(b), and has jurisdiction of Plaintiffs' fraudulent inducement and promissory estoppel claims pursuant to 28 U.S.C. section 1367.

The Court has reviewed and considered thoroughly all of the parties' submissions filed in connection with the motion.  For the following reasons, Defendant's motion is granted in part and denied in part.

BACKGROUND

The following factual allegations are derived from the allegations of the SAC and are taken as true for the purposes of the instant motion practice.  Certain elements of this background summary are also drawn from documents integral to the SAC that have been proffered in connection with the current motion practice.[1]

Michael Bloomberg announced his candidacy for President of the United States on November 24, 2019.  (SAC ¶ 1.)  In or around January 2020, the Campaign, began hiring Field Organizers and other employees to assist in its efforts to promote Mr. Bloomberg's

---

[1]     See infra for an explanation of what documents, beyond the complaint, the Court may consider when determining a Rule 12(b)(6) motion to dismiss.

candidacy and secure the Democratic Presidential nomination.  (Id. ¶ 2.)  Because Mr.

Bloomberg was a late entry into the Presidential race, the Campaign knew that it would be

difficult to hire sufficient staff within the time necessary in order to prepare for the Democratic

primary.  (Id. ¶ 4.)  Therefore, to incentivize individuals to apply to work for the Campaign, Mr.

Bloomberg and Campaign officials promised that employees would have guaranteed

employment, including wages and healthcare and other benefits, through November 2020.  (Id.

¶¶ 3, 5.)  Employees were promised continued employment through the general election even if

Mr. Bloomberg did not secure the Democratic nomination.  (Id. ¶ 7.)  Plaintiffs allege that these

promises were reiterated by Mr. Bloomberg at a December 2019 Campaign event in North

Carolina, by Campaign officials in public statements and media interviews, and by director-level

employees and managers via email and during interviews for prospective employees.  (Id. ¶¶ 11-

22.)

        Plaintiffs are former Campaign Field Organizers ("FOs") who accepted

employment with the Campaign between January and February 2020, foregoing alternative

employment and/or educational opportunities.  (Id. ¶¶ 81-96.)  At the initiation of their

employment, each Plaintiff signed an offer letter stipulating the terms of their employment.  (See

docket entry no. 113, Declaration of Katherine Sayers ("Sayers Decl.") ¶¶ 2-52.)  The offer

letters included the amount of compensation, and timetable for payment, that the individuals

would receive as employees of the Campaign, confirmed eligibility for the Campaign's

employee benefit plans, and specified that the Campaign would reimburse certain out-of-pocket

relocation expenses.  (See Sayers Decl., Exs. 1-51.)  The offer letters also contained the

following provision specifying the employees' at-will employment status:

> The nature of your employment at the [Campaign] is and will
> continue to be 'at will,' as defined by applicable law, meaning

> that either we or you may terminate your employment at any time,
> with or without notice and with or without cause, for any reason or
> for no reason.

(Id.)  Each offer letter contains the electronic signature of the employee and date signed.  (Id.)

As Field Organizers, Plaintiffs' primary duty was to make telephone calls on behalf of the Campaign to potential voters, promoting Mr. Bloomberg's candidacy.  (See SAC ¶¶ 59, 221.)  Plaintiffs' other core responsibilities included door-to-door canvassing and recruiting volunteers to join the Campaign's efforts.  (Id. ¶¶ 59, 70-72.)  Plaintiffs also participated in all-state conference calls led by the Campaign's Headquarters office in New York City on at least a weekly basis and communicated via email with Campaign officials daily.  (Id. ¶¶ 60, 68-69.)  Plaintiffs regularly worked in excess of 40 hours per week and did not receive overtime compensation.  (Id. ¶¶ 62-63, 81-96, 219-223.)

On March 4, 2020, Mr. Bloomberg withdrew from the 2020 Presidential race. (SAC ¶ 39.)  Beginning on or about March 9, 2020, the Campaign terminated Plaintiffs' employment.  (Id. ¶ 41.)  Plaintiffs allege that their terminations breached the Campaign's promise of continued employment, pay, and benefits through November 2020.  (Id. ¶¶ 47-49.) They allege that they were damaged "by losing their jobs with the Campaign. . . losing their income, and losing their healthcare and other benefits" in addition to "leaving their [prior] jobs" in order to work for the Campaign.  (Id. ¶¶ 420, 423; see also id. ¶¶ 428, 430-431 (seeking damages related to reliance on promises of employment and "employer-paid healthcare and other benefits").)

Based on the Campaign's alleged failure to pay overtime compensation, to which Plaintiffs allege they were entitled under the FLSA, and the alleged harms stemming from their terminations in March 2020, Plaintiffs bring this action on behalf of themselves and all others similarly situated, asserting claims under the FLSA and for fraudulent inducement and

promissory estoppel.  Plaintiffs seeks declaratory and monetary relief, including unpaid overtime pay and compensatory and punitive damages.

D<small>ISCUSSION</small>

In the SAC, Plaintiffs assert three causes of action pertinent to the motion before the Court.  Plaintiffs assert that Defendant failed to pay Plaintiffs and other similarly situated individuals overtime wages to which they were entitled under the FLSA.  Plaintiffs also assert claims for fraudulent misrepresentation and promissory estoppel premised on their allegation that Defendant falsely promised them continued employment through November 2020 but reneged on that promise when it terminated their employment in March 2020.

Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the SAC in part for failure to state a claim, arguing that: 1) Plaintiffs were not entitled to overtime wages under the FLSA because the FLSA does not apply to the Campaign, nor does it apply to Plaintiffs individually as employees of the Campaign; 2) Plaintiffs' claims for fraudulent inducement and promissory estoppel are precluded as a matter of law because Plaintiffs were at-will employees of the Campaign; and 3) if not precluded as a matter of law from asserting fraudulent inducement and promissory estoppel claims, Plaintiffs have nevertheless failed to plausibly allege such claims.

Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the

Second Amended Complaint and draws all reasonable inferences in the nonmoving party's favor.

Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

        In determining a Rule 12(b)(6) motion to dismiss, the Court may consider "the

complaint, any exhibit attached to the complaint, materials incorporated in the complaint by

reference, and documents that, 'although not incorporated by reference, are "integral" to the

complaint.'"  Jasper & Black, LLC v. Carolina Pad Co., No. 10-CV-3562-LTS, 2012 WL

413869, at *4 (S.D.N.Y. Feb. 9, 2012) (quoting Schwartzbaum v. Emigrant Mortg. Co., No. 09-

CV-3848-SCR, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010)).  Even if a plaintiff

"'chooses not to attach to the complaint or incorporate by reference a [document] upon which it

solely relies and which is integral to the complaint,' the court may nevertheless take the

document into consideration in deciding the defendant's motion to dismiss without converting

the proceeding to one for summary judgment."  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel.

Co., 62 F.3d 69, 72 (2d Cir. 1995) (citation omitted).

Consideration of Documents as Integral to the Complaint

        In support of the Campaign's motion to dismiss the Second Amended Complaint,

Defendant has proffered the Declaration of Katherine Sayers ("Sayers Declaration") and 95

accompanying attachments as exhibits.  (See docket entry nos. 113 and 113-1.)   The documents

attached to the Sayers Declaration include individual offer letters of employment with their

corresponding attachments, executed by each of the Plaintiffs, as well as such documents

executed by the plaintiffs who assert claims under state wage and hour laws in the Second

Amended Complaint.  (See Sayers Decl., Exs. 1-50.)  The attachments also include a copy of the

Campaign's Employee Handbook with forms acknowledging receipt of the Handbook executed

by each of the Plaintiffs and the individuals bringing claims under state wage and hour laws in

the Second Amended Complaint.  (See id., Exs. 51-95.)  Plaintiffs argue that the Court may not

consider the documents attached to the Sayers Declaration because they are not referenced in the

Second Amended Complaint and Plaintiffs did not rely on the documents in drafting their

allegations.  (See docket entry no. 113 ("Pl. Mem.") at 7, n.1.)

        Having considered Plaintiffs' arguments carefully, the Court finds it may consider

the signed offer letters of employment submitted by Defendant and attached as exhibits to the

Sayers Declaration in connection with the pending motion to dismiss.  Although Plaintiffs

neither attached these documents to the Complaint, nor referenced the offer letters explicitly in

their allegations, Plaintiffs had notice of these documents and relied on the "terms and effect of"

these documents "in drafting the [C]omplaint."  Chambers v. Time Warner, Inc., 282 F.3d 147,

153 (2d Cir. 2002).  Plaintiffs are seeking to recover unpaid wages for hours they worked for the

Campaign under the FLSA.  (SAC ¶ 67.)  In support of their claims, they repeatedly allege that

"[w]hile employed by the Campaign," each individual plaintiff was "paid" a certain dollar

amount per month by the Campaign and "received health insurance and other employee

benefits."  (Id. ¶ 81; see, e.g., id. ¶¶ 81-179.)  For example, Plaintiff Donna Wood alleges that the

"Campaign paid [her] $6,000 a month and she received health insurance and other employee

benefits."  (Id. ¶ 82.)  These allegations embody the terms of her offer letter from the Campaign,

which specified that Plaintiff Wood would "be compensated at the rate of $3,000.00 semi-

monthly" and would "be eligible to participate in all employee benefits plans . . . ."  (Sayers

Decl., Ex. 1.)  In addition, Plaintiff Wheatley-Diaz alleges that the "Campaign . . . did not timely

pay" her, as "she did not receive her first paycheck until mid-February" despite the fact that she

began working in mid-January.  (Id. ¶ 96.)  Ms. Wheatley-Diaz's offer letter specifies the agreed-

upon term that her "compensation shall be payable biweekly or bimonthly."  (Sayers Decl., Ex.

8.)  Because the offer letters form the basis for Plaintiffs' claims seeking to recover unpaid wages and benefits, and Plaintiffs refer to the terms of the offer letters in their allegations, the Court finds that the offer letters are, if not incorporated by reference, then integral to Plaintiffs' claims and properly considered in connection with the motion to dismiss.  See, e.g., Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co., 530 F. Supp. 3d 447, 451 (S.D.N.Y. 2021) (considering insurance policy at issue, even though "Plaintiff did not attach a copy of the insurance policy to its Second Amended Complaint," because "Plaintiff relie[d] on the terms of the written policy throughout the Second Amended Complaint"); EQT Infrastructure Ltd. v. Smith, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012) (finding that Court could consider letter of intent on the pending motion to dismiss because complaint "refer[red] to and quote[d] from the letter of intent, thus incorporating it"); Veliz v. Collins Bldg. Servs., Inc., No. 10-CV-06615-RJH, 2011 WL 4444498, at *1, n.2 (S.D.N.Y. Sept. 26, 2011) (considering collective bargaining agreement in connection with motion to dismiss because complaint "is based entirely on [Plaintiff's] employment relationship . . . of which the CBA is an integral part").

Plaintiffs' decision to "[c]arefully avoid[]" explicit mention of the offer letters "does not make them any less integral to [the] complaint." Yak v. Bank Brussels Lambert, 252 F.3d 127, 130-31 (2d Cir. 2001); Chen v. Antel Communc'ns, LLC, 653 F. App'x 43 (2d Cir. 2016) (affirming considering of Employment Agreement despite fact that the plaintiff did not specifically refer to it in the complaint); Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (explaining that consideration of extrinsic documents at motion to dismiss stage generally occurs when the document is a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").  Nor do Plaintiffs' conclusory

arguments in their memorandum of law, that they "have not had the opportunity to cross

examine" the documents and that the parties disagree as to the impact of the documents at issue

on their substantive claims, preclude the Court's consideration of the letters.  Plaintiffs do not

allege or argue that their signatures were falsified on the documents, or that the agreements were

never formed.  Rather, Plaintiffs' objections center on the extent to which the terms of the offer

letters affect the merits of their claims, namely whether the at-will employment provision

precludes their claims for fraudulent inducement and promissory estoppel.  These arguments on

the merits do not frame a dispute "regarding the authenticity or accuracy" of the documents or

create a "material disputed issue[] of fact regarding the relevance of the document[s]."  Faulkner

v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

                For essentially the same reasons, the Court will consider the Campaign's

Employee Handbook and the accompanying acknowledgement forms signed by the Plaintiffs

and attached as exhibits to the Sayer Declaration in connection with the motion to dismiss.  (See

Sayers Decl., Exs. 51-95.)  The Employee Handbook contains information regarding the

Plaintiffs' employment relationships with the Campaign, including reimbursement of certain

business expenses and other benefits, the terms of which were relied upon by Plaintiffs in

drafting the Second Amended Complaint.  (See SAC ¶ 96 ("The Campaign also failed to provide

Plaintiff Wheatley-Diaz with adequate meal or rest breaks and failed to reimburse her for all

necessary expenditures that she incurred in the discharge of her duties, including gas, routine car

maintenance, parking and insurance."); id. ¶ 110 ("The Campaign did not provide Plaintiff

Ceppos with adequate meal or rest breaks and did not reimburse her for all necessary

expenditures . . . such as travel expenses.").)

Federal Wage and Hour Law Claim: First Cause of Action

In their first cause of action, Plaintiffs assert a claim against Defendant for denial of overtime pay in violation of the FLSA, alleging that they regularly worked more than 40 hours per week during their employment with the Campaign and were not compensated for such excess hours.  (SAC ¶¶ 62-63, 222-23.)  Defendant moves to dismiss Plaintiffs' claim for unpaid overtime compensation under section 207(a)(1) of the FLSA, arguing that the Campaign was not subject to that statute.

Section 207(a)(1) of the FLSA provides that, subject to exceptions not invoked here, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C.A. § 207(a)(1) (Westlaw through P.L. 117-102).  "An employer is subject to [29 U.S.C.] § 207(a) coverage either (1) if the employer was an enterprise engaged in commerce or in the production of goods for commerce regardless of whether the plaintiff was so engaged, or (2) if an employee individually was engaged in commerce or in the production of goods for commerce."  Kuhnmuench v. Phenix Pierre, LLC, No. 16-CV-9162-LTS, 2018 WL 1357383, at *4 (S.D.N.Y. Mar. 15, 2018) (quoting Jones v. SCO Family of Servs., 202 F. Supp. 3d 345, 349 (S.D.N.Y. 2016) (citing 29 U.S.C. § 207(a)(1))).  These are commonly referred to as the "enterprise" and "individual" theories of coverage, respectively.  Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009) (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n. 8 (1985)).  The Supreme Court has "consistently construed the [FLSA] liberally to apply to the furthest reaches consistent with congressional direction" given

that "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." <u>Alamo</u>, 471 U.S. at 296 (internal quotations and citations omitted).

       Here, Defendant argues that neither theory of coverage applies, and that the Campaign was not required to pay overtime wages under 29 U.S.C. section 207(a)(1).  Turning first to the individual theory of coverage, because Plaintiffs do not allege or argue that they were engaged in the production of goods for commerce, the question of whether they were individually subject to the overtime compensation requirement turns on whether Plaintiffs were, as a matter of law, "engaged in commerce."  (<u>See</u> Pl. Mem. at 28-29 (citation omitted).)  The FLSA defines "commerce" as including interstate communication.  <u>See</u> 29 U.S.C.A. § 203(b) (Westlaw through P.L. 117-102).  Employees are "engaged in commerce" when they "'perform[] work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence)' among the several States."  <u>Balderas v. Barmadon Mgmt., LLC</u>, No. 17-CV-7489-GHW, 2019 WL 1258921 , at *3 (S.D.N.Y. Mar. 19, 2019) (quoting 29 C.F.R. § 779.103).  As is pertinent to this dispute, an employee "is engaged in commerce when regularly using the mails and telephone for interstate communication, or when regularly travelling across state lines while working."  <u>Bowrin v. Catholic Guardian Soc'y</u>, 417 F. Supp. 2d 449, 465 (S.D.N.Y. 2006).  <u>De minimis</u> interstate activities are insufficient to invoke coverage under the FLSA.  <u>Id.</u> at 466.  Instead, to be "engaged in commerce, a substantial part of the employee's work must be related to interstate commerce."  <u>Id.</u> (quoting <u>Boekemeier v. Fourth Universalist Soc'y</u>, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)).

       Plaintiffs argue that they have sufficiently alleged that they were "engaged in commerce" because they plead that they used the instrumentalities of interstate commerce to (1) participate in weekly all-state conference calls led by the Campaign's New York City

headquarters; (2) communicate daily via email with Campaign officials in the Campaign's New York City headquarters; and (3) call prospective voters across state lines, including through the use of an auto-dialer that "regularly connected them with prospective voters across state lines." (SAC ¶¶ 68-72; Pl. Mem. at 28-29.)  Plaintiffs further allege that calling prospective voters was one of their "primary duties" and they "regularly used telephones" to communicate with these voters across state lines.  (SAC ¶¶ 59, 70.)  Plaintiffs also allege that they directed attendees at Campaign events to the Campaign's online store to purchase Campaign merchandise.  (Id. ¶ 209.)  Plaintiffs contend that their allegations are sufficient to show at the pleading stage that the Campaign was subject to the overtime payment obligations specified in section 207(a)(1) of the FLSA.

Defendant argues that these interstate communications are insufficient to demonstrate individual coverage under the FLSA because "the indisputable purpose of the communications was to advance the campaign, not to conduct business."  (Docket entry no. 111 ("Def. Mem.") at 14.)  "To the extent [Defendant] relies on the non-business/not-for-profit nature of the employer's activities to support its position that plaintiffs are not covered on an individual basis, it is conflating the separate inquiries that apply to enterprise versus individual coverage." Bowrin, 417 F. Supp. 2d at 467.  Although it is well settled that the employer must operate with a "business purpose" to be considered an enterprise under the FLSA,[2] any employee "engaged in commerce" will be covered by the FLSA "irrespective of whether his employer is an enterprise engaged in commerce."  Bowrin, 417 F. Supp. at 464-65; see also Thompson v. Hyun Suk Park, No. 18-CV-6-AMD-ST, 2019 WL 1299194, at *5 (E.D.N.Y. Mar. 5, 2019) ("[U]nlike for

---

[2]     See 29 U.S.C. § 203(r)(1) (defining "enterprise" as "the related activities performed . . . by any person or persons for a common business purpose. . . ."); see e.g., Jones, 202 F. Supp. 3d at 349 (citing id.).

enterprise coverage, the court must 'focus on the activities of the employees and not on the

business of the employer' in determining whether the plaintiff qualifies for individual coverage."

(citation omitted)), report and recommendation adopted, No. 18-CV-6-AMD-ST, 2019 WL

1298563 (E.D.N.Y. Mar. 20, 2019).

The authorities upon which Defendant relies are not in tension with the

proposition that individual employee activities need not be conducted for business purposes to

implicate coverage under the FLSA.  Defendant relies extensively, for example, on the Second

Circuit's decision in Divins v. Hazeltine Elecs. Corp., 163 F.2d 100 (2d Cir. 1947).  (See Def.

Mem. at 16.)  There, as Defendant acknowledges, the court found that armed cargo transport

vessels moving goods or persons that would be "devoted to the war effort after arrival at

destination" could properly be considered "instrumentalities of commerce" and that the

employees who maintained them could be "engaged in commerce" and covered under the FLSA.

Divins, 163 F.2d at 102-103 (reversing dismissal of plaintiffs' claims on summary judgment and

remanding for further proceedings).  The court differentiated these individuals from employees

who did not interact with instrumentalities of interstate commerce and instead only maintained

"war vessels" that solely operated in the "prosecution of [] war."  (Id.)  Here, Plaintiffs have

alleged that they utilized instrumentalities of interstate commerce, namely telephones and

computers, as part of their duties.  See, e.g., Jacobs, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007),

aff'd 577 F.3d 93 (2d Cir. 2009) ("[A]n employee could be engaged in commerce by regularly

using the mail or the telephone between states."); Jian Long Li v. Li Quin Zhao, 35 F. Supp. 3d

300 (E.D.N.Y. 2014) (explaining that  coverage extends to plaintiffs who work "'in activities so

closely related to . . . commerce, as to be considered a part of it,' e.g., regular[] use [of] the

mails, telephone or telegraph for interstate communication" (quoting 29 C.F.R. § 779.103)

(emphasis in original)); <u>United States v. Le</u>, 902 F.3d 104, 112 (2d Cir. 2018) ("[T]he internet[]

[is] routinely recognized by this court as an instrumentality of interstate commerce.")

Defendant also relies heavily on the holding of the Tenth Circuit Court of Appeals

in <u>Reagor v. Okmulgee Cty. Family Resource Ctr., Inc.</u>, 501 F. App'x 805, 810 (10th Cir. 2012)

that the plaintiff's alleged assistance to domestic violence and sexual assault victims to "obtain

cellular telephone service or upgrade existing service" was insufficient to support coverage under

the FLSA because the plaintiff "provided that help as part of the charitable activities [of the

defendant], not as a competitor in the cellular telephone business."  (<u>See</u> Def. Mem. at 15-16.)

Here, by contrast, Plaintiffs allege that they personally used instrumentalities of interstate

commerce to communicate information with voters, not that they assisted in helping other

persons improve their access to the instrumentalities of interstate commerce.  Indeed, the court in

<u>Reagor</u> reiterated the rule that a plaintiff can plausibly plead individual coverage under the FLSA

through "recurrent[] use of [of] an instrument of interstate commerce, such as a telephone" and

merely found that the plaintiff in that case failed to allege that "her use of the telephone was a

regular and recurrent part of her duties or that she used the telephone for interstate

communications."  <u>Reagor</u>, 501 F. App'x at 809-10.[3]

Thus, at this stage of the proceedings, Plaintiffs' account of their job

responsibilities, read in the light most favorable to them, plausibly demonstrates that they were

"engaged in commerce" under the FLSA and entitled to overtime compensation for their work

performed in excess of 40 hours per week.  Plaintiffs allege that they used the telephone "to

---

[3]        Defendant also points the Court to <u>Kitchings v. Fla. United Methodist Children's Home,
Inc.</u>, 393 F. Supp. 2d 1282, 1292 (M.D. Fla. 2005), but its outcome is not instructive as to
the current action.  The plaintiffs in that case offered "neither evidence nor argument" in
support of their claim of individual coverage under the FLSA in opposing the defendant's
motion for summary judgment.  (<u>See</u> Def. Mem. at 15.)

communicate across state lines with prospective voters," "regularly[,]" as part of their "primary duties" to "promote Mr. Bloomberg's candidacy."  (SAC ¶¶ 59, 68-72, 242.)  This included the "daily" use of an "auto-dialer" that connected them with voters "across state lines."  (Id. ¶¶ 70-72.)  Plaintiffs further allege that they used telephones to "communicate multiple times a week" with Campaign officials at the New York headquarters including through "nationwide telephone conference calls" (see id. ¶ 69), as well as "daily" email communications.  (Id. ¶ 68.)  Although the legal standards as to when interstate activity is more than "sporadic or occasional" and thus supports coverage under the FLSA remains somewhat unclear, see Boekemeier, 86 F. Supp. 2d at 287, Plaintiffs' allegations that they utilized instrumentalities of commerce daily with voters "across state lines" as part of their "primary job duties" are sufficient at the motion to dismiss stage.  (SAC ¶¶ 59, 70, 221); see, e.g., Boekemeier, 86 F. Supp. 2d at 287-88 (finding plaintiff's "recurrent and frequent purchases of goods" from at least five out-of-state vendors sufficient to plead individual coverage under the FLSA); cf., e.g., Remmers v. Egor, 332 F.2d 103, 104 (2d Cir. 1964) (finding "two isolated instances" of wrapping a package or packages shipped interstate and making an interstate delivery insufficient to invoke FLSA coverage); Jones, 202 F. Supp. 3d at 351 (dismissing allegations of individual coverage where plaintiff provided "no information about the frequency" of her interstate contacts).

For these reasons, the Court denies Defendant's motion insofar as it seeks dismissal of Plaintiffs' claim for overtime compensation under the FLSA as articulated in the Second Amended Complaint.  Given that the Court has found that Plaintiffs have plausibly stated a claim for individual coverage under the FLSA, the Court declines to address the parties' arguments as to whether Plaintiffs have adequately pled that enterprise coverage under the FLSA also existed.

Fraudulent Inducement Claim: Sixteenth Cause of Action

Plaintiffs assert that Defendant made a series of false statements concerning the intended duration of their employment that induced them to accept or continue employment with the Campaign.  Defendant moves to dismiss Plaintiffs' fraudulent inducement claim, arguing that Plaintiffs' at-will employment status precludes their claim and, in the alternative, that Plaintiffs have failed to plead the elements of a fraudulent inducement claim adequately.

The Court first turns to Defendant's argument that Plaintiffs' at-will employment status is fatal to their fraudulent inducement claim.  Although Plaintiffs do not allege that they were employees at-will in their Second Amended Complaint, the signed offer letters of employment, which, as noted above, are integral to their claims, specify that Plaintiffs' employment status was at will.  (See Sayers Decl., Exs. 1-50.)  Each Plaintiff countersigned an offer letter of employment that stated: "[t]he nature of your employment at the Organization is and will continue to be 'at will,' as defined by the applicable law, meaning that either we or you may terminate your employment at any time . . . for any reason or for no reason."  (See id.)

Defendant argues that Plaintiffs' at-will employment status precludes their claim for fraudulent misrepresentation because, under New York law,[4] at-will employees cannot reasonably rely on oral promises of continued employment.  Defendant is correct that "claims of fraudulent inducement based on future promises of continued employment in an at-will employment context are not cognizable" under New York law, Deluca v. Bank of Tokyo-

---

[4]     Defendant relies on the confidentiality agreement attached to each signed offer letter of employment to support their argument that New York law applies.  (Def. Mem. at 17 n.12.)  Plaintiffs do not contest the application of New York law to the dispute and they also advance arguments based on New York law in their memorandum of law.  "An agreement between the parties to apply New York law, even where that agreement is implicit, is sufficient to establish the appropriate choice of law."  Hamilton Specialty Ins. Co. v. Kinsale Ins. Co., No. 19-CV-5548-DLC, 2020 WL 1876358, at *3 (S.D.N.Y. Apr. 15, 2020).  Therefore, the Court will apply New York law to the dispute.

Mitsubishi UFJ, Ltd., No. 06-CV-5474-JGK, 2008 WL 857492, at *16 (S.D.N.Y. Mar. 31, 2008)

(citing Brady v. Calyon Secs. (USA), 406 F. Supp. 2d 307, 316-17 (S.D.N.Y. 2005)) because

"reliance upon a promise of future employment is unreasonable" when an employee "can be

dismissed at any time."  Id. (citing Marino v. Oakwood Care Ctr., 774 N.Y.S.2d 562, 563 (App.

Div. 2004)); see also Downey v. Adloox Inc., 238 F. Supp. 3d 514, 525 (S.D.N.Y. 2017)

(explaining representation with respect to the duration of plaintiff's employment "would not be

actionable" and "any reliance . . . on such a promise [would be] unreasonable as a matter of law"

(citation omitted)); Arias v. Women In Need, Inc., 712 N.Y.2d 2d 103, 103 (App. Div. 2000)

("Plaintiff could not establish the reasonable reliance element since the offered employment was

at-will." (citation omitted)).  Therefore, to the extent that Plaintiffs allege that the Campaign

promised them continued employment through the November 2020 election after they signed the

Campaign's offer letters specifying their at-will status (see, e.g., SAC ¶ 19 (alleging promises

made "after hire during onboarding"); id. ¶ 35 (alleging promises of guaranteed employment,

pay and benefits "[o]nce employed")), the Court agrees with Defendant that Plaintiffs' fraudulent

inducement claim is not cognizable because any reliance on the Campaign's promises of

continued employment was unreasonable as a matter of law.  See, e.g., Wurtsbaugh v. Banc of

Am. Secs. LLC, No. 05-CV-6220-DLC, 2006 WL 1683416, at *7 (S.D.N.Y. June 20, 2006)

(Because "[Plaintiff's] employment contract defined his status as that of an at-will employee[,]

[a]ny reliance on oral representations about the term of his employment was therefore

unreasonable under New York Law."); Deluca, 2008 WL 857492, at *16 ("Any reliance upon a

promise of future employment is unreasonable because an employee can be dismissed at any

time.").

Plaintiffs' Second Amended Complaint also contains allegations that promises of

guaranteed employment, pay, and benefits were made by the Campaign to prospective

employees before hire.  (See, e.g., SAC ¶ 7 ("[T]he Campaign repeatedly promised prospective employees . . . that their employment opportunities were guaranteed through November 2020.").)  Plaintiffs argue that a fraudulent inducement claim is cognizable because it "challenges [the Campaign's promise] as a ploy to induce Plaintiffs to quit their jobs, drop out of school, and/or relocate to work for the Campaign."  (Pl. Mem. at 8-9.)

Although at-will employees generally "cannot evade the bar against suing for wrongful termination by suing in tort."  Jelks v. Citibank N.A., No. 99-CV-2955-JSM, 2001 WL 50891, at *3 (S.D.N.Y. Jan. 22, 2001), in "very limited circumstances," at-will employees may recover for fraudulent statements that induced them to accept positions of employment by showing: "(1) a material false representation; (2) scienter; (3) reasonable reliance; (4) damages; and . . . (5) that the fraudulent misrepresentation was collateral or extraneous to the employment agreement."  Downey, 238 F. Supp. 3d at 525; see Hyman v. Int'l Business Machines Corp., No. 98-CV-1371-JSM, 2000 WL 1538161, at *2-3 (S.D.N.Y. Oct. 17, 2000) (finding fraudulent inducement claim cognizable where plaintiffs "do not seek to recover for their termination . . . and its consequent impact on their careers and pocketbooks, but rather allege that they were induced to leave secure positions [with their former employers] by the defendant's false representations, and that this inducement led to injuries stemming from the act of resigning").

In contrast to other situations in which courts have found the representations to be "collateral" to the employment agreement, and therefore potentially actionable, the representations here concern "the terms of the offers" made to Plaintiffs, namely the duration of their employment, which was ultimately addressed in their offer letters.  Hyman, 2000 WL 1538161, at *3-4 (representations collateral to plaintiff's employment agreement with ESC where they concerned potential contract between ESC and IBM); see also Stewart v. Jackson, 976 F. 2d 86, 88-89 (2d Cir. 1992) (representations collateral because concerned nature of the

prospective employer's law practice, including that the defendant had "recently secured a large environmental law client"); Cohen v. Avanade, Inc., 874 F. Supp. 2d 315, 323 (S.D.N.Y. 2002) (representations made as to prospective employer's capabilities collateral "insofar as the contract . . . says nothing about such matters"); Somnia, Inc. v. Change Healthcare Tech. Enabled Servs., LLC, No. 19-CV-08983-PHM, 2021 WL 639529, at *6 (S.D.N.Y. Feb. 16, 2021) (misrepresentations not "extraneous or collateral" to the contract at issue because "Plaintiff has pled issues contained within the" agreement).  Courts have recognized that "[u]nder New York law, reasonable reliance is precluded when 'an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion.'"  Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc., 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017); see also Backus v. U3 Advisors, Inc., No. 16-CV-8990-GHW, 2017 WL 3600430, at *10 (S.D.N.Y. Aug. 18, 2017) (dismissing fraudulent inducement claim where "meaningful conflict" existed between alleged oral representations and agreement); Stone v. Schulz, 647 N.Y.S.2d 822, 823 (App. Div. 1996) (affirming dismissal of claim that plaintiff "was fraudulently induced into leaving his prior employment by alleged oral representations concerning his employment by the defendant" because where "there is a 'meaningful' conflict between an express provision in a written contract and a prior alleged oral representation, the conflict negates a claim of a reasonable reliance upon the oral representation" (citation omitted)).  For these reasons, the Court finds that any portion of Plaintiffs' claim based on oral representations preceding the offer letters fails as a matter of law.

Even assuming, however, that the Court could find that any alleged false promise of guaranteed employment made prior to Plaintiffs' acceptance of employment was collateral to the offer letters, Plaintiffs' claim would still fail as a matter of law.  Plaintiffs have failed to allege, with any degree of specificity, any actual promise of guaranteed employment made to any

particular Plaintiff, and relied upon to his or her detriment, prior to their acceptance of the Campaign's offer letter.

First, to the extent Plaintiffs allege that Campaign officials made public statements and disseminated information in media interviews regarding the Campaign's infrastructure, to the effect (1) that campaign office leases were being (or were to be) signed through November 2020; (2) that the Campaign was "buil[ding] a machine" to operate through November; and (3) that a particular office is going to be "open til November" (see Pl. Mem. at 6-7; see also SAC ¶¶ 12-18), none of these statements constitute promises to employ any particular individual, let alone employ that individual for a certain duration of time.  To the extent that any Plaintiff construed these statements about general Campaign infrastructure to constitute promises of guaranteed employment through November 2020, and relied upon them, such reliance was unreasonable.

Second, to the extent that Plaintiffs allege that Campaign officials made promises of guaranteed employment through November 2020 through the interview process, those allegations similarly fail to state a plausible claim.  The alleged statements in the interview notes template, "Employment through November 2020 with Team Bloomberg (not guaranteed location you are at now)" (SAC ¶ 20), and "This will be a long primary season" (id. ¶ 21), similarly do not constitute specific promises of employment to any particular individual, let alone an employment offer for a set duration on which any of the Plaintiffs could reasonably have relied. Furthermore, a claim for fraudulent inducement must be pled with "particularity" and include allegations "that '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent'" in order to satisfy the requirements of Federal Rule of Civil Procedure 9(b).  Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (quoting

Novak v. Kasaks, 216 F. 3d 300, 306 (2d. Cir. 2000)).  Plaintiffs have failed to allege with the

requisite particularity the time and place in which any related promises were made to them

individually, including, for example, during their interviews or onboarding processes.  See, e.g.,

Beasley v. Indy Mac Bank, No. 16-CV-4629-JS-AKT, 2018 WL 1611667, at *10 (E.D.N.Y Feb.

26, 2018) (finding complaint "too generalized and conclusory to sufficiently state a claim for . . .

fraudulent inducement" where the "Complaint lacks any specific allegations regarding

statements made, dates, or representatives of Defendants with whom Plaintiff allegedly

interacted"); Obra Pia Ltd. v. Seagrape Investors LLC, No. 19-CV-740-RA, 2020 WL 5751195,

at *17 (S.D.N.Y. Sept. 25, 2020) ("[C]ourts in this Circuit have dismissed claims for fraud where

plaintiffs have failed to allege that defendants' false or misleading statements were made to

and/or relied on by plaintiffs themselves.").  Plaintiffs' argument that the Complaint "identifies

more than 60 director-level staffers who communicated the false promises to Plaintiffs, and

identifies when they did so, and if known, from where" (Pl. Mem. at 17 (citing SAC ¶¶ 23-24)),

is not supported by the pleadings, which identify "individuals that made . . . false statements"

and approximate dates and locations of such statements, but do not allege that any particular

Plaintiff was present for those interactions, or specify the content of the "false statements"

allegedly made during those interactions.  (See SAC ¶¶ 23-24.)

   Finally, to the extent that Plaintiffs make generalized allegations that the

Campaign "repeatedly promised prospective employees orally and in writing that their

employment opportunities were guaranteed through November 2020" (SAC ¶ 7), such

allegations fall far short of Rule 9(b)'s fraud pleading requirements: they do not identify the

content of the promises or the context in which they were made to any specific Plaintiff.  See,

e.g., Cohen, 874 F. Supp. 2d at 323 (dismissing fraudulent inducement claim where allegations

"identif[y] the speakers, but give[] only a general description of the statements that [Plaintiff]

contends were fraudulent and fail[] altogether to identify 'where and when the statements were made'" (citation omitted)).

Therefore, Defendant's motion to dismiss is granted with prejudice as to Plaintiffs' claim for fraudulent inducement.

Promissory Estoppel Claim: Seventeenth Cause of Action

In support of their promissory estoppel cause of action, Plaintiffs allege that Defendant clearly and unambiguously promised them continued employment, pay, and benefits through November 2020 but reneged on these promises by terminating their employment in March 2020 when Michael Bloomberg withdrew from the Presidential race.  Plaintiffs allege that they reasonably relied on these promises to their detriment by resigning from other employment and/or foregoing other employment or educational opportunities to work for the Campaign. Defendant moves to dismiss Plaintiffs' claim for promissory estoppel, arguing that claims for promissory estoppel are not recognized in the employment context under New York law and, in the alternative, that Plaintiffs have failed to state a claim.

To state a claim for promissory estoppel, a plaintiff must allege "that the [defendant] made a clear and unambiguous promise, upon which the [plaintiff] reasonably relied, to its detriment." NRP Holdings LLC v. City of Buffalo, 916 F.3d 177, 202 (2d Cir. 2019) (quotation omitted).  "Courts in this Circuit disagree regarding the extent to which New York law permits promissory estoppel claims in the employment context." Shetel Indus. LLC. v. Adin Dental Implant Sys., Inc., No. 17-CV-2505, 2021 WL 1108666, at *5-6 (E.D.N.Y. Mar. 23, 2021) (internal quotation and citation omitted); Christian v. TransPerfect Glob., Inc., No. 17-CV-5554-PKC, 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018) (concluding "promissory estoppel is not absolutely foreclosed in all circumstances that arise in the employment context").

Even if promissory estoppel claims are not entirely precluded in the employment context, however, courts have "generally applied the bar when no promise arises that is separate from an employment relationship." Shetel Indus. LLC., 2021 WL 1108666, at *5-6 (internal quotations and citation omitted). As explained above, the promises at issue here concerned the duration of Plaintiffs' employment and the payment of salary and benefits earned through such employment, and therefore were not separate from but, rather, were central to the employment relationship. See Christian, 2018 WL 4571674, at *8 (promissory estoppel claim cognizable where plaintiff alleged he was performing duties of other officers and thus his claim was "not coextensive with his employment relationship"); Joshi v. Trs. of Columbia Univ., No. 17-CV-4112, 2018 WL 2417846, at *9 (S.D.N.Y. May 29, 2018) (promissory estoppel claim cognizable where plaintiff did not invoke promissory estoppel to "seek reinstatement of his employment or benefits, but rather complains of the University's retaliation, which has stifled his 'cutting-edge research.'").

Plaintiffs have failed to plausibly allege facts framing a viable claim for promissory estoppel in the employment context, and their claim fails for additional reasons.

First, to the extent to which Plaintiffs allege that they relied on the Campaign's promises of guaranteed employment after accepting the Campaign's offer letters, Plaintiffs' promissory estoppel claim fails for the same reason as Plaintiffs' fraudulent inducement claim, namely that Plaintiffs are unable to plausibly plead reasonable reliance on Defendant's representations of continued employment when they were at-will employees of the Campaign. See e.g., Blodgett v. Siemens Indus., Inc., No. 13-CV-3194-JMA-AKT, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("As it is undisputed in this case that Plaintiffs were at-will employees, they cannot establish reasonable reliance on any oral assurances of continued employment."); Kramsky v. Chetrit Grp. LLC, No. 10-CV-2638-HB, 2011 WL 2326920, at *4 (S.D.N.Y. June 13, 2011) (noting "'at will' employment arrangement renders any reliance on a representation of

continuous employment unreasonable"); <u>Arias</u>, 712 N.Y.S.2d at 103-104 (finding promissory estoppel claim failed because plaintiff "could not establish that he reasonably relied on defendant's representations" since the "offered employment was at-will").  Plaintiffs similarly have failed to plead reasonable reliance on any alleged oral representations regarding the duration of their employment made prior to accepting the Campaign's offers of employment, because the offer letters ultimately specified that their employment was at-will and conflicted with any promise of guaranteed employment for a definite term.  <u>See</u>, <u>e.g.</u>, <u>Backus</u>, 2017 WL 3600430, at *10 (explaining reasonable reliance "precluded when an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion" (internal quotation and citation omitted)).

    Second, to the extent to which Plaintiffs allege that they relied on promises, made prior to their receipt of the offer letters specifying their at-will status, the Court finds that Plaintiffs have failed to identify a clear and unambiguous promise of guaranteed employment made to any specific Plaintiff, upon which that Plaintiff relied to his or her detriment.  The Second Amended Complaint fails to plausibly allege if and when any particular Plaintiff was promised employment for a definite term, the timeline in which any such promise preceded or accompanied the offer letter of employment, and the specific actions that were taken to the individual Plaintiff's detriment in reliance on the promise.  <u>See</u>, <u>e.g.</u>, <u>Goldberg v. Pace Univ.</u>, 535 F. Supp. 3d 180, 200 (S.D.N.Y. 2021) (dismissing promissory estoppel claim where complaint "does not plausibly plead a breach of a clear and unambiguous promise . . . or reasonable reliance").

    For these reasons, Defendant's motion to dismiss is granted with prejudice as to Plaintiffs' claim for promissory estoppel.

CONCLUSION

For the reasons discussed above, Defendant's motion pursuant to Federal Rule of

Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint is granted to the extent that

Plaintiffs' fraudulent inducement and promissory estoppel claims (Counts 16 and 17) are

dismissed with prejudice, and the motion is denied with respect to Plaintiffs' FLSA claims.  The

Court need not reach Defendant's motion in the alternative to strike the Second Amended

Complaint's class allegations because Plaintiffs' fraudulent inducement and promissory estoppel

claims are hereby dismissed.  The Court denies Plaintiffs' request for leave to amend their

allegations as to their fraudulent inducement and promissory estoppel claims because the at-will

terms of their contracts rendered reliance on the alleged representations of guaranteed continued

employment unreasonable as a matter of law, and thus any further opportunity to amend would

be futile.  (See Sklair v. Mike Bloomberg 2020, Inc., No. 20-cv-2495, docket entry no. 83.)

This case remains referred to Magistrate Judge Gorenstein for general pretrial

management.

This Memorandum Order resolves docket entry no. 110.

SO ORDERED.

Dated: March 25, 2022
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge