UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>                  v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>                  Defendant. | 20 Civ. 2489 (LTS) (GWG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO CERTIFY FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Defendant Mike Bloomberg 2020, Inc. ("Defendant" or the "Campaign") respectfully requests that this Court certify for immediate appeal, pursuant to 28 U.S.C. § 1292(b), its March 25, 2022 Opinion and Order (Dkt. 258) to the extent that it denied Defendant's motion to dismiss Plaintiffs' claims asserted in the Second Amended Class and Collective Action Complaint (Dkt. 86) ("Second Amended Complaint" or "SAC") under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. (the "FLSA").

## PRELIMINARY STATEMENT

In its Memorandum Opinion and Order issued on March 25, 2022, this Court denied Defendant's motion to dismiss Plaintiffs' FLSA claims on the sole ground that Plaintiffs plausibly alleged facts sufficient to establish individual coverage under the FLSA. Specifically, the Court held that (a) any communication by email or telephone, even solely in furtherance of the Campaign's nonprofit, political mission, was nevertheless "in commerce" within the meaning of the FLSA, and that (b) Plaintiffs' general allegations in the SAC that they regularly communicated in this way were sufficient to state a claim. On the first point, the Court distinguished the several cases which hold that interstate communication is not "in commerce" when in service to a nonprofit's principal mission, a relatively undeveloped area of FLSA case law. And in holding that Plaintiffs sufficiently alleged "regular" interstate contacts, the Court relied on generalized allegations in the SAC about Plaintiffs' job responsibilities, but found insignificant the failure of any specific Plaintiff to allege that they *personally* engaged in interstate commerce as a regular and recurrent part of their job duties.

These issues are ideal candidates for interlocutory appellate review because they turn on pure questions of law about which there is substantial ground for differences of opinion. Several other courts have drawn finer distinctions in evaluating communications by employees of

nonprofits, and other courts in this Circuit have held that similarly vague allegations about interstate telephone and email communications were insufficient to establish individual coverage under the FLSA. Moreover, a decision in Defendant's favor on appeal would materially advance the termination of this litigation, as it would result in the complete dismissal of over 400 opt-in plaintiffs—comprising 40% of the potential class and collective members in this case.

Before this case proceeds further as a class and collective action, the Court should certify its dismissal of the FLSA claims for immediate appellate review pursuant to 28 U.S.C. § 1292(b).

## BACKGROUND

Plaintiffs, former field organizers and other organizing employees of the Campaign, initiated this lawsuit on March 23, 2020. (Dkt. 1.) On May 18, 2020, Plaintiffs filed the operative Second Amended Complaint, asserting common law claims for fraudulent inducement and promissory estoppel, as well as wage-and-hour claims under the FLSA and the laws of seven states. On June 17, 2020, Defendant filed a motion to dismiss the common law and FLSA claims asserted in the SAC. (Dkts. 110-13.) The parties subsequently proceeded to engage in discovery relating to the state law wage claims. (*See* Dkts. 146, 170, 190, 192.)

On September 3, 2020, while Defendant's motion to dismiss was still pending before this Court, Magistrate Judge Gorenstein issued an Opinion and Order granting Plaintiffs' motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). (Dkt. 148.) On December 17, 2021, Magistrate Judge Gorenstein so-ordered a stipulation between the parties regarding tolling, production of potential opt-in plaintiffs' contact information, and distribution of FLSA notice. (Dkt. 211.) On January 11, 2022, Defendant produced a class list containing the contact information for approximately 1,390 potential opt-in plaintiffs. (Bloom Decl. at 2.)[1] On

---

[1] "Bloom Decl." refers to the accompanying Declaration of Elise M. Bloom.

2

January 19, 2022, Plaintiffs' counsel advised that notice had been distributed the previous day, and that the opt-in deadline was March 19, 2022. (*Id*. at 3.)

Prior to the expiration of the opt-in period on March 19, 2022, approximately 700 opt-in plaintiffs joined the putative FLSA collective by filing consent to join forms. (Bloom Decl. at 4.)[2] Altogether, there are approximately 1,030 potential class and collective members who may assert claims against the Campaign in this case. (Bloom Decl. at 5.)[3] Of those, approximately 420 individuals are only asserting FLSA claims because they did not work in one of the seven states in which Plaintiffs are asserting wage-and-hour claims under state law. (Bloom Decl. at 7.)

By Memorandum Opinion and Order dated March 25, 2022, this Court granted Defendant's motion to dismiss as to the common law claims for fraudulent inducement and promissory estoppel, but denied the motion as to the FLSA claims (the "MTD Order") (Dkt. 258). In the MTD Order, this Court held that Plaintiffs' allegations that they "regularly" used the telephone and email to communicate across state lines, and were instructed to direct potential voters to the Campaign's online merchandise store, plausibly stated a claim for individual coverage under the FLSA, irrespective of whether the communications were conducted for a business purpose. (*Id*. at 10-15.) In reaching its conclusion that Plaintiffs' account of their job responsibilities plausibly alleged that they were "engaged in commerce," the Court relied on general allegations in the SAC that were not tied to any specific Plaintiff. (*See* MTD Order at 14-

---

[2] *See* Dkts. 4, 6-7, 10, 12-15, 17-19, 22-23, 25-28, 30, 34, 38-42, 44, 46-50, 53, 61, 68-77, 81-85, 87-88, 90-91, 99-103, 108-109, 116, 120, 123, 126-29, 132, 136, 144, 150, 152-53, 158, 166, 173, 176, 196-99, 214-16, 218-28, 230-32, 234-54, and 256-57.

[3] This number consists of the approximately 700 opt-in plaintiffs and an additional 330 individuals who did not file an opt-in form but worked in one of the following seven states in which Plaintiffs are asserting wage-and-hour claims under state law: California, Illinois, Michigan, Minnesota, New York, North Carolina, and Wisconsin. (*See* SAC ¶¶ 244-414.). (Bloom Decl. at 6.)

3

15, citing SAC ¶¶ 59, 68-72, 221, 242.)  The Court did not reach the question of whether Plaintiffs had adequately pled enterprise coverage under the FLSA.  (*Id*. at 15.)

## ARGUMENT

Section 1292(b) confers upon district courts the authority to certify an appeal from an interlocutory order when: (1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion regarding the question; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Certification under Section 1292(b) is "most appropriate where it will save the parties (and the court) from unnecessary, expensive, and protracted litigation."  *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2012 WL 2952929, at *3 (S.D.N.Y. July 18, 2012) (granting motion to certify interlocutory appeal to the Second Circuit).  As set forth below, Defendant has satisfied each of the factors for immediate appeal of the MTD Order to the extent that it denied Defendant's motion to dismiss the FLSA claims.

**I.   Whether Individual Employee Activities must be Conducted for a Business Purpose Presents a Controlling Question of Law.**

"A controlling question of law is a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *In re Lehman Bros. Holdings, Inc.*, 422 B.R. 403, 406 (S.D.N.Y. 2009) (citation omitted).  Such a question is one that, "even though not resulting in dismissal, could significantly affect the conduct of the action."  *Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of N.Y. Mellon*, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) (citation omitted).  Courts have repeatedly found questions related to FLSA claims to be controlling questions of law under Section 1292(b).  *See, e.g.*, *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (certifying question of whether an unpaid intern is an "employee" covered by the FLSA); *Wang v. Hearst Corp.*, 2013

4

WL 3326650, at *2 (S.D.N.Y. June 27, 2013) (same); *Mullins v. City of N.Y.*, 2008 WL 118369, at *1–2 (S.D.N.Y. Jan. 10, 2008) (certifying question of whether police sergeants are exempt from the FLSA overtime requirements); *Ramos v. Telgian Corp.*, 2016 WL 1959746, at *2 (E.D.N.Y. May 3, 2016) (certifying question concerning application of the "fluctuating work week" method of overtime pay under the FLSA); *Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 441–42 (W.D.N.Y. 2017) (certifying question of whether plaintiff fell within an exemption to the FLSA overtime requirements); *Kuzinski v. Schering Corp.*, 614 F. Supp. 2d 247, 249–50 (D. Conn. 2009) (certifying question of whether pharmaceutical sales representatives are exempt from the FLSA overtime requirements).

Here, the MTD Order presents a pure question of law: whether activities by political campaign organizers that were not undertaken for any commercial or business purpose can establish "individual coverage" under the FLSA. This question can be decided by the appellate court quickly and cleanly without having to study the record, as the question does not require consideration of any facts or allegations apart from the Defendant's status as a nonprofit political campaign. Plaintiffs' own allegations, even if taken as true, establish that they were not engaged in any commercial activities, but solely in political advocacy. *See* SAC ¶¶ 68-73 (alleging that Plaintiffs participated in telephone calls or emails in furtherance of Mr. Bloomberg's campaign), ¶ 224 (alleging that Plaintiffs were "making phone calls nationwide to potential voters *to promote Mr. Bloomberg's candidacy* for President of the Unites States and *to recruit volunteers to aid in phone banking and canvassing efforts* for Mr. Bloomberg's Campaign") (emphasis added).

This question can also significantly affect the conduct of the litigation, as approximately 40% of the potential class and collective members in this case would no longer have any

5

conceivable claims against the Campaign if the FLSA claims were dismissed—*i.e.*, the 420 individuals who are only asserting FLSA claims in this case.

**II.    There is Substantial Ground for Differences of Opinion as to this Question.**

The second statutory requirement under Section 1292(b) is met when the question raised is "contestable." *In re Fosamax Prods. Liab. Litig.*, 2011 WL 2566074, at *5 (S.D.N.Y. June 29, 2011) (granting Section 1292(b) motion). Courts should consider whether there is conflicting authority or the issue is a difficult one of first impression for the circuit. *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).

Here, the proposed question is certainly contestable. In concluding that Plaintiffs plausibly alleged individual coverage under the FLSA, the Court held that Plaintiffs' alleged communications across states lines via email and the telephone demonstrated that they were "engaged in commerce" even if such activities were not conducted for a business purpose. (Dkt. 258 at 11-14.) The scope of the FLSA's individual coverage provision as it relates to political campaigns, and even nonprofits in general, is a question of first impression for the Second Circuit. All of the cases considering the distinctions that the Campaign pointed to arose in other Circuits; the only Second Circuit case remotely touching on relevant issues is *Divins v. Hazeltine Electronics Corp.*, 163 F.2d 100 (2d Cir. 1947), a 75-year-old case that bears on the question only indirectly. *See* Dkt. 111 at 13-16 (discussing relevant cases). The Court distinguished these cases in its March 25 decision, but the relative paucity of case law not only in this Circuit but nationally, combined with the distinction the Supreme Court drew between commercial and non-commercial activities of nonprofits in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985), make this novel question "contestable" within the meaning of 28 U.S.C. §1292(b).

Further, with respect to the Court's holding that Plaintiffs' general allegations about their collective interstate communications were sufficient to demonstrate individual coverage, other

6

courts in this Circuit "have routinely held that descriptions such as these are insufficient to demonstrate that plaintiffs were 'part of the channels of interstate commerce,' for purposes of individual coverage." *Kantor v. Air Atl. Med., P.C.*, 2021 WL 3888067, at *4 (E.D.N.Y. July 7, 2021) (collecting cases) (finding insufficient plaintiff's allegation that "as part of [his] duties, [he] regularly mailed letters to recipients in other states and would make phone calls to persons and entities outside the State of New York"); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, 2021 WL 6065744, at *7 (E.D.N.Y. Dec. 22, 2021) ("[I]t is well settled that merely making calls to entities in other states or mailing letters out of state as part of a job is not sufficient to show that an employee is engaged in interstate commerce for purposes of establishing individual coverage."). The Court also credited Plaintiffs' allegation that they were instructed to direct potential voters to the Campaign's online merchandise store (Dkt. 258 at 12, citing SAC ¶ 209),[4] but such tangential use of the internet does not demonstrate that the Plaintiffs engaged in interstate commerce. Indeed, if exchanging emails or phone calls with individuals in other states was sufficient, virtually every employee would be able to invoke individual coverage. Such a broad holding "would lead to untenable results ... [as] [i]t is difficult to imagine anyone, in this modern day and age, who does not meet this definition." *Marcus v. Lominy*, 2022 WL 493688, at *16 (S.D.N.Y. Feb. 17, 2022) (citation omitted) (finding that plaintiff's out-of-state phone and online use were insufficient to trigger individual coverage).

Moreover, the Court's holding that Plaintiffs sufficiently alleged that they "regularly" engaged in commerce under the FLSA—based on general allegations in the SAC that were not

---

[4] The MTD Order states that "Plaintiffs also allege that they directed attendees at Campaign events to the Campaign's online store to purchase Campaign merchandise" (Dkt. 258 at 12), but the SAC alleges only that Plaintiffs were "*instructed*" to engage in this activity (SAC ¶ 209). Plaintiffs do not allege that they *actually* engaged in this activity or that they did so regularly.

7

tied to any specific Plaintiff (*see* MTD Order at 14-15, citing SAC ¶¶ 59, 68-72, 221, 242)—is at odds with other Courts in this Circuit, which have required *each* plaintiff to plausibly allege facts sufficient to demonstrate individual coverage.  *See Savor Health, LLC, v. Day*, 2022 WL 912236, at *4 (S.D.N.Y. Mar. 29, 2022) (granting motion for judgment on the pleadings: "In order to determine if individual coverage of the FLSA applies, courts must examine the employment actions of each employee asserting a claim."); *Lin v. Quality Woods, Inc.*, 2021 WL 4129151, at *10 (E.D.N.Y. Aug. 10, 2021) (denying plaintiff's motion for default judgment on the ground that he failed to demonstrate individual coverage where he did not allege "that he *personally* was either engaged in commerce or in the production of goods for commerce") (emphasis in original); *Santacruz v. Blok Chocolatier LLC*, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021) (same); *see also* 29 C.F.R. § 776.10(b) (explaining that not every employee who has "*any* use" of "mails and other channels of communication" is covered but only employees whose work "involves the continued use" of instrumentalities for communication "across State lines" and use such instrumentalities for interstate communication "as a *regular and recurrent* part" of their job duties) (emphasis added).

Here, although each of the 50 named Plaintiffs made individualized allegations about how many hours they worked, they notably did not allege any facts demonstrating that they *personally* engaged in interstate commerce during those hours, much less that they did so "regularly."  (*See* SAC ¶¶ 81-179.)  Accordingly, the Court's decision to credit Plaintiffs' general allegations regarding individual coverage is certainly contestable.

### III.  An Immediate Appeal Would Materially Advance the Ultimate Termination of this Litigation.

The third prong of Section 1292(b) asks whether an immediate appeal "*may*" materially advance the termination of the litigation, not whether it *will* do so.  28 U.S.C. § 1292(b).  Here, a

8

ruling that the FLSA does not apply to organizers for a political campaign engaged in noncommercial political activities would significantly streamline this litigation, as over 400 former campaign staffers who filed opt-in forms but who did not work in one of the seven states in which Plaintiffs are asserting wage-and-hour claims under state law —comprising more than 40% of the potential class and collective members—would no longer have any claims in this case.  Because of the material impact that the proposed appeal would have on the course of this litigation, the questions raised therein should be resolved prior to final judgment.  *See Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of N.Y. Mellon*, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) ("While this action will continue irrespective of any ruling by the Court of Appeals, it may be considerably streamlined if the claims involving the twenty-five New York trusts are dismissed.").

## CONCLUSION

For the reasons set forth above, this Court should certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), its March 25, 2022 Opinion and Order to the extent that it denied Defendant's motion to dismiss Plaintiffs' FLSA claims.

Dated:  April 21, 2022

PROSKAUER ROSE LLP

*/s/ Elise M. Bloom*
Elise M. Bloom
Rachel S. Philion
Pinchos N. Goldberg

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
ebloom@proskauer.com
rphilion@proskauer.com
pgoldberg@proskauer.com

PROSKAUER ROSE LLP

9

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(T)  617.526.9850
mbatten@proskauer.com

VENABLE LLP

Nicholas M. Reiter
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(T)  212.307.5500
nmreiter@venable.com

*Attorneys for Defendant*
MIKE BLOOMBERG 2020, INC.