# EXHIBIT A

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## VIKING RIVER CRUISES, INC. *v.* MORIANA

### CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT

No. 20–1573.  Argued March 30, 2022—Decided June 15, 2022

The question for decision is whether the Federal Arbitration Act, 9
U. S. C. §1 *et seq.,* preempts a rule of California law that invalidates
contractual waivers of the right to assert representative claims under
California's Labor Code Private Attorneys General Act of 2004, Cal.
Lab. Code §2698 *et seq.*  PAGA enlists employees as private attorneys
general to enforce California labor law.  By its terms, PAGA authorizes
any "aggrieved employee" to initiate an action against a former em-
ployer "on behalf of himself or herself and other current or former em-
ployees" to obtain civil penalties that previously could have been re-
covered only by the State in an enforcement action brought by
California's Labor and Workforce Development Agency (LWDA).  Cal-
ifornia precedent holds that a PAGA suit is a "'representative action'"
in which the employee plaintiff sues as an "'agent or proxy'" of the
State.  *Iskanian* v. *CLS Transp. Los Angeles, LLC,* 59 Cal. 4th 348,
380.  California precedent also interprets the statute to contain what
is effectively a rule of claim joinder—allowing a party to unite multiple
claims against an opposing party in a single action.  An employee with
PAGA standing may "seek any civil penalties the state can, including
penalties for violations involving employees other than the PAGA liti-
gant herself."  *ZB, N. A.* v. *Superior Court,* 8 Cal. 5th 175, 185.

Respondent Angie Moriana filed a PAGA action against her former
employer Viking River Cruises, alleging a California Labor Code vio-
lation.  She also asserted a wide array of other violations allegedly sus-
tained by other Viking employees.  Moriana's employment contract
with Viking contained a mandatory arbitration agreement.  Important
here, that agreement contained both a "Class Action Waiver"—provid-
ing that the parties could not bring any dispute as a class, collective,
or representative action under PAGA—and a severability clause—

Syllabus

specifying that if the waiver was found invalid, such a dispute would presumptively be litigated in court.  Under the severability clause, any "portion" of the waiver that remained valid would be "enforced in arbitration."  Viking moved to compel arbitration of Moriana's individual PAGA claim and to dismiss her other PAGA claims.  Applying California's *Iskanian* precedent, the California courts denied that motion, holding that categorical waivers of PAGA standing are contrary to California policy and that PAGA claims cannot be split into arbitrable "individual" claims and nonarbitrable "representative" claims.  This Court granted certiorari to decide whether the FAA preempts the California rule.

*Held*: The FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.  Pp. 7–21.

   (a) Based on the principle that "[a]rbitration is strictly 'a matter of consent,'" *Granite Rock Co.* v. *Teamsters,* 561 U. S. 287, 299, this Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so," *Stolt-Nielsen S. A.* v. *AnimalFeeds Int'l Corp.*, 559 U. S. 662, 684.  Because class-action arbitration mandates procedural changes that are inconsistent with the individualized and informal mode of bilateral arbitration contemplated by the FAA, see *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333, 347, class procedures cannot be imposed by state law without presenting unwilling parties with an unacceptable choice between being compelled to arbitrate using such procedures and forgoing arbitration all together.  Viking contends that the Court's FAA precedents require enforcement of contractual provisions waiving the right to bring PAGA actions because PAGA creates a form of class or collective proceeding.  If this is correct, *Iskanian*'s prohibition on PAGA waivers presents parties with an impermissible choice: Either arbitrate disputes using a form of class procedures, or do not arbitrate at all.  Moriana maintains that any conflict between *Iskanian* and the FAA is illusory because PAGA creates nothing more than a substantive cause of action.

   This Court disagrees with both characterizations of the statute.  Moriana's premise that PAGA creates a unitary private cause of action is irreconcilable with the structure of the statute and the ordinary legal meaning of the word "claim."  A PAGA action asserting multiple violations under California's Labor Code affecting a range of different employees does not constitute "a single claim" in even the broadest possible sense.  Viking's position, on the other hand, elides important structural differences between PAGA actions and class actions.  A class-action plaintiff can raise a multitude of claims because he or she

Syllabus

represents a multitude of absent individuals; a PAGA plaintiff, by con-
trast, represents a single principal, the LWDA, that has a multitude
of claims. As a result, PAGA suits exhibit virtually none of the proce-
dural characteristics of class actions.

This Court's FAA precedents treat bilateral arbitration as the pro-
totype of the individualized and informal form of arbitration protected
from undue state interference by the FAA. See, *e.g., Epic Systems
Corp.* v. *Lewis,* 584 U. S. ___, ___. Viking posits that a proceeding is
"bilateral" only if it involves two and only two parties and "is conducted
by and on behalf of the individual named parties only." *Wal-Mart
Stores, Inc.* v. *Dukes,* 564 U. S. 338, 348. Thus, *Iskanian*'s prohibition
on PAGA waivers is inconsistent with the FAA because PAGA creates
an intrinsically representational form of action and *Iskanian* requires
parties either to arbitrate in that format or forgo arbitration alto-
gether.

This Court disagrees. Nothing in the FAA establishes a categorical
rule mandating enforcement of waivers of standing to assert claims on
behalf of absent principals. Non-class representative actions in which
a single agent litigates on behalf of a single principal necessarily devi-
ate from the strict ideal of bilateral dispute resolution posited by Vi-
king, but this Court has never held that the FAA imposes a duty on
States to render all forms of representative standing waivable by con-
tract or that such suits deviate from the norm of bilateral arbitration.
Unlike procedures distinctive to multiparty litigation, single-principal,
single-agent representative actions are "bilateral" in two registers:
They involve the rights of only the absent real party in interest and
the defendant, and litigation need only be conducted by the agent-
plaintiff and the defendant. Nothing in this Court's precedent sug-
gests that in enacting the FAA, Congress intended to require States to
reshape their agency law governing *who* can assert claims on behalf of
*whom* to ensure that parties will never have to arbitrate disputes in a
proceeding that deviates from bilateral arbitration in the strictest
sense. Pp. 7–17.

(b) PAGA's built-in mechanism of claim joinder is in conflict with the
FAA. *Iskanian*'s prohibition on contractual division of PAGA actions
into constituent claims unduly circumscribes the freedom of parties to
determine "the issues subject to arbitration" and "the rules by which
they will arbitrate," *Lamps Plus, Inc.* v. *Varela,* 587 U. S. ___, ___,
and does so in a way that violates the fundamental principle that "ar-
bitration is a matter of consent," *Stolt-Nielsen,* 559 U. S., at 684. For
that reason, state law cannot condition the enforceability of an agree-
ment to arbitrate on the availability of a procedural mechanism that
would permit a party to expand the scope of the anticipated arbitration
by introducing claims that the parties did not jointly agree to arbitrate.

Syllabus

A state rule imposing an expansive rule of joinder in the arbitral context would defeat the ability of parties to control which claims are subject to arbitration by permitting parties to superadd new claims to the proceeding, regardless of whether the agreement committed those claims to arbitration. When made compulsory by way of *Iskanian*, PAGA's joinder rule functions in exactly this way. The effect is to coerce parties into withholding PAGA claims from arbitration. *Iskanian*'s indivisibility rule effectively coerces parties to opt for a judicial forum rather than "forgo[ing] the procedural rigor and appellate review of the courts to realize the benefits of private dispute resolution." *Stolt-Nielsen*, 559 U. S., at 685. Pp. 17–19.

(c) Under this Courts holding, *Iskanian*'s prohibition on wholesale waivers of PAGA claims is not preempted by the FAA. But *Iskanian*'s rule that PAGA actions cannot be divided into individual and non-individual claims is preempted, so Viking was entitled to compel arbitration of Moriana's individual claim. PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. And under PAGA's standing requirement, a plaintiff has standing to maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. As a result, Moriana would lack statutory standing to maintain her non-individual claims in court, and the correct course was to dismiss her remaining claims. Pp. 20–21.

Reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which BREYER, SO-TOMAYOR, KAGAN, and GORSUCH, JJ., joined, in which ROBERTS, C. J., joined as to Parts I and III, and in which KAVANAUGH and BARRETT, JJ., joined as to Part III. SOTOMAYOR, J., filed a concurring opinion. BARRETT, J., filed an opinion concurring in part and concurring in the judgment, in which KAVANAUGH, J., joined, and in which ROBERTS, C. J, joined as to all but the footnote. THOMAS, J., filed a dissenting opinion.

Cite as: 596 U. S. ____ (2022) 1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order that
corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

―――――

No. 20–1573

―――――

## VIKING RIVER CRUISES, INC., PETITIONER v. ANGIE MORIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF
CALIFORNIA, SECOND APPELLATE DISTRICT

[June 15, 2022]

JUSTICE ALITO delivered the opinion of the Court.*

We granted certiorari in this case to decide whether the
Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*,
preempts a rule of California law that invalidates contrac-
tual waivers of the right to assert representative claims un-
der California's Labor Code Private Attorneys General Act
of 2004. Cal. Lab. Code Ann. §2698 *et seq.* (West 2022).

## I

### A

The California Legislature enacted the Labor Code Pri-
vate Attorneys General Act (PAGA) to address a perceived
deficit in the enforcement of the State's Labor Code. Cali-
fornia's Labor and Workforce Development Agency (LWDA)
had the authority to bring enforcement actions to impose
civil penalties on employers for violations of many of the
code's provisions. But the legislature believed the LWDA
did not have sufficient resources to reach the appropriate
level of compliance, and budgetary constraints made it im-

――――――

*THE CHIEF JUSTICE joins Parts I and III of this opinion.

Opinion of the Court

possible to achieve an adequate level of financing. The leg-
islature thus decided to enlist employees as private attor-
neys general to enforce California labor law, with the un-
derstanding that labor-law enforcement agencies were to
retain primacy over private enforcement efforts.

By its terms, PAGA authorizes any "aggrieved employee"
to initiate an action against a former employer "on behalf of
himself or herself and other current or former employees"
to obtain civil penalties that previously could have been re-
covered only by the State in an LWDA enforcement action.
Cal. Lab. Code Ann. §2699(a). As the text of the statute
indicates, PAGA limits statutory standing to "aggrieved
employees"—a term defined to include "any person who was
employed by the alleged violator and against whom one or
more of the alleged violations was committed." §2699(c). To
bring suit, however, an employee must also exhaust admin-
istrative remedies. That entails providing notice to the em-
ployer and the LWDA of the violations alleged and the sup-
porting facts and theories. §2699.3(a)(1)(A). If the LWDA
fails to respond or initiate an investigation within a speci-
fied timeframe, the employee may bring suit. §2699.3(a)(2).
In any successful PAGA action, the LWDA is entitled to 75
percent of the award. §2699(i). The remaining 25 percent
is distributed among the employees affected by the viola-
tions at issue. *Ibid.*

California law characterizes PAGA as creating a "type of
*qui tam* action,"[1] *Iskanian* v. *CLS Transp. Los Angeles,*

─────────────

[1] As we have explained, "*qui tam*" is the short form of the Latin phrase
"*qui tam pro domino rege quam pro se ipso in hac parte sequitur*"—mean-
ing "'who pursues this action on our Lord the King's behalf as well as his
own.'" *Vermont Agency of Natural Resources* v. *United States ex rel. Ste-
vens*, 529 U. S. 765, 768, n. 1(2000). *Qui tam* actions "appear to have
originated around the end of the 13th century, when private individuals
who had suffered injury began bringing actions in the royal courts on
both their own and the Crown's behalf'" and became more of a rarity as
"royal courts began to extend jurisdiction to suits involving wholly pri-
vate wrongs." *Id.,* at 774–775.

Opinion of the Court

*LLC*, 59 Cal. 4th 348, 382, 327 P. 3d 129, 148 (2014). Although the statute's language suggests that an "aggrieved employee" sues "on behalf of himself or herself and other current or former employees," §2699(a), California precedent holds that a PAGA suit is a "'representative action'" in which the employee plaintiff sues as an "'agent or proxy'" of the State. *Id.*, at 380, 327 P. 3d, at 147 (quoting *Arias* v. *Superior Court*, 46 Cal. 4th 969, 986, 209 P. 3d 923, 933 (2009)).

As the California courts conceive of it, the State "is always the real party in interest in the suit." *Iskanian*, 59 Cal. 4th, at 382, 327 P. 3d, at 148.[2] The primary function of PAGA is to delegate a power to employees to assert "the same legal right and interest as state law enforcement agencies," *Arias*, 46 Cal. 4th, at 986, 209 P. 3d, at 933. In other words, the statute gives employees a right to assert

―――――――

[2] The extent to which PAGA plaintiffs truly act as agents of the State rather than complete assignees is disputed. See *Magadia* v. *Wal-Mart Assocs., Inc.*, 999 F. 3d 668, 677 (CA9 2021) (holding that PAGA "lacks the procedural controls necessary to ensure that California" retains "substantial authority over the case" (internal quotation marks omitted)). Agency requires control. See *Hollingsworth* v. *Perry*, 570 U. S. 693, 713 (2013). But apart from the exhaustion process, the statute does not feature any explicit control mechanisms, such as provisions authorizing the State to intervene or requiring its approval of settlements.

That said, California precedent strongly suggests that the State retains inherent authority to manage PAGA actions. There is no other obvious way to understand California precedent's description of the State as the "real party in interest." See generally 1A Cal. Jur. 3d Actions §31 (real-party-in-interest status is based on ownership and control over the cause of action). And a theory of total assignment appears inconsistent with the fact that employees have no assignable interest in a PAGA claim. See *Amalgamated Transit Union, Local 1756, AFL-CIO* v. *Superior Court of Los Angeles Cty.*, 46 Cal. 4th 993, 1002, 209 P. 3d 937, 943 (2009) (Amalgamated Transit); see also *Turrieta* v. *Lyft, Inc.*, 69 Cal. App. 5th 955, 972, 284 Cal. Rptr. 3d 767, 780 (2021) (The employee's "ability to file PAGA claims on behalf of the state does not convert the state's interest into their own or render them real parties in interest"). For purposes of this opinion, we assume that PAGA plaintiffs are agents.

the State's claims for civil penalties on a representative basis, but it does not create any private rights or private claims for relief. *Iskanian*, 59 Cal. 4th, at 381, 327 P. 3d, at 148; see also *Amalgamated Transit*, 46 Cal. 4th 993, 1002, 209 P. 3d 937, 943 (2009).  The code provisions enforced through the statute establish public duties that are owed to the State, not private rights belonging to employees in their "individual capacities." *Iskanian*, 59 Cal. 4th, at 381, 327 P. 3d, at 147.  Other, distinct provisions of the code create individual rights, and claims arising from violations of those rights are actionable through separate private causes of action for compensatory or statutory damages. *Id.,* at 381–382, 327 P. 3d, at 147–148; see also *Kim* v. *Reins Int'l California, Inc.*, 9 Cal. 5th 73, 86, 459 P. 3d 1123, 1130 (2020) ("[C]ivil penalties recovered on the state's behalf are intended to remediate present violations and deter future ones, not to redress employees' injuries" (internal quotation marks omitted; emphasis deleted)).  And because PAGA actions are understood to involve the assertion of the government's claims on a derivative basis, the judgment issued in a PAGA action is binding on anyone "who would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th, at 986, 209 P. 3d, at 933.

California precedent also interprets the statute to contain what is effectively a rule of claim joinder.  Rules of claim joinder allow a party to unite multiple claims against an opposing party in a single action.  See 6A C. Wright, H. Miller, & E. Cooper, Federal Practice and Procedure §1582 (3d ed. 2016) (Wright & Miller).  PAGA standing has the same function.  An employee with statutory standing may "seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant herself." *ZB, N. A.* v. *Superior Court*, 8 Cal. 5th 175, 185, 448 P. 3d 239, 243–244 (2019).  An employee who alleges he or she suffered a single violation is entitled to use that violation as a gateway to assert a potentially limitless

Opinion of the Court

number of other violations as predicates for liability. This mechanism radically expands the scope of PAGA actions. The default penalties set by PAGA are $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. Cal. Lab. Code Ann. §2699(f)(2). Individually, these penalties are modest; but given PAGA's additive dimension, low-value claims may easily be welded together into high-value suits.

B

Petitioner Viking River Cruises, Inc. (Viking), is a company that offers ocean and river cruises around the world. When respondent Angie Moriana was hired by Viking as a sales representative, she executed an agreement to arbitrate any dispute arising out of her employment. The agreement contained a "Class Action Waiver" providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action. It also contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any "portion" of the waiver remained valid, it would be "enforced in arbitration."

After leaving her position with Viking, Moriana filed a PAGA action against Viking in California court. Her complaint contained a claim that Viking had failed to provide her with her final wages within 72 hours, as required by §§101–102 of the California Labor Code. But the complaint also asserted a wide array of other code violations allegedly sustained by other Viking employees, including violations of provisions concerning the minimum wage, overtime, meal periods, rest periods, timing of pay, and pay statements. Viking moved to compel arbitration of Moriana's "individual" PAGA claim—here meaning the claim that

Opinion of the Court

arose from the violation she suffered—and to dismiss her other PAGA claims.  The trial court denied that motion, and the California Court of Appeal affirmed, holding that categorical waivers of PAGA standing are contrary to state policy and that PAGA claims cannot be split into arbitrable individual claims and nonarbitrable "representative" claims.

This ruling was dictated by the California Supreme Court's decision in *Iskanian*.  In that case, the court held that pre-dispute agreements to waive the right to bring "representative" PAGA claims are invalid as a matter of public policy.  What, precisely, this holding means requires some explanation.  PAGA's unique features have prompted the development of an entire vocabulary unique to the statute, but the details, it seems, are still being worked out.  An unfortunate feature of this lexicon is that it tends to use the word "representative" in two distinct ways, and each of those uses of the term "representative" is connected with one of *Iskanian*'s rules governing contractual waiver of PAGA claims.

In the first sense, PAGA actions are "representative" in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State.  But PAGA claims are also called "representative" when they are predicated on code violations sustained by other employees.  In the first sense, "'*every* PAGA action is . . . representative'" and "[t]here is no individual component to a PAGA action," *Kim*, 9 Cal. 5th, at 87, 459 P. 3d, at 1131 (quoting *Iskanian*, 59 Cal. 4th, at 387, 327 P. 3d, at 151), because every PAGA claim is asserted in a representative capacity.  But when the word "representative" is used in the second way, it makes sense to distinguish "individual" PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from "representative" (or perhaps quasi-representative) PAGA claims arising out of events involving other employees.  For purposes of this

Opinion of the Court

opinion, we will use "individual PAGA claim" to refer to claims based on code violations suffered by the plaintiff. And we will endeavor to be clear about how we are using the term "representative."

*Iskanian*'s principal rule prohibits waivers of "representative" PAGA claims in the first sense. That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum. But *Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate "individual PAGA claims for Labor Code violations that an employee suffered," on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA. 59 Cal. 4th, at 383, 327 P. 3d, at 149; see also *Kim*, 9 Cal. 5th, at 88, 459 P. 3d, at 1132 (noting that based on *Iskanian*, California courts have uniformly "rejected efforts to split PAGA claims into individual and representative components").

In this case, *Iskanian*'s principal prohibition required the lower courts to treat the representative-action waiver in the agreement between Moriana and Viking as invalid insofar as it was construed as a wholesale waiver of PAGA standing. The agreement's severability clause, however, allowed enforcement of any "portion" of the waiver that remained valid, so the agreement still would have permitted arbitration of Moriana's individual PAGA claim even if wholesale enforcement was impossible. But because California law prohibits division of a PAGA action into constituent claims, the state courts refused to compel arbitration of that claim as well. We granted certiorari, 595 U. S. ___ (2021), and now reverse.

## II

The FAA was enacted in response to judicial hostility to arbitration. Section 2 of the statute makes arbitration agreements "valid, irrevocable, and enforceable, save upon

Opinion of the Court

such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2.[3] As we have interpreted it, this provision contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to "any contract." See *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333, 339–340 (2011); *Epic Systems Corp.* v. *Lewis*, 584 U. S. ___, ___–___ (2018) (slip op., at 5–6). These clauses jointly establish "an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Centers L. P.* v. *Clark*, 581 U. S. 246, 251 (2017) (quoting *Concepcion*, 563 U. S., at 339). Under that principle, the FAA "preempts any state rule discriminating on its face against arbitration—for example, a law 'prohibit[ing] outright the arbitration of a particular type of claim.'" *Kindred Nursing*, 581 U. S., at 251 (quoting *Concepcion*, 563 U. S., at 341).

But under our decisions, even rules that are generally applicable as a formal matter are not immune to preemption

––––––––––

[3] As we have noted, common-law hostility to arbitration "manifested itself in a great variety of devices and formulas." *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333, 342 (2011) (internal quotation marks omitted). Two important devices were the doctrines of ouster and revocability, which, respectively, invalidated arbitration clauses as impermissible attempts to "oust" courts of their jurisdiction and permitted parties to revoke consent to arbitrate until the moment the arbitrator entered an award. See, *e.g., Kill* v. *Hollister*, 1 Wils. K. B. 129, 95 Eng. Rep. 532 (K. B. 1746); *Vynior's Case*, 77 Co. Rep. 80a, 77 Eng. Rep. 597 (K. B. 1609). Another was the rule barring specific performance as a remedy for breach of an arbitration clause. See 21 R. Lord, Williston on Contracts §57:2 (4th ed. 2017). Section 2 abrogated these doctrines by making arbitration agreements presumptively "valid," "irrevocable," and "enforceable."

Opinion of the Court

by the FAA. See *Lamps Plus, Inc.* v. *Varela*, 587 U. S. ___, ___ (2019) (slip op., at 6); *Concepcion*, 563 U. S., at 343. Section 2's mandate protects a right to enforce arbitration agreements. That right would not be a right to *arbitrate* in any meaningful sense if generally applicable principles of state law could be used to transform "traditiona[l] individualized . . . arbitration" into the "litigation it was meant to displace" through the imposition of procedures at odds with arbitration's informal nature. *Epic Systems*, 584 U. S., at ___ (slip op., at 8). See also *Concepcion*, 563 U. S., at 351. And that right would not be a right to arbitrate based on an *agreement* if generally applicable law could be used to coercively impose arbitration in contravention of the "first principle" of our FAA jurisprudence: that "[a]rbitration is strictly 'a matter of consent.'" *Granite Rock Co.* v. *Teamsters*, 561 U. S. 287, 299 (2010) (quoting *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 479 (1989)); see also *Lamps Plus*, 587 U. S., at ___ (slip op., at 7); *Stolt-Nielsen S. A.* v. *AnimalFeeds Int'l Corp.*, 559 U. S. 662, 685 (2010).

Based on these principles, we have held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.*, at 684. See also *Lamps Plus*, 587 U. S., at ___ (slip op., at 1); *Epic Systems*, 584 U. S., at ___–___ (slip op., at 6–8); *Concepcion*, 563 U. S., at 347–348. The "'shift from bilateral arbitration to class-action arbitration'" mandates procedural changes that are inconsistent with the individualized and informal mode of arbitration contemplated by the FAA. *Id.*, at 347 (quoting *Stolt-Nielsen*, 559 U. S., at 686). As a result, class procedures cannot be imposed by state law without presenting unwilling parties with an unacceptable choice between being compelled to arbitrate using procedures at odds with arbitration's traditional form and forgoing arbitration altogether. Putting parties to that choice is inconsistent with the FAA.

Viking contends that these decisions require enforcement of contractual provisions waiving the right to bring PAGA actions because PAGA creates a form of class or collective proceeding.  If this is correct, *Iskanian*'s prohibition on PAGA waivers presents parties with the same impermissible choice as the rules we have invalidated in our decisions concerning class- and collective-action waivers: Either arbitrate disputes using a form of class procedure, or do not arbitrate at all.

Moriana offers a very different characterization of the statute.  As she sees it, any conflict between *Iskanian* and the FAA is illusory because PAGA creates nothing more than a substantive cause of action.  The only thing that is distinctive about PAGA, she supposes, is that it allows employee plaintiffs to increase the available penalties that may be awarded in an action by proving additional predicate violations of the Labor Code.  But that does not make a PAGA action a class action, because those violations are not distinct claims belonging to distinct individuals.  Instead, they are predicates for expanded liability under a single cause of action.  In Moriana's view, that means *Iskanian* invalidates waivers of substantive rights, and does not purport to invalidate anything that can meaningfully be described as an "arbitration agreement."[4]

_____

[4] Moriana declines to defend one of the *Iskanian* court's own bases for holding that the FAA does not mandate enforcement of PAGA waivers. The *Iskanian* court reasoned that a PAGA action lies outside the FAA's coverage entirely because §2 is limited to controversies "*arising out of*" the contract between the parties, 9 U. S. C. §2 (emphasis added), and a PAGA action "is not a dispute between an employer and an employee arising out of their contractual relationship," but "a dispute between an employer and the *state*."  *Iskanian* v. *CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 387, 327 P. 3d 129, 151 (2014).  We reject this argument. Although the terms of §2 limit the FAA's enforcement mandate to agreements to arbitrate controversies that "arise out of" the parties' contractual relationship, disputes resolved in PAGA actions satisfy this requirement.  The contractual relationship between the parties is a but-for cause

Opinion of the Court

We disagree with both characterizations of the statute. Moriana is correct that the FAA does not require courts to enforce contractual waivers of substantive rights and remedies. The FAA's mandate is to enforce "*arbitration agreements*." *Concepcion*, 563 U. S., at 344 (emphasis added). And as we have described it, an arbitration agreement is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 519 (1974); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 633 (1985). An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.'" *Preston* v. *Ferrer*, 552 U. S. 346, 359 (2008) (quoting *Mitsubishi Motors Corp.*, 473 U. S., at 628).[5]

––––––––––

of any justiciable legal controversy between the parties under PAGA, and "arising out of" language normally refers to a causal relationship. See, *e.g., Ford Motor Co.* v. *Montana Eighth Judicial Dist. Court*, 592 U. S. ___, ___ (2021) (slip op., at 8). And regardless of whether a PAGA action is in some sense also a dispute between an employer and the State, nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of §2.

[5] In briefing before this Court, Viking argued that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes. This argument is erroneous. The basis of this principle is not anything unique about federal statutes. It is that the FAA requires only the enforcement of "provision[s]" to settle a controversy "by arbitration," §2, and not any provision that happens to appear in a contract that features an arbitration clause. That is why we mentioned this principle in *Preston*, which concerned claims arising under state law. See 552 U. S., at 360 (noting that under the agreement, a party "relinquishe[d] no substantive rights . . . California law may accord him").

Opinion of the Court

But Moriana's premise that PAGA creates a unitary private cause of action is irreconcilable with the structure of the statute and the ordinary legal meaning of the word "claim." California courts interpret PAGA to provide employees with delegated authority to assert the State's claims on a representative basis, not an individual cause of action. See, *e.g.*, *Amalgamated Transit*, 46 Cal. 4th, at 1003, 209 P. 3d, at 943 (PAGA "is simply a procedural statute" that "does not create property rights or any other substantive rights"). And a PAGA action asserting multiple code violations affecting a range of different employees does not constitute "a single claim" in even the broadest possible sense, because the violations asserted need not even arise from a common "transaction" or "nucleus of operative facts." *Lucky Brand Dungarees, Inc.* v. *Marcel Fashions Group, Inc.*, 590 U. S. ___, ___ (2020) (slip op., at 6) (internal quotation marks omitted).[6]

Viking's position, on the other hand, elides important structural differences between PAGA actions and class actions that preclude any straightforward application of our precedents invalidating prohibitions on class-action waivers. Class-action procedure allows courts to use a representative plaintiff's individual claims as a basis to "adjudicate claims of multiple parties at once, instead of in separate suits," *Shady Grove Orthopedic Associates, P. A.* v. *Allstate Ins. Co.*, 559 U. S. 393, 408 (2010). This, of course, requires the certification of a class. And because class judgments bind absentees with respect to their individual

_____

[6] California courts sometimes speak as though a PAGA action involves the assertion of "a single representative PAGA claim," *Williams* v. *Superior Court*, 237 Cal. App. 4th 642, 649, 188 Cal. Rptr. 3d 83, 87 (2015). But we are not required to take the labels affixed by state courts at face value in determining whether state law creates a scheme at odds with federal law. See, *e.g.*, *Carpenter* v. *Shaw*, 280 U. S. 363, 367–368 (1930). And in our view, this manner of speaking is another reflection of the still-embryonic character of the language that has grown up around PAGA.

Opinion of the Court

claims for relief and are preclusive as to all claims the class could have brought, *Cooper* v. *Federal Reserve Bank of Richmond*, 467 U. S. 867, 874 (1984), "class representatives must at all times adequately represent absent class members, and absent [class] members must be afforded notice, an opportunity to be heard, and a right to opt out of the class." *Concepcion*, 563 U. S., at 349. And to "ensur[e] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," the adjudicator must decide questions of numerosity, commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338, 349 (2011).

PAGA actions also permit the adjudication of multiple claims in a single suit, but their structure is entirely different. A class-action plaintiff can raise a multitude of claims because he or she represents a multitude of absent individuals; a PAGA plaintiff, by contrast, represents a single principal, the LWDA, that has a multitude of claims. As a result of this structural difference, PAGA suits exhibit virtually none of the procedural characteristics of class actions. The plaintiff does not represent a class of injured individuals, so there is no need for certification. PAGA judgments are binding only with respect to the State's claims, and are not binding on nonparty employees as to any individually held claims. *Arias*, 46 Cal. 4th, at 986, 209 P. 3d, at 933–934. This obviates the need to consider adequacy of representation, numerosity, commonality, or typicality. And although the statute gives other affected employees a future interest in the penalties awarded in an action, that interest does not make those employees "parties" in any of the senses in which absent class members are, see *Devlin* v. *Scardelletti*, 536 U. S. 1 (2002), or give those employees anything more than an inchoate interest in litigation proceeds. See *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens,* 529 U. S. 765, 773 (2000) (The "'right'" to a share

of the proceeds of a *qui tam* action "does not even fully materialize until the litigation is completed and the relator prevails").

Because PAGA actions do not adjudicate the individual claims of multiple absent third parties, they do not present the problems of notice, due process, and adequacy of representation that render class arbitration inconsistent with arbitration's traditionally individualized form.  See *Concepcion*, 563 U. S., at 347–348.  Of course, as a practical matter, PAGA actions *do* have something important in common with class actions.  Because PAGA plaintiffs represent a principal with a potentially vast number of claims at its disposal, PAGA suits "greatly increas[e] risks to defendants." *Id.*, at 350.  But our precedents do not hold that the FAA allows parties to contract out of *anything* that might amplify defense risks.  Instead, our cases hold that States cannot coerce individuals into forgoing arbitration by taking the individualized and informal *procedures* characteristic of traditional arbitration off the table.  Litigation risks are relevant to that inquiry because one way in which state law may coerce parties into forgoing their right to arbitrate is by conditioning that right on the use of a procedural format that makes arbitration artificially unattractive.  The question, then, is whether PAGA contains any procedural mechanism at odds with arbitration's basic form.

Viking suggests an answer.  Our FAA precedents treat bilateral arbitration as the prototype of the individualized and informal form of arbitration protected from undue state interference by the FAA.  See *Epic Systems*, 584 U. S., at ___–___ (slip op., at 8–9); see also *American Express Co.* v. *Italian Colors Restaurant*, 570 U. S. 228, 238 (2013); *Concepcion*, 563 U. S., at 347–349; *Stolt-Nielsen*, 559 U. S., at 685–686.  Viking posits that a proceeding is "bilateral" in the relevant sense if—but only if—it involves two and only two parties and the arbitration "'is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart*, 564

Opinion of the Court

U. S., at 348 (quoting *Califano* v. *Yamasaki*, 442 U. S. 682, 700–701 (1979)). PAGA actions necessarily deviate from this ideal because they involve litigation or arbitration on behalf of an absent principal. Viking thus suggests that *Iskanian*'s prohibition on PAGA waivers is inconsistent with the FAA because PAGA creates an intrinsically representational form of action and *Iskanian* requires parties either to arbitrate in that format or forgo arbitration altogether.

We disagree. Nothing in the FAA establishes a categorical rule mandating enforcement of waivers of standing to assert claims on behalf of absent principals. Non-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of substantive law. Familiar examples include shareholder-derivative suits, wrongful-death actions, trustee actions, and suits on behalf of infants or incompetent persons. Single-agent, single-principal suits of this kind necessarily deviate from the strict ideal of bilateral dispute resolution posited by Viking. But we have never held that the FAA imposes a duty on States to render all forms of representative standing waivable by contract. Nor have we suggested that single-agent, single-principal representative suits are inconsistent the norm of bilateral arbitration as our precedents conceive of it. Instead, we have held that "the 'changes brought about by the shift from bilateral arbitration to *class-action arbitration*'" are too fundamental to be imposed on parties without their consent. *Concepcion*, 563 U. S., at 347–348 (quoting *Stolt-Nielsen*, 559 U. S., at 686; emphasis added). And we have held that §2's saving clause does not preserve defenses that would allow a party to declare "that a contract is unenforceable *just because it requires bilateral arbitration*." *Epic Systems*, 584 U. S., at ___ (slip op., at 9).

These principles do not mandate the enforcement of waiv-

ers of representative capacity as a categorical rule. Requiring parties to decide whether to arbitrate or litigate a single-agent, single-principal action does not produce a shift from a situation in which the arbitrator must "resolv[e] a single dispute between the parties to a single agreement" to one in which he or she must "resolv[e] many disputes between hundreds or perhaps even thousands of parties." *Stolt-Nielsen*, 559 U. S., at 686. And a proceeding in which two and only two parties arbitrate exclusively in their individual capacities is not the only thing one might mean by "bilateral arbitration." As we have said, "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin*, 536 U. S., at 10. Our precedents use the phrase "bilateral arbitration" in opposition to "class or collective" arbitration, and the problems we have identified in mandatory class arbitration arise from procedures characteristic of multiparty representative actions. *Epic Systems*, 584 U. S., at ___ (slip op., at 24); see also *Italian Colors*, 570 U. S., at 238; *Concepcion*, 563 U. S., at 347–349; *Stolt-Nielsen*, 559 U. S., at 685–686. Unlike these kinds of actions, single-principal, single-agent representative actions are "bilateral" in two registers: They involve the rights of only the absent real party in interest and the defendant, and litigation need only be conducted by the agent-plaintiff and the defendant. This degree of deviation from bilateral norms is not alien to traditional arbitral practice,[7] and our precedents have never suggested otherwise. See, e.g., *Marmet Health Care Center, Inc.* v. *Brown*, 565 U. S. 530 (2012) (*per curiam*) (invalidating rule categorically barring arbitration of wrongful-death actions).

---

[7] For example, close corporations have included arbitration clauses in negotiated shareholder agreements for many decades. See, *e.g.*, *In re Carl*, 263 App. Div. 887, 32 N. Y. S. 2d 410 (1942); *Lumsden* v. *Lumsden Bros. & Taylor Inc.*, 242 App. Div. 852, 257 N. Y. S. 221 (1934).

Opinion of the Court

Nor does a rule prohibiting waiver of representative standing declare "that a contract is unenforceable *just because it requires bilateral arbitration.*" *Epic Systems*, 584 U. S., at ___ (slip op., at 9). Indeed, if the term "bilateral arbitration" is used to mean "arbitration in an individual capacity between precisely two parties," a rule prohibiting representative-capacity waivers *cannot* invalidate agreements to arbitrate on a "bilateral" basis. An agreement that explicitly provided for "arbitration on a strictly bilateral basis" would, under that definition of the term "bilateral," categorically exclude representative-capacity claims from its coverage. Such claims, after all, necessarily involve the representation of an absent principal, and thus cannot be arbitrated in a strictly bilateral proceeding. A rule prohibiting waivers of representative standing would not *invalidate* any agreements that contracted for "bilateral arbitration" in Viking's sense—it would simply require parties to choose whether to litigate those claims or arbitrate them in a proceeding that is not bilateral in every conceivable sense. And while this consequence only follows because it is *impossible* to decide representative claims in an arbitration that is "bilateral" in every dimension, nothing in our precedent suggests that in enacting the FAA, Congress intended to require States to reshape their agency law to ensure that parties will never have to arbitrate in a proceeding that deviates from "bilateral arbitration" in the strictest sense. If there is a conflict between California's prohibition on PAGA waivers and the FAA, it must derive from a different source.

### III

We think that such a conflict between PAGA's procedural structure and the FAA does exist, and that it derives from the statute's built-in mechanism of claim joinder. As we noted at the outset, that mechanism permits "aggrieved employees" to use the Labor Code violations they personally suffered as a basis to join to the action any claims that could

have been raised by the State in an enforcement proceeding. *Iskanian*'s secondary rule prohibits parties from contracting around this joinder device because it invalidates agreements to arbitrate only "individual PAGA claims for Labor Code violations that an employee suffered," 59 Cal. 4th, at 383, 327 P. 3d, at 149.

This prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine "the issues subject to arbitration" and "the rules by which they will arbitrate," *Lamps Plus*, 587 U. S., at ___ (slip op., at 7), and does so in a way that violates the fundamental principle that "arbitration is a matter of consent," *Stolt-Nielsen*, 559 U. S., at 684. The most basic corollary of the principle that arbitration is a matter of consent is that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 945 (1995). This means that parties cannot be coerced into arbitrating a claim, issue, or dispute "absent an affirmative 'contractual basis for concluding that the party *agreed* to do so.'" *Lamps Plus*, 587 U. S., at ___ (slip op., at 8) (quoting *Stolt-Nielsen*, 559 U. S., at 684); see also *Concepcion*, 563 U. S., at 347–348.

For that reason, state law cannot condition the enforceability of an arbitration agreement on the availability of a procedural mechanism that would permit a party to expand the scope of the arbitration by introducing claims that the parties did not jointly agree to arbitrate. Rules of claim joinder can function in precisely that way. Modern civil procedure dispenses with the formalities of the common-law approach to claim joinder in favor of almost-unqualified joinder. Wright & Miller §1581. Federal Rule of Civil Procedure 18(a), which permits a party to "join, as independent or alternative claims, as many claims as it has against an opposing party," is typical of the modern approach. But the FAA licenses contracting parties to depart from standard

Opinion of the Court

rules "in favor of individualized arbitration procedures of their own design," so parties to an arbitration agreement are not required to follow the same approach. *Epic Systems*, 584 U. S., at ____ (slip op., at 14). And that is true even if bifurcated proceedings are an inevitable result. See, *e.g., Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 220–221 (1985); *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 103 (1983).

A state rule imposing an expansive rule of joinder in the arbitral context would defeat the ability of parties to control which claims are subject to arbitration. Such a rule would permit parties to superadd new claims to the proceeding, regardless of whether the agreement between them committed those claims to arbitration. Requiring arbitration procedures to include a joinder rule of that kind compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether. Either way, the parties are coerced into giving up a right they enjoy under the FAA. See *Lamps Plus*, 587 U. S., at ___–___ (slip op., at 6–8); *Epic Systems*, 584 U. S., at ___–___ (slip op., at 5–9); *Concepcion*, 563 U. S., at 347–351; *Stolt-Nielsen*, 559 U. S., at 684–687.

When made compulsory by way of *Iskanian*, the joinder rule internal to PAGA functions in exactly this way. Under that rule, parties cannot agree to restrict the scope of an arbitration to disputes arising out of a particular "'"transaction"'" or "'common nucleus of facts.'" *Lucky Brand*, 590 U. S., at ___ (slip op., at 6). If the parties agree to arbitrate "individual" PAGA claims based on personally sustained violations, *Iskanian* allows the aggrieved employee to abrogate that agreement after the fact and demand either judicial proceedings or an arbitral proceeding that exceeds the scope jointly intended by the parties. The only way for parties to agree to arbitrate *one* of an employee's PAGA claims is to also "agree" to arbitrate *all other* PAGA claims in the

same arbitral proceeding.

The effect of *Iskanian*'s rule mandating this mechanism is to coerce parties into withholding PAGA claims from arbitration. Liberal rules of claim joinder presuppose a backdrop in which litigants assert their own claims and those of a limited class of other parties who are usually connected with the plaintiff by virtue of a distinctive legal relationship—such as that between shareholders and a corporation or between a parent and a minor child. PAGA departs from that norm by granting the power to enforce a subset of California public law to every employee in the State. This combination of standing to act on behalf of a sovereign and mandatory freeform joinder allows plaintiffs to unite a massive number of claims in a single-package suit. But as we have said, "[a]rbitration is poorly suited to the higher stakes" of massive-scale disputes of this kind. *Concepcion*, 563 U. S., at 350. The absence of "multilayered review" in arbitral proceedings "makes it more likely that errors will go uncorrected." *Ibid.* And suits featuring a vast number of claims entail the same "risk of 'in terrorem' settlements that class actions entail." *Ibid.* As a result, *Iskanian*'s indivisibility rule effectively coerces parties to opt for a judicial forum rather than "forgo[ing] the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution." *Stolt-Nielsen*, 559 U. S., at 685; see also *Concepcion*, 563 U. S., at 350–351. This result is incompatible with the FAA.

IV

We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate. This holding compels reversal in this case. The agreement between Viking and Moriana purported to waive "representative" PAGA claims. Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA

Opinion of the Court

claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner. But the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any "portion" of the waiver that remains valid must still be "enforced in arbitration." Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim. The lower courts refused to do so based on the rule that PAGA actions cannot be divided into individual and non-individual claims. Under our holding, that rule is preempted, so Viking is entitled to compel arbitration of Moriana's individual claim.

The remaining question is what the lower courts should have done with Moriana's non-individual claims. Under our holding in this case, those claims may not be dismissed simply because they are "representative." *Iskanian*'s rule remains valid to that extent. But as we see it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. See Cal. Lab. Code Ann. §§2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. See *Kim*, 9 Cal. 5th, at 90, 459 P. 3d, at 1133 ("PAGA's standing requirement was meant to be a departure from the 'general public' . . . standing originally allowed" under other California statutes). As a result, Moriana lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims.

For these reasons, the judgment of the California Court of Appeal is reversed, and the case is remanded for further

22          VIKING RIVER CRUISES, INC. *v.* MORIANA

Opinion of the Court

proceedings not inconsistent with this opinion.

*It is so ordered.*

SOTOMAYOR, J., concurring

# SUPREME COURT OF THE UNITED STATES

————

No. 20–1573

————

## VIKING RIVER CRUISES, INC., PETITIONER *v.* ANGIE MORIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT

[June 15, 2022]

JUSTICE SOTOMAYOR, concurring.

I join the Court's opinion in full. The Court faithfully applies precedent to hold that California's anti-waiver rule for claims under the State's Labor Code Private Attorneys General Act of 2004 (PAGA) is pre-empted only "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Ante,* at 20. In its analysis of the parties' contentions, the Court also details several important limitations on the pre-emptive effect of the Federal Arbitration Act (FAA). See *ante,* at 11–17. As a whole, the Court's opinion makes clear that California is not powerless to address its sovereign concern that it cannot adequately enforce its Labor Code without assistance from private attorneys general.

The Court concludes that the FAA poses no bar to the adjudication of respondent Angie Moriana's "non-individual" PAGA claims, but that PAGA itself "provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." *Ante,* at 21. Thus, the Court reasons, based on available guidance from California courts, that Moriana lacks "statutory standing" under PAGA to litigate her "non-individual" claims separately in state court. *Ibid.* Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last

2          VIKING RIVER CRUISES, INC. *v.* MORIANA

SOTOMAYOR, J., concurring

word.  Alternatively, if this Court's understanding is right, the California Legislature is free to modify the scope of statutory standing under PAGA within state and federal constitutional limits.  With this understanding, I join the Court's opinion.

Cite as:  596 U. S. \_\_\_\_ (2022)          1

Opinion of BARRETT, J.

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–1573

_____

## VIKING RIVER CRUISES, INC., PETITIONER *v.* ANGIE MORIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT

[June 15, 2022]

JUSTICE BARRETT, with whom JUSTICE KAVANAUGH joins, and with whom THE CHIEF JUSTICE joins except as to the footnote, concurring in part and concurring in the judgment.

I join Part III of the Court's opinion.  I agree that reversal is required under our precedent because PAGA's procedure is akin to other aggregation devices that cannot be imposed on a party to an arbitration agreement.  See, *e.g., Stolt-Nielsen S. A.* v. *AnimalFeeds Int'l Corp.*, 559 U. S. 662 (2010); *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333 (2011); *Epic Systems Corp.* v. *Lewis*, 584 U. S. \_\_\_ (2018); *Lamps Plus, Inc.* v. *Varela*, 587 U. S. \_\_\_ (2019).  I would say nothing more than that.  The discussion in Parts II and IV of the Court's opinion is unnecessary to the result, and much of it addresses disputed state-law questions as well as arguments not pressed or passed upon in this case.*

_____

*The same is true of Part I.

Cite as: 596 U. S. ____ (2022)          1

Thomas, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–1573

_____

## VIKING RIVER CRUISES, INC., PETITIONER *v.* ANGIE MORIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF
CALIFORNIA, SECOND APPELLATE DISTRICT

[June 15, 2022]

JUSTICE THOMAS, dissenting.

I continue to adhere to the view that the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, does not apply to proceedings in state courts. See *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 285–297 (1995) (THOMAS, J., dissenting); see also *Kindred Nursing Centers L. P.* v. *Clark*, 581 U. S. 246, 257 (2017) (THOMAS, J., dissenting) (collecting cases). Accordingly, the FAA does not require California's courts to enforce an arbitration agreement that forbids an employee to invoke the State's Private Attorneys General Act. On that basis, I would affirm the judgment of the California Court of Appeal.