UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated, | 20 Civ. 2489 (LTS) (GWG) |
| Plaintiffs, | |
| v. | |
| MIKE BLOOMBERG 2020, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

MOTION TO DISMISS ....................................................................................................... 3

I.   PROCEDURAL HISTORY AND RELEVANT ALLEGED FACTS. ........................................ 3

   A.   Plaintiffs Commence This Lawsuit in March 2020 and Designate Plaintiff
        Wheatley-Diaz as the Proposed California Class Representative. .......................... 3

   B.   The Parties Enter Into a Tolling Agreement on May 18, 2021 Premised on
        Wheatley-Diaz Withdrawing As a California Class Representative. ...................... 4

   C.   Plaintiffs File a Motion for Leave to File a Third Amended Complaint
        on May 31, 2022. .................................................................................................... 5

   D.   On September 13, 2022, Plaintiffs Ask the Court for the First Time to Permit
        Wheatley-Diaz to Plead PAGA Claims. ................................................................ 5

   E.   Plaintiffs File a Third Amended Complaint ........................................................... 6

II.  LEGAL STANDARDS. ................................................................................................. 6

   A.   Rule 12(b)(6) .......................................................................................................... 6

   B.   PAGA ..................................................................................................................... 7

III. ARGUMENT. ............................................................................................................. 8

   A.   Plaintiff Wheatley-Diaz's PAGA Claim Should Be Dismissed. ........................... 8

        1.   Wheatley-Diaz's PAGA Claim is Time-Barred. ......................................... 8

        2.   California's Emergency Rule 9 Is Inapplicable to This Federal Court
             Action. ......................................................................................................... 9

   B.   Plaintiff Ceppos's And Plaintiff Coker's PAGA Claims Should Be Dismissed. . 14

        1.   Ceppos and Coker Did Not Timely Provide Notice to the LWDA. ......... 14

        2.   Ceppos's and Coker's Time to Exhaust PAGA Administrative
             Requirement Was Not Tolled. ................................................................... 15

   C.   Plaintiffs' FLSA Claims Should be Dismissed ................................................... 17

        1.   The Campaign Was Not A Covered Enterprise. ....................................... 17

        2.   The Plaintiffs Are Not Covered Individuals. ............................................ 18

MOTION TO STRIKE ....................................................................................................... 21

I.   LEGAL STANDARD. ................................................................................................. 22

II.  PLAINTIFFS' ALLEGATIONS RELATING TO THE DISMISSED CLAIMS SHOULD BE STRICKEN
     BECAUSE THEY HAVE NO CONNECTION TO PLAINTIFFS' WAGE-AND-HOUR CLAIMS. ...... 23

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arias v. Superior Ct. of San Joaquin Cnty.*,
   46 Cal. 4th 969 (2009) ...............................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................6

*Benitez v. W. Milling, LLC*,
   2020 WL 3412725 (E.D. Cal. June 22, 2020) ...........................................................7

*Bowrin v. Catholic Guardian Soc'y*,
   417 F. Supp. 2d 449 (S.D.N.Y. 2006).................................................................18, 19

*Brown v. Ralphs Grocery Co.*,
   28 Cal. App. 5th 824 (2018) ...............................................................................7, 14

*Bush v. Vaco Tech. Servs., LLC*,
   2018 WL 2047807 (N.D. Cal. May 2, 2018) .............................................................7

*Cal. Ct. Reporters Ass'n v. Judicial Council of Cal.*,
   39 Cal. App. 4th 15 (1995) ......................................................................................10

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002).......................................................................................6

*Cassese v. Washington Mutual, Inc.*,
   2011 WL 13295945 (E.D.N.Y. June 7, 2011) .........................................................23

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).......................................................................................4

*Fay v. Dist. Ct. of Appeal, Second App. Dist., Div. Two*,
   200 Cal. 522 (1927) .................................................................................................11

*Figueroa v. City of N.Y.*,
   2008 WL 4185848 (S.D.N.Y. Sept. 4, 2008)............................................................6

*Goerss v. Pac. Gas & Elec. Co.*,
   2021 WL 4932134 (N.D. Cal. Oct. 18, 2021).....................................................12, 13

*Gonzalez v. Victoria G's Pizzeria LLC*,
   2022 WL 842666 (E.D.N.Y. Mar. 22, 2022)...........................................................21

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
  2009 WL 1748743 (N.D.N.Y. June 19, 2009) ........................................................24

*Hess v. Ford Motor Co.*,
  27 Cal. 4th 516 (2002) ...............................................................................10, 11

*In re Alstom SA Sec. Litig.*,
  454 F. Supp. 2d 187 (S.D.N.Y. 2006) ...................................................................23

*In re: LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) ..........................................................25

*In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003) ..........................................................................23

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  402 F. Supp. 2d 434 (S.D.N.Y. 2005) ..................................................................22

*Jacobs v. N.Y. Foundling Hosp.*,
  577 F.3d 93 (2d Cir. 2009) ..............................................................................17

*James v. Circuit City Stores, Inc.*,
  370 F.3d 417 (4th Cir. 2004) .............................................................................8

*Kaufman v. Diskeeper Corp.*,
  229 Cal. App. 4th 1 (2014) ..............................................................................11

*Kitchings v. Fla. United Methodist Children's Home, Inc.*,
  393 F. Supp. 2d 1282 (M.D. Fla. 2005) ................................................................19

*Marcus v. Lominy*,
  2022 WL 493688 (S.D.N.Y. Feb. 17, 2022) ...........................................................21

*Moreno v. Castlerock Farming & Transp. Inc.*,
  2022 WL 902597 (E.D. Cal. Mar. 28, 2022) ........................................................7, 15

*Morse v. Weingarten*,
  777 F. Supp. 312 (S.D.N.Y. 1991) ......................................................................23

*Nachmany v. FXCM, Inc.*,
  2020 WL 178413 (S.D.N.Y. Jan 9, 2020) ...........................................................22, 23

*Olivas v. Weiner*,
  127 Cal. App. 2d 597 (1954) ............................................................................10

*Owusu v. Corona Tire Shop, Inc.*,
  2013 WL 1680861 (E.D.N.Y. Apr. 17, 2013) .......................................................20, 21

*People v. Ramirez*,
    112 Cal. App. 507 (1931) ................................................................12

*Rivera v. EMTC Med. Dep't*,
    2016 WL 110529 (S.D.N.Y. Jan. 7, 2016) ...........................................6

*Santiago v. Amdocs, Inc.*,
    2011 WL 1303395 (N.D. Cal. Apr. 2, 2011) .........................................8

*Sholes v. Cates*,
    2021 WL 5567381 (E.D. Cal. Nov. 29, 2021) ...............................12, 13

*Shubin v. Universal Vacation Club*,
    2022 WL 3577247 (C.D. Cal. Aug. 18, 2022) ...............................12, 13

*Slay v. CVS Caremark Corp.*,
    2015 WL 2081642 (E.D. Cal. May 4, 2015) .........................................8

*Smith v. United Parcel Serv., Inc.*,
    2021 WL 1817104 (N.D. Cal. May 6, 2021) ........................................7

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985) ........................................................................17

*Tuan Vo v. LoanMe, Inc.*,
    2018 WL 6137577 (C.D. Cal. Sept. 24, 2018) ....................................15

*Wirtz v. Sherman Enterprises, Inc.*,
    229 F. Supp. 746 (D. Md. 1964) ...............................................19, 20

**STATUTES**

29 U.S.C. § 203(r)(1) .......................................................................17

29 U.S.C. § 206(a) ..........................................................................18

29 U.S.C. § 207(a)(1) .......................................................................18

Cal. Code Civ. P. § 312 ...................................................................10

Cal. Code Civ. P. § 340(a) .................................................................7

Cal. Lab. Code § 2699.3(a)(1)(A) .........................................................7

Cal. Lab. Code § 2699.3(a)(2)(A) .........................................................3

Cal. Lab. Code § 2699.3(d) .................................................................7

iv

**OTHER AUTHORITIES**

29 C.F.R. § 779.214 ..............................................................................................17

Cal. Const., Article III, § 3 ....................................................................................10

Cal. Const., Article VI, § 6(d)...........................................................................10, 11

Cal. Gov. Exec. Order No. N-38-20 ...................................................................11, 12

Fed. R. Civ. P. 12(f)..............................................................................................22

Judicial Council of California, https://www.courts.ca.gov/policyadmin-jc.htm ...........11

Transcript of April 6, 2020 Judicial Council of California Meeting,
    https://jcc.legistar.com/View.ashx?M=E3&ID=773783&GUID=DA9DA387-
    17C3-4883-8AE9-32CED2B6BBFA ...................................................................12

Defendant Mike Bloomberg 2020, Inc. ("Defendant" or the "Campaign") respectfully moves this Court for an Order (i) dismissing with prejudice the Sixteenth Cause of Action under the California Private Attorney General Act of 2004, Cal. Labor Code §§ 2698 *et seq.* ("PAGA") and the First Cause of Action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "FLSA") in the Third Amended Class and Collective Action and PAGA Complaint (Dkt. 296) ("Third Amended Complaint" or "TAC"), pursuant to Fed. R. Civ. P. 12(b)(6), and (ii) striking the allegations in the Third Amended Complaint that relate solely to the common law claims for fraudulent inducement and promissory estoppel dismissed by the Court with prejudice in its March 25, 2022 Opinion and Order (Dkt. 258), pursuant to Fed. R. Civ. P. 12(f).

## PRELIMINARY STATEMENT

### Motion to Dismiss

In the fourth iteration of their complaint, Plaintiffs have designated three proposed class representatives for California, none of whom have timely PAGA claims. Alexandra Marie Wheatley-Diaz, Robin Ceppos and Nick Coker last worked for the campaign in March 2020. Wheatley-Diaz joined the case as a proposed California class representative and provided notice of alleged violations of the California Labor Code to the Labor and Workforce Development ("LWDA"), as is required under PAGA, in March 2020. However, she did not seek to actually plead a PAGA claim until September 2022, months after her deadline to do so expired. Ceppos's and Coker's PAGA claims fare no better, as they did not attempt to provide the required notice to the LWDA until June 2022, more than two years after their employment with the Campaign ended, which is far too late to satisfy the prerequisite to filing a PAGA claim in court.

The tolling provisions Plaintiffs attempt to rely on to salvage their PAGA claims are inapplicable. First, Rule 9 of the California Judicial Counsel's Emergency Rules Related to

COVID-19 ("ER 9") conflicts with the controlling statutory limitations period for PAGA claims, does not apply in federal court, and Plaintiffs have not pled any extraordinary circumstances warranting its application.  The Court should also not permit Plaintiffs' attempt to rely on the parties' tolling agreement.  The Campaign entered into that agreement based on Plaintiffs' representation that Wheatley-Diaz would withdraw as a proposed class representative and would not pursue a PAGA claim, and Ceppos and Coker would replace her.  Months after the Campaign filed its opposition to Plaintiffs' motion to amend the complaint to add PAGA claims on behalf of Ceppos and Coker, including because their deadline to give notice to the LWDA expired before the parties entered into the tolling agreement, Plaintiffs suddenly reversed course. Plaintiffs then tried to use Wheatley-Diaz's LWDA notice to plead a PAGA claim *and* get the benefit of the tolling agreement that was premised on Wheatley-Diaz abandoning any such claim.  Plaintiffs should not be permitted to benefit from gamesmanship to revive otherwise untimely claims.  Plaintiffs' PAGA cause of action should be dismissed.

Plaintiffs' FLSA allegations, which have not changed in the Third Amended Complaint, still fail to state a claim.  As explained in the Campaign's motion to dismiss the Second Amended Complaint, the Campaign is not an enterprise covered by the FLSA, and neither the Plaintiffs nor the putative class members are individually covered because they did not engage in any commercial interstate activity.  Even if the FLSA's individual coverage provisions are construed generously to cover any individual who communicates across state lines for any purpose, the Third Amended Complaint fails to allege facts to plausibly plead such a claim.

**<u>Motion to Strike</u>**

Additionally, the Court should strike the allegations in the Third Amended Complaint that pertain solely to causes of action for promissory estoppel and fraudulent inducement that the

Court dismissed with prejudice and denied Plaintiffs leave to replead.  Notwithstanding the Court's directive, Plaintiffs filed a 94-page Third Amended Complaint that contains more than 100 numbered paragraphs that have no bearing on the wage and hour claims that remain in this case and should be excised from the new complaint.

## MOTION TO DISMISS

I.   PROCEDURAL HISTORY AND RELEVANT ALLEGED FACTS.

### A.   Plaintiffs Commence This Lawsuit in March 2020 and Designate Plaintiff Wheatley-Diaz as the Proposed California Class Representative.

Plaintiffs commenced this lawsuit on March 23, 2020, asserting wage and hour claims under the FLSA and common law claims for fraudulent inducement and promissory estoppel. *See* Dkt. 1.  On March 30, 2020, Plaintiffs filed a First Amended Complaint in which they added wage and hour claims under various state laws, including California, and designated Wheatley-Diaz as the proposed California class representative.  *See* Dkt. 29 ¶¶ 34, 49-50.

Wheatley-Diaz worked for the Campaign in California between January and March 2020. *See* TAC ¶ 101.  On March 31, 2020, she filed a notice with the LWDA stating that she intended to bring claims against the Campaign for penalties pursuant to PAGA.  *Id.* ¶ 407.

On May 18, 2020, Plaintiffs filed a Second Amended Complaint (the "SAC").  *See* Dkt. 86.  Wheatley-Diaz remained the proposed class representative with respect to the California wage and hour claims.  She did not plead a PAGA claim.[1]  *See* SAC at ¶¶ 80, 254-255.

---

[1] PAGA requires that an "aggrieved employee" provide the LWDA 60 days to review an administrative claim before filing suit and permits an employee to file a PAGA claim after 65 days if the LWDA has not given notice of its intention to enforce the relevant Labor Code provisions on its own.  Cal. Lab. Code § 2699.3(a)(2)(A). Accordingly, Wheatley Diaz could have added a timely PAGA claim as of June 5, 2020, which was the 66th day after she filed her PAGA notice with the LWDA.  However, rather than waiting a few weeks to file their Second Amended Complaint and seek to add a PAGA claim to that pleading, Plaintiffs filed the Second Amended Complaint on May 18, 2020.

**B.**     **The Parties Enter Into a Tolling Agreement on May 18, 2021 Premised on Wheatley-Diaz Withdrawing As a California Class Representative.**

On May 18, 2021, a year after Plaintiffs filed the Second Amended Complaint, the parties executed a tolling agreement. *See* TAC ¶ 82. The tolling agreement provided that Wheatley-Diaz would withdraw as a California class representative, and be replaced by Plaintiffs Robin Ceppos and Nick Coker. *See* Bloom Dec. Ex. 1.[2] At the time the parties executed the tolling agreement, Wheatley-Diaz had 17 days remaining to file a PAGA claim in court (*i.e.* through June 4, 2021). *See* Section II.B, *infra.*

Ceppos and Coker both worked for the Campaign in California between January and March 2020. *See* TAC ¶¶ 85, 87. Accordingly, the latest Ceppos and Coker could have provided PAGA notices to the LWDA was March 31, 2021, assuming they worked through the last possible day in March (*i.e.* within one year of their employment ending). *See* Section II.B, *supra.* At the time the parties entered into the tolling agreement on May 18, 2021, which was more than 13 months after their last day of employment with the Campaign and *after* their deadline to provide administrative notice to the LWDA, Ceppos and Coker had not given the required notice to the LWDA. *See* TAC ¶ 407.

The tolling agreement also provided, in relevant part:

- The statute of limitations would be tolled as of date the parties executed the agreement (May 18, 2021). *See* Bloom Dec. Ex. 1 at 1.

- "[N]othing in this Agreement shall operate…(b) to revive any claim, cause of action, or allegation that is otherwise barred by any statute of limitations or similar rule of law or equity prior to the effective date of this Agreement." *Id.* at 1-2.

- The proposed California class representatives "shall refrain and forebear from seeking leave to add" PAGA claims to the action. *Id.* at 2.

---

[2] The Court may consider the tolling agreement in conjunction with this Rule 12(b)(6) motion to dismiss because Plaintiffs explicitly refer to and rely upon the tolling agreement in the TAC. TAC ¶ 82. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### C. Plaintiffs File a Motion for Leave to File a Third Amended Complaint on May 31, 2022.

Plaintiffs filed a motion for leave to file a third amended complaint on May 31, 2022, thus terminating the parties' tolling agreement as of that date. *See* Dkt. 278 (the "Motion for Leave"). In the Motion for Leave, Plaintiffs sought to remove Wheatley-Diaz as a proposed class representative and named plaintiff in the proposed Third Amended Complaint; to replace her with Ceppos and Coker; and to add PAGA claims on Ceppos's and Coker's behalf. *See* Dkt. 279. At the time Plaintiffs filed the Motion for Leave, Ceppos and Coker had still not provided PAGA notice to the LWDA, and did not provide such notice until June 21, 2022, more than two years after their employment with the Campaign ended. TAC ¶ 407; Dkts. 286-1, 286-2.

### D. On September 13, 2022, Plaintiffs Ask the Court for the First Time to Permit Wheatley-Diaz to Plead PAGA Claims.

On June 14, 2022 and June 24, 2022, the Campaign filed an opposition and surreply to Plaintiff's Motion for Leave, arguing that Plaintiffs' proposed amendments would be futile because Ceppos's and Coker's PAGA claims were subject to dismissal under Rule 12(b)(6) for failure to satisfy PAGA's administrative exhaustion requirements. *See* Dkts. 282, 288.

On September 13, 2022—2.5 years since Wheatley-Diaz provided PAGA notice to the LWDA, nearly 16 months since Plaintiffs represented that Wheatley-Diaz would be removed as a proposed California class representative (*see* Bloom Dec. Ex. 1), and two days before oral argument on the Motion for Leave—Plaintiffs notified the Court that they wished to "modify" the relief sought in their Motion for Leave and, in a revised version of the proposed third amended complaint, proposed that Wheatley-Diaz "remain in the case and seek to serve as a representative for the PAGA claims that Plaintiffs seek to assert." *See* Dkt. 291. The Campaign opposed the proposed modification, including on the grounds that Wheatley-Diaz's time to plead a PAGA claim had expired. *See* Dkt. 290 at 2-3.

### E.      Plaintiffs File a Third Amended Complaint.

On September 15, 2022, Magistrate Judge Gabriel W. Gorenstein granted in part and denied in part Plaintiffs' Motion for Leave, stating that he was allowing the PAGA claim to be pled without deciding whether the amendment was futile, and that the Court's ruling was with "absolutely no effect on the defendant's ability to make whatever arguments it wishes in the future regarding the statute of limitations.  It's going to be free to file a motion to dismiss if it complies with the Court's individual practices."  *See* Bloom Dec. Ex. 3, Transcript of September 15, 2022 Proceedings at 34:5-10.

On September 20, 2022, Plaintiffs filed the Third Amended Complaint (Dkt. 296).  In the new complaint, Plaintiffs designated Wheatley-Diaz, Ceppos, and Coker as proposed PAGA class representatives.  *See* TAC ¶¶ 80, 399-407.

## II.    LEGAL STANDARDS.

### A.      Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  That standard is not met "and, thus, a motion to dismiss may be granted, where the underlying claim is time barred by a statute of limitations."  *Figueroa v. City of N.Y.*, 2008 WL 4185848, at *1 (S.D.N.Y. Sept. 4, 2008) (citing *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 706-07 (2d Cir. 2002).   The standard is also not met when a plaintiff fails to timely exhaust administrative requirements.  *See, e.g. Rivera v. EMTC Med. Dep't*, 2016 WL 110529, at *2 (S.D.N.Y. Jan. 7, 2016).

### B.   PAGA.

Under PAGA, employees can "stand in the shoes of the state of California" to enforce claims on behalf of the state for violations of the California Labor Code.  *Benitez v. W. Milling, LLC*, 2020 WL 3412725, at *7 (E.D. Cal. June 22, 2020).  Before a purportedly "aggrieved employee" can file suit in court, however, the employee must first satisfy PAGA's administrative exhaustion requirements by providing written notice to the LWDA and the employer detailing the alleged Labor Code violations and the specific factual allegations that relate to the alleged violations.  *See* Cal. Lab. Code § 2699.3(a)(1)(A); *see also Arias v. Superior Ct. of San Joaquin Cnty.*, 46 Cal. 4th 969, 981 (2009) (PAGA "requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation"); *Smith v. United Parcel Serv., Inc.*, 2021 WL 1817104 (N.D. Cal. May 6, 2021) (same).

The statute of limitations for a PAGA claim is one year from the alleged violation.  *See* Cal. Code Civ. P. § 340(a); *Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 839 (2018); *Bush v. Vaco Tech. Servs., LLC,* 2018 WL 2047807, at *12 (N.D. Cal. May 2, 2018) (same).  This period is tolled for a maximum of 65 days after the employee notifies the LWDA that they intend to pursue PAGA claims, to provide the agency with a review period.  *See* Cal. Lab. Code § 2699.3(d).  Thus, a plaintiff must notify the LWDA of their claim within one year of the alleged violation, and file a PAGA claim in court within no more than one year and 65 days of the allegation violation.  *See Bush*, 2018 WL 2047807, at *13.

A plaintiff who fails to exhaust the administrative requirements of the LWDA or timely file a civil cause of action thereafter cannot pursue a PAGA claim.  *See, e.g., Moreno v. Castlerock Farming & Transp. Inc.*, 2022 WL 902597, at *14 (E.D. Cal. Mar. 28, 2022) (granting motion to dismiss PAGA claims where plaintiffs sent their notices to the LWDA more than a year after the

end of their employment); *Santiago v. Amdocs, Inc.*, 2011 WL 1303395, at *5 (N.D. Cal. Apr. 2,

2011) (dismissing PAGA claims as time-barred where complaint alleged that plaintiffs filed their

complaints with the LWDA more than one year after their separation of employment from the

defendant);  *Slay v. CVS Caremark Corp.*, 2015 WL 2081642, at *6 (E.D. Cal. May 4, 2015)

(holding that plaintiff's claims were time-barred because although he gave notice to the LWDA

within one year, he filed his complaint in court after the limitations period had run).

III.   **ARGUMENT.**

      A.    **Plaintiff Wheatley-Diaz's PAGA Claim Should Be Dismissed.**

          1.    ***Wheatley-Diaz's PAGA Claim is Time-Barred.***

Wheatley-Diaz's PAGA claim must be dismissed because while she timely provided

notice to the LWDA, she failed to file a PAGA claim within the one-year statute of limitations.

Wheatley-Diaz last worked for the Campaign in March 2020, and gave notice to the

LWDA on March 31, 2020.  TAC ¶¶ 101-02, 407.  Accordingly, she had until no later than June

4, 2021 to file a PAGA claim (*i.e.* one year and 65 days from March 31, 2020).  While Wheatley-

Diaz appears to rely on the parties' May 18, 2021 tolling agreement (*see* TAC ¶ 82), at least in

part, to save her claim, that agreement was explicitly premised on Plaintiffs' representation that

Wheatley-Diaz would withdraw as a proposed California class representative and would *not*

pursue a PAGA claim against the Campaign, and Ceppos and Coker would replace her.  *See*

Bloom Dec. Ex. 1.  The Campaign relied on the representations Plaintiffs made in entering into

the tolling agreement, and Wheatley-Diaz cannot now reverse course to obtain the benefit of

tolling on a PAGA claim she said she would not file because Ceppos and Coker ultimately did

not timely exhaust their administrative requirements, as discussed in Section III.B, *infra*.  *See,*

*e.g. James v. Circuit City Stores, Inc.*, 370 F.3d 417, 422 (4th Cir. 2004) (finding that certain

plaintiffs could not be afforded the benefit of a tolling agreement where the "most natural reading" of the agreement indicated that the parties did not intend for them to be covered).

Even if the Court accepted Plaintiffs' allegation that Wheatley-Diaz's PAGA claim was tolled during the pendency of the parties' tolling agreement, however, the parties entered into that agreement on May 18, 2021. *See* TAC ¶ 82, Bloom Dec. Ex. 1. At that time, only 17 days remained for Wheatley Diaz to file a timely PAGA claim. The tolling period expired when Plaintiffs filed their Motion for Leave seeking to add PAGA claims on behalf of Plaintiffs Ceppos and Coker on May 31, 2022; therefore, Wheatley-Diaz would have had to pursue filing a PAGA claim in court no later than June 17, 2022. In the Motion for Leave, Wheatley-Diaz *did not* seek to file a PAGA claim; to the contrary, she sought to withdraw as a proposed class representative and named plaintiff. *See* Dkt. 279 at 1. Wheatley-Diaz did not notify the Court that she sought to file a PAGA claim until September 13, 2022, *nearly three months* after the last possible day she could have timely pled the claim. Her PAGA claim is time-barred.

## 2. *California's Emergency Rule 9 Is Inapplicable to This Federal Court Action.*

Wheatley-Diaz's reliance on California's ER 9 to save her time-barred claim (*see* TAC ¶ 81) is misplaced. First, the Judicial Council did not have the authority to toll the statute of limitations for a PAGA claim, as ER 9 is at odds with the statute of limitations set forth in the California Code of Civil Procedure. Second, even assuming the Judicial Council had the authority to issue ER 9, it only applies in the California state court system, not federal court. Third, even if Wheatley-Diaz could overcome these two gating issues, she has failed to plead that the COVID-19 pandemic created extraordinary circumstances sufficient to invoke ER 9.

**(a)** **The Judicial Council Lacked Authority to Toll the Deadline to File a PAGA Claim.**

California's Constitution provides separate powers to each of the State's three branches of government—executive, legislative, and judicial. *See generally* Cal. Const., Art. III, § 3. Each branch is precluded from exercising powers belonging to another, "except as permitted by th[e] Constitution." *Id.*

The power to set the time within which suits may be filed belongs to the legislative branch. *See Olivas v. Weiner*, 127 Cal. App. 2d 597, 599 (1954) ("Fixing the time within which particular rights must be asserted is a matter of legislative policy."). To that end, section 312 of the California Code of Civil Procedure makes clear that "[c]ivil actions, *without exception*, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed *by statute*." Cal. Code Civ. P. § 312 (emphasis added).

While the California Constitution delegates some authority over the State's court system to the Judicial Council, this power is limited and subordinate to the Legislature. *See Cal. Ct. Reporters Ass'n v. Judicial Council of Cal.*, 39 Cal. App. 4th 15, 22 (1995) ("The Judicial Council's right is secondary—a right to adopt rules only when the higher authority of the Legislature and the people has not been exercised …. Its rule-making power is limited by existing law as enacted by the Legislature, thus making the legislative branch an inherently higher authority than the Judicial Council itself."). If a rule established by the Judicial Council "is inconsistent with a statute, *the statute controls*." *Hess v. Ford Motor Co.,* 27 Cal. 4th 516, 532 (2002) (citations omitted) (emphasis added); *see also id.* ("Rules promulgated by the Judicial Council may not conflict with governing statutes."); Cal. Const., Art. VI, § 6(d) ("The rules

adopted [by the Judicial Council] shall not be inconsistent with statute."); *Kaufman v. Diskeeper Corp.*, 229 Cal. App. 4th 1, 6 (2014) ("statutes control over court rules").

The Judicial Council's expansion of the statute of limitations as established in ER 9 is directly at odds with the one-year deadline to initiate a cause of action under PAGA established by § 340 of the California Code of Civil Procedure – *i.e.*, ER 9 is "inconsistent with a statute." *See Hess*, 27 Cal. 4th at 532.  Therefore, the one-year statutory limitations deadline controls.

Recognizing this conflict, California's Governor attempted to fix the problem by "suspend[ing]" the operation of any statute inconsistent with actions by the Judicial Council related to the COVID-19 pandemic, via executive order.  *See* Cal. Gov. Exec. Order No. N-38-20.  However, it is unclear whether the Governor had the power to do so, and the California Supreme Court has not confirmed that he did.  It is especially uncertain considering the limitations on the Judicial Council's authority imposed by the California Constitution.  *See* Cal. Const., Art. VI, § 6(d).

### (b)     Emergency Rule 9 Does Not Apply to a Federal Court Action.

Even assuming that the Judicial Council had authority to issue ER 9, it would not apply here, in this federal court action.  The Judicial Council is a "policymaking body of the California courts."  Judicial Council of California, https://www.courts.ca.gov/policyadmin-jc.htm.   It is chaired by the Chief Justice of California and its membership consists of state court appellate and trial court judges, state legislators, members of the California State Bar, and state court executives.  *See id.*  As California courts have long recognized, the Judicial Council's rules apply in its state court system, not in federal courts.  *See Fay v. Dist. Ct. of Appeal, Second App. Dist., Div. Two,* 200 Cal. 522, 528 (1927) (the constitutional amendment creating the Judicial Council, was intended to cover the state judicial system; "it was intended to have application to the entire judicial system of the state of California, including the Supreme Court and the several District

Courts of Appeal"); *People v. Ramirez*, 112 Cal. App. 507, 508 (1931) (referring to the Rules of the Judicial Council as "promulgated for the Supreme Court and District Courts of Appeal…"). [3]

The Judicial Council expressly recognized the limited reach of ER 9 when it adopted the rule at a special meeting on April 6, 2020.  At that meeting, the Council introduced Emergency Rules 9 through 11 as proposed rule changes "which apply broadly to civil cases pending in all of *the state's trial courts*."  Transcript of April 6, 2020 Judicial Council of California Meeting, https://jcc.legistar.com/View.ashx?M=E3&ID=773783&GUID=DA9DA387-17C3-4883-8AE9-32CED2B6BBFA (emphasis added).

Reinforcing the scope of the Judicial Council's authority in issuing ER 9, several courts have recognized that the rule does not apply in federal courts.  *See Goerss v. Pac. Gas & Elec. Co.*, 2021 WL 4932134, at *6 (N.D. Cal. Oct. 18, 2021) (plaintiff "cannot rely on the California-issued emergency rule referenced above to get relief because she is not in state court"); *Sholes v. Cates*, 2021 WL 5567381, at *5 (E.D. Cal. Nov. 29, 2021) ("Emergency Rule 9 was promulgated by the Judicial Council of California to toll the statute of limitations for civil causes of action in matters brought before *California state courts*.") (emphasis added); *see also Shubin v. Universal Vacation Club*, 2022 WL 3577247, at *3 (C.D. Cal. Aug. 18, 2022) (hesitancy of federal courts to apply ER 9 "in part stems from the fact that [the rule] was issued by the California Judicial Council, and not any federal court or body").

The Judicial Council has no authority to issue rules for federal courts, and both courts and the Council have recognized that ER 9 was never intended to apply in federal court actions in

---

[3] Even Governor Newsom's executive order acknowledged that the actions of the Judicial Council relate to the operations of California state courts—the only courts over which the California Governor has any authority.  *See* Cal. Gov. Exec. Order No. N-38-20 (referring to the "Judicial Branch" of California government and the authority of the "Judicial Branch" under Article VI, section 6 of the California Constitution to "adopt rules for court administration, practice, and procedure").

California, much less to an action pending in federal court in New York.  Accordingly, the Court

should decline to apply ER 9 to Wheatley-Diaz's PAGA claim.

**(c)** **Wheatley-Diaz Has Not Pled Any Circumstances to Warrant Application of Emergency Rule 9.**

Even if Wheatley-Diaz could overcome the obstacles to ER 9's application, which she

cannot, her attempt to avail herself of ER 9 fails because she has not pled any facts to suggest

that her failure to timely plead a PAGA claim was the result of extraordinary circumstances

related to the COVID-19 pandemic.  "Because Emergency Rule 9 was promulgated in response

to difficulties resulting from the COVID-19 pandemic, courts determining the application of

Emergency Rule 9 have considered whether a plaintiff faced any extraordinary circumstances

due to COVID-19 that prevented the timely filing of their lawsuit."  *Shubin*, 2022 WL 3577247,

at *3.  For example, in *Shubin*, the court held that ER 9 did not apply to toll the statute of

limitations on Plaintiff's negligence claims.  The court determined that the circumstances did not

warrant application of ER 9 because the rule was enacted as a form of equitable tolling to

address difficulties in investigating and preparing claims for filing during a widespread

shutdown, and the plaintiff did not allege that the COVID-19 pandemic or any other

extraordinary circumstances impeded her ability to file her claim.  *Id.  See also Goerss*, 2021 WL

4932134, at *4 (holding that, in addition to not being able to rely on Rule 9 because the plaintiff

was not in state court, plaintiff failed to demonstrate how the pandemic contributed to her

untimely filing); *Sholes*, 2021 WL 5567381, at *5 (plaintiff's invocation of ER 9 "unavailing"

including because he failed to cite extraordinary circumstances warranting its application).

The Third Amended Complaint is devoid of any allegations that Wheatley-Diaz's

deadline to file a PAGA claim should be tolled for pandemic-related reasons, much less the

extraordinary circumstances that courts have required to justify equitable tolling.  Indeed, it was

13

during the throes of the pandemic in March 2020 that Wheatley-Diaz joined this lawsuit as a proposed California class representative when the Plaintiffs filed their First Amended Complaint on March 30, 2020 and provided PAGA notice to the LWDA on March 31, 2020.  *See* Dkt. 29 ¶¶ 34, 49-50; TAC ¶ 407.  Moreover, Plaintiffs, who are represented by two sophisticated national labor and employment firms, were active in this case throughout the pandemic, as even a cursory review of the docket confirms.  Whatever Plaintiffs' reasons were for representing for more than a year that Wheatley-Diaz would withdraw as a named plaintiff and proposed California class representative, and the last minute reversal of that representation only a couple of days prior to the oral argument on their Motion for Leave, the fact is that by the time they notified the Court on September 13, 2022 that Wheatley-Diaz sought to file a PAGA claim, her claim was already long time-barred.  In what is now the *fourth* iteration of complaint in this case, Wheatley-Diaz has presented no factual allegations to justify any extraordinary circumstances to explain her lengthy delay.  Accordingly, ER 9 is inapplicable.

* * *

For the reasons discussed above, Wheatley-Diaz's PAGA claim is time-barred and must be dismissed with prejudice.

**B.    Plaintiff Ceppos's And Plaintiff Coker's PAGA Claims Should Be Dismissed.**

**1.    *Ceppos and Coker Did Not Timely Provide Notice to the LWDA.***

The Court must dismiss Ceppos's and Coker's PAGA claims because they failed to exhaust PAGA's administrative requirements. Because Ceppos and Coker last worked for the Campaign in March 2020, their deadline to provide notice to the LWDA of their intent to file PAGA claims was March 31, 2021 at the latest (assuming they worked through the last possible day in March).  *See* TAC ¶¶ 85, 87; *Brown*, 28 Cal. App. 5th at 839.  Yet, Ceppos and Coker did not provide notice to the LWDA until June 21, 2022, two years and almost three months after

14

their Campaign employment ended.  Their failure to timely satisfy the notice requirement

requires dismissal of their PAGA claims.  *See, e.g., Moreno,* 2022 WL 902597, at *2 (granting

motion to dismiss PAGA claims where plaintiffs sent their notices to LWDA more than a year

after the end of their employment); *Tuan Vo v. LoanMe, Inc.*, 2018 WL 6137577, at *2 (C.D.

Cal. Sept. 24, 2018) ("Putting aside that this court filing was itself one day past the limitations

period, Vo had not started administrative proceedings with the LWDA at that point.  So he could

not bring a PAGA claim.").

### 2.    *Ceppos's and Coker's Time to Exhaust PAGA Administrative Requirement Was Not Tolled.*

To the extent that Ceppos and Coker suggest that their June 21, 2022 PAGA notices are

timely because the statute of limitations was tolled by (a) the parties' May 18, 2021 tolling

agreement, and/or (b) ER 9, both arguments fail.

### (a)    **Ceppos's and Coker's Deadline to Provide Notice Lapsed Prior to the Execution of the Parties' Tolling Agreement.**

Contrary to Plaintiffs' allegation (*see* TAC ¶ 82), the parties' tolling agreement did not

extend Ceppos's or Coker's deadline to provide notice to the LWDA because their notice

deadline passed at the latest on March 31, 2021, more than a month *prior* to the parties'

execution of that agreement on May 18, 2021.  The tolling agreement expressly provides that

claims would be tolled as of the date of execution of the agreement and that the agreement would

not "revive any claim, cause of action, or allegation that is otherwise barred by any statute of

limitations or similar rule of law or equity prior to the effective date of th[e] Agreement."  Bloom

Dec. Ex 1.  Thus, the tolling agreement did not provide Ceppos or Coker with any additional

time to provide administrative notice to the LWDA because they were already barred from doing

so at the time the parties entered into the agreement.

**(b)      Emergency Rule 9 Does Not Affect the Deadline to Provide Notice to the LWDA.**

For the reasons discussed in Section III.A *supra*, ER 9 does not apply to Ceppos's or Coker's PAGA claims because the Judicial Council had no authority to enact ER 9 which conflicts with PAGA's statutory limitations period, and ER 9 does not apply in this New York federal court action.  Their PAGA claims fail for the additional reason that ER 9 did not extend the deadline for Ceppos or Coker to provide the required notice to the LWDA.

The plain language of ER 9 makes clear that it pertains only to the statute of limitations for civil causes of action – *i.e.* the deadline to file a claim in court.  *See* ER 9(a) ("Notwithstanding any other law, the statute of limitations and repose for *civil causes of actions* that exceed 180 days are tolled from April 6, 2020 until October 1, 2020.)  As the Advisory Committee Comment to ER 9 explains, "Emergency rule 9 is intended to apply broadly to toll any statute of limitations *on the filing of a pleading in court* asserting a civil cause of action."

The requirement that plaintiffs give notice to the LWDA of alleged Labor Code violations before bringing a PAGA action is set forth in California Labor Code § 2699.3.  Nothing in ER 9 purports to affect PAGA's notice requirement.  Because ER 9 does not have any effect on the deadline for a potential plaintiff to satisfy PAGA's notice requirements, Ceppos's and Coker's delay in waiting until June 21, 2022 to provide notice to the LWDA is fatal to their PAGA claims.

**(c)      Ceppos and Coker Have Not Pled Any Extraordinary Circumstances Warranting Application of Emergency Rule 9.**

Even if Ceppos or Coker could get past the other hurdles fatal to application of ER 9, they too have not pled any facts to justify their much delayed failure to timely exhaust their administrative requirements and bring PAGA claims here.  Like Wheatley-Diaz, Ceppos has been a named plaintiff in this case since at least March 30, 2020 when the First Amended

Complaint was filed, and Coker surfaced as a potential plaintiff no later than May 2021 (*see* Bloom Dec. Ex. 1).  Their counsel has been actively litigating this case throughout the pandemic, and they filed their Motion for Leave to file a third amended complaint to serve as proposed PAGA representatives in May 2022.  Yet neither Ceppos nor Coker provided notice to the LWDA until June 2022, *after* the Motion for Leave was submitted to the Court.  Plaintiffs have offered no justification for this lengthy delay, and application of ER 9 would not be appropriate under the circumstances.

* * *

Ceppos and Coker failed to timely exhaust PAGA's administrative requirements and bring PAGA claims, and they are not entitled to tolling.  Their PAGA claims must be dismissed.

### C.    Plaintiffs' FLSA Claims Should be Dismissed.

The Third Amended Complaint repeats verbatim the FLSA claims that Plaintiffs asserted in the Second Amended Complaint.  Those claims should be dismissed because the Campaign was not a covered enterprise and Plaintiffs have failed to present allegations sufficient to plausibly to allege that they were individually covered by the FLSA.

### 1.    *The Campaign Was Not A Covered Enterprise.*

As the Campaign explained in its original motion to dismiss (Dkt. 111), the FLSA simply does not apply to political campaigns, and its nonprofit mission of political advocacy did not include "commerce" within the meaning of the statute, because the Campaign conducted no activities for a "business purpose," as the statute requires.  29 U.S.C. § 203(r)(1).  As a result, nonprofit organizations are not FLSA-covered enterprises except to the extent that they engage in activities that "compete in the marketplace with ordinary commercial enterprises."  *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290) (1985); 29 C.F.R. § 779.214 (non-profit activities "are included in

an enterprise only when they are performed for a 'business' purpose").  Because Plaintiffs'
allegations in this regard have not changed since the original motion, and since the Court has not
yet addressed whether the Campaign was a covered enterprise, the Campaign incorporates by
reference its arguments from Section I.A of the original motion.

### 2.     *The Plaintiffs Are Not Covered Individuals.*

The Plaintiffs also fail to state a claim based on individual coverage on the grounds that
they were "engaged in commerce."  29 U.S.C. §§ 206(a), 207(a)(1).  That requirement is not
satisfied both because Plaintiffs, as field organizers for the Campaign, did not engage in
commercial activity with a business purpose, and because the allegations of the Third Amended
Complaint are not sufficient to satisfy even a looser reading of the "engaged in commerce"
requirement.

### (a)     The FLSA's Individual Coverage Provisions Do Not Extend to Workers Who Engage in Interstate Communication for Non-Commercial Purposes.

In denying the Campaign's motion to dismiss the Second Amended Complaint on this
point and finding that individual employees of non-profits may be covered by the FLSA if they
engage in interstate communications even for non-commercial purposes, the Court relied
substantially on *Bowrin v. Catholic Guardian Society*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006).
But *Bowrin* cited no case law for that conclusion; instead it relied entirely on a Department of
Labor ("DOL") Non-Administrator Opinion Letter and a section of the DOL's Field Operations
Handbook, neither of which has the force of law.  In any event, neither of the cited authorities
actually holds that the purpose of the interstate communications offered to substantiate individual
coverage is irrelevant.  The Opinion Letter, addressing FLSA coverage for churches and their
employees, mentions interstate phone calls as an example of "interstate commerce activities," but
without addressing the question of whether the purpose of those calls is relevant.  It goes on to

opine that custodians would not be individually covered unless they "regularly clean offices of the church or synagogue where goods are regularly produced for shipment across state lines," and that cooks would not be covered unless they are "ordering, receiving or preparing goods that are moving or will move in interstate commerce." The emphasis throughout is on commercial activity – not, for example, on interstate discussions of theology or charitable activities. The short section of the Field Operations Handbook similarly does not address whether the purpose of interstate calls is relevant in assessing individual coverage.

By contrast, the cases on which the Campaign relied did address the distinction directly. For example, in *Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005), the court squarely held that the plaintiffs' regular use of the Internet – as much an instrumentality of interstate commerce as a telephone – to help the children under their care with homework assignments was not sufficient for individual coverage because the use of the Internet was in furtherance of their non-commercial mission. *Id*. at 1292. This Court declined to give weight to *Kitchings* because the plaintiffs there offered "neither evidence nor argument" in support of individual coverage, Dkt. 258 at 14 n.3, but the *Kitchings* plaintiffs' failure to raise a material dispute of fact merely meant that the employers' *factual* evidence was unrebutted. The *Kitchings* court still held, on those undisputed facts, that use of the Internet for a non-commercial purpose was insufficient to establish individual coverage.

Similarly, in *Wirtz v. Sherman Enterprises, Inc*., 229 F. Supp. 746 (D. Md. 1964), one plaintiff failed to establish that he was "engaged in commerce" when performing his work servicing bowling machines, and the court held that he therefore failed to establish individual coverage despite making regular interstate reports on his work, because "the preparation and mailing of service reports for [his work] activity, as well as reports of the time which he spent on

that activity, have no direct and vital relation to interstate commerce." *Id.* at 752. *Here*, any reports the Plaintiffs may have submitted or other communications they may have had in furtherance of their entirely non-commercial, political advocacy activities similarly do not provide a basis for individual coverage, and the FLSA claim should be dismissed.

### (b)   Even Reading the FLSA Expansively, Plaintiffs Fail Plausibly to Allege Individual Coverage

A holding that interstate communications for purely non-commercial purposes satisfies the FLSA's individual coverage requirement still does not save Plaintiffs' FLSA claim, because they fail to allege sufficient facts to state a claim. The *Twombly/Iqbal* test ignores conclusory allegations that parrot statutory language or case law without providing the factual details necessary plausibly to state a claim, and Plaintiffs offer no more than such generalizations.

The TAC begins by alleging that field organizers predominantly engaged in purely local activities: "calling prospective voters . . ., door-to-door canvassing, and recruiting volunteers." TAC ¶ 59. It goes on to claim only minimal interstate activity: weekly conference calls with Campaign headquarters, *id.* ¶ 60, interstate "email blasts," *id.* ¶ 68, and a general allegation that they "regularly" communicated with prospective voters in other states, *id.* ¶¶ 69-72. There is nothing else: no allegations of how frequently any particular Plaintiff made interstate calls, no factual basis to conclude that such practices were widespread, nor any other details. None of the conclusory allegations Plaintiffs offer, alone or in combination, suffices to state a claim.

For example, in *Owusu v. Corona Tire Shop, Inc.*, 2013 WL 1680861(E.D.N.Y. Apr. 17, 2013), the court held that the plaintiff had failed to establish individual coverage despite uncontroverted testimony that he used a credit card machine to accept customer payment, which involved interstate communication, as often as daily – comparable to the loose allegations here that Plaintiffs received emails and calls from headquarters "daily" and "at least weekly."

Without a showing that Owusu had "used the credit card machine more frequently than that," the court held, "these activities are not sufficient to put Plaintiff within the ambit of the FLSA's coverage." *Id.* at *4. *See also Gonzalez v. Victoria G's Pizzeria LLC*, 2022 WL 842666, at *3 (E.D.N.Y. Mar. 22, 2022) (complaint's allegations that plaintiff had "contacts with interstate businesses on behalf of Defendants" insufficient); *Marcus v. Lominy*, 2022 WL 493688, at *15 (S.D.N.Y. Feb. 17, 2022) (assertions that a plaintiff had "ordered materials manufactured outside of New York, interacted with businesses outside of New York (including banks), and dealt with out-of-state insurance vendors, 'are vague . . . [and] provide no information about the frequency of those contacts, and therefore cannot not support an assertion that a substantial part of [his] work closely relates to interstate commerce").  Plaintiffs' allegations here are similarly deficient, and the FLSA claim should be dismissed.

## MOTION TO STRIKE

In addition to dismissing Plaintiffs' legally deficient claims, as set forth above, the Court should strike the allegations in the Third Amended Complaint that relate solely to Plaintiffs' dismissed common law causes of action for fraudulent inducement and promissory estoppel.[4]

On March 25, 2022, the Court issued an Opinion and Order dismissing with prejudice causes of action for fraudulent inducement and promissory estoppel Plaintiffs had pled in their Second Amended Complaint.  *See* Dkt. 258 (the "Dismissed Claims").

When Plaintiffs filed their Motion for Leave to file a third amended complaint, they sought permission to re-plead the Dismissed Claims, to which the Campaign objected.  *See* Dkts. 278-280, 282-286, 288.  The Court denied Plaintiffs' request, and instructed them to excise the

---

[4] TAC ¶¶ 3-58, 83, 85, 87, 89, 91, 93, 95, 97, 99, 101, 103, 105, 107, 109, 111, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 135, 137, 139, 141, 143, 145, 147, 149, 151, 153, 155, 157, 159, 161, 162, 164, 166, 168, 170, 172, 174, 176, 178, and 180.  For the Court's convenience, Defendant has identified the extraneous allegations in Bloom Dec. Ex. 2.

Dismissed Claims from their new complaint. *See* Bloom Dec. Ex. 3 at 34:23-35:11. ("I actually am going to deny the motion to amend to the extent it includes common law claims that have already been dismissed...So those should be excised from the proposed third amended complaint as filed on September 13.").[5]

Despite the Court's directive, Plaintiffs filed a 94-page Third Amended Complaint containing 407 numbered paragraphs. Although all of the causes of action pled in the new complaint concern unpaid overtime and relative derivative wage and hour claims based on the allegations that the Campaign misclassified Plaintiffs as exempt, 106 of the paragraphs concern factual allegations that relate solely to the Dismissed Claims. *See* note 5, *supra*.

## I. LEGAL STANDARD.

Fed. R. Civ. P. 12(f) authorizes courts to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter is that which has no essential or important relationship to the claim for relief, and impertinent materials consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005) (internal citation omitted). Scandalous matter includes material that "reflects unnecessarily on the defendant's moral character[.]" *Nachmany v. FXCM, Inc.*, 2020 WL 178413, at *8 (S.D.N.Y. Jan 9, 2020) (granting motion to strike factual allegations in complaint which related to dismissed claims and were irrelevant to remaining claims). Allegations in a complaint will be struck under Rule 12(f) if they "serve no purpose except to inflame the reader….have no real bearing on the subject matter or are likely to prejudice the movant." *Id.* Granting a motion to

---

[5] The Court also specifically advised Plaintiffs that "there is no need to replead a claim in order to preserve it for appeal," and cited to authority to support that well-grounded proposition. *See* Bloom Dec. Ex. 3 at 35.

strike is squarely within the court's discretion and is appropriate where no evidence in support of the allegation would be admissible. *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (granting motion to strike complaint's reference to defendant's criminal conviction and his income level because the allegations were immaterial and impertinent to the case); *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (granting motion to strike references to earlier proceedings because they were "inadmissible" and, "as a matter of law, immaterial under Rule 12(f)").

District courts in this circuit will exercise their discretion to strike allegations that pertain only to dismissed claims. *See, e.g., Nachmany*, 2020 WL 178413, at *8 (granting motion to strike irrelevant factual allegations which related to dismissed claims); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 216 (S.D.N.Y. 2006) ("[t]he Court agrees with Defendants that such claims should be stricken…as they are immaterial to the currently pending allegations that survived Defendants' initial motion to dismiss, and render an already lengthy complaint all the more unwieldy."); *Cassese v. Washington Mut., Inc.*, 2011 WL 13295945, at *2-3 (E.D.N.Y. June 7, 2011) (striking allegations that related to previously dismissed claims).

## II.   PLAINTIFFS' ALLEGATIONS RELATING TO THE DISMISSED CLAIMS SHOULD BE STRICKEN BECAUSE THEY HAVE NO CONNECTION TO PLAINTIFFS' WAGE-AND-HOUR CLAIMS.

Following the Court's March 25, 2022 Order, this is a wage and hour case only.  All sixteen causes of action pled in the Third Amended Complaint are for unpaid overtime and related claims, including alleged wage notice and recordkeeping violations, and are premised on Plaintiffs' allegations that the Campaign misclassified them as exempt from the FLSA and various state wage-and-hour laws.   *See* TAC ¶¶ 298-407.  The allegations that are pertinent to those causes of action concern Plaintiffs' alleged job duties, their hours actually worked, and their compensation for that time.

In contrast, the Dismissed Claims were premised on Plaintiffs' allegations that they and other field organizers were promised employment through the November 2020 general election.[6] These allegations have no bearing on Plaintiffs' classification under wage and hour laws, and no evidence in support of any alleged promise of employment would be admissible to prove their claims. The only conceivable purpose the inclusion of these allegations in the Third Amended Complaint serves is to "inflame" readers with a narrative the Court has already determined is not legally cognizable and cannot be remedied. The Campaign should not be prejudiced by having to respond to and litigate more than 100 allegations that do not have the remotest connection to the causes of action that remain in the case.

Plaintiffs' inclusion of the irrelevant allegations is particularly egregious given that the Court directed that they excise the Dismissed Claims from the Third Amended Complaint. *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 2009 WL 1748743 (N.D.N.Y. June 19, 2009) is instructive. In that case the plaintiff, "[i]gnoring the Court's insistence that she should not do so…reallege[d] each and every fact and allegation" that had previously been dismissed by the judge in a proposed amended complaint. *Id. at* *6. The court noted that Plaintiff ignored the court, despite having been put on notice that it was "crystalline clear" in the Second Circuit that a party filing an amended complaint need not include dismissed claims in order to preserve the right of appeal. *Id.* The court concluded that a "full-length recitation" of the prior iteration of the complaint was "fundamentally irrelevant" and would not permit the plaintiff to include the repled allegations relating to the dismissed claims. *Id.*

---

[6]  *See* n. 4, *supra.* Underscoring their lack of relevance to this action, the first 58 numbered paragraphs in the TAC are included in a section entitled, "The Campaign's False Promises Injured Thousands of Former Employees." The TAC does not contain any relevant allegations concerning Plaintiffs' job duties or hours of work until paragraph 59.

Similar circumstances are present here.  At the September 15 hearing, the Court informed Plaintiffs that it did not see any reason why they needed to replead their common law claims, and cited authority that they did not need to replead their claims to preserve them for appeal.  *See* Sept. 15 Transcript at 34-35 (citing *In re: LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *11 (S.D.N.Y. Apr. 15, 2016) (striking immaterial and irrelevant allegations under Rule 12(f) and directing plaintiffs not to replead definitively dismissed claims).  The Court then directed Plaintiffs to excise the Dismissed Claims.  *Id.*

Notwithstanding this clear direction from the Court, Plaintiffs nonetheless proceeded to file an unwieldy, 400-plus paragraph Third Amended Complaint that is nearly identical to the prior iteration of the complaint.  Fully 25% of the Third Amended Complaint consists of repled allegations that relate solely to the Dismissed Claims.  This lengthy story fits squarely within the definition of "immaterial [and] impertinent" matter.  Accordingly the Court should strike the irrelevant allegations, as identified in Ex. 2 to the Bloom Declaration, pursuant to Rule 12(f).

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant the Campaign's motion to dismiss Plaintiffs' PAGA and FLSA claims with prejudice, and strike the allegations that relate solely to the Dismissed Claims.

Dated: October 4, 2022

PROSKAUER ROSE LLP

*/s/ Elise M. Bloom*
Elise M. Bloom
Rachel S. Philion
Pinchos N. Goldberg
Allison L. Martin

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
ebloom@proskauer.com
rphilion@proskauer.com
pgoldberg@proskauer.com
amartin@proskauer.com

PROSKAUER ROSE LLP

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(T)  617.526.9850
mbatten@proskauer.com

VENABLE LLP

Nicholas M. Reiter
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(T)  212.307.5500
nmreiter@venable.com

*Attorneys for Defendant*
MIKE BLOOMBERG 2020, INC.