# EXHIBIT 3

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                            :
                                      Docket #1:20-cv-02489-
WOOD,                             : LTS-GWG

                    Plaintiff,    :

   - against -                    :

MIKE BLOOMBERG 2020, INC.,        : New York, New York
                                      September 15, 2021
                    Defendant.    :

------------------------------------ :


                         PROCEEDINGS BEFORE
                THE HONORABLE GABRIEL W. GORENSTEIN,
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          OUTTEN & GOLDEN LLP
                        BY:  HANNAH COLE-CHU, ESQ.
                        601 Massachusetts Avenue N.W.
                        Suite 200 West
                        Washington, D.C.  20001

                        OUTTEN & GOLDEN, LLP
                        BY:  THEANNE LIU, ESQ.
                           MICHAEL DANNA, ESQ.
                        685 Third Avenue, 25th Floor
                        New York, New York 10017




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

For Defendant:          PROSKAUER ROSE LLP
                        BY:  ELISE BLOOM, ESQ.
                             ALLISON MARTIN, ESQ.
                             PINCHOS GOLDBERG, ESQ.
                        11 Times Square
                        New York, New York 10036

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                      PROCEEDINGS                 4

 2          THE CLERK:  Good morning, this is the matter

 3 of Wood versus Mike Bloomberg 2020, case number

 4 20cv2489.  Starting with plaintiff's counsel, please

 5 state your appearance for the record.

 6          MS. HANNAH COLE-CHU:  Hannah Cole-Chu from Outten

 7 & Golden representing the plaintiffs --

 8          THE COURT:  I'm sorry, I didn't hear the

 9 beginning.  Your name please, I'm sorry.

10          MS. HANNAH COLE-CHU:  Good morning, Your

11 Honor, my name's Hannah Cole-Chu representing the

12 plaintiffs from Outten & Golden.  With me is --

13          THE COURT:  Can you give me the appearance

14 sheet?  Thanks.

15          MS. COLE-CHU:  -- Theanne Liu and Michael

16 Danna.

17          THE COURT:  Okay.

18          MS. ALISE BLOOM:  Good morning, Your Honor,

19 Alise Bloom from Proskauer Rose representing the

20 defendant Mike Bloomberg 2020, and I'm joined by my

21 colleagues Allison Martin, Noa Baddish, and Pinny

22 Goldberg.

23          THE COURT:  Okay, welcome everyone.  We're, of

24 course, here on the motion to amend.  It's hard to know

25 where to begin with this.  I guess maybe – well, let's
```

|   | PROCEEDINGS | 5 |

1   |   PROCEEDINGS                                    5

2   start with the sea change that apparently occurred which

3   is that the individual, whose name I now need to find,

4   who everyone originally thought was not going to be part

5   of this case is, in fact, going to – the person who

6   filed the claim is going to be, remain as part of this

7   case.  Is that right?  I guess this is a question for

8   Ms. Cole-Chu.

9          MS. COLE-CHU:   That's correct, Your Honor.

10  The name is plaintiff Wheatley-Diaz.

11         THE COURT:   Sorry?  Wheatley-Diaz, that's

12  right.  Okay, so I guess, first of all – let's do this

13  one plaintiff at a time.  Let's just talk about

14  Wheatley-Diaz for a while.  I guess what I would've

15  thought would be that if there was some problem with the

16  claim proceeding at all, it somehow would've come up

17  earlier.  And the defendants, I guess they have no

18  reason to since they didn't Wheatley-Diaz was going to

19  be part of the case.  But I'm trying to understand what

20  the problem is with Wheatley-Diaz being part of the

21  case.  So maybe I should hear from the defendants on

22  this, Ms. Bloom.

23         MS. BLOOM:   Certainly, Your Honor.  The

24  problem as it stands today is that it's our position

25  that Ms. Wheatley-Diaz is time-barred from pursuing her

```
 1                        PROCEEDINGS                6
 2   PAGA claim at this point.  And I can walk the Court
 3   through the chronology if that would be helpful.
 4           THE COURT:   Let me try it myself because it
 5   might make it easier for me to understand it.  There was
 6   no PAGA claim originally obviously.  Not sure why that
 7   would be so, but I guess – I'm not going to worry about
 8   that.  So there's no question that the claim would have
 9   been timely if filed a year and 65 years after whenever
10   that claim was filed with the California agency.  Are
11   you with me so far?
12           MS. BLOOM:   Yes, Your Honor.
13           THE COURT:   Okay, and when did that date
14   expire from your point of view, putting aside tolling
15   and agreements and everything else?
16           MS. BLOOM:   June 5 of 2020.  And the one thing
17   I would point out that I think is important, well, is
18   significant with regard to that date is on May 18 of
19   2020 the plaintiffs had filed their second amended
20   complaint, and had they intended to pursue this claim
21   with Ms. Wheatley-Diaz, they simply could've waited
22   until June 5, just like 17 days later, and they could've
23   at that point or at some point, at that point they could
24   have filed the claim for Ms. Wheatley-Diaz.  I'm sorry,
25   I may be confusing you.  June 5 of 2020 is the first day
```

1

2  that Wheatley-Diaz could've filed her PAGA claim.

3          THE COURT:   That's the date I meant, and maybe

4  we should stop using the word claim and start using

5  cause of action and reserve claim for the thing that's

6  given to the agency just to be clear.

7          MS. BLOOM:   Okay.  Sure.

8          THE COURT:   So she could've filed a cause of

9  action June 5, 2020, and, of course, should could've

10  filed a cause of action later, but your position would

11  be you could only go back to collect damages or alleged

12  conduct for a year and 65 days prior to whatever date

13  she filed, right, Ms. Bloom?

14          MS. BLOOM:   Correct.

15          THE COURT:   Okay.  Now, let's assume for the

16  moment that I reject your argument that California

17  tolling order from the court somehow proffer that would

18  add 178 days to the June 5 date, is that right?

19          MS. BLOOM:   If you reject our argument that

20  the California emergency rule applies here, then I

21  believe she would be timely.

22          THE COURT:   Ah.  I don't need to deal with the

23  tolling agreement in that case?

24          MS. BLOOM:   Right, because the tolling –

25  exactly.

PROCEEDINGS                                    8

1

2          THE COURT:   Because the tolling, because your

3    argument would take effect at that point.

4          MS. BLOOM:   I'm sorry.

5          THE COURT:   Because your argument, your own

6    stipulation would take us the rest of the way, is that

7    right, Ms. Bloom?

8          MS. BLOOM:   I'm not sure I understand the

9    question, I'm sorry.

10          THE COURT:   Well, I'm adding 178 days to June

11   5, and I'm quite certain it's not, doesn't take us to

12   2022.  So I'm trying to understand why you think it's

13   okay if the 178 days is added.

14          MS. BLOOM:   The reason why I think it's okay

15   is because we had the intervening tolling agreement and

16   from our perspective --

17          THE COURT:   That's what I just said.  I said

18   it's your agreement that allows, that takes us till

19   today.

20          MS. BLOOM:   Okay, I'm sorry.

21          THE COURT:   Okay, maybe I was unclear.  Okay,

22   so your complaint about Wheatley-Diaz turns solely on

23   the validity of that order, the emergency rule, is that

24   right?

25          MS. BLOOM:   As to whether her claim is timely,

```
 1                          PROCEEDINGS                      9

 2   that is correct.  I'm sorry, her cause of action.

 3            THE COURT:   So that's the only barrier to this

 4   case proceeding is whether that California rule is

 5   valid.

 6            MS. BLOOM:   As to her cause of action,

 7   correct.

 8            THE COURT:   Okay.  Now let's assume that no

 9   one has supplied any case law on this topic, except for

10   one case I think that now was pointed out by the

11   plaintiffs, where some California court said, yep,

12   that's the rule and we're following it.  How am I

13   supposed to say that's incorrect?

14            MS. BLOOM:   Your Honor, I believe that we

15   submitted several cases to you where federal courts –

16   and I can give you the citations – held that that rule

17   did not apply in federal court, that it was limited to

18   state court.

19            THE COURT:   If you did, I think I missed it.

20   So tell me where they're cited.

21              (pause in proceeding)

22            MS. BLOOM:   I'm going to give – there's four

23   cases, Your Honor, and I'll give you the cites to the

24   cases --

25            THE COURT:   Why don't you give me the page of
```

PROCEEDINGS                    10

1

2    your brief where it's cited or letter, wherever it is.

3    Tell me the document.

4           MS. BLOOM:   Okay, my fault, Your Honor, they

5    were not cited in our brief.  There are just four cases

6    that we've become of aware of.

7           THE COURT:   Okay, well, I don't know how you

8    think I'm supposed to adjudicate an issue that you don't

9    bring to my attention.  So now you're – I mean you had a

10   chance, you know, this issue was raised by the plaintiff

11   and I thought, okay, what's the defendant going to say

12   about this, and you had nothing to say.  You just said

13   we don't think it's constitutional without citing a

14   similar case.  The other side pointed out you failed to

15   cite a case.

16          Well, I'm willing to hear one of the cases.

17   Give me your best one.

18          MS. BLOOM:   Shuvan v. Universal Vacation Club,

19   and the cite is 2022 W.L. 3577247.  It's from the

20   Central District of California from August 18 of 2022.

21   And I've got three others for you as well.

22          THE COURT:   Well, let me just take one.

23          (pause in proceeding)

24          THE COURT:   All right, you don't have this

25   case.  You're probably at a disadvantage here.

```
 1                      PROCEEDINGS                11
 2            MS. COLE-CHU:   Plaintiffs are not aware of the
 3  case.
 4            THE COURT:   I'm always saying we should just
 5  adjourn this proceeding.
 6            (pause in proceeding)
 7            THE COURT:   All right, well, I certainly am
 8  not going to decide this adversely to the plaintiffs
 9  without them having a chance to brief it since it was
10  just sprung on them.  But what this case appears to be
11  suggesting is that the rule applies in California courts
12  and that there's some dispute about whether it applies
13  elsewhere.  I don't know if there's adverse case law.
14  So I don't know what to do at this point.  If there's a
15  way for you to make the argument, and I'm talking to the
16  plaintiff, in the absence of that tolling provision as
17  to Wheatley-Diaz, I'm happy to hear it.  Do you have a –
18  is there an argument on that point or do you need the
19  tolling provision?
20            MS. COLE-CHU:   Yes, Your Honor.
21            THE COURT:   Okay, so let's see, if you win on
22  that anyway, I won't have to worry about this.  Go
23  ahead.
24            MS. COLE-CHU:   Yes, thank you, Your Honor,
25  good morning.  The plaintiffs agree that the dispute
```

1

2    between the parties hinges on this timeliness question.

3    You know, as we set out in our briefing, our position is

4    that the California, the emergency tolling issue by the

5    California court system is valid and applies here.  And

6    under that tolling and the private tolling agreement

7    between the parties, all three plaintiffs have timely

8    filed their PAGA notices or timely bringing their claims

9    in this lawsuit.  You know, I think it's important to

10   note that the standard here and the element that we're

11   discussing under the standard is futility, and the

12   standard is whether the party moving to amend has no

13   chance of succeeding in opposing a motion to dismiss.

14          And, you know, we have not had the opportunity

15   to review this case or look for contrary authority, but,

16   you know, even recognizing that some authority out there

17   like the authority that my opposing counsel is citing

18   exists, we still contend that the amendment is not

19   futile.

20          First, because it is clear that this is an open

21   question whether the, you know, the applicability of

22   the, and the validity of the emergency rule issued by

23   the California court system, you know, as you noted, and

24   we cited in our brief there is no case law invalidating

25   the rule.  And even if there is some question regarding

1
2  the validity of the rule or the (indiscernible) is

3  correct that it is invalid, the claim should still

4  proceed.  Plaintiffs would be entitled to equitable

5  tolling --

6          THE COURT:   Okay, so I'm just trying to hone

7  in on this question.  So if you don't have the emergency

8  rule, do you have to rely on equitable tolling?

9          MS. COLE-CHU:   That's correct, we would, yeah,

10 plaintiffs would be entitled to equitable tolling --

11         THE COURT:   See, I don't think that's

12 (inaudible) either.  I mean we have elements, I mean it

13 was mentioned, but there are elements of equitable

14 tolling that are described in, you know, federal case

15 law.  I assume it's a federal law has to govern this.

16 Would you agree?  Equitable tolling?

17         MS. COLE-CHU:   Correct, yes.

18         THE COURT:   Okay, so – did you think you've

19 briefed equitable tolling and, if so, where?

20         MS. COLE-CHU:   We did not brief equitable

21 tolling.  It's not a claim that needs to be pled, and

22 our position – we're focusing on the futility inquiry

23 and our position is that the claim should proceed so the

24 parties have an opportunity to obtain discovery on the

25 equitable tolling relief.

```
 1                        PROCEEDINGS              14
 2            THE COURT:  Oh, well, that's unusual.  Usually
 3  plaintiffs give me the reasons why they're equitably
 4  tolling at this stage.
 5            MS. COLE-CHU:  We can.  We can submit briefing
 6  on that, and I can, we can discuss it now as well.
 7            THE COURT:  Well, I'm not sure any point with
 8  all these things hanging out unbriefed to start trying
 9  to do this all orally.  Okay, so you need equitable
10  tolling if you don't win on – okay, I mean this has to
11  be briefed.  I don't know what else we can do.  I don't
12  know.  It is what it is.  So I mean briefing on the
13  California emergency rule and on equitable tolling, and
14  we'll talk about how to do that.
15            Now, I guess maybe we should talk about the
16  other two plaintiffs, Ceppos and the other one.  You
17  will think, you know, I have all this briefing about
18  them, none of which – I guess – don't they also have to
19  overcome, they have to overcome the 178 hurdle and
20  equitable tolling too, do they not?  Let me get the
21  defendant's view.  Do they have the exact same problem?
22  I'm not saying the only problem, but do they at a
23  minimum have those two problems?
24            MS. BLOOM:  At a minimum they have those two
25  problems, yes.
```

| | PROCEEDINGS | 15 |

1

2          THE COURT:   Right.  So I mean it seems like

3    the equitable tolling should've been briefed as to those

4    two in our first round.  I'm not sure why that hasn't

5    happened.  At 178, I mean that's the plaintiff's fault,

6    178 is the defendant's fault, so I could say everyone

7    bears some fault here.  Okay, so now I'm wondering if

8    it's even worth going over the additional problems that

9    Ceppos have.  Is there any reason why I should be

10   torturing myself with that?  Because if Wheatley-Diaz is

11   in – I guess you want to be able to assert that they, I

12   mean do you need to plead – they're already plaintiffs

13   in the case, are they not?

14         MS. COLE-CHU:   That's correct, Your Honor.

15         THE COURT:   Yeah --

16         MS. COLE-CHU:   Pardon me, I believe Nick

17   Kocher (phonetic) is not already a named plaintiff.  He

18   is an opt-in.

19         THE COURT:   Okay, but can't I put off – let's

20   assume, and I'm not saying this is going to happen, but

21   in the even that I found that Wheatley-Diaz was timely,

22   why do I need to decide the Ceppos problem?  From the

23   defendant's point of view, let me ask them first.

24         MS. BLOOM:   I don't think you do.

25         THE COURT:   Yeah, they can sit – you don't

PROCEEDINGS                    16

 1
 2    care if they're plaintiffs I suppose.  I mean they don't
 3    want to be time-barred, but let's say something God
 4    forbid happened to Wheatley-Diaz, they're going to want
 5    to bring in Ceppos and Colon.
 6            MS. BLOOM:   It would be our position that they
 7    were not able to do that.
 8            THE COURT:   Right, but I don't want to decide
 9    that now unless something happened to Wheatley-Diaz.  So
10    can't they sit as plaintiffs in the complaint without,
11    just the way, just as plaintiffs without - maybe they
12    can't.  Is there some way for me to put this off without
13    them being in a time-barred problem that I created?  Do
14    you see my problem?
15            MS. BLOOM:   I think there are plaintiffs for
16    other causes of action.  I think the whole issue here is
17    whether or not they could be substituted - because the
18    plaintiffs need a plaintiff, a timely plaintiff who's
19    met all the prerequisites for purposes of their PAGA
20    claim.  And my understanding is that when they first
21    decided to assert the PAGA claim, they were going to use
22    Wheatley-Diaz and then something changed, I'm not privy
23    to that information, and she didn't want to be the PAGA
24    person.  And that was sort of how we ended up with the
25    question about whether the other two potentially had

```
 1                           PROCEEDINGS                    17
 2   timely claims which we don't believe that they do.  But
 3   I think once we got to the place where the plaintiffs
 4   realized that if Wheatley-Diaz was time-barred, that
 5   these other two people might have timeliness questions.
 6   That was when I think it was last week or last Thursday
 7   or Friday they said but, wait, Wheatley-Diaz changed her
 8   mind, and now she'll come back in as PAGA.
 9          So you don't need, you only need one person who
10   satisfies all the requirements.
11          THE COURT:  But here's my issue.  If I'm
12   plaintiff, I want the other two in if they're valid in
13   case something happens to Wheatley-Diaz.  And in order
14   for that to happen, I have to go through the thing that
15   actually was briefed and figure out whether they could
16   serve that role.  It seems to me not a good use of
17   resources for me to do that unless the issue then comes
18   up, and I think you kind of agreed with that.  But I
19   just want to make sure that we do it with a mechanism
20   that you would be unable to come back later if something
21   happened to Wheatley-Diaz and say not only does Ceppos
22   have the problems I addressed here, but there's been
23   this delay from now until whenever they get proposed to
24   replace Wheatley-Diaz that's causing some additional
25   problem.  Do you see my issue?
```

```
 1                          PROCEEDINGS                18
 2              MS. BLOOM:   I do.  If we take things as they
 3    sit today or when the Court, whenever the Court reaches
 4    a decision as to Wheatley-Diaz, what I think you're
 5    asking me is whether, suppose something happened to
 6    Wheatley-Diaz, whether we would stand on the record that
 7    we currently have with regard to the two other people on
 8    timeliness, on assignability of the claim - because I
 9    want to be clear, we have that assignability argument,
10    and that would not go away.
11              THE COURT:   All your arguments, yeah.
12              MS. BLOOM:   Yeah, so we would stand on the
13    record as it exists as of the time of your decision as
14    to Wheatley-Diaz.
15              THE COURT:   Okay.
16              MS. BLOOM:   Yes, I believe that's --
17              THE COURT:   Is there anything about the
18    phrasing of the complaint, the proposed complaint that
19    sort of announces them as representatives or not?  I
20    forget.
21              MS. COLE-CHU:   Yes, Your Honor, they are named
22    as PAGA representatives and California class
23    representatives in the proposed third amended complaint.
24              THE COURT:   Okay, well, I could issue, I could
25    say, again, if plaintiffs win on Wheatley-Diaz, I could
```

1

2    say they can file the complaint, it's without prejudice

3    to an argument that the defendants could make that they

4    can't serve as representatives in the future should that

5    become an issue.  I think that's maybe the simple way

6    for me to deal with it.

7         Okay, so I mean I had prepared until I got

8    those letters yesterday to try to deal with all these

9    issues, and I'm lifting up the briefs as I do it,

10   relating to Ceppos and the other person, but that's not

11   where we are.  So let's think about how to brief this.

12   I think it's your, I mean it's your burden on equitable

13   tolling, so you certainly should go first as to whatever

14   claims you're making on equitable tolling.  If you have

15   to put in - let me think about this.  Yeah, you haven't

16   exactly pled equitable tolling.  I'm not sure you're

17   required to plead it.  I'm just thinking about this

18   procedurally.

19        Do you need to go outside the record on

20   equitable tolling?  In other words, do you need to file

21   affidavits or are you going to rely on, you know, the

22   record as it exists and pleadings and so forth or don't

23   you know?

24        MS. COLE-CHU:  I'm not sure I can say with

25   certainty at this point, but it's possible we may not

```
 1                           PROCEEDINGS                    20
 2  need to go outside the record.
 3             THE COURT:   Okay.  You think I'd know this by
 4  now, but I'm trying to think about what I've done in the
 5  past when a complaint is potentially untimely, there's a
 6  motion to amend, and the plaintiff, you know, wants to
 7  take advantage of equitable tolling.  I feel like they
 8  have made the allegations in the complaint about
 9  equitable tolling.  You know, they're not being tested
10  factually.  The allegations are enough.  And then, of
11  course, the defendant is free to move to dismiss on
12  statute of limitations ground later on.  But I don't
13  think, you know, if there were some factual dispute
14  about equitable tolling, it would be decided on the
15  motion to amend.
16             You know, it's easiest enough if you're
17  relying, if all you're relying on is, you know, some
18  facts in the record that already exist as part of the
19  pleadings.  But if you need to have additional facts,
20  then it seems to me they should be part of the proposed
21  amended complaint that show that it's not time-barred.
22  First of all, I'm using a little bit – do people
23  understand what I'm talking about and do they have an
24  answer?  First from the plaintiff.
25             MS. COLE-CHU:   I just – (pause) – I think
```

```
 1                        PROCEEDINGS                    21
 2   that, so first I'd like to note, Your Honor, that
 3   plaintiff Ceppos and Kochers (phonetic) claims causes of
 4   action also rise and fall on emergency order as well.
 5   And I do believe that the resolution of they're, whether
 6   they're appropriate party representatives or not, which
 7   they are, also can be resolved through --
 8             THE COURT:   Defendants don't think that which
 9   is why I have all these briefs.  That's not enough for
10   them.  They have other problems.  They have this late
11   claim problem, they have all kinds of other problems.
12   I'm putting all that off.  Right now, and I've told you
13   how I'm putting it off.  I'm going to say, you know, if
14   Wheatley-Diaz were good, I'm going to say we're going
15   forward with Wheatley-Diaz.  If there's ever a problem
16   in the future, that could be raised in the future, you
17   know, based upon the current record.  That's not my
18   question.  Put them out of your mind.  I'm just talking
19   about Wheatley-Diaz because you have told me that you
20   need equitable tolling in the event you lose on the
21   emergency rule issue.  Right?
22             MS. COLE-CHU:   Correct.
23             THE COURT:   So what I've been musing about is
24   what would happen if you needed to actually allege facts
25   outside the record on equitable tolling.  If you have to
```

PROCEEDINGS                              22

1

2    do that in the amended complaint, you're supposed to do

3    affidavits.  That's what I've been thinking about.  If

4    you have a view on it, fine; if you don't, I've already

5    said I'm going to ask both sides.

6           MS. COLE-CHU:  Yes, Your Honor, I – in our

7    view equitable tolling is not something that needs to be

8    put in the complaint.  It's in response to the defense

9    of timeliness or statute of limitations.  And so this is

10   why we are, our position is that the claims should

11   proceed and the parties should be able to take discovery

12   on the issue of equitable tolling.

13          THE COURT:  Okay, so your view is even if they

14   win on, I mean your view is that you can't oppose a

15   motion to amend on statute of limitations grounds if the

16   plaintiff says equitable tolling without explaining what

17   it is or how it works or why it applies.  The complaint

18   has to be filed, and then equitable tolling has to be

19   dealt with on a separate motion to dismiss, is that what

20   you're saying?

21          MS. COLE-CHU:  Well, our position is that we

22   should be entitled to gather discovery on the equitable

23   tolling question.

24          THE COURT:  It's very unusual for a plaintiff

25   who's asserting equitable tolling to need discovery on

PROCEEDINGS                    23

1

2    it.  Maybe the defendant might need discovery on it; I'm

3    not quite sure why you would need discovery on it.  Why

4    would you need discovery on it?  Isn't the knowledge all

5    within your ken?

6              MS. COLE-CHU:  Yes, I think, as I stated, it's

7    very possible that we would be able to do all of this on

8    the record, but based on our experience this is not

9    something that needs to be put in the complaint; it's

10   something, it's an issue that's dealt with --

11             THE COURT:  No, I'll accept it does need to be

12   put in the complaint because in your view it's not time-

13   barred based upon the emergency rule.  So I guess I

14   understand that.  But we're still back to my issue which

15   is how does it get raised or should get raised.  Anyway,

16   Ms. Bloom, do you have some view on this?

17             MS. BLOOM:  I'm not sure that it would be –

18   I'm not sure it would get raised here, but I would've

19   thought that they needed to plead it in the complaint.

20   I'm not sure why I'm saying that, but I would've thought

21   – because the complaints that I have seen --

22             THE COURT:  I would've thought it too if the

23   complaint facially showed a lack of timeliness, but in

24   their view it doesn't because they're viewing this

25   emergency rule as saving them.

```
 1                     PROCEEDINGS                    24

 2           MS. BLOOM:   Okay, I, yes, I understand that

 3    point, and I think what I'm struggling with is that

 4    there's been so much back and forth in this case about

 5    Ms. Wheatley-Diaz, she was in, she was out, she wouldn't

 6    give discovery because she was going to be out, then she

 7    would only give very limited discovery.  So when it came

 8    time to file the third amended complaint, I mean they

 9    certainly, I mean maybe - I can't speak for them, but I

10    would've thought that they would've at least been

11    concerned that potentially there was a timeliness issue

12    and that if there were circumstances to justify

13    equitable tolling, that those would have appeared in the

14    third amended complaint.

15           THE COURT:   Okay, I mean that's a very case

16    specific argument.  I guess I'm thinking about the

17    problem more generally.  I'm not sure that whatever the

18    rule is I don't think it's going to vary from case to

19    case based upon who was cooperative during discovery.

20    So let's put that out of the picture.  Do you have some

21    view generically about how such a claim gets raised by a

22    plaintiff who's otherwise, who's merely responding to an

23    argument from the defendant about the timeliness that in

24    their view doesn't apply even without equitable tolling?

25           MS. BLOOM:   I actually really don't because I
```

PROCEEDINGS                     25

1

2    have never been in a situation before where it hasn't

3    appeared in the complaint other than, and I really need

4    to go back and look at the decision, I think very

5    recently there is a situation where the plaintiffs

6    attempted to raise equitable tolling in response to a

7    motion to dismiss, and I believe that was rejected, but

8    I don't want to speak out of turn.  So --

9              THE COURT:   Motion to dismiss.

10             MS. BLOOM:   Yeah.

11             THE COURT:   Right.  Well, this is now – it may

12   be that that's where this should be raised, in which

13   case maybe the rule is, and certainly it would make my

14   life simpler, is to say, you know what, the complaint is

15   facially valid.  I think that's really true now that I'm

16   thinking about it.  I think there's a limit to what

17   you're supposed to do on a motion to amend.  I think

18   some of this has to be reserved to a motion to dismiss

19   on statute of limitations grounds.  I think you have to

20   attack the face of the complaint.  So let's think about

21   this.

22             The problem is if you win on the California

23   rule, in a sense you have attacked the face of the

24   complaint.  This is an interesting issue.  I supposed

25   you could throw something in the briefs about it, about,

PROCEEDINGS                                        26

you know, if they try to go outside the record, you

know, about how we're going to deal with that.  I mean

it's going to get raised one way or another, and it

almost doesn't matter.  It's just a question of whether

this complaint gets filed, and then you get to attack it

on statute of limitations grounds, and they'll raise

equitable tolling as part of some motion to dismiss as

opposed to being raised upfront on a motion to amend.

        You know, there is some case law suggesting

that futility, whether deny on grounds of futility, is a

matter of discretion anyway.  And then I kind of do have

the authority to say just file this complaint and then

make all these arguments as part of the motion to

dismiss, and I may end up doing that.  It just might be

procedurally cleaner.  But I guess at a minimum I'd want

briefing on this emergency rule.

        I don't know.  I mean is there really any – it

just seems cleaner if the complaint is filed and then

you're free to attack it on a motion to dismiss.  Do you

really care as long as the grant of the motion to amend

is without prejudice to any motion to dismiss you want

to make?

        MS. BLOOM:   Well, I do care because I do think

that they're time-barred, and I'm also – and there's two

```
 1                          PROCEEDINGS                    27

 2   other pieces of the amended complaint that regardless of

 3   what we do on this --

 4             THE COURT:   That I'm willing to rule on.

 5             MS. BLOOM:   Okay, thank you.  But with regard

 6   to the --

 7             THE COURT:   Well, thank me but you're not

 8   going to like the ruling.

 9             MS. BLOOM:   With regard to --

10             THE COURT:   Let's assume those are out of the

11   picture.

12             MS. BLOOM:   Yes, it is from our perspective

13   the Court should still deny the motion to amend on the

14   grounds of futility because at the very least like my

15   client has expended time and resources based on the

16   representation that Ms. Wheatley-Diaz was not going to

17   be proceeding as a PAGA plaintiff.

18             THE COURT:   Okay, that's, of course, a

19   completely different issue, and I understand your client

20   would not be happy that they've briefed something that

21   turned out, a number of issues that turned out to be not

22   relevant given that she's ready to come back in.  I know

23   you want to be compensated for that.  I notice you

24   didn't cite a single case for it.  I'm not sure what the

25   authority would be for that without a finding of bad
```

```
 1                        PROCEEDINGS                    28
 2  faith which I certainly don't have a record for at this
 3  point.  So I don't think you have a 1927 claim.  I'm not
 4  sure you get your fees for that.  Do you have any ideas?
 5            MS. BLOOM:   I think it – I would think it
 6  could fall under the ambit of 1927 and based on where we
 7  started and the fact that last Thursday they
 8  resurrected, they said they were ready to her come back
 9  in without even an explanation as to why she wasn't in
10  the first time and now she's willing to come back in.
11            THE COURT:   Okay.  Well, I mean you're
12  obviously free at some point to make a 1927 application.
13  Just recognize the Second Circuit has said there has to
14  be intentional conduct amounting to bad faith, not
15  someone changing their mind, if that's what happened.
16            Okay, so I hear your answer which is you rather
17  have it decided on the motion to amend.  I still haven't
18  quite heard the prejudice because whatever prejudice has
19  happened has already happened.  It's not going to be
20  affected by the procedural vehicle by which the statute
21  of limitations argument is raised.  And, in fact, it
22  might be more effective to have it raised by the vehicle
23  that it's traditionally raised which is a motion to
24  dismiss which allows, you know, submission of affidavits
25  if that's what the plaintiff intends to do.  Kind of a
```

```
 1                          PROCEEDINGS                    29
 2   fuller consideration.  But I certainly understand you're
 3   not agreeing to this, so that answers my question.
 4           All right, I will - let me just - give me a
 5   moment here.  I'm just going to think about what I want
 6   to do in the very short term.  So can you pause the
 7   recording.  Folks, you can remain seated while I --
 8           (pause in proceeding)
 9           THE COURT:  Okay, so I was researching the
10   issue of what happens when equitable tolling gets raised
11   on a motion to amend, and as with everything else, I
12   think there's a lot of discretion here.  Though case law
13   does say, "Arguments over the statute of limitations,
14   especially if they involve the defense of equitable
15   tolling, are better addressed at a later stage of the
16   case as a court would only deny a motion to amend if it
17   is clear on the face of the pleadings that the claims
18   would be barred by the statute of limitations and if the
19   issue would not need to be more fully briefed."  Hybrid
20   Athletics LLC, sorry, the cite is Tatum v. Perelmutter,
21   2021 W.L. 165088.  It's a District of Connecticut case
22   at 2021.  There's also plenty of case law that says a
23   statute of limitations is an affirmative defense and
24   that plaintiff is not required to allege facts of the
25   complaint to overcome the affirmative defense.
```

```
 1                          PROCEEDINGS                    30
 2              To the extent that there were any facts being
 3    offered beyond the pleadings of the complaint, it seems
 4    like it would be a lot more efficient not only to deal
 5    with this later but maybe even summary judgment if there
 6    were a factual dispute.
 7              I gather that these claims under – tell me if
 8    I'm wrong – the claims under the California law, the
 9    PAGA law, are another way of getting damages that are
10    otherwise available under the FLSA or am I wrong on
11    that?
12              MS. COLE-CHU:   Under California state law,
13    under violations of the California labor code, Your
14    Honor, yes.  And in this way there's no additional
15    discovery, there's no additional burden imposed on
16    defendants in pleading the claims and letting them in.
17    And this is an issue of California law, Your Honor.  And
18    by the time the parties deal with it as summary
19    judgment, we may have more authority on the issue.
20              THE COURT:   Okay, so the answer to my question
21    is the factual basis overlaps with existing claims, is
22    that correct?
23              MS. COLE-CHU:   That's correct.
24              THE COURT:   Okay, that was my issue.  Okay,
25    give me a second.  Anything – I'm sorry – anything from
```

```
 1                         PROCEEDINGS                    31
 2   the defendant on this?
 3            MS. BLOOM:   No, Your Honor.
 4            THE COURT:   I mean, you know, we now have a
 5   new amended complaint in front of us than the one that
 6   was part of the motion, Ms. Bloom.  So I don't want to
 7   act precipitously.  I mean let me tell you what I'm
 8   about to do, and if you want a chance to talk me out of
 9   it in briefing, I suppose you could do that.  I just
10   think since you are probably concerned with the costs to
11   your defendant, to your client, it might be the better
12   course to not require that additional briefing.  But
13   what I'm going to do is rule on the other two issues you
14   raised, which I don't need any argument on.  The other
15   being common law claims which were dismissed and a
16   request to designate new class representatives.  But as
17   to the PAGA claim, I'm going to exercise my discretion
18   to, because the only issue is statute of limitations, to
19   not address the futility issue since it is raising
20   issues that are better addressed at a later stage such
21   as in a motion to dismiss or at summary judgment stage,
22   obviously without prejudice to any arguments the
23   defendants wish to make as to the liability of that
24   claim.
25            So, Ms. Bloom, do you want a chance for further
```

```
 1                          PROCEEDINGS                    32
 2   briefing because — and the reason I'm doing that is
 3   because you were only two days ago presented with a new
 4   complaint, the final version of the new complaint.
 5              MS. BLOOM:   Your Honor, I've looked at the new
 6   complaint, and I don't — I think the issues that it
 7   presents are the same issues that are currently before
 8   the Court.  So I don't think that additional briefing is
 9   going to be — I would not ask for additional briefing on
10   the motion for leave to amend.  I would like the
11   opportunity to address the tolling, the application of
12   the California law, but if the Court determines that
13   that's better done on a motion to dismiss, that's what
14   we will do.
15              THE COURT:   Okay.  All right, so I'm going to
16   give my ruling orally on this.  Bear with me.
17              All right, so this is an action brought on
18   behalf of the plaintiffs, named plaintiffs and other
19   employees of the defendant asserting Fair Labor
20   Standards Act claim, and now before the Court is
21   plaintiffs and other — the existing complaint has other
22   state law claims, does it not?
23              MS. COLE-CHU:   That's correct, Your Honor.
24              THE COURT:   Yes, and other state law claims.
25   And now there's a motion before the Court to file, to
```

PROCEEDINGS                                    33

1
2    amend by filing a third amended complaint.  As we've

3    discussed, the defendants object to the filing of the

4    third amended complaint because they contend that one of

5    the claims being added there, a claim under the

6    California Private Attorneys General Act, under the

7    California Labor Code 2698, et seq. is time-barred,

8    regardless of who might serve as the class

9    representative for that claim.

10          The case law reflects that while it is possible

11   to decide an issue of statute of limitations on a motion

12   to amend, it is often best reserved to a later stage of

13   the case such as a motion to dismiss or motion for

14   summary judgment, especially when there are issues of

15   equitable tolling that are involved, and it's unclear

16   now whether we even need, whether the plaintiff would go

17   outside the complaint for purposes of making that

18   presentation.  And I would cite to the Tatum v.

19   Perlmutter case, 2021 W.L. 165088 (Dist. of Conn. Jan.

20   19, 2021).

21          There's also more generic case law that says

22   that considerations of futility can be left to the

23   Court's discretion on a motion to amend.  Grace v.

24   Rosenstock, 228 F.3d at p. 53.  It's a Second Circuit

25   case.  And this certainly is a case where, given the

PROCEEDINGS                    34

1
2    possibility that there may be material presented outside
3    of the existing pleading on the issue of equitable
4    tolling, that it's appropriate to defer to a later stage
5    of the case.  The Court's granting of the motion to
6    amend will have absolutely no effect on the defendant's
7    ability to make whatever arguments it wishes in the
8    future regarding the statute of limitations.  It's going
9    to be free to file a motion to dismiss if it complies
10   with the Court's individual practices.  But, of course,
11   it can file an answer and simply assert the defense and
12   save for a later stage such as summary judgment the
13   assertion of the defense.
14          The other two objections from the defendant are
15   that it's including certain common law claims that the
16   Court has recently dismissed – (pause) – I think it is –
17   case law is certainly not clear on this point.  The
18   inclusion of the claim has absolutely, would have
19   absolutely no effect on the progress of the case because
20   there's already been a ruling on them.  On the other
21   hand, I don't see any reason why they need to be
22   included.
23          So despite what I said earlier, I actually am
24   going to deny the motion to amend to the extent it
25   includes common law claims that have already been

1

2   dismissed.  Obviously the defendant's rights to appeal

3   the dismissal of those claims are preserved.  And I'll

4   actually give you a quote from a case that suggests that

5   there is no need to replead a claim in order to preserve

6   it for appeal, and that would be In re LIBOR-Based

7   Financial Instruments Antitrust Litigation, 2016 W.L.

8   1558504 at p.11.  That's a Southern District of New

9   York, April 15, 2016 case.  So those should be excised

10  from the proposed third amended complaint as filed on

11  September 13.

12          I don't see any need to deny plaintiffs the

13  opportunity to designate new class representatives.  It

14  has no substantive effect on the progress of the case,

15  so that's going to be permitted.  That is my ruling on

16  the motion for leave to amend originally filed as docket

17  number 278.  I'm not going to take reargument, but are

18  there any questions about my ruling from the plaintiff?

19          MS. COLE-CHU:  No, Your Honor, except just I

20  suppose housekeeping.  We can file the – we'll need to

21  prepare another amended complaint without the --

22          THE COURT:  Common law claims.

23          MS. COLE-CHU:   -- common law claims.

24          THE

25           COURT:  Can you file that by, I don't know,

```
 1                    PROCEEDINGS                    36

 2  Monday, Tuesday?  What's a good day, you tell me. MS.

 3  COLE-CHU:   Sure.   Tuesday.

 4          THE COURT:   Tuesday it is.  That would the

 5  20th.  Any questions from the defendant?

 6          MS. BLOOM:   No, Your Honor.

 7          THE COURT:  Okay.  Thank you, everyone.

 8          MS. BLOOM:   Thank you.

 9          (Whereupon, the matter is adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                                                 37

2

3                    C E R T I F I C A T E

4

5            I, Carole Ludwig, certify that the foregoing

6    transcript of proceedings in the case of Wood v. Mike

7    Bloomberg 2020, Inc., Docket #20-cv-02489-LTS-GWG, was

8    prepared using digital transcription software and is a

9    true and accurate record of the proceedings.

10

11

12

13   Signature_____

14                    Carole Ludwig

15   Date:      September 16, 2022

16

17

18

19

20

21

22

23

24

25