```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                               :
                                        Docket #1:20-cv-02489-
WOOD,                                : LTS-GWG

              Plaintiff,             :

   - against -                       :

MIKE BLOOMBERG 2020, INC., et al.,   : New York, New York
                                        December 2, 2022
              Defendants.            :

------------------------------------ :


                      PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          OUTTEN & GOLDEN LLP
                        BY:  HANNAH COLE-CHU, ESQ.
                        601 Massachusetts Avenue N.W.
                        Suite 200 West
                        Washington, D.C.  20001

FOR DEFENDANTS:         PROSKAUER ROSE LLP
                        BY:  ELISE BLOOM, ESQ.
                           NOA BADDISH, ESQ.
                        11 TIMES SQUARE
                        NEW YORK, NEW YORK 10036
```

Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                          PROCEEDINGS                3
 2           THE CLERK:   This is the matter of Wood v. Mike
 3   Bloomberg 2020 Inc., et al., case number 20cv2489.
 4   Starting with plaintiff's counsel, please state your
 5   appearance for the record.
 6           MS. HANNAH COLE-CHU:  Good morning, Your Honor,
 7   this is Hannah Cole-Chu for the plaintiffs.  I'm an
 8   attorney at Outten & Golden.
 9           MS. ALISE BLOOM:   Good morning, Your Honor,
10   this is Alise Bloom for the defendant.  I'm joined by my
11   colleague Noa Baddish, and we're both at Proskauer Rose.
12           THE COURT:   Okay, hold on a second.
13           (pause in proceeding)
14           THE COURT:   All right, we're today based on
15   two letters, docket 308 and 310.  I've read the letters.
16   I'll give each side a moment or two to add anything they
17   want to add.  If I have any questions, I'll ask you. So
18   we'll start with Ms. Cole-Chu.
19           MS. COLE-CHU:   Thank you, Your Honor, good
20   morning.  Both subpoenas are improper, and I have some
21   points I'd like to make on both.  So beginning with the
22   Van Ryan (phonetic) subpoena, there are no documents
23   that the Van Ryan subpoena can produce, or that Van Ryan
24   can produce in response to the subpoena that could shed
25   any light on the issues that Bloomberg says it needs the
```

1                                PROCEEDINGS                        4

2   documents for.  Bloomberg says there are two main

3   reasons.  The reason Ms. Wheatley stepped back as class

4   representative in the fall of 2020, and her reason she

5   stepped forward again in the fall of 2022, and this is

6   why it needs documents from Van Ryan to shed light on

7   that decision process.  Ms. Wheatley made her decision

8   to step back as class representative in fall of 2020 but

9   she did not begin her employment until May of 2021.  So

10  there are no, there's nothing that the subpoena, that

11  documents responsive to a subpoena can do to illuminate

12  anything about her decision to step back as class

13  representative at that time.

14          And with respect to her decision to resume her

15  role again as class representative in the fall of 2022,

16  the testimony in her deposition makes clear that her

17  employment at Van Ryan had no bearing on that decision.

18  And so there's nothing that, there are no documents that

19  her current employer can provide that would give any

20  information on that decision-making process, and her

21  decisions for participating in the class, participating

22  in the lawsuit of the class representatives are not

23  relevant in any way to any merits issue or her adequacy

24  to serve as class representative.

25          The campaign is attempting to link that

```
 1                        PROCEEDINGS                    5
 2   decision when it actually got clear testimony in the
 3   deposition that there is no link.  You know, she
 4   initially said that it was her job at Van Ryan that led
 5   her to step back, and then Bloomberg introduced an
 6   exhibit that clarified the timeline, refreshed her
 7   recollection, and she candidly acknowledged that she was
 8   mistaken that at the start of her employment was not the
 9   reason she stepped back.
10             So given the overly broad nature of the
11   request, the privacy interests, the reputational risks
12   associated with subpoenaing her current employer, the
13   subpoena is improper.  And I'll just, I'll also note,
14   you know, that on the adequacy point, you know, there's
15   nothing that goes to adequacy here.  The inquiry hinges
16   on whether she knows what her claims are and this is,
17   you know, according to the case law cited by the
18   campaign, she knows what the claims are, she understands
19   she represents the interests of the class, she
20   communicates regularly with class counsel, she
21   participates in the prosecution of the case.  Now her
22   reasons for participating are not relevant in any way.
23             And, you know, to zoom out a little bit just
24   for context, the parties have been actively engaged in
25   discovery for several months.  We've produced 14 of our
```

```
 1                        PROCEEDINGS                    6
 2  clients for depositions in the past month on a very
 3  aggressive and totally unexplained timeline set by
 4  Bloomberg.  The parties have actually had a number of
 5  discovery disputes, and we've worked to resolve them.
 6  Plaintiffs have actually conceded on a number of issues
 7  in order to avoid bringing them to the Court.
 8            And Your Honor hasn't actually heard from us on
 9  many discovery disputes in this matter, and we're really
10  pleased that we've been successful at avoiding court
11  intervention on many of these issues.  But this one is
12  really important, and that's why we're here today.  Ms.
13  Wheatley is a class representative who is standing up
14  for other people, and she's sacrificing her time,
15  energy, and it hasn't been easy, you know, in addition
16  to all of the normal standard responsibilities,
17  participating in discovery, giving discovery responses.
18  You know, the campaign insisted on starting her
19  deposition at 7 in the morning Pacific time.  They're
20  now subpoenaing her current and former employers.
21  They're trying to bring her back for a deposition later
22  this month which we oppose, which we will oppose.
23            And, you know, this is a, this is a simple,
24  straightforward wage and hour case where the plaintiffs
25  worked for the employer for less than three months, all
```

```
 1                          PROCEEDINGS                 7
 2   the field organizers did the same thing, they all worked
 3   overtime, none of them were paid for it.  This is a
 4   straightforward and, frankly, settleable
 5   misclassification case.  So this subpoena seeking
 6   information that puts Ms. Wheatley in a spotlight of her
 7   employer when she has not worked there very long and
 8   puts a burden on them to provide documents.  They'll
 9   know that she's a litigant, it is harassing, overly
10   burdensome, and it's for nothing.  There's nothing that
11   these documents can show.
12           So that's on Van Ryan.  The subpoena's
13   improper.  You know, the Court should issue an order for
14   protection preventing the service of the subpoena.
15           On Genex we consent to a subpoena served on
16   Genex limited to documents reflecting the hours that Ms.
17   Wheatley worked for Genex which should be sufficient to
18   address all of Bloomberg's concerns.  In its letter
19   Bloomberg makes a number of arguments on why documents
20   beyond those reflecting hours are relevant and
21   important, and all of those arguments are wrong.  They
22   say that personnel file and performance records are
23   likely to have relevant information, and I'll jus go
24   through the list.  The fact that there were changes to
25   her job duties between the time she worked for Genex
```

1                          PROCEEDINGS                    8

2  before the campaign and her time at the campaign, not

3  relevant to any merits issue.

4          And I guess I'll pause and say, you know, like

5  the issues in the case are the job duties of organizers

6  and hours that they worked.  And so the fact that there

7  were changes in her job duties at another job are not

8  relevant to anything.  The fact that there are changes

9  to her schedule also not relevant to the hours that she

10 worked for the campaign, the job duties she worked for

11 the campaign.  Her job performance at Genex, and even if

12 she was supposed to be available, are also not relevant

13 to the fact that she worked for the campaign.

14         I think the key point there, Your Honor, is

15 that she testifies – if you look at exhibit H of

16 Bloomberg's submission on pages 193 and 194, she

17 testifies that even though she was on call, she didn't

18 get calls.  She said it did not really occur.  And so

19 she gave this testimony that she was working for the

20 campaign, the hours that she was working, what she was

21 doing.  And so this issue doesn't impact liability or

22 damages.

23         And even if she was paid, even if she was paid

24 for the time, that has no bearing on the hours that, the

25 work that she was performing as intern.  You know the

```
 1                        PROCEEDINGS                      9
```

 2  definition of work (indiscernible) Section 23 of the

 3  FLSA is very broad to suffer or permit, you know, she

 4  was performing this work for the campaign.  And so any

 5  documents beyond that, documents related to job

 6  performance, discipline, her application, her full

 7  personnel file, anything related to compensation, none

 8  of that has an bearing on any issues in the case, and

 9  also has nothing to do with her adequacy as a class

10  representative which concerns those considerations that

11  I was mentioning before.

12            I can pause there, and if you have any

13  questions, Your Honor, I'm happy to address them.

14            THE COURT:   I don't at this time.  Ms. Bloom.

15            MS. BLOOM:   Thank you, Your Honor.  This is

16  Ms. Bloom for the defendants.  Let me start with Genex

17  and just for some context, Ms. Wheatley-Diaz is the sole

18  or the sole person that filed a PAGA letter, and,

19  therefore, she will be, if she's, if approved, she'll be

20  the sole PAGA plaintiff in this case.  I mean she has a

21  very, very critical role.  She's also been now back in

22  the case or proposed as a representative for the

23  California class.

24            I want to talk about the Genex subpoena first.

25  The Genex subpoena was very limited in time, and why we

2  need those records is because Ms. Wheatley-Diaz was

3  pretty clear that she worked remotely for Genex and that

4  she was simultaneously working for Genex and the

5  campaign.  So to the extent that, and you heard my

6  adversary say this is an overtime case, so the number of

7  hours that this witness puts in for the campaign is

8  something that bears directly on the question of whether

9  or not, assuming that we don't prevail on the exemption,

10 whether or not she is entitled to overtime.  The fact

11 that she was simultaneously working another job bears

12 directly on the question of how many hours a day she was

13 working for the campaign.

14          And the reason why just getting her hours is

15 not sufficient is because, as you heard my adversary

16 say, you know, she testified that her job at Genex was

17 to be available.  If there's a performance review that

18 says Ms. Wheatley-Diaz during this time period is an

19 excellent employee, she's always available, she fields

20 calls all the time, that is another factor that's going

21 to go into whether she was simultaneously working for

22 two employers at the same time, and that goes directly

23 to the question of how many hours did she put in for the

24 campaign and whether or not she put in any hours that

25 would meet the threshold for overtime.

```
 1                       PROCEEDINGS                    11

 2              So --

 3              THE COURT:   So your assumption is that

 4   whatever documents you get on hours will not show times

 5   when she was available and working for, I'm sorry,

 6   working for Genex?

 7              MS. BLOOM:   That's one piece of it.  The other

 8   piece of it is that she at her deposition she said she

 9   rarely got a phone call.  So to the extent that the

10   house overlap, like let's say the time record - I don't

11   even know if the time records would say she clocked in

12   at 9 and she was out at 12 or whether they'd say she

13   worked five hours, I have no idea because I haven't seen

14   them.  But I think the hours will be one thing because

15   that potentially shows the overlap, but in order to

16   evaluate whether or not, like how much effort she was

17   actually spending on her job for Genex versus her job

18   for the campaign if she's there, if she's working for

19   both at the same time, I think we are entitled to see

20   if, for example, there's a performance review that says

21   she's great or that says she's terrible at that.

22              I mean that's a really, really critical issue,

23   and it goes to the overtime piece, but, frankly, it also

24   goes to her adequacy as a class representative.  If at

25   the end of the day she's simultaneously working for two
```

1                          PROCEEDINGS                    12

2   companies, she's simultaneously being by two companies,

3   and she's actually not performing her full efforts for

4   either company during the same number of hours but yet

5   being paid for those hours, that we submit is something

6   that would bear directly not only on her overtime claim

7   but also on the adequacy point.  And this is a former

8   employer, we are more than willing to have these records

9   be, you know, marked confidential, be subject to a

10  confidentiality order.

11          We're not trying to harass Ms. Wheatley-Diaz.

12  She's a critical witness in this case.  She has come in

13  and out of this case, and that's another reason why the

14  Genex records are relevant.  She was in the case, and

15  then she said she didn't want to be in the case, and

16  then she wants to be back in the case.

17          You know, one of the key things about a class

18  representative is also your availability to participate,

19  and that's where the Genex records and the Van Ryan

20  records overlap.  Because she – at her deposition, and

21  you've seen the testimony, initially when I asked her

22  why was it that she stepped back and then she said

23  because I think because of her job, job duties and

24  responsibilities, and then why did you come back in,

25  because I knew that, because it seemed like I could do

1                              PROCEEDINGS                        13

2   it, and there was some confusion as to whether – like

3   when she said that she stepped back because she started

4   a new job, her testimony was more specific than that.

5   It was that I didn't know what my job duties would be

6   and anticipate, you know, I didn't know what my

7   responsibilities would be.

8           So at this point I'm not even, we're not even

9   clear as to whether is she right about Van Ryan, is she

10  not right about Van Ryan, her current employer, in terms

11  of the timing.  How does Genex fit into that?  But the

12  bigger point is this is someone who obviously had a

13  concern about her job responsibilities and whether those

14  job responsibilities would impact her ability to

15  participate in this case as a class representative.  She

16  records from Genex and then records from her current

17  employer would show – and she testified also that her

18  job duties have increased over time.  So for a class rep

19  who says something that impacted my decision to step out

20  and then step back in was my work commitment, we're

21  entitled to know whether or not her work commitment has

22  increased or decreased over time.  That goes directly,

23  directly to her ability to serve as a class

24  representative.

25           And I might feel differently if she had been in

```
 1                          PROCEEDINGS                  14
 2   this case the whole time and we never had this
 3   collateral issue, but we do have this collateral issue,
 4   and given the collateral issue I think that we are
 5   entitled to the discovery from Genex.  And with regard
 6   to the discover from Van Ryan, I think we're entitled to
 7   know what her work commitment is and whether or not it
 8   was the job or not the job.  And I understand there's
 9   some confusion in her testimony, but I think we're
10   entitled to sort that out.
11          And I suggested to my adversary that we would
12   be willing to do this via employment authorization.  It
13   doesn't have to be by a subpoena.  Something that would,
14   that doesn't make it, make her seem like a litigant
15   willing to explore any alternatives.  But I would just
16   add that this is a case that when they filed this case,
17   it got a tremendous amount of publicity that was
18   generated by the plaintiffs.  Now, I don't know if it
19   was the Wood plaintiff or the Sklar plaintiffs, but
20   there was a big effort on social media, and I do know
21   Wheatley-Diaz participated in some social media on this
22   case.  So, you know, to suggest that nobody knows about
23   it I think is probably not borne out by the facts.
24          The last thing I'll say, and I mention this
25   just because my adversary did, we have worked very
```

PROCEEDINGS                15

1
2    collaboratively on discovery.  It has been a two-way
3    street.  I mean obviously the burden on us in terms of
4    ESI is a lot greater than on them, and we have produced,
5    we have quickly produced all the ESI.  We made sure they
6    had all the ESI for any witness that they wanted to
7    depose two weeks before the deposition.  And any time
8    they've asked us for a witness, we've immediately gotten
9    back to them with dates.  We recently have a scheduling
10   issue with one witness, but we've produced whoever they
11   wanted, and we produced their ESI two weeks in advance
12   so that they could prepare.
13           So for all of those reasons we would ask that
14   you allow the Genex subpoena to go forward, and with
15   regard to Van Ryan's we believe that the subpoena's
16   appropriate and that we're entitled to the information.
17   But to the extent there's a concern, that you authorize
18   us to do it via an employment authorization or some
19   other means that would be less intrusive.
20           MS. COLE-CHU:  Your Honor, if I may respond?
21           THE COURT:  All right, anything else from
22   plaintiff that you haven't already said?
23           MS. COLE-CHU:  Sure, I just want to make a
24   couple of notes.  You know, Ms. Bloom was discussing,
25   said that availability to participate goes to adequacy,

 1

 2  but I don't, it is now in the way that she's describing.

 3  It is not availability to participate.  It is the actual

 4  participation in the case.  You know, there's not going

 5  to be – to my knowledge there's no authority where the

 6  Court conducted any inquiry into outside obligations of

 7  class representatives when assessing their adequacy to

 8  serve as class representatives.  The inquiry is simply

 9  have they participated in the case and do they

10  affirmatively state that they can participate in the

11  case, and Ms. Wheatley has done that.  And the period

12  where she was not involved in the case, what the period

13  when the case was in effect stayed during the pendency

14  of the motion to dismiss.  So, you know, again, the

15  decision whether to step out and step back in is not

16  going to be part of the adequacy analysis.

17            On the employment authorization point, you

18  know, I'm not sure whether Ms. Bloom was addressing the

19  Genex subpoena or the Van Ryan subpoena, but they did

20  not offer that as a option for the Genex subpoena

21  because they served the subpoena prior to conferring

22  with us, they offered employment authorization as an

23  option for the Van Ryan subpoena which, you know, as we,

24  as I'm explaining, totally baseless.  So we're not going

25  to agree to employment authorization.

```
 1                       PROCEEDINGS                    17
 2              And, you know, on the PAGA, as Your Honor
 3    knows, plaintiffs Coker and (indiscernible) filed timely
 4    PAGA notices.  That's an issue that's currently before
 5    the Court.  Ms. Wheatley is not the only California
 6    representative who timely filed a PAGA notice.
 7              THE COURT:   You're done, Ms. Cole-Chu?
 8              MS. COLE-CHU:   Yes.
 9              THE COURT:   Okay.
10              MS. COLE-CHU:   Thank you, Your Honor.
11              THE COURT:   All right, so I've heard from both
12    sides.  I'm prepared to make my ruling.  With respect to
13    Genex I don't see any relevance other than documents
14    reflecting the hours that Ms. Wheatley worked for Genex.
15    I mean this issue that she had some independent
16    obligation to be available, even if there was a, you
17    know, former evaluation that says she's always available
18    when needed would not answer the question of what hours
19    she was devoting.
20              My assumption is that when someone's available
21    and gets called on, that gets reflected in whatever
22    documents they're going to have as to when she was paid
23    and how. Usually when people are available to do work
24    and they do the work, they get paid for it.  I suppose
25    if after you get the records on the hours, you know,
```

```
 1                      PROCEEDINGS                18
 2  there's someone suggestion in there that there are hours
 3  that are worked that are somehow uncompensated and not
 4  reflecting those hours, I suppose the defendants could
 5  come back to me, but it would have to be pretty strong
 6  evidence.
 7            So at this point there should be communication
 8  to Genex that says the subpoena is limited to only
 9  records reflecting hours, and obviously you should make
10  every effort to not be burdensome with Genex.  We don't
11  need every document that reflects hours.  If they have
12  some computer database that can print out or generate a
13  list of hours for Ms. Wheatley, that's all you're going
14  to need.  But you can certainly talk to Genex about
15  what's available, again, as long as it's limited to
16  hours worked.  Again, none of the issues, compensation
17  or anything else to me has any relevance.
18            No relevance to anything in Van Ryan's
19  possession, so that subpoena is not to be served.  I
20  agree with plaintiffs with what matters here is for
21  purpose of service of the class representative is
22  whether you have a conflict and whether you're ready to
23  participate as a class representative, it's
24  understandable and common for class representatives who
25  have full-time demanding jobs in other areas, people sue
```

all the time in that situation.  That's why they hire

lawyers to deal with the time-consuming work of

conducting the litigation.

        The requirement to be able to prosecute the

action are intended to a requirement that is, precludes

someone who has one or more or even two jobs from

serving in that role.  So I don't see any relevance

about work commitments to Van Ryan or anything else

that's going on at Van Ryan.

        That's my rulings.  I'm not hearing any

argument, but if there's any questions about the ruling,

I'm happy to answer them.  Any questions from the

plaintiff's side?

        MS. COLE-CHU:  No, Your Honor, thank you.

        THE COURT:  How about from defendants?

        MS. BLOOM:  No, Your Honor, thank you.

        THE COURT:  Okay.  Do I need to deal with time

periods or as long as I'm limited to hours, there was

agreement on that.  It just occurred to me.  I didn't

remember if there was some dispute on that.

        MS. COLE-CHU:  Your Honor, there is.  The

scope of the subpoena on Genex is entirely too broad,

and what we have requested is that the subpoena be

limited to only the weeks that she worked for the

```
 1                       PROCEEDINGS              20
 2  campaign.  You know, any evidence of hours beyond that
 3  time (indiscernible) relevant.
 4          THE COURT:   Okay, and I'm trying to remember
 5  the defendant's position on that once I'm limiting it
 6  the way I did.
 7          MS. BLOOM:   This is the defendant.  We'd ask
 8  for December 2019 which would be right before she
 9  started working for the campaign through October of 2020
10  when I think, when she – I'm sorry, I just lost my train
11  of thought – when she first switched through as a class
12  representative.  And we would ask that we not – we would
13  ask that we be given some leeway to get at least the
14  hour worked for the period before and a little bit after
15  the time that she working for the campaign because to
16  the extent that her hours, I mean she's also said that
17  her hours went down.  That, again, that's going to be,
18  we think, an important piece that goes to, an important
19  piece about this whole overtime claim.  If she's working
20  the same hours and we're only asking for a month before,
21  and we would limit it to a month after, but if she's
22  working the same hours, I mean that's going to be a
23  really important piece of the whole overtime claim and
24  whether or not she was actually getting double paid by
25  two companies.
```

```
 1                        PROCEEDINGS              21
```

```
 2              THE COURT:   Just try it one more time because
 3   I honestly don't understand it.  If the theory of my
 4   ruling is that you need to find out how much she was
 5   working somewhere else, because it would bear upon
 6   whether she was physically capable of doing the hours
 7   she claimed to be doing at Bloomberg, what does it
 8   matter what she did the weeks before or after she was
 9   working at Bloomberg?  Try it one more time.  How does
10   it go to that issue?
11              MS. BLOOM:   It doesn't go to the issue that
12   you just articulated.
13              THE COURT:   Okay.  It goes to an issue about
14   her ability to serve as class representative, is that
15   what it was?
16              MS. BLOOM:   Yeah, I mean the point is she
17   testified – if you start with the fact that this is an
18   overtime case and she testified that she worked less
19   hours at Genex during the time that she was working for
20   the campaign but that she simultaneously worked for both
21   companies, and I know we've been through this, and that
22   --
23              THE COURT:   Maybe it's a, I think it's a
24   credibility thing.  I think you'd want to see if it's
25   really true that she worked less hours.  While normally
```

```
 1                        PROCEEDINGS                    22
 2   I don't allow discovery on credibility, I think in this
 3   narrow instance I'm willing to give you the month before
 4   she started at Bloomberg to see --
 5             MS. BLOOM:   And the month after?
 6             THE COURT:   -- if there was a change – I don't
 7   see how the month after is relevant.  To see if there
 8   was, in fact, there was a change in hours once she
 9   started working at Bloomberg.  So you can get a month
10   before.  All right, thank you, everyone.  Anything else
11   from plaintiffs?
12             MS. COLE-CHU:   No, Your Honor, thank you.
13             THE COURT:   From defendant?
14             MS. BLOOM:   Thank you.
15             THE COURT:   Okay, thank you, everyone, good
16   bye.
17             (Whereupon, the matter is adjourned.)
18
19
20
21
22
23
24
25
```

23

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Wood v. Mike Bloomberg 2020, Inc., Docket #20-cv-02489-LTS-GWG, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____

              Carole Ludwig

Date:    December 5, 2022