```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #1:20-cv-02489-
WOOD,                               : LTS-GWG

                    Plaintiff,      :

   - against -                      :

MIKE BLOOMBERG 2020, INC., et al.,  : New York, New York
                                         December 2, 2022
                    Defendants.     :

------------------------------------ :


                         PROCEEDINGS BEFORE
                THE HONORABLE GABRIEL W. GORENSTEIN,
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:           OUTTEN & GOLDEN LLP
                         BY:  HANNAH COLE-CHU, ESQ.
                         601 Massachusetts Avenue N.W.
                         Suite 200 West
                         Washington, D.C.  20001

FOR DEFENDANTS:          PROSKAUER ROSE LLP
                         BY:  ELISE BLOOM, ESQ.
                            NOA BADDISH, ESQ.
                         11 TIMES SQUARE
                         NEW YORK, NEW YORK 10036




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>**INDEX**</u>

**<u>E X A M I N A T I O N S</u>**

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

**<u>E X H I B I T S</u>**

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                           PROCEEDINGS                    3

 2            THE CLERK:   This is the matter of Wood v. Mike

 3   Bloomberg 2020 Inc., et al., case number 20cv2489.

 4   Starting with plaintiff's counsel, please state your

 5   appearance for the record.

 6            MS. HANNAH COLE-CHU:  Good morning, Your Honor,

 7   this is Hannah Cole-Chu for the plaintiffs.  I'm an

 8   attorney at Outten & Golden.

 9            MS. ALISE BLOOM:   Good morning, Your Honor,

10   this is Alise Bloom for the defendant.  I'm joined by my

11   colleague Noa Baddish, and we're both at Proskauer Rose.

12            THE COURT:   Okay, hold on a second.

13            (pause in proceeding)

14            THE COURT:   All right, we're today based on

15   two letters, docket 308 and 310.  I've read the letters.

16   I'll give each side a moment or two to add anything they

17   want to add.  If I have any questions, I'll ask you. So

18   we'll start with Ms. Cole-Chu.

19            MS. COLE-CHU:   Thank you, Your Honor, good

20   morning.  Both subpoenas are improper, and I have some

21   points I'd like to make on both.  So beginning with the

22   Van Ryan (phonetic) subpoena, there are no documents

23   that the Van Ryan subpoena can produce, or that Van Ryan

24   can produce in response to the subpoena that could shed

25   any light on the issues that Bloomberg says it needs the
```

```
 1                            PROCEEDINGS                    4
 2   documents for.  Bloomberg says there are two main
 3   reasons.  The reason Ms. Wheatley stepped back as class
 4   representative in the fall of 2020, and her reason she
 5   stepped forward again in the fall of 2022, and this is
 6   why it needs documents from Van Ryan to shed light on
 7   that decision process.  Ms. Wheatley made her decision
 8   to step back as class representative in fall of 2020 but
 9   she did not begin her employment until May of 2021.  So
10   there are no, there's nothing that the subpoena, that
11   documents responsive to a subpoena can do to illuminate
12   anything about her decision to step back as class
13   representative at that time.
14           And with respect to her decision to resume her
15   role again as class representative in the fall of 2022,
16   the testimony in her deposition makes clear that her
17   employment at Van Ryan had no bearing on that decision.
18   And so there's nothing that, there are no documents that
19   her current employer can provide that would give any
20   information on that decision-making process, and her
21   decisions for participating in the class, participating
22   in the lawsuit of the class representatives are not
23   relevant in any way to any merits issue or her adequacy
24   to serve as class representative.
25           The campaign is attempting to link that
```

1                          PROCEEDINGS                      5

2  decision when it actually got clear testimony in the

3  deposition that there is no link.  You know, she

4  initially said that it was her job at Van Ryan that led

5  her to step back, and then Bloomberg introduced an

6  exhibit that clarified the timeline, refreshed her

7  recollection, and she candidly acknowledged that she was

8  mistaken that at the start of her employment was not the

9  reason she stepped back.

10         So given the overly broad nature of the

11  request, the privacy interests, the reputational risks

12  associated with subpoenaing her current employer, the

13  subpoena is improper.  And I'll just, I'll also note,

14  you know, that on the adequacy point, you know, there's

15  nothing that goes to adequacy here.  The inquiry hinges

16  on whether she knows what her claims are and this is,

17  you know, according to the case law cited by the

18  campaign, she knows what the claims are, she understands

19  she represents the interests of the class, she

20  communicates regularly with class counsel, she

21  participates in the prosecution of the case.  Now her

22  reasons for participating are not relevant in any way.

23         And, you know, to zoom out a little bit just

24  for context, the parties have been actively engaged in

25  discovery for several months.  We've produced 14 of our

```
 1                        PROCEEDINGS                      6
 2  clients for depositions in the past month on a very
 3  aggressive and totally unexplained timeline set by
 4  Bloomberg.  The parties have actually had a number of
 5  discovery disputes, and we've worked to resolve them.
 6  Plaintiffs have actually conceded on a number of issues
 7  in order to avoid bringing them to the Court.
 8         And Your Honor hasn't actually heard from us on
 9  many discovery disputes in this matter, and we're really
10  pleased that we've been successful at avoiding court
11  intervention on many of these issues.  But this one is
12  really important, and that's why we're here today.  Ms.
13  Wheatley is a class representative who is standing up
14  for other people, and she's sacrificing her time,
15  energy, and it hasn't been easy, you know, in addition
16  to all of the normal standard responsibilities,
17  participating in discovery, giving discovery responses.
18  You know, the campaign insisted on starting her
19  deposition at 7 in the morning Pacific time.  They're
20  now subpoenaing her current and former employers.
21  They're trying to bring her back for a deposition later
22  this month which we oppose, which we will oppose.
23         And, you know, this is a, this is a simple,
24  straightforward wage and hour case where the plaintiffs
25  worked for the employer for less than three months, all
```

```
 1                         PROCEEDINGS                    7
 2   the field organizers did the same thing, they all worked
 3   overtime, none of them were paid for it.  This is a
 4   straightforward and, frankly, settleable
 5   misclassification case.  So this subpoena seeking
 6   information that puts Ms. Wheatley in a spotlight of her
 7   employer when she has not worked there very long and
 8   puts a burden on them to provide documents.  They'll
 9   know that she's a litigant, it is harassing, overly
10   burdensome, and it's for nothing.  There's nothing that
11   these documents can show.
12          So that's on Van Ryan.  The subpoena's
13   improper.  You know, the Court should issue an order for
14   protection preventing the service of the subpoena.
15          On Genex we consent to a subpoena served on
16   Genex limited to documents reflecting the hours that Ms.
17   Wheatley worked for Genex which should be sufficient to
18   address all of Bloomberg's concerns.  In its letter
19   Bloomberg makes a number of arguments on why documents
20   beyond those reflecting hours are relevant and
21   important, and all of those arguments are wrong.  They
22   say that personnel file and performance records are
23   likely to have relevant information, and I'll jus go
24   through the list.  The fact that there were changes to
25   her job duties between the time she worked for Genex
```

2   before the campaign and her time at the campaign, not

3   relevant to any merits issue.

4           And I guess I'll pause and say, you know, like

5   the issues in the case are the job duties of organizers

6   and hours that they worked.  And so the fact that there

7   were changes in her job duties at another job are not

8   relevant to anything.  The fact that there are changes

9   to her schedule also not relevant to the hours that she

10  worked for the campaign, the job duties she worked for

11  the campaign.  Her job performance at Genex, and even if

12  she was supposed to be available, are also not relevant

13  to the fact that she worked for the campaign.

14          I think the key point there, Your Honor, is

15  that she testifies – if you look at exhibit H of

16  Bloomberg's submission on pages 193 and 194, she

17  testifies that even though she was on call, she didn't

18  get calls.  She said it did not really occur.  And so

19  she gave this testimony that she was working for the

20  campaign, the hours that she was working, what she was

21  doing.  And so this issue doesn't impact liability or

22  damages.

23          And even if she was paid, even if she was paid

24  for the time, that has no bearing on the hours that, the

25  work that she was performing as intern.  You know the

```
 1                        PROCEEDINGS                    9
 2  definition of work (indiscernible) Section 23 of the
 3  FLSA is very broad to suffer or permit, you know, she
 4  was performing this work for the campaign.  And so any
 5  documents beyond that, documents related to job
 6  performance, discipline, her application, her full
 7  personnel file, anything related to compensation, none
 8  of that has an bearing on any issues in the case, and
 9  also has nothing to do with her adequacy as a class
10  representative which concerns those considerations that
11  I was mentioning before.
12           I can pause there, and if you have any
13  questions, Your Honor, I'm happy to address them.
14           THE COURT:   I don't at this time.  Ms. Bloom.
15           MS. BLOOM:   Thank you, Your Honor.  This is
16  Ms. Bloom for the defendants.  Let me start with Genex
17  and just for some context, Ms. Wheatley-Diaz is the sole
18  or the sole person that filed a PAGA letter, and,
19  therefore, she will be, if she's, if approved, she'll be
20  the sole PAGA plaintiff in this case.  I mean she has a
21  very, very critical role.  She's also been now back in
22  the case or proposed as a representative for the
23  California class.
24           I want to talk about the Genex subpoena first.
25  The Genex subpoena was very limited in time, and why we
```

```
 1                          PROCEEDINGS                   10
 2    need those records is because Ms. Wheatley-Diaz was
 3    pretty clear that she worked remotely for Genex and that
 4    she was simultaneously working for Genex and the
 5    campaign.  So to the extent that, and you heard my
 6    adversary say this is an overtime case, so the number of
 7    hours that this witness puts in for the campaign is
 8    something that bears directly on the question of whether
 9    or not, assuming that we don't prevail on the exemption,
10    whether or not she is entitled to overtime.  The fact
11    that she was simultaneously working another job bears
12    directly on the question of how many hours a day she was
13    working for the campaign.
14           And the reason why just getting her hours is
15    not sufficient is because, as you heard my adversary
16    say, you know, she testified that her job at Genex was
17    to be available.  If there's a performance review that
18    says Ms. Wheatley-Diaz during this time period is an
19    excellent employee, she's always available, she fields
20    calls all the time, that is another factor that's going
21    to go into whether she was simultaneously working for
22    two employers at the same time, and that goes directly
23    to the question of how many hours did she put in for the
24    campaign and whether or not she put in any hours that
25    would meet the threshold for overtime.
```

```
 1                     PROCEEDINGS              11

 2          So --

 3          THE COURT:   So your assumption is that

 4  whatever documents you get on hours will not show times

 5  when she was available and working for, I'm sorry,

 6  working for Genex?

 7          MS. BLOOM:   That's one piece of it.  The other

 8  piece of it is that she at her deposition she said she

 9  rarely got a phone call.  So to the extent that the

10  house overlap, like let's say the time record - I don't

11  even know if the time records would say she clocked in

12  at 9 and she was out at 12 or whether they'd say she

13  worked five hours, I have no idea because I haven't seen

14  them.  But I think the hours will be one thing because

15  that potentially shows the overlap, but in order to

16  evaluate whether or not, like how much effort she was

17  actually spending on her job for Genex versus her job

18  for the campaign if she's there, if she's working for

19  both at the same time, I think we are entitled to see

20  if, for example, there's a performance review that says

21  she's great or that says she's terrible at that.

22          I mean that's a really, really critical issue,

23  and it goes to the overtime piece, but, frankly, it also

24  goes to her adequacy as a class representative.  If at

25  the end of the day she's simultaneously working for two
```

```
 1                         PROCEEDINGS                   12
 2   companies, she's simultaneously being by two companies,
 3   and she's actually not performing her full efforts for
 4   either company during the same number of hours but yet
 5   being paid for those hours, that we submit is something
 6   that would bear directly not only on her overtime claim
 7   but also on the adequacy point.  And this is a former
 8   employer, we are more than willing to have these records
 9   be, you know, marked confidential, be subject to a
10   confidentiality order.
11           We're not trying to harass Ms. Wheatley-Diaz.
12   She's a critical witness in this case.  She has come in
13   and out of this case, and that's another reason why the
14   Genex records are relevant.  She was in the case, and
15   then she said she didn't want to be in the case, and
16   then she wants to be back in the case.
17           You know, one of the key things about a class
18   representative is also your availability to participate,
19   and that's where the Genex records and the Van Ryan
20   records overlap.  Because she – at her deposition, and
21   you've seen the testimony, initially when I asked her
22   why was it that she stepped back and then she said
23   because I think because of her job, job duties and
24   responsibilities, and then why did you come back in,
25   because I knew that, because it seemed like I could do
```

```
 1                          PROCEEDINGS                    13
 2   it, and there was some confusion as to whether – like
 3   when she said that she stepped back because she started
 4   a new job, her testimony was more specific than that.
 5   It was that I didn't know what my job duties would be
 6   and anticipate, you know, I didn't know what my
 7   responsibilities would be.
 8            So at this point I'm not even, we're not even
 9   clear as to whether is she right about Van Ryan, is she
10   not right about Van Ryan, her current employer, in terms
11   of the timing.  How does Genex fit into that?  But the
12   bigger point is this is someone who obviously had a
13   concern about her job responsibilities and whether those
14   job responsibilities would impact her ability to
15   participate in this case as a class representative.  She
16   records from Genex and then records from her current
17   employer would show – and she testified also that her
18   job duties have increased over time.  So for a class rep
19   who says something that impacted my decision to step out
20   and then step back in was my work commitment, we're
21   entitled to know whether or not her work commitment has
22   increased or decreased over time.  That goes directly,
23   directly to her ability to serve as a class
24   representative.
25            And I might feel differently if she had been in
```

                                    PROCEEDINGS                    14

 1
 2    this case the whole time and we never had this
 3    collateral issue, but we do have this collateral issue,
 4    and given the collateral issue I think that we are
 5    entitled to the discovery from Genex.  And with regard
 6    to the discover from Van Ryan, I think we're entitled to
 7    know what her work commitment is and whether or not it
 8    was the job or not the job.  And I understand there's
 9    some confusion in her testimony, but I think we're
10    entitled to sort that out.
11           And I suggested to my adversary that we would
12    be willing to do this via employment authorization.  It
13    doesn't have to be by a subpoena.  Something that would,
14    that doesn't make it, make her seem like a litigant
15    willing to explore any alternatives.  But I would just
16    add that this is a case that when they filed this case,
17    it got a tremendous amount of publicity that was
18    generated by the plaintiffs.  Now, I don't know if it
19    was the Wood plaintiff or the Sklar plaintiffs, but
20    there was a big effort on social media, and I do know
21    Wheatley-Diaz participated in some social media on this
22    case.  So, you know, to suggest that nobody knows about
23    it I think is probably not borne out by the facts.
24           The last thing I'll say, and I mention this
25    just because my adversary did, we have worked very

 1
 2  collaboratively on discovery.  It has been a two-way
 3  street.  I mean obviously the burden on us in terms of
 4  ESI is a lot greater than on them, and we have produced,
 5  we have quickly produced all the ESI.  We made sure they
 6  had all the ESI for any witness that they wanted to
 7  depose two weeks before the deposition.  And any time
 8  they've asked us for a witness, we've immediately gotten
 9  back to them with dates.  We recently have a scheduling
10  issue with one witness, but we've produced whoever they
11  wanted, and we produced their ESI two weeks in advance
12  so that they could prepare.
13          So for all of those reasons we would ask that
14  you allow the Genex subpoena to go forward, and with
15  regard to Van Ryan's we believe that the subpoena's
16  appropriate and that we're entitled to the information.
17  But to the extent there's a concern, that you authorize
18  us to do it via an employment authorization or some
19  other means that would be less intrusive.
20          MS. COLE-CHU:  Your Honor, if I may respond?
21          THE COURT:  All right, anything else from
22  plaintiff that you haven't already said?
23          MS. COLE-CHU:  Sure, I just want to make a
24  couple of notes.  You know, Ms. Bloom was discussing,
25  said that availability to participate goes to adequacy,

1                          PROCEEDINGS                    16
2   but I don't, it is now in the way that she's describing.
3   It is not availability to participate.  It is the actual
4   participation in the case.  You know, there's not going
5   to be – to my knowledge there's no authority where the
6   Court conducted any inquiry into outside obligations of
7   class representatives when assessing their adequacy to
8   serve as class representatives.  The inquiry is simply
9   have they participated in the case and do they
10  affirmatively state that they can participate in the
11  case, and Ms. Wheatley has done that.  And the period
12  where she was not involved in the case, what the period
13  when the case was in effect stayed during the pendency
14  of the motion to dismiss.  So, you know, again, the
15  decision whether to step out and step back in is not
16  going to be part of the adequacy analysis.
17           On the employment authorization point, you
18  know, I'm not sure whether Ms. Bloom was addressing the
19  Genex subpoena or the Van Ryan subpoena, but they did
20  not offer that as a option for the Genex subpoena
21  because they served the subpoena prior to conferring
22  with us, they offered employment authorization as an
23  option for the Van Ryan subpoena which, you know, as we,
24  as I'm explaining, totally baseless.  So we're not going
25  to agree to employment authorization.

```
 1                    PROCEEDINGS                17
 2            And, you know, on the PAGA, as Your Honor
 3   knows, plaintiffs Coker and (indiscernible) filed timely
 4   PAGA notices.  That's an issue that's currently before
 5   the Court.  Ms. Wheatley is not the only California
 6   representative who timely filed a PAGA notice.
 7            THE COURT:   You're done, Ms. Cole-Chu?
 8            MS. COLE-CHU:   Yes.
 9            THE COURT:   Okay.
10            MS. COLE-CHU:   Thank you, Your Honor.
11            THE COURT:   All right, so I've heard from both
12   sides.  I'm prepared to make my ruling.  With respect to
13   Genex I don't see any relevance other than documents
14   reflecting the hours that Ms. Wheatley worked for Genex.
15   I mean this issue that she had some independent
16   obligation to be available, even if there was a, you
17   know, former evaluation that says she's always available
18   when needed would not answer the question of what hours
19   she was devoting.
20            My assumption is that when someone's available
21   and gets called on, that gets reflected in whatever
22   documents they're going to have as to when she was paid
23   and how. Usually when people are available to do work
24   and they do the work, they get paid for it.  I suppose
25   if after you get the records on the hours, you know,
```

1                          PROCEEDINGS                    18

2    there's someone suggestion in there that there are hours

3    that are worked that are somehow uncompensated and not

4    reflecting those hours, I suppose the defendants could

5    come back to me, but it would have to be pretty strong

6    evidence.

7              So at this point there should be communication

8    to Genex that says the subpoena is limited to only

9    records reflecting hours, and obviously you should make

10   every effort to not be burdensome with Genex.  We don't

11   need every document that reflects hours.  If they have

12   some computer database that can print out or generate a

13   list of hours for Ms. Wheatley, that's all you're going

14   to need.  But you can certainly talk to Genex about

15   what's available, again, as long as it's limited to

16   hours worked.  Again, none of the issues, compensation

17   or anything else to me has any relevance.

18             No relevance to anything in Van Ryan's

19   possession, so that subpoena is not to be served.  I

20   agree with plaintiffs with what matters here is for

21   purpose of service of the class representative is

22   whether you have a conflict and whether you're ready to

23   participate as a class representative, it's

24   understandable and common for class representatives who

25   have full-time demanding jobs in other areas, people sue

1

2  all the time in that situation.  That's why they hire

3  lawyers to deal with the time-consuming work of

4  conducting the litigation.

5          The requirement to be able to prosecute the

6  action are intended to a requirement that is, precludes

7  someone who has one or more or even two jobs from

8  serving in that role.  So I don't see any relevance

9  about work commitments to Van Ryan or anything else

10  that's going on at Van Ryan.

11          That's my rulings.  I'm not hearing any

12  argument, but if there's any questions about the ruling,

13  I'm happy to answer them.  Any questions from the

14  plaintiff's side?

15          MS. COLE-CHU:   No, Your Honor, thank you.

16          THE COURT:   How about from defendants?

17          MS. BLOOM:   No, Your Honor, thank you.

18          THE COURT:   Okay.  Do I need to deal with time

19  periods or as long as I'm limited to hours, there was

20  agreement on that.  It just occurred to me.  I didn't

21  remember if there was some dispute on that.

22          MS. COLE-CHU:   Your Honor, there is.  The

23  scope of the subpoena on Genex is entirely too broad,

24  and what we have requested is that the subpoena be

25  limited to only the weeks that she worked for the

```
 1                           PROCEEDINGS                  20
 2    campaign.  You know, any evidence of hours beyond that
 3    time (indiscernible) relevant.
 4           THE COURT:   Okay, and I'm trying to remember
 5    the defendant's position on that once I'm limiting it
 6    the way I did.
 7           MS. BLOOM:   This is the defendant.  We'd ask
 8    for December 2019 which would be right before she
 9    started working for the campaign through October of 2020
10    when I think, when she – I'm sorry, I just lost my train
11    of thought – when she first switched through as a class
12    representative.  And we would ask that we not – we would
13    ask that we be given some leeway to get at least the
14    hour worked for the period before and a little bit after
15    the time that she working for the campaign because to
16    the extent that her hours, I mean she's also said that
17    her hours went down.  That, again, that's going to be,
18    we think, an important piece that goes to, an important
19    piece about this whole overtime claim.  If she's working
20    the same hours and we're only asking for a month before,
21    and we would limit it to a month after, but if she's
22    working the same hours, I mean that's going to be a
23    really important piece of the whole overtime claim and
24    whether or not she was actually getting double paid by
25    two companies.
```

```
 1                           PROCEEDINGS                    21
 2              THE COURT:   Just try it one more time because
 3    I honestly don't understand it.   If the theory of my
 4    ruling is that you need to find out how much she was
 5    working somewhere else, because it would bear upon
 6    whether she was physically capable of doing the hours
 7    she claimed to be doing at Bloomberg, what does it
 8    matter what she did the weeks before or after she was
 9    working at Bloomberg?   Try it one more time.   How does
10    it go to that issue?
11              MS. BLOOM:   It doesn't go to the issue that
12    you just articulated.
13              THE COURT:   Okay.   It goes to an issue about
14    her ability to serve as class representative, is that
15    what it was?
16              MS. BLOOM:   Yeah, I mean the point is she
17    testified - if you start with the fact that this is an
18    overtime case and she testified that she worked less
19    hours at Genex during the time that she was working for
20    the campaign but that she simultaneously worked for both
21    companies, and I know we've been through this, and that
22    --
23              THE COURT:   Maybe it's a, I think it's a
24    credibility thing.   I think you'd want to see if it's
25    really true that she worked less hours.   While normally
```

```
 1                          PROCEEDINGS                22
 2  I don't allow discovery on credibility, I think in this
 3  narrow instance I'm willing to give you the month before
 4  she started at Bloomberg to see --
 5          MS. BLOOM:   And the month after?
 6          THE COURT:   -- if there was a change - I don't
 7  see how the month after is relevant.  To see if there
 8  was, in fact, there was a change in hours once she
 9  started working at Bloomberg.   So you can get a month
10  before.  All right, thank you, everyone.  Anything else
11  from plaintiffs?
12          MS. COLE-CHU:   No, Your Honor, thank you.
13          THE COURT:   From defendant?
14          MS. BLOOM:   Thank you.
15          THE COURT:   Okay, thank you, everyone, good
16  bye.
17          (Whereupon, the matter is adjourned.)
18
19
20
21
22
23
24
25
```

23

## C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Wood v. Mike

Bloomberg 2020, Inc., Docket #20-cv-02489-LTS-GWG, was

prepared using digital transcription software and is a

true and accurate record of the proceedings.




Signature_____

                    Carole Ludwig

Date:     December 5, 2022