**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONNA WOOD, et al., individually and on behalf of
all others similarly situated,

                         Plaintiffs,

         v.

MIKE BLOOMBERG 2020, INC.,

                        Defendant.

20 Civ. 2489 (LTS) (GWG)

---

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**SUBSTITUTE WISCONSIN CLASS REPRESENTATIVE**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    Plaintiffs Have Maintained in Three Complaints That Alan Robinson Adequately Represents a Putative Class of Wisconsin Field Organizers and Never Attempted to Add or Substitute Any Other Individual as a Wisconsin Class Representative. ................................................................................ 2

    B.    On November 1, 2022, the Campaign Deposed Robinson and Followed Up in Writing Concerning His Inappropriate and Obstructionist Behavior, and Requested That He Cure Deficiencies in His Document Productions. Those Follow-Up Requests Have Gone Unanswered. ..................................................... 5

    C.    The Campaign Consents to Plaintiffs' Request for a 60-Day Extension of Discovery Based on Counsel's Schedule, Even Though the Campaign Had Expended Significant Time and Resources to Try to Complete Discovery by the Court-Ordered Deadline .................................................................... 8

    D.    Plaintiffs Belatedly Contact the Campaign Seeking to Replace Robinson as Wisconsin Class Representative. ................................................................ 8

ARGUMENT ................................................................................................................... 9

I.    Standard for the Substitution of Class Representative ........................................ 9

II.    Plaintiffs' Motion to Substitute Should Be Denied Because They Cannot Meet Either the "Good Cause" Standard Under Rule 16 or the Standard Under Rules 15 and 21 ................................................................................................ 11

    A.    Plaintiffs Have Not Been Diligent and Have Unduly Delayed Seeking to Substitute the Wisconsin Class Representative. .................................................... 11

    B.    Plaintiffs Offer No Satisfactory Reason for the Inordinate Delay in Seeking Substitution, and Robinson's Purported Preference Is Insufficient to Outweigh the Undue Prejudice a New Class Representative Would Impose on the Campaign at This Late Stage. ....................................................... 13

    C.    Substitution Should Not Be Allowed as a Vehicle for Robinson to Evade Complying Fully With His Discovery Obligations. .................................... 17

CONCLUSION ................................................................................................................ 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................19

*Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122 (2d Cir. 2008)........................................................................................10

*Chen v. Good Chows Inc.*,
2016 WL 3144396 (S.D.N.Y. May 3, 2016) ...............................................................12

*Counts v. Gen. Motors, LLC*,
2019 WL 13059910 (E.D. Mich. Mar. 12, 2019) ......................................................18

*Davis v. Lenox Hill Hosp.*,
2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004).............................................................13

*DeCastro v. City of New York*,
2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020)..............................................10, 14, 15

*Furry Puppet Studio Inc. v. Fall Out Boy*,
2020 WL 4978080 (S.D.N.Y. Feb. 24, 2020)..............................................................11

*Gardner v. W. Beef Props., Inc.*,
2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011),
*report and recommendation adopted as modified sub nom.*,
2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) .......................................................14, 15

*Gullo v. City of New York*,
540 F. App'x 45 (2d Cir. 2013) ..................................................................................10

*Hitt v. Arizona Beverage Co., LLC*,
2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) .....................................................16, 17

*In re Digit. Music Antitrust Litig.*,
2015 WL 13678846 (S.D.N.Y. Mar. 2, 2015) .....................................................13, 18

*In re Milk Prods. Antitrust Litig.*,
195 F.3d 430, 438 (8th Cir. 1999) ..............................................................................15

*Lesnik v. Lincoln Fin. Advisors Corp.*,
2019 WL 6169971 (S.D.N.Y. Nov. 20, 2019)............................................................13

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
 157 F.3d 956 (2d Cir. 1998)..................................................................................10

*Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y.*,
 199 F.R.D. 61 (N.D.N.Y. 2000) .......................................................................11, 12

*Osakan v. Apple Am. Grp.*,,
 2010 WL 1838701 (N.D. Cal. May 5, 2010) ........................................................14

*Otegbade v. New York City Admin. for Child. Servs.*,
 2015 WL 851631 (S.D.N.Y. Feb. 27, 2015)...........................................................9

*Parker v. Columbia Pictures Indus.*,
 204 F.3d 326 (2d Cir. 2000)..............................................................................9, 10

*Scott v. Chipotle Mexican Grill, Inc.*,
 954 F.3d 502 (2d Cir. 2020)...................................................................................12

*Smith v. Manhattan Club Timeshare Ass'n, Inc.*,
 944 F. Supp. 2d 244 (S.D.N.Y. 2013)....................................................................10

*Wade v. Kay Jewelers, Inc.*,
 2018 WL 3553340 (D. Conn. July 24, 2018) ........................................................13

**RULES**

Rule 15 ...............................................................................................................9, 10

Rule 16 ...............................................................................................................9, 10

Rule 21 ...............................................................................................................9, 10

Rule 23 ...................................................................................................1, 2, 12, 14

**OTHER AUTHORITIES**

3 Moore's Federal Practice - Civil § 16.14 (2022) ....................................................10

## PRELIMINARY STATEMENT

Three years after initiating this action, after the filing of four different complaints, ten months after the court-ordered deadline for the substitution of class representatives, three months after Plaintiff Alan Robinson was deposed and was asked to cure his discovery deficiencies (which he has refused to do), after Defendant Mike Bloomberg 2020, Inc. (the "Campaign") searched for and produced tens of thousands of documents (including more than a thousand specific to Mr. Robinson), and nearing the fact-discovery deadline (which was extended 60 days at Plaintiffs' request), Plaintiffs have now moved for leave to substitute Tristan Angulo as the new class representative for the putative Wisconsin class that Robinson and Plaintiffs' counsel have maintained for years Robinson could adequately represent. In support of their motion, Plaintiffs offer no explanation other than the Bartleby-esque assertion that at some point (they do not specify when) Robinson decided that he would prefer not to be the Wisconsin class representative (though they proffer no reason for his change of heart).

Closer to the truth, perhaps, is Plaintiffs' statement that "counsel has determined that it would be in the best interest of the class" to replace Robinson. At his deposition, which took place over three months ago, Robinson with his counsel present swore at the questioner, called her a "fucking bitch" and "baby," gave her his middle finger, and more. Plaintiffs are not merely seeking to resolve a quandary created by an unexpected request to withdraw, but rather to implement an inordinately delayed tactical judgment (which they withheld until discovery was nearing a close and after the Campaign had made many strategic decisions) that the proposed Wisconsin class is more likely to be certified with a different representative.

The motion should be denied. At this late stage, there is no basis to allow Plaintiffs to substitute the Wisconsin class representative. The Campaign has a right to know who its adversaries are, and the pre-certification identity of Rule 23 class representatives should not be

such a moving target that the Campaign, three years in and nearing the close of discovery, is compelled to expend significant additional time and resources on a new plaintiff while a substantive resolution to the matter is further delayed as a result of Plaintiffs' dissatisfaction with their chosen representative.

## STATEMENT OF FACTS

**A.     Plaintiffs Have Maintained in Three Complaints That Alan Robinson Adequately Represents a Putative Class of Wisconsin Field Organizers and Never Attempted to Add or Substitute Any Other Individual as a Wisconsin Class Representative.**

On March 23, 2020, Plaintiffs filed a putative nationwide collective and class action complaint in the Southern District of New York, alleging, *inter alia*, misclassification under the federal Fair Labor Standards Act ("FLSA") and seeking alleged unpaid overtime.  (Dkt. 1.) Plaintiffs had been field organizers ("FOs") on the 2020 presidential campaign of Michael Bloomberg and claimed that the Campaign should have paid them hourly instead of the agreed-upon salary of $6,000 per month.  (*Id.* at ¶ 1.)

On March 30, 2020, Plaintiffs filed their First Amended Complaint ("FAC"), which added misclassification claims seeking overtime under various state statutes.[1]  (Dkt. 29.)  The FAC alleged that Robinson, a former FO in Wisconsin, brought an "action on behalf of himself and similarly situated FOs in Wisconsin pursuant to Rule 23 to remedy violations of . . . Wisconsin Statute."  (*Id.* at ¶¶ 33, 47-48, 194-203, 301-309.)  The FAC alleged that Robinson would "fairly and adequately represent and protect the interests of the Wisconsin Class that he seeks to represent."  (*Id.* at ¶ 199.)

---

[1] Plaintiffs have brought state-law claims under the laws of California, Illinois, Michigan, Minnesota, New York, North Carolina, and Wisconsin.

Plaintiffs' Second Amended Complaint ("SAC"), filed on May 18, 2020, continued to allege that Robinson was the putative class representative for other FOs in Wisconsin.  (Dkt. 86 at ¶¶ 79, 93-94, 274-283, 381-389.)  The SAC repeated that Robinson would "fairly and adequately represent and protect the interests of the Wisconsin Class that he seeks to represent." (*Id.* at ¶ 279.)

On September 20, 2022, Plaintiffs filed their Third Amended Complaint ("TAC"), the operative complaint, again putting Robinson forward as the Wisconsin class representative and alleging again that he would fairly and adequately represent that class.[2]  (Dkt. 296 at ¶¶ 79, 97-98, 258-267, 365-373.)

Over the Campaign's objection, the Court granted Plaintiffs leave to file the TAC, which added claims under the California Private Attorneys General Act ("PAGA") and designated new class representatives for the Michigan and California state-law classes.  Magistrate Judge Gorenstein allowed Plaintiffs to designate the new class representatives because he did not "see any . . . substantive effect on the progress of the case."  (Dkt. 294 at 35:12-15.)  At that time, depositions of class representatives had not yet begun.

Tristan Angulo opted into the proposed FLSA collective on May 5, 2020.  (Dkt. 76.)  In the almost three years since Mr. Angulo opted in, Plaintiffs have taken no action to add him as a Wisconsin class representative, despite amending the complaint twice since then, including to designate new class representatives for other states.  (*See* Dkts. 86 & 296.)

On April 11, 2022, the parties filed a joint proposed scheduling order that set a deadline for amended pleadings and expressly stated that "[t]o the extent Plaintiffs intend to add claims under the California Private Attorneys General Act, Cal. Lab. Code § 2698 et seq. ("PAGA")

---

[2]  On October 4, 2022, the Campaign moved to dismiss the Third Amended Complaint and that motion is currently pending.  (*See* Dkt. 301.)

***and substitute certain class representatives***, the deadline for Plaintiffs to move for leave to amend their pleading, which Defendant will oppose, is ***May 31, 2022***." (Dkt. 261 at ¶ 3(c) (emphases added).) That same day, Magistrate Judge Gorenstein entered the scheduling order as proposed. (Dkt. 262 at ¶ 3(c).) Plaintiffs moved on May 31, 2022, to amend their complaint and designate new class representatives for the Michigan and California classes, which was granted in September 2022, but they never moved to add or substitute any class representative for the Wisconsin class until now – almost a year after the deadline. (Dkt. 278-1.)

In September 2022, Plaintiffs reluctantly agreed to just 17 depositions of Plaintiffs: eight putative class representatives, three of more than 40 named Plaintiffs, and six of more than 700 opt-in plaintiffs (though they took the position that even this small number was "unnecessarily cumulative and burdensome"). (E. Bloom Decl. at ¶ 3.[3]) In turn, the Campaign agreed to search for and produce documents from about one hundred custodians and made four former staffers available to Plaintiffs for depositions. (*Id.* at ¶ 2.) Since then, the Campaign has expended significant time and resources in discovery and been focused on building its defense to class certification, including the Wisconsin class that Robinson has always represented, based on the understanding that it would have been on notice many months ago of any further amendments to the complaint and any changes to the class representatives. (Dkt. 262 at ¶ 3(c).)

Indeed, at great cost and effort, the Campaign to date has searched for and produced close to 50,000 documents to Plaintiffs (including more than a thousand documents specific to Robinson); has reviewed thousands of documents produced by Plaintiffs and been compelled to engage in further ongoing written discovery (including as to Robinson) where it has become

---

[3] "E. Bloom Decl." refers to the Declaration of Elise M. Bloom, Esq., submitted herewith in opposition to Plaintiffs' Motion to Substitute Wisconsin Class Representative.

evident that there are either unique defenses or that Plaintiffs are withholding relevant documents; has received and responded to (or is in the process of responding to) at least five sets of requests for production of documents, two sets of interrogatories, and one set of requests for admissions from Plaintiffs; has conducted fourteen depositions (including of Robinson) and defended four depositions; and has been engaged in this substantial discovery with the intent of meeting this Court's deadlines so that the matter may progress to a substantive resolution.  (E. Bloom Decl. at ¶ 4.)

At no point did the Campaign suspect, and Plaintiffs never even hinted, that three years in the Campaign might have to alter its defenses and engage in fresh fact discovery as to a new class representative for one of the state-law classes.  Moreover, as discovery to date has clearly shown, the addition of a new class representative is likely to spur many avenues of additional discovery related to unique defenses and circumstances that may exist as to the individual that Plaintiffs are trying to jam into this case to replace Robinson on the eve of the deadline.

**B.**     **On November 1, 2022, the Campaign Deposed Robinson and Followed Up in Writing Concerning His Inappropriate and Obstructionist Behavior, and Requested That He Cure Deficiencies in His Document Productions.  Those Follow-Up Requests Have Gone Unanswered.**

On November 1, 2022, the Campaign deposed Robinson.  As the Campaign learned during the deposition, Robinson is a self-proclaimed "expert in cannabis."  (E. Bloom Decl., Exh. A at 29:7-8.)  He testified that he has been to jail "a bunch" and convicted of crimes "at least five" times, including for driving under the influence.  (*Id.* at 103:3-16.)  Robinson was extremely inappropriate to the questioning attorney throughout the deposition.  Among other things, he cursed repeatedly on the record, referred to the questioning attorney as a "fucking

bitch"[4] and "baby," and gestured at her with his middle finger.  (*Id.* at 132:5-135:5, 139:8-24.)
He responded to questions about his work history with retorts such as, "You like it, don't you,
lady? . . .  I'm talking to you, baby," and at one point told his own lawyer he wanted to take a
break "because this lady [referring to the questioning attorney] is about to piss me off."  (*Id.* at
117:23-24, 132:5-7.)

His behavior was so erratic that the Campaign inquired as to when Robinson had last
consumed alcohol or marijuana.  (*Id.* at 140:9-13.)  Although Robinson used an electric vape
device during his deposition, he responded that he had not ingested these substances since
"yesterday" but also told the Campaign "that certainly isn't a line of questioning you want to
pursue with an expert on cannabis."  (*Id.* at 140:11-25.)

Perhaps most concerning, Robinson refused to answer questions that were relevant to
assessing his suitability to serve as a class representative, including with respect to a public blog
post that he acknowledged he wrote, in which he claimed that he had been falsely accused of
sexual assault.  (*Id.* at 122:22, 131:11-132:3.)  Robinson's lawyer directed him to not answer
questions concerning this blog post as well as workplace complaints that had been filed against
Robinson, although notably did not do so on the basis of privilege, stating vaguely that her
objections concerned "proportionality, relevance, privacy, harassment and all constitutional
protections."  (*Id.* at 120:17-124:10, 131:14-16.)  Moreover, Robinson's lawyer made little real
effort to control her client during the deposition, and merely watched as he directed abuse at the
questioning attorney.

---

[4] Robinson put down his microphone to mouth this comment, which is not captured in the transcript, but it was clear
at the time and appears on the video recording of the deposition.  (*Id.* at ¶ 6.)  Should the Court like to review the
video recording of the deposition, the Campaign is ready to provide a copy of the audio-visual file in whatever format
would be most convenient.

All of this appeared to be a joke to Robinson, as during his deposition, a post appeared on his Facebook account that read, "Damn . . . was it something I said?"  (E. Bloom Decl., Exh. B.) He also told the questioning attorney to "[w]rap it up" because "I have actual things I could be doing with my day."  (E. Bloom Decl., Exh. A at 133:6-12.)

Two days after the deposition, counsel for the Campaign sent counsel for Plaintiffs a letter expressing concern with what had occurred at Mr. Robinson's deposition.  (E. Bloom Decl., Exh. C.)  On November 23, 2022, the Campaign followed up to ask that Robinson cure deficiencies in his document productions.  (E. Bloom Decl., Exh. D.)  For example, Robinson had testified that he had been in contact with other FOs (including Mr. Angulo and two others) about the Campaign but had not produced any of those communications.  He had testified that he had not taken steps to preserve the communications but claimed to have "backups" of the messages that could be produced.  (Exh. D at 2; Exh. A at 92:12-95:9.)  Robinson also had testified that he posted on social media concerning the Campaign, which he had not produced. (Exh. D at 2; Exh. A at 114:23-117:12.)  Finally, because Robinson had testified that he had been arrested "multiple times," the Campaign asked that he produce information related to his criminal history.  (Exh. D at 2; Exh. A at 101:5-9.)  Robinson has not cured those deficiencies, nor have Plaintiffs even addressed the deficiencies in response to the Campaign's November 23 letter.  Plaintiffs' counsel never indicated at any point in the several months following the deposition that Plaintiffs might seek to replace him as the Wisconsin class representative.[5]

---

[5]  Defending counsel also has yet to apologize for Robinson's behavior and her failure to take any steps at all in response.

     **C.**     **The Campaign Consents to Plaintiffs' Request for a 60-Day Extension of Discovery Based on Counsel's Schedule, Even Though the Campaign Had Expended Significant Time and Resources to Try to Complete Discovery by the Court-Ordered Deadline.**

On December 5, 2022, counsel for Plaintiffs wrote to ask that the deadline to complete fact discovery be extended from January 31, 2023, to April 1, 2023. After back and forth, counsel for Plaintiffs eventually cited upcoming trials and their holiday schedule as necessitating the request for an extension. Plaintiffs made no reference to any plans to change class representatives or alter the scope of discovery. (E. Bloom Decl. at ¶ 10.)

Even though the Campaign had expended significant time and resources to try to complete fact discovery by the court-ordered deadline (including preparing for and conducting depositions and engaging in substantial written discovery on a shorter schedule), as a professional courtesy, the Campaign consented to the extension. The request was submitted to the Court and granted on December 8, 2022. (Dkt. 317 (letter from Plaintiffs requesting a 60-day extension "in light of Plaintiffs' counsel's competing trial demands and the holiday schedule").)

     **D.**     **Plaintiffs Belatedly Contact the Campaign Seeking to Replace Robinson as Wisconsin Class Representative.**

On January 27, 2023, some three months after Robinson's deposition and with no prior discussion, counsel for Plaintiffs contacted counsel for the Campaign to state that Robinson would withdraw as the Wisconsin class representative and that Mr. Angulo would be substituted in his place. Plaintiffs gave no reason for Robinson's withdrawal, did not state when this decision had been allegedly reached, nor provide any explanation as to the gross delay in raising the issue to the Campaign's or Court's attention. (E. Bloom Decl., Exh. E.) The Campaign informed Plaintiffs that the Campaign could not consent, in light of the procedural posture of the

action and what had transpired, and would oppose any attempt to substitute a new Wisconsin

class representative.  (*Id.*)

On February 10, 2023, more than three months after Robinson's deposition and more

than nine months after the court-ordered deadline for substitution of class representatives,

Plaintiffs submitted a letter-motion to the Court requesting that they be allowed to substitute Mr.

Angulo in Robinson's place as the new Wisconsin class representative.  (Dkt. 320.)  Plaintiffs

still give no reason for the untimely substitution other than that "[a]fter his deposition, . . . Mr.

Robinson decided that he [no] longer wishes to represent the Wisconsin class, and Plaintiffs'

counsel has determined that it would be in the best interest of the class to replace Mr. Robinson

as a class representative."  (Dkt. 318.)  Plaintiffs offer no declaration from Robinson in support

of the motion, nor even the date when Robinson decided he would prefer no longer to serve.

Acknowledging neither that the request came almost nine months after the deadline in the

scheduling order and three months after Robinson's deposition, nor that discovery had been

extended only as a courtesy in respect of Plaintiffs' counsel's trial and holiday schedule,

Plaintiffs argue that their motion should be evaluated simply under the "liberal standard" of

Rules 15 and 21 instead of the "good cause" standard for amendments to scheduling orders.[6]

## **ARGUMENT**

## I.      **Standard for the Substitution of Class Representative**

Where, as here, a motion to substitute is made after the deadline set in the court's

scheduling order for substitution of class representatives, it is well settled that "the Rule 16(b)

'good cause' standard, rather than the more liberal standard of Rule 15(a), governs."  *Parker v.*

*Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also Otegbade v. New York City*

---

[6]  Plaintiffs' letter-motion also quotes a version of Rule 21 that is no longer current.  (*Compare* Dkt. 318 at 1, *with* Fed. R. Civ. P. 21.)

*Admin. for Child. Servs.*, 2015 WL 851631, at *2 (S.D.N.Y. Feb. 27, 2015) ("courts in this District have found that, also like amendments under Rule 15(a), requested amendments under Rule 21 are subject to the good cause standard of Rule 16 once a deadline . . . in a scheduling order has elapsed").

Good cause is not a forgiving standard and "depends on the diligence of the moving party." *Parke*r, 204 F.3d at 340; 3 Moore's Federal Practice - Civil § 16.14 (2022) ("Such orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just and certain manner."). Courts in the Second Circuit find that diligence has not been demonstrated where moving parties have delayed in bringing a motion after the deadline in the scheduling order. *See, e.g.*, *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (holding that the district court "acted well within its discretion" in concluding that plaintiff's three-month delay in moving to amend after learning new information prevented plaintiff from demonstrating the diligence necessary to satisfy Rule 16). And specifically on motions to add class representatives, courts have emphasized that good cause cannot be shown where "[c]onsiderations of delay and prejudice . . . weigh against granting" plaintiffs leave. *DeCastro v. City of New York*, 2020 WL 4932778, at *10 (S.D.N.Y. Aug. 24, 2020).[7]

---

[7] Even where a plaintiff is within the time permitted by a scheduling order, so that Rules 15 and 21 apply rather than Rule 16, "a 'district court has broad discretion in determining whether to grant leave," and such motions "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 256 (S.D.N.Y. 2013) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)). "[A] court 'plainly has discretion to deny leave . . . where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.'" *Id.* (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998)).

II.     **Plaintiffs' Motion to Substitute Should Be Denied Because They Cannot Meet Either the "Good Cause" Standard Under Rule 16 or the Standard Under Rules 15 and 21.**

A.      **Plaintiffs Have Not Been Diligent and Have Unduly Delayed Seeking to Substitute the Wisconsin Class Representative.**

Plaintiffs have proffered Robinson as their Wisconsin class representative in three separate complaints since March 2020.  They reaffirmed that endorsement a fourth time when they let the May 2022 substitution deadline pass without seeking any change, while substituting the Michigan and California class representatives.  Only after Robinson turned out to be a profane, insolent convict, flippant about his responsibilities as a class representative and quick to demean his questioner on the basis of her gender, did Plaintiffs seek to replace him – and even then not until three months after the deposition, when the Campaign continued to press for complete discovery responses.  Now, toward the end of a discovery period extended at Plaintiffs' request to accommodate their schedule, they insist that the Campaign should incur the cost of opposing certification of a class headed by a different representative, as to whom no discovery has been conducted, in service of a tactical judgment that they would be better served by a different representative.  The Campaign should not suffer additional cost and prejudice as a result of Plaintiffs' poor choices.

Plaintiffs' letter-motion to substitute does not even attempt to explain – let alone defend – the undue delay and total lack of diligence in seeking substitution.  They do not provide a declaration from Robinson explaining his supposed change of heart, when it occurred, or why. (Dkt. 318 at 1-2.)  Plaintiffs merely write that "counsel has determined that it would be in the best interest of the class to replace Mr. Robinson as a class representative."  (*Id.* at 1.)  It appears, then, that at some point after Robinson's deposition and without curing his discovery deficiencies, Plaintiffs' counsel decided that as a matter of legal strategy, they do not want him to continue fulfilling his role as the Wisconsin class representative.  That is no basis under the

circumstances to permit untimely substitution of a class representative.  *See, e.g.*, *Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020) (noting that a change in litigation strategy is "not compatible with a finding of diligence and do[es] not provide a basis for relief"); *see also Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y.*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000) ("[A] party . . . seeking leave . . . solely to gain a tactical advantage, also supports a finding that such an amendment is made in bad faith.").

Finally, in emphasizing that Mr. Angulo is a party plaintiff in the action and citing case law from the context of FLSA actions for the argument that "it is not necessary for Plaintiffs to amend their complaint in order to substitute a class representative if the new class representative is already a plaintiff in th[e] case," Plaintiffs wholly miss the point that in May 2020, when Mr. Angulo opted, it made him a plaintiff solely with respect to the FLSA claims and not with respect to any state-law claims.  (*See* Dkt. 76-1 ("I consent to be a party plaintiff . . . in order to seek redress for violations of the Fair Labor Standards Act.").)  The Wisconsin class claims, like the other state-law claims, are governed by Rule 23, not the FLSA's collective action procedures,[8] and any change to the plaintiffs who represent the state-law classes needs to be made by either stipulation or motion – certainly after the parties have negotiated an agreement as to the scope of discovery for class representatives and that discovery has nearly concluded.  *See Chen v. Good Chows Inc.*, 2016 WL 3144396, at *4 (S.D.N.Y. May 3, 2016) ("[E]ven if the Court had certified this case as a collective action, thereby allowing putative class members to opt-in to the collective class, the procedure obviously would only permit them to pursue FLSA claims.  Accordingly, . . . they clearly did not constructively amend the [state-law] claims to

---

[8]  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) ("[T]he requirements for certifying a class under Rule 23 are . . . more stringent than the requirements . . . to proceed in a collective action under" the FLSA.).

include additional plaintiffs.  A motion therefore was required for the Opt-in Plaintiffs to pursue

those claims.").[9]

> **B.    Plaintiffs Offer No Satisfactory Reason for the Inordinate Delay in Seeking
> Substitution, and Robinson's Purported Preference Is Insufficient to
> Outweigh the Undue Prejudice a New Class Representative Would Impose on
> the Campaign at This Late Stage.**

As noted, Plaintiffs have offered no justification for their untimely substitution other than

the conclusory assertion that Robinson "[no] longer wishes to represent the Wisconsin class."

(Dkt. 318 at 1.)  Mr. Robinson's seemingly arbitrary preference not to continue not only fails to

offer any explanation for the inordinate delay in seeking substitution, but also does not outweigh

the undue prejudice to the Campaign that would result if the motion were granted so near to the

close of fact discovery that was already extended at Plaintiffs' request.[10]  *See*, *e.g.*, *Davis v.*

*Lenox Hill Hosp.*, 2004 WL 1926086, at *4 (S.D.N.Y. Aug. 31, 2004) (in putative class and

collective action for alleged unpaid overtime, denying motion to add new named plaintiffs where

plaintiff had "not shown that her motion . . . [wa]s timely, or that . . . [it] would not unfairly

prejudice the defendants"); *In re Digit. Music Antitrust Litig.*, 2015 WL 13678846, at *3

(S.D.N.Y. Mar. 2, 2015) (holding that plaintiffs "ha[d] failed to show good cause" where there

were "inordinate delays in seeking to add and remove named plaintiffs, there has been no

satisfactory explanation of the delays, and amendment would prejudice the [d]efendants").

---

[9] The *Chen* court granted a motion to amend to permit individuals who previously had opted in to the FLSA claim to join the named plaintiff in asserting state-law claims as well.  But the court there noted that there was no scheduling order deadline, and the addition required no additional discovery because the added individuals had already been deposed.  *Id.* at *4.

[10] On different types of motions for leave to amend, courts in the Second Circuit have found that undue prejudice results when such motions are brought near the close or shortly after the close of discovery.  *See*, *e.g.*, *Lesnik v. Lincoln Fin. Advisors Corp.*, 2019 WL 6169971, at *3 (S.D.N.Y. Nov. 20, 2019) (finding undue prejudice where plaintiff moved to add new causes of action near "the scheduled end of discovery" and granting the motion would "forc[e] the re-taking of . . . depositions" and "restart the clock on discovery"); *Wade v. Kay Jewelers, Inc.*, 2018 WL 3553340, at *2 (D. Conn. July 24, 2018) (finding undue prejudice where plaintiffs moved to add new defendants shortly after discovery had closed and a summary judgment motion had been filed, even though plaintiff did "not add any new claims and several proposed defendants . . . ha[d] already been deposed").

First, as Plaintiffs' letter-motion acknowledges, the Campaign has long been preparing its defense based on Robinson serving as the Wisconsin class representative, as one of just 17 individuals whom Plaintiffs reluctantly agreed that the Campaign could depose and for whom they would provide responses to written discovery.  If Mr. Angulo is permitted to substitute for Robinson, the Campaign would have to start from square one for the Wisconsin class and this new class representative, and would have to bear the substantial costs associated with (i) searching for and producing any documents connected to Mr. Angulo; (ii) issuing document production requests and interrogatories, (iii) engaging in back and forth and perhaps litigation related to Plaintiffs' tendency to produce very few of the documents requested, (iv) deposing Mr. Angulo, and (v) pursuing other discovery avenues that might emerge, including any unique defenses as to the new class representative that would bear upon the adequacy and typicality requirements of Rule 23.  All of this results solely from Plaintiffs' lack of diligence and delay, and apparently their judgment that they are not well served by Robinson, which is unfair to impose on the Campaign at this late stage.  *See, e.g.*, *DeCastro*, 2020 WL 4932778, at *11 (finding prejudice where "additional discovery and briefing would . . . be necessary if [p]laintiffs are permitted" to include a new class representative); *Osakan v. Apple Am. Grp.*, 2010 WL 1838701, at *5 (N.D. Cal. May 5, 2010) (holding that "new class representatives will unduly prejudice [d]efendants, who have been preparing their defense based on the identity of the class representative . . . in the original complaint as well as the amended complaint" and emphasizing that it would also unfairly "require the Defendants to conduct new and/or additional discovery").

Especially because the putative class claim under Wisconsin law involves alleged misclassification, the Campaign would need to identify specifically how this new class representative's experiences on the Campaign relate to the legal questions to be answered at

certification and how his daily duties and responsibilities relate to those of other Wisconsin FOs he would purport to represent.  *See Gardner v. W. Beef Props., Inc.*, 2011 WL 6140518, at *3 (E.D.N.Y. Sept. 26, 2011), *report and recommendation adopted as modified sub nom.*, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) ("[A] dispositive question . . . is whether defendants misclassified that particular plaintiff . . . .  The resolution of this question . . . will require individualized examinations of each plaintiff's daily responsibilities and duties . . . .").

Second, contrary to Plaintiffs' claim, if discovery were to start fresh with a new Wisconsin class representative (as would be required if substitution were permitted), there is no way that fact discovery could be completed before the March 31, 2023 deadline.  The time needed for productions to occur and for the Campaign and Plaintiffs to review those productions and prepare for the deposition of the new class representative would necessarily extend well beyond the single month that remains.  Moreover, it is reasonably likely that unique issues would emerge as to this new Wisconsin class representative that could require a further expansion of discovery and perhaps the issuance of third-party subpoenas.  For example, despite Plaintiffs alleging that they all worked overtime on the Campaign, depositions and discovery have revealed that some of the Plaintiffs, including class representatives, were working substantial hours on other jobs, enrolled in school full-time, or working for other campaigns at the same time that they claim to have been working long hours seven days a week for the Campaign.  Permitting substitution raises the prospect of similar spin-off issues that will have to be investigated, necessitating a further extension of the discovery deadline, and further delay for a substantive resolution (perhaps for many months), more than three years after this action was filed.  *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (affirming denial of motion to add more named plaintiffs where it came after deadline in scheduling order and holding that delay

associated with the additional discovery was "precisely the sort of prejudice that justifies denial of a motion to amend . . . as untimely"); *DeCastro*, 2020 WL 4932778, at *11 (finding prejudice where adding a new named plaintiff "would likely push off further proceedings in this case for months"). Further, most of the depositions of Plaintiffs to date have necessitated protracted back and forth over deficiencies in document production that still are not resolved even for those who were deposed months ago. The Campaign continues to try to work cooperatively with Plaintiffs to obtain the documents and information that were requested, in some instances, two years ago now, but deficiencies persist that Plaintiffs have failed to cure, and relevant information remains outstanding.

Third, and finally, by waiting until after the Campaign produced tens of thousands of documents (including 1,389 documents specific to Robinson) to substitute a new Wisconsin class representative, Plaintiffs effectively seek an expansion of the agreed-upon discovery by retaining Robinson's documents, which likely would not have otherwise been produced, and now demanding that the Campaign search for and produce the documents (which are very likely to number at least in the hundreds and potentially in the thousands) for a new Wisconsin class representative.

In a remarkably similar situation in the Southern District of California, plaintiff had brought a putative class action against the Arizona Beverage Company and then sought to be substituted simply because plaintiff "no longer desire[d] to serve as the class representative in th[e] putative class action." *Hitt v. Arizona Beverage Co., LLC*, 2009 WL 4261192, at *2 (S.D. Cal. Nov. 24, 2009). Like here, the motion to substitute was filed after the deadline in the scheduling order and did not specify the reasons plaintiff wanted to withdraw or when plaintiff "decided that she did not want to be the class representative." *Id.* Denying the motion, the

district court emphasized that generally "[g]iven th[e] lack of information, the Court cannot find that good cause exists." *Id.*  Specifically, the court found that any substitution would be unduly prejudicial to the defendants who had "participated in substantial discovery, including discovery related specifically to the named [p]laintiff" and granting the motion "would effectively moot the [p]laintiff-specific work [d]efendants ha[d] done." *Id.* at *6.  The court gave the class representative twenty days to either voluntarily dismiss or to file an affidavit confirming that she would continue to pursue the action as the named class representative.  *Id.*

Here, too, given the lack of information in Plaintiffs' motion to substitute, there is no basis to find that good cause exists to substitute the Wisconsin class representative.  Even if there were more information, the motion should still be denied because it is unduly prejudicial to the Campaign to allow the substitution where the parties have participated in substantial discovery, including as to Robinson specifically, and granting the motion would effectively moot the plaintiff-specific work done by the Campaign to date and lead to substantial delays and further expenditures of time and resources by the Campaign as it is forced to start discovery from scratch for a new class representative.

**C.    Substitution Should Not Be Allowed as a Vehicle for Robinson to Evade Complying Fully With His Discovery Obligations.**

When Plaintiffs contacted the Campaign in December 2022 to ask for the fact-discovery deadline to be extended 60 days from January 31 to April 1, they made no mention of any desire to substitute class representatives.  To the contrary, as they represented to the Court, they sought the extension allegedly due to their own trial demands and holiday schedule.  (*See* Dkt. 317 (letter from Plaintiffs requesting a 60-day extension "in light of Plaintiffs' counsel's competing trial demands and the holiday schedule").)  Plaintiffs should not be permitted to exploit that

extension to substitute class representatives and impose further discovery burdens and costs on the Campaign.

Moreover, even leaving aside Plaintiffs' likely litigation-strategy motive, it appears highly likely from the timing and circumstances of the motion that Plaintiffs are attempting to substitute the Wisconsin class representative to facilitate Robinson evading his own discovery obligations.  During deposition, it became clear that Robinson had made incomplete productions, which the Campaign requested he cure.  (E. Bloom Decl., Exh. D.)  As detailed above, the deficiencies included communications between Robinson and other FOs via Signal and WhatsApp; social media posts about the Campaign; and information related to Robinson's criminal history.  (*Id.*)

Robinson has not produced any further discovery in response to the Campaign's November 23 correspondence and has failed to cure his discovery deficiencies.  Now, instead of providing that requested documentation, Plaintiffs have moved to relieve Robinson of that obligation by trying to insert a different class representative in his place.  This transparent attempt to evade discovery via substitution should not be allowed.

Courts in the Second Circuit and beyond have held that a motion to substitute should be denied where a class representative seeks to depart before fully complying with discovery obligations.  *See, e.g.*, *In re Digit. Music Antitrust Litig.*, 2015 WL 13678846, at *5 (denying motion to substitute class representatives where "suspicious timing of the requests" indicated an attempt to evade discovery orders and there had been inordinate delay in seeking to add and remove named plaintiffs); *see also Counts v. Gen. Motors, LLC*, 2019 WL 13059910, at *1 (E.D. Mich. Mar. 12, 2019) (denying class representative's motion to voluntarily dismiss where the representative had not responded to outstanding discovery requests because the class

representative had "voluntarily inserted himself into this case as a class representative . . . with a responsibility to his class members and the [d]efendant to litigate the claims he was advancing in good faith").

Indeed, it would create a perverse incentive for courts to permit plaintiffs, like Robinson here, to proceed as a class representative up to the point when they decide they do not want to comply with their discovery obligations and then to permit their substitution. This kind of bait-and-switch is not only unduly prejudicial to defendants but contrary to the very "economies of time, effort, and expense" that the class action mechanism exists to capture. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Plaintiffs' Motion to Substitute Wisconsin Class Representative and order Robinson to immediately cure his discovery deficiencies.

Dated: February 24, 2023     PROSKAUER ROSE LLP

Elise M. Bloom
Rachel S. Philion
Noa M. Baddish
Allison L. Martin
Pinchos N. Goldberg

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
ebloom@proskauer.com
rphilion@proskauer.com
nbaddish@proskauer.com
amartin@proskauer.com
pgoldberg@proskauer.com

PROSKAUER ROSE LLP

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(T)  617.526.9850
mbatten@proskauer.com

VENABLE LLP

Nicholas M. Reiter
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(T)  212.307.5500
nmreiter@venable.com

*Attorneys for Defendant*
MIKE BLOOMBERG 2020, INC.