# EXHIBIT A

Page 1

1

2              UNITED STATES DISTRICT COURT

3              SOUTHERN DISTRICT OF NEW YORK

4

5    DONNA WOOD, et al.,         )

     individually and on         )

6    behalf of all others        )

     similarly situated,         )

7                                )

               Plaintiffs,       )

8                                )

          vs.                    )    No. 20 Civ. 2489

9                                )    (LTS)(GWG)

     MICHAEL BLOOMBERG 2020,     )

10   INC.,                       )

                                 )

11             Defendant.        )

     ------------------------    )

12

13

14

15                    November 1, 2022

16                    8:58 a.m. CDT

17

18        Videoconferenced deposition of ALAN C.

19    ROBINSON, held virtually with the witness

20    located in Sun Prairie, Wisconsin, before

21    Laurie A. Collins, a Registered Professional

22    Reporter and Notary Public of the State of New

23    York.

24

25

```
                                          Page 2
 1
 2   A P P E A R A N C E S
 3   (All attendees appearing via videoconference):
 4
 5        OUTTEN & GOLDEN LLP
 6        Attorneys for Plaintiff
 7             601 Massachusetts Avenue, N.W.
 8             Washington, D.C. 20001
 9        BY:   HANNAH COLE-CHU, ESQ.
10               hcolechu@outtengolden.com
11                   - and -
12        OUTTEN & GOLDEN LLP
13             685 Third Avenue
14             New York, New York 10017
15        BY:   MICHAEL C. DANNA, ESQ.
16               mdanna@outtengolden.com
17             THEANNE Y. LIU, ESQ.
18               tliu@outtengolden.com
19
20
21
22
23
24
25
```

Page 3

1

2   A P P E A R A N C E S (continued):

3

4        PROSKAUER ROSE LLP

5        Attorneys for Defendant

6              11 Times Square

7              New York, New York 10036-8299

8        BY:    NOA M. BADDISH, ESQ.

9                 nbaddish@proskauer.com

10               ELISE M. BLOOM, ESQ.

11                 ebloom@proskauer.com

12               ALLISON L. MARTIN, ESQ.

13                 amartin@proskauer.com

14

15   ALSO PRESENT:

16        ELLE ESHLEMAN, Law Clerk (Outten)

17        HOWARD BRODSKY, Videographer

18        DUANE MILNER, Concierge Technician

19

20

21

22

23

24

25

Page 4

1

2           THE VIDEOGRAPHER:  Good morning.  Here

3       begins the video recorded virtual remote

4       deposition of Alan Robinson appearing from his

5       location in Sun Prairie, Wisconsin.  This      08:58:09

6       deposition is taken by the defendants in the

7       matter of Donna Wood, et al., plaintiffs,

8       versus Mike Bloomberg 2020, defendant, Case

9       Number 1:20-cv-2489 (LTS)(GWG), in the United

10      States District Court, Southern District of    08:58:32

11      New York.

12          Today is Tuesday, November 1, 2022.

13      The time is approximately 8:58 a.m. central

14      daylight time.

15          My name is Howard Brodsky, and I am the    08:58:49

16      video legal specialist in association with

17      Veritext Legal Solutions, with offices in New

18      York, New York.  The court reporter is Laurie

19      Collins, in association with Veritext.

20          Counsel have stipulated that all           08:59:04

21      appearances shall be recorded by the

22      stenographic court reporter into the court

23      record and have further stipulated and agreed

24      that the court reporter may take the

25      deponent's oath remotely.                       08:59:19

Page 29

                              Robinson

1

2    and harass minorities in this country, because the

3    most dangerous thing about cannabis is that it is

4    illegal.

5        Q.   And how does that relate to your        09:31:43

6    cofounding a business that sells cannabis?

7        A.   Because as an advocate I became an

8    expert in cannabis.

9        Q.   What do you mean, "an expert in

10   cannabis"?                                        09:31:58

11       A.   In the capital of Wisconsin, I am

12   considered a subject matter expert on cannabis.

13       Q.   What kinds of things do you know about

14   cannabis?

15       A.   Quite a few.                             09:32:14

16       Q.   Can you tell me about them?

17       A.   Sure.  The cannabis plant, for

18   instance, creates a cannabinoid called

19   cannabigerolic acid initially.  It uses

20   cannabigerolic acid to create three major         09:32:45

21   cannabinoids.  Those would be THCA, CBDA, and

22   CBCA.

23            It uses those 3 cannabinoids to create

24   the other 13 molecular groups of cannabinoids, of

25   which there are over 115.  We know about --        09:33:03

```
                                              Page 92
 1                      Robinson
 2            So I'm not trying to be elusive; I'm
 3    just trying to make sure that you understand that
 4    there is the possibility that I've spoken to some
 5    of my class representatives -- some of the folks   11:32:10
 6    that I represent.  I just don't remember what
 7    those conversations would have been right now.
 8        Q.    Who are the people that you represent?
 9        A.    Field organizers in Wisconsin.
10        Q.    And who have you --                        11:32:32
11        A.    Who worked for Bloomberg.
12        Q.    Who have you been in contact with
13    that -- who is a field organizer who worked for
14    the Bloomberg campaign in Wisconsin?
15            MS. COLE-CHU:  Objection to form.           11:32:42
16        A.    Tristan Angulo and two others, but I
17    don't recall their names right now.
18        Q.    And how have you communicated with
19    these people?
20        A.    Via various messaging services like       11:33:06
21    WhatsApp and Signal.
22        Q.    So do you have access to those
23    messages?
24        A.    Do I?  I don't -- no, no, actually, no,
25    because all of my messages are set to immediately   11:33:26
```

```
                                          Page 93
 1                      Robinson
 2   delete.
 3       Q.    Were you instructed by your attorneys
 4   to preserve documents relating to this case?
 5       A.    Relating to the case?           11:33:41
 6            MS. COLE-CHU:  Objection.
 7            MS. BADDISH:  What's the objection,
 8       Hannah?
 9            MS. COLE-CHU:  You're asking him what
10       legal advice that he received from his    11:33:52
11       attorneys and --
12            MS. BADDISH:  That's not what I asked.
13       I asked him if he -- if he was instructed to
14       preserve documents relating to this case.  I
15       didn't ask for the substance of those    11:34:04
16       communications.
17       Q.    And you should not disclose any
18   communications, Mr. Robinson, that you had with
19   your attorneys.  I'm just asking you whether or
20   not you have been instructed to preserve    11:34:12
21   documents.
22       A.    That sounds to me like disclosing a
23   communication that I would have with my attorney,
24   and so I'm not going to answer on the grounds that
25   my attorney has told me not to answer that kind of  11:34:22
```

```
                                              Page 94
  1                     Robinson
  2    thing.
  3             MS. BADDISH:  Hannah, are you
  4        instructing him not to answer that question?
  5             THE WITNESS:  Should I answer that    11:34:28
  6        question?
  7             MS. COLE-CHU:  You can -- you can give
  8        testimony -- you can -- you can respond to the
  9        question whether you were instructed to
 10        preserve documents, if you understand.       11:34:36
 11        A.    Yes.  Ah, yes, yes, I was explicitly --
 12    yep.
 13        Q.    And when were you instructed to
 14    preserve documents?
 15        A.    I don't recall, because it would have   11:34:57
 16    been --
 17        Q.    What documents were those?
 18        A.    Any documents that I had access to,
 19    meaning any documents that I had.
 20        Q.    Oh, sorry.                              11:35:12
 21        A.    Any documents that I had.
 22        Q.    Did you understand documents to include
 23    messages?
 24        A.    I did not, not at that time, no.
 25        Q.    What do you mean, "not at that time"?   11:35:28
```

```
                                                   Page 95
 1                        Robinson
 2       A.    By your line of question, it appears as
 3   if documents includes personal messages sent
 4   between organizers after the lawsuit had been
 5   filed.  I was not aware that I needed to preserve   11:35:43
 6   those documents.  Fortunately I have backups of
 7   everything.
 8       Q.    Okay.  That's great.  We'll be calling
 9   for the production of that information.
10             What documents did you search for        11:36:03
11   related to this case?
12       A.    Any e-mails and messages that I had
13   between Josh Dellaquila, other organizers, I'm
14   sure.
15       Q.    Anything else?                            11:36:21
16       A.    I'm uncertain.  Whatever documents that
17   I had in my possession I produced.
18       Q.    Okay.  And you testified earlier that
19   you understand that you're a class representative;
20   right?  What do you understand your role as a      11:36:41
21   class representative to entail?
22       A.    To participate fully in this process,
23   to make myself available to the class that I
24   represent, to inform them in regards to this
25   lawsuit, and, you know, to -- again, to           11:37:02
```

```
                                              Page 101
```

```
 1                    Robinson
 2       Q.    Have you ever been arrested?
 3       A.    Yes, ma'am.
 4       Q.    When were you arrested?
 5       A.    Several times, multiple times.  I don't  11:51:03
 6  remember exact dates.  If you would like me to
 7  produce my criminal history, though.
 8       Q.    Yes.  I think we'll be calling for
 9  that.
10              Can you explain to me the circumstances  11:51:22
11  surrounding any of those arrests?
12       A.    Yeah.  I have several OWIs, potentially
13  five.  I've got a felony OWI for sure, operating
14  while intoxicated.  It's driving while under the
15  influence of alcohol.                          11:51:41
16       Q.    Do you know when that occurred?
17       A.    Approximately seven to ten years ago
18  and further back.
19       Q.    When was the last time that you were
20  arrested?                                       11:51:57
21       A.    Perhaps seven years ago, maybe more.  I
22  don't really know.  Maybe five years ago.  I don't
23  know.  I don't know.
24       Q.    Did you ever serve any time in jail?
25       A.    Yes.                                 11:52:17
```

```
                                          Page 103
 1                      Robinson
 2    come and get you from the --
 3        Q.    How many times have you been in jail?
 4        A.    It's been a while now since I've been
 5    in jail.  They usually don't lock you up after you  11:54:29
 6    gain any affluence and influence.  But I was Black
 7    in Wisconsin for a long time, so a bunch.
 8        Q.    Do you know about how many?
 9        A.    Huh-uh, eight, nine, eight, nine.  Who
10    knows.                                              11:54:52
11        Q.    And how many times were you arrested?
12        A.    I don't know.
13        Q.    And were you ever convicted of a crime?
14        A.    I have been convicted, yes.
15        Q.    How many times?                           11:55:09
16        A.    At least five, as I --
17        Q.    And what were the times?
18        A.    OWI and/or -- there was the one fleeing
19    and eluding; right?  But OWIs, DUIs.
20        Q.    Okay.                                     11:55:29
21        A.    Drinking and driving in Wisconsin.  The
22    drinking is state and the country.
23        Q.    Okay.
24              Going back to Robinson Exhibit 8, is
25    this the other document that you reviewed in       11:55:58
```

```
                                        Page 114
 1                      Robinson
 2   besides the Bloomberg campaign?
 3        A.    No.
 4        Q.    Let's move on to Robinson Exhibit 10.
 5        A.    10?                              12:09:16
 6              MS. COLE-CHU:  Noa, can we take a break
 7        after this exhibit?
 8              MS. BADDISH:  We'll see.  I might
 9        almost be done so...
10              MS. COLE-CHU:  Okay.             12:09:29
11        A.    I'm looking at Exhibit 10.
12        Q.    Okay.  Would you agree that -- have you
13   seen Exhibit 10 before?
14        A.    Yes.
15        Q.    What is Exhibit 10?               12:10:10
16        A.    It is my responses and objections to
17   the defendant's first request for the production
18   of documents.
19        Q.    Okay.  And we discussed earlier that
20   you searched for documents related to your work   12:10:23
21   for the campaign; right?
22        A.    Yes.
23        Q.    You testified earlier that you posted
24   on social media to try to attract volunteers; is
25   that right?                                 12:10:36
```

```
                                        Page 115
 1                    Robinson
 2        A.    Yes.
 3        Q.    Did you produce documents from your
 4   social media accounts regarding volunteers?
 5        A.    There weren't any documents to produce.  12:10:44
 6        Q.    You did not produce any of your social
 7   media posts from your time at the campaign, did
 8   you?
 9             MS. COLE-CHU:  Objection to form.
10        A.    There were not any for me to produce   12:11:08
11   because on my Facebook shortly after I posted a
12   picture of Bloomberg I deleted it.  It got a
13   negative -- it got a super negative response.  I
14   was meme'd.
15        Q.    Did you post on Instagram?             12:11:30
16        A.    No.  The campaign did.  The campaign
17   took my image and posted to their Instagram
18   account, so why don't you produce those
19   documents -- or did I post on -- I don't know, is
20   Michael Douglas on my Instagram?  God, I think --  12:11:52
21   I think Michael Douglas's son is on my Instagram,
22   and I don't believe that that picture was taken
23   like with any campaign material.
24        Q.    But you posted about the campaign and a
25   picture of Michael Douglas's son on your --       12:12:11
```

```
                                              Page 116
 1                   Robinson
 2             MS. COLE-CHU:  Objection.
 3        A.    Yeah, yeah, on my Instagram, I think.
 4        Q.    And you didn't produce it?  You didn't
 5   produce that post in this lawsuit?           12:12:23
 6        A.    No, I did not.
 7        Q.    Why not?
 8        A.    Didn't know I had to.
 9        Q.    Okay.
10        A.    I know the campaign has that post.  Why  12:12:32
11   would I give the campaign something they had?
12        Q.    You have independent obligations to
13   search for and produce documents, including social
14   media posts, in your possession.  And if you
15   posted -- so did you -- what Instagram handles did  12:12:45
16   you use at the time you worked for the campaign?
17        A.    I don't recall.  I have actually
18   changed my Instagram handle several times since
19   then, so I don't recall.
20        Q.    And is your testimony that you did not  12:13:04
21   post on your personal Instagram about the
22   campaign?
23        A.    No, that is not my testimony.
24        Q.    Okay.  So you did post on your personal
25   Instagram about the campaign?                 12:13:18
```

```
                                              Page 117

  1                        Robinson

  2        A.     My testimony is that I posted a picture

  3    of Michael Douglas's son on my Instagram.   That's

  4    my testimony.

  5        Q.     And you didn't produce that picture or   12:13:41

  6    that post; right?

  7        A.     That is also correct.

  8        Q.     Okay.   We're going to be calling for

  9    the production of all Instagram, Twitter, and

 10    Facebook posts regarding the campaign.   Those were   12:13:55

 11    already included in request, and they should have

 12    been produced in advance of this deposition.

 13        A.     It likely --

 14        Q.     Please let me finish the question.

 15        A.     -- wasn't produced because there is no   12:14:04

 16    campaign material in it.   Now, what do you want?

 17    Everything that I've ever done in regards to

 18    anybody political and/or famous?   Because there's

 19    a whole lot of that shit, and it doesn't have

 20    anything to do with Michael Bloomberg.        12:14:19

 21              Also, what are you, what are you, what

 22    is Michael Bloomberg these days?

 23              Listen, Hannah, can we take a break,

 24    because this lady is about to piss me off.

 25              MS. COLE-CHU:   Can we take a short       12:14:32
```

```
                                              Page 118

 1                        Robinson

 2        break?

 3                MS. BADDISH:  Sure.  Five minutes,

 4        please.

 5                THE VIDEOGRAPHER:  The time is 12:15.   12:14:36

 6        We are off the record.

 7                (Recess taken from 12:15 to 12:23.)

 8                THE VIDEOGRAPHER:  The time is 12:23.

 9        We are on the record.

10        Q.    Mr. Robinson, have you ever complained   12:23:21

11    about discrimination about any entity to which

12    you've provided services?

13                MS. COLE-CHU:  Objection to form.

14        Q.    Let me -- strike that.  Let me reask

15    that question.                                      12:23:39

16                Have you lodged any previous complaints

17    against former employers or entities for which you

18    performed services?

19        A.    Yes.

20        Q.    What were those complaints?              12:23:48

21        A.    I sued West for discrimination.

22        Q.    I'm having trouble hearing you.

23        A.    Well, can you hear me now?

24        Q.    That's much better.  Thank you.

25                You complained to West about           12:24:11
```

```
                                              Page 120
 1                         Robinson
 2        A.     No, no, I don't think so.
 3        Q.     Have you ever filed any litigation or
 4   administrative charge against any entity for which
 5   you performed services?                   12:25:48
 6        A.     That is an unusually broad question.
 7        Q.     Have you ever filed a lawsuit before?
 8        A.     Have I ever sued anybody?  Yeah.
 9        Q.     Who?
10        A.     I sued a landlord once and won.    12:26:06
11        Q.     Anyone else?
12        A.     No, not that -- not to my knowledge,
13   not that I recall, not right now.
14        Q.     Has anyone lodged any complaints about
15   you?                                       12:26:23
16        A.     Have I ever been sued?
17        Q.     That was not my question, but you can
18   answer that question as well.  Have you ever
19   been -- has anyone ever lodged any complaints
20   about you where you worked?                12:26:36
21        A.     Yes.
22        Q.     What kind of complaints?
23               MS. COLE-CHU:  Objection.  Noa, I'd
24          like to take a break and give you a call, if
25          that's all right.                   12:26:55
```

```
                                              Page 121
 1                        Robinson
 2            MS. BADDISH:  No.  We're going to
 3       continue.  We have taken a lot of breaks
 4       today, Hannah.
 5            MS. COLE-CHU:  I think you are        12:27:01
 6       approaching an issue going down a road that I
 7       would like to discuss with you before you do
 8       that.
 9            MS. BADDISH:  Can I assume the answer
10       to the question is yes?                    12:27:08
11            MS. COLE-CHU:  No.
12            THE WITNESS:  I didn't answer anything,
13       so you can make no assumptions.
14       Q.    I'd like you to answer the question yes
15     or no.                                       12:27:22
16            MS. COLE-CHU:  Can you please repeat
17       the question?
18            MS. BADDISH:  Laurie, can you please
19       read the question back.
20            (Record read.)                        12:27:47
21            MS. COLE-CHU:  I'm going to object.
22       A.    The answer is various.
23       Q.    What kinds of complaints?
24       A.    Various.
25       Q.    What do you mean by "various"?        12:28:06
```

```
                                               Page 122
 1                         Robinson
 2              MS. COLE-CHU:  I'm going to object
 3         again and, Noa, ask again that we take a break
 4         so we can discuss this line of questioning.
 5              MS. BADDISH:  I don't understand what     12:28:19
 6         the concern is.  If there is a potential
 7         criminal issue, you know, you can respond
 8         accordingly, but I don't see why we cannot
 9         pursue this line of questioning.  He is a
10         class representative in this lawsuit, and I    12:28:33
11         don't see the basis for your objection.
12              MS. COLE-CHU:  Yes, and I'm happy to
13         explain.  I would like to discuss it with you
14         off-line to see if we can reach an agreement.
15              MS. BADDISH:  We are on the record,       12:28:48
16         Hannah.  And we've taken a number of breaks.
17         You could have discussed this with me before
18         during one of those breaks or during the
19         deposition.  But right now I'm going to ask
20         that we stay on the record and ask
21         Mr. Robinson to answer the question.
22              THE WITNESS:  I'm not answering.
23              MS. COLE-CHU:  I did not know what -- I
24         did not know that you would be asking these
25         questions until you began asking them.  There  12:29:05
```

```
 1                        Robinson
 2         are certain matters that I will instruct my
 3         client not to answer and testify about.
 4              I am not saying that he won't give any
 5         testimony with respect to anything that you're  12:29:17
 6         asking about.  In order to get on the same
 7         page, because I believe he can give testimony
 8         in response to some of these questions, I want
 9         to make sure that you are not venturing into a
10         realm that he cannot give testimony about or    12:29:35
11         that I would instruct him not to answer, and
12         that's why I want to give --
13              MS. BADDISH:  We're on the record.  I
14         would rather have this conversation on the
15         record.                                         12:29:44
16              What is the basis for which he would
17         not have to answer my questions?
18              MS. COLE-CHU:  Again, I don't know
19         until you ask them and --
20              MS. BADDISH:  I just asked the             12:29:55
21         question, and you're not -- I'm asking him
22         what the nature of the complaints that have
23         been lodged against him are.  And you're
24         objecting, and you're not telling me what the
25         basis of your objection is.                     12:30:05
```

```
                                          Page 124
 1                      Robinson
 2           So I'm just going to continue to ask
 3       the questions.  You haven't given me any
 4       information as to why this question should be
 5       treated differently than any other questions   12:30:13
 6       that I've asked earlier.  So --
 7               MS. COLE-CHU:  The basis of my
 8       objection is proportionality, relevance,
 9       privacy, harassment, and all constitutional
10       protections.                                    12:30:25
11               MS. BADDISH:  Okay.  Well -- all what?
12               MS. COLE-CHU:  Constitutional
13       protections.
14               MS. BADDISH:  Are you saying -- can you
15       specify what protections those are?  I mean,    12:30:34
16       the relevance proportionality, that's not
17       going to fly.  He's a class representative.
18       We are entitled to know whether he's been
19       complained about and the nature of those
20       complaints, especially in the workplace.        12:30:49
21               MS. COLE-CHU:  Can you explain what --
22       how that's proportional to -- how that's
23       proportional?
24               MS. BADDISH:  I think it's abundantly
25       clear.  I shouldn't have to explain that.  So   12:31:01
```

```
                                              Page 131
 1                       Robinson
 2        him or are you instructing him not to do that
 3        as well?
 4               MS. COLE-CHU:  I will allow
 5        Mr. Robinson to acknowledge whether that is a  12:48:35
 6        public posting.
 7               MS. BADDISH:  Okay.
 8        Q.    Mr. Robinson, if you could refer back
 9     to what's been marked as Robinson Exhibit 11.
10        A.    Yes.                               12:48:52
11        Q.    Can you confirm that this is a public
12     posting on a blog that you created?
13        A.    I can --
14               MS. COLE-CHU:  Objection to form, and
15        I'm going to instruct the witness not to    12:49:02
16        answer.
17               MS. BADDISH:  I'm just asking him is
18        this a public posting by you.
19               THE WITNESS:  Hannah, are you
20        instructing me not to answer?              12:49:16
21               MS. COLE-CHU:  You can answer.
22               THE WITNESS:  This is a public posting.
23        Q.    By you?
24               THE WITNESS:  Hannah, are you --
25               MS. COLE-CHU:  Objection.           12:49:25
```

```
                                                Page 132

 1                       Robinson

 2             You can answer.

 3             THE WITNESS:  By me?  Yes.

 4       Q.    Okay.

 5       A.    You like it, don't you, lady?  Attorney  12:49:43

 6   Baddish, I'm talking to you, baby.  You like it,

 7   don't you, lady?

 8       Q.    Excuse me?  What --

 9       A.    You like it.  You heard me.  You like

10   it, don't you --                                12:49:57

11             MS. COLE-CHU:  Mr. Robinson --

12       A.    -- using these classic racist tropes.

13   You like it, debasing a Black man.

14       Q.    Mr. Robinson --

15       A.    You like it, don't you, Attorney       12:50:04

16   Baddish?

17       Q.    I'm going to ask you to stop now

18   because you've been --

19       A.    Attorney Baddish.

20       Q.    No, no.                               12:50:08

21       A.    You like it, don't you?

22       Q.    You have been disrespectful all day.

23   No.

24       A.    Are you enjoying yourself, Attorney

25   Baddish?                                        12:50:14
```

```
 1                      Robinson
 2           MS. COLE-CHU:  Mr. Robinson --
 3      Q.    Mr. Robinson, you are acting completely
 4    inappropriately, and I'm going to ask that you
 5    stop.  We're almost done with the deposition.     12:50:20
 6      A.    Wrap it up, ma'am, because while you're
 7    sitting here engaging in conjecture, harassment,
 8    and the willful debasement of a community pillar
 9    and enjoying yourself --
10      Q.    I'm just doing my job.                     12:50:42
11      A.    -- I have actual things that I could be
12    doing with my day.
13      Q.    You chose to sue --
14      A.    You are having a good time, aren't you?
15      Q.    You chose to bring a lawsuit against
16    the campaign.
17           MS. COLE-CHU:  Mr. Robinson --
18      A.    But are you having a good time --
19           MS. BADDISH:  Hannah --
20      A.    -- pursuing this line of questioning?     12:50:54
21           MS. COLE-CHU:  Mr. Robinson,
22      Mr. Robinson, we're almost done.  We're almost
23      done.
24      A.    Attorney Baddish, wrap it up.  You're
25    almost there, aren't you?  Or did you want -- or   12:51:03
```

```
                                              Page 134
 1                      Robinson
 2    did you want --
 3             MS. COLE-CHU:  Mr. Robinson --
 4        A.    -- to harass me a little bit more, huh?
 5             MS. COLE-CHU:  Mr. Robinson --        12:51:12
 6             Can we just go off the record for a
 7        second.
 8             MS. BADDISH:  No.
 9        A.    Is that what you're excited about,
10    ma'am?                                         12:51:19
11             THE VIDEOGRAPHER:  Counsel, the time --
12             MS. BADDISH:  We're not going off the
13        record.
14             MS. COLE-CHU:  Mr. Robinson --
15             MS. BADDISH:  We're not going off the   12:51:22
16        record.
17             MS. COLE-CHU:  -- we're almost done.
18             MS. BADDISH:  We can't go off the
19        record unless I agree.  We're not going off
20        the record.  This should all be on the record. 12:51:25
21             THE WITNESS:  You know what off the
22        record is?
23        Q.    Excuse me?  Oh, did you just give me
24    the finger?
25        A.    No, ma'am.                            12:51:38
```

Page 135

```
 1                         Robinson
 2              MS. COLE-CHU:  Mr. Robinson --
 3       A.    I pointed.
 4       Q.    Well, don't worry.  This is all on
 5    video, so we'll be able to watch this again.    12:51:44
 6       A.    That will be outstanding.
 7       Q.    Great.  Okay.
 8       A.    I'm certain that you -- I'm certain --
 9    I'm certain -- I'm certain that you certainly --
10    you would want, you know, a whole lot of people    12:51:56
11    seeing exactly how you've debased yourself --
12       Q.    The record will speak for itself.
13       A.    -- with your behavior.
14              MS. COLE-CHU:  Mr. Robinson, we're
15          almost done.  If you could just answer the    12:52:09
16          final questions, and then we'll be done.
17              THE WITNESS:  Absolutely, ma'am.
18              MS. BADDISH:  Duane, would you please
19          mark Tab 26 as Robinson Exhibit 12.
20              (Pause.)                               12:52:23
21              THE CONCIERGE TECHNICIAN:  Robinson 12
22          has been marked.  Just a moment.  A little bit
23          larger file.
24              (Robinson Exhibit 12, employee
25          handbook, marked for identification.)      12:53:03
```

```
                                      Page 139
 1                    Robinson
 2   overtime that I worked for Michael Bloomberg.
 3        Q.    Okay.  But it accurately represents how
 4   much you were paid; right?
 5        A.    To my knowledge.                    12:58:55
 6             MS. BADDISH:  Okay.  If we can just
 7        take a five-minute break, I think I'm done.
 8             THE WITNESS:  Do you think you're done?
 9        Are you done?
10             THE VIDEOGRAPHER:  The time is 12:59.  12:59:04
11             MS. BADDISH:  (Inaudible.)
12             THE VIDEOGRAPHER:  We're going off the
13        record.
14             THE WITNESS:  Fuck not.  Are we on a
15        break?  Are you done?  Is she done?        12:59:08
16             MS. COLE-CHU:  Mr. Robinson, can you
17        just mute?
18             THE WITNESS:  Is she done?  Because if
19        she's done, I'm done.
20             MS. COLE-CHU:  I think she's reviewing  12:59:15
21        her notes to make sure that she's done.  So
22        we're going to take a five-minute break.  So
23        let's meet.
24             THE WITNESS:  Attorney Baddish is a --
25             MS. COLE-CHU:  Mr. Robinson, can you   12:59:25
```

```
                                          Page 140

 1                    Robinson

 2      just mute for me?

 3            THE WITNESS:  She's a lovely lady.

 4      Great attorney.  I appreciate her.

 5            MS. COLE-CHU:  Can you mute for me?     12:59:34

 6            (Recess taken from 12:59 to 1:06.)

 7            THE VIDEOGRAPHER:  The time is 1:06.

 8      We are on the record.

 9      Q.    Mr. Robinson, when was the last time

10   that you consumed alcohol?  I can't hear you.     01:06:12

11      A.    Yesterday.

12      Q.    When was the last time you consumed

13   marijuana?

14            MS. COLE-CHU:  Objection.

15      A.    Yesterday.                               01:06:32

16      Q.    When?

17      A.    Yesterday -- yesterday.

18      Q.    Yesterday evening?

19      A.    Yester-day.

20      Q.    Okay.                                    01:06:55

21      A.    Ma'am, ma'am, that certainly isn't a

22   line of questioning that you want to pursue with

23   an expert on cannabis.

24      Q.    Okay.  It certainly is --

25      A.    Yesterday.                               01:07:12
```

```
                                              Page 141
                            Robinson
 1
 2        Q.    Okay.  You've answered the question.
 3        A.    Move on.
 4        Q.    Mr. Robinson, did you communicate with
 5   your lawyer about your testimony today?          01:07:24
 6              MS. COLE-CHU:  Objection.  I'd just
 7        like to caution Mr. Robinson not to reveal any
 8        communications that took place between him and
 9        his counsel.
10        Q.    I'm not asking you to disclose the      01:07:39
11   substance of those communications; I'm just asking
12   whether or not those conversations occurred.
13        A.    I have communicated with my attorney.
14        Q.    About your testimony today?
15        A.    Yes.                                    01:07:52
16        Q.    During today's deposition?
17        A.    No, not during.
18        Q.    When we have taken breaks during
19   today's deposition, you have communicated with
20   your counsel about your testimony?                01:08:05
21        A.    I have certainly consulted with my
22   attorneys.  There's absolutely no crime in that,
23   and there's nothing wrong with that.
24              MS. BADDISH:  Okay.  I have no further
25        questions, but we're going to reserve our    01:08:18
```

Page 142

1                         Robinson

2          rights and keeping the deposition open, given

3          the numerous issues that arose during the

4          deposition.

5                 MS. COLE-CHU:  I don't have any further  01:08:27

6          questions.  We can go off the record.

7                 THE VIDEOGRAPHER:  Thank you, counsel.

8          Here ends media unit number 3.  This concludes

9          the video recorded virtual remote deposition

10         of Alan Robinson taken by the defendants on    01:08:40

11         Tuesday, November 1st, 2022.  The time is 1:08

12         p.m. central daylight time, and we are going

13         off the record.

14                (Time noted:  1:08 p.m.)

15                     _____

16                     ALAN C. ROBINSON

17

18     Subscribed and sworn to before me

19     this ____ day of _____ 2022.

20

21     _____

22

23

24

25

Page 143

1

2                    C E R T I F I C A T E

3     STATE OF NEW YORK      )

4                            : ss.

5     COUNTY OF NEW YORK     )

6

7            I, LAURIE A. COLLINS, a Registered

8        Professional Reporter and Notary Public

9        within and for the State of New York, do

10       hereby certify:

11            That ALAN C. ROBINSON, the witness

12       whose deposition is hereinbefore set forth,

13       was duly sworn by me and that such

14       deposition is a true record of the

15       testimony given by the witness.

16            I further certify that I am not

17       related to any of the parties to this

18       action by blood or marriage and that I am

19       in no way interested in the outcome of this

20       matter.

21            IN WITNESS WHEREOF, I have hereunto

22       set my hand this 2nd day of November 2022.

23

24

25                       LAURIE A. COLLINS, RPR