

Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

March 10, 2023

**Via CM/ECF**

Elise M. Bloom
Member of the Firm
d +1.212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

The Honorable Gabriel W. Gorenstein
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Donna Wood, et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)

Dear Judge Gorenstein:

We represent Defendant Mike Bloomberg 2020, Inc. (the "Campaign") in the above-referenced matter. The Campaign writes in opposition to Plaintiffs' request for a 45-day extension of the fact discovery period, which is currently set to close on April 1, 2023, and other case deadlines. (Dkt. 329.)

This lawsuit has been pending for almost three years, and for approximately two of those years, the parties have been involved in active discovery. Plaintiffs have had ample opportunity to timely request and obtain information from the Campaign during this period. Plaintiffs' purported need for ***a second*** extension of time to "wrap up" discovery is attributable solely to their own inexplicable and unilateral delay in waiting to serve a multitude of discovery demands on the Campaign, which seek largely irrelevant information, until shortly before the close of fact discovery (and after the Campaign consented to their first, 60-day extension request, which Plaintiffs' counsel stated over a phone call was necessary only because of their counsel's trial schedule, without mention of the substantial additional requests they subsequently served). As explained below, Plaintiffs' request should be denied.

**I.      Procedural Background**

    **A. The Campaign Produces More Than 18,500 Responsive Documents Through May 2021, During a Time Period When Plaintiffs Claim Only "Limited" Discovery Occurred.**

Plaintiffs are former field organizers ("FOs") who were employed by the Campaign for less than four months between late 2019 and early 2020. They allege that they were misclassified as exempt employees under the Fair Labor Standards Act ("FLSA") and various state laws, and are suing the Campaign for alleged unpaid overtime. (Dkt. 1; *see also* Dkt. 29.) Their common law claims for promissory estoppel and fraudulent inducement were dismissed by the district court with prejudice on March 25, 2022. (Dkt. 258.)

In July 2020, at Plaintiffs' urging, the Court ordered a phased approach to discovery that began with the exchange of written discovery and negotiation of an ESI protocol, and the Campaign's ESI production from the Campaign email accounts of certain Plaintiffs, which Plaintiffs argued

**Proskauer**

Page 2

would "shed light on relevant custodians and categories of [other] relevant and responsive ESI."[1] (Dkt. 130 at 6; *see also* 7/16/2020 Tr. at 29:8-10 (the Court directing the parties to commence with discovery "in the way the [P]laintiffs have proposed.").)

On August 14, 2020, Plaintiffs served their First Set of Requests for Production ("First RFPs") and First Set of Interrogatories on the Campaign. Although Plaintiffs' First RFPs sought production of documents responsive to a number of broad categories, they notably contained no mention or request for data of any kind.

In November 2020, the Campaign began producing various categories of responsive documents that were readily located without the need to negotiate over ESI custodians and search terms. Significantly, the Campaign also produced the entire Campaign email boxes and all Google Drive documents for 17 Plaintiffs. As of May 2021, the Campaign already had produced more than 18,500 documents (totaling nearly 100,000 pages), a volume that flatly belies Plaintiffs' misrepresentation that only "minimal" discovery occurred up to that point.[2]

On June 9, 2021, the Court granted the Campaign's motion for a stay of a discovery pending the Court's resolution of its pending motion to dismiss the common law and FLSA claims. The Court subsequently granted the Campaign's motion to dismiss in part and denied it in part on March 25, 2022. (Dkt. 258.)

> **B. Plaintiffs Do Little To Advance Discovery For Months Before Obtaining Defendant's Consent To Their First Discovery Extension and Then Serving Multiple Sets Of Discovery Demands Shortly Before the New Discovery End Date.**

Following the ruling on the motion to dismiss, on April 11, 2022, this Court entered a Scheduling Order, which provided for, *inter alia*, a non-expert discovery deadline of January 31, 2023. (Dkt. 262.) Between May 2022 and September 2022, the parties discussed custodians and search terms for the Campaign's additional ESI searches. Ultimately, the parties agreed that the Campaign would produce the full email boxes of 43 FOs. In addition, the Campaign also agreed to apply more than 50 search terms to the ESI it would review of an additional 58 agreed-upon custodians. Plaintiffs admit that, during this five-month period through September 2022 that ESI negotiations were ongoing, they "largely paused" their "affirmative discovery efforts, including review of key documents [and] follow-on discovery" (Dkt. 329 at 2.)

Between October and November 2022, both parties noticed and conducted depositions.[3] On December 8, 2022, Plaintiffs filed a request for a 60-day extension of the discovery deadlines,

---

[1] The Campaign's position was that it would be inefficient and disproportionately burdensome on Defendant to begin any electronically stored information ("ESI") discovery before the Court ruled on the Campaign's motion to dismiss the common law and FLSA claims.

[2] Between November 2020 and May 2021, the parties also repeatedly conferred about both parties' written discovery responses and document productions.

[3] Plaintiffs conducted the first deposition in this case, notwithstanding their representation that "the Campaign insisted all Plaintiffs' depositions be conducted before Plaintiffs could take depositions." The parties also agreed to dates for the depositions of three other Campaign witnesses in November and December 2022, but Plaintiffs unilaterally adjourned two of these depositions until January and February 2023. Plaintiffs' suggestion that the Campaign somehow acted improperly in attempting to schedule Plaintiffs' depositions by the end of November also is baseless, particularly given that discovery was then set to close on January 31, 2023. Contrary to Plaintiffs' suggestion, the Campaign wanted to ensure that it would have sufficient time to take all 17 Plaintiffs' depositions, particularly given

**Proskauer»**

Page 3

citing their counsel's competing trial demands and the holiday schedule. (Dkt. 316.) Based on Plaintiffs' representation about their counsel's trial schedule made during a telephonic conference, the Campaign did not oppose this request. On December 8, 2022, the Court granted Plaintiffs' request for an extension, including the fact discovery deadline of April 1, 2023. (Dkt. 317.)

After obtaining an extension of discovery, Plaintiffs proceeded to inundate the Campaign with multiple sets of additional discovery demands. On December 23, 2022, Plaintiffs served their Third Set of Requests for Production ("Third RFP"), which sought production of "data and database records containing and reflecting" the 50 Named Plaintiffs' "tasks and activity on all direct voter contact platforms and systems used by Defendant …, including procedures for how those tasks and activities [*sic*] assigned and tracked and all data collected by Plaintiffs." Plaintiffs shortly thereafter requested a meet and confer on January 18, 2023 to give Plaintiffs an opportunity to "specify" the type of information sought in their Third RFP. Even though the Campaign's objections and responses were not yet due under the Federal Rules, the Campaign, in a show of good faith, agreed to confer with Plaintiffs.

During the January 18, 2023 meet and confer, Plaintiffs stated that they realized their Third RFP for data was **narrower** than they had intended. On January 20, 2023, Plaintiffs served an Amended Third RFP, which expanded the scope of the Request to encompass *all* FOs nationwide, including individuals who have not opted in to the FLSA claims and who are not a member of any of the putative classes. In its response to the Amended Third RFP served on February 21, 2023, the Campaign objected to the Request. However, in the interest of avoiding unnecessary discovery disputes, the Campaign agreed to investigate what (if any) responsive user activity information may exist and if it does, whether it is relevant and whether the Campaign will be able to reasonably obtain the requested information from the direct voter contact platform service providers. The Campaign has actively been engaged in diligent and time-intensive efforts to try to obtain the requested information from these non-party voter contact platforms (to the extent it exists) and has agreed to produce what it is able to obtain as expeditiously as possible, subject to the Campaign's objections.

On January 13, 2023, Plaintiffs served their Fourth Set of Requests for Production ("Fourth RFPs"), which contained 28 additional Requests for ESI related to, *inter alia,* meal and rest breaks with respect to California FOs and reimbursement of business expenses for California FOs (related to claims they asserted in March 2020), and sales of Campaign-branded merchandise (related to a defense asserted by the Campaign in 2020). The Campaign served its responses and objections to the Fourth RFPs on February 13, 2023, and will be producing responsive documents, consistent with its objections, by March 17, 2023.

On February 17, 2023, Plaintiffs served **three more sets** of written discovery on the Campaign, which included (i) Plaintiffs' Fifth Set of Requests for Production; (ii) Plaintiffs' Second Set of

---

a number of the Plaintiffs purportedly had very limited availability, cancelled their depositions at the last minute and failed to produce all responsive documents in advance of their depositions. In fact, as recently as yesterday, Plaintiffs dumped approximately 1,500 pages of documents from proposed Class Representative Nick Coker on the Campaign in advance of his deposition scheduled for this Monday, March 13, despite their prior repeated representations that Coker had produced all responsive documents in his possession.

Interrogatories; and (iii) Plaintiffs' First Set of Requests to Admit. The Campaign will be serving its responses and objections to this discovery within the time provided under the Federal Rules.

## II. Plaintiffs' Request For a Second Discovery Extension Should Be Denied Because They Have Already Had Ample Opportunity To Request and Obtain Discovery.

Fed. R. Civ. P. 1 requires the Court and the parties to construe, administer, and employ the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." While the Court has broad discretion to oversee discovery, Rule 26(b)(2)(C) authorizes courts to limit the frequency or extent of discovery if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii).

Plaintiffs present no legitimate basis for another extension of the discovery deadlines in this case. Plaintiffs admit in their motion that they made the intentional strategic decision to "largely pause[]" all of their affirmative discovery efforts for approximately five months, between April and September 2022, while the parties were negotiating the Campaign's ESI search parameters. (Dkt. 329 at 2.) They make no effort whatsoever to explain why these routine negotiations somehow precluded them from "review[ing] key documents" or serving "follow-on discovery" requests based on the 18,500 documents that the Campaign had already produced as of May 2021. (*Id.*) Plaintiffs simply chose to wait until December 2022 and January 2023—after the Court had already granted their first request for an extension of discovery based on their representation that it was necessary due to their schedule—to barrage the Campaign with additional discovery demands. To that extent that Plaintiffs now believe additional time is needed to "wrap up" the discovery that they delayed in serving, this is a situation of their own making. Plaintiffs' request for an extension should be denied.

Plaintiffs' Amended Third RFP, which was served in mid-January 2023 and seeks data from direct voter contact platforms used by FOs, provides no reasonable basis for an extension. As an initial matter, the Campaign vehemently disagrees that user activity data on the voter contact platforms used by FOs is likely to yield any meaningful evidence. The Campaign has only agreed to investigate what, if any, information might be available from these non-party service providers in a good faith effort to avoid burdening the Court with discovery disputes. The Campaign has been proceeding diligently in this regard and will produce the data it is able to obtain (subject to its objections), but as we have repeatedly made clear to Plaintiffs, it is the non-party service providers who have any user data that exists, not the Campaign, and the Campaign cannot control when (if at all) they will provide information, or the extent to which they will cooperate with the Campaign's inquiries.

Even putting this aside, Plaintiffs provide no explanation for why they delayed in requesting user data from these non-parties until the very end of discovery. There can be no dispute that, at time Plaintiffs filed this lawsuit in March 2020, they were aware whether they had used any platforms during their employment with the Campaign and, if so, which platforms they used and the purposes for which they used them. If Plaintiffs believed that their user activity data on these platforms was relevant to the claims and/or defenses in the case (which the Campaign disputes), they could have, and should have, included a request for this data in their First RFPs or, at the very least, done so



after the discovery stay was lifted approximately one year ago.[4] They inexplicably decided not to do so. To the extent Plaintiffs claim they will not have sufficient time in the remainder of the discovery period to use any data or take a deposition regarding the data, this is attributable only to Plaintiffs' unilateral delay in requesting it.

Plaintiffs' request for additional time to engage in "follow-up" related to their Fourth RFPs also comes inexcusably late. Plaintiffs waited until mid-January 2023 to serve the Fourth RFPs, which purport to seek ESI on an array of topics related to certain state law claims that Plaintiffs asserted in the Amended Complaint filed on March 30, 2020 and the Campaign's defenses regarding coverage under the FLSA, which was extensively briefed in connection with the Campaign's motion to dismiss in 2020. There is no reason that Plaintiffs could not have served these requests earlier in the discovery period (or sought this ESI when the parties spent months negotiating ESI search terms last year). Moreover, Plaintiffs' belief that they may need to conduct additional follow up after the Campaign produces responsive documents next week, and that such follow up could not occur within the remaining discovery period, is nothing more than conjecture.

Lastly, Plaintiffs suggest that they may require additional time to confer about unspecified "issues" associated with "prior document responses and productions," but again fail to explain why they waited until the end of discovery to raise disputes that presumably relate to the written discovery responses and document productions that the Campaign served more than two years ago. Insofar as they suggest it is possible they may need to confer about the Campaign's forthcoming supplementation of a single contention interrogatory and its privilege log on March 17, 2023, this too is purely speculative. Even assuming there is a need to confer, which is entirely hypothetical, Plaintiffs would still have a full and fair opportunity to do so on these discrete issues in the two weeks that remain in fact discovery and do not need an additional 45 days to do so.[5]

### III. Conclusion

For the foregoing reasons, the Campaign respectfully requests that the Court deny Plaintiffs' request for an extension of discovery.

The Campaign thanks the Court for its attention to this matter.

---

[4] Plaintiffs' counsel also was undoubtedly aware of the direct voter contact platforms by this point in time because they specifically requested that the Campaign include the names of certain specific platforms in its ESI search queries. The direct voter contact platforms also were discussed in emails that the Campaign had produced as part of its production of the 17 Plaintiffs' full email boxes.

[5] In the event that Plaintiffs' pending motion to substitute proposed Wisconsin class representative Alan Robinson for Tristan Angulo (Dkt. 320) is granted, the Campaign respectfully requests that it be permitted to conduct discovery limited only to Tristan Angulo, the recently proposed replacement Wisconsin class representative. For the reasons set forth more extensively in the Campaign's opposition to Plaintiffs' motion to substitute (Dkt. 321), Plaintiffs waited months after Mr. Robinson's egregious misconduct during his deposition to make their substitution motion and it would be highly prejudicial to deprive the Campaign of the opportunity to conduct discovery as to Mr. Angulo, if he is permitted to replace Mr. Robinson, based on Plaintiffs' strategic delay.



Page 6

Respectfully submitted,

*/s/ Elise M. Bloom*

Elise M. Bloom

cc:     All Counsel of Record (via CM/ECF)