

March 24, 2023

<u>Via CM/ECF</u>
The Honorable Gabriel W. Gorenstein
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)

Dear Judge Gorenstein:

      Along with co-counsel, we represent Plaintiffs and Opt-in Plaintiffs in the above-referenced matter.  We write to respond to Defendant's March 22 letter.  ECF No. 335 ("Letter").  Plaintiffs oppose Defendant's request for leave to take a deposition of Genex Services, LLC ("Genex") because it is not proportional to the needs of the case and the discovery can be (and already has been) obtained in a less resource-intensive manner.

      **The Genex Deposition is Not Proportional Discovery.**  The deposition is not proportional to the needs of the case because (1) the discovery concerns an issue that is of minimal importance in the action, (2) the discovery is not important to resolving the issues, and (3) the burden and expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1) (discussing proportionality factors).  Bloomberg seeks to take an entire, additional deposition relating to a different employer of one individual – one of three California class representatives, one of fifty named plaintiffs, one of over 700 Opt-in Plaintiffs, and one of about 205 putative California class members – when it has already taken nearly double the number of depositions permitted under the rules and has caused a significant number of attorney hours to be expended obtaining obscure details about Plaintiff Wheatley-Diaz's work history with other employers, causing Plaintiffs and their counsel substantial burden.

      Here, Bloomberg seeks to spend thousands more of the parties' dollars, and to burden a third party, on a question of time zones of hours worked by Plaintiff Wheatley-Diaz for a separate entity.  Despite Bloomberg's claim that how to "read" the time records is "not clear," Plaintiff Wheatley-Diaz testified at her deposition that Genex "was an East Coast company," and that she "was working East Coast times."  Ex. 1 at 193:4-5; *see also About Us*, Genex, https://www.genexservices.com/tools/locations (last visited Mar. 23, 2023) (Pennsylvania headquarters).  The time records show clock in and clock out times at 10am and 7pm.  Based on this testimony, these times can only be read to mean Eastern Time (*i.e.*, 7am and 4pm Pacific).

New York   685 3rd Ave 25th Floor, New York, NY 10017   T (212) 245-1000   F (646) 509-2060
San Francisco   1 California Street, 12th Floor, San Francisco, CA 94111   T (415) 322-1391   F (415) 638-8810
Washington, DC   1225 New York Ave NW, Suite 1200B, Washington DC 20005   T (202) 914-5097   F (202) 847-4410
outtengolden.com   mail@outtengolden.com

Hon. Gabriel W. Gorenstein
March 24, 2023
Page 2 of 4

Plaintiff Wheatley-Diaz testified that she worked for Genex in the early morning and then started work for Bloomberg in the late morning or early afternoon. *See* Ex. 1 at 150:17-25. She further testified that, though she was not actively engaged in work during all hours she was on the clock for Genex, she remained clocked in with Genex until "after hours" on the East Coast, to be available for patients with questions. *Id.* at 192:24-193:5. She estimated – clearly stating she could not recall her Genex hours with precision, *id.* at 33:14-24 – that she remained on the clock and available until approximately 2pm Pacific Time. *Id.* at 194:14-24. This testimony reasonably comports with Genex's time records, which shows Plaintiff Wheatley-Diaz clocking out around 7pm, or 4pm Pacific Time. By contrast, the records cannot reasonably be read to mean Pacific Time, as that would indicate that Plaintiff Wheatley-Diaz would have been on the clock with Genex until late at night Eastern Time, long after business hours, which is not supported by her testimony. Any confusion appears to be manufactured, and there is simply no need for Bloomberg to take a deposition to clarify testimony that is already clear.

Moreover, the testimony sought simply is not relevant. This is a misclassification overtime lawsuit and, to prove their claims, Plaintiffs must show that their job duties – with Bloomberg – were such that they should have been classified as non-exempt, and that they worked hours – for Bloomberg – for which they were not compensated. *See Siegel v. Bloomberg L.P.*, No. 13 Civ. 1351, 2015 U.S. Dist. LEXIS 5602 (S.D.N.Y. Jan. 16, 2015). As long as Bloomberg "suffered or permitted" work by Plaintiff Wheatley-Diaz, she is entitled to proper compensation for that time by Bloomberg, no matter whether she was also getting paid for work she performed for another employer.[1] *See* 29 U.S.C. § 203(g); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947) (confirming the "broad" definition of "employ" under the FLSA); *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945) (noting that, under the FLSA, "[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame"). Ms. Wheatley-Diaz gave clear testimony about her job duties and estimated hours with Bloomberg. Ex. 1 at 150:1-153:16; 246:5-247:12. She further testified, clearly, and multiple times, that she did not perform any work for Genex, such as taking calls, during the hours she worked for Bloomberg. *Id.* at 194:17-24 ("[T]hat never . . . occurred[.]"); *see also id.* at 193:10-13. Because the work hours did not overlap, Plaintiffs originally opposed Bloomberg's wide-ranging, overbroad subpoena for all personnel records from Genex, and for

---

[1]   Bloomberg implies there was something improper about Plaintiff Wheatley-Diaz working two jobs. To be clear, she informed Bloomberg that she would be employed by Genex while working for the Campaign and Bloomberg took no issue with it, and even permitted her to perform work for Genex from the Campaign field office before her work with Bloomberg. Ex. 1 at 44:10-17 ("Q: Is it fair for me to assume that that [your employment with Genex] was okay in terms of the position that you held with the Campaign? A: That is correct."); 196:16-20. She also told her immediate supervisor at Genex that she was taking a job with Bloomberg. *Id.* at 62:25-63:10. Bloomberg's efforts to impugn Plaintiff's character simply because she made the difficult economic choice to work long hours at two jobs should be soundly rejected. *Id.* at 63:19-21 (testifying that she took "a second job so that I could support myself"). Despite working long days and many hours per week, Plaintiff Wheatley-Diaz was dedicated to both jobs. *See id.* at 55:15-20 ("I was passionate about my . . . job, I'm a hard worker and I take a lot of pride in what I do and how I work"), 60:5-13, 225:16-25, 226:20-227:3, 241:19-24.

the same reasons, Plaintiffs now oppose this deposition, which is of little to no importance to the issues of the case.

Without citing any authority or making any actual argument, Bloomberg also makes the conclusory statement that this invented time zone question "bears directly on her adequacy to serve" as California class and PAGA representative under Fed. R. Civ. P. 23. Letter at 2. This is absurd. The adequacy inquiry requires that class representatives be "prepared to prosecute fully the action and have no known conflicts with any class member." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011) (adequacy requirement met where "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member"); *see also In re Priceline.com Inc.*, 236 F.R.D. 89, 97-101 (D. Conn. 2006) (adequacy requirement met where proposed class representatives knew the factual bases for the claims, discussed the case with class counsel, were involved in the prosecution of the case, responsive to discovery requests, and understood that they represent the interests of the class members). To the extent Bloomberg implies that hours worked at a second employer relate to Plaintiff's credibility, courts are clear that questions of credibility do not typically defeat adequacy, because "all witnesses are potentially subject to attacks on their credibility." *Priceline*, 236 F.R.D. at 97.

Although Plaintiff Wheatley-Diaz's adequacy is not yet before the Court, there is no doubt that she meets the standard. As the record supporting class certification will show, she testified regarding her knowledge of the factual bases for the claims and her duties as a class representative. Ex. 1 at 69:8-19, 150:1-153:16, 246:5-247:12. She has communicated with counsel over the past three years of litigation, provided discovery responses, and appeared for a deposition, which demonstrates that she has participated in the prosecution of this action. In any event, the time zone of time records of a separate employer have no bearing on this question.

**Less Resource-Intensive Alternatives Exist to Obtaining this Discovery**. Leave to take the deposition should also be denied under Rule 26(b)(2)(C). The Genex deposition seeks discovery that can be obtained from "some other source that is more convenient, less burdensome, or less expensive." *Id.* First, as stated above, Bloomberg already has obtained the information it seeks through a document subpoena of time records and deposition testimony from Plaintiff. Nonetheless, Bloomberg could obtain – and Plaintiffs would stipulate to – a deposition by written question under Rule 31, which would be much more cost effective for the parties. Bloomberg claims to be seeking one very specific fact from Genex, and therefore has just one question to ask: the time zone of Plaintiff Wheatley-Diaz's time records. Letter at 2. Sufficient time remains for this written deposition during the discovery period.

If the Court concludes that this deposition should go forward, Plaintiffs request that it be strictly limited in scope and duration. With respect to scope, the deposition should be narrowly tailored to asking only in what time zone were Plaintiff Wheatley-Diaz's time punches recorded. Bloomberg has already attempted to overreach in this area, by attempting to collect information and documents from Genex reflecting Plaintiff Wheatley-Diaz's entire employment history, including about promotions, demotions, work reassignments, formal and informal warnings, suspensions, terminations, benefits, commissions, bonuses, any other financial compensation,

Hon. Gabriel W. Gorenstein
March 24, 2023
Page 4 of 4

work performance, and discipline.  *See* ECF No. 308.  The Court has already denied this attempt, permitting only a request for documents reflecting the hours that Ms. Wheatley worked for Genex.  Bloomberg should not now be permitted to sidestep the Court's order and waste hours of time by asking Genex any of these irrelevant, invasive questions about Plaintiff Wheatley-Diaz's employment.  The deposition should also be limited in time, to 30 minutes, which should be more than sufficient to introduce and authenticate the exhibit and ask about the time zone of the records.

We thank the Court for its attention to this matter.

Respectfully submitted,

Justin M. Swartz

CC:   All Record of Counsel (via ECF)