

May 9, 2023

**Via CM/ECF**

Elise M. Bloom
Member of the Firm
d +1.212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

The Honorable Gabriel W. Gorenstein
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Donna Wood, et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)

Dear Judge Gorenstein:

      We represent Defendant Mike Bloomberg 2020, Inc. (the "Campaign") in the above-referenced matter. Pursuant to Rule 2.A of this Court's Individual Practices, the Campaign respectfully requests a pre-motion conference to address its anticipated motion, pursuant to Fed. R. Civ. P. 37(a), to compel Plaintiffs to produce unredacted versions of certain communications they withheld based on claims of attorney-client privilege and the common interest doctrine.

### I.  Background

      This dispute concerns the following 13 documents that Plaintiffs produced with redactions based on claims that the redacted communications are protected under the attorney-client privilege and the common interest doctrine.

- P000021 (Ex. A) & P000025 (Ex. B) reflecting communications between the proposed Class Representative James Kyle Newman and Jamea Simmons, a former field organizer ("FO") for the Campaign who has not joined this lawsuit as an opt-in plaintiff.

- P003968 (Ex. C) reflecting communications between proposed Class Representative Donna Wood and Shreyas Amol Jethwani, a former Campaign employee who is neither an opt-in plaintiff, nor a member of any proposed class.

- P009022 (Ex. D) reflecting communications between Wood, Jazmin Rodriguez (a former Campaign employee who is not an opt-in plaintiff or a member of any proposed class), and two former FOs. P009024 (Ex. E) reflects communications between Wood and Rodriguez only.

- P009026 (Ex. F) and P009113 (Ex. G) contain communications from Wood, which were sent to Leticia Monteagudo, a former FO who did not join this lawsuit until January 2022 (Dkt. 214).[1]

---

[1] Plaintiffs produced several documents with the same redacted text as Exhibit F. (P009027, P009028, P009031, P009032 & P009115.) In the interest of avoiding burdening the Court with multiple documents bearing the same redactions, the Campaign did not include all of these documents as exhibits, but can do so at the Court's request.

**Proskauer**

- P001471 (Ex. H) reflecting communications between proposed Class Representative Robin Ceppos and Matthew Jeweler, a former FO who has not opted in to this lawsuit.

- P001613 (Ex. I), P001614 (Ex. J), P001623 (Ex. K), P001648 (Ex. L) & P002700 (Ex. M) reflecting text message communications between Ceppos, proposed Class Representative Alexandra Wheatley-Diaz and Plaintiff Rachel Douglas.

All of these redacted documents are communications between Plaintiffs and former Campaign employees, or among Plaintiffs, that occurred entirely outside of the presence of attorneys. Plaintiffs made the determination that these documents were relevant and discoverable in this litigation, as they produced them to the Campaign in response to the Campaign's Requests for Production. Plaintiffs further indicated that the information they redacted was discoverable by including Exhibits A – H on their privilege log.[2] In most instances, the redacted text appears to reflect what the proposed Class Representatives and Plaintiffs conveyed to others (including those who they were soliciting to join this case) about their employment with the Campaign, this lawsuit, and their legal claims or potential claims. These redacted communications are necessary to understand, in full, the communications that Plaintiffs produced as relevant and responsive.

For the reasons set forth below, Plaintiffs cannot carry their burden of establishing that the redacted communications can be withheld as privileged and the Campaign respectfully requests a pre-motion conference to address its anticipated motion to compel production of these documents in unredacted form.[3]

## II.    Attorney-Client Privilege and the Common Interest Doctrine

Attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).[4]

Even assuming that Plaintiffs can demonstrate that the communications they shared are covered by attorney-client privilege, they also must show that the common interest doctrine

---

[2] *See* Fed. R. Civ. P. 26(b)(5) (only "discoverable" information withheld based on privilege must be logged). Although Plaintiffs failed to include Exhibits I – M on their privilege log, they have claimed in correspondence that the withheld information is protected by attorney-client privilege and the common interest doctrine.

[3] On March 6, 2023, counsel for the parties met and conferred telephonically for approximately 40 minutes regarding this and other disputes. Rachel Philion and Allison Martin of Proskauer Rose LLP participated in the meet and confer on behalf of the Campaign, and Hannah Cole-Chu of Outten & Golden LLP participated on behalf of Plaintiffs. Plaintiffs' counsel maintained that the communications were protected under the attorney-client privilege and common interest doctrine. The Campaign informed Plaintiffs during the March 6 meet and confer that the parties were at impasse and the Campaign would be seeking relief. Shortly after this, however, Plaintiffs' privilege claims came up again during the parties' discussion about the Campaign's Second Set of Requests, which requested production of letters of engagement showing when certain participants in the redacted conversations became clients of Plaintiffs' counsel, and would have been probative to the Campaign's assessment of Plaintiffs' privilege claims, if such information were provided (which it was not). During an April 17, 2023 meet and confer that lasted approximately 10 minutes, the Campaign confirmed to Plaintiffs' counsel (Ms. Cole-Chu and Theanne Liu) that the parties remained at impasse with respect to Plaintiffs' privilege claims for the redacted documents.

[4] "Where, as here, a case includes federal and state law claims and the evidence sought is relevant to both, 'the asserted privileges are governed by the principles of federal law.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 2015 WL 3450045, at *2 (S.D.N.Y. May 28, 2015) (Gorenstein, J.) (quoting v*on Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987)).

**Proskauer**

applies and the privilege has not been waived by virtue of their disclosure of privileged communications to third parties. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) (Gorenstein, J.). The common interest doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Fresh Del Monte Produce, Inc.*, 2015 WL 3450045, at *3 (Gorenstein, J.).

"[T]o obtain the benefit of the common interest doctrine, the party claiming the protection of attorney-client privilege must demonstrate 'that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy.'" *Id.* (Gorenstein, J.) (citation omitted). The common interest doctrine also "requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *United States v. Krug*, 868 F.3d 82, 86-87 (2d Cir. 2017). The party invoking the common interest doctrine must establish its applicability "based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2023 WL 315072, at *8 (S.D.N.Y. Jan. 19, 2023) (citation omitted).

### III. Plaintiffs Must Establish That The Redacted Communications Reflect Legal Advice Received or Sought To Be Protected Under Attorney-Client Privilege.

Plaintiffs must demonstrate, as a threshold matter, that the redactions reflect legal advice or a request for legal advice, as is required for attorney-client privilege to apply. *See Montesa v. Schwartz,* 2016 WL 3476431, at *14 (S.D.N.Y. June 20, 2016). In many instances, Plaintiffs redacted text messages or paragraphs in full, rendering it impossible to assess whether the redacted message contains legal advice or even pertains to a communication with a lawyer at all. (Exs. A, B, D, E, F, G, M.) Even with respect to the communications that appear to reference Plaintiffs' counsel (Exs. A, C, H, I, J, K, L), it still is not clear whether the redacted text concerns privileged legal advice, as opposed to, for example, non-privileged case updates or factual matter, such as inquiries about Plaintiffs' checks (*see* Ex. J). If Plaintiffs fail to prove the communications are covered by attorney-client privilege, then the Court need not consider whether the common interest doctrine applies and the redacted portions must be produced.

### IV. Even If the Redacted Communications Reflect Attorney-Client Communications, the Common Interest Doctrine Does Not Apply To Protect Plaintiffs' Voluntary Disclosure of These Communications To Others.

Even if the redacted documents reflect attorney-client communications, Plaintiffs still cannot establish that the common interest doctrine applies, for several reasons.

*First,* Plaintiffs cannot demonstrate that any of the withheld communications involved the formulation of legal strategy because they all occurred outside the presence of any lawyers. "In determining whether communications were made in the course of formulating a common legal strategy, courts have examined whether attorneys were active in such communications." *Obeid v. Mack*, 2016 WL 7176653, at *8 (S.D.N.Y. Dec. 9, 2016) (collecting cases); *see also Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 140 (S.D.N.Y. 2012); *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18-19 (E.D.N.Y. 1996); *Fresh Del Monte Produce, Inc.,* 2015 WL 3450045, at *3 (Gorenstein, J.) (explaining that the purpose of the common interest doctrine to protect communications "<u>to the attorney</u>" of another party) (emphasis added).

**Proskauer**

Here, attorneys were not participants in any of the redacted conversations, much less active participants. This undermines any suggestion that the purpose of the conversations among former Campaign staffers was to form legal strategy. "[G]iven the absence of the direct involvement of attorneys here, it is impossible to conclude that a common legal strategy was being formulated." *Obeid*, 2016 WL 7176653, at *8. The same conclusion reached in *Obeid* applies to all of the communications here.

*Second*, even putting aside the absence of counsel in the conversations, it still does not appear that any of the communications Plaintiffs are withholding were made in the course of, or for the purpose of, formulating a common legal strategy. *See, e.g., Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003) (Gorenstein, J.) (holding that communications that did not involve discussions of legal strategy are not protected under common interest doctrine); *Fireman's Fund Ins. Co.* 284 F.R.D. at 140. The unredacted portions of the communications suggest that Plaintiffs were gratuitously sharing information with others about the Campaign and/or this lawsuit in the course of conversations that appear to be largely social in nature or have nothing to do with legal strategy. For example, in the text messages between Plaintiffs Ceppos, Wheatley-Diaz and Douglas, the allegedly privileged material is interposed in the middle of conversations that they admit are not privileged and that largely concern their efforts to contact other FOs. (Exs. I - M.) There is nothing in these, or any other Exhibits, that indicates Plaintiffs were disclosing the purportedly privileged information for the purpose of formulating legal strategy with the other conversation participants.

*Third*, the conversations contain no indication that Plaintiffs expected that the privileged communications they disclosed would be kept confidential. *See Krug*, 868 F.3d at 86-87. None of Plaintiffs requested confidentiality before sharing the purportedly privileged communications, nor did any of them say that the communications were being shared with an expectation of confidentiality. To the contrary, the only communications that say anything about the parties' understanding indicate that the allegedly privileged content *was* distributed to other individuals. In Exhibit F, Rodriguez stated that she shared Wood's redacted update "with everyone." In Exhibit K, despite a confidentiality legend that Plaintiffs' counsel apparently added to an email, Douglas stated that she sent a photo of the purportedly privileged email "to Carolyn, Maxwell and Dylan," which appears to be a reference to former FOs Carolyn Chacon, Maxwell Peterson and Dylan Russell, none of whom have joined this lawsuit. Under such circumstances, Plaintiffs cannot credibly claim that they understood the communications with their lawyers that they shared with others were going to be kept confidential, as is required to maintain privilege. This further warrants disclosure of all of the redacted communications.

*Finally*, the common interest doctrine also does not apply to many of the documents because there is no basis to conclude that all participants had entered into an agreement to pursue a "coordinated legal strategy" at the time of this communication. *Obeid,* 2016 WL 7176653, at *8; *see also Bank of America, N.A. v. Terra Nova Ins. Co.,* 211 F. Supp. 2d 493, 498 (S.D.N.Y. 2002) (Gorenstein, J.) (holding that there was no common interest in documents created before the parties entered into a common interest agreement). *Lapointe v. Target Corp.,* 2017 WL 1397317, at *3 (N.D.N.Y. Mar. 6, 2017), a case involving FLSA misclassification claims, is particularly instructive. In *Lapointe*, the court held that plaintiff could not withhold his communications with putative class members because there was no evidence that the parties had agreed on a joint strategy. *Id.* The court further explained that while plaintiff "may have spoken to putative class members about joining this litigation, there is no showing that such conversations were part of an ongoing common enterprise." *Id.* Similarly, here, a number of the

**Proskauer**

communications appear to have occurred before there was an agreement in place to proceed jointly. Specifically:

- Exhibits A and B involve disclosures to Simmons, who did not opt-in to this lawsuit and who is not a client of Plaintiffs' counsel. There is no indication that Simmons has ever been a party to an agreement to pursue a coordinated legal strategy with Newman, much less that she was a party to such an agreement at the time these communications occurred in March 2020.

- Exhibit C contains communications with Jethwani, who is not a party to this lawsuit. While Plaintiffs' counsel has indicated that they represent Jethwani, the unredacted portion of this email strongly suggest that Jethwani was not a client as of March 23, 2020, at the time Wood shared the allegedly privileged communications with her, because Wood was providing Jethwani with attorney contact information. This context undermines any claim that there was an agreement to pursue a common legal strategy in place at the time of the disclosure.

- Exhibits D and E are emails sent before this lawsuit was filed involving Wood and Rodriguez. Plaintiffs' counsel represented that Rodriguez is a client, but has refused to say when Rodriguez became a client and has not asserted that a common interest agreement existed between all of the participants to the conversation at the time of Wood's disclosures.

- Exhibits F and G are emails from March 2020 that were sent to Monteagudo, but Monteagudo did not join this lawsuit until nearly two years later, in January 2022 (Dkt. 214), and Plaintiffs have not proffered any evidence indicating that she was a party to a common interest agreement with Wood in 2020.

- Exhibit H reflects communications with Jeweler, who also did not opt-in to this lawsuit. While this document references Jeweler communicating with his own counsel, Plaintiffs have not represented that there was any joint strategy agreement in place between Ceppos or Jeweler (or even their respective counsel) that would protect Ceppos' disclosure of purportedly privileged communications to Jeweler.

### V. Conclusion

For the foregoing reasons, the Campaign respectfully requests that the Court schedule a pre-motion conference to address the Campaign's anticipated motion to compel Plaintiffs to produce unredacted versions of Exhibits A through M.

The Campaign thanks the Court for its attention to this matter.

Respectfully submitted,

*/s/ Elise M. Bloom*

Elise M. Bloom

cc:     All Counsel of Record (via CM/ECF)