

May 9, 2023

<u>Via CM/ECF</u>

Elise M. Bloom
Member of the Firm
d +1.212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

The Honorable Gabriel W. Gorenstein
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Donna Wood, et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)

Dear Judge Gorenstein:

      We represent Defendant Mike Bloomberg 2020, Inc. (the "Campaign") in the above-referenced matter. Pursuant to Rule 2.A of this Court's Individual Practices, the Campaign respectfully requests a pre-motion conference to address its anticipated motion, pursuant to Fed. R. Civ. P. 37(a), to compel: (1) the proposed Class Representatives to produce documents concerning their criminal histories; (2) proposed Michigan Class Representative Lakisha Watson-Moore and proposed California Class Representative Alexandra Wheatley-Diaz to produce calendars or schedules kept during their employment with the Campaign; (3) Plaintiff Ronald Luippold to produce authorizations for the release of limited, relevant medical records; and (4) proposed California Class Representative Nick Coker and Plaintiff Aaron Summers to produce certain phone records from their employment.

      In this class and collective action, Plaintiffs allege that they were misclassified as exempt under the Fair Labor Standards Act ("FLSA") and state wage-and-hour laws and seek to recover overtime pay for hours they allegedly worked under those laws. For the reasons set forth below, the Court should grant the Campaign's request to compel Plaintiffs to produce these documents because they are relevant to their adequacy as proposed class representatives and/or bear directly on whether certain Plaintiffs were actually working the hours they claim to have worked, or whether instead they were either unable to work at all or were engaged in non-work activities during the time they claim to have been working for the Campaign.

**I.     The Proposed Class Representatives Should Be Ordered to Produce Relevant Documents About Their Criminal Histories.**

      The proposed Class Representative Plaintiffs (Donna Wood, Caelan Doherty, Max Goldstein, Bridget Logan, James Kyle Newman, Lakisha Watson-Moore, Alexandra Wheatley-Diaz, Robin Ceppos and Nick Coker) refuse to produce any responsive documents regarding any arrests, criminal charges, criminal complaints, criminal convictions or criminal proceedings of

**Proskauer**

any kind against them.[1] (Ex. A (excerpts of Plaintiffs' Responses and Objections to Request No. 11 in Defendant's Second Request for the Production of Documents ("Second Requests")).)

It is well settled that courts in this Circuit "may consider the honesty and trustworthiness of the named plaintiff" in determining whether a proposed class representative "will fairly and adequately protect the interests of the class" in connection with a motion for class certification under Rule 23. Fed. R. Civ. P. 23(a)(4); *see, e.g., Savino v. Computer Credit, Inc*., 164 F.3d 81, 87 (2d Cir. 1998). Facts relevant to the Rule 23 adequacy determination include, among others, whether a proposed class representative has been arrested or convicted of criminal charges that would cast doubt on his or her credibility or ability to serve as a fiduciary for absent class members. *See, e.g., Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at *6-7 (S.D.N.Y. June 29, 2020) (finding plaintiff inadequate to represent class due to a criminal fraud conviction ten years prior); *Stewart v. Hudson Hall LLC*, 2021 WL 6285227, at *13 (S.D.N.Y. Nov. 29, 2021) (holding that plaintiff who had been convicted of a crime of dishonesty was not an adequate class representative in wage-and-hour class action). As another court in this district recently held, evidence regarding proposed class representatives' criminal histories is relevant and discoverable because "Defendant is entitled to test whether [plaintiff] is an adequate class representative and whether any of his prior convictions would be disabling" under the Rule 23 adequacy standards. *Fishon v. Peloton Interactive, Inc*., No. 19-cv-11711 (LJL), Dkt. 220 at 2-3 (S.D.N.Y. Sept. 29, 2022) (compelling plaintiff to respond to document requests regarding his criminal past without any date limitation) (attached as Exhibit B). Like in *Fishon*, Plaintiffs here should be compelled to produce documents about their criminal histories because this information is probative of their adequacy to proceed on behalf of the classes they seek to represent.

## II. Proposed Class Representatives Watson-Moore and Wheatley-Diaz Should Be Ordered to Produce Calendars They Maintained During Their Employment.

Watson-Moore and Wheatley-Diaz refuse to produce their full calendars, schedules or similar documents from the brief time period they were employed by the Campaign, and are improperly limiting their production of responsive documents to "calendars that reflect [their] hours working for [the Campaign] only." (Ex. C (excerpts from Watson-Moore's and Wheatley-Diaz's Responses and Objections to Request No. 10 in Defendant's Second Requests).)

Watson-Moore claims that she typically worked for the Campaign seven days a week from 9:00am to 7:00pm, in addition to attending events two or three times per week until 9:30pm or 10:00pm. (Dkt. 65-22, ¶ 7.) Wheatley-Diaz also claims that she worked for the Campaign seven days a week, generally starting between 10:00am and 12:00pm and working until between 8:00pm and 10:00pm during the week (Ex. D at 153:2-154:9), notwithstanding that documents

---

[1] On April 17, 2023, counsel for the parties met and conferred telephonically for approximately 10 minutes regarding the disputes described in Sections I and II. Rachel Philion and Allison Martin of Proskauer Rose LLP participated on behalf of the Campaign, and Hannah Cole-Chu and Theanne Liu of Outten & Golden LLP participated on behalf of Plaintiffs. Plaintiffs' counsel informed us that Plaintiffs would not produce any information about their criminal histories, claiming such information was not relevant or proportional. Plaintiffs' counsel also indicated that Watson-Moore was withholding responsive calendar entries based on her objections (and later confirmed by email that she was) and stated that Wheatley-Diaz was still searching for calendars, but would produce any responsive calendars regarding her work for the Campaign by April 21. Wheatley-Diaz did not produce these documents until May 5, and her counsel also did not confirm that she was withholding other responsive documents until May 5. The Campaign has informed Plaintiffs that the parties are at impasse with respect to these disputes, and would seek relief from the Court.

**Proskauer**

obtained in discovery have revealed that Wheatley-Diaz also worked full-time for another employer until approximately 7:30pm during the week.

Watson-Moore and Wheatley-Diaz produced calendar entries regarding their work for the Campaign, but refuse to produce calendar entries in their possession showing their non-Campaign commitments and activities during their employment with the Campaign. Information in their calendars is highly relevant to their allegations regarding their work hours and their claims for overtime compensation in this lawsuit, as well as the Campaign's defenses to such claims, because the calendars will reflect whether and when they were engaged in personal activities during the hours they claim they were working for the Campaign. Watson-Moore and Wheatley-Diaz should not be permitted to cherry-pick through their calendars and only produce entries about their work for the Campaign, while withholding information that may undermine their allegations about the days and hours they were working. Watson-Moore and Wheatley-Diaz should be ordered to produce their full calendar(s), day planners, or similar documents that they maintained during their employment with the Campaign.

### III. Plaintiff Luippold Should Be Compelled to Produce Authorizations for the Release of Certain, Limited Medical Records.

Luippold should be compelled to produce responsive authorizations for medical records during his brief employment by the Campaign that reflect (i) the dates when he was hospitalized, which was a period of time during which he was being paid by, but not performing any work for, the Campaign; (ii) the onset date when Luippold began experiencing the medical problems for which he was hospitalized, which he testified caused him to reduce his work hours for the Campaign; and (iii) any statements in the records about how his symptoms or medical conditions limited or otherwise impacted his ability to work for the Campaign.[2]

As it relates to authorizations for records reflecting the dates of hospitalization, Luippold testified that, during his brief, two-and-a-half month employment with the Campaign, he was in the hospital for more than one month and was not working at all during that time. (Ex. F at 107:20-108:15.) Luippold could not provide the specific date when he stopped performing work for the Campaign, testifying at one point that he may have been in the hospital on February 26, 2020 (*id.* at 156:25-157:6), while indicating at a different point that his hospitalization "maybe" started in March 2020. (*Id.* at 108:3-7.) The hospital records will unquestionably reflect the specific dates when Luippold was hospitalized and not working, which bear directly on his overtime claims.[3]

With respect to records concerning when Luippold reduced his work hours and the limitations on his ability to work, Luippold testified that before he was hospitalized, he reduced the number of hours he was working for the Campaign per day by approximately half because he was in "debilitating pain" that progressed "to the point where [he] couldn't move." (*Id.* at 106:12-107:19; 108:20-109:4; 183:4-11.) He was not able to specifically state when he began

---

[2] Although the Campaign's Request for Production initially sought authorizations for all medical records during Luippold's employment (*see* Ex. E (Plaintiff Ronald Luippold's Responses and Objections to Defendant's Second Request for the Production of Documents)), the Campaign narrowed its requests to the limited categories of records described above, which it made clear to Plaintiffs in its written correspondence and during a telephonic meet and confer.

[3] Luippold continued to be paid his full bi-weekly salary during this period, as well as during the time when he was hospitalized and not working at all.

3

**Proskauer**

experiencing the symptoms that resulted in his working fewer hours, suggesting that it may have been on a plane ride on February 20, 2020 after the Democratic Party primary presidential debate (*id.* at 109:5-14) or at some unspecified time during the week of February 23 to 29, 2020. (*Id.* at 106:19-24.) Luippold's medical records will likely reflect when he reported first experiencing the symptoms that he admitted impeded his ability to work and will provide more specific information about when he reduced his work.

Similarly, information about how and the extent to which Luippold's symptoms limited or otherwise impacted his ability to work also is highly relevant to his overtime claims and the Campaign's defenses, and is proportional to the needs of the case. Luippold testified that he was so severely affected by his medical conditions that he could barely move, but estimated that, despite this, he continued to work approximately six hours per day until his hospitalization. The Campaign is entitled to the evidence necessary to test his claims about the number of hours he was working before he was hospitalized, which includes any statements in his medical records about when, how and to what extent his medical condition affected his ability to work.

The Campaign recognizes the sensitivity of any such records and has informed Plaintiffs that it is amenable to designating any medical records as Confidential or "Confidential Attorneys' Eyes Only," but Luippold has still refused to produce any authorizations. Plaintiffs have suggested that the Campaign could try to obtain the information about dates through an Interrogatory, but this is insufficient because it would deprive the Campaign of any evidence beyond Luippold's own statements about when he was not working or working fewer hours, and would provide no information at all about how, when and to what extent his symptoms limited his ability to work for the Campaign. Luippold should be compelled to produce authorizations for the release of these narrow categories of relevant medical records.[4]

### IV. California Class Representative Coker and Plaintiff Summers Should Produce Cell Phone Records During Their Employment With The Campaign.

Coker and Summers are improperly withholding relevant and responsive phone call and text records from their personal cell phones showing when and for how long they were engaged in personal activities, such as phone calls or text messaging, during their employment with the Campaign. (Ex. G (excerpts of Coker's and Summer's Amended Responses and Objections to Request No. 21 in Defendant's First Request for the Production of Documents).)[5]

Coker and Summers worked for the Campaign in California. They assert claims for, among other things, allegedly unpaid overtime compensation under the FLSA and California law, and the Campaign's alleged failure to provide them with meal and rest periods under California law.

---

[4] On April 4, 2023, counsel for the parties met and conferred telephonically for approximately 20 minutes regarding this and other disputes. Ms. Philion and Ms. Martin of Proskauer Rose LLP participated in the meet and confer on behalf of the Campaign, and Michael Danna of Outten & Golden LLP participated on behalf of Plaintiffs. Plaintiffs' counsel stated that Luippold would not produce any authorizations, claiming that the information sought was not relevant and was sensitive. The Campaign informed Plaintiffs that the parties were at impasse and it would seek relief with the Court.

[5] For the avoidance of doubt, the Campaign does not seek the disclosure of the content of any text message that is not otherwise responsive to the Campaign's Requests (*i.e.*, messages that concern or relate to Plaintiffs' allegations, the claims or defenses in this lawsuit, or the Plaintiffs' employment with the Campaign).

**Proskauer»**

As other courts have recognized, "cell phone records establishing that [p]laintiffs engaged in personal activities while on the clock and/or had the opportunity to take meal and rest breaks are relevant" and discoverable in lawsuits involving overtime or meal/rest break claims. *Quintanta v. Claire's Boutiques, Inc.*, 2014 WL 3371847, at *2 (N.D. Cal. July 9, 2014); *see also, e.g., Crews v. Dominos Pizza Corp.*, 2009 WL 10672572, at *3-4 (C.D. Cal. July 31, 2009) (compelling production of plaintiffs' phone records in case involving wage-and-hour claims); *Caputi v. Topper Realty Corp.*, 2015 WL 893663, at *4-5 (E.D.N.Y. Feb. 25, 2015) (recognizing that phone records are relevant to FLSA claims and ordering plaintiff to produce phone records from a two year period). The records sought by the Campaign are relevant for precisely the same reason that has been recognized by other courts—they will show whether Coker and Summers were engaged in personal activities on their phones during the work hours they claim to have been working and/or whether they had the opportunity to, and did, take breaks during the work day. The Campaign's request for phone records also is proportional to the needs of the case because the records are relevant to multiple claims asserted by Plaintiffs, and any burden associated with producing these records would be minimal given that the Campaign's request is limited to only Plaintiffs' employment, which spanned less than three months. The Court should order Coker and Summers to produce records showing the dates, times and duration of calls and text messages from their personal phones during their employment with the Campaign.[6]

### V. Conclusion

For the foregoing reasons, the Campaign respectfully requests that the Court schedule a pre-motion conference to address the Campaign's anticipated motion to compel Plaintiffs to produce the information set forth above.

The Campaign thanks the Court for its attention to this matter.

Respectfully submitted,

*/s/ Elise M. Bloom*

Elise M. Bloom


cc:     All Counsel of Record (via CM/ECF)

---

[6] On February 24, 2023, counsel for the parties met and conferred telephonically for approximately 40 minutes regarding this and other disputes. Mark Batten and Ms. Martin of Proskauer Rose LLP participated in the meet and confer on behalf of the Campaign, and Mr. Danna of Outten & Golden LLP participated on behalf of Plaintiffs. Plaintiffs' counsel stated that Plaintiffs would not produce their phone records, claiming that this information was not relevant or proportional. The Campaign informed Plaintiffs that the parties were at impasse and it would seek relief from the Court. Because the parties were discussing other disputes concerning other Plaintiffs' discovery responses and productions at this time but had not yet reached impasse on those disputes, the Campaign believed that it would be most efficient for both parties and Court for the Campaign to exhaust its meet-and-confer efforts on the other issues and request a conference to address all ripe disputes together, as opposed to requesting multiple conferences that each pertained to a single issue.