

May 11, 2023

<u>Via CM/ECF</u>
The Honorable Gabriel W. Gorenstein
United States District Court for the
  Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)

Dear Judge Gorenstein:

  Along with co-counsel, we represent Plaintiffs and Opt-in Plaintiffs in the above-referenced matter.  We write to respond to Defendant's May 9 letter, which describes four discovery issues that Defendant delayed raising with the Court for weeks—or months—until the final week of discovery.[1]  ECF No. 344 ("Letter").  For the reasons stated below, Plaintiffs respectfully ask that the Court deny each of Defendant's requests.

**I.** **<u>Documents Relating to Criminal History</u>**

  The Court should deny Defendant's request for any records of arrests, criminal charges, criminal complaints, criminal convictions, or criminal proceedings.  Any such records—which, if they exist, are inherently sensitive and private—have no connection at all to the wage-and-hour claims or defenses in this action, and Defendant does not attempt to argue otherwise.  Given their lack of probative value, and sensitivity, any search for such documents cannot be proportional.

  Defendant provides only one basis for its broad request:  the class representative adequacy analysis under Rule 23.[2]  However, courts in this District routinely reject arguments that prior criminal history is relevant to that analysis.  *See Stinson v. City of N.Y.*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012) ("[M]ost courts have rejected challenges to adequacy based on allegations that plaintiffs' backgrounds were alleged to include 'unrelated unsavory, unethical or even illegal conduct.'" (quoting *German v. Federal Home Mortg. Corp.*, 168 F.R.D. 145, 155

---

[1] Your Honor's Individual Practice 2.A states that after meeting and conferring "[t]he moving party must thereafter *promptly* request a conference with the Court." (emphasis added).

[2] For this reason alone, Defendant must concede it has no basis for these requests as to Plaintiff Wood, who is not a proposed class representative.  Ms. Wood, who lived and worked in Florida, was formerly a proposed class representative only for the now-dismissed common law claims.  Plaintiffs do not plead any proposed Florida state law classes.

**New York** 685 Third Avenue 25th Floor New York, NY 10017 Tel (212) 245-1000 Fax (646) 509-2060
**San Francisco** One California Street 12th Floor San Francisco, CA 94111 Tel (415) 638-8800 Fax (415) 638-8810
**Washington DC** 601 Massachusetts Ave NW Suite 200W Washington, DC 20001 Tel (202) 847-4400 Fax (202) 847-4410

www.outtengolden.com

Hon. Gabriel W. Gorenstein
May 11, 2023
Page 2 of 7

(S.D.N.Y. 1996))). This is because the inquiry regarding Plaintiffs' adequacy as class representatives "is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution." *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *50 (S.D.N.Y. Sep. 28, 2006) (quoting *Martin v. New York City Dept. of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987)); *see also In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) ("Such considerations of trustworthiness and credibility are not without limitation, however, but instead are restricted to their relevance to issues in the litigation."); *Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330, 2005 U.S. Dist. LEXIS 5381, at *58-59 (S.D.N.Y. Mar. 31, 2005) ("Courts that have disallowed prospective plaintiffs on the basis of prior convictions have done so only where a clear nexus existed between the conviction and the class claims"); *German*, 168 F.R.D. at 154 ("Plaintiffs' testimony or credibility that is subject to attack must be on an issue critical to one of their . . . causes of action."); *Koenig v. Benson*, 117 F.R.D. 330, 338 (E.D.N.Y. 1987) ("In the Second Circuit a proposed class representative can be ruled inadequate under Rule 23(a)(4) if he is vulnerable to attacks on his credibility concerning the key facts at issue in the case.").

Even if the adequacy analysis could justify such discovery—which Plaintiffs do not concede—Defendant's requests are grossly overbroad because they seek documents and information that go far beyond any potential adequacy analysis, including documents concerning any "arrests, criminal charges, [or] criminal complaints." Defendant has offered *no examples* of a court considering anything but actual convictions in the adequacy analysis, let alone requiring production of information relating to non-convictions in discovery. Nor would this be logical, as an arrest or charge is not proof of any criminal conduct. These requests appear designed only for harassment, in the hope that Defendant will learn potentially embarrassing information about the Plaintiffs' personal lives.

Notably, undercutting Defendant's claims that this information is relevant or that Defendant has a non-harassing purpose for seeking it, Defendant's counsel did not even bother to ask Plaintiffs Doherty, Goldstein, Diaz, Ceppos, Logan, or Wood about any potential criminal convictions during their depositions, which all occurred six months ago. Defendant had the opportunity to seek information about any convictions in a far more direct and less intrusive manner than its overbroad document request, and it declined to do so. The only three Plaintiffs that Defendant did ask testified as follows: Ms. Watson-Moore has never been arrested, Ex. 1 (Watson-Moore Tr.) at 187:13-14; Mr. Newman has pled guilty to a misdemeanor for marijuana possession and has no other criminal history, Ex. 2 (Newman Tr.) at 176:17-177:25, 200:8-21; and Mr. Coker pled guilty 10 or more years ago to two misdemeanors for marijuana possession and shoplifting and has no other criminal history, Ex. 3 (Coker Tr.) at 47:21-48:10. None of these minor charges have any connection to Plaintiffs' credibility as to any of the issues in this litigation. Accordingly, no further discovery is warranted.

The cases cited by Defendant do not support its requests. In *Savino v. Computer Credit, Inc.*, the Second Circuit affirmed a district judge's finding of a lack of adequacy where the plaintiff's honesty was called into question only because "he repeatedly changed his position" on a key factual issue "that form[ed] the very basis for his lawsuit." 164 F.3d 81, 87 (2d Cir. 1998).

In *Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319, 2020 U.S. Dist. LEXIS 114684, at *17-19 (S.D.N.Y. June 29, 2020), the court was not engaging in a typical Rule 23 adequacy analysis, but instead was effectively selecting between proposed lead plaintiffs in a Private Securities Litigation Reform Act case, and determined that one individual was inadequate to serve as the lead plaintiff due to his conviction for "criminal fraud," which the court noted was "extremely concerning" "especially in a securities fraud case." Both of these cases highlight the long-standing consensus among courts in this Circuit that issues relating to credibility must be connected to the issues in the litigation. In *Stewart v. Hudson Hall LLC*, No. 20 Civ. 885, 2021 U.S. Dist. LEXIS 230033, at * (S.D.N.Y. Nov. 29, 2021), the court determined that a plaintiff was inadequate for a number of reasons, including "differing claims" and questions about credibility testimony from inconsistent testimony and a prior conviction involving dishonesty. Finally, in *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711, Dkt. 220 at 2-3 (S.D.N.Y. Sept. 29, 2022)—the only case involving discovery that Defendant cites—the court permitted discovery into the plaintiff's criminal history, convictions, and criminal proceedings specifically in the context of assertions regarding a large number of convictions. That single discovery decision does not support Defendant's requests here.

The Court should deny Defendant's overbroad requests for any documents relating to arrests, charges, complaints, or convictions, as there is no basis in the factual record or caselaw to support such requests.

## II. Personal Calendars

The Court should deny Defendant's request for Plaintiffs Wheatley-Diaz and Watson-Moore's personal calendars because the discovery is not relevant or proportional, especially at this late stage in the case. Plaintiffs Wheatley-Diaz and Watson-Moore appeared for their depositions on November 11 and 15, 2022, respectively. Plaintiff Watson-Moore testified about the hours she worked for Defendant, that she did not take breaks during the workday, and that she did not recall having any non-work-related appointments, or go to the gym, during her employment with Defendant. Ex. 1 (Watson-Moore Tr.) at 140:15-141:24, 152:21-153:2, 153:3-19. Plaintiff Wheatley-Diaz testified about her hours working for Defendant, and working for her second employer, Genex Services, and attending certain meetings during the period she was employed by Defendant.[3] *See* ECF No. 301 at 150:1-153:16; 155:2-10; 156:5-9; 246:5-247:12. Defendant did not ask whether she took any sick days or had any non-work-related appointments.

---

[3] Defendant makes the misleading suggestion that "documents obtained in discovery" show Plaintiff Wheatley-Diaz worked until 7:30pm Eastern Time for another employer. Letter at 2-3. The parties have already briefed this issue. *See* ECF No. 336. Plaintiff Wheatley-Diaz testified that she worked "East Coast times" for Genex, beginning early in the morning, and her Genex time records cannot reasonably be read to mean Pacific Time. *Id.* at 1-2. In any event, this point lends no support to Defendant's argument that discovery of her personal calendar is appropriate. Notably, the Court authorized Defendant to seek discovery from Genex clarifying the time zone of Plaintiff Wheatley-Diaz's time records, but it appears that Defendant has not pursued that discovery that it claimed it needed.

Hon. Gabriel W. Gorenstein
May 11, 2023
Page 4 of 7

Two and a half months *after their depositions*, Defendant served a discovery request on Plaintiffs Wheatley-Diaz and Watson-Moore seeking "[a]ll diaries, calendars, day planners, schedules, or other records of activity, prepared by or for Plaintiff, that cover any portion of the time period that Plaintiff was employed by the Campaign." *See* ECF No. 344-3. This belated and overbroad request seeks documents that are not relevant or proportional to the case, as discussed further below. To compromise, Plaintiffs Wheatley-Diaz and Watson-Moore searched for and produced documents responsive to the request reflecting hours, tasks, or events related to their work for the Bloomberg Campaign, as Defendant concedes.

Documents reflecting explicitly and exclusively non-work related personal events and appointments on Plaintiffs' calendars, however, are not relevant or proportional discovery. As to relevance, this is a misclassification overtime lawsuit and, to prove their claims, Plaintiffs must show that their job duties—with Defendant—were such that they should have been classified as non-exempt, and that they worked hours—for Defendant—for which they were not compensated. *See Siegel v. Bloomberg L.P.*, No. 13 Civ. 1351, 2015 U.S. Dist. LEXIS 5602 (S.D.N.Y. Jan. 16, 2015). Plaintiffs Wheatley-Diaz and Watson-Moore have given testimony on their hours and Defendant's own documents corroborate that testimony.

The discovery is also not proportional considering the discovery would have minimal "importance . . . [to] resolving the issues." Fed. R. Civ. P. 26(b)(1). Defendant concedes it is purely on a fishing expedition for evidence in Plaintiffs' personal calendars that Defendant speculates could "undermine" Plaintiffs' testimony. However, this speculation is wrong because even where an appointment appears on a calendar, in isolation, it does not indicate that the event actually occurred, how long it lasted, or that it even was an event for the plaintiff, as opposed to a family member. Indeed, Plaintiff Watson-Moore testified that she did not recall attending any non-work-related events during the workday, and Defendant did not even bother to ask Plaintiff Wheatley-Diaz whether she missed work for non-work-related events. If Defendant wanted to make use of such documents during discovery, it should have requested them prior to Plaintiffs' depositions.

### III.    Opt-In Plaintiff Luippold's Medical Records

Defendant seeks permission to obtain private medical records for opt-in Plaintiff Luippold from his medical providers.[4] The Court should deny this request because these records are highly personal and sensitive, the requests are not proportional given that the medical records primarily relate to a time period for which Mr. Luippold was not working overtime hours and thus have no relevance, and because Defendant has not shown any diligence in pursuing this information, undercutting any claim that it is actually relevant.

Mr. Luippold was deposed five and a half months ago, on November 29, 2022. He testified at length about his medical history and his hours worked for Defendant. Specifically, he testified that, despite a difficult health history, his physical health issues generally did not impact his ability to perform work for Defendant. Ex. 4 (Luippold Tr.) at 87:11-89:2. He did not recall

---

[4]    Defendant mislabels Mr. Luippold as a Plaintiff.

missing any work for doctor appointments. *Id.* at 109:21-110:8. He worked "seven days a week" throughout his employment with Defendant, with the only changes being his reduction in hours in "late February," until he was hospitalized in March. *Id.* at 182:19-183:11. Only "towards the end of the Campaign," the "week after" the February 19, 2020 Las Vegas debate (*i.e.*, the very last week in February), did his health issues impact his hours worked. *Id.* at 106:5-107:7. Despite his health issues, Mr. Luippold continued working a limited schedule "at the end of February" of "six hours a day versus the 12 that I had been performing prior to that." *Id.* at 107:12-19. Mr. Luippold was then in the hospital beginning in March, during and after which he was not able to perform work for Defendant. *Id.* at 108:3-15.

To be very clear, Defendant's requests for medical records concern a time period for which Mr. Luippold already testified that he worked only minimal or no hours (*i.e.*, the last week of February and March), so there is no dispute that he did not work overtime in that period. Notably, Defendant ceased operations after Super Tuesday, March 3, 2020, so even if Mr. Luippold had worked a limited schedule in March, the only days he could have worked for Defendant in March were the first three days of the month. Because Mr. Luippold was working limited hours (and no overtime), the specific date he was hospitalized that Defendant claims it needs to know—whether February 26, March 1, or March 3—is entirely irrelevant.

The scope of Defendant's request makes clear that its only purpose is to harass an opt-in plaintiff. Defendant has not limited its request to the late February/March period in question, but instead requests medical records from *any and all medical providers* reaching back to *early January*. And worse, even under Defendant's narrowed articulation of its requests, these requests explicitly seek out medical information about his "symptoms or medical conditions" that purportedly "impacted his ability to work," not merely dates confirming when he stopped working. During the meet-and-confer process, Defendant's counsel could not provide an explanation as to how medical records from January or most of February related to their stated justifications. And notably absent from Defendant's Court submission is their absurd position taken during the meet-and-confer that this opt-in plaintiff "put his medical conditions at issue" by consenting to join a FLSA action for unpaid wages.

Further, even if Mr. Luippold's private medical records from a time he was not even working overtime hours could be relevant to this dispute for unpaid overtime—which they unquestionably are not—Defendant's complete lack of diligence undercuts any suggestion that this request serves any purpose other than harassment. Again, Mr. Luippold was deposed five and a half months ago. Defendant declared impasse on this issue five weeks before bringing it to the Court. During the meet-and-confer process, Plaintiffs' counsel *twice* recommended to Defendant's counsel that they pursue the information sought (*i.e.*, the date that Mr. Luippold began his hospitalization) through an interrogatory, as a more targeted, far less intrusive means to achieve the same discovery goal. Defendant never served such a request, and instead, a week before the end of discovery, now seek these overly broad and intrusive third party medical provider authorizations.

Hon. Gabriel W. Gorenstein
May 11, 2023
Page 6 of 7

Given the lack of any probative value to the overtime claims, the highly sensitive nature of the information, the massive overbreadth of the request, and Defendant's refusal to diligently pursue the information, the Court should reject Defendant's request.

### IV.   Personal Phone Records

The Court should deny Defendant's request to rifle through the *personal, non-work related* phone communications of Plaintiff Coker and opt-in Plaintiff Summers.[5] Defendant is not seeking records related to Plaintiffs' work. Because Plaintiffs used Campaign-provided phones for their work duties, Defendant is explicitly seeking only information about personal, private, non-work communications—specifically a log of every personal phone call and text message that Plaintiffs sent or received, as well as the identities of each person Plaintiffs spoke with or texted (an intrusive aspect of the request that Defendant artfully omitted from its letter).

Courts within the Second Circuit routinely reject such broad requests. *See, e.g.*, *Kloppel v. Homedeliverylink, Inc.*, No. 17 Civ. 6296, 2020 U.S. Dist. LEXIS 2282, at *12-13 (W.D.N.Y. Jan. 3, 2020) (denying motion to compel phone records given "Plaintiffs' right to privacy and permitting Defendant wholesale access to Plaintiffs' phone records runs afoul of that right," but permitting limited request only into phone numbers Plaintiffs alleged Defendant contacted them on because "Plaintiffs have placed their cell phone records at issue"); *Gonzalez v. Allied Concrete Indus., Inc.*, No. 14 Civ. 4771, 2016 U.S. Dist. LEXIS 112706, at *14-15 (E.D.N.Y. Aug., 23, 2016) (denying motion to compel phone records because no evidence that plaintiffs made personal calls while working, so any "marginal relevance" that could exist was "absent"). The Court should adopt this reasoning here. Defendant questioned opt-in Plaintiff Summers at his depositions about whether he made personal calls during work hours, and he testified that he did not, Ex. 5 (Summers Tr.) at 92:22-93:12, and Defendant never asked Plaintiff Coker anything on the topic at all. As in *Gonzalez*, Defendant developed no evidence that Plaintiffs made personal calls while working that might justify such requests.

Defendant's out-of-circuit cases, which primarily relate to whether meal and rest breaks were provided, do not support its requests, as they are not consistent with analysis by courts within this Circuit.[6] Defendant's lone in-circuit case similarly offers little support. In *Caputi v. Topper Realty Corp.*, the court approved a limited request for phone records where the defendants represented that the plaintiff "probably made telephone calls" during work, other facts showed the plaintiff left work for "prolonged lunches," and the relevant issue was whether "Defendants gave her an uninterrupted break" from work. No. 14 Civ. 2634, 2015 U.S. Dist. LEXIS 24969, at *11. No facts like that exist here.

---

[5]   As with Mr. Luippold, Defendant mislabels opt-in Plaintiff Summers as a Plaintiff.
[6]   With respect to opt-in Plaintiff Summers, he has joined this litigation to assert FLSA claims for unpaid overtime, and his membership in a California class regarding meal and rest breaks is entirely speculative. Even if Plaintiffs move to certify such a claim, and the Court grants certification, he will be an absent class member and will not have discovery obligations.

Hon. Gabriel W. Gorenstein
May 11, 2023
Page 7 of 7

      Finally, undercutting Defendant's claim that logs of Plaintiffs' private communications are relevant is the fact that Defendant has failed to show any diligence in pursuing these documents. The parties exchanged discovery letters on this issue three months ago and met and conferred by phone on February 24, 2023. Defendant then waited over *two and a half months*, until the final week of fact discovery, to present this issue to the Court.

      Defendant's request for a fishing expedition through the records of every person Plaintiffs have communicated with should be denied because it is overbroad, not premised on a factual record, and undermines their privacy interests, and because Defendant has not diligently pursued this issue in the litigation.

      We thank the Court for its attention to this matter.

                                      Respectfully submitted,

                                      Justin M. Swartz

CC:    All Record of Counsel (via ECF)