UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONNA WOOD, individually and on
behalf all others similarly
situated                          : Docket #20-cv-02489

                    Plaintiffs,  :

    -against-                     :

MIKE BLOOMBERG 2020, INC.,        : New York, New York
                                    May 18, 2023
                    Defendant.

--------------------------------:

PROCEEDINGS BEFORE
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:        OUTTEN & GOLDEN, LLP
                      BY:  MICHAEL C. DANNA, ESQ.
                      685 Third Avenue, 25th Floor
                      New York, New York 10017


For Defendant:        PROSKAUER ROSE, LLP
                      BY:  RACHEL S. PHILION, ESQ.
                        ELISE M. BLOOM, ESQ.
                        NOA M. BADDISH, ESQ.
                      11 Times Square
                      New York, New York 10036

Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-<br>Direct | Re-<br>Cross |
|---------|--------|-------|---------------|--------------|
| None    |        |       |               |              |

E X H I B I T S

| Exhibit<br>Number | Description | ID | In | Voir<br>Dire |
|-------------------|-------------|----|----|--------------|
| None              |             |    |    |              |

```
 1                 THE DEPUTY CLERK:  In the matter of Wood,
 2    et al., v. Mike Bloomberg 2020, Inc., 20-cv-2489,
 3    will the attorneys please state their appearances
 4    for the record.
 5                 MR. DANNA:  Good afternoon, Your Honor.
 6    This is Michael Danna of Outten & Golden for the
 7    plaintiff.
 8                 MS. PHILION:  Good afternoon, Your Honor.
 9    This is Rachel Philion, and I'm here with my
10    colleagues Elise Bloom and Noa Baddish from
11    Proskauer on behalf of the defendant.
12                 THE COURT:  Okay.  Hold on one moment.
13                 Okay.  Who's appearing for the plaintiff?
14                 MR. DANNA:  This is Michael Danna,
15    Your Honor.
16                 THE COURT:  Dana or Danna?
17                 MR. DANNA:  Danna.
18                 THE COURT:  Danna.  Okay.  I'm just thrown
19    off because you didn't sign the letter.
20                 Okay.  And who's speaking for the
21    defendant?  Ms. Bloom?
22                 MS. PHILION:  Your Honor, Rachel Philion
23    for defendants.
24                 THE COURT:  Ms. Philion.  Okay.  I guess
25    the people who speak don't sign.  Hold on.
```

```
 1              MS. PHILION:  Your Honor, Ms. Bloom is here
 2    with me.
 3              THE COURT:  No, that's -- I don't care.  I
 4    just -- throws me off a little bit.
 5              Okay.  Your last name is?
 6              MS. PHILION:  My last name is Philion.
 7              THE COURT:  Philion.  Okay.
 8              All right.  We're here based on two
 9    letters, one dated -- I'm sorry, Docket 344 and
10    Docket 347.  All right.  Some of these I don't think
11    I need any argument, I'll just tell you my ruling,
12    and some I need to hear from you.  So let me go
13    through them.
14              On the criminal histories, I certainly
15    would have permitted you to ask about any
16    convictions at a deposition, and it seems to me you
17    had the opportunity to do that and didn't.  I don't
18    think I should be bothering people with more
19    discovery on that.  If there are any people that you
20    didn't depose, I'd be willing to have you send an
21    interrogatory specifically asking about whether you
22    were convicted and the crime and the date of the
23    conviction.
24              Are there any such people?
25              MS. PHILION:  I don't believe there are,
```

1    Your Honor.

2              THE COURT:  Okay.  So the application is

3    denied as to Number One.

4              Number Two, I guess I might as well just

5    hear from the defendant.  You can respond to the

6    arguments that the plaintiffs made in Docket 347.

7    Then I'll hear from plaintiffs.

8              MS. PHILION:  Yes, Your Honor.  Rachel

9    Philion.

10             So we're seeking from the two proposed

11   class representatives who have indicated that

12   they're withholding responsive documents, calendars

13   or schedules that would refer to or reflect nonwork

14   activities.  That is the issue that is at the heart

15   of this case, the hours that the plaintiffs

16   contended that they worked and the days, and we

17   believe that --

18             THE COURT:  Well, hold on.  Just to back up

19   on that --

20             MS. PHILION:  Sure.

21             THE COURT:  -- I'm trying to get what is

22   really at the heart of this case, and please forgive

23   me because you folks are living this in a way that

24   I'm not.  My recollection of this case is that this

25   is a misclassification case that the -- I mean,

```
 1    certainly, the misclassification is only relevant if

 2    they worked more than 40 hours a week.  But the real

 3    problem here is whether they were exempt or not.

 4              Am I wrong on that, from your point of

 5    view?

 6              MS. PHILION:  It is a misclassification

 7    case, Your Honor.  But under the circumstances of

 8    this particular case, the plaintiffs are alleging

 9    that they essentially worked seven days a week from

10    morning to night.  And if you look at the particular

11    hours that they claim to have worked, it is almost

12    inconceivable that they could have spent any time

13    doing anything.

14              And what we've learned over the course of

15    discovery is that we have several plaintiffs and

16    proposed class representatives who, in fact, seem to

17    have spent a large majority of their time devoted to

18    something else.  For example, one of the

19    plaintiffs --

20              THE COURT:  Just to back up for a second,

21    were they -- I mean, given how they were classified,

22    you wouldn't need to do this, I suppose, but were

23    they given a clock-in, clock-out method, or was

24    there any keeping track of their hours that was

25    going on?
```

```
 1                MS. PHILION:  No, there was not.
 2                THE COURT:  From your point of view?  From
 3     the defendant's point of view?
 4                MS. PHILION:  From the defendant's point of
 5     view, there was not clocking in and clocking out.
 6                THE COURT:  There was no clocking.  Right.
 7     So everyone is obviously going to have to somehow
 8     prove exactly what their hours were based upon
 9     something.  Maybe I should turn to the plaintiffs
10     first for a second.
11                How are the plaintiffs going to prove their
12     hours?
13                MR. DANNA:  Thank you, Your Honor.
14                Plaintiffs will prove their hours through a
15     number of ways.  First and foremost, their
16     testimony, which consistently reflects their
17     schedules.  They were asked at depositions and
18     they've also stated in declarations their
19     recollection of their schedules during weekdays and
20     weekends.
21                And then additional discovery also bolsters
22     their recollection of their hours in the absence of
23     clock-in and clock-out time records, and those would
24     be work emails that Bloomberg has produced.  There
25     are documents showing the stated expectations of
```

1    hours.  Hiring documents indicated the expectation

2    from the campaign is that they would work seven days

3    a week, 12 hours a day, which is consistent with

4    their testimony that they, in fact, did tend to work

5    seven days a week and 10 to 12 hours a day.

6         THE COURT:  All right.  Back to the

7    defendants.

8         So what made you pick out these two to get

9    the calendar?

10         MS. PHILION:  Sure.  So we met and

11    conferred over a period of time with the plaintiffs.

12    The plaintiffs have indicated to us that the other

13    proposed class representatives do not have any

14    responsive documents, so they're not withholding

15    anything.  With respect to these plaintiffs in

16    particular, they told us that they are withholding

17    responsive documents on the basis of their

18    objections.

19         THE COURT:  I see.

20         Okay.  So and is the plaintiff correct that

21    you never subpoenaed the workplace of -- I think

22    it's Gen X, the workplace of Wheatley-Diaz?

23         MS. PHILION:  That's not correct,

24    Your Honor.  As soon as we got Your Honor's

25    decision, we made contact with Gen X.  We worked

```
 1    diligently to obtain the declaration from them.  We
 2    of course were not on -- they were not on our
 3    schedule, and we were able to produce that earlier
 4    this week to plaintiffs, and we produced it as soon
 5    as we had it.
 6              THE COURT:  Records or the declaration?
 7    I'm sorry.
 8              MS. PHILION:  The declaration.  We
 9    subpoenaed records from Gen X, and then there was
10    some motion practice before you with respect to
11    whether we could take a deposition of a Gen X
12    representative to explain the records to us.
13              THE COURT:  I see.  Okay.
14              MS. PHILION:  And then we produced --
15              THE COURT:  Oh, as to the timing thing.
16    Right.  Okay.  Got it.
17              MS. PHILION:  That's correct, Your Honor.
18              THE COURT:  It's coming back to me.
19              MS. PHILION:  Your Honor, may I go a bit
20    further as to why we believe these records are very
21    important to the case?
22              THE COURT:  Go ahead.
23              MS. PHILION:  So with respect to these two
24    plaintiffs, it's Watson-Moore and Wheatley-Diaz.
25    Watson-Moore claims that she typically worked seven
```

1   days a week from 9:00 a.m. to 7:00 p.m., in addition

2   to attending late night events.  Wheatley-Diaz also

3   claims that she worked seven days a week starting

4   between 10:00 and 12:00 and working between 8:00 and

5   10:00 p.m. at night.

6          What we've learned through this case,

7   including with respect to Wheatley-Diaz in

8   particular, is that she had another full-time job.

9   She worked at Gen X 40 hours a week plus.  And we've

10  also learned from other plaintiffs in deposing them

11  and through their written discovery that we have

12  full-time students who claimed to work for the

13  campaign 60 to 90 hours a week, seven days a week.

14  We have other people who claim to have outside

15  interests that took up a whole lot of their time and

16  other careers.

17          And so we believe that we are entitled to

18  test the testimony that these folks worked seven

19  days a week from morning till night, and we believe

20  that if there are nonwork calendars that show that

21  there were events that were taking place that they

22  were scheduled to attend during hours that they

23  claim that they were working for the campaign, that

24  will undermine the testimony and their credibility.

25          And we would like to be able to test that,

1    particularly in light of the discovery that has been

2    adduced with respect to what these folks were doing

3    when they claimed to have been working for the

4    campaign.

5              THE COURT:  All right.  Mr. Danna?

6              MR. DANNA:  Thank you, Your Honor.  Just at

7    the outset, I'm not sure what defendant's counsel is

8    referring to when she discusses other individuals

9    having outside interests or other careers taking up

10   a majority of their time.  Without knowing who that

11   refers to, it sounds like it's mischaracterizing

12   testimony.

13             But, regardless, with respect to these two

14   particular plaintiffs, just to make clear, they have

15   both searched their personal calendars for

16   work-related notes and events and have produced

17   those.  So things that bear on the work they've done

18   for the campaign and their hours or schedules,

19   they've already produced those.  This boot is now

20   about just nonwork-related notes and events on their

21   personal calendars.

22             We don't think such things are relevant or

23   bear on the claims or defenses, such as their job

24   duties or what hours they did work.  And it's pure

25   speculation that personal calendars would contain

```
 1    information showing these individuals did not

 2    perform work, and that speculation should not

 3    override these individuals' privacy interests in the

 4    personal notes on their personal calendars.

 5              I also note that defendant's counsel didn't

 6    identify any basis for searching for

 7    Ms. Watson-Moore's personal notes and appointments,

 8    in particular.

 9              MS. PHILION:  Your Honor, may I --

10              MR. DANNA:  And with respect to Ms. --

11              MS. PHILION:  Go ahead.

12              MR. DANNA:  Sorry.  I was just going to

13    add:  With respect to Ms. Wheatley-Diaz, she's

14    already provided testimony as to the other

15    obligations on her time that she was balancing with

16    her work on the campaign, including another second

17    employment.

18              THE COURT:  Go ahead for the Senate.

19              MS. PHILION:  With respect to the privacy

20    interests that Mr. Danna just articulated, I would

21    make two points, Your Honor.  The first is these are

22    proposed class representatives who seek on the basis

23    of what they allege they worked both in terms of

24    days and hours to represent other people.  They

25    affirmatively signed up to do that, and we're
```

1    entitled to test the veracity of their claims.

2          The second point I would make is that, you

3    know, with respect to these two people, there's a

4    confidentiality order in place.  If they believe

5    that there is information that is sensitive or

6    private, certainly plaintiffs' counsel can designate

7    that information, and it will be treated

8    accordingly.

9          With respect to these plaintiffs, as I

10   mentioned earlier, the reason we are only talking

11   about them is because they are the only proposed

12   class representatives who indicated that they are

13   withholding responsive records.  To respond to

14   Mr. Danna's points, the fact that Ms. Wheatley-Diaz

15   had another full-time job when she claims to have

16   been working day and night, seven days a week from

17   the campaign seems to suggest to me that it's much

18   more than speculation that perhaps we will find

19   something on her calendar that would undermine the

20   credibility of her testimony.

21         With respect to Ms. Watson-Moore, she

22   testified that she did not recall or did not

23   remember certain aspects of her employment 152 times

24   in her transcript.  And so we believe, based on a

25   memory, as time has lapsed, that perhaps she is not

1    quite sure of the hours she worked as well.  And,

2    again, we're only asking for calendars for a period

3    of a very short amount of time.

4         These people did not work for the campaign

5    for more than a few weeks to a few months.  They're

6    being proposed as class representatives, and we

7    think it would be appropriate to allow us to assess

8    the evidence of what else they were doing when they

9    claim they were working seven days a week.

10        THE COURT:  All right.  Anything else,

11   Mr. Danna, that you haven't already said?

12        MR. DANNA:  No, Your Honor.

13        THE COURT:  All right.  Given the

14   situation, I think there is some interest in the

15   defendants in seeing what calendar entries show.  I

16   recognize that there's a lot of very private things

17   in there, so I think it needs to be produced.  It

18   can be produced marked all of it as attorneys' eyes

19   only.

20        And at this point, I'm not going to permit

21   the defendants to inquire at trial, if that even

22   goes forward, with respect to any matters without

23   getting specific permission from the district judge

24   in form of motion in limine to ask about any

25   particular calendar entries.  Same thing for

 1   anything that's put in a summary judgment motion.

 2   None of that should be -- is to be revealed

 3   without -- and you can come to me for a summary

 4   judgment motion as to whether it's sufficiently

 5   relevant that it's going to be allowed to be

 6   revealed.

 7           I mean, that's if you can't agree with the

 8   other side.  But I think the defendants need to have

 9   a pass at looking at it to see if it does reflect

10   anything as to actual hours work.  So I'm ordering

11   that material to be produced as attorneys' eyes

12   only.

13           All right.  Next one is medical records.

14   Give me one second to look at my notes.

15           All right.  I don't need to hear argument

16   on this.  The only thing I'm going to allow here is

17   an interrogatory to the individual as to the exact

18   dates of his hospitalization and how he knows the

19   dates of the hospitalization.  If he needs to get

20   his medical records to do that, that's fine.  I'm

21   not going to require them to be turned over to the

22   defendants, but he needs to say under oath what

23   dates he was hospitalized.  And that's all I'm

24   allowing for Number Three.

25           Okay.  Number four.  Hold on, everyone.

1    Give me a moment here.

2            So I'm just trying to understand.  This, to

3    me, is being asked for -- or at least the only

4    strong basis for relevance is to determine meal and

5    rest breaks?  Is that what's going on for the

6    California plaintiffs?  How does the defendant

7    explain the relevance of this?

8            MS. PHILION:  Sure, Your Honor.

9            So I think as a primary ground, you are

10   correct that we believe cell phone records would

11   show whether there are lengthy personal

12   conversations or text messages during their workday

13   that would suggest that they had time to take meal

14   and rest periods, as we believe the evidence would

15   show.

16           I would also say that, as I do understand,

17   one of these California folks is an FLSA opt-in and

18   not a proposed class representative.  What I would

19   say there is there have been cases that recognize

20   that significant or lengthy phone calls or texting

21   would be probative of hours worked there as well and

22   have been permissible.

23           But, yes, the primary ground is that they

24   worked in California, they do have rest and meal

25   period claims, and we believe that it is relevant to

1   determine whether they, in fact, did have this free

2   time to engage in personal time that could be

3   considered, you know, time off.

4         THE COURT:  So the distinction -- let's

5   pretend we're talking only about meal breaks, then

6   you only would require this as to one person?

7         MS. PHILION:  If we were only talking about

8   the California claims.  To be clear, the other FLSA

9   opt-in, Mr. Summers, he's in the putative class, but

10   he's not a proposed class representative.  Mr. Coker

11   is a proposed class representative.  We have sought

12   the records for both of them, and we believe, as to

13   the FLSA opt-ins claim, that it would be appropriate

14   to review them.  But Mr. Coker is the class

15   representative for California.

16         THE COURT:  And is it that California has

17   some special meal break rule?  Is that why you're

18   talking about California?

19         MS. PHILION:  Yes, that's exactly right,

20   Your Honor.  And there are standalone claims in the

21   complaint for meal and rest period alleged

22   violations under California law that the plaintiffs

23   have not brought under other state causes of action

24   because there are states that do not have similar

25   laws.

```
 1                  THE COURT:  All right.  Mr. Danna?
 2                  MR. DANNA:  Thank you, Your Honor.
 3                  Our view is that plaintiffs' and this
 4      opt-in plaintiffs' personal phone records and text
 5      records, including records showing the senders and
 6      recipients of each communication, are not relevant.
 7      These are exclusively personal communications.  And,
 8      again, it is pure speculation that the contents of
 9      phone records would shed light on hours worked or
10      not worked.
11                  The campaign has access to its own records,
12      its own data systems, its own phone logs that it
13      could look into when plaintiffs were using
14      campaign-issued phones for their work duties to
15      determine, perhaps, if there were breaks.  There's
16      no reason to require discovery and efficient
17      expedition through plaintiffs' private and personal
18      communications.
19                  I think there are a couple of reasons that
20      show that this is not a proportional request and
21      that these records have minimal or no importance to
22      the issues in this case.  One is that defendant did
23      not even ask about personal phone calls or texts
24      during the deposition of Mr. Coker.  And while they
25      did ask Mr. Summers, he testified to not recalling
```

1       any personal calls during work hours.

2              Further, the identities of senders and

3       recipients of calls and texts has no conceivable

4       bearing on any issues in this wage and hour case,

5       whether it's the unpaid overtime claim or the meal

6       and rest break claim.  And the proportionality

7       analysis must be balanced against the fact that

8       plaintiffs have an interest in keeping their

9       personal communications and records of those

10      communications private, as several district courts

11      in this circuit have held in rejecting similar

12      requests.

13             One further note is, you know, defendant's

14      delay of two and a half months to bringing this

15      issue to the Court after declaring impasse further

16      suggests that these records have no actual

17      importance to the case.  One additional issue with

18      respect to the burden here in the proportionality

19      analysis, to try to recover a three-year-old phone

20      log showing each text message and each phone call

21      would likely require these individuals undertaking a

22      time-consuming and burdensome process of making

23      special requests to their cell phone providers, as

24      this information is not readily available from over

25      three years ago.

```
 1                    And just one final point, Your Honor, with
 2        respect to meal and rest breaks specifically,
 3        there's no record here to support that a call or a
 4        text message would reflect that a break occurred.
 5        This is just a speculative theory.  Defendant did
 6        not ask questions at either Mr. Coker's or
 7        Mr. Summer's deposition about using personal phones
 8        during breaks, engaging in text message
 9        conversations during breaks.  And so there's no
10        factual sort of basis to support allowing defendant
11        to just peruse and rifle through plaintiffs'
12        personal phone records.
13                    The theory that phone records could shed
14        light on hours worked or whether a meal or rest
15        break occurred is just too tenuous to justify
16        overriding the privacy interests in their phone
17        records.
18                    THE COURT:  All right.  I mean, the privacy
19        interest is easily solved.  I assume there's a -- or
20        I understand from the letters, at least, that people
21        were using Bloomberg phone for Bloomberg things and
22        a private phone for private things.  So unless they
23        want to contend that the individuals being texted or
24        phoned on the private phone are work related, then
25        I'm happy to have them redact the phone numbers so
```

```
 1    no one's identity is going to be revealed.
 2              It seems, I mean, if you're going to make
 3    the meal and break argument -- if you want to give
 4    up on that argument, then you don't have to produce
 5    it.  But if you want to continue it, then
 6    Plaintiff Coker should request these records.
 7    Again, it's a brief period.  If they still exist.
 8    Frankly, I don't know that they will still exist.
 9    And she's welcome, as long as she's not going to
10    claim that they're work related, to completely
11    redact every single phone number on it.  So there'll
12    be zero privacy problems with this production.
13              You know, if there's some special burden
14    that I don't know about that you discover after she
15    tries to get them -- sorry, he or she, whoever Coker
16    is -- then you can come back to me.
17              Any questions about the ruling, Mr. Danna?
18              MR. DANNA:  No, Your Honor.
19              THE COURT:  Okay.  I think we're done with
20    everything unless someone has any questions or
21    anything else.
22              Anything for the plaintiffs' side,
23    Mr. Danna?
24              MR. DANNA:  No, Your Honor.  Thank you.
25              THE COURT:  From defendant's side,
```

1   Ms. Philion?

2           MS. PHILION:  No.  Thank you, Your Honor.

3           THE COURT:  All right.  Thank you,

4   everyone.  Goodbye.

5           MS. PHILION:  Bye-bye.

1                    C E R T I F I C A T E

2

3        I, Marissa Mignano, certify that the foregoing

4    transcript of proceedings in the case of

5    DONNA WOOD, individually and on behalf all

6    others similarly situated v. MIKE BLOOMBERG 2020, INC,

7    Docket #1:20-cv-02489-LTS-GWG, was

8    prepared using digital transcription software and is

9    a true and accurate record of the proceedings.

10

11

12   Signature   _Marissa Mignano_____

13                Marissa Mignano

14

15   Date:     May 23, 2023

16

17

18

19

20

21

22

23

24

25