# Exhibit 103

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA WOOD, individually and on behalf all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>　　　　　Defendant. | No. 20-cv-02489-LTS |

**DECLARATION OF ERIC STONE**

I, Eric Stone, declare, based on personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I worked for Mike Bloomberg 2020, Inc. (the "Campaign") as a Regional Organizing Director from about January 2020 to March 2020.

2. I worked out of the Albany, NY campaign office.

3. As part of my job duties, I interviewed applicants to the Field Organizer position and conducted orientation and onboarding after they were hired.

4. I was responsible for hiring and firing Field Organizers.

5. My primary job duties included overseeing and directing the daily work of Field Organizers in my office.

6. I managed approximately five Field Organizers at my office, including Sarah Tisch, Jennifer Reilly, Paul Gordon, Eddy Burnett and Britney Stinson.

7. I also was responsible for setting the schedules of Field Organizers in my office. Because I set their schedules and monitored their work hours, I am familiar with the hours worked by Field Organizers. In my office, Field Organizers typically worked 7 days per week.

They typically worked about 9 to 10 hours Monday through Saturday and about 5 to 6 hours on Sunday.

8. Field Organizers' primary job duty was speaking with potential voters by phone. Field Organizers spent the vast majority of their time (approximately 95%) on these duties.

9. Field Organizers occasionally helped with other duties such as setting up for events, but these duties were infrequent and were secondary to their duties with respect to contacting potential voters and canvassing.

10. Field Organizers did not have authority to hire or fire other employees and could not set schedules; instead, those were my own job duties, or the duties of state-level directors above me. Field Organizers also do not set rates of pay or direct the work of other employees.

11. While I aimed to hire Field Organizers who would perform well in their job duties, Field Organizers did not require any specialized training, education, or skills prior to being employed as a Field Organizer by the Campaign.

12. All matters of significance regarding campaign operations in my field office and across the country were made by national campaign officials in the Campaign's New York headquarters and communicated to me by the New York headquarters or state-level directors.

13. The Campaign provided strict oversight over the operations of my field office, including how many Field Organizers I could hire, how many potential voters a day they must speak to, scripts to be used by Field Organizers when speaking with potential voters, how Field Organizers should upload voter information into a central database, metrics with regard to how many calls Field Organizers must make and how many doors Field Organizers must knock on, and other strategy and operations decisions.

14. I frequently received emails and directives from officials in the Campaign's New York headquarters.

15. I also attended weekly conference calls with Campaign staffers across the country during which officials in the Campaign's New York headquarters, who led the calls, provided updates and directives.

16. I also attended additional calls with Campaign staffers across the country, during which Campaign officials in the New York headquarters provided information and guidance, including talking points for explaining the Campaign's policy proposals to voters.

17. I was provided additional guidance from state-level directors and national Campaign officials regarding how to train and direct Field Organizers regarding policy changes and other talking points.

Dated: August 15, 2023

_____
Eric Stone

3