UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DONNA WOOD, et al., individually and
on behalf of all others similarly situated,

                Plaintiffs,

 -v-                                                     No.  1:20-CV-2489-LTS-GWG

MIKE BLOOMBERG 2020, INC.,

                Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

                In this action, Plaintiffs Donna Wood, Caelan Doherty, Max Goldstein, Bridget Logan, James Kyle Newman, Lakisha Watson-Moore, Alan Robinson, Alexandra Marie Wheatley-Diaz, Robin Ceppos, and Nick Coker (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this collective and putative class action against Mike Bloomberg 2020, Inc. (the "Campaign" or the "Defendant"), asserting claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, et seq. (See docket entry no. 296 (the "Third Amended Complaint" or the "TAC").)  Plaintiffs Alexandra Marie Wheatley-Diaz, Robin Ceppos, and Nick Coker (together, the "California Plaintiffs"), individually and on behalf of all aggrieved employees, also assert claims under the California Private Attorney General Act of 2004 ("PAGA"), Cal. Labor Code §§ 2698 et. seq., against the Campaign.  (See TAC at ¶¶ 399-407.)  The Third Amended Complaint asserts additional state wage and hour law claims against the Campaign, on behalf of Cheryl Baldwin, Jonathan Barrio, Desmond Batts, Garrett Beckenbaugh, Cochiese Bowers, Miles Ceplecha, Melinda Cirilo, Jane Conrad, Robert Cordova Jr., Christine Doczy, Rachel Douglas, Theresa Edwards, Eliza Fink, Jason Finkelstein, Ilse

Mendez Fraga, Josh Fredrickson, Maria Gonzalez, Nathaniel Robert Groh, Brandi Harris, Peter Kamara, Mack Kennedy, Madison Oliver Mays, Patrick McHugh, Paul Monterosso, Rey Murphy, Frida Michelle Naranjo, Joseph Nestor, Luke Nicholas, Josephine Olinger, Alec Silvester, Daniel Smith, Chris Soth, Audra Tellez, Carlos Torres, Elliott Tricotti, Gloria Tyler, Jesse Weinberg, Clem Wright, Anoosh Yaraghchian, and Jesus Zamora, individually.

The case is before the Court on Defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Third Amended Complaint in part, for failure to state a claim upon which relief can be granted.  (See docket entry no. 301, the "Motion to Dismiss.")  Defendant seeks the dismissal of the Sixteenth Cause of Action, which is asserted pursuant to PAGA, and the First Cause of Action, for unpaid overtime compensation under the FLSA.  (See TAC Counts 1, 16.)  The Campaign also moves to "strik[e] the allegations in the Third Amended Complaint that related solely to the common law claims for fraudulent inducement and promissory estoppel the Court dismissed with prejudice in its March 25, 2022 Opinion and Order, pursuant to Fed. R. Civ. P. 12(f)."  (Motion to Dismiss at 1.)  The Court has jurisdiction of Plaintiffs' FLSA claim pursuant to 28 U.S.C. sections 1331 and 1337 and 29 U.S.C. section 216(b), and has jurisdiction of the California Plaintiffs' PAGA claim pursuant to 28 U.S.C. section 1367.

The Court has reviewed and considered thoroughly all of the parties' submissions filed in connection with the motion.  For the following reasons, Defendant's Motion to Dismiss is denied.  The request to strike portions of the complaint is also denied, without prejudice to renewal based on papers augmented to provide greater specificity regarding the portions of the Third Amended Complaint that the Campaign seeks to strike.

BACKGROUND

Familiarity with the general context and procedural history of this case is assumed for the purposes of this Memorandum Opinion and Order. (See docket entry no. 258.)

Commencement of the Case

Plaintiffs commenced this lawsuit on March 23, 2020, asserting wage and hour claims under the FLSA and common law claims for fraudulent inducement and promissory estoppel. (See docket entry no. 1.) On March 30, 2020, Plaintiffs filed a First Amended Complaint in which they added wage and hour claims under the laws of various states, including California, and designated Alexandra Marie Wheatley-Diaz as the proposed California class representative. (See docket entry no. 29 ¶¶ 34, 49-50). Ms. Wheatley-Diaz worked for the Campaign in California between January and March 2020. (See TAC ¶ 101.) On March 31, 2020, she filed a notice with the California Labor and Workforce Development Agency (the "LWDA"), stating that she intended to bring claims against the Campaign for penalties pursuant to PAGA.[1] (Id. ¶ 407.)

Second Amended Complaint

On May 18, 2020, Plaintiffs filed their Second Amended Complaint. (See docket entry no. 86 (the "Second Amended Complaint" or "SAC.") The Second Amended Complaint included the following allegations:

Michael Bloomberg announced his candidacy for President of the United States on November 24, 2019. (SAC ¶ 1.) In or around January 2020, the Campaign began hiring

---

[1] As discussed below, PAGA's exhaustion requirements include such pre-filing notice.

WOOD - MTD TAC                                    VERSION SEPTEMBER 6, 2023          3

Field Organizers and other employees to assist in its efforts to promote Mr. Bloomberg's candidacy and secure the Democratic Presidential nomination.  (Id. ¶ 2.)  Because Mr. Bloomberg was a late entrant into the Presidential race, the Campaign knew that it would be difficult to hire sufficient staff within the time necessary in order to prepare for the Democratic primary.  (Id. ¶ 4.)  Therefore, to incentivize individuals to apply to work for the Campaign, Mr. Bloomberg and Campaign officials promised that employees would have guaranteed employment, including wages and healthcare and other benefits, through November 2020.  (Id. ¶¶ 3, 5.)  Employees were promised continued employment through the general election even if Mr. Bloomberg did not secure the Democratic nomination.  (Id. ¶ 7.)  Plaintiffs allege that these promises were reiterated by Mr. Bloomberg at a December 2019 Campaign event in North Carolina, by Campaign officials in public statements and media interviews, and by director-level employees and managers via email and during interviews for prospective employees.  (Id. ¶¶ 11-24.)

        Plaintiffs are former Campaign Field Organizers ("FOs") who accepted employment with the Campaign between January and February 2020, foregoing alternative employment and/or educational opportunities.  (SAC ¶¶ 81-96.)  At the initiation of their employment, each Plaintiff signed an offer letter stipulating the terms of their employment.  (See docket entry no. 113, Declaration of Katherine Sayers ("Sayers Decl.") ¶¶ 2-52.)  The offer letters included the amount of compensation and timetable for payment that the individuals would receive as employees of the Campaign; confirmed eligibility for the Campaign's employee benefit plans; and specified that the Campaign would reimburse certain out-of-pocket relocation expenses.  (See Sayers Decl., Exs. 1-51.)  The offer letters also contained a provision

specifying the employees' at-will employment status.  (Id.)  Each offer letter contains the electronic signature of the employee and date signed.  (Id.)

As FOs, Plaintiffs' primary duty was to make telephone calls on behalf of the Campaign to potential voters, promoting Mr. Bloomberg's candidacy.  (See SAC ¶¶ 59, 221.)  Plaintiffs' other core responsibilities included door-to-door canvassing and recruiting volunteers to join the Campaign's efforts.  (Id. ¶¶ 59, 70-72.)  Plaintiffs also participated in all-state conference calls led by the Campaign's Headquarters office in New York City on at least a weekly basis and communicated via email with Campaign officials daily.  (Id. ¶¶ 60, 68-69.)  Plaintiffs regularly worked in excess of 40 hours per week and did not receive overtime compensation.  (Id. ¶¶ 62-63, 81-96, 219-223.)

On March 4, 2020, Mr. Bloomberg withdrew from the 2020 Presidential race.  (SAC ¶ 39.)  Beginning on or about March 9, 2020, the Campaign terminated Plaintiffs' employment.  (Id. ¶ 41.)  Plaintiffs alleged that their terminations breached the Campaign's promise of continued employment, pay, and benefits through November 2020.  (Id. ¶¶ 47-49.)  They further alleged that they were damaged "by losing their jobs with the Campaign. . . losing their income, and losing their healthcare and other benefits" in addition to "leaving their [prior] jobs" in order to work for the Campaign.  (Id. ¶¶ 420, 423; see also id. ¶¶ 428, 430-431 (seeking damages related to reliance on promises of employment and "employer-paid healthcare and other benefits").)

Based on the Campaign's alleged failure to pay overtime compensation, to which Plaintiffs allege they were entitled under the FLSA, and the alleged harms stemming from their terminations in March 2020, Plaintiffs brought the Second Amended Complaint on behalf of themselves and all others similarly situated, asserting claims under the FLSA and for fraudulent

inducement and promissory estoppel. Plaintiffs sought declaratory and monetary relief, including unpaid overtime pay and compensatory and punitive damages. Ms. Wheatley-Diaz was the proposed class representative with respect to the California wage and hour claims in the Second Amended Complaint, but she did not plead a PAGA claim. (See SAC ¶¶ 80, 254-255.)

Defendants moved to dismiss Plaintiffs' Second Amended Complaint, in part, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (See docket entry no. 110.) Defendant sought the dismissal of Plaintiffs' claims for unpaid overtime compensation under the FLSA and for fraudulent inducement and promissory estoppel. (See SAC Counts 1, 16-17.) On March 25, 2022, the Court granted Defendant's motion to the extent that the Court dismissed Plaintiffs' fraudulent inducement and promissory estoppel claims and denied Defendant's motion with respect to Plaintiff's FLSA claims. (Docket entry no. 258 at 25.)

The May 18, 2021 Tolling Agreement

On May 18, 2021, the parties executed a tolling agreement. (See TAC ¶ 82; see also docket entry no. 303-1, the "Tolling Agreement.") The preamble of the Tolling Agreement provides that "Plaintiffs . . . have notified the Campaign of their intent to file a Motion to Amend the Second Amended Complaint in the Action to: (1) add claims under . . . PAGA . . . on behalf of aggrieved employees who worked for Defendant in California (collectively, the "Potential PAGA Members") [and] (2) substitute Robin Ceppos and Nick Coker as the proposed Class Representatives for California in place of Alexandra Wheatley-Diaz . . . ." (Id. at 1.) Ms. Ceppos and Mr. Coker both worked for the Campaign in California between January and March

2020.  (TAC ¶¶ 85, 87.)  At that point, neither of these two California Plaintiffs had provided notice to the LWDA that they intended to bring PAGA claims against the Campaign.

The Tolling Agreement further provides that:

- "No statute of limitations on any of the Claims shall run against California Representatives or Potential PAGA Members and the same shall be tolled from the date of the execution of this agreement on behalf of all Parties until five (5) days after either party gives written notice of cancellation of tolling by email to the other party . . . ."
- "[N]othing in this Agreement shall operate . . . to revive any claim, cause of action, or allegation that is otherwise barred by any statute of limitations or similar rule of law or equity prior to the effective date of this Agreement . . . ."
- "During the term of this Agreement, California Representatives shall refrain and forebear from seeking leave to add the Claims to the Action, or commencing, instituting, or prosecuting any lawsuit, arbitration, action, or other proceeding against the Campaign raising the Claims without giving the Campaign five (5) days written notice by email . . . ."

(Tolling Agreement at 1-2.)

The Third Amended Complaint

Plaintiffs filed a motion for leave to file a Third Amended Complaint on May 31, 2022.  (Docket entry no. 278, the "Motion for Leave to Amend.")  In that motion, Plaintiffs sought to remove Ms. Wheatley-Diaz as a proposed class representative and named plaintiff in the proposed Third Amended Complaint; to replace her with Ms. Ceppos and Mr. Coker; and to add PAGA claims on Ms. Ceppos's and Mr. Coker's behalf.  (Docket entry no. 279 at 1.)  Three weeks later, on June 21, 2022, Ms. Ceppos and Mr. Coker provided notice to the LWDA that they intended to bring PAGA claims against the Campaign.  (TAC ¶ 407; docket entry nos. 286-1, 286-2.)  The Campaign opposed Plaintiffs' Motion for Leave to Amend on the ground that Plaintiffs' proposed amendments would be futile to the extent that Ms. Ceppos's and Mr. Coker's PAGA claims were subject to dismissal under Rule 12(b)(6) for failure to satisfy PAGA's administrative exhaustion requirements.  (See docket entry nos. 282, 288.)  On

September 13, 2022, two days before oral argument on the Motion for Leave to Amend, Plaintiffs notified the Court that they wished to modify the relief sought so that Ms. Wheatley-Diaz could remain in the case and serve as a PAGA representative. (See docket entry no. 291.) The Campaign opposed the proposed modification on the grounds that the statute of limitations for Ms. Wheatley-Diaz's PAGA claim had expired. (Docket entry no. 290 at 2-3.) On September 15, 2022, Magistrate Judge Gabriel W. Gorenstein granted in part and denied in part Plaintiffs' Motion for Leave to Amend, allowing the PAGA claim to be pled without deciding whether the amendment was futile. (See docket entry no. 303-3 at 34:5-10.)

On September 20, 2022, Plaintiffs filed the Third Amended Complaint and designated Ms. Wheatley-Diaz, Ms. Ceppos, and Ms. Coker as proposed PAGA class representatives. (See TAC ¶¶ 80, 399-407.) The Third Amended Complaint also pled FLSA claims that are identical to those pled in the Second Amended Complaint and survived the Campaign's last Motion to Dismiss. (Compare TAC Count 1 with SAC Count 1.) The Third Amended Complaint also includes factual matter related to the Campaign's alleged promise to retain its employees through the 2020 Presidential Election. (See, e.g., TAC ¶¶ 1-58.)

DISCUSSION

Defendant's current Motion to Dismiss targets two of the causes of action asserted in the Third Amended Complaint. In the first of these, the California Plaintiffs assert PAGA claims against the Campaign for violations of the California Labor Code. In the second, Plaintiffs assert that the Campaign failed to pay Plaintiffs and other similarly situated individuals overtime wages to which they were entitled under the FLSA. Defendant argues that: (1) none of the California Plaintiffs' PAGA claims is timely, and (2) "Plaintiffs' FLSA allegations, which

have not changed in the Third Amended Complaint, still fail to state a claim." (See docket entry no. 302 ("Def. Mem.") at 1-2.) The Campaign also moves to "strike the allegations in the Third Amended Complaint that relate solely to Plaintiffs' dismissed common law causes of action for fraudulent inducement and promissory estoppel" pursuant to Fed. R. Civ. P. 12(f). (Id. at 21.)

Motion to Dismiss

    Legal Standard

To survive a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the Second Amended Complaint and draws all reasonable inferences in the nonmoving party's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

In determining a Rule 12(b)(6) motion to dismiss, the Court may consider "the complaint, any exhibit attached to the complaint, materials incorporated in the complaint by reference, and documents that, 'although not incorporated by reference, are "integral" to the complaint.'" Jasper & Black, LLC v. Carolina Pad Co., No. 10-CV-3562-LTS, 2012 WL 413869, at *4 (S.D.N.Y. Feb. 9, 2012) (quoting Schwartzbaum v. Emigrant Mortg. Co., No. 09-CV-3848-SCR, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010)).

"[A] motion to dismiss may be granted, where the underlying claim is time barred by a statute of limitations." Figueroa v. City of N.Y., No. 07-CV-11333-LAP, 2008 WL

4185848, at *1 (S.D.N.Y. Sept. 4, 2008). A motion to dismiss can also be granted when a plaintiff fails to timely exhaust administrative requirements. See, e.g., Rivera v. EMTC Med. Dep't, No. 15-CV-2034-AJN, 2016 WL 110529, at *2 (S.D.N.Y. Jan. 7, 2016).

Count 16: PAGA Claims

Under PAGA, an aggrieved employee can "stand in the shoes of the state of California" to enforce claims on behalf of the state for violations of the California Labor Code. Benitez v. W. Milling, LLC, No. 18-CV-01484-SKO, 2020 WL 3412725, at *7 (E.D. Cal. June 22, 2020) (citation omitted). PAGA requires that a potential plaintiff first satisfy the statute's exhaustion requirement before filing suit, by providing written notice to the LWDA and their employer detailing (1) the alleged Labor Code violations and (2) the specific factual allegations that relate to the alleged violations. Bush v. Vaco Tech. Servs., LLC, No. 17-CV-05605-BLF, 2018 WL 2047807, at *12 (N.D. Cal. May 2, 2018). The statute of limitations for filing a PAGA claim is one year from the alleged violation; this period is tolled for a maximum of 65 days after the plaintiff-employee notifies the LWDA that they intend to pursue PAGA claims. Id. Therefore, the statute of limitations to file a PAGA claim is functionally 430 days.

The Campaign asserts that none of the three California Plaintiffs filed a timely PAGA claim. The Campaign first argues that, while Ms. Wheatley-Diaz timely provided notice to the LWDA, she failed to file a PAGA claim within the one-year statute of limitations. (Def. Mem. at 8.) Ms. Wheatley-Diaz alleges that her PAGA claim is timely to the extent that (1) "[f]or a period of 178 days, between April 6, 2020 and October 1, 2020, California courts tolled the statute of limitations for all civil actions due to the COVID-19 pandemic" under Emergency Rule 9, and (2) "the parties agreed that no statute of limitations on the PAGA claims would run

against the California Plaintiffs" in their May 18, 2021 Tolling Agreement.[2] (TAC ¶¶ 81-82 (citing Rule 9(a), App'x I, Emergency Rules Related to COVID-19, https://www.courts.ca.gov/documents/appendix_I.pdf).) Likewise, the Campaign argues that Ms. Ceppos and Mr. Coker did not timely provide notice of their PAGA claim to the LWDA. (Def. Mem. 14.) Ms. Ceppos and Mr. Coker allege that, taking into account tolling under Emergency Rule 9 and the parties' Tolling Agreement, they timely exhausted the administrative requirements under PAGA. (Docket entry no. 305 ("Pl. Mem.") at 11.) The Campaign offers several arguments to argue that the statute of limitations should not be tolled—either by Emergency Rule 9 or the Tolling Agreement—but each is unavailing.

First, Defendant argues that the Tolling Agreement did not toll Ms. Wheatley-Diaz's PAGA claim because "that agreement was explicitly premised on Plaintiff's representation that Wheatley-Diaz would withdraw as a proposed California class representative and would not pursue a PAGA claim against the Campaign." (Def. Mem. at 8.) The Tolling Agreement, however, contains no such condition. While the Tolling Agreement acknowledges that "Plaintiffs . . . have notified the Campaign of their intent to file a Motion to Amend the Second Amended Complaint in the Action to . . . substitute Robin Ceppos and Nick Coker as the proposed Class Representatives for California in place of Alexandra Wheatley-Diaz" (Tolling Agreement at 1), there is no language indicating that the parties' agreement was conditioned upon Plaintiffs' execution of that intention. Instead, the Tolling Agreement explicitly tolled PAGA claims on behalf of "Potential PAGA Members," defined as "aggrieved employees who worked for Defendant in California." (Tolling Agreement at 1.) The California Labor Code

---

[2] The Court can consider the Tolling Agreement at this stage because it was "incorporated in the complaint by reference." Jasper & Black, 2012 WL 413869, at *4.

defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c). Ms. Wheatley-Diaz alleges that she was employed by the Campaign in California and was subject to PAGA violations (TAC ¶¶ 80, 101-02, 399-407), and therefore plausibly alleges that she was both (1) an aggrieved employee under PAGA and (2) covered by the Tolling Agreement. In short, nothing in the Tolling Agreement excludes Ms. Wheatley-Diaz's PAGA claim, and, as the agreement explicitly states, its terms "constitute the entire understanding between the parties concerning the subject matter of this Agreement and supersedes and replaces all prior negotiations, proposed agreements, and agreements, written or oral, relating to this subject." (Tolling Agreement at 3.) The Tolling Agreement, therefore, tolled Ms. Wheatley-Diaz's PAGA claims.

Second, Defendant argues that the California Plaintiffs cannot rely on California's Emergency Rule 9 because the California "Judicial Council did not have the authority to toll the statute of limitations for a PAGA claim" because "[t]he power to set the time within which suits may be filed belongs to the legislative branch." (Def. Mem. 9-10.) Federal and California state courts have, however, routinely applied Emergency Rule 9 to toll statutes of limitations for California state law claims. (Pl. Mem. 3 (collecting cases).) One California court, for instance, held that "Emergency Rule 9 is constitutional" because equitable tolling is a "judicially created, nonstatutory doctrine" which courts have authority to exercise pursuant to their "inherent equitable powers." Rhyu v. Atieva United States, No. RG20084138, 2021 Cal. Super. LEXIS 14547, at *2-3 (Alameda Cnty. Super. Ct. June 4, 2021) (citation omitted). Defendant does not provide a compelling reason to depart from the reasoning of "[a]ll courts that have directly considered the issue [and] have held that the Judicial Council acted in accordance with the

California constitution in issuing the Emergency Rules." (Pl. Mem. 3).

<u>Third</u>, Defendant argues that "Emergency Rule 9 does not apply to a federal court action" like the one here. (Def. Mem. at 11.) While Defendant points to several federal courts that declined to apply Emergency Rule 9 (Def. Mem. at 12), each of those cases involved federal, rather than state, law claims (Pl. Mem. at 7). In contrast, "<u>every</u> federal court to consider whether Emergency Rule 9 tolled California state law claims has concluded that it does." (<u>Id.</u> at 5 (citing <u>Horton v. Caine & Weiner Co.</u>, No. 21-CV-1160, 2022 U.S. Dist. LEXIS 145818 (S.D. Cal. Aug. 15, 2022)).) This conclusion comports with the <u>Erie</u>[3] doctrine, which requires federal courts to apply state substantive law—including statutes of limitations and associated tolling—where a state law claim is brought in federal court under diversity or supplemental jurisdiction. <u>See</u> <u>Personis v. Oiler</u>, 889 F.2d 424, 426 (2d Cir. 1989) ("It has long been established as a matter of federal law that state statutes of limitations govern the timeliness of state law claims under federal diversity jurisdiction. . . . State law also determines the related questions of what events serve to commence an action and to toll the statute of limitations in such cases."). Therefore, tolling under Emergency Rule 9 applies here, where the Court is called upon to evaluate the timeliness of Plaintiffs' state law claim.

<u>Fourth,</u> Defendant asserts that the California Plaintiffs have not pled any circumstances to warrant application of Emergency Rule 9. (Def. Mem. at 13-14, 16-17.) This argument is similarly unavailing. Emergency Rule 9 does not require Plaintiffs to show extraordinary circumstances to justify tolling. <u>See, e.g.</u>, <u>Palacios v. Interstate Hotels & Resorts Inc.</u>, No. 21-CV-05799-TSH, 2021 U.S. Dist. LEXIS 169334, *7 (C.D. Cal. Sept. 7, 2021) ("[Emergency Rule 9] is broad in scope and applies to all civil causes of action." (citation

---

[3] <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).

omitted)). Instead, "Emergency Rule 9 reflects a determination that the COVID-19 pandemic was a 'special situation' that warranted tolling the statute of limitations." Rhyu, 2021 Cal. Super. LEXIS 14547, at *3. Plaintiffs are not required to plead additional extraordinary circumstances for Emergency Rule 9 to toll their PAGA claims.

Fifth, Defendant argues that, because Emergency Rule 9 did not toll Ms. Ceppos's and Mr. Coker's deadline to provide notice to the LWDA, the Tolling Agreement could not revive their expired PAGA claims. (Def. Mem. at 15.) This argument fails to appreciate that Emergency Rule 9 applies to PAGA's administrative notice requirements. To be sure, the Campaign identified one case holding that Emergency Rule 9 did not toll PAGA claimants' deadline to file an administrative notice with the LWDA. See Dougherty v. Barco Unifs., No. 21-TRCV-00677, 2022 Cal. Super. LEXIS 31112, *3-4 (Super. Ct. L.A. Cnty. May 12, 2022) ("Emergency Rule 9 only tolls the filing of a civil cause of action. There is no mention of extending the time to meet administrative exhaustion notice requirements."). But that decision is out of step with the majority of courts that have considered the issue; most have concluded that Emergency Rule 9 also tolled the administrative requirements under PAGA. See, e.g., Gonzalez v. Gov't Emps. Ins. Co., No. RG-21094836, 2021 Cal. Super. LEXIS 30464, at *9 (Alameda Cnty. Super. Ct. July 9, 2021); Ariz. Graves v. Feld Care Therapy, No. 21VECV01258, 2022 Cal. Super. LEXIS 6845, at *3-4 (Los Angeles Cnty. Super. Ct. Jan. 24, 2022); Thomas v. Tks Rests., No. 30-2021 -01206884-CU-OE-CXC, 2021 Cal. Super. LEXIS 147773, at *2-3 (Orange Cnty. Super. Ct. Dec. 10, 2021). As the Arizona Graves court explained:

> [PAGA] defines administrative requirements that must occur before a civil action can be commenced, and a tolling provision, among other things. The only requirement with regard to a limitations period is that the administrative requirements must be commenced within the applicable statute. Accordingly with the emergency rule 178 day tolling period, plaintiff's notice to LWDA was within her limitations period.

2022 Cal. Super. LEXIS 6845, at *3-4.

Because the statutory language makes clear that the administrative deadline to file the PAGA notice and the statute of limitations to file the PAGA action are intertwined and "run concurrently," Gonzalez, 2021 Cal. Super. LEXIS 30464, at *9, Emergency Rule 9 tolled Ms. Ceppos's and Mr. Coker's deadline to file a notice with the LWDA.

Because neither Ms. Ceppos's nor Mr. Coker's PAGA claims had expired before the parties' Tolling Agreement went into effect on May 18, 2021, the Tolling Agreement applies to their PAGA claims. (Tolling Agreement at 1). That is, (1) both Plaintiffs are "Potential PAGA Members" as defined by the Tolling Agreement, and (2) Plaintiffs complied with the Tolling Agreement's notice requirement. (Pl. Mem. 11.)

In sum, Emergency Rule 9 and the Tolling Agreement tolled the PAGA claims of all three California Plaintiffs. Therefore, the Court calculates the deadlines under the administrative exhaustion requirement and the statute of limitations as follows:

1. Absent tolling, Ms. Wheatley-Diaz's deadline to file her PAGA claim was June 5, 2021 — i.e., 430 days (one year plus 65 days) from March 31, 2020, the last date of her employment with the Campaign and the date of the last PAGA violation. See Brown v. Ralphs Grocery Co., 28 Cal. App. 5th 824, 839 (Cal. Ct. App. 2018); Cal. Lab. Code § 2699.3(d). Ms. Wheatley-Diaz's 430-day period to file her PAGA action ran briefly, from March 31, 2020 to April 5, 2020, until Emergency Rule 9 took effect on April 6, 2020. This period was then tolled for 178 days, from April 6, 2020, to October 1, 2020, while Emergency Rule 9 was in effect. See Thomas, 2021 Cal. Super. LEXIS 147773, at *3. On October 1, 2020, 424 days remained available to her under the PAGA statute of limitations. Plaintiff's time to file then ran for 229 days before it was again paused on May 18, 2021, the date the parties entered into the tolling

agreement.  (Tolling Agreement at 3.)  As of that date, 195 days remained of her 430-day period to file the claim.  (Pl. Mem. 10.)

2.  Absent tolling, Ms. Ceppos and Mr. Coker faced a March 31, 2021, deadline to file their PAGA claim— i.e., one year from March 31, 2020, the last date of their employment with the Campaign and the date of the last PAGA violation.  Emergency Rule 9 tolled the time to file the notice for 178 days, making the new deadline to file on September 20, 2021.  On May 18, 2021, before that extended deadline had passed, the Tolling Agreement took effect and it continued to toll their time to file the notice.  Plaintiffs understand, based on the explicit terms of the Tolling Agreement, that it is still in effect.  (Pl. Mem. 11.)  But even if Plaintiffs' Motion for Leave to Amend terminated the Tolling Agreement on May 31, 2022, as the Campaign claims, Ms. Ceppos and Mr. Coker would have had until September 17, 2022, to file their notices.  Plaintiffs filed their notices well before that date, on June 21, 2022.  (Id.)

These calculations confirm that all three of the California Plaintiffs' PAGA claims are timely.  For that reason, Defendant's motion to dismiss the California Plaintiffs' PAGA claims is denied.

Count 1: FLSA Claims

Section 207(a)(1) of the FLSA provides that, subject to exceptions not invoked here, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  "An employer is subject to [29 U.S.C.] § 207(a) coverage

either (1) if the employer was an enterprise engaged in commerce or in the production of goods for commerce regardless of whether the plaintiff was so engaged, or (2) if an employee individually was engaged in commerce or in the production of goods for commerce." Kuhnmuench v. Phenix Pierre, LLC, No. 16-CV-9162-LTS, 2018 WL 1357383, at *4 (S.D.N.Y. Mar. 15, 2018) (quoting Jones v. SCO Fam. of Servs., 202 F. Supp. 3d 345, 349 (S.D.N.Y. 2016)).  These are commonly referred to as the "enterprise" and "individual" theories of coverage, respectively.  Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009) (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8 (1985)).  The Supreme Court has "consistently construed the [FLSA] liberally to apply to the furthest reaches consistent with congressional direction" given that "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." Alamo, 471 U.S. at 296

    Acknowledging that "[t]he Third Amended Complaint repeats verbatim the FLSA claims that Plaintiffs asserted in the Second Amended Complaint," the Campaign again seeks dismissal of those claims.  (Def. Mem. at 17.)  This request is based on the same arguments that Defendant raised in its last Motion to Dismiss: that (1) the Campaign was not a covered enterprise, and (2) Plaintiffs have failed to allege that they were individually covered by the FLSA.  (Compare Def. Mem. at 17-21 with docket entry no. 111 at 6-16.)  In its last Order, the Court declined to determine whether the Campaign was a covered enterprise because it held that Plaintiffs sufficiently alleged that they were individually covered by the FLSA.  (Docket entry no. 258 at 15.)

    Under the law of the case doctrine, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for

it again." Int'l Ore & Fertilizer Corp. v. SGS Control Servs., 38 F.3d 1279, 1287 (2d Cir. 1994) (citation omitted); see also United States v. Plugh, 648 F.3d 118, 123 (2d Cir. 2011) ("As a general matter, this Court will adhere 'to its own decision at an earlier stage of the litigation.'" (citation omitted)).  The law of the case doctrine applies in situations, like this, where Defendants seek to revive arguments that were rejected in a previous motion to dismiss.  See Elisa W. v. City of N.Y., No. 15-CV-5273-LTS-HBP, 2017 U.S. Dist. LEXIS 146342, at *8-9 (S.D.N.Y. Sept. 11, 2017) (denying motion to dismiss in part because earlier motion to dismiss decision on the same issues "governs here as law of the case").

Exceptions to the law of the case doctrine should only be made where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Teoba v. Trugreen Landcare LLC, No. 10-CV-6132-CJS-JWF, 2013 U.S. Dist. LEXIS 52831, at *13 (W.D.N.Y. Apr. 10, 2013) (citation omitted).  Defendant does not argue that an exception to the law of the case doctrine applies here.  (See Pl. Mem. 14.)  Instead, the Campaign argues that the law of the case doctrine is "discretionary," and that the Court may reconsider its own decisions prior to final judgment if the Court concludes that the "original ruling was erroneous."  (Docket entry no. 307 ("Def. Reply") at 6 (quoting DiLaura v. Power Auth. of N.Y., 982 F.2d 73, 76-77 (2d Cir. 1992), cert. denied, 506 U.S. 820 (1992)).)

While Defendant is correct that the law of the case doctrine is discretionary, the Campaign fails to proffer any justification—in the form of new argument, intervening caselaw, the availability of new evidence, or other new reason to suggest the "original ruling was erroneous"—for the Court to reconsider its conclusion.  For the reasons stated in its prior Order (docket entry no. 258 at 11-15), the Court denies Defendant's motion insofar as it seeks

dismissal of Plaintiffs' claim for overtime compensation under the FLSA as articulated in the Third Amended Complaint.

Request to Strike Allegations

"[M]otions to strike are disfavored, and should be granted only if 'there is a strong reason to do so.'" Roe v. City of N.Y., 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)). Federal Rule of Civil Procedure 12(f) authorizes courts to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' materials consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005). For example, the Court may grant a motion to strike portions of an amended complaint that are "immaterial to . . . currently pending allegations that survived [an] initial motion to dismiss, and render an already lengthy complaint all the more unwieldy." In re Alstom SA Sec. Litig., 454 F. Supp. 2d 187, 216 (S.D.N.Y. 2006).

The Campaign asks the Court to strike allegations that pertain only to dismissed claims. (Def. Mem. at 21-25.) "To invoke Rule 12(f)," however, "a party must identify with specificity the portion of a pleading that it seeks to strike, and failure to do so bars relief under the rule." Nimmons v. U.S. Tennis Ass'n, No. 18-CV-2499-PKC-CLP, 2019 U.S. Dist. LEXIS 14253, at *12 (E.D.N.Y. Jan. 7, 2019). Nowhere in its briefing does the Campaign specifically identify which portions of the Third Amended Complaint it seeks to strike. For this reason, the Court denies the Motion to Strike without prejudice to renewal based on papers augmented to

identify the specific allegations the Campaign seeks to have stricken.

## CONCLUSION

For the reasons discussed above, Defendant's Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Third Amended Complaint and to strike portions of the Third Amended Complaint is denied.

This case remains referred to Magistrate Judge Gorenstein for general pretrial management.

This Memorandum Opinion and Order resolves docket entry no. 301.

SO ORDERED.

Dated: September 6, 2023
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge