UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>Defendant. | Case No. 20-cv-2489 (LTS)(GWG) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
PRECLUDE THE OPINIONS AND TESTIMONY OF JONATHAN JAFFE**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

SUMMARY OF EXPERT OPINIONS ....................................................................................... 1

    I.      Jaffe's Background and Expertise ............................................................................ 1

    II.     Summary of the Factual Basis for Jaffe's Opinions ................................................ 2

    III.    Summary of Jaffe's Opinions .................................................................................. 3

    IV.    Bloomberg's "Rebuttal" Expert ............................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.      Jaffe's Analyses and Opinions Easily Satisfy Rule 702. ........................................ 5

          A.     Jaffe's Opinions Are Relevant to FLSA Coverage. ................................... 5

          B.     Jaffe's Opinions Are Reliable and Based on Sufficient Evidence
                and Data. .................................................................................................... 9

    II.     Jaffe's Analyses and Opinions Should Not Be Excluded Under Rule 403. ......... 11

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**CASES**            **PAGES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) .................................................................................... 9

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06 Civ. 5936, 2011 U.S. Dist. LEXIS 47416 (S.D.N.Y. May 2, 2011) ......................... 5, 7

*Chen-Oster v. Goldman, Sachs & Co.*,
   No. 10 Civ. 6950, 2022 U.S. Dist. LEXIS 47922 (S.D.N.Y. Mar. 17, 2022) ............ 5, 7, 9, 11

*Choi v. Tower Research Cap. LLC*,
   2 F.4th 10 (2d Cir. 2021) .......................................................................................... 4

*Daniels v. City of New York*,
   No. 16 Civ. 9080, 2018 U.S. Dist. LEXIS 193084 (S.D.N.Y. Nov. 13, 2018) ...................... 11

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
   No. 12 Civ. 7372, 2020 U.S. Dist. LEXIS 132832 (S.D.N.Y. Feb. 19, 2020) ........................ 7

*Gonzalez v. Victoria G's Pizzeria LLC*,
   No. 19 Civ. 6996, 2021 U.S. Dist. LEXIS 244297 (E.D.N.Y. Dec. 22, 2021) ........................ 8

*Jian Long Li v. Li Qin Zhao*,
   35 F. Supp. 3d 300 (E.D.N.Y. 2014) ........................................................................... 8

*Joseph v. Nichell's Caribbean Cuisine*,
   862 F. Supp. 2d 1309 (S.D. Fla. 2012). .................................................................. 8-9

*Leyva v. Avila*,
   634 F. Supp. 3d 670 (D. Ariz. 2022). ........................................................................ 8

*Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*,
   No. 16 Civ. 7907, 2019 U.S. Dist. LEXIS 36087 (S.D.N.Y. Mar. 6, 2019) ........................... 5

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ................................................................................. 5, 12

*Perez v. NWB Aspen, Inc.*,
   No. 16 Civ. 412, 2016 U.S. Dist. LEXIS 138373 (M.D. Fla. June 6, 2016) ......................... 9

*United States v. Brown*,
   776 F.2d 397 (2d Cir. 1985) ..................................................................................... 5

*United States v. City of New York*,
   717 F.3d 72 (2d Cir. 2013) ....................................................................................... 7

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ....................................................................................... 12

**RULES**

Fed. R. Evid. 403 ............................................................................................................... 11

Fed. R. Evid. 702 ................................................................................................................. 5

# INTRODUCTION

The Court should not exclude the helpful analyses and opinions of Plaintiffs' well-qualified expert on internet architecture, Jonathan Jaffe ("Jaffe"). Under the guise of a Rule 702 motion, Bloomberg merely repeats its merits arguments on Fair Labor Standards Act ("FLSA") coverage. A Rule 702 motion is an inappropriate vehicle to do so.[1] More importantly, Jaffe's analyses satisfy the standard for expert opinions because he is qualified, used reliable methods, and reached opinions that will assist the trier of fact in understanding complex information regarding the structure of online databases and how data is transmitted across state lines. Bloomberg offers no basis at all to exclude Jaffe's opinions from consideration.

## SUMMARY OF EXPERT OPINIONS

### I.  Jaffe's Background and Expertise

Jaffe is a highly-qualified expert in internet architecture who regularly testifies as an expert witness on data, technology, computer software, and other internet-related topics. Ex. 4 (Jaffe Rep., Ex. A) (CV, listing credentials and prior testimony). His expertise includes "how the internet works, how a data center works, how we code things, how these apps work, how these applications work," among other areas. Ex. 2 (Jaffe Tr.) at 58:3-25. Jaffe has testified as an expert in numerous other matters. *See* Ex. 4 (Jaffe Rep., Ex. A) at 7-8.

Bloomberg concedes that Jaffe is qualified to offer expert testimony and does not move to exclude his opinions on the basis of his qualifications.

---

[1]  Bloomberg's motion, which just repeats and expands on the same arguments it raised in its summary judgment brief, is a blatant effort to submit an additional 16 pages of argument on the FLSA individual coverage question in order to dramatically exceed the page count permitted for its summary judgment brief. Notably, Bloomberg *already* exceeded that page count by cleverly and improperly formatting its summary judgment brief with less than double-spaced lines. With compliant formatting, its brief would have exceeded the 35-page limit by several pages, and now Bloomberg seeks to add an additional 16 pages with this motion. The Court should deny this motion and Bloomberg's summary judgment motion on this ground alone.

## II. Summary of the Factual Basis for Jaffe's Opinions

In forming his opinions, Jaffe relied on the complete factual record in this case. This record included deposition and declaration testimony of Plaintiffs and opt-in Plaintiffs, the testimony of Bloomberg's most senior campaign officials, corporate documents regarding the structure and Field Organizers' use of the VAN VoteBuilder and ThruTalk database systems, data outputs from those systems, Bloomberg's discovery responses, the work locations of Plaintiffs and opt-in Plaintiffs, and publicly available information about the VAN VoteBuilder and ThruTalk database platforms. Ex. 1 (Jaffe Report) ¶¶ 11, 20-31.

Most relevant to Jaffe's opinions, this factual record — which has been summarized at length by Plaintiffs in opposition to Bloomberg's motion for summary judgment — includes consistent, unrebutted testimony from dozens of Plaintiffs and opt-in Plaintiffs that as a part of their daily phonebanking and canvassing duties they entered data into the VAN VoteBuilder and ThruTalk systems. *See* ECF No. 476 (Pls.' Statement of Additional Material Facts ("SAMF")) ¶¶ 24-26, 38-40 (summarizing record evidence). Not a single Field Organizer has testified to the contrary, and Bloomberg has never offered evidence that any Field Organizer did not enter data during their voter contact duties. Therefore, the only record evidence in this case, which Jaffe properly relied on, indicates that all Field Organizers entered data into the VAN VoteBuilder and ThruTalk systems as part of their daily duties.

Additionally, the highest-level officials in Bloomberg's nationwide campaign testified that Field Organizers were required to enter data as part of their job duties so that the New York, NY-based national headquarters team could review that data for its strategic planning and decision-making. *Id.* (Pls.' SAMF) ¶¶ 38-42 (summarizing record evidence). For example, Daniel Kanninen, the National States Director, agreed that "data that was gathered in connection

2

with door knocking and phone banking was transmitted to the campaign from the field," that it was aggregated at the national level, and that it was used to "set direction and strategy" and "create accountability that allows for better management." *Id.* (summarizing testimony); *see also id.* (Pls.' 56.1 Resp.) ¶ 24 (same). Megan Simpson, the National Organizing Director, indicated that the data was collected for daily reports, which was how "we were able to collect the work they were doing." *Id.* (Pls.' SAMF) ¶¶ 38-42. Bloomberg's instructional guides also describe an "interactive script" used in the ThruTalk system for recording voter data into the database in real time while on calls, and instruct Field Organizers to "capture accurate data." *Id.* (Pls.' 56.1 Resp.) ¶ 24. Bloomberg maintained an entire national data team at its headquarters to support the Campaign's strategic planning. *Id.* (Pls.' 56.1 Resp.) ¶ 9. This, too, informed Jaffe's opinions about how data was communicated across state lines.

In addition to the testimony and documents in this case, Jaffe also reviewed data generated by the VAN VoteBuilder system, descriptions of the database structure in corporate documents, and publicly-available information about the VAN VoteBuilder and ThruTalk systems regarding their database structure, how and where the data is stored on servers and those server locations, and how they operate. Ex. 1 (Jaffe Rep.) ¶¶ 59-123.

### III.   Summary of Jaffe's Opinions

Based upon the factual record regarding Field Organizers' use of the database systems and the data entered; how the databases are structured online and nationally as a single database rather than locally; how the data was reviewed and used by Bloomberg's New York headquarters; how the available data files generated activity logs; what specific servers the VAN VoteBuilder and ThruTalk database platforms used and where; and Jaffe's expertise regarding the structure of internet databases and transmission of data, Jaffe concluded that Plaintiffs and

3

opt-in Plaintiffs transmitted data and information across state lines using the VAN VoteBuilder and ThruTalk systems. Ex. 1 (Jaffe Report) ¶¶ 6-7. Jaffe also explained that the way Plaintiffs and opt-in Plaintiffs transmitted data across state lines using the VoteBuilder and ThruTalk systems, based on the structure of those databases and server locations, "is similar to how a long-distance call placed to an individual in another state would have to cross state line[s]." *Id.* ¶ 83.

### IV.     Bloomberg's "Rebuttal" Expert

Bloomberg purports to have submitted a "rebuttal report" from Daniel Steinbrook. *See* ECF No. 481-2. Importantly, Steinbrook does not provide any opinion — *or even seem to look at* — whether Plaintiffs and opt-in Plaintiffs transmitted data across state lines through their use of the VAN VoteBuilder or ThruTalk systems. *Id.* ¶ 5 (summarizing only three opinions regarding Jaffe's analysis); Ex. 3 (Steinbrook Tr.) at 8:1-17 (confirming that those are his only opinions). Steinbrook also did not identify any specific data or information that he believes Jaffe failed to sufficiently review, *see generally* ECF No. 481-2 (Steinbrook Rep.), and testified that he "did not feel it was necessary" to request additional data, Ex. 3 (Steinbrook Tr.) at 8:18-9:17.

Indeed, Steinbrook does not offer *any opinions* as to any factual issue in the case. Jaffe's opinions that Plaintiffs and opt-in Plaintiffs transmitted data across state lines are not contradicted by Steinbrook because he did not even study this question and offered no opinion on it. He did not find that Plaintiffs *did not* transmit data across state lines or that the data *did not* travel across state lines. Instead, Steinbrook's "rebuttal report" is just a thinly veiled legal brief that only criticizes Jaffe's opinions, but fails to offer any contrary opinion or analysis.[2]

---

2    Where expert opinions "function[] as little more than a legal brief that parrots [the parties'] arguments," they are properly stricken. *Choi v. Tower Research Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021).

**ARGUMENT**

**I.      Jaffe's Analyses and Opinions Easily Satisfy Rule 702.**

"Exclusion of expert testimony is 'the exception rather than the rule.'" *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2022 U.S. Dist. LEXIS 47922, at *12 (S.D.N.Y. Mar. 17, 2022) (quoting *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16 Civ. 7907, 2019 U.S. Dist. LEXIS 36087, at *3 (S.D.N.Y. Mar. 6, 2019)). Federal Rule of Evidence 702, which provides for admissibility of expert opinions, states that a witness with requisite "knowledge, skill, experience, training, or education" may offer opinions if their knowledge "will help the trier of fact to understand the evidence or determine a fact in issue," is "based on sufficient facts or data," and is reliable. Fed. R. Evid. 702. Bloomberg does not dispute that Jaffe is qualified to offer expert opinions, and only raises arguments as to the second and third elements. Jaffe's opinions satisfy each of Rule 702's requirements and are admissible.

**A.      Jaffe's Opinions Are Relevant to FLSA Coverage.**

To determine whether an expert's opinion is relevant, "courts ask 'whether the expert's testimony (as to a particular matter) will assist the trier of fact'" and whether it "may provide context to the jury to aid its understanding of the facts." *Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at *11-12, 14 (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005), and citing *United States v. Brown*, 776 F.2d 397, 400-01 (2d Cir. 1985)). The testimony will assist the trier of fact if it is not "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *Id.* at *11-12 (quoting *Arista Records LLC v. Lime Grp. LLC*, No. 06 Civ. 5936, 2011 U.S. Dist. LEXIS 47416, at *15 (S.D.N.Y. May 2, 2011)).

As Bloomberg recognizes, Plaintiffs argue that their interstate transmission of data using the VAN VoteBuilder and ThruTalk data systems constitutes use of instrumentalities of

5

commerce, triggering the FLSA's overtime protections. Whether the data entered by Plaintiffs crossed state lines to Bloomberg's New York, NY headquarters is a key factual question in this analysis, and turns on an understanding of the structure of online databases, internet networks, servers, and how data travels through the country's internet architecture — all topics that are very likely to be outside a lay juror's capability of understanding without expert assistance. Jaffe's expert report analyzes and explains these issues, to enable the trier of fact to understand and apply the factual record regarding Plaintiffs' data entry tasks. Specifically, Jaffe analyzes whether and how the data that Plaintiffs and opt-in Plaintiffs entered while performing their daily voter contact duty traveled through the internet across state lines; explains how that occurred and why, based on the specific database and server structures used by Bloomberg; and explains how the system through which Plaintiffs' voter contact data traveled across state lines was analogous to making a phone call across state lines. *See generally* Ex. 1 (Jaffe Rep.) ¶¶ 8-123. There is no genuine question that Jaffe's opinions are relevant and will assist the trier of fact with understanding the record evidence.

Bloomberg's argument that Jaffe's opinions are not "relevant" to the FLSA coverage analysis boil down to a mere disagreement as to whether Plaintiffs have met their burden on the ultimate merits of the coverage analysis. Indeed, Bloomberg spends nearly its entire brief raising technical, factual arguments that, in its view, Plaintiffs did not "cause" the interstate data transmission — arguments that both have nothing to do with expert admissibility and seek to apply an incorrect and unsupported legal standard on the merits. Specifically, Bloomberg argues that Plaintiffs are not covered under the FLSA because, even if the data they entered crossed state lines, Plaintiffs did not "cause" it to do so where (1) the databases carry the data across state lines, not Plaintiffs themselves, Mot. at 10-11, and/or (2) the data entered by Plaintiffs was

6

requested by Bloomberg's New York headquarters, and therefore the headquarters officials were the ones "causing" the data to travel across state lines, *id.* at 11-13.

While these arguments are disconnected from any actual legal standard for FLSA individual coverage, Jaffe nonetheless analyzes and opines on these very issues, ultimately concluding that Plaintiffs and opt-in Plaintiffs *themselves transmitted* the data by entering it into the databases. Ex. 1 (Jaffe Rep.) ¶¶ 6-7; Ex. 2 (Jaffe Tr.) at 122:3-126:6 (explaining the basis for his opinion that Plaintiffs transmitted data across state lines). Bloomberg misrepresents Jaffe's report and testimony by claiming he does not. *See* Mot. at 7-8.

While Bloomberg may disagree with Jaffe's opinions as to whether Plaintiffs transmitted data across state lines, that is a disputed factual and merits question — it does not support Bloomberg's attempt to claim evidence it disagrees with is "irrelevant." The exceedingly technical nature of Bloomberg's factual arguments against FLSA coverage in its motion only further emphasizes why it is critical to have an expert offering opinion that provides a contextual framework for understanding the factual record here. The "ultimate determination" of whether Plaintiffs have established FLSA coverage is a question for the trier of fact, and Jaffe's opinions on the technical structure of Bloomberg's online databases and how Plaintiffs transmitted data will "aid the jury in 'understanding the evidence better and provide[] it with the necessary tools to make'" that determination. *Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at *14-15 (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, No. 12 Civ. 7372, 2020 U.S. Dist. LEXIS 132832, at *13 (S.D.N.Y. Feb. 19, 2020)). While the "average juror may know about" the internet, "they likely lack a framework to analyze" how and why Plaintiffs' use of online databases indicates they were regularly transmitting data across state lines to Bloomberg's headquarters. *Id.* (citing *United States v. City of New York*, 717 F.3d 72, 83-85 (2d Cir. 2013)).

7

Bloomberg does not cite a single *Daubert* decision supporting its arguments. Instead, Bloomberg regurgitates the exact same cases and arguments that it raised *on the merits* in its summary judgment brief. *Compare* Mot. at 7-8 (citing five cases relating to FLSA individual coverage) *with* ECF No. 445 (Def.'s Summ. J. Br.) at 6-7 (citing identical five cases and same arguments). These cases, which are unrelated to expert admissibility, offer no support for striking Jaffe's opinions. Nor do they support Bloomberg even on the merits. In *Jian Long Li v. Li Qin Zhao*, the plaintiff made local food deliveries, purchased gas locally for his vehicle to make those deliveries, and made local phone calls. 35 F. Supp. 3d 300, 309-10 (E.D.N.Y. 2014). Similarly, in *Leyva v. Avila*, the plaintiff installed tiles as part of bathroom renovations, and the court rejected his claim that he was covered by the FLSA because it was not enough that the tiles had previously been shipped through interstate commerce. 634 F. Supp. 3d 670, 676-679 (D. Ariz. 2022). Finally, in *Gonzalez v. Victoria G's Pizzeria LLC*, the plaintiff, a cook at a pizzeria, was not covered even though he prepared food using ingredients that had previously been shipped from out of state. No. 19 Civ. 6996, 2021 U.S. Dist. LEXIS 244297 (E.D.N.Y. Dec. 22, 2021). In all three cases, the plaintiffs were engaged in only local work, and did not use the internet for data transmissions or communications. These cases differ significantly from the record here, which includes evidence that Plaintiffs and opt-in Plaintiffs transmitted data across state lines, from their locations to the Campaign's New York headquarters, as part of their daily voter contact work.

Bloomberg's out-of-circuit cases about credit card transactions are similarly irrelevant to the analysis of expert admissibility, and do not support its arguments on the merits. In *Joseph v. Nichell's Caribbean Cuisine*, the plaintiff was a server at a restaurant in Florida, and the court found that processing credit card transactions for food purchased locally at the restaurant was

8

insufficient for FLSA coverage. 862 F. Supp. 2d 1309, 1313 (S.D. Fla. 2012). Similarly, in *Perez v. NWB Aspen, Inc.*, the bartender plaintiffs were not covered by the FLSA for processing local transactions are the bar. No. 16 Civ. 412, 2016 U.S. Dist. LEXIS 138373 (M.D. Fla. June 6, 2016). In both cases, the facts involved local food and alcohol purchases, and there was no analysis of how or why any activity by the plaintiffs would implicate the instrumentalities of commerce. Here, by contrast, there is a clear record of interstate activity, and Jaffe's opinions provide a useful framework to assist the trier of fact in understanding how Plaintiffs' data entry resulted in them transmitting data across state lines — a factual issue that is likely outside a lay juror's understanding without expert opinions. No such record was present or analyzed in any of Bloomberg's cited cases.

**B.     Jaffe's Opinions Are Reliable and Based on Sufficient Evidence and Data.**

Bloomberg's arguments on the reliability of Jaffe's analyses lack merit. Under Rule 702, "[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at *11 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). "The mere fact that an expert's testimony conflicts with the testimony of another expert or scientific study does not control admissibility." *Id.* (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007)). Notably, Bloomberg does not challenge Jaffe's methodology at large, but instead advances two specific critiques, both of which fail.

First, Bloomberg misrepresents the basis for, and scope of, Jaffe's opinions. Jaffe did not, as Bloomberg claims, "assume, based solely on the job titles and descriptions of Plaintiffs, that they all used the VAN and/or ThruTalk software." Mot. at 14. Jaffe's opinions were based on a robust record, including the testimony of dozens of Plaintiffs and opt-in Plaintiffs, corporate

9

testimony, and corporate documents indicating that Plaintiffs and opt-in Plaintiffs entered data as a daily part of their job duties. *See* Ex. 2 (Jaffe Tr.) at 103:2-13. Indeed, Bloomberg's counsel directly asked Jaffe if he had made an assumption about whether individuals used the data systems based only on their job title, and he responded "no" and described at length the sources of information. *Id.* at 104:6-24.[3] All evidence in the record indicates that Plaintiffs and opt-in Plaintiffs entered data into VAN VoteBuilder and ThruTalk as part of their voter contact duty.

Had Bloomberg identified in discovery any Field Organizer who never used those databases, Jaffe would have studied that information and taken it into account — however, notably, Bloomberg does not claim that Jaffe failed to consider any such evidence, because it has never produced any. Jaffe's opinions rest on a robust record, and Bloomberg has failed to identify any contrary evidence that it claims Jaffe erred by not considering. There is no basis for Bloomberg's argument that it is unreliable.

Second, Bloomberg argues that Jaffe did not opine on "the number of days" that Plaintiffs transmitted data, the "amount of time in each day" they spent transmitting data, or "the volume of data" transmitted. Mot. at 14. Bloomberg fails to explain why any of those topics are relevant to its Rule 702 motion or even to the FLSA analysis. That Jaffe reasonably concluded he lacked the sufficient data to study a particular question has no bearing on whether the methods and analyses he *did* perform were reliable; if anything, it confirms Jaffe's care in ensuring that his analyses were properly supported by the necessary data and information. With respect to the questions Bloomberg identifies in its motion, Jaffe repeatedly explained in his testimony that he did not opine on those specific topics because Bloomberg failed or refused to produce in discovery any necessary data that would enable him to determine that information. Ex. 2 (Jaffe

---

[3] As stated above, this evidence is also summarized in full in Plaintiffs' opposition to Bloomberg's motion for summary judgment. *See* ECF No. 476 (Pls.' SAMF) ¶¶ 24-26, 38-42; *id.* (Pls.' 56.1 Resp.) ¶¶ 9, 24.

10

Tr.) at 104:25-106:24.  Importantly, Jaffe reviewed the relevant materials that were available to him, and Bloomberg does not identify any sources of information or data that Jaffe declined to study that may have changed his opinions.

Both of Bloomberg's critiques fall far short of bringing into question the reliability of Jaffe's analyses and conclusions.  If anything, Bloomberg's "contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."  *Daniels v. City of New York*, No. 16 Civ. 9080, 2018 U.S. Dist. LEXIS 193084, at *9 (S.D.N.Y. Nov. 13, 2018); *Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at *15 (same).

## II.     Jaffe's Analyses and Opinions Should Not Be Excluded Under Rule 403.

The Court should also reject Bloomberg's baseless argument that Jaffe's expert opinions are inadmissible under Rule 403, which provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.  Here, Bloomberg concedes that there is no danger of unfair prejudice from Jaffe's opinions.  Instead, it argues only that Jaffe's opinions will confuse or mislead the jury.  These arguments should be rejected.  As described at length above, Jaffe's opinions are reliable and offer necessary, helpful context for the fact finger to understand otherwise complex issues of internet architecture, database structure, and data transmission.  Contrary to Bloomberg's argument, Jaffe's opinions will enable the jury to be *less* confused by such evidence than it otherwise might have been — which is precisely why Plaintiffs retained and submitted Jaffe's expert analysis.

That Bloomberg disagrees with Jaffe's opinions, or disagrees with whether it supports Plaintiffs' claims on the merits, does not mean the jury should be entirely prevented from hearing that evidence.  Instead, Bloomberg retains its opportunity to present contrary evidence to the

jury, if it can, that Plaintiffs and opt-in Plaintiffs did not transmit data across state lines. Notably, as stated above, Bloomberg's "rebuttal expert" Daniel Steinbrook failed to study or offer any opinion on that issue.

Bloomberg's single case citation provides no support for its argument. In that case, the court found that an expert should have been disqualified under *both* Rules 702 and 403 because the expert witness evaluated and offered opinions on the credibility of other witnesses' in-court trial testimony, which would not "'assist the trier of fact,' but rather 'undertakes to tell the jury what result to reach,' and 'attempts to substitute the expert's judgment for the jury's.'" *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). The court found that the witness "commented directly, under the guise of expert opinion, on the credibility of trial testimony from crucial fact witnesses" and "essentially instructed the jury as to an ultimate determination that was exclusively within [the jury's] province," which the Second Circuit "has consistently held" is inadmissible expert testimony. *Id.* This case has no bearing here. It certainly does not support Bloomberg's position, which merely asks the Court to strike evidence it disagrees with.

## CONCLUSION

For the reasons stated above, the Court should deny the motion.

Dated: May 1, 2024

Respectfully submitted,

By: */s/ Justin M. Swartz*
Justin M. Swartz
Michael C. Danna
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:    (212) 245-1000
Email:   jms@outtengolden.com
Email:   mdanna@outtengolden.com

12

Hannah Cole-Chu*
Theanne Liu Svedman
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Tel.:  (202) 847-4400
Email: hcolechu@outtengolden.com
Email: tliusvedman@outtengolden.com

Michael Palitz*
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, NY 10022
Tel.:  (800) 616-4000
Email: mpalitz@shavitzlaw.com

Gregg I Shavitz*
Tamra Givens*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd., Suite 285
Boca Raton, FL 33431
Tel.:  (561) 447-8888
Email: gshavitz@shavitzlaw.com
Email: tgivens@shavitzlaw.com

*Attorneys for Plaintiffs, the Collective, and the Putative Classes*

*Admitted *pro hac vice*

13