UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DONNA WOOD, et al., individually and
on behalf of all others similarly situated,

               Plaintiffs,

    -v-                                      No.  1:20-CV-2489-LTS-GWG

MIKE BLOOMBERG 2020, INC.,

               Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

       Plaintiffs Donna Wood, Caelan Doherty, Max Goldstein, Bridget Logan, James Kyle Newman, Lakisha Watson-Moore, Tristan Angulo, Alexandra Marie Wheatley-Diaz, Robin Ceppos, and Nick Coker (together, "Plaintiffs") individually and on behalf of all others similarly situated, bring this collective and putative class action against Mike Bloomberg 2020, Inc. (the "Campaign" or the "Defendant"), asserting claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, et seq., and state labor laws.  (See docket entry no. 296 (the "Third Amended Complaint" or the "TAC").)[1]

       The case is before the Court on Plaintiffs' motion for class certification pursuant

---

[1]     The Third Amended Complaint also asserts state wage and hour law claims against the Campaign on behalf of Cheryl Baldwin, Jonathan Barrio, Desmond Batts, Garrett Beckenbaugh, Cochiese Bowers, Miles Ceplecha, Melinda Cirilo, Jane Conrad, Robert Cordova Jr., Christine Doczy, Rachel Douglas, Theresa Edwards, Eliza Fink, Jason Finkelstein, Ilse Mendez Fraga, Josh Fredrickson, Maria Gonzalez, Nathaniel Robert Groh, Brandi Harris, Peter Kamara, Mack Kennedy, Madison Oliver Mays, Patrick McHugh, Paul Monterosso, Rey Murphy, Frida Michelle Naranjo, Joseph Nestor, Luke Nicholas, Josephine Olinger, Alec Silvester, Daniel Smith, Chris Soth, Audra Tellez, Carlos Torres, Elliott Tricotti, Gloria Tyler, Jesse Weinberg, Clem Wright, Anoosh Yaraghchian, and Jesus Zamora, individually.

to Federal Rule of Civil Procedure 23.  (See docket entry no. 382 ("Plaintiffs' Motion").)

Specifically, Plaintiffs seek certification of the following seven classes:

(i)   all individuals employed as a Field Organizer by the Campaign in California between the period November 24, 2019, and March 31, 2020 ("California Class"), with Alexandra Marie Wheatley-Diaz, Robin Ceppos, and Nicholas Coker appointed as Class Representatives of the California Class;

(ii)  all individuals employed as a Field Organizer by the Campaign in New York between the period November 24, 2019, and March 31, 2020 ("New York Class"), with Max Goldstein appointed as Class Representative of the New York Class;

(iii) all individuals employed as a Field Organizer by the Campaign in Illinois between the period November 24, 2019, and March 31, 2020 ("Illinois Class"), with Caelan Doherty appointed as Class Representative of the Illinois Class;

(iv)  all individuals employed as a Field Organizer by the Campaign in North Carolina between the period November 24, 2019, and March 31, 2020 ("North Carolina Class"), with James Kyle Newman appointed as the Class Representative of the North Carolina Class;

(v)   all individuals employed as a Field Organizer by the Campaign in Michigan between the period November 24, 2019, and March 31, 2020 ("Michigan Class"), with Lakisha Watson-Moore appointed as the Class Representative of the Michigan Class;

(vi)  all individuals employed as a Field Organizer by the Campaign in Wisconsin between the period November 24, 2019, and March 31, 2020 ("Wisconsin Class"), with Tristan Angulo appointed as Class Representative of the Wisconsin Class; and

(vii) all individuals employed as a Field Organizer by the Campaign in Minnesota between the period November 24, 2019, and March 31, 2020 (Minnesota Class"), with Bridget Logan appointed as Class Representative of the Minnesota Class.

Plaintiffs also seek the appointment of Outten & Golden LLP and Shavitz Law Group, P.A. as

class counsel for the seven classes.  The Campaign has moved to decertify the FLSA collective.

(Docket entry no. 432 ("Defendant's Motion").)

The Court has jurisdiction of Plaintiffs' FLSA claim pursuant to 28 U.S.C.

sections 1331 and 1337 and 29 U.S.C. section 216(b), and has supplemental jurisdiction of the

Plaintiffs' state law claims pursuant to 28 U.S.C. section 1367.  The Court also has jurisdiction

of Plaintiffs' state law claims pursuant to 28 U.S.C. section 1332(d).

   The Court has reviewed and considered thoroughly all of the parties' submissions in connection with the Motions.  For the following reasons, Plaintiffs' motion for class certification is granted, and Defendant's motion to decertify the FLSA collective is denied.

BACKGROUND

Factual Background[2]

   In November 2019, Michael Bloomberg announced his candidacy for President of the United States.  Plaintiffs worked as Field Organizers ("FOs"), the "lowest level job title in [the Campaign's] organizational structure," with a uniform job description emphasizing "the same primary job duties: contacting potential voters and volunteers by phone or in person to promote Michael Bloomberg's candidacy for President."  (Docket entry no. 386 ("Pl. Cert. Mem.") at 1, 3).  In other words, "Plaintiffs were entrusted with achieving the Campaign's ultimate objective – persuading voters around the country to support Mr. Bloomberg's candidacy."  (Docket entry no. 405 ("Def. Cert. Mem.") at 1.)

---

[2]   For the purposes of this Background summary, the Court relies on the Third Amended Complaint (docket entry no. 296), the parties' respective briefs (docket entries no. 386 ("Pl. Cert. Mem."), 405 ("Def. Cert. Mem."), 420 ("Cert. Reply"), 433 ("Def. Decert. Mem."), 438 ("Pl. Decert. Mem."), 467 ("Decert. Reply")) and the exhibits attached to each of the parties' declarations submitted in support of their respective positions (docket entries no. 387, 406, 421, 434, 439).  Citations to the parties' respective briefs incorporate by reference the parties' citations to the underlying evidentiary submissions.  In determining a Rule 23 motion for class certification, the Court must "assess all of the relevant evidence admitted at the class certification stage" and weigh "conflicting evidence" where it exists.  Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 155 (S.D.N.Y. 2008) (citation omitted); see also Julian v. MetLife, Inc., No. 17-CV-957-AJN, 2021 WL 3887763, at *2 (S.D.N.Y. Aug. 31, 2021) (citation omitted) (considering defendant's motion to decertify the conditional FLSA collective "on a fuller record" after "the completion of discovery").

The Campaign maintained a uniform "exempt" classification for Plaintiffs and all other FOs nationwide with respect to overtime pay eligibility, with no variation between individuals and offices.  (Pl. Cert. Mem.  at 1.)  The Campaign classified all FOs as exempt from overtime pay under the FLSA and applicable state laws.  (Def. Cert. Mem. at 3.)  The Campaign's Rule 30(b)(6) witness, Daniel Kanninen, testified that no individualized analysis was done of any particular FO's job duties to make that classification decision.  (Docket entry no. 387-49 ("Kanninen Tr.") at 47:10-49:2.)  Mr. Kanninen, as well as Plaintiffs, also testified that FOs were expected to work—and did work—well over 40 hours each week, and none received overtime pay.  (Kanninen Tr. at 110:15-19, 192:9-93:15; see also Pl. Cert. Mem. at 20.)

The parties agree that Plaintiffs and the other FOs were subject to the same exemption and overtime pay policies (see Pl. Cert. Mem. at 20-21; Def. Cert. Mem. at 3). However, they disagree as to the propriety of the exemption classification.  While Plaintiffs assert that all FOs nationwide performed the same primary job duty of "contacting potential voters and volunteers by phone or door-to-door" to promote Michael Bloomberg's candidacy for President, as described in the Campaign's uniform job description and other documents (Pl. Cert. Mem. at 1), the Campaign contends that it "unquestionably expected FOs to carry out exempt work[,]" and that individual FOs used their discretion to carry out "the Campaign's ultimate goal . . . to persuade voters to support Mr. Bloomberg in the 2020 election" by "different means" (Def. Cert. Mem. at 6, 10).

Plaintiffs have proffered evidence that FOs' primary duty—contacting potential voters and volunteers by phone or in person to promote Michael Bloomberg's candidacy for President—involved very little discretion.  They cite testimony that the Campaign (1) "determined who each Field Organizer must call and connected them using an auto-dialer

system or with a call sheet" (Pl. Cert. Mem. at 3); (2) "dictated what each Field Organizer would say, requiring a common script and set of talking points" (id. at 3-4); (3) "instructed them which general areas or neighborhoods to go to, and gave them all the same script and talking points" for door-to-door canvassing (id. at 4); and (4) "occasionally required [them] to connect with potential voters or volunteers in-person by attending Bloomberg's pre-planned events such as volunteer phone banks, volunteer canvassing, or occasionally by planning such an event" (id. at 6). Plaintiffs characterize these duties as "routine, repetitive work" and emphasize that "they had no role in setting or planning Campaign policy, strategy, operations, budgets, or any other organizational area" and "no role in hiring, firing, supervising, or disciplining other campaign employees." (Id. at 1.) Plaintiffs maintain that the Campaign "dictated how Field Organizers performed their jobs by setting daily and weekly goals and metrics, including the numbers of voters called, doors knocked, and volunteers recruited" and "directly supervised the work of Field Organizers through its Regional Organizing Directors [('RODs')]." (Id. at 10, 12.)

According to the Campaign, however, FOs' primary duties varied from one another in important ways. First, the Campaign cites evidence that its "operations were highly decentralized" and "primarily functioned through separate state organizations . . . subdivided into numerous regional field offices." (Def. Cert. Mem. at 4.) The regional field offices were managed by one or more RODs, who "operated differently and communicated different expectations to the FOs they supervised." (Id. at 4-5.) Second, the Campaign notes that "[e]ach FO was assigned their own, separate 'turf,' typically comprised of a set of towns or neighborhoods, in which the FO was primarily responsible for representing the Campaign and building and administering the Campaign's field infrastructure." (Id. at 5.) Differences among turfs "in terms of political affiliation, demographics, urban development, industries, [and]

highest priority issues" could, the Campaign argues, lead to disparate day-to-day responsibilities and "directly affected how an FO engaged voters and volunteers in that area." (Id. at 6.) Third, the Campaign insists that all FOs were "responsible for the recruitment, training, and management of volunteers, but how regularly FOs engaged in this duty, and to what extent they used discretion and judgment in doing so, varied for each individual." (Id. at 9.) For example, while the proposed California representative, Mr. Coker, "explained that he chose not to involve himself at all with volunteer recruitment, other FOs "dedicated significant time to recruiting dozens (or more) volunteers, training the volunteers to leverage their skillsets and on voter persuasion techniques and strategy." (Id.) Fourth, and similarly, the Campaign asserts that, while "the Campaign expected FOs to plan and execute events on behalf of the Campaign," and "[m]any FOs fulfilled this duty as expected[,] . . . other FOs testified that they had minimal or no role in planning events." (Id. at 9-10.)

Procedural History

Plaintiffs commenced this lawsuit on March 23, 2020, asserting wage and hour claims under the FLSA. (See docket entry no. 1.) Shortly thereafter, on April 17, 2020, Plaintiffs moved for conditional certification of a collective pursuant to 29 U.S.C. section 216(b). (Docket entry no. 63.) On September 3, 2020, Judge Gorenstein granted Plaintiffs request. (Docket entry no. 148.) In so doing, Judge Gorenstein held that Plaintiffs "easily" met their burden to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." (Id. at 8 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).)

Discussion

Class Certification

    Class certification is appropriate if the following four factors are met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Furthermore, "[f]or a class seeking damages, there must also be questions of law or fact common to class members that predominate over any questions affecting only individual members, and the class action must be superior to other available methods."  Fed. R. Civ. P. 23(b)(3).  "Although the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, '[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court.'"  Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (quoting Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012)).  "The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence."  Id.  "Doubts concerning the propriety of class certification should be resolved in favor of class certification."  Long v. HSBC USA Inc., No. 14-CV-6233-HBP, 2015 WL 5444651, at *6 (S.D.N.Y. Sept. 11, 2015).

   Numerosity

    Rule 23(a)(1) requires Plaintiff to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.

1995).  Here, in total, there are more than 600 members of the proposed classes: 205 individuals

in the California class; 104 individuals in the New York class; 77 individuals in the Illinois class;

86 individuals in the North Carolina class; 67 individuals in the Michigan class; 42 individuals in

the Wisconsin class; and 31 individuals in the Minnesota class.[3]  (Docket entry no. 387 ("Swartz

Decl.") ¶ 18.)  Therefore, there is no dispute that the numerosity requirement is satisfied.

Commonality

Rule 23(a) also demands the existence of questions of law or fact common to the

class.  The Supreme Court has made clear that "[c]ommonality requires the plaintiff to

demonstrate that the class members 'have suffered the same injury.'"  Wal-Mart Stores, Inc. v.

Dukes, 564 U.S. 338, 349-50 (2011) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157

(1982)).  A "common question" satisfying the commonality requirement "is one where the same

evidence will suffice for each member to make a prima facie showing or the issue is susceptible

to generalized, class-wide proof."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016).

"Even a single common legal or factual question will suffice" to establish commonality.  Jackson

---

[3]    Plaintiffs argue that numerosity is satisfied as to the Minnesota class because, "[w]hile
the proposed Minnesota class has fewer than 40 members, it would be highly inefficient
for the Court to require dozens of separate lawsuits, particularly here where the damages
per person are relatively low and it is unlikely that many of these individuals would be
able to bring their own suits."  (Pl. Cert. Mem. at 24 n. 64).  The Campaign does not
dispute numerosity as to this group.  When a proposed class falls in the "gray area"
between 21 and 40 members, courts generally "consider factors other than class size" in
assessing numerosity, including "judicial economy arising from the avoidance of a
multiplicity of actions, geographic dispersion of class members, financial resources of
class members, the ability of claimants to institute individual suits, and requests for
prospective injunctive relief which would involve future class members."  Grant v. New
York Times Co., 329 F.R.D. 27, 31 (S.D.N.Y. 2018) (quoting Robidoux v. Celani, 987
F.2d 931, 936 (2d Cir. 1993)).  Having considered the parties' positions and those factors,
the Court agrees that the Minnesota class satisfies the numerosity requirement.

v. Bloomberg, L.P., 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting Freeland v. AT&T Corp., 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

Plaintiffs identify the "common question" here as "whether [the Campaign] can establish its affirmative defense that the primary duties of Field Organizers make them either 'administrators,' whose primary duty is business administration (as opposed to production work), or 'executives,' whose primary duty is management." (Pl. Cert. Mem. at 24-25.) This affirmative defense relies on the same language as the affirmative defenses under the FLSA because the relevant state laws incorporate the same exceptions as federal law.[4] In order to establish that the administrative exemption applies to FOs, the Campaign must prove that their "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and their "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 510-11 (2d Cir.

---

[4]    See, e.g., Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 556 n.1 (2d Cir. 2012) ("Like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions as the FLSA.'" (quoting Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010))); Industrial Welfare Commission Wage Order No. 4-2001 §§ 1(A)(1)(e), 1(A)(2)(e) (expressly incorporating federal regulations for the administrative and executive exemption under California law); N.C. Gen. Stat. § 95-25.14(b)(4) (expressly incorporating FLSA exemptions under North Carolina law); Hecker v. Petco Animal Supplies, Inc., No. 16-CV-10857, 2017 U.S. Dist. LEXIS 87016, at *18 (N.D. Ill. June 7, 2017) ("Illinois's exemption mirrors the FLSA's."); Saginaw Firefighters Ass'n, Local 422, etc. v. Saginaw, 137 Mich. App. 625, 632, 357 N.W.2d 908, 911 (Mich. 1984) ("[T]he Michigan [minimum wage] law obviously parallels the federal act."); Cruz v. Lawson Software, Inc., 764 F. Supp. 2d 1050, 1070 (D. Minn. 2011) ("MFLSA's administrative exemption is analogous to the FLSA's administrative exemption."); Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1029-30 (D. Minn. 2007) (finding MFLSA executive exemption claims to be "substantially parallel to the FLSA claims"); Wis. Admin. Code DWD § 274.04 (Wisconsin exemptions are "interpreted in such a manner as to be consistent with the Federal Fair Labor Standards Act and the Code of Federal Regulations as amended").

2020) (quoting 29 C.F.R. § 541.200(a)).  The question of "whether the employee's primary duty is directly related to management" requires "consideration of whether the employee 'perform[s] work directly related to assisting with the running or servicing of the business, as distinguished . . . from working on a manufacturing production line or selling a product in a retail or service establishment.'"  Id. (quoting 29 C.F.R. § 541.201(a)) (alterations in original).  In order to establish that the executive exemption applies to FOs, the Campaign must prove that their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof," they "customarily and regularly direct[] the work of two or more other employees," and "they 'ha[ve] the authority to hire or fire other employees or' . . .  their 'suggestions and recommendations' on personnel decisions 'are given particular weight.'"  Id. (quoting 29 C.F.R. § 541.100(a)).

In other words, "the commonality question before this Court at the class certification stage is whether the record evidence demonstrates a likelihood that common answers" to the question of whether FOs were properly exempted under at least one of these exemptions to the relevant state labor laws "will be determined via a class approach, or conversely, whether differences among [FOs' primary duties] will necessarily generate individualized, rather than common, determinations as this litigation moves forward."  Jacob v. Duane Reade, Inc., 289 F.R.D. 408, 414-15, 419 (S.D.N.Y. 2013), aff'd, 602 F. App'x 3, 6, 7 (2d Cir. Feb. 10, 2015).  Courts in this Circuit routinely find commonality in cases like this one, where a class of employees that is subject to a uniform policy of exempt status and a uniform description of job duties proffers evidence of largely consistent job duties.  See, e.g., id.; Long, 2015 WL 5444651, at *7 (collecting cases).

So too here.  The parties agree, and the record reflects, that FOs spent the majority of their time contacting voters through phone calls and door-to-door canvassing.  (See docket entry no. 420 ("Cert. Reply") at 2; see also Def. Cert. Mem. at 8.)  The Campaign concedes that FOs relied on a Bloomberg-provided script in their interactions with voters and that the Campaign generated voter lists and used an auto-dialer system to connect FOs automatically to the voters they spoke to on the phone.  (Reply at 2.)  While there is evidence that some FOs shared a "personal story" with the voters they contacted while others adhered to the provided script verbatim (see Def. Cert. Mem. at 15-16), evidence showing "some variations among daily tasks" is not sufficient to defeat commonality (Youngblood v. Family Dollar Stores, Inc., No. 09-CV-3176, 2011 WL 4597555, at *3 (S.D.N.Y. Oct. 4, 2011)).[5]

The Campaign's argument "that exemption cases often require highly individualized inquiries that preclude class certification" (Def. Cert. Mem. at 10) does not defeat commonality either.  The Campaign asserts in this connection that it "unquestionably expected FOs to carry out exempt work[,]" so each individual plaintiff will have "[t]o prove they were misclassified as exempt administrative professionals" by providing individual evidence of "the job duties actually assigned and carried out day to day" by that individual plaintiff.  (Id.)  To support this contention, the Campaign points to Julian v. MetLife, Inc., No. 17-CV-957-AJN, 2021 WL 3887763 (S.D.N.Y. Aug. 31, 2021), leave to appeal denied, 2021 WL 7451180 (2d Cir. Dec. 21, 2021), an FLSA case in which the court held that a determination of exempt status

---

[5]    The Campaign also emphasizes evidence that FOs' day-to-day duties varied to the extent that some FOs also spent time recruiting and training volunteers and organizing events. (Def. Cert. Mem. at 16-19.)  However, because there is no evidence to suggest that any FOs spent the majority of their time engaging in these activities, this evidence does not suggest that FOs' primary duties varied enough to defeat the requisite showing of commonality at this class certification stage.

required an individualized inquiry into the "specifics of Plaintiff's job" and into the "specifics of each allegedly misclassified employee whom Plaintiff is seeking to join." Id. at *4 (citations omitted). For this reason, the Julian court found that the commonality requirement had not been satisfied and denied class certification. Id. The Campaign's reliance on Julian at this juncture, however, is misplaced. In Julian, which had proceeded through discovery to parallel summary judgment and class certification motion practice, the court found that the record showed that the relevant employee position generally required the use of discretion as a matter of policy, but that the exempt status of any particular individual holding that position turned on the individual's actual performance of the job. Id. at *3. By contrast, at this stage of the instant litigation, the Court has not determined, and the Campaign has not definitively established, that the FO job position was generally exempt or that any individual named plaintiff was or was not exempt. Indeed, such a determination would be inappropriate at this juncture. See Flores, 284 F.R.D. at 122 ("The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis. . . ."). This is the case even though summary judgment briefing is underway. Cuzco v. Orion Builders, Inc., 262 F.R.D. 325, 335-36 (S.D.N.Y. 2009) (emphasizing that "[a] court's decision on the merits . . . should ordinarily not occur before or simultaneous with a decision on class certification" because determining "[c]lass action status" will "clarify who will be bound by the decision" (citations omitted)); (see also docket entry no. 482 ("April 22, 2024, Order") at 3 ("In its discretion, the Court will adhere to this 'traditional route' and hold the parties' cross motions for summary judgment in abeyance until the motion for class certification has been resolved.")).

Therefore, the commonality requirement is satisfied, based on the common question of exempt status.

Typicality

Rule 23(a)(3)'s typicality requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux, 987 F.2d at 936). Typicality focuses on "the fairness of allowing an entire class's claim to rise or fall with the fate of the named representative's claims." Lopez v. Setauket Car Wash & Detail Ctr., 314 F.R.D. 26, 29 (E.D.N.Y. 2016) (quoting Indergit v. Rite Aid Corp., 293 F.R.D. 632, 652 (S.D.N.Y. 2013)). The claims of the named plaintiff and the class "only need to share the same essential characteristics, and need not be identical." Dial Corp. v. News Corp., 314 F.R.D. 108, 113 (S.D.N.Y. 2015) (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 155 (S.D.N.Y. 2002)). "[T]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." In re Smith Barney Transfer Agent Litig., 290 F.R.D. 42, 46 (S.D.N.Y. 2013) (quoting Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 40 (E.D.N.Y. 2008)). However, class certification should be denied where "the class representative is subject to a defense that would 'pose an unacceptable risk of drawing attention away from the central issues in the litigation.'" Trawinski v. KPMG LLP, No. 11-CV-2978-PAC, 2012 WL 6758059, at *7 (S.D.N.Y. Dec. 21, 2012) (citation omitted).

Here, the proposed class representatives' claims are typical of the claims of the proposed class. First, Plaintiffs have proffered sufficient evidence indicating that their claims and those of their fellow proposed class members arise from the same factual framework: that all FOs who worked for the Campaign shared the same primary job duties and frequently worked long hours without overtime pay due to the Campaign's blanket exemption policy. (Pl. Cert.

Mem. at 29.)  Second, as discussed above in the commonality analysis, Plaintiffs will raise the same legal argument as their fellow proposed class members: that all FOs were misclassified as exempt from the relevant state labor laws.  This is sufficient to satisfy typicality.  See, e.g., Jacob, 289 F.R.D. at 417 ("It is axiomatic that '[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'" (quoting Robidoux, 987 F.2d at 936-37)).

The fact that two proposed class representatives had other demands on their time while they worked for the Campaign—i.e., that Ms. Wheatley-Diaz simultaneously worked a second job and Ms. Doherty took a full courseload as a university student—does not defeat typicality.  While the Campaign may argue that these time commitments undermine Ms. Wheatley-Diaz's and Ms. Doherty's allegations of working long hours for the Campaign, this "is essentially an argument about the amount of hours they worked, which goes to the issue of damages . . . [and] differences among class members with regard to the amount of their individual damages do not constitute 'unique defenses' that defeat typicality."  Rivera v. Harvest Bakery Inc., 312 F.R.D. 254, 273 (E.D.N.Y. 2016) (citation omitted) (finding typicality even though named plaintiffs "worked a second job during several months of their employment").

Therefore, the typicality requirement is satisfied here.

Adequacy

Under Rule 23(a)(4), adequacy "is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs."  Hill v. City of N.Y., 136 F. Supp. 3d 304, 356 (E.D.N.Y. Sept. 28, 2015) (quoting Jackson v.

Bloomberg, L.P., 298 F.R.D. 152, 164 (S.D.N.Y. 2014)).  The Court considers each prong of the adequacy requirement in turn.

### Qualifications of Plaintiffs' Counsel

Outten & Golden LLP ("O&G") and Shavitz Law Group, P.A. ("SLG") (collectively, "Plaintiff's Counsel") are adequate class counsel.  Plaintiffs' Counsel have already performed significant work and committed substantial resources to Plaintiffs' case through four years of discovery and motion practice.  (See Swartz Decl. ¶ 19.)  Further, both O&G and SLG are regularly appointed as class counsel in overtime actions due to their "extensive experience prosecuting and settling nationwide wage and hour class and collective actions."  Clem v. Keybank, N.A., No. 13-CV-789-JCF, 2014 WL 1265909, at *5 (S.D.N.Y. Mar. 27, 2014) (collecting cases).  Therefore, Plaintiffs have satisfied the first prong of the adequacy requirement.

### Interests of Named Plaintiffs

Plaintiffs also argue that they are adequate class representatives.  Class representatives are adequate when they "are prepared to prosecute fully the action and have no known conflicts with any class member."  Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 253 (2d Cir. 2011).  There is no dispute that Plaintiffs have fully participated in the litigation of this case since 2020, are aware of the claims, understand their obligations as class representatives, and have no known conflict with any class member.  Nonetheless, the Campaign asserts that Plaintiffs are inadequate due to individual issues related to their credibility and memory.

Credibility Concerns

The Campaign has raised questions regarding the honesty—and therefore, also the adequacy—of Ms. Wheatley-Diaz, Mr. Coker, Ms. Doherty, and Mr. Angulo.  A putative class representative may demonstrate "credibility issues" that are "sufficiently serious as to render him an inadequate representative."  Fishon v. Peloton Interactive, Inc., No. 19-CV-11711-LJL, 2022 WL 179771, at *11 (S.D.N.Y. Jan. 19, 2022).  Questions of credibility, however, "will not ordinarily place the interests of [named] representatives in conflict with other class members."  Diaz v. Residential Credit Sols., Inc., 299 F.R.D. 16, 21 (E.D.N.Y. 2014) (citations omitted).  Instead, "a proposed class representative's interest may only be said to be in conflict with those other class members where the class representative is vulnerable to unique defenses and sharp attacks relevant to the issues in the litigation."  Stinson v. City of N.Y., 282 F.R.D. 360, 373 (S.D.N.Y. 2012) (citation omitted).  Here, none of the Campaign's attacks on the named Plaintiffs' credibility is sufficient to render them inadequate class representatives.

The Campaign first argues that Ms. Wheatley-Diaz and Ms. Doherty were "apparently dishonest" and "patent[ly] dishonest[]" in their depositions because their testimony regarding their attention to other responsibilities while working for the Campaign "contradict[ed]" their allegations that they worked overtime.  (Def. Cert. Mem. at 31-34.)  The Campaign further contrasts Ms. Doherty's testimony that she would skip class, or multitask during class, to work on the Campaign, with unsworn emails from her professors regarding her attendance and participation grades in the classes she took during the same semester that she worked for the Campaign.  (Id. at 33-34.)  While the Campaign may find it "dubious" that Ms. Wheatley-Diaz and Ms. Doherty could have worked up to 70 hours per week while juggling other work and school responsibilities (id. at 32), those doubts are not "sufficiently serious" to

render them inadequate to represent the class.  Cf. Fishon, 2022 WL 179771, at *11 (finding that a proposed class representative was inadequate because he "repeatedly impersonated an attorney in correspondence with the very company he is now suing on behalf of a class only months before initiating this lawsuit"); Cromer Fin. Ltd. v. Berger, 205 F.R.D. 113, 124-25 (S.D.N.Y. 2001) (rejecting argument that "contradictions" in class representative depositions made him "so lacking in credibility that [he was] likely to harm [the] case").

The Campaign further insists that Mr. Coker's and Mr. Angulo's prior criminal convictions render them inadequate to serve as class representatives.[6]  However, the Campaign's arguments fail to show that "a clear nexus existed between the conviction and the class claims." Jones v. Ford Motor Credit Co., No. 00-cv-8330-RJH-KNF, 2005 WL 743213, at *19 (S.D.N.Y. Mar. 31, 2005) (discussing a case where, because the "proposed class representative was previously convicted under Section 10(b) of the Securities and Exchange Act of 1934, he was not an adequate representative for subsequent claims brought thereunder").  This conclusion is further bolstered by the fact that Mr. Coker's and Mr. Angulo's testimony about their primary duties as FOs is consistent with other witness testimony and documentary evidence.  (See docket entry 403-2 ("Angulo Dep." at 102-104; docket entry no. 403-4 ("Coker Dep.") at 58-59.) Therefore, the Court declines to find that Mr. Coker and Mr. Angulo are inadequate class representatives based on the credibility issues identified by the Campaign.

---

[6]    The Campaign also highlights that Mr. Coker admitted to lying on his resume at his deposition.  (Def. Cert. Mem. at 33.)  However, Courts in this Circuit have refused to find a class representative inadequate due to "puffery" on a resume.  See Cuevas v. Citizens Fin. Grp., Inc., 283 F.R.D. 95, 100-01 (E.D.N.Y. 2012), vacated on other grounds, 526 Fed. App'x. 19 (2d. Cir. 2013).

Memory Concerns

The Campaign also argues that "[Ms.] Watson-Moore's inability to recall even basic facts about her employment with the Campaign undermines her ability to serve as the sole representative of the proposed MI class." (Def. Mem. at 35.) This attack is blatantly contradicted by Ms. Watson-Moore's deposition testimony, in which she provided answers regarding her familiarity with the complaint and its underlying factual allegations, her role as a class representative, and her job duties. (See docket entry no. 416-62 at 184:25-185:25, 74:17-24, 64:14-66:21, 89:2-90:22, 96:25-98:18, 143:12-25, 65:18-66:21, 90:16-22, 97:8-98:3, 175:14-176:7, 73:9-18, 141:21-143:3, 140:15-141:11; see also docket entry no. 421-4 at 187:15-188:7.) In any event, a proposed class representative's "imperfect recollection" is not sufficient to render her inadequate. In re Frontier Ins. Grp., Inc., Sec. Litig., 172 F.R.D. 31, 41 (E.D.N.Y. 1997).[7]

Therefore, both prongs of the adequacy requirement have been satisfied as to each challenged proposed class representative.

---

[7]    The Campaign cites Catzin v. Thank You & Good Luck Corp., No. 15-CV-7109-KBF, 2016 WL 11779675 (S.D.N.Y. Oct. 3, 2016) in support of its argument that memory issues may render a proposed class representative inadequate. (Def. Cert. Mem. at 35.) That case is inapposite because its key holding was that a particular proposed class representative was inadequate because she demonstrated no interest in or understanding of the claims of others whom she sought to represent until, apparently upon the instructions of her attorney, she asserted that she was willing to represent others. Catzin, 2016 WL 11779675, at *5. Memory does not appear to have been the issue in that case and in any event, as explained above, Plaintiff Watson-Moore has demonstrated a sufficient recollection of pertinent facts. Ms. Watson-Moore, furthermore, confirmed at her deposition that she understands her role as a proposed class representative. (Docket entry no. 421-4 at 187:15-188:7.)

Predominance

To satisfy the predominance requirement, Plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members."  FED. R. CIV. P. 23(b)(3).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues" (Tyson Foods, 577 U.S. at 453 (internal quotation marks omitted)), and requires the Court to "assess (1) 'the elements of the claims and defenses to be litigated,' (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief,' and (3) 'whether the common issues can profitably be tried on a class[-]wide basis, or whether they will be overwhelmed by individual issues" (Scott, 954 F.3d at 512 (quoting Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 140 (2d Cir. 2015))).  Because predominance requires that the common issues be "more substantial than the issues subject only to individualized proof," the predominance test under Rule 23(b) is "more demanding" than the test for commonality under Rule 23(a).  Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

As an initial matter, there is no real dispute that "the elements of the claims and defenses to be litigated" are consistent across the proposed class.  Scott, 954 F.3d at 512.  Put simply, the entire class will argue that their primary duties (and overtime work hours) render them non-exempt employees owed overtime under state and federal labor laws.  (Pl. Cert. Mem. at 1 ("Just as Bloomberg made one single decision to determine that the Field Organizer position would be exempt nationwide, without any individualized analysis, so too can a jury determine whether Bloomberg has met its burden to prove that the decision was lawful.").)  Likewise,

Bloomberg's defense—that the FOs fell into one of two exemptions to the overtime law—is the same for all members of the class.  (<u>See</u> Def. Cert. Mem. at 1 ("The duties that the FOs were asked to perform are quintessentially exempt. . . .").)

However, the parties dispute the question of whether generalized evidence—as opposed to individualized proof—will be sufficient to establish class members' entitlement to relief.  Plaintiffs point to "generalized evidence" that "could be offered to prove those elements on a class-wide basis."  <u>Scott</u>, 954 F.3d at 512.  The proffered "common evidence" that Plaintiffs maintain "will drive resolution of the merits" includes the Campaign's "corporate testimony, a uniform job description, a common exemption policy, the testimony of forty-five Plaintiffs and class members as to their uniform duties, and additional documents showing [the Campaign's] centralized control of Field Organizers' work such as common scripts and strict metrics."  (Pl. Cert. Mem. at 32-33.)    The Campaign, in contrast, argues that "[t]he classification analysis will require individual testimony and evidence to establish each proposed class member's specific job duties as well as the degree to which they exercised discretion and independent judgment in performing those duties."  (Def. Cert. Mem. at 26.)  To bolster this argument, the Campaign points to testimony from FOs indicating that, to varying degrees, FOs exercised discretion over their own day-to-day outreach, organized and managed events, and tailored the talking points. (<u>Id.</u>) ("Each region warranted its own strategic considerations in optimizing outreach to the constituency; each ROD had different philosophies about how best to manage FOs and how best to promote the Campaign; and each FO brought his or her own unique experiences to the role and was afforded considerable discretion in bringing that experience to bear.").)  The Campaign also notes that "myriad other individualized issues"—such as (1) "evidence that at least some of the absent class members were actively campaigning for candidates other than Mr. Bloomberg,

while at the same time performing services for the Campaign" and (2) a text message indicating that FOs in the Orange County, CA field offices "didn't work the long hours" that other FOs claim to have worked—are sufficient to defeat predominance.  (Id. at 26-27).[8]

While the Campaign highlights examples of how the FOs' experiences may not have been identical, its proffers are insufficient to overcome Plaintiffs' showing of predominance for certification purposes.  Other cases involving the misclassification of nonexempt employees are instructive here: courts in this Circuit have made clear that, so long as there is evidence that proposed class members' primary job duties are "largely similar," the predominance requirement is satisfied.  Perez v. Allstate Ins. Co., No. 11-CV-1812, 2014 WL 4635745, at *19 (E.D.N.Y. Sept. 16, 2014).  This is because, "[a]lthough the exemption inquiry involves determining the duties performed by each employee, the 'evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria . . . will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class.'"  Id. (quoting Myers v. Hertz Corp., 624 F.3d 537, 549 (2d Cir. 2010)); see also Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 166 (S.D.N.Y. 2014) (finding that minor differences in duties cannot defeat predominance where all class members "have the same primary responsibility"); Jacob, 289 F.R.D. at 421-22 (holding that predominance was satisfied notwithstanding some slight variations among class members because of significant common evidence of similar duties).  This logic applies with equal force to Plaintiffs' case.  The

---

[8]    The Campaign, pointing to testimony that some FOs adhered closely to campaign-provided scripts in making telephone calls and carrying out door-to-door encounters rather than adding personal views or anecdotes, also argues that Plaintiffs are attempting to "render themselves nonexempt by refusing to do the job they were supposed to do."  (Def. Cert. Mem. at 27.)  This kind of attack is not relevant to the predominance analysis because it does not speak to the key question of whether Plaintiffs have proffered sufficient evidence that FOs' primary job duties were largely similar.

Campaign has pointed out different ways in which FOs appear to have performed their job functions, but the preponderance of the evidence indicates that FOs "spent the overwhelming majority of their time contacting voters and potential volunteers through phone calls and door-to-door canvassing."  (Cert. Reply at 2.)

For these reasons, Plaintiffs have established by a preponderance of the evidence that "the common issues can profitably be tried on a class[-]wide basis" and that these common issues will not be "overwhelmed by individual issues."  Scott, 954 F.3d at 512.  Therefore, the Court finds that the predominance requirement has been satisfied.

Superiority

Rule 23(b)(3) requires courts to determine "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  In determining whether the superiority requirement is met, the Court may consider the following non-exclusive list of relevant factors: "the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action."  Id.

Plaintiffs have satisfied the superiority requirement for class certification here. "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy" and "the damages suffered are small in relation to the expense and burden of individual litigation."  Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014).  Here, the potential class members are aggrieved by the same policy—the uniform exemption of FOs from overtime wages.  Because their legal claims are identical, this case is

unlikely to present manageability problems.  See Youngblood, 2011 WL 4597555, at *6.

Furthermore, the Campaign does not dispute Plaintiffs' proffer that each proposed class

member's individual damages would be overwhelmed by the cost of litigating the claims

individually.  (Pl. Mem. at 23.)  Class actions "facilitate the redress of claims where the costs of

bringing individual actions outweigh the expected recovery" (In re U.S. FoodServ. Pricing Litig.,

729 F.3d 108, 130 (2d Cir. 2013)); here, class certification is a superior mechanism for managing

the claims of the FOs.

        The Campaign's arguments to the contrary are unavailing.  First, the Campaign

reiterates its argument that class treatment would be inappropriate because "[t]he predominance

of individual issues means that the class action device offers no efficiency with respect to any of

the proposed classes, and it also threatens to resolve claims of absent class members without

permitting them – or the Campaign – to present evidence regarding their individual, potentially

dispositive circumstances."  (Def. Cert. Mem. at 28.)  Because individual issues do not

predominate, as explained above, this argument is not sufficient to warrant denial of class

certification.  The Court is mindful that it "has great flexibility in addressing developments as to

individual issues that may arise as the class proceeding progresses."  Enea v. Bloomberg, L.P.,

No. 12-CV-4656-GBD-FM, 2014 WL 1044027, at *9 (S.D.N.Y. Mar. 17, 2014).  The

Campaign's second argument—that Plaintiffs have failed to carry their burden of showing

superiority by failing to submit a formal trial plan (Def. Cert. Mem. at 28-29)—is similarly

unpersuasive.  In this Circuit, "there is no general rule which requires a trial plan as an essential

element of the superiority requirement."  Ruzhinskaya v. Healthport Techs., LLC, 311 F.R.D. 87,

108 (S.D.N.Y. 2015) (finding superiority where "[n]o potential class member has displayed any

interest in bringing an individual lawsuit[,] . . . [no] potential class member ever previously

brought such a lawsuit, [and] the costs of bringing this lawsuit would be prohibitive for any single class member or even a small group of them" (citations omitted)).

Therefore, the Court finds that Plaintiffs have met their burden with respect to the superiority requirement, as well as with respect to each of the other Rule 23(a) and relevant Rule 23(b) factors.

Decertification of the FLSA Collective

The Second Circuit has endorsed a "two-step process" for treatment of a proposed collective action: "At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. . . . At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2015) (citations omitted). Plaintiffs cleared the bar of step one when Judge Gorenstein granted certification of the conditional collective. (Docket entry no. 148.)

Courts in this Circuit have observed, at step two, that "[t]he standards for certifying a collective action are more lenient than those under Federal Rule of Civil Procedure 23. . . ." Pino v. Harris Water Main & Sewer Contrs. Inc., No. 17-CV-5910-KAM-RER, 2020 WL 5708889, *3 (E.D.N.Y. Sept. 23, 2020). The FLSA establishes a "right" to proceed collectively so long as the named plaintiffs and opt-in plaintiffs are "similarly situated[,]" and the Second Circuit has held that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott, 954 F.3d at 515-16. "That is, party plaintiffs are similarly situated, and may proceed in a collective, to the

extent they share a similar issue of law or fact material to the disposition of their FLSA

claims[,]" and "dissimilarities in other respects should not defeat collective treatment."  Id. at

516 (quoting Campbell v. City of Los Angeles, 903 F.3d 1090, 1114 (9th Cir. 2018)).

        The Campaign paradoxically moves for decertification while conceding that

"[s]ome of the issues presented in this case unquestionably can be resolved on a collective basis,

as Scott directs."  (Decert. Reply at 5.)  Specifically, the Campaign argues that "any common

issues of law will be decided in the context of the Campaign's summary judgment motion."  (Id.

at 8.)  To support this argument, the Campaign collects out-of-circuit cases in which other courts

have "held that a collective action could not be maintained after resolving common issues on

summary judgment."  (Id. at 9 (citing Abe v. Va. Dep't of Env't Quality, No. 20-CV-270-JAG,

2021 WL 1845324, at *4 (E.D. Va. Apr. 6, 2021); Bailey v. New Age Distrib., Inc., No. 4:18-

CV-538-JM, 2019 WL 6249395, at *3 (E.D. Ark. Nov. 21, 2019), aff'd, 823 F. App'x 451 (8th

Cir. 2020).  Here, the pending summary judgment motions have not been fully briefed, let alone

resolved.  The Campaign also attempts to rely on—and, in the process, misconstrues the holdings

of—two inapposite cases in which courts in this Circuit declined defendants' invitation to

decertify a conditional FLSA collective prior to summary judgment.  For instance, while the

Campaign relies on the observation in Carollo v. United Cap. Corp., 528 F. Supp. 3d 37

(N.D.N.Y. 2021), that "there is no point in reaching a decision on class certification if the claims

the class would bring are fundamentally meritless," that case is inapposite because the court

ultimately certified a FLSA class prior to the completion of discovery and summary judgment

motion practice.  Id. at 49, 51.  Likewise, the Campaign cites Montiel-Flores v. JVK Operations

LTD, No. 19-CV-3005-JS-SIL, 2023 WL 5979209 (E.D.N.Y. Aug. 1, 2023) for the proposition

that "common questions 'are better addressed at summary judgment or at trial.'"  (Decert. Reply

at 15.)  In <u>Montiel-Flores</u>, however, the Court noted that the existence of questions that could be determined at summary judgment "underscore[s] the similarities among the FLSA Collective Plaintiffs as these common questions are material to the disposition of their FLSA claims" and, for that reason, denied defendant's motion for decertification.  2023 WL 5979209 at *6.  The logic of <u>Montiel-Flores</u> applies with equal force here.

The Campaign also argues that "<u>Scott</u> contemplates that the Court can bifurcate the issues, with similar dispositive issues decided collectively and other issues decided individually."  (Decert. Reply at 8.)  While <u>Scott</u> held that, "[i]f the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be <u>to that extent</u> appropriate, as it may <u>to that extent</u> facilitate the collective litigation of the party plaintiffs' claims[,]" <u>Scott</u>, 954 F.3d at 516 (emphasis in original), this guidance does not require decertification here.  In addition to the common issues that the Campaign has identified, Plaintiffs have pointed out other material legal and factual issues that render plaintiffs "similarly situated."  As the Court explained above in its discussion of the commonality requirement of Rule 23, Plaintiffs proffered evidence that all FOs were subject to a uniform exempt policy and a uniform description of job duties, and proffered evidence that they performed largely consistent job duties.  This is sufficient to demonstrate that they are sufficiently "similarly situated" to proceed as a FLSA collective.  <u>See, e.g.</u>, <u>Pino</u>, 2020 WL 5708889, at *6 (denying decertification where "deposition testimony established" that "plaintiffs performed the same type of work under the direction of the same supervisors and were compensated according to the same plan").

In sum, "[u]nder <u>Scott</u>, only a single common issue of law or fact related to the disposition of an FLSA claim is required to deny decertification."  <u>Dieffenbauch v. Rhinehart</u>

R.R. Constr., Inc., No. 17-CV-1180-LEK, 2021 WL 365850, at *4 (N.D.N.Y. Feb. 3, 2021).  The Campaign's concession that "[s]ome of the issues presented in this case unquestionably can be resolved on a collective basis, as Scott directs" (Decert. Reply at 5) is thus fatal to their motion for class certification, notwithstanding the Campaign's proffers concerning differences among plaintiffs.  See Scott, 954 F.3d at 515.  This conclusion is bolstered by the Court's finding, explained above, that Plaintiffs have established commonality.  See id. at 521 (directing district court to "take into account its conclusion with respect to commonality" in its assessment of whether plaintiffs were "similarly situated" on remand).  Therefore, the Campaign's motion is denied.

### CONCLUSION

For the foregoing reasons Plaintiffs' Motion for Class Certification is granted, and Defendant's Motion to Decertify the FLSA Collective is denied.  The Court hereby certifies the following classes:

(i)     all individuals employed as a Field Organizer by the Campaign in California between the period November 24, 2019, and March 31, 2020 ("California Class");

(ii)     all individuals employed as a Field Organizer by the Campaign in New York between the period November 24, 2019, and March 31, 2020 ("New York Class");

(iii)     all individuals employed as a Field Organizer by the Campaign in Illinois between the period November 24, 2019, and March 31, 2020 ("Illinois Class");

(iv)     all individuals employed as a Field Organizer by the Campaign in North Carolina between the period November 24, 2019, and March 31, 2020 ("North Carolina Class");

(v)     all individuals employed as a Field Organizer by the Campaign in Michigan between the period November 24, 2019, and March 31, 2020 ("Michigan Class");

(vi)     all individuals employed as a Field Organizer by the Campaign in Wisconsin between the period November 24, 2019, and March 31, 2020 ("Wisconsin Class"); and

(vii)     all individuals employed as a Field Organizer by the Campaign in Minnesota between

the period November 24, 2019, and March 31, 2020 (Minnesota Class").

The Court hereby appoints the following class representatives:

(i)     Alexandra Marie Wheatley-Diaz, Robin Ceppos, and Nicholas Coker as Class Representatives of the California Class;

(ii)    Max Goldstein as Class Representative of the New York Class;

(iii)   Caelan Doherty as Class Representative of the Illinois Class;

(iv)    James Kyle Newman as the Class Representative of the North Carolina Class;

(v)     Lakisha Watson-Moore as the Class Representative of the Michigan Class;

(vi)    Tristan Angulo as Class Representative of the Wisconsin Class; and

(vii)   Bridget Logan as Class Representative of the Minnesota Class.

The Court hereby appoints Outten & Golden LLP and Shavitz Law Group, P.A. as class counsel.

This Memorandum Order and Opinion resolves docket entries no. 382 and 432.

This case remains referred to Magistrate Judge Gorenstein for general pretrial management.

SO ORDERED.

Dated: August 27, 2024
       New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge