**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>Defendant. | Case No. 20-cv-2489 (LTS)(GWG) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFFS' MOTIONS IN LIMINE</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND BACKGROUND ................................................................. 1

ARGUMENT ................................................................................................................ 1

    MOTION IN LIMINE 1: Bifurcation of liability and damages .................................... 1

    MOTION IN LIMINE 2: Exclusion of evidence unrelated to class liability ................ 5

        A.      Evidence and Testimony Related to Non-testifying Class
               and Collective Members Should Be Excluded ....................................... 5

        B.      Irrelevant and Prejudicial Background Information About
               Field Organizers Should Be Excluded ................................................... 8

               1.      Criminal History, Charges, and Accusations ............................. 8

               2.      Work Authorization or Immigration Status ............................... 9

               3.      Other Lawsuits or Complaints Filed by Plaintiffs ................... 10

    MOTION IN LIMINE 3: Exclusion of cumulative and individualized
    testimony .................................................................................................................... 10

    MOTION IN LIMINE 4: Exclusion of undisclosed witnesses ................................... 13

    MOTION IN LIMINE 5: Exclusion of out-of-court declarations ............................... 15

    MOTION IN LIMINE 6: Exclusion of hearsay documents not produced in
    discovery .................................................................................................................... 15

        A.      News Articles ...................................................................................... 16

        B.      LinkedIn Profiles ................................................................................ 17

        C.      Social Media Posts .............................................................................. 18

        D.      Product Websites ................................................................................. 18

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Aci Constr., LLC v. U.S.*,
   No. 19 Civ. 00054, 2023 U.S. Dist. LEXIS 116425 (D. Utah July 5, 2023) .......................... 15

*Ap-Fonden v. GE*,
   722 F. Supp. 3d 347 (S.D.N.Y. 2024) ............................................................................. 1, 3, 7

*Au New Haven, LLC v. YKK Corp.*,
   No. 15 Civ. 3411, 2022 U.S. Dist. LEXIS 189244 (S.D.N.Y. Oct. 17, 2022) .......................... 1

*Baden-Winterwood v. Life Time Fitness Inc.*,
   729 F. Supp. 2d 965 (S.D. Ohio 2010) ...................................................................................... 3

*Biao Ji v. Aily Foot Relax Station, Inc.*,
   No. 19 Civ. 11881, 2023 U.S. Dist. LEXIS 1387 (S.D.N.Y. Jan. 3, 2023) .............................. 9

*Cervantes v. CRST Int'l, Inc.*,
   No. 20 Civ. 75, 2024 U.S. Dist. LEXIS 247129 (N.D. Iowa Oct. 10, 2024) .......................... 12

*Cowan v. Treetop Enters.*,
   163 F. Supp. 2d 930 (M.D. Tenn. 2001) .................................................................................... 3

*Davis v. Hunt Leibert Jacobson P.C.*,
   No. 12 Civ. 1102, 2016 U.S. Dist. LEXIS 76638 (D. Conn. June 10, 2016) .......................... 13

*Dickson v. N.Y. State Off. of Child. & Fam. Servs.*,
   No. 18 Civ. 07212, 2023 U.S. Dist. LEXIS 226001 (E.D.N.Y. Dec. 19, 2023) ............... 15, 17

*Donovan v. Burger King Corp.*,
   672 F.2d 221 (1st Cir. 1982) .................................................................................................... 11

*Donovan v. Hamm's Drive Inn*,
   661 F.2d 316 (5th Cir. 1981) ...................................................................................................... 3

*Donovan v. New Floridian Hotel, Inc.*,
   676 F.2d 468 (11th Cir. 1982) .................................................................................................... 3

*Dubin v. E.F. Hutton Grp.*,
   No. 88 Civ. 0876, 1990 U.S. Dist. LEXIS 16762 (S.D.N.Y. Dec. 11, 1990) .......................... 11

*E. Profit Corp. v. Strategic Vision US, LLC*,
   No. 18 Civ. 2185, 2020 U.S. Dist. LEXIS 239663 (S.D.N.Y. Dec. 18, 2020) ................. 16, 17

*EEOC v. Jetstream Ground Servs.*,
   No. 13 Civ. 02340, 2016 U.S. Dist. LEXIS 40277 (D. Colo. Mar. 28, 2016) ........................ 12

*Empresa Cubana Del Tabaco v. Culbro Corp.*,
    213 F.R.D. 151 (S.D.N.Y. 2003)........................................................................... 14

*Francois v. Mazer*,
    No 09 Civ. 3275, 2012 U.S. Dist. LEXIS 60846 (S.D.N.Y. 2012)........................... 9

*Ivanovs v. BAYADA Home Health Care, Inc.*,
    674 F. Supp. 3d 115 (D.N.J. 2023)......................................................................... 4

*Jacob v. Duane Reade, Inc.*,
    No. 11 Civ. 0160, 2016 U.S. Dist. LEXIS 75384 (S.D.N.Y. June 9, 2016) ........... 18

*Lebada v. N.Y.C. Dep't of Educ.*,
    No. 14 Civ. 758, 2016 U.S. Dist. LEXIS 18461 (S.D.N.Y. Feb. 8, 2016).............. 14

*McAllister v. N.Y.C. Police Dep't*,
    49 F. Supp. 2d 688 (S.D.N.Y. 1999) ..................................................................... 17

*McPhail v. First Command Fin. Planning, Inc.*,
    251 F.R.D. 514 (S.D. Cal. 2008)........................................................................... 11

*Morgan v. Family Dollar Stores*,
    551 F.3d 1233 (11th Cir. 2008).............................................................................. 2

*Nguyen v. Versacom, LLC*,
    No. 13 Civ. 4689, 2016 U.S. Dist. LEXIS 155366 (N.D. Tex. Nov. 9, 2016)......... 4

*Pac. Select Fund v. Bank of New York Mellon*,
    No. 10 Civ. 198, 2012 WL 12886495 (C.D. Cal. July 2, 2012)............................... 6

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) ................................................................................. 14

*Pierce v. Wyndham Vacation Resorts, Inc.*,
    922 F.3d 741 (6th Cir. 2019)............................................................................... 3, 7

*Reich v. Dept. of Conserv. and Nat'l Resources*,
    28 F.3d 1076 (11th Cir. 1994) ............................................................................... 4

*Reich v. S. New Eng. Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997) ................................................................................... 11

*Roasas v. Alice's Tea Cup, LLC*,
    127 F. Supp. 3d 4 (S.D.N.Y. 2015) ........................................................................ 9

*Romero v. Fla. Power & Light Co.*,
    No. 09 Civ. 1401, 2012 U.S. Dist. LEXIS 76146 (M.D. Fla. June 1, 2012).......... 4, 7

*Sanders v. City of N.Y.*,
  No. 98 Civ. 3374, 2001 U.S. Dist. LEXIS 20242 (S.D.N.Y. Dec. 5, 2001) ........................... 17

*Savage & Assocs. v. Mandl (In re Teligent Inc.)*,
  380 B.R. 324 (Bankr. S.D.N.Y. 2008) .................................................................... 16

*Smith v. Family Video Movie Club, Inc.*,
  No. 11 Civ. 1773, 2015 U.S. Dist. LEXIS 43335 (N.D. Ill. Mar. 31, 2015) ......................... 4-5

*Solorio v. Sullivan*,
  No. 19 Civ. 00688, 2023 U.S. Dist. LEXIS 162454 (E.D. Cal. Sep. 12, 2023) ..................... 15

*Su v. E. Penn Mfg. Co.*,
  No. 18 Civ. 1194, 2023 U.S. Dist. LEXIS 200012 (E.D. Pa. Nov. 7, 2023) .......................... 11

*Thiebes v. Wal-Mart Stores, Inc.*,
  No. 98 Civ. 802, 2004 U.S. Dist. LEXIS 15263 (D. Or. July 26, 2004) ................................. 4

*United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
  112 F. Supp. 3d 122 (S.D.N.Y. 2015) ........................................................................ 6

*In re Urethane Antitrust Litig.*,
  No. 08 Civ. 5169, 2016 U.S. Dist. LEXIS 21226 (D.N.J. Feb. 22, 2016) ............................. 12

*In re Visa Check/Mastermoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ..................................................................................... 4

*Wilson v. Jamaica Serv. Program for Older Adults, Inc.*,
  708 F. Supp. 3d 213 (E.D.N.Y. 2023) ................................................................... 2, 7

*Wiseman v. Tastefully Better &/or Pop Box Us &/or Santiva Int'l*,
  No. 19 Civ. 1441, 2023 U.S. Dist. LEXIS 76168 (N.D. Ill. May 2, 2023) ...................... 10, 10

**FEDERAL RULES**

Fed. R. Civ. P. 37(c)(1) ................................................................................................ 13

Fed. R. Civ. P. 42(b) ..................................................................................................... 1

## INTRODUCTION AND BACKGROUND

Plaintiffs allege, on behalf of a class and collective, that Defendant Mike Bloomberg 2020, Inc. ("Bloomberg") misclassified them as exempt from overtime laws and failed to pay them for the overtime hours they worked. In advance of trial, Plaintiffs move in limine on the following six issues:

1. Bifurcation of liability and damages;

2. Exclusion of evidence unrelated to class liability;

3. Exclusion of cumulative and individualized testimony;

4. Exclusion of undisclosed witnesses;

5. Exclusion of out-of-court declarations; and

6. Exclusion of documents not produced in discovery.

## ARGUMENT

**MOTION IN LIMINE 1: Bifurcation of liability and damages**

Plaintiffs request that the Court bifurcate the trial for purposes of liability and damages, as doing so best serves the interests of the Court and Jury. Pursuant to Federal Rules of Civil Procedure 42(b), a court "may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for "convenience, to avoid prejudice, or to expedite and economize" the proceedings. "[O]nly one of the three conditions specified in the rule – convenience, to avoid prejudice, or to expedite and economize – [is] needed to justify ordering separate trials." *Ap-Fonden v. GE*, 722 F. Supp. 3d 347, 352-53 (S.D.N.Y. 2024) (citation and quotation omitted). Bifurcation is also appropriate when it can "lessen or eliminate the likelihood of juror confusion." *Id.* at 353 (citation and quotation omitted); *see also Au New Haven, LLC v. YKK Corp.*, No. 15 Civ. 3411, 2022 U.S. Dist. LEXIS 189244, at *9-10 (S.D.N.Y. Oct. 17, 2022) (bifurcation is appropriate when any of the three Rule 42(b) factors are met). Here, bifurcating the trial into class liability and individualized damages stages will expedite and economize the proceedings, and will maximize the jury's convenience and minimize jury confusion. Accordingly, Plaintiffs propose the jury first decide Bloomberg's liability and, if applicable, the number of hours of overtime class and collective members worked

1

per week. Second, if the jury finds Bloomberg liable, then Bloomberg can present evidence of any individualized defenses related to damages to a special master, who can make a final determination for each individual.

As the Court already decided, all of the core issues necessary to determine liability – including whether Field Organizers worked uncompensated overtime, whether Bloomberg established its administrative exemption and good faith affirmative defenses, and whether the FLSA covers the claims – can be readily and easily decided by the jury using a combination of common and representative evidence that is applicable to the full class and collective. For example, it is undisputed that all class members held the same job title and position, and there is no dispute that the FOs "spent the majority of their time contacting voters through phone calls and door-to-door canvassing." ECF No. 506 (Class Cert. Op.) at 10-11; *see also id.* at 22 ("the preponderance of the evidence indicates that FOs 'spent the overwhelming majority of their time contacting voters and potential volunteers through phone calls and door-to- door canvassing.'"). Further, all "class members are aggrieved by the same policy—the uniform exemption of FOs from overtime wage," and Bloomberg's "Campaign's Rule 30(b)(6) witness, Daniel Kanninen, testified that no individualized analysis was done of any particular FO's job duties to make that classification decision." *Id.* at 2, 22-23; *see also Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("Plaintiffs' evidence established that Family Dollar uniformly exempted all store managers from overtime pay requirements, and its exemption decision did not turn on any individualized factors. Not one. There is nothing unfair about litigating a single corporate decision in a single collective action. . . ."). The jury thus can rely on common evidence and corporate and representative testimony to decide whether Bloomberg established its affirmative defense that the administrative exemption to the FLSA applies. *See Wilson v. Jamaica Serv. Program for Older Adults, Inc*., 708 F. Supp. 3d 213, 216 (E.D.N.Y. 2023) ("The Second Circuit permits representative testimony in FLSA actions to prove liability as to absent opt-ins.").

Common evidence will likewise be relevant to damages. Plaintiffs do not propose that *all* evidence related to damages be reserved until the second stage – rather, the jury can easily rely on common evidence like Bloomberg's job descriptions and internal correspondence, as well as

corporate and representative testimony, to determine a baseline number of hours per week that Field Organizers ("FOs") worked, which will serve as the default assumption for each class and collective members' damages. This is standard practice for how damages are calculated in the absence of adequate timekeeping records from the employer. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472-73, n.7 (11th Cir. 1982) (affirming district court's determination that "waitresses normally worked an eight and one-half hour day" based on "the testimony of the compliance officer and computations based on the payroll records"); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981) (affirming district court's "accepted practice" of finding that, "based on the testimony of employees, . . . certain groups of employees averaged certain numbers of hours per week" and award of "back pay based on those admittedly approximate calculations"); *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 746 (6th Cir. 2019) (affirming district court's approach of distributing evidence of individual defenses across the collective to determine hours worked); *Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 997-1001 (S.D. Ohio 2010) (averaging hours per week worked by testifying plaintiffs and applying it to non-testifying plaintiffs); *Cowan v. Treetop Enters.*, 163 F. Supp. 2d 930, 938-39 (M.D. Tenn. 2001) (determining average hours worked and applying that average "to the entire Plaintiff class to determine the amount of overtime backpay owed for the number of weeks of work stipulated by the parties").

While Bloomberg will likely argue it has individual defenses as to the hours (and thus damages) *specific individuals* may have worked, this is nothing unusual for an FLSA case. Those individualized defenses are most efficiently raised in special damages hearings following a finding of liability. *Cf.* ECF No. 506 (Class Cert. Op.) at 14 (noting that while "the Campaign may argue that" specific class representatives' time commitments undermine "allegations of working long hours for the Campaign, this is essentially an argument about the amount of hours they worked, which goes to the issue of damages . . . [and] differences among class members with regard to the amount of their individual damages do not constitute 'unique defenses'" (quotation and citation omitted)). That is why bifurcating liability and damages is routine in FLSA trials. *See, e.g.*, *Ap-Fonden*, 722 F. Supp. 3d at 353 (The "Court adopts Plaintiffs'

proposal and orders that the trial will be bifurcated, with a Phase One limited to class-wide issues concerning liability and damages; and, only if necessary, a Phase Two addressing individual issues, including class member damages. . . ."); *Ivanovs v. BAYADA Home Health Care, Inc.*, 674 F. Supp. 3d 115, 118 (D.N.J. 2023) (noting that trial was bifurcated into liability and damages phases); *Nguyen v. Versacom, LLC*, No. 13 Civ. 4689, 2016 U.S. Dist. LEXIS 155366, at *11-12 (N.D. Tex. Nov. 9, 2016) ("the court may efficiently manage disparities in damages by exercising its discretion to use bifurcated proceedings or other available tools"); *Romero v. Fla. Power & Light Co.*, No. 09 Civ. 1401, 2012 U.S. Dist. LEXIS 76146, at *22 (M.D. Fla. June 1, 2012) (bifurcating liability and damages in FLSA action); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98 Civ. 802, 2004 U.S. Dist. LEXIS 15263, at *3 (D. Or. July 26, 2004) (court bifurcated FLSA collective action into separate liability and damages trials); *Reich v. Dept. of Conserv. and Nat'l Resources*, 28 F.3d 1076, 1078 (11th Cir. 1994) (noting that the district court bifurcated the issues of liability and damages in an FLSA action).

Allowing Bloomberg to present to the jury testimony and evidence related to damages for absent class members and non-testifying opt-in plaintiffs risks confusing the jury by introducing evidence that is irrelevant to the common issues in this class action trial. Further, if the jury rules against Plaintiffs in the liability phase, none of the individualized evidence about hours will be needed. *See Romero*, 2012 U.S. Dist. LEXIS 76146, at *20 (noting that resolution of the liability phase may "obviate, narrow, or allow resolution of the amount of damages, if any, for the hundreds of class members, saving scarce trial time") (quotation omitted).

To maximize the efficiencies gained by a class action proceeding and avoid prejudice to individual class and collective members, while balancing Bloomberg's right to present its individualized damages defenses, Plaintiffs propose that the damages phase be tried before a special master. *See In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including . . . appointing a magistrate judge or special master to preside over individual damages proceedings"); *Smith v. Family Video Movie Club, Inc.*, No. 11 Civ. 1773, 2015 U.S. Dist. LEXIS 43335, at *29 (N.D.

Ill. Mar. 31, 2015) (individualized issues can "accommodated through case management procedures, such as . . . bifurcating damages and liability, and . . . appointment of a special master at the damages stage"). A special master will have the requisite knowledge to efficiently hear and decide evidence about damages, informed by the jury's determinations, in a manner that is fair and efficient for all parties.

**MOTION IN LIMINE 2: Exclusion of evidence unrelated to class liability.**

Plaintiffs request that with respect to trial of the common class claims, the Court exclude individualized evidence as outlined below. This Court denied Bloomberg's motion to decertify the Fair Labor Standards Act collective and granted Plaintiffs' motion to certify six related state law classes. ECF No. 506. In doing so, it determined that the "elements of the claims and defenses to be litigated" – i.e., whether the classes' and collective's primary duties and overtime hours worked render them entitled to overtime pay under state and federal laws – can be tried using common and representative evidence, including testimony and related documents from the individuals on each Party's witness list, and common policy documents and job descriptions, amongst other evidence. ECF No. 506 (Class Cert. Op.) at 19 (citing *Scott v. Chipotle Mexican Grill, In*c., 954 F.3d 502, 512 (2d Cir. 2020)). Consequently, at trial, the questions for the jury to answer are class- and collective-wide questions and not individualized inquiries. Nevertheless, Bloomberg's pretrial disclosures make clear that it intends to relitigate the issue of class certification and focus the trial on individual issues that are irrelevant to class liability, creating a distracting, prejudicial sideshow. This irrelevant evidence should be excluded.

A.    **Evidence and Testimony Related to Non-testifying Class and Collective Members Should Be Excluded.**

Bloomberg includes a large number of documents on its exhibit list that relate to non-testifying absent class members and opt-in plaintiffs, and which are otherwise irrelevant to the common issues to be tried. This includes:

- Screenshots of the purported LinkedIn profiles of non-testifying field organizers,[1]

---

[1] *See* Ex. OL, TB, UT, UU, XQ, ZC. These exhibits are also irrelevant and inadmissible hearsay, at discussed further in Motion 6.

- Allegations that unspecified non-testifying field organizers were simultaneously campaigning for another candidate in addition to Bloomberg,[2]

- Documents related to non-testifying field organizers who had other jobs while working as a field organizer,[3]

- Allegations that non-testifying field organizers "faked" data they inputted into Bloomberg's call tracking system,[4]

- Purported complaints about non-testifying field organizers' performance,[5] and

- Routine emails sent by non-testifying field organizers in the course of their employment and documents they created while employed.[6]

As an initial matter, much of these documents are impermissible hearsay. In circumstances where a statement is hearsay within hearsay, as frequently arises with emails, the document "is admissible only if each level of hearsay is independently admissible as an exception to the hearsay rule." *United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 141 (S.D.N.Y. 2015); *see also Pac. Select Fund v. Bank of New York Mellon*, No. 10 Civ. 198, 2012 WL 12886495, at *4 (C.D. Cal. July 2, 2012) (granting motion in limine to exclude emails as inadmissible hearsay because "[t]he statements contained in the emails are hearsay, and the only relevant purpose for introducing them would be for the truth of the matters asserted").

More critically, none of this evidence is relevant to the class and collective issues that are being tried – whether the classes' and collective's primary duties and overtime hours worked entitled them to overtime pay under state and federal laws. Rather, they seem to be offered in an attempt to inject individual issues – related to people who will not be appearing at trial – into a

---

[2] *See, e.g.*, Ex. HG.

[3] *See, e.g.*, Ex. AO, AP, AQ.

[4] *See* Ex. BQ, BR, BS, BT, BU, BV, BW, BX, BY, BZ, CA, CB, CC, DA, DN.

[5] *See* Ex. S, T, U , V, X, BF, BI, BM, CD, CE, CG, CH, CI, CJ, CK, CL, CM, CN, CO, CP, CQ, CR, CS, CT, CU, CV, CW, CX, CY, DZ, DB, DC, DD, DE, DF, DG, DH, DI, DJ, DK, DL, DM, DO, DP, DQ, DU, DX, DY, DZ, EA, EB, ED, EE, EI, EP.

[6] *See* Ex. W, AM, AN, EF, EG, EH, EN, EU, EX, EY, FD, FS, FT, FU, KF, OX, OY, OZ, PA, PB.

class trial. In a class action, the class claims and a defendant's defenses are to be tried using common and representative evidence. "The Second Circuit permits representative testimony in FLSA actions to prove liability as to absent opt-ins." *Wilson*, 708 F. Supp. 3d at 216 ("the collective-action framework presumes that similarly situated employees are representative of each other and have the ability to proceed to trial collectively") (quotation and citation omitted); *Pierce*, 922 F.3d at 748 ("Representative evidence may establish liability for testifying and non-testifying employees, as similarly situated employees may 'testify as representatives of one another.'"). It is the representative testimony of those individuals who have been identified by Plaintiffs and Bloomberg as witnesses for trial, as well as documents related to that testimony, that are relevant to the claims, and not documents related to absent class members, which are hearsay and for which there is no foundation.

The introduction of evidence related to absent class members who are not testifying at trial – and who cannot be questioned on it – will lead to a significant amount of cumulative, confusing, and unnecessary testimony that will bog down the trial and undermine the purpose of the class action mechanism. *See Ap-Fonden*, 722 F. Supp. 3d at 353 (phasing trial and rejecting "Defendants' approach of mixing class-wide and individualized issues in Phase One" in part because it "minimizes any risk of juror confusion and prejudice to absent class members"); *Romero*, 2012 U.S. Dist. LEXIS 76146, at *16-17 (holding that "evidence from the named Plaintiffs and approximately three hundred opt-in Plaintiffs would be cumulative, even if, as Bloomberg argues, there are differences in the application of the company-wide policy").

At best, this evidence relates to individualized issues of damages, and to the extent any of the evidence about non-testifying field organizers impacts individual damages, Bloomberg should be limited to introducing that evidence only during the damages phase of the trial.[7] All other documents related to non-testifying field organizers should be excluded as it is irrelevant.

---

[7] If the Court does not bifurcate the trial, Plaintiffs still respectfully request these documents all be excluded because, as set forth above, these documents will be cumulative and are unnecessary to establish the common issues to be tried.

**B.    Irrelevant and Prejudicial Background Information About Field Organizers Should Be Excluded.**

Bloomberg's exhibit list includes numerous documents referencing irrelevant and potentially prejudicial information about Plaintiffs and other witnesses. This evidence should all be excluded.

### 1. Criminal History, Charges, and Accusations

Bloomberg includes several exhibits that reference Plaintiff Tristan Angulo's criminal history, and Plaintiffs anticipate that Bloomberg will seek to solicit testimony about Plaintiff Nicholas Coker's criminal history.[8] Evidence of a criminal conviction to attack a witness's character for truthfulness is permissible only under the narrow circumstances set forth in Federal Rule of Evidence 609, and is always subject to Rule 403's mandate to balance the probative value of a piece of evidence against the risk of prejudice. The evidence Bloomberg seeks to introduce fails that test on all counts. Indeed, the Court already considered the relevance of Mr. Coker's and Mr. Angulo's criminal histories, because Bloomberg argued that they rendered both plaintiffs inadequate class representatives. The Court rejected this argument, finding that the "Campaign's arguments fail to show that a clear nexus existed between the conviction and the class claims," a conclusion "further bolstered by the fact that Mr. Coker's and Mr. Angulo's testimony about their primary duties as FOs is consistent with other witness testimony and documentary evidence." ECF No. 506 (Class Cert. Op.) at 17 (quoting *Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330, 2005 U.S. Dist. LEXIS 5381, at *59 (S.D.N.Y. Mar. 31, 2005)). The Court already ruled once that Plaintiffs' criminal histories were not probative of their ability to represent a class; Plaintiffs respectfully request it similarly preclude Bloomberg from relying on this evidence to attempt to attack Plaintiffs' truthfulness.

Plaintiffs also request that the Court preclude all testimony related to accusations made against opt-in Plaintiff Alan Robinson (who appears on Bloomberg's witness list).[9] This incident

---

[8] *See* Ex. FX, FY, GO.

[9] Bloomberg's exhibit list that was exchanged with Plaintiffs contained a document that reflected Mr. Robinson discussing the allegations (Ex. NS). After conferring, Bloomberg has

has no bearing on Mr. Robinson's job duties or hours at Bloomberg, nor do they relate to Mr. Robinson's truthfulness – meaning they are irrelevant to this case. Further, these documents present a high risk of prejudice. Particularly given that they did not result in any criminal convictions, these documents and any testimony about Mr. Robinson's behavior unrelated to his claims and the common issues to be tried should be excluded. *Cf. Wiseman v. Tastefully Better &/or Pop Box Us &/or Santiva Int'l*, No. 19 Civ. 1441, 2023 U.S. Dist. LEXIS 76168, at *16 (N.D. Ill. May 2, 2023) (evidence of "evidence of any arrest or charge that did not result in conviction is not subject to Rule 609" and is regularly excluded by courts).

### 2. Work Authorization or Immigration Status

Plaintiffs move to preclude Bloomberg from soliciting testimony or introducing any other evidence related to any witness's immigration status.[10] A "plaintiff's immigration status is irrelevant to this action because it does not tend to make any fact of consequence to his wage-and-hour claims more or less probable." *Biao Ji v. Aily Foot Relax Station, Inc.*, No. 19 Civ. 11881, 2023 U.S. Dist. LEXIS 1387, at *2-3 (S.D.N.Y. Jan. 3, 2023); *see also Roasas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 9 (S.D.N.Y. 2015) (collecting cases holding immigration status irrelevant to FLSA and state law wage-and-hour claims); *Francois v. Mazer*, No 09 Civ. 3275, 2012 U.S. Dist. LEXIS 60846, at *3 (S.D.N.Y. 2012) (granting motion to exclude evidence of plaintiff's immigration status as irrelevant to plaintiff's FLSA and state law claims, and unduly prejudicial). Plaintiffs respectfully request this document and any testimony about immigration status be precluded.

---

informed Plaintiffs it intends to remove Exhibit NS and corresponding deposition designations but would not agree to a broader foreclosure of testimony on the subject.

[10] After conferring, Bloomberg informed Plaintiffs it intends to remove Exhibit GS, which reflects Mr. Angulo's immigration status, from its exhibit list (as well as related deposition designations). However, Bloomberg would not agree to a broader foreclosure of testimony on the subject.

### 3. Other Lawsuits or Complaints Filed by Plaintiffs

Bloomberg includes as exhibits another lawsuit filed by Plaintiff Coker and another lawsuit filed by Plaintiff Ronald Luippold.[11] It is well-established that prior lawsuits cannot be "offered to show a tendency to sue." *Wiseman*, 2023 U.S. Dist. LEXIS 76168, at *12. And to the extent Bloomberg asserts these documents are being offered for another reason, such as Plaintiffs' motive in filing the lawsuit, "the marginal probative value of those lawsuits would be substantially outweighed by a danger of unduly prejudicing the jury." *Id.* Plaintiffs thus request that this exhibit, and any related testimony, be precluded.

**MOTION IN LIMINE 3: Exclusion of cumulative and individualized testimony.**

Plaintiff requests that the Court exclude from Bloomberg's witness list absent class members and opt-ins who were never subject to discovery and documents related to those witnesses from its exhibit list.[12] Bloomberg seeks to introduce live and deposition testimony from 28 members of the class and collective (in addition to the 10 class and collective members on Plaintiffs' witness list). This is a clear attempt to turn a class trial, which is based on common and representative evidence, into a series of individualized trials. Further, of those 28 witnesses, 16 were never subject to any discovery; eight are absent class members[13] and an additional eight are opt-in plaintiffs who were neither served written discovery nor deposed.[14] Plaintiffs request Bloomberg be precluded from calling these 16 absent class members and non-deposed opt-in plaintiffs.

The 22 deposed witnesses that appear across the Parties' respective witness lists reflect Named Plaintiffs and class representatives from each state law class, as well as a cross-section of other opt-in plaintiffs – all of whom were specifically selected by Bloomberg to be subject to discovery and deposed earlier in this litigation. Plaintiffs selected their witness list to provide a robust, representative sample of testimony while also – in light of the straightforward nature of

---

[11] *See* Ex. HX.

[12] *See* Ex. UN, VA, VA, VT, WL, WW, WX, WY, XC, XD, XE, XF, XI, XK, YZ.

[13] Maya Artis, Caroline Blanck, Susan Gallaway, Samantha Katz, Grant Olson, Stephen Ripp, James Safran, and Brittany Stinson

[14] Roscoe Boyd II, Jeannette Fuentes, Erika Guy, Julia Idelson, Judith Lipner, Saba Raza, Justin Smith, Mathias Tucunduya, and Valda Witt

these claims – respecting the Court's and the jury's time and avoiding unnecessary, cumulative evidence. Combined with the robust common documentary evidence and testimony from corporate Bloomberg witnesses, this is more than sufficient evidence for the jury to decide the common issues. *See Su v. E. Penn Mfg. Co.*, No. 18 Civ. 1194, 2023 U.S. Dist. LEXIS 200012, at *14 (E.D. Pa. Nov. 7, 2023) (holding that calling 0.33% of the covered employees was "sufficiently representative"); *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997) (permitting representative testimony from a subset constituting 2.5% of the collective); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224 (1st Cir. 1982) (affirming representative testimony from approximately 2.4% of class).

Bloomberg must make a "strong showing" to justify participation of absent class members, and "the Court must take steps to protect the class from undue harassment and excessive taxing of their resources." *Dubin v. E.F. Hutton Grp.*, No. 88 Civ. 0876, 1990 U.S. Dist. LEXIS 16762, at *6 (S.D.N.Y. Dec. 11, 1990) (citation and quotation omitted); *cf. McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) (discovery of absent class members only appropriate where "(1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to the discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent").

Bloomberg has not articulated any justification for why it needs to call these 16 witnesses, how it selected these sixteen individuals, or what evidence it will adduce that is non-cumulative and cannot be supplied from other witnesses. Nor could it. This is a straight-forward wage and hour case. As explained in more detail above (*supra* Motions 1, 2), every class and collective member held the same job title; worked within the same approximately five-month time period; were subject to the same common policies; and had the same core job duties. And of these 16 witnesses, 8 of them are located in New York. This confirms that these individuals will not enhance the geographic representativeness of the testimony in any meaningful way and will present particularly redundant testimony. In sum, there is nothing unique or unusual about this case that warrants the extraordinary measure of soliciting testimony from absent class members

11

and non-deposed opt-in plaintiffs at trial. Rather, it is evident that these 16 class and collective members' testimony would be cumulative, redundant, and waste both the Court and jury's time.

Further, the parties extensively negotiated an agreement which ultimately allowed Bloomberg to take discovery on and depose eight representative plaintiffs and an additional 10 plaintiffs or opt-in plaintiffs – all of whom were unilaterally selected by Bloomberg. Bloomberg was aware of the size of the potential class and collective at that point, and did not claim to require that any greater percentage of individuals in the class or collective participate in discovery or offer testimony. Plaintiffs were thus on notice and prepared that these are individuals who Bloomberg may rely on during the course of litigation. But that is not the case for the 16 class and collective members on Bloomberg's witness list who were not deposed or subject to discovery. *See Cervantes v. CRST Int'l, Inc.*, No. 20 Civ. 75, 2024 U.S. Dist. LEXIS 247129, at *21-22 (N.D. Iowa Oct. 10, 2024) (precluding defendant from calling non-deposed class members; noting that the parties negotiated an agreement for handling opt-in discovery and plaintiffs would be prejudiced because they did not conduct discovery on the class members who were not subject to that agreement). Plaintiffs thus will be prejudiced by having to gather information from and prepare for these 16 class and collective members' testimony at trial – testimony which is redundant and unnecessary.

Finally, nine of the non-deposed witnesses on Bloomberg's witness list are outside the subpoena range of this Court.[15] "Rule 45(d)(3)(A)(ii) provides that a court **must** quash or modify a subpoena that 'requires a person to comply beyond the geographical limits specified in Rule 45(c).'" *EEOC v. Jetstream Ground Servs.*, No. 13 Civ. 02340, 2016 U.S. Dist. LEXIS 40277, at *6 n.5 (D. Colo. Mar. 28, 2016) (emphasis in original); *see also In re Urethane Antitrust Litig.*, No. 08 Civ. 5169, 2016 U.S. Dist. LEXIS 21226, at *1-2 (D.N.J. Feb. 22, 2016) (noting that Rule 45's "100-mile constraint applies in full force to parties and their officers," and denying defendants' motion to compel eight of plaintiffs' current employees, who were beyond the 100-

---

[15] Jeannette Fuentes, Susan Gallaway, Erika Guy, Julia Idelson, Saba Raza, James Safran, Justin Smith, Brittany Stinson, and Mathias Tucunduya

mile limit, to testify live at trial, either in court or by video). This provides an additional, independent basis to strike these nine witnesses from Bloomberg's witness list.

In sum, Bloomberg's decision to add 16 individuals who were not deposed appears to be a transparent effort at both undermining the class action mechanism and harassing class and collective members.

**MOTION IN LIMINE 4: Exclusion of undisclosed witnesses.**

Plaintiff requests that the Court exclude two witnesses, Andrew Lauck and Dolores Tersigni, that Bloomberg previously did not disclose as having relevant information. Bloomberg indicated that it anticipates these two witnesses will testify about "Field organizers' performance, duties and responsibilities and human resources related matters." But during discovery, Bloomberg never disclosed either of these witnesses as having information on any of those topics. Neither witness appears on Bloomberg's Rule 26 Initial Disclosures, which were most recently amended on May 9, 2023. Lauck is identified in Bloomberg's Fourth Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories as being involved in conversations about "compensation structure for Field Organizers" – not about performance, duties and responsibilities, nor any general human resources matters. Tersigni is not identified anywhere.

Federal Rule of Civil Procedure 26(e) requires parties to supplement Rule 26(a) disclosures and other discovery responses "in a timely manner." Any failure to comply with this duty to provide responsive discovery triggers evidentiary sanctions under Rule 37(c)(1), including the prohibition from using that information at trial: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless . . . ." Fed. R. Civ. P. 37(c)(1). Furthermore, the Court may act under its "inherent powers" to manage its affairs and has broad discretion to fashion an appropriate sanction for non-disclosure of witnesses. *Davis v. Hunt Leibert Jacobson P.C.*, No. 12 Civ. 1102, 2016 U.S. Dist. LEXIS 76638, at *10 (D. Conn. June 10, 2016) ("Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a

district court has broad discretion in fashioning an appropriate sanction . . . .") (quoting *Residential Funding Corp., v. DeGeorge Fin. Corp.*, 306 F. 3d 99, 107 (2d Cir. 2002)). A motion in limine can be used to raise a Rule 37(c)(1) sanction (excluding testimony) for the failure to make proper discovery disclosures. *See Patterson v. Balsamico*, 440 F.3d 104, 117-18 (2d Cir. 2006) (upholding grant of motion *in limine* precluding testimony of defense witness identified only shortly before trial under Rule 37(c)(1)).

Bloomberg has provided no explanation for why it failed to properly identify these witnesses at any point in the five-year lifespan of the case, and its untimely disclosure of the witnesses prevents Plaintiffs from fully preparing to cross-examine the witnesses. The fact that these witnesses' names may have appeared in documents and that Lauck was identified as being involved in conversations about compensation in Bloomberg's interrogatory responses does not remedy its failure to disclose the witnesses. "As the plain terms of Rule 26(a) indicate, the point of the rule is to require a party to inform the other side not only that the party believes a witness actually has 'discoverable information,' but also that the party 'may use' information from that witness 'to support' its own case at trial." *Lebada v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 758, 2016 U.S. Dist. LEXIS 18461, at *18 (S.D.N.Y. Feb. 8, 2016) ("Rule 26(a) thus fulfills a critical function: transmitting formal notice from the disclosing party to the opposing party that the opposing party should be prepared for the disclosing party to use the information provided by the witness. In the absence of such a disclosure, the opposing party can properly assume that its adversary will not rely upon that witness."). The Court should thus bar the undisclosed witnesses from testifying at trial. *See, e.g.*, *Patterson*, 440 F.3d at 117-18; *Empresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159-60 (S.D.N.Y. 2003) (excluding testimony of late disclosed witnesses).

Ordering Bloomberg to make both witnesses available for depositions in advance of trial, the alternative to exclusion, is unduly prejudicial to Plaintiffs as it requires them to divert resources away from trial preparation to focus on depositions that could have been completed years ago and may require Plaintiffs to substantively alter their trial strategy on the eve of trial.

**MOTION IN LIMINE 5: Exclusion of out-of-court declarations.**

Plaintiff requests that the Court exclude from evidence four declarations from non-testifying witnesses that Bloomberg put forward in the course of litigation.[16] These declarations include a "happy camper" declaration Bloomberg solicited from a former Field Organizer to support its FLSA decertification motion (Ex. BC), declarations from State Directors that Bloomberg solicited to support its motion for summary judgment (Ex. AR, AS), and a declaration produced in response to a third-party subpoena Bloomberg issued (Ex QY).

These declarations are classic hearsay – they are out of court statements that Bloomberg clearly intends to introduce for the truth of what they say, and Plaintiffs lack the ability to cross-examine the declarants. *See Dickson v. N.Y. State Off. of Child. & Fam. Servs.*, No. 18 Civ. 07212, 2023 U.S. Dist. LEXIS 226001, at *8-9 (E.D.N.Y. Dec. 19, 2023) ("affidavits cannot be used in place of the testimony of the available affiant"); *Solorio v. Sullivan*, No. 19 Civ. 00688, 2023 U.S. Dist. LEXIS 162454, at *7 (E.D. Cal. Sep. 12, 2023) (explaining that declarations offered to prove the truth of the matter asserted fall within the hearsay exclusions). "Cross-examination is required to provide context, explore the foundation for the claims made in the document, and to determine whether any bias or problems with perception might cloud some of the assertions contained in the declaration." *Aci Constr., LLC v. U.S.*, No. 19 Civ. 00054, 2023 U.S. Dist. LEXIS 116425, at *5 (D. Utah July 5, 2023). Particularly "because a party created the document for this litigation, there are inadequate assurances that the declaration contains the whole truth such that cross-examination is not required to elicit additional facts or to judge the credibility of the assertions made therein." *Id.* Plaintiffs thus request these declarations be excluded.

**MOTION IN LIMINE 6: Exclusion of hearsay documents not produced in discovery.**

Plaintiffs request that the Court exclude from evidence numerous documents on Bloomberg's exhibit list that Bloomberg failed to produce during discovery, most of which are hearsay. In total, Bloomberg identifies over 190 documents on its exhibit list that were not produced during discovery, including 162 purported screenshots of the LinkedIn accounts of

---

16 Exhibits AR, AS, BC, and QY.

Plaintiffs, opt-in Plaintiffs, and/or absent class members (almost all of whom are not included on either side's witness list); news articles about other 2020 presidential candidates' campaigns; and screenshots of a wine company's Facebook page. Plaintiffs request the Court exclude these documents because they were not properly disclosed during discovery (*see* Section IV *supra)*, are impermissible hearsay, and are completely irrelevant to the common issues to be tried in the case.

Bloomberg has suggested in conferrals that the Court can take "judicial notice" of its unproduced documents, including the news articles and LinkedIn profiles. Plaintiffs disagree. But regardless, judicial notice is merely a means of simplifying the process to authenticate and admit a document; it does not solve underlying hearsay and relevancy issues. *See E. Profit Corp. v. Strategic Vision US, LLC*, No. 18 Civ. 2185, 2020 U.S. Dist. LEXIS 239663, at *4-5 (S.D.N.Y. Dec. 18, 2020) (holding that news articles and LinkedIn profiles being introduced for the truth of the matter asserted cannot be the subject of judicial notice); *Savage & Assocs. v. Mandl (In re Teligent Inc.)*, 380 B.R. 324, 329 n.2 (Bankr. S.D.N.Y. 2008) ("The taking of judicial notice simplifies the process of authenticating a document, but does not automatically render the document admissible in the face of a hearsay objection."). Thus, pursuant to its power to control discovery under Federal Rule 37(c)(1) and inherent authority to control discovery and trial process, the Court should exclude these unproduced documents.

### A.    News Articles

Bloomberg includes several purported news articles and blog posts on its exhibit list.[17] These articles are on far-ranging and irrelevant topics, including articles about Elizabeth Warren staffers' unionization efforts (Ex. AT), and Bernie Sanders' staffers' compensation disputes (Ex. AV). There is no dispute between the Parties as to Field Organizer's actual compensation on the Bloomberg campaign. How much other campaigns paid their employees has no bearing on whether Bloomberg complied with the law in paying its own employees (and notably, these other campaigns classified their field organizer equivalents as non-exempt and overtime-eligible).

---

[17] *See* Exhibits AT, AU, AV, GP, HG.

These articles should thus all be excluded on relevance grounds. *See Dickson*, 2023 U.S. Dist. LEXIS 226001, at *4 (explaining that parties may "seek *in limine* relief to exclude anticipated evidence that may be . . . irrelevant").

Further, these articles should be excluded on hearsay grounds. "[N]ews articles, as a general matter, are inadmissible hearsay." *Sanders v. City of N.Y.*, No. 98 Civ. 3374, 2001 U.S. Dist. LEXIS 20242, at *7 (S.D.N.Y. Dec. 5, 2001); *see also McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 706 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay, however, and therefore are not admissible evidence. . . ."). Although Plaintiffs fail to see the relevance of these documents to any common issues at trial, it is evident that Bloomberg intends to rely on them for the truth of what they assert. These documents are thus impermissible hearsay.

## B. LinkedIn Profiles

Bloomberg includes purported screenshots of 162 Plaintiffs', opt-in plaintiffs', and absent class members' LinkedIn profiles that were not produced during discovery.[18] Plaintiffs understand that Bloomberg seeks to ask the Court to take judicial notice of these documents and rely on them as purportedly accurate descriptions of Field Organizers' job duties. Because the vast majority of these individuals are not testifying, their LinkedIn profiles are irrelevant. This is a class and collective action trial; Bloomberg will have the opportunity to question witnesses on Plaintiffs' and its own witness list, as well as rely on other common and representative evidence, to establish Field Organizers' job duties. Introducing dozens of LinkedIn profiles of non-testifying Field Organizers is a transparent attempt to evade the class and collective action mechanism with irrelevant, minimally probative evidence.

Further, even for testifying witnesses, the LinkedIn profiles and resumes are hearsay. *See E. Profit Corp*, 2020 U.S. Dist. LEXIS 239663, at *4-5 (excluding LinkedIn profile because it is hearsay and not subject to judicial notice). And the profiles lack any indicia of reliability that could otherwise render them admissible; a LinkedIn profile is functionally a resume, "designed to enhance the employee's duties and responsibilities in an effort to obtain a job," rather than

---

[18] *See* Exhibits EJ, TC through US, UV through XP, XR through ZB, ZD through ZK.

provide a balanced and neutral overview of an employees' day-to-day work. *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2016 U.S. Dist. LEXIS 75384, at *22 (S.D.N.Y. June 9, 2016) (quotation omitted) ("While resumes may in some circumstances be informative, for example when created outside the shadow of litigation, these likely contain puffery."). These profiles should thus be excluded.

### C.    Social Media Posts

Bloomberg's exhibit list contains a number of purported screenshots of social media posts, including screenshots of Facebook and Twitter posts, each of which constitute hearsay and have no or only tangential connection to this lawsuit about unpaid overtime.[19] These exhibits should all be excluded.

### D.    Product Websites

Bloomberg includes numerous apparent screenshots of informational pages from companies that made products or databases which Field Organizers used while employed by Bloomberg, such as ThruTalk (an auto-dialing system) and NGP VAN (a tracking system).[20] It also includes a variety of miscellaneous websites such as informational pages about Amazon Web Services (AWS)'s infrastructure and a how-to guide on "[b]uild[ing] an offline-first app" on Android.[21] All of these websites constitute hearsay and lack a permissible use. And even more saliently: all but one of these documents reflect the webpages as they existed in 2023 – over *three years* after Plaintiffs worked for Bloomberg. The one document that is not from 2023 still post-dates Plaintiffs' employment by several months. None of these documents thus have any relevance to Plaintiffs' claims, all of which derive from their employment at Bloomberg which concluded in March 2020.

---

[19] *See* Ex. HW (posts from the company Baja Wine Tour's website); QN (Twitter posts discussing Black organizers and influential Twitter users); SL, SY, SZ (Facebook posts from "Mr.5th The DJ"); SM (post from "Recording Artist C.E.O. Yung Kyngz Ent" supporting Bloomberg).

[20] *See* Ex. FF, FG, FH, FI, FP, FQ.

[21] *See* Ex. FJ, FK, FL, FM, FN, FO, PM, PS.

Dated: August 26, 2025

Respectfully submitted,

By: */s/ Cara E. Greene*

Cara E. Greene
Justin M. Swartz
Michael C. Danna
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:      (212) 245-1000
Email:    ceg@outtengolden.com
Email:    jms@outtengolden.com
Email:    mdanna@outtengolden.com

Jennifer Davidson
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Tel.:      (202) 929-0720
Email:    jdavidson@outtengolden.com

Michael Palitz*
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, NY 10022
Tel.:      (800) 616-4000
Email:    mpalitz@shavitzlaw.com

Gregg I Shavitz*
Tamra Givens*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd., Suite 285
Boca Raton, FL 33431
Tel.:      (561) 447-8888
Email:    gshavitz@shavitzlaw.com
Email:    tgivens@shavitzlaw.com

*Attorneys for Plaintiffs, the Collective, and the Certified Classes*

*Admitted Pro Hac Vice*

## CERTIFICATION OF WORD COUNT

I hereby certify that the word count of this memorandum of law complies with the word limits of SDNY Local Civil Rule 7.1(c).  According to the word-processing system used to prepare this memorandum, the total word count for all printed text is 6,162.

Dated: August 26, 2025                          Respectfully submitted,

   New York, New York                 _/s/ Cara E. Greene_____
                   Cara E. Greene