**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA WOOD, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>Defendant. | Case No. 20-cv-2489 (LTS)(GWG) |
| RODNEY SINCLAIR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIKE BLOOMBERG 2020, INC.,<br><br>Defendant. | Case No. 20-cv-4528 (LTS)(GWG) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE CASES AND FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, CERTIFICATION OF A MASSACHUSETTS CLASS FOR SETTLEMENT PURPOSES, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

I. Summary of Plaintiffs' Claims ............................................................................. 2

II. The *Wood* Litigation ............................................................................................ 2

A. Discovery ............................................................................................. 2

B. Conditional FLSA Certification ............................................................ 3

C. Motion to Dismiss ................................................................................ 3

D. Class Certification, Class Notice, and Summary Judgment ....................... 4

E. Trial Preparation ................................................................................... 5

III. The *Sinclair* Litigation ........................................................................................ 7

IV. Settlement Negotiations ....................................................................................... 7

SUMMARY OF SETTLEMENT TERMS ......................................................................... 8

I. Class Definition .................................................................................................. 8

II. Monetary Settlement Terms ................................................................................ 8

III. Allocation of Class Member Payments ................................................................ 9

IV. Releases for Proposed Class and Collective Members .......................................... 9

V. Attorneys' Fees and Costs .................................................................................. 10

VI. Settlement Administration ................................................................................. 11

ARGUMENT ................................................................................................................ 12

I. Consolidation for the Limited Purpose of Settlement Approval Is Appropriate .. 12

II. Preliminary Approval of the Class Action Settlement Is Appropriate ................. 13

A. Proceeding to Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ........................................................................................................ 14

B. The Court Cannot Assess the Reaction of the Class Until After Notice is Issued (*Grinnell* Factor 2) ............................................................ 16

C. Robust Discovery Has Allowed the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ........................................................ 16

D. The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (*Grinnell* Factors 4 and 5) ................................... 17

E. The Risk of Obtaining Class Certification Favors Approval (*Grinnell* Factor 6) ......................................................................................... 18

F. The Court Should Give Little Weight to Whether Defendant Can Withstand a Greater Judgment (*Grinnell* Factor 7) ................................. 19

G. The Settlement Is Fair in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................ 19

H. The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)) .............................................. 20

I. The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B))......... 21

J. The Relief Provided for Class Members is Adequate (Rule 23(e)(2)(C)) 21

K. The Proposal Treats Class and Collective Members Equitably Relative to Each Other (Rule 23(e)(2)(D) ................................................................ 23

III. Certification of the Massachusetts Settlement Class Is Appropriate .................... 23

A. Numerosity Is Satisfied.............................................................................. 24

B. Commonality Is Satisfied........................................................................... 24

C. Typicality Is Satisfied ................................................................................ 25

D. Adequacy of the Named Plaintiff Is Satisfied........................................... 25

E. Certification Is Proper Under Rule 23(b)(3) ............................................. 26

1. Common Questions Predominate ............................................... 26

2. A Class Action Is a Superior Mechanism .................................. 27

F. O&G and SLG Should Be Appointed as Class Counsel for the Massachusetts Class...................................................................................... 28

IV. The Proposed Notice and Dsitrbution Process Are Appropriate .......................... 28

CONCLUSION........................................................................................................................ 29

# TABLE OF AUTHORITIES

## CASES


*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................*Passim*

*Ballinger v. Advance Magazine Publrs., Inc.*,
No. 13 Civ. 4036, 2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ................ 19

*Barry's Cut Rate Stores Inc. v. Visa Inc. (In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.)*,
No. 05 Civ. 1720, 2024 U.S. Dist. LEXIS 114665 (E.D.N.Y. June 25, 2024)................. 20

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................... 17

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................... 14, 19-20

*Dakey v. Dahlia, Inc.*,
No. 19 Civ. 9445, 2020 U.S. Dist. LEXIS 67931 (S.D.N.Y. Apr. 17, 2020)................... 22

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................... 24

*Fisher v. SD Prot., Inc.*,
948 F.3d 593 (2d Cir. 2020)................................................................................ 22

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................... 19

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)........................................................................................ 24

*Gonzalez v. Scalinatella, Inc.*,
112 F. Supp. 3d 5 (S.D.N.Y. 2015) ..................................................................... 23

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)................................................................................ 27

*Grenawalt v. AT&T Mobility, LLC*,
No. 11 Civ. 2664, 2014 U.S. Dist. LEXIS 139179 (S.D.N.Y. Sept. 29, 2014)................ 27

*Grochowski v. Ajet Constr. Corp.*,
No. 97 Civ. 6269, 2002 U.S. Dist. LEXIS 5031 (S.D.N.Y. Mar. 27, 2002)............... 22, 23

*Johnson v. Big Lots Stores, Inc.*,
561 F. Supp. 2d 567 (E.D. La. 2008) ........ 18-19

*Kelen v. World Fin. Network Nat'l Bank*,
302 F.R.D. 56 (S.D.N.Y. 2014) ........ 12

*Kurtz v. Kimberly-Clark Corp.*,
142 F.4th 112 (2d Cir. 2025) ........ 14

*Lizondro-Garcia v. Kefi LLC*,
300 F.R.D. 169 (S.D.N.Y. 2014) ........ 25

*Luo v. L&S Acupuncture, P.C.*,
649 Fed. App'x 1 (2d Cir. 2016) ........ 23

*Marin v. 310 Bowery Grp. LLC*,
No. 24 Civ. 1340, 2025 U.S. Dist. LEXIS 153516 (S.D.N.Y. Aug. 8, 2025) ........ 23

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ........ 25

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995) ........ 13

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ........ 26

*McMahon v. Olivier Cheng Catering & Events, LLC,*
No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ........ 13

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........ 16

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ........ 21

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ........ 28

*In re PaineWebber Inc. Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ........ 17

*Perez v. Allstate Ins. Co.,*
No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sept. 16, 2014) ........ 25, 26

*Soler v. Fresh Direct, LLC*,
No. 20 Civ. 3431, 2013 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2013).................. 13

*Torres v. Gristede's Operating Corp.*,
No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010)................ 18

*Toure v. Cent. Parking Sys. of N.Y.*,
No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .................. 25

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
131 F.R.D. 38 (S.D.N.Y. 1990) ........................................................................................ 24

*Tyson Foods Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)........................................................................................................ 26

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)............................................................................................ 26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).............................................................................................. 13

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)............................................................................................ 16

*Willix v. Healthfirst, Inc.*,
No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011)............. 13-14

*Zeltser v. Merrill Lynch & Co.,*
No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sep. 23, 2014) ................ 17

**STATUTES**

Mass. Gen. L. 151 ........................................................................................................... 10

Mass. Gen. L. c. 149, §§ 148-150,.................................................................................... 10

Wisconsin Statute § 103-104 ............................................................................................ 10

Wis. Admin Code § DWD 274.03 .................................................................................... 10

**FEDERAL RULES**

Fed. R. Civ. P. 23 ...........................................................................................................*Passim*

Fed. R. Civ. P. 42 ........................................................................................................... 12

**OTHER AUTHORITIES**

4 Newberg and Rubenstein on Class Actions (Sixth) § 13:10 .................................................... 13

**PRELIMINARY STATEMENT**

After over six years of hard-fought litigation in these consolidated cases, including extensive fact and expert discovery; over two dozen depositions; multiple rounds of both dispositive and class and collective certification briefing; and extensive trial preparation, including pre-trial motion practice, Plaintiffs in the above-captioned cases (together "Plaintiffs") and Defendant Mike Bloomberg 2020, Inc. (the "Campaign" or "Defendant") have reached a $6,000,000 settlement to resolve claims under the Fair Labor Standards Act ("FLSA") and the wage and hour laws of California, Illinois, Massachusetts, Michigan, Minnesota, New York, North Carolina, and Wisconsin. Plaintiffs now seek consolidation of the *Wood* and *Sinclair* matters for the limited purpose of seeking settlement approval and further seek approval of this proposed class and collective settlement.

As explained below, the proposed settlement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval. This is a fair result for the Classes and Collective, particularly in the face of significant risk, uncertainty, expense, and delay that would result from trying the claims before a jury, litigating any appeal, and securing a monetary recovery in any post-trial damages proceedings. Accordingly, Plaintiffs respectfully request that the Court: (1) consolidate the *Wood* and *Sinclair* cases for settlement purposes; (2) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Justin M. Swartz ("Swartz Decl."); (3) certify for settlement purposes only the proposed Massachusetts Class and appoint Outten & Golden LLP ("O&G") and Shavitz Law Group, P.A. ("SLG") as Class Counsel; (4) approve the proposed Notice Package and direct its distribution; (5) appoint CAC Services Group, LLC ("CAC") as the Settlement Administrator; and (6) schedule a fairness hearing on final approval of the Settlement.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Summary of Plaintiffs' Claims

On November 19, 2019, Defendant launched Michael Bloomberg's 2020 presidential campaign. *Wood*, Dkt. 510 (Fourth Am. Compl.) ¶ 1. Plaintiffs and class and collective members are former Field Organizers who worked for the Campaign throughout the United States from November 7, 2019, to March 31, 2020. Plaintiffs principally allege that the Campaign violated the FLSA, the California Private Attorney General Act ("PAGA"), and analogous state laws by failing to pay field organizers overtime wages. Plaintiffs also allege additional violations of California law.[1]

Plaintiffs also asserted claims for fraudulent inducement and promissory estoppel arising out of an alleged oral promise of employment through November 2020. As explained below, those claims were dismissed and that dismissal was affirmed on appeal.

## II. The *Wood* Litigation

Plaintiffs filed the *Wood* class and collective action on behalf of themselves and other field organizers on March 23, 2020. Dkt. 1.

### A. Discovery

The parties engaged in fact discovery from August 2020 to May 2023. Plaintiffs took five depositions of the Campaign's corporate witnesses, and the Campaign deposed 21 Plaintiffs and opt-in Plaintiffs. Swartz Decl. ¶ 14. In total, the parties exchanged nearly 200,000 pages of document discovery. *Id.* Throughout discovery, the parties had to address numerous disputes, including several that required filing motions with the Court. *See, e.g.*, Dkt. 134 (the Campaign's mot. to stay discovery); July 16, 2020 Minute Order (resolving discovery disputes);

---

[1] Plaintiffs also alleged additional violations of New York law, but those claims were dismissed on summary judgment.

Dkt. 189 (Plaintiffs' mot. to compel the Campaign to engage in ESI searches); Dkt. 343 (the Campaign's mot. to compel Plaintiffs to produce text messages and emails). The parties also engaged in expert discovery from May 2023 to December 2023, including depositions, focused on internet architecture and interstate transmission of data through use of certain databases and platforms. Swartz Decl. ¶ 15.

**B. Conditional FLSA Certification**

Plaintiffs promptly moved for conditional certification after filing their case. *See* ECF Nos. 32, 63. On July 20, 2020, the Campaign moved to stay discovery, Dkt. 134, which the magistrate judge deemed withdrawn on January 15, 2021, Dkt. 175. On September 3, 2020, the magistrate judge granted Plaintiffs' motion for conditional certification. Dkt. 148. The Campaign objected to the decision. Dkt. 151. On November 24, 2021, the Court ordered that notice be sent to potential opt-in plaintiffs. Dkt. 203.

The Campaign further objected to Plaintiffs' proposed notice to the collective, and the parties filed a joint letter outlining their respective positions, Dkt. 205, which the magistrate judge resolved on December 17, 2021. Dkt. 210. On January 19, 2022, Plaintiffs sent notice to approximately 1,392 putative collective members. Swartz Decl. ¶ 16. Over the next two months, O&G and SLG (collectively, "Class Counsel") fielded questions via telephone and email from many field organizers. *Id.*

**C. Motion to Dismiss**

On June 16, 2020, the Campaign moved to dismiss Plaintiffs' FLSA and class claims. *See* Dkt. 111. On March 25, 2022, the Court denied Defendant's motion to dismiss Plaintiffs' FLSA claims but granted the motion as to Plaintiffs' common law claims for fraudulent inducement and promissory estoppel arising out of the alleged oral promise of employment

through November 2020. Dkt. 258. Plaintiffs appealed, and on October 10, 2023, the Second Circuit affirmed the Court's order dismissing the two common law claims. Dkt. 413. During the pendency of that appeal, the parties participated in the Second Circuit mediation program to explore a potential resolution of the case and met on June 29, 2022, and July 14, 2022, but they were unable to reach a resolution. The Campaign also moved to certify an interlocutory appeal of the Court's holding that FLSA coverage could apply, which Plaintiffs opposed, and the Court denied. ECF Nos. 298-300.

On September 20, 2022, Plaintiffs filed the Third Amended Complaint adding PAGA claims, over the Campaign's objections and after the Court granted their motion to amend. Dkt. 296. The Campaign moved to dismiss the FLSA claims for a second time and to dismiss the PAGA claims, which the Court denied. ECF Nos. 302, 394.

### D. Class Certification, Class Notice, and Summary Judgment

Plaintiffs moved to certify the seven state law classes under Federal Rule of Civil Procedure 23 on August 16, 2023. Dkt. 382. In early 2024, the parties simultaneously briefed the Campaign's motion to decertify the collective (Dkt. 432), and the parties' cross-motions for summary judgment (ECF Nos. 444, 455). Plaintiffs moved for summary judgment on one issue, and the Campaign moved for summary judgment on nine issues. ECF Nos. 444, 455. On April 17, 2024, the Campaign moved to exclude the opinions and testimony of Plaintiffs' expert Jonathan Jaffe (Dkt. 480).

On August 27, 2024, the Court certified the seven state law classes (California, New York, Illinois, North Carolina, Michigan, Wisconsin, and Minnesota) under Rule 23 and denied Defendant's motion to decertify the FLSA collective. Dkt. 506. Defendant petitioned to appeal the class certification order under Rule 23(f), which Plaintiffs opposed. The Second Circuit

denied the petition on January 3, 2025. Dkt. 532. On December 12, 2024, after the parties had to seek Court intervention on several disputes about the notice process (ECF Nos. 517, 519, 524, 529), class members received notice about class certification. ECF Nos. 529-30. Class Counsel fielded questions via telephone and email from numerous field organizers during the class notice period. Swartz Decl. ¶ 19.

On March 31, 2025, the Court denied the Campaign's motion for summary judgment, in part, and denied Plaintiffs' motion for summary judgment, and further denied the Campaign's motion to exclude the expert opinions of Mr. Jaffe. Dkt. 539 at 34-35. On April 4, 2025, the Campaign moved for reconsideration of the Court's summary judgment decision, and on April 22, 2025, the Campaign moved for an interlocutory appeal of the decision. ECF Nos. 542, 547. Plaintiffs opposed both motions, ECF Nos. 553, 554, and the Court denied both motions, Dkt. 560, which cleared the path for trial.

**E. Trial Preparation**

Under the Court's pre-trial order, Dkt. 431, the Court set the date of the final pre-trial conference for October 3, 2025, and additional deadlines for submission of motions in limine, the Joint Pretrial Statement, exhibit and witness lists, exhibit objections, the proposed verdict form, and proposed jury instructions. Over the almost five months that followed the Court's summary judgment decision, Class Counsel engaged in extensive preparation for a class action trial.

*First*, Class Counsel spoke with over 35 class and collective members to update them on the case; confirm their availability to testify at trial; discuss their potential testimony; and answer their questions. Class Counsel relied on these conversations to guide strategy and create their witness list. Class Counsel also reviewed the transcripts for all depositions taken in this case to

further help them decide which witnesses to call.

*Second*, Class Counsel reviewed thousands of documents to refine their case strategy and create their exhibit list. Class Counsel put extensive thought into creating a tailored exhibit list that included documents necessary to establish Plaintiffs' evidentiary burden and rebut the Campaign's defenses.

*Third*, the Campaign identified nearly 700 exhibits on its exhibit list. Class Counsel spent significant time reviewing each of these documents individually to identify objections and potential motions in limine. Plaintiffs ultimately filed six motions in limine and drafted objections to a significant number of the Campaign's exhibits. Dkt. 578; Swartz Decl. ¶ 20. The Campaign opposed all of Plaintiffs' motions. Dkt. 581.

*Fourth*, the Campaign filed three motions in limine and a renewed motion to decertify the class and collective. ECF Nos. 567-76. Opposing these motions—particularly the decertification motion—was time-intensive and required extensive review of the record and deposition transcriptions, as well as legal research.[2]

*Fifth*, prior to settling, the parties were close to finalizing the Joint Pre-Trial Statement, which included witness lists, exhibit lists and objections, proposed jury instructions, proposed verdict form, deposition designations, and proposed voir dire. Class Counsel expended significant time finalizing its portions of the statement, as well as extensively reviewing and proposing revisions to sections the Campaign drafted.

*Sixth*, Class Counsel engaged in significant additional trial strategy and planning, including preparing trial technology, formulating lines of questioning, and researching anticipated legal issues.

[2] As noted in n.8, *infra*, in light of the parties' requested adjournment of the pretrial hearing, the Court denied these motions with leave to refile.

During this time, the parties continued to discuss the potential for settlement with the assistance of mediator David Geronemus, Esq. On September 17, 2025, the parties reached an agreement in principle and jointly moved to extend the pretrial deadlines. The parties then engaged in an additional six months of negotiations, and ultimately executed the settlement agreement on April 17, 2026.

## III. The *Sinclair* Litigation

Plaintiff Sinclair filed a class action on behalf of himself and other field organizers in Massachusetts on June 12, 2020. Dkt. 1. The Campaign filed its answer on August 7, 2020, Dkt. 24, and the parties engaged in extensive fact discovery, including depositions, from August 2020 to September 2022, Dkt. 57.

Plaintiff Sinclair first moved for class certification on October 31, 2022, Dkt. 59, which the Court denied without prejudice on August 25, 2023, Dkt. 89, based on questions of jurisdiction and without addressing the Rule 23 factors. Plaintiff Sinclair filed a renewed motion for class certification on September 18, 2023, Dkt. 94, which the Court again denied without prejudice on August 19, 2024, Dkt. 116, based on questions of jurisdiction. On September 18, 2023, Plaintiff Sinclair submitted a response to the Court's order to show cause regarding jurisdiction and renewed his motion for class certification, Dkt. 117. The Court has not yet ruled on the Order to Show Cause or class certification.

## IV. Settlement Negotiations

Following the Court's certification and summary judgment decisions, the parties began to explore a potential resolution with the assistance of Mr. Geronemus, including participating in a full-day mediation on January 29, 2025. While the parties did not settle, they continued to discuss a potential resolution over the course of the following eight months, with the assistance

of the mediator. At all times, the parties engaged in arm's-length negotiations and separately negotiated a class fund and attorneys' fees. On September 17, 2025, with the close assistance of the mediator, the parties reached agreement in principle on the basic contours of a resolution. The parties continued to negotiate the terms of a full settlement agreement, which was executed on April 17, 2026.

## SUMMARY OF SETTLEMENT TERMS[3]

### I. Class Definition

For settlement purposes only, the Settlement Class Members are defined as follows:

a. All individuals who worked as a Field Organizer for the Campaign in California, Illinois, Massachusetts, Michigan, Minnesota, New York, North Carolina, and Wisconsin between November 7, 2019 and April 30, 2020, and who did not opt out of their respective state law class.

b. All individuals who, prior to the Preliminary Approval Date, filed written consents to join the Class litigation and worked as a Field Organizer for the Campaign between November 7, 2019 and April 30, 2020.

Settlement Agreement §§ 1(d), 5.[4]

### II. Monetary Settlement Terms

The Campaign has agreed to pay a Maximum Settlement Amount of $6,000,000 into a Qualified Settlement Fund to settle these consolidated cases. *Id.* § 1(q). The Net Settlement Amount, which is the Maximum Settlement Amount of $6 million less Court-approved Attorneys' Fees and Lawsuit Costs (proposed to be $4,200,000), Service Payments (proposed to be $151,000 for 11 Class Representatives and 9 Discovery Participants), the LWDA Payment

---

[3] All capitalized terms used in this brief are defined in the Settlement Agreement and Release, attached to the Swartz Decl. as Exhibit 1 (hereafter, "Settlement Agreement").

[4] For purposes of settlement, class and collective members will be treated identically and are referred to collectively as Participating Class Members.

($10,000), the Settlement Administrator's Fees and Costs, and the Campaign's share of payroll taxes on Participating Class Member Payments, will be allocated on a pro rata basis as outlined below to Participating Class Members. *Id.* § 6.

Based on the Campaign's records, the parties estimate there are approximately 1,021 Settlement Class Members. Swartz Decl. ¶ 27.

## III. Allocation of Class Member Payments

Participating Class Members will be paid based on the number of full workweeks they worked as a Field Organizer for the Campaign. Settlement Agreement § 6. The Settlement Administrator will calculate the number of full workweeks by using the Campaign's personnel records. *Id.*

The Settlement Administrator will allocate a pro rata share of the Net Settlement Amount to each Participating Class Member based on the number of full workweeks calculated. *Id.* Next, the Settlement Administrator will determine each Participating Class Member's Payment by calculating the portion of such pro rata share to be remitted to taxing authorities, including the Campaign's share of payroll taxes, and submit those amounts to taxing authorities, and pay the remainder to each Participating Class Member. *Id.*

## IV. Releases for Proposed Class and Collective Members

Each Participating Class Member, upon the Effective Date following the Final Approval Order, will release the Released Parties, as defined in the Settlement Agreement, from any suits, actions, causes of action, complaints, charges, grievances, claims, demands, debts, losses, obligations and/or liabilities of any kind—whether arising under federal, state, or local statute, regulation or ordinance, including, but not limited to, the Fair Labor Standards Act, the California Labor Code, California's Unfair Competition Law, the California Private Attorney

General Act, the Illinois Minimum Wage Law, Mass. Gen. L. c. 149, §§ 148-150, Mass. Gen. L.c. 151, the Michigan Workforce Opportunity Wage Act, the Minnesota Fair Labor Standards Act, the New York Labor Law, the North Carolina Wage and Hour Act, Wisconsin Statute §§ 103 and 104 *et seq*., Wis. Admin Code § DWD 274.03, and common law, including but not limited to, contract, quasi-contract, tort, or equity—that are based on, arise out of, or relate to a Field Organizer's employment with the Campaign, including without limitation, claims related to recruitment, hiring, payment of wages, classification, hours worked, overtime, wage payments, benefits, and/or separation from employment as well as any other such claims that were alleged or could have been alleged in the Class Litigation based on, or arising out of, or related to the same factual predicate as the Class Litigation, including, but not limited to, any claim for breach of contract, promissory estoppel or fraudulent inducement alleging that the Campaign promised or represented that Field Organizer employment would be for a fixed or minimum term or continue through a certain date/event, or that early termination would entitle a Field Organizer to continued pay or other benefits.

**V. Attorneys' Fees and Costs**

Under the Settlement Agreement, Class Counsel will request Court-approval of attorneys' fees and costs in the amount of $4,200,000. *Id.* § 8(a). This payment is for the attorneys' fees Class Counsel has expended over the course of more than six years of contentious litigation in two cases, as well as the significant litigation expenses Class Counsel incurred, including expert witness fees for Mr. Jaffe (who was critical to Plaintiffs' success in opposing the Campaign's summary judgment motion), as well as both class and collective notice distribution. Class Counsel's expenses to date exceed $100,000, and Class Counsel's actual lodestar exceeds $7 million—significantly greater than the fee and cost request made here. Class

Counsel will continue to spend significant time during the course of the settlement's administration. At final approval, Class Counsel will make a formal application to the Court for fees and costs.

## VI. Settlement Administration

Class Counsel has selected CAC as the Settlement Administrator. Swartz Decl. ¶ 32; Settlement Agreement § 1(jj). The Settlement Administrator will distribute the Notice Package, reminders, settlement checks, and Court-approved Service Payments and attorneys' fees and costs and otherwise administer the settlement. Settlement Agreement § 14.

Within 30 days of the Preliminary Approval Date, the Settlement Administrator shall distribute the Court-approved Notice Forms by first class U.S. mail and email. *Id.* § 14(b). Class Counsel will also post links to the general notice on a website. *Id.* § 14(c). For any Notice Packages returned as undeliverable, the Settlement Administrator will take all reasonable steps to obtain the correct address, including through a standard Level 2 Skip Trace, and shall attempt to re-mail the Notice Package. *Id.* § 14(d).

Class Members may object to the Settlement by following the instructions described in the pertinent Notice Form. *Id.* § 14(g). Settlement Collective and Class Members may exclude themselves from the Settlement by following the instructions described in the pertinent Notice Form—i.e., by filing a Request for Exclusion. *Id.* § 14(h). The Campaign may terminate the Settlement Agreement if the number of Valid Exclusions exceeds the opt-out threshold set forth in the Parties' side letter, which has been submitted under seal. *Id.* § 14(i).

Each settlement check shall expire 90 days after it is dated. *Id.* § 15(d). The Settlement Administrator will send out reminders via email and first-class U.S. mail within 30 days before, and a final reminder via email and text message within seven days before, the 90-day deadline to

Participating Class Members reminding them to cash their checks. *Id.* 15(f).

Within 20 days after the 90-day check-cashing period has expired, the Settlement Administrator shall provide the parties with a final accounting. Any portion of the Qualified Settlement Fund not needed for Participating Class Member Payments and employer-side payroll taxes (or for Court-approved fees, costs, Service Awards, or Administration Costs) shall be distributed as a *cy pres* award to Legal Services NYC.

## ARGUMENT

### I. Consolidation for the Limited Purpose of Settlement Approval Is Appropriate.

Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiffs request that the *Wood* and *Sinclair* matters be consolidated for the limited purposes of settlement approval and further request that *Wood* be designated the lead case for the purpose of settlement approval and related filings. Rule 42(a) provides the Court with discretion to consolidate actions pending in the same court if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). Consolidation here is appropriate for settlement purposes because the two cases involve the same core factual allegations and legal theories—specifically, Plaintiffs' allegation that the Campaign failed to pay Field Organizers overtime wages under federal and state laws—and therefore it "will allow a more expeditious settlement and the simultaneous and efficient resolution of all claims against Defendant." *Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 63 (S.D.N.Y. 2014) (consolidating cases for settlement purposes).

## II. Preliminary Approval of the Class Action Settlement Is Appropriate.[5]

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context" (internal quotation marks omitted)). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).

Review of a class settlement proceeds in "two stages." Fed. R. Civ. P. 23(e); *see also Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647, at *4-5 (S.D.N.Y. Mar. 14, 2013). First, the "court makes a preliminary evaluation of fairness," and then the Court determines whether notice to the class is justified by the parties' showing that the court will likely be able to approve the settlement as fair, reasonable, and adequate. *Id.* (internal quotation marks omitted). Then, after notice and an opportunity to object are given to the class, the Court holds a fairness hearing. *Id*. at *4.

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties. 4 Newberg and Rubenstein on Class Actions (Sixth) § 13:10; *see Soler*, 2023 U.S. Dist. LEXIS 42647, at *5. Fairness is determined upon review of both the terms of the settlement agreement and the negotiation process that led to the agreement. *Wal-Mart Stores*, 396 F.3d at 116-17. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011

---

[5] Plaintiffs will seek approval of the settlement of the FLSA collective claims with their final approval motion. "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns," so Plaintiffs do not address the FLSA claims separately. *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 2, 2010).

U.S. Dist. LEXIS 21102, at *6 (E.D.N.Y. Feb. 18, 2011) (internal quotation marks omitted).

The first step in the settlement process simply allows notice to issue to the class and for class members to object to or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000), as well as other factors delineated by Federal Rule of Civil Procedure 23(e)(2). *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 118 (2d Cir. 2025).[6] Although the Court need not fully evaluate the *Grinnell* factors to conduct its initial evaluation of the settlement, for purposes of evaluating the settlement's fairness, it is useful for the Court to consider these criteria. Here, the relevant *Grinnell* and Rule 23(e)(2) factors weigh in favor of preliminary approval.

**A. Proceeding to Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to trial, Plaintiffs avoid significant additional expense and delay and ensure individual relief for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 174 (S.D.N.Y.

---

[6] The *Grinnell* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463 (citations omitted). The Rule 23(e) factors include: (1) the adequacy of class representatives and class counsel); (2) whether the proposal was negotiated at arm's length; (3) the adequacy of the relief; and (4) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

This case is no exception. The parties have already engaged in significant discovery, motions practice, and trial preparation, including trial conferrals, briefing motions in limine, and preparing the joint pretrial statement with exhibit and witness lists, proposed jury instructions, proposed voir dire, and the other required elements. Swartz Decl. ¶ 34. The parties also fully briefed the Campaign's renewed motion to decertify the classes and collective in *Wood*, which is pending before the Court.[7] *Id.* Without a settlement, Plaintiffs in *Wood* will complete preparation of the joint pretrial statement, prepare for and attend the pretrial hearing, engage in further significant trial preparation, including preparing dozens of witnesses to testify, before completing the trial itself, which may span multiple weeks. Additionally, were Plaintiffs successful at trial, the Campaign has indicated that it would appeal the judgment and raise numerous novel issues on appeal, including constitutional questions, thereby extending the duration of the litigation. *Id.* Further, Plaintiffs moved to bifurcate the trial between a merits and damages phase. Dkt. 578. If the Court granted this motion, Plaintiffs would need to prepare for the damages phase, including potentially facilitating submission of claim forms or other evidence. Likewise, in *Sinclair*, class certification is still pending before the Court; even if Plaintiffs ultimately prevailed, as evinced in *Wood*, significant time and risk still lay ahead.

The Settlement, on the other hand, provides significant relief to Class Members now. Class Members have been waiting over six years for the overtime wages they allege are owed—there is a high value in ensuring they do not face potentially years' worth of further delay. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

[7] On January 8, 2026, the Court denied the parties' pending pretrial motions, with leave to refile, in light of the parties' requested adjournment of the pretrial hearing.

### B. The Court Cannot Assess the Reaction of the Class Until After Notice is Issued (*Grinnell* Factor 2).

Because Class Members have not been notified of the settlement at this stage, the Court will be in a better position to analyze this factor after notice issues and Class Members have had an opportunity to opt out or object to the settlement. Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### C. Robust Discovery Has Allowed the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

To evaluate this factor, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted and alterations in original)).

As discussed above, the parties have engaged in years of robust discovery, extensive depositions, and multiple rounds of hard-fought motion practice, including pre-trial motions in limine, through which Class Counsel have thoroughly explored each party's core respective claims and defenses for both cases. Swartz Decl. ¶ 37. Based on their exchange of information, the parties were well equipped to evaluate the strengths and weaknesses and "had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. Thus, this factor supports preliminary approval. *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617-20 (S.D.N.Y. 2012) (collecting cases) (granting preliminary approval even where only targeted, pre-mediation discovery had occurred).

### D. The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997). In weighing the risks of establishing liability and damages, "[t]he court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted). Here, Plaintiffs recognize the substantial risks of the litigation, including the possibility that if this action is not settled now, it might not result in any recovery or might result in a recovery that is less favorable following significant delay.

As discussed further below, Plaintiffs faced risk that the Court would decertify the classes and/or collective. *See* Dkt. 566 (the Campaign's brief in support of renewed mot. to decertify); Swartz Decl. ¶ 38. In addition, even if the Court maintained class and collective certification, Plaintiffs face substantial risk that the jury could rule against them on the merits of their claims. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) ("Plaintiffs faced numerous risks as to both liability and damages, including overcoming [d]efendant's defense that [p]laintiffs and [c]lass [m]embers were exempt from federal and state overtime requirements, proving willfulness in order to obtain a third year of liability and damages, and overcoming [d]efendant's likely fluctuating workweek argument."); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *14 (S.D.N.Y. Sep. 23, 2014) (same). For example, the jury might find that Field Organizers are not covered by the FLSA because they did not engage in interstate commerce, or that Field Organizers' primary duties were administrative as defined by the FLSA and state laws. The Campaign has

consistently maintained that at all times it has complied with all applicable federal and state wage and hour laws, which means there is a real risk that the Campaign could prevail at trial based on its ability to demonstrate such compliance. Swartz Decl. ¶ 40. Finally, given that there are no time records showing hours worked, proving damages would be based partly on Class Members' recollection of hours worked. The jury could find that Field Organizers did not work any overtime or worked very little overtime, which would significantly reduce their damages, even if they prevailed on the liability questions before the jury.

In contrast to these known risks, the settlement ensures that the Campaign will promptly provide monetary relief to Participating Class Members.

### E. The Risk of Obtaining Class Certification Favors Approval (*Grinnell* Factor 6).

Despite having prevailed in obtaining class and collective certification, Plaintiffs still face risk of the classes and/or collective being decertified. Although Plaintiffs continue to believe strongly in the appropriateness of certification, the Campaign has a currently-pending motion before the Court to decertify the classes and collective in *Wood*, and Plaintiffs' opposed class certification motion in *Sinclair* remains pending. Specifically, among other things, the Campaign maintains that there are material differences in the work performed by Field Organizers at various locations, and that such material differences warrant decertification of the collective and the classes. Dkt. 566 (the Campaign's mot. to decertify); Swartz Decl. ¶ 38; *see also Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144, at *18 (S.D.N.Y. Dec. 21, 2010) (finding "[t]he risk of maintaining class status throughout trial" in a class and collective action wage and hour settlement "weigh[ed] in favor of final approval"). Even if the Court denied the pending motion to decertify, the Campaign may also move to decertify again during or following trial and may appeal the denial following trial. *See Johnson*

*v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 568, 572 (E.D. La. 2008) (decertifying collective action after trial). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors preliminary approval.

### F. The Court Should Give Little Weight to Whether Defendant Can Withstand a Greater Judgment (*Grinnell* Factor 7).

The Campaign is a distinct legal entity, and Plaintiffs have no information regarding its ability to withstand a greater judgment. At the same time, there is no known basis to conclude that the Campaign would not be able to withstand a greater judgment. In any event, the "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. Accordingly, this factor is neutral and does not preclude the Court from granting Preliminary Approval.

### G. The Settlement Is Fair in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The settlement amount represents fair value for Class Members, especially given the risks of litigation. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *Id.* at 178 (internal quotation marks omitted); *see also Ballinger v. Advance Magazine Publrs., Inc.*, No. 13 Civ. 4036, 2014 U.S. Dist. LEXIS 179538, at *7 (S.D.N.Y. Dec. 29, 2014) ("The inquiry . . . is to see whether the settlement falls below the lowest point in the range of reasonableness." (internal quotation marks omitted)). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak C*o., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks omitted).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*

*Corp.*, 495 F.2d at 455 n.2. Here, the settlement provides for monetary compensation for Class Members from a gross fund of $1,800,000, subject to certain deductions for administration of the settlement. Class Counsel estimates that this represents approximately 87 percent of the unpaid overtime wages owed to the Class Members, calculated based on 10 hours of overtime worked in 90 percent of workweeks, under the Fluctuating Workweek methodology, excluding potential liquidated damages and additional state law claim damages. While Plaintiffs may have been able to obtain a higher damages award at trial, this is a fair and reasonable recovery for Class Members, particularly in light of the risks of litigation. On average, each Participating Class Member will receive a gross amount of approximately $1,763, which may be lower based on the Net Fund calculation and tax withholdings. Swartz Decl. ¶ 28.

### H. The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)).

The Court previously found in *Wood* that both Class Counsel and the Class Representatives adequately represented the classes. *See* Dkt. 506 at 15 (finding "no dispute that Plaintiffs have fully participated in the litigation of this case since 2020, are aware of the claims, understand their obligations as class representatives, and have no known conflict with any class member"); *id.* (noting in 2024 that Class Counsel "have already performed significant work and committed substantial resources to Plaintiffs' case through four years of discovery and motion practice"). Nothing since certification "has cast doubt on Class Counsel's ability to adequately represent the Class." *Barry's Cut Rate Stores Inc. v. Visa Inc. (In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.)*, No. 05 Civ. 1720, 2024 U.S. Dist. LEXIS 114665, at *162 (E.D.N.Y. June 25, 2024). Indeed, since then, Class Counsel have continued to vigorously litigate the case, including through summary judgment, pretrial motions, trial preparation, and spending months negotiating the settlement terms to ensure fairness.

### I. The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B)).

The Parties negotiated the Settlement Agreement at arm's length with the substantial assistance of a skilled mediator, Mr. Geronemus, over the course of a mediation session and months of continued discussions, culminating in a mediator's proposal that the parties further negotiated before reaching agreement. It is fair, reasonable, and adequate considering the *Grinnell* factors discussed above. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

### J. The Relief Provided for Class Members is Adequate (Rule 23(e)(2)(C)).

The Settlement Agreement provides adequate relief to Class Members. Under Rule 23, in making this determination, courts should "tak[e] into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). The first and second sub-factors are addressed above under the *Grinnell* factors.

The relief provided to the Class Members is also reasonable in the context of the proposed attorneys' fees and costs (which will be more fully briefed at the final approval stage). The parties have engaged in over six years of contentious litigation, including multiple rounds of dispositive briefing, along with class and collective certification briefing; robust discovery (with numerous litigated discovery disputes); extensive pre-trial motion briefing; and trial preparation, as the parties settled this case just over two weeks prior to the pre-trial conference. Class Counsel's proposed attorneys' fees award is significantly smaller than Class Counsel's actual lodestar; Class Counsel already has a negative multiplier on fees in this case, and their lodestar

will continue to increase through the approval process. Courts in this District have routinely found requested attorneys' fees to be "fair and reasonable" when they are "less than the lodestar amount." *Dakey v. Dahlia, Inc.*, No. 19 Civ. 9445, 2020 U.S. Dist. LEXIS 67931, at *6 (S.D.N.Y. Apr. 17, 2020).

That the proposed attorneys' fees award is for a larger sum than the proposed class and collective award is a routine element of wage and hour litigation that is consistent with the purposes of the FLSA. *See Fisher v. SD Prot., Inc.*, 948 F.3d 593, 603-04 (2d Cir. 2020) (observing that wage and hour cases "often involve ordinary, everyday workers" who are not paid high wages, resulting in "limited recoveries," and noting that "[f]ee awards . . . should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel" (internal quotation marks omitted)). When litigating claims on behalf of campaign workers, whose jobs are inherently time-limited, each worker is likely to have relatively small individual damages. Here, Class Members only worked for the Campaign for, at most, approximately five months—most Field Organizers' tenures were even shorter. The fees and costs associated with litigating any one wage and hour claim on behalf of a Field Organizer are thus virtually guaranteed to quickly dwarf the dollar value of that person's claim. Swartz Decl. ¶ 33. That is why the Second Circuit has "repeatedly rejected the notion" in FLSA cases "that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Id.* at 602 (internal quotation marks omitted); *see also Grochowski v. Ajet Constr. Corp.*, No. 97 Civ. 6269, 2002 U.S. Dist. LEXIS 5031, at *5-6 (S.D.N.Y. Mar. 27, 2002) (noting that there is no proportionality rule for fees in the FLSA context). "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in wage and hour

cases] encourages the vindication of congressionally identified policies and rights." *Grochowski*, 2002 U.S. Dist. LEXIS 5031, at *5 (internal quotation marks omitted); *see also Marin v. 310 Bowery Grp. LLC*, No. 24 Civ. 1340, 2025 U.S. Dist. LEXIS 153516, at *14 n.8 (S.D.N.Y. Aug. 8, 2025) ("[I]n evaluating the fairness of an FLSA settlement," courts are not required "to 'examine how recovery is apportioned between class members and class counsel.'" (quoting *Kurtz*, 142 F.4th at 118)).

Indeed, the Second Circuit has approved attorneys' fees awards more than twenty times a plaintiff's recovery. *See Luo v. L&S Acupuncture, P.C.*, 649 Fed. App'x 1, 1, 3 (2d Cir. 2016); *see also Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 9-10, 31 (S.D.N.Y. 2015) (approving attorneys' fees award more than 15 times the plaintiff's recovery). In light of the relatively low dollar value of each individual claim, the fair and reasonable result achieved, and the extensive time and expenses Class Counsel put into this case over the past five-plus years (with no guarantee of ever recovering any of these outlays), the attorneys' fees award here is reasonable.

### K. The Proposal Treats Class and Collective Members Equitably Relative to Each Other (Rule 23(e)(2)(D).

The Settlement Agreement provides substantial relief to the Class Members and treats them equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). The Class Members will receive compensation under a standard distribution formula that distributes the same amount per full workweek to each Class Member. *See* Settlement Agreement § 6.

* * *

In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant *Grinnell* and Rule 23(e)(2) factors.

## III. Certification of the Massachusetts Settlement Class Is Appropriate.

For settlement purposes only, Plaintiff Sinclair seeks to certify the Massachusetts Class if

Field Organizers who worked in Massachusetts from November 7, 2019 through April 30, 2020 under Federal Rule of Civil Procedure 23(e), which the Campaign does not oppose. Plaintiff and the proposed Massachusetts Settlement Class satisfy all elements of Rule 23(a) and 23(b)(3). Consistent with the Court's class certification motion in *Wood* (Dkt. 506), class certification of this virtually identical state law class is likewise appropriate for settlement purposes.

**A. Numerosity Is Satisfied.**

Courts regularly find that numerosity is satisfied where the class size is nearly 40 individuals. *See Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (class with 36 members satisfied numerosity). There are approximately 35 Massachusetts Settlement Class Members (approximately 18 of whom are members of the FLSA Settlement Collective). Swartz Decl. ¶ 27. Given the size of the proposed Massachusetts Class, the numerosity requirement is satisfied.

**B. Commonality Is Satisfied.**

The proposed Massachusetts Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiff alleges that all Class Members are unified by common factual allegations and legal theories—whether the Campaign can establish that the primary duties of Field Organizers in Massachusetts make them either "administrators" or "executives." The primary duty question is well-suited for class-wide resolution because "there are significant elements of proof that are common across all class members" that can establish the key features of Field Organizers' job duties. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008);

*see also Wood*, Dkt. 506, at 8-12.

**C. Typicality Is Satisfied.**

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).

For the same reasons articulated by this Court in *Wood*, Plaintiff Sinclair's claims are typical of the claims of the proposed Massachusetts Class. *Wood*, Dkt. 506 at 13-15. Plaintiff Sinclair performed similar job duties as other class members and was subject to the same overtime exemption classification. *See Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214, at *47 (E.D.N.Y. Sept. 16, 2014).

**D. Adequacy of the Named Plaintiff Is Satisfied.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). Plaintiff Sinclair meets Rule 23(a)(4) because he does not have interests antagonistic to the class, and he has demonstrated a commitment to the class by assisting with the prosecution of the case, participating in discovery, and facilitating settlement of the class claims. *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175-76 (S.D.N.Y. 2014) (adequacy requirement met where there was no evidence that named plaintiffs' and class members' interests were at odds). Plaintiff Sinclair has also selected counsel who are adequate to represent the classes' interests. *See Wood* Dkt. 506 at 15.

**E. Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). For the purposes of settlement, these requirements are met.

**1. Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *See McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, particularly in the settlement context, Plaintiff Sinclair's common contentions—that he and other Field Organizers employed by the Campaign performed the same uniform set of duties—predominate over any issues affecting only individual Massachusetts Settlement Class Members. *See, e.g., Perez*, 2014 U.S. Dist. LEXIS 130214, at *53 (holding that predominance satisfied where "there is evidence that the duties of the job are largely defined by

comprehensive corporate procedures and policies." (internal quotation marks omitted)). No individualized issues inhibit the Court's ability to determine common merits questions or to resolve the settlement approval motion on behalf of the class.

**2. A Class Action Is a Superior Mechanism.**

Rule 23(b)(3) next considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Plaintiff Sinclair satisfies all four factors. *First*, where "many of the class members are alleged to be owed only a relatively modest amount which might not justify the cost of individual litigation, . . . pursuing this litigation individually would be a hindrance rather than a boon." *Grenawalt v. AT&T Mobility, LLC*, No. 11 Civ. 2664, 2014 U.S. Dist. LEXIS 139179, at *15-16 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks omitted). *Second*, Plaintiff Sinclair is unaware of any other pending litigation by members of the proposed class regarding unpaid overtime wages for Massachusetts-based Field Organizers.[8] *Third*, concentrating the litigation in this forum is desirable because the Campaign's national headquarters operated in this District,

[8] Two putative class actions against Mike Bloomberg 2020, Inc., filed in June 2025, are pending. Those cases involve claims of breach of contract and statutory claims for alleged unpaid wages but do not include any misclassification/overtime claims. One case is a nationwide class action pending in the U.S. District Court for the District of Massachusetts, and the other is pending in Massachusetts State Court: *Sipp-Alpers v. Mike Bloomberg 2020, Inc.*, No. 25-cv-11822 (D. Mass.) and *Doty v. Mike Bloomberg 2020, Inc.*, No. 2581-cv-01556 (Mass. Super. Ct.). In the federal action, the Campaign moved to dismiss all but one plaintiff's claims in their entirety, and certain state law claims, and the Campaign's motion remains pending. In the state court action, the court granted the Campaign's motion to dismiss the wage claims. No class certification motion has been filed in either case, and no class has been certified.

and this Court is familiar with the action, which has been pending here for several years. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) (concentrating class action where case pending for six years). *Fourth*, this case is unlikely to present manageability problems because the unpaid overtime claims of potential class members are identical, and because certification is for settlement purposes only. *See Wood* Dkt.506 at 22 (finding superiority).

### F. O&G and SLG Should Be Appointed as Class Counsel for the Massachusetts Class.

O&G and SLG should be appointed as Class Counsel for the Massachusetts Class. Rule 23(g) sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel, including the work counsel has done to investigate and pursue the claims, counsel's experience and knowledge, and the resources counsel will commit. Fed. R. Civ. P. 23(g)(1)(A). For the same reasons that the Court found when appointing O&G and SLG as Class Counsel for the analogous state law classes in *Wood*, Dkt. 506 at 15, and in light of their work to settle the class claims, O&G and SLG satisfy the Rule 23(g) factors here.

## IV. The Proposed Notice and Distribution Process Are Appropriate.

Plaintiffs' proposed Notice Forms, which are attached to the Settlement Agreement as Exhibits A through C, fully comply with due process and Rule 23(c)(2)(B). Fed. R. Civ. P. 23(c)(2)(B). The Notice Forms describe the settlement's terms, inform Class Members about the fees and costs allocation, explain to Class Members how to opt out or object, list each Class Member's estimated payment, and will provide the date, time, and place of the fairness hearing. *See* Settlement Agreement, Exs. A-C. The Notice Forms are written in plain language and organized and formatted to be as clear as possible. Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator will send the Notice Forms to Class Members by mail and

e-mail, create and administer a website, take reasonable steps to obtain correct addresses for Participating Class Members whose notice is returned as undeliverable, attempt re-mailings for those Participating Class Members, and send reminder notices by mail, e-mail, and text message. *See* Settlement Agreement §§ 14, 15(f).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court consolidate these matters for settlement purposes, preliminarily approve the Settlement, conditionally certify the proposed Massachusetts Class and appoint O&G and SLG Massachusetts Class Counsel, approve the proposed Notices and direct their distribution, appoint CAC as the Settlement Administrator, and schedule a fairness hearing on final approval of the settlement.

Dated: April 17, 2026

Respectfully submitted,

By: *<u>/s/ Justin M. Swartz</u>*

Justin M. Swartz
Michael C. Danna
Cara E. Greene
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Email: jms@outtengolden.com
Email: mdanna@outtengolden.com
Email: ceg@outtengolden.com

Jennifer Davidson
Jonathan P. Ostrowsky**
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
Tel.: (202) 929-0720
Email: jdavidson@outtengolden.com
Email: jostrowsky@outtengolden.com

Michael Palitz*
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, NY 10022
Tel.: (800) 616-4000
Email: mpalitz@shavitzlaw.com

Gregg I Shavitz*
Tamra Givens*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd., Suite 285
Boca Raton, FL 33431
Tel.: (561) 447-8888
Email: gshavitz@shavitzlaw.com
Email: tgivens@shavitzlaw.com

*Attorneys for Plaintiffs, the Collective, and the Certified Classes*

*Admitted *pro hac vice*
***Pro hace vice forthcoming*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 17, 2026, the foregoing was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and, will be sent electronically to the registered participants identified on the Notice of Electronic Filings.

Respectfully submitted,

By: *<u>/s/ Justin M. Swartz</u>*

Justin M. Swartz
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Email: jms@outtengolden.com

## LOCAL RULE 7.1(c) WORD COUNT CERTIFICATION

Pursuant to Rule 7.1(c) of the Joint Local Rules for the Southern District of New York and Eastern District of New York ("Local Rule"), the undersigned hereby certifies that this Memorandum of Law was prepared with a computer; contains 8,723 words (excluding the caption, tables, signature blocks, and this certification), including footnotes; and complies with the word count limitation set forth in Local Rule 7.1(c).

Dated: New York, New York
April 17, 2026

*/s / Justin M. Swartz*

Justin M. Swartz
**Outten & Golden LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Email: jms@outtengolden.com