Outten & Golden

**Via CM/ECF**

The Honorable Laura T. Swain
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

September 21, 2026

Re: *Wood et al. v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489 (LTS) (GWG)

Dear Judge Swain:

Along with co-counsel, we represent Plaintiffs, opt-in Plaintiffs, and the certified Classes in the above-referenced matter. We write jointly with Defendant in accordance with the Court's September 11, 2026 Order, Dkt. 624, directing the Parties to address: (1) "the permissible scope of release provisions in cases involving FLSA and wage-and-hour claims"; and (2) "the propriety of the Settlement Agreement's release provision." This letter also responds to the Reply Letter from Shannon Liss-Riordan dated September 9, 2026, Dkt. No. 623 ("Reply Letter"), which continues to mischaracterize the Settlement and misrepresent the status of her own cases.[1] The scope of the release is entirely appropriate, especially considering that this case included claims about the same alleged promise of employment asserted in Ms. Liss-Riordan's cases.

## I. Courts Permit Settlement Releases That Are Premised on the Facts and Claims Pleaded in the Litigation.

The scope of a Rule 23 class release is governed by the identical factual predicate doctrine, under which "a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action . . . ." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); *accord Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 107 (2d Cir. 2005). The *Cheeks* line of authority governs judicial review of the release of FLSA claims and reflects that statute's protective purpose and the courts' duty to "police unequal bargaining power between employees and employers." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (quoting *Flood v. Carlson Rests. Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015)). The release here satisfies both standards.

Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), court approval of FLSA settlements reflects the statute's "uniquely protective" nature and prevents "abuses by unscrupulous employers." *Id.* at 206-207. While overbroad general releases are disfavored, courts hold that releases can reasonably extend beyond wage-and-hour claims where

[1] As this Court already noted, Ms. Liss-Riordan does not have standing to object to the settlement. Dkt. 624.

those other claims are premised on the facts, issues, and claims *in the litigation*. The Parties are not aware of cases holding that merely because a settlement involves wage-and-hour claims it cannot also release other claims that were litigated in the case.

Cases make clear that courts should consider the full pleadings, the context for the release, and the presence of skilled and experienced counsel in determining whether the scope of a settlement release is fair and reasonable. For example, in *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016), the court noted that "there is nothing inherently unfair about a release of claims in an FLSA settlement," and "the release of non-FLSA claims" can be fair and reasonable as long as it does "not run afoul of the FLSA's purpose of preventing abuse from employers," "was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel," and "[w]eigh[s] the litigation risk involved in taking this case to trial." *See also Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 555 (W.D.N.Y. 2018) (finding a release of all employment claims, rather than just FLSA claims, permissible because it was "not as broad as an all-encompassing general release clause"). More recently, in *Lewis v. BCDC Employeeco LLC*, 2025 WL 1534977, at *3 (N.D. Ala. May 29, 2025), the court approved the release's inclusion of non-FLSA claims "under the narrow circumstances presented by this case: a settlement negotiated by experienced counsel on both sides, in a case involving multiple non-FLSA claims, and under circumstances where it does not appear that the plaintiff has any known potential claims outstanding."

The case cited by the Court illustrates the distinction between a release tied to the litigation and an unrestricted general release. In *Sanders v. CJS Sols. Grp., LLC*, 2018 WL 620492, at *1 (S.D.N.Y. Jan. 30, 2018), the plaintiffs only pleaded wage-and-hour claims (and an unjust enrichment claim predicated upon the unpaid wage claim). The court noted that releases should typically not extend to claims "that have no relationship whatsoever to" the issues in the case, which there were "wage-and-hour issues." *Id.* at *4 (citing *Cheeks*). The *Sanders* court found acceptable the class member release, which covered claims "that could have been asserted in the instant action," despite its breadth exceeding the specific claims in the case. *Id*. at *3. The court denied preliminary approval in part because the separate named plaintiff release extended to "any and all" claims "of any kind or nature whatsoever" and therefore far exceed[ed] the scope of the FLSA." *Id*. at *3-4. Notably, the firm seeking approval of that release in *Sanders* was Lichten & Liss-Riordan, P.C., the firm objecting to the release here. The release here is not comparable to the unrestricted release Ms. Liss-Riordan's firm asked the court to approve in *Sanders* — it is confined to employment-related claims within the defined factual scope of this litigation, including the common law claims Plaintiffs actually pleaded and litigated.

The numerous cases cited by Ms. Liss-Riordan, Dkt. 623 at 3-4 & n.2, are all distinguishable. In every single one of those nineteen cases the release was found to be overbroad because it exceeded the claims, facts, and issues litigated in those cases, specifically in cases that only ever involved wage-and-hour claims. These cases are addressed below.

In *Babayeva v. Halstead Mgmt. Co.*, 2018 WL 5997919, at *2-3 (S.D.N.Y. Nov. 15, 2018), the court found "acceptable" a release covering claims "arising out of or relating to any matter regarding the payment of her wages," because it was the "fair result of a balanced negotiation." The court only rejected a separate "general release" covering any claims, including

*future* claims. *Id.* at *2-3. Similarly, because *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015), involved only unpaid overtime claims, the court rejected a general release that would have encompassed unrelated claims such as sexual harassment and held that an appropriate release must be "limited to the claims at issue in this action." *See also Aguirre v. Torino Pizza. Inc.*, 2019 WL 126059, at *3, 5 (S.D.N.Y. Jan. 6, 2019) (requiring release apply "only to the . . . conduct underlying this lawsuit"); *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016) (release problematic when it "exceed[s] the legal basis of Plaintiff's Complaint . . . as well as the factual basis").

Many cases cited by Ms. Liss-Riordan involved only wage claims, but the releases were all-encompassing. *See Gallardo v. PS Chicken Inc.*, 2018 WL 1251980, at *1-2 (E.D.N.Y. Mar. 8, 2018) (release covered "all liability whatsoever," "unrelated to the . . . claims in this action"); *Rubbo v. PeopleScout, Inc.*, 2017 WL 2010311, at *3-4 (E.D. Pa. May 11, 2017) (release included "any and all possible" claims, even beyond employment); *Lee v. Guyoungtech USA. Inc.*, 247 F. Supp. 3d 1257, 1263 (S.D. Ala. 2017) (same); *Robinson v. Harrison Transp. Servs. Inc.*, 2016 WL 3647616, at *3-4 (E.D.N.C. June 30, 2016) (same); *Erling v. American Grille With Sushi LLC*, 2019 WL 3240749, at *4 (M.D. Fla. July 2, 2019) (same); *Lopez v. Poko-St. Ann LP.*, 176 F. Supp. 3d 340, 343 (S.D.N.Y. 2016) (release extinguished "every imaginable claim"); *see also Welch v. Big Boy Rest. Intl LLC*, 2018 WL 4745502, at *2-4 (E.D. Mich. Oct. 2, 2018) (not a settlement approval decision, but rather denying summary judgment on whether a general release of all employment claims, entered into without counsel, could validly waive a FLSA claim). These releases were overbroad because they were not limited to the employment relationship or the actual facts of the lawsuits.

While some of the cases cited had a more tailored release of only employment claims, such releases similarly exceeded the scope of the allegations, issues, and claims in the complaint. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346-47 1351 (M.D. Fla. 2010) (release covered all possible employment claims, but case only pleaded FLSA claims); *Solkoff v. Penn. State Univ.*, 435 F. Supp. 3d 646, 659-60 (E.D. Pa. 2020) (release "includes unrelated claims" to the FLSA claim in the case); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *3-5 (N.D. Cal. Dec. 19, 2012) (same; noting that releases should "track the breadth of the allegations in th[e] action"); *Daniels v. Aeropostale West, Inc.*, 2014 WL 2215708, at *3-4 (N.D. Cal. May 29, 2014) (in FLSA collective action settlement where 90% of opt-ins "would receive nothing or virtually nothing," court found release overbroad because "no one should have to give a release . . . in exchange for zero (or virtually zero) dollars"); *Otey v. CrowdFlower. Inc.*, 2014 WL 1477630, at *6-7 (N.D. Cal. Apr. 15, 2014) (in case involving only wage and hour claims, release was overbroad because it went beyond the scope of the litigation); *Cazeau v. TPUSA Inc.*, 2020 WL 3605652, at *11 (D. Utah July 2, 2020) (same); *Leleux v. Covelli Family Ltd. P'ship*, 2017 WL 5125886, at *3 (M.D. Fla. Oct. 18, 2017) (release problematic because it was "unrelated to the substance of the FLSA claims"); *Flood v. Carlson Rests. Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (same). These cases stand for the principle that the release of claims should be reasonably constrained by the actual facts, issues, and claims pleaded in the litigation. As further discussed below, that is precisely the case here.

Those decisions mostly involved individual or small-group FLSA settlements, not the settlement of certified Rule 23 classes or a certified collective. This case has materially different

safeguards. The Rule 23 Classes were certified after contested briefing, the Court denied the Campaign's motion to decertify the FLSA collective, and the Court appointed Class Counsel under Rule 23(g). The parties also litigated the case for more than six years through two rounds of appellate briefing to the eve of the final pretrial conference. Most importantly, the Agreement permits every Settlement Class Member — including an individual who belongs to only the FLSA Settlement Collective and not to any Rule 23 Class — to opt out, retain the released claims, and forgo a settlement payment. That exclusion right, together with the protections afforded by Rule 23, directly addresses any concern about binding individuals to a release they do not want and were absent from nearly every decision on which the Reply Letter relies.

## II. The Scope of the Release Here Is Reasonable.

This litigation, which has been pending for more than six years, has included claims under the FLSA and the wage-and-hour laws of California, Illinois, Massachusetts, Michigan, Minnesota, New York, North Carolina, and Wisconsin as well as common law claims relating to Plaintiffs' separation from employment, including those arising out of the same theories asserted in Ms. Liss-Riordan's cases. The facts underlying Plaintiffs' wage and common law claims include their hiring and terms of employment, recruiting and onboarding, the Campaign's alleged promise to continue their employment after the primary election, their job duties, their hours worked, and their compensation. *See generally* Dkt. 86 (Second Am. Compl.) The release is properly rooted in Plaintiffs' and Settlement Class Members' employment claims that could arise out of these facts, including the common law claims that were originally pleaded in this case and subsequently dismissed.

Consistent with the cases cited by the Court and Ms. Liss-Riordan, the release here is fair and reasonable for several reasons.

***First***, the Settlement does not include a general all-encompassing release of any and all claims (as Ms. Liss-Riordan states), but is limited to employment claims "that are based on, arise out of, or relate to an FO's employment with the Campaign, including without limitation, claims related to recruitment, hiring, payment of wages, classification, hours worked, overtime, wage payments, benefits, and/or separation from employment as well as any other such claims that were alleged or could have been alleged in the Class Litigation based on, or arising out of, or related to the same factual predicate as the Class Litigation." The scope of the release is therefore intended to be coextensive with the actual facts, issues, and claims actually pleaded and litigated in this case. Because this case involved heavily litigated common law claims, it is reasonable and expected that the settlement release would encompass those claims. This is highly dissimilar from the many cases cited by Ms. Liss-Riordan (and her characterization of the release), which mostly involved general releases of any and all claims untethered to the narrow wage and hour claims in those cases. Notably, Ms. Liss-Riordan does not identify any cases with circumstances similar to those here — where the release includes claims that were actually asserted in the action, and anyone wishing to preserve those identified claims can opt out.

***Second***, the release scope is plainly described and easy to understand. The Parties did not try to "sneak by" the Court; the release was described verbatim in the preliminary approval papers, Dkt. 606 at 9-10, and in the Settlement Notice. It states that the Settlement will release

employment claims, including those "related to the same factual predicate as the Class Litigation, including, but not limited to, any claim for breach of contract, promissory estoppel or fraudulent inducement **alleging that the Campaign promised or represented that FO employment would be for a fixed or minimum term or continue through a certain date/event, or that early termination would entitle an FO to continued pay or other benefits.**" Any individual wishing to preserve such claims will recognize that this release extends to them. The Second Circuit has held that it does "not believe that due process requires further explanation of the effects of the release provision in addition to the clear meaning of the words of the release." *Wal-Mart*, 396 F.3d at 114.

***Third***, the release is not the one-sided, non-mutual release that drew particular concern in *Sanders* and *Lopez*. The concern those cases identify is that an employee may surrender every conceivable claim while the employer surrenders nothing and pays little. Neither half of that description fits here. The Campaign is paying substantial monetary consideration into a common fund, the release is confined to the employment relationship and the factual predicate of this litigation, each Settlement Class Member may decline the bargain entirely by opting out, and the Campaign has not asserted any counterclaims against Plaintiffs or Settlement Class Members.

***Fourth***, the release is reasonable because the Court is able to make a fair assessment of the value of the released claims. For simplicity, the Parties will discuss released claims in three categories: (1) overtime claims, (2) common law claims, and (3) other employment claims covered by the release based on the same factual predicate as the litigation.

The overtime claims have been heavily litigated for years, and the Parties described at length in their preliminary approval papers the reasonableness of the settlement, based in part on the recovery of the overtime claims. *See* Dkt. 606 at 20.

The Court has full knowledge of the value of the common law claims because it dismissed them as a matter of law. Notably, these are the only released claims Ms. Liss-Riordan is concerned about. She claims that her cases are different, the claims should not be released, and her cases must be more thoroughly described to Settlement Class Members because her cases supposedly will offer a different result on the common law claims. Her assertion is premised entirely on her representation that one of her four clients "prov[ed] that after he was hired by the Bloomberg campaign, and after he signed paperwork saying his employment was at will, Bloomberg campaign officials continued to promise him that he would be employed through November 2020." Dkt. 619 at 3; *see also* Dkt. 623 at 8 n.8 (referring to "post-signing promises"). That is not a different record than the Court reviewed here when it granted the Campaign's motion to dismiss and dismissed Plaintiffs' common law claims over four years ago. In fact, Plaintiffs made these exact same allegations. *See, e.g.*, Dkt. 86 (Second Amended Complaint) ¶¶ 19 (alleging that the Campaign made promises of continued employment "after hire during onboarding"); 35 (alleging that "[o]nce employed, the Campaign made additional false promises to Plaintiffs, [and] other FOs, . . . that the Campaign would provide employment . . . through November 2020."). Faced with very similar "after hire" allegations as those now described by Ms. Liss-Riordan, this Court already concluded as a matter of law that Plaintiffs' at-will employment status precluded these claims and therefore they must be dismissed, and the Second Circuit affirmed. While Ms. Liss-Riordan hopes for a different outcome with a different

judge, this Court has already concluded that these claims are barred as a matter of law. The Court therefore can determine that these common law claims, which have been litigated in this case, are reasonable and appropriate to include in the release, and further that they have little to no value given the Court's dismissal.[2]

With respect to other employment claims that may be released because they are rooted in the same facts and issues pleaded in the litigation, these claims should also be assigned no value. Settlement Class Members were employed by the Campaign six-and-a-half years ago, which almost certainly exceeds any statute of limitations window for claims that could be covered by the release. Therefore, nearly any conceivable claim at this point would likely be untimely, but for the claims actively preserved by this case (and those common law claims Plaintiffs litigated, but which the Court dismissed). While these claims lack value, the scope of any release is an element of the settlement negotiation, and the Campaign insisted on their inclusion. In Class Counsel's judgment, from their ability to evaluate the value of these three categories of claims covered by the release, and weighing the risks of trial and recovery, this agreement on this scope of release was necessary to achieve the strong settlement that Counsel achieved.

The release is reasonable because it covers claims actually pleaded and litigated, or closely related to the facts pleaded; it is easy to understand; and most released claims have no value, having been dismissed as a matter of law or expired. This is far from the all-encompassing general releases rejected under *Cheeks*.

## III. Ms. Liss-Riordan Mischaracterizes the Settlement and Her Own Cases.

The Parties briefly further respond to several points in Ms. Liss-Riordan's Reply Letter warranting correction.

***First***, Ms. Liss-Riordan continues to overstate the overlap in these cases. Two of her cases, *Fontaine* and *Doty*, are Massachusetts-only. There are approximately 35 Massachusetts-based Field Organizers in the Settlement Class, and about half of them are also opt-in Plaintiffs, compared to the approximately 1,000 total Settlement Class Members. Ms. Liss-Riordan states that she individually represents 25 of the Massachusetts-based Field Organizers, and she can therefore advise them on whether to opt out of this settlement and forgo a certain recovery in favor of the speculative future recovery in her cases. Ms. Liss-Riordan's remaining case, *Sipp-Alpers*, has just one Massachusetts-based plaintiff (after 35 others were recently dismissed) and asserts Massachusetts common law claims. The judge reserved the question whether the class can contain former Campaign employees who never worked in Massachusetts to assert Massachusetts common law claims in a Massachusetts federal court proceeding. Ms. Liss-

[2] Although the Court adjudicated the common-law claims under New York law because the parties agreed that it governed, that does not prevent the Settlement from releasing analogous claims under other states' laws. In *Old Jericho*, the Second Circuit upheld the release of state-law claims resting on a different legal theory from the federal claims asserted in the underlying class action because they arose from the same factual predicate and the class members were adequately represented. *Old Jericho Enter., Inc. v. Visa Inc.*, 175 F.4th 172, 176-80 (2d Cir. 2026). The analogous claims here likewise arise from the same alleged promises, employment documents, and terminations pleaded and litigated in this action. Any uncertainty concerning the law applicable to individual class members is a litigation risk the Court may consider in assessing the Settlement, and any member who believes that risk favors continued litigation may opt out.

Riordan characterizes this decision as permitting a nationwide class, but that is unresolved. No motion for class certification has even been filed in *Sipp-Alpers* or *Doty*, and class certification in *Fontaine* was denied. Ms. Liss-Riordan's real concern appears to be that, once Settlement Class Members receive the Notice, they may conclude that it is better to accept an actual recovery through this Settlement than to wait years to see whether those cases produce a recovery. That is not a defect in the Notice or a basis to withhold it.

***Second***, Ms. Liss-Riordan's proposed notice modifications would not provide accurate information to inform Settlement Class Members. Ms. Liss-Riordan apparently wants the *Wood* Plaintiffs to pay for a legal solicitation notice advertising her firm and cases, with assertions that Ms. Liss-Riordan can secure for them "at least $48,000" in damages based on a single plaintiff trial verdict. This is extremely speculative, based on a best-case scenario, and ignores any risk to recovery. That characterization also ignores Ms. Liss-Riordan's actual record. She has not obtained class certification or any other form of uniform relief for a group of employees in any of these three cases. Her single plaintiff recovery apparently rests on a post-signing interaction that this Court similarly reviewed here and determined irrelevant to the question of whether the Plaintiffs' claims were barred as a matter of law due to their at-will status.

Ms. Liss-Riordan does *not* want the Notice to explain: (1) this Court dismissed analogous claims on similar facts, affirmed on appeal; (2) the single recovery in *Fontaine* came only after 5 years and a trial, with class certification denied; (3) *Fontaine* and *Doty* are Massachusetts-only and are inapplicable to the approximately 96.5% of Settlement Class Members outside Massachusetts[3]; and (4) her ability to pursue nationwide claims is unresolved in *Sipp-Alpers*, where 35 of 36 plaintiffs were recently dismissed. By requesting the Notice include only favorable information, Ms. Liss-Riordan seeks to make the Notice a tool to solicit opt-outs.

As Ms. Liss-Riordan concedes in footnote 1 of her Reply Letter, the Parties have accurately described the status of her three cases to the Court, and accurately described the two relevant putative class actions both in the preliminary approval papers and in the Settlement Notice. The Parties also accurately described the scope of the release to the Court and to Settlement Class Members in the Notice.

The Court has authorized the Settlement Class Members to be notified of the settlement, so that they can learn about it and decide whether to participate, object to it, or opt out of it. That process should proceed, so that the 1,000 Settlement Class Members all have that opportunity. Ms. Liss-Riordan is fully able to advise her individual clients on whether they should opt out, object, or remain in the Settlement Class and receive the certain benefit of payment. For these reasons, the Parties respectfully repeat their request that the Court lift the stay imposed by the August 17 Order, direct the Settlement Administrator to distribute the Notice promptly, and deny Ms. Liss-Riordan's request for a conference.

We thank the Court for its attention to this matter.

---

[3] Ms. Liss-Riordan also complains that the Settlement Notice is "deceptive" because it states that the Settlement release "may include claims" in her two putative class actions, Dkt. 623. That is because most individuals receiving this notice are not putative class members in *Doty*, and may not be class members in *Sipp-Alpers*, which has not briefed class certification.

Respectfully submitted,

/s/ Justin M. Swartz

/s/ Elise M. Bloom