L I C H T E N & L I S S - R I O R D A N , P. C.

ATTORNEYS AT LAW

HAROLD L. LICHTEN×
SHANNON LISS-RIORDAN×∆◊
SARAH SCHALMAN-BERGEN▪
MATTHEW W. THOMSON×
THOMAS P. FOWLER×◊
BRADLEY MANEWITH•
KRYSTEN CONNON^▪
OLENA SAVYTSKA×

MICHAEL ROMANO•○
TREVOR BYRNE×
KELLY GEDDES×
HODA KATEBI∆

729 BOYLSTON STREET, SUITE 2000
BOSTON, MASSACHUSETTS 02116

TELEPHONE 617-994-5800
FACSIMILE 617-994-5801

WWW.LLRLAW.COM

× ADMITTED IN MASSACHUSETTS
∆ ADMITTED IN CALIFORNIA
◊ ADMITTED IN NEW YORK
▪ ADMITTED IN PENNSYLVANIA
• ADMITTED IN ILLINOIS
^ ADMITTED IN NEW JERSEY
○ ADMITTED IN WASHINGTON D.C.


September 22, 2026

***Via ECF***
Chief Judge Laura Taylor Swain
Daniel Patrick Moynihan United States Courthouse
500 Pearl St
New York, NY 10007-1312

Re: Wood, et al. v. Mike Bloomberg 2020, Inc.,
Case No. 20-cv-2489 (LTS)

Dear Chief Judge Swain:

I write in response to the joint letter the parties in Wood submitted yesterday, September 21, 2026. (Dkt. 625). The Court had ordered the parties to address the permissible scope of release provisions in cases involving FLSA and wage-and-hour claims and to address the propriety of the release provision that the Wood parties have proposed here. (Dkt. 624). In their responsive letter, the Wood parties have provided a lot of argument but have notably avoided the central point of my letters, which addressed the fact that their proposed settlement would entirely release the Bloomberg campaign from liability regarding the promises of employment to campaign staff through November 2020 (which my firm has been actively litigating for years, and having some success on, including a favorable jury verdict), for what the parties admit is *zero consideration* – on the basis that those claims have *no value*.

Clearly these (far more valuable) claims have some value, as demonstrated by: (1) Nygel O'Bannon's trial victory on this claim; (2) the evidence presented at that trial that *all* campaign workers had their employment agreements modified by post-signing promises of employment through November 2020 (which the Fontaine court held stated a claim and survived summary judgment, regardless of the fact that this Court dismissed similar claims in the Wood case); (3) evidence we have that the campaign made similar post-signing promises

systematically nationwide[1]; and (4) the district court's decision in Sipp-Alpers v. Michael Bloomberg and Mike Bloomberg 2020, Inc., 1:25-cv-11822 (D. Mass.) that the plaintiff may represent a national class (notwithstanding the court's dismissal of the non-Massachusetts plaintiffs as lead named plaintiffs), as well as its decision that it has jurisdiction over Mr. Bloomberg, *personally*, for the promise we allege that he made himself.

In their letter, the Wood parties make much of the fact that the plaintiffs in Wood brought similar (though not identical) claims seeking pay through November 2020 but lost on those claims before this Court (and at the Second Circuit). (Dkt. 625 at 5-6). But the failure of those claims in Wood does not mean the claims have *no value at all* (where they are gaining traction in another jurisdiction), nor that it is fair for the settlement agreement to release them for *no consideration* based on the assumption that they have *no value*. The parties in Wood stress that this Court "already concluded as a matter of law that Plaintiffs' at-will employment status precluded these claims and therefore they must be dismissed." That decision was based on similar (but also somewhat different) claims that the Wood plaintiffs sought to press and the application of New York law. The Wood parties fail to reckon, entirely, with the legitimate differences in the claims and litigation strategies between Wood and my firm's cases.[2] The question, at this stage, is not whether the claims in my firm's cases will prevail, but whether it is

[1] This evidence is reflected in the Sipp-Alpers complaint, which alleges post-signing promises, which impacted "thousands of campaign staff across the country." Sipp-Alpers Dkt. 19 at 8-10.

[2] Although the Wood plaintiffs may have made "after hire" allegations, this Court found that under New York law, at-will employees could not plausibly claim to rely on such promises. (Dkt. 258 at 16-24). The Wood parties try to spin this result as a finding that such claims would be barred as a matter of law anywhere, but other jurisdictions (including Massachusetts and numerous other jurisdictions, as spelled out in our briefing in Sipp-Alpers) allow oral modification of written contracts based on such after-hire allegations, even where (as here) the written contracts contain a "no oral modification" clause. Rule Sales & Serv., Inc. v. U.S. Bank Nat. Ass'n, 133 Idaho 669, 675, 991 P.2d 857, 863 (Ct. App. 1999) (recognizing the "general common law rule" that "an oral modification of a written contract may be enforceable, notwithstanding a clause prohibiting unwritten modifications, at least in circumstances where one party has relied upon the modification," and collecting cases from multiple jurisdictions); see also, e.g., American Garment Properties, Inc. v. CB Richard Ellis-El Paso, L.L.C., 155 S.W.3d 431, 435 (Tex. App. 2004); Quality Products and Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 372-73 (2003); Reid v. Boyle, 259 Va. 356, 369–370 (2000); Pac. Nw. Grp. A v. Pizza Blends, Inc., 90 Wash. App. 273, 277-80 (1998); Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 439 n.10 (1992); First Pennsylvania Mortg. Trust v. Dorchester Sav. Bank, 395 Mass. 614, 625 (1985); Yamaha Intern. Corp. v. Parks, 72 N.C.App. 625, 628 (N.C. Ct. App. 1985).

appropriate for those claims to be treated as *having no value*, and to be bargained away for *zero consideration*.[3]

The Wood parties also claim that the release in their agreement is not overbroad because it only releases employment claims. Of course the Wood release would only address employment claims: the class members in Wood were employees of the campaign, and they brought claims arising out of their employment. This supposed limitation is no limitation at all. The parties have offered no good reason or explanation justifying including a full release of *all employment claims*, even those that were *not* in the Wood case at the time of the settlement.[4]

In fact, the Court rejected a similar release of *all employment claims* in another class settlement where the plaintiffs were represented by the Wood plaintiffs' counsel here, in Zorrilla v. Carlson Restaurants Inc., 2017 WL 11957967 at *2 (S.D.N.Y., Sept. 21, 2017). The Court explained that the release was overbroad where "Plaintiffs would be required to waive 'unlawful discrimination, harassment, retaliation, or hostile work environment [claims] of any kind'—claims that have no relationship to wage-and-hour issues."[5]

The fact that the Wood plaintiffs originally alleged similar (though not identical claims) does not make this release tailored: there is no question that the claims related to the

---

[3] Similarly, the Wood parties repeat their arguments that Sipp-Alpers has only one remaining plaintiff and that she has not obtained class certification. (Dkt. 625 at 7). That argument ignores that the case has not yet reached the class certification stage, as well as the district court's specific comment holding open the possibility of Ms. Sipp-Alpers representing a nationwide class, despite the dismissal of out-of-state plaintiffs' claims. Sipp-Alpers, Dkt. 62 at 15 n.1.

[4] Because those claims were dismissed altogether in Wood, which was upheld on appeal, there is simply no reason for that settlement to release those claims. Clearly the only reason that Bloomberg and the campaign sought a release of those claims was to attempt to extinguish them in my firm's ongoing cases. Of course, the Wood plaintiffs' counsel (who stand to receive *more than 2/3 of the fee* in this settlement) have no concern about such a release, while the defendants have every reason to want the release of the claims that *my firm* is litigating (again, without notifying me and then trying to bury that release in a lengthy document).

[5] Likewise, the released claims at issue here (for pay that was promised for an additional 8 months) has *no* relationship to the FLSA overtime claims that the Wood plaintiffs have been pursuing. And while the Wood plaintiffs originally alleged claims for the 8 additional months of promised pay, those claims are not alive at all in this case and thus there is no reason for them to be included in the release (particularly for *no* consideration, when -- as explained above – they do have at least *some* value).

campaign's premature layoffs of staff are no longer pending in Wood and have not been for years. The Bloomberg campaign "insisted on" the release of the layoff related claims (Dkt. 625 at 6) for the specific purpose of extinguishing the claims raised in my firm's cases against the campaign; the Wood parties do not argue otherwise. Indeed, clearly counsel for the Wood plaintiffs have acquiesced because the release does not affect their cases—and they stand to gain by doing so, as they seek more than two thirds ($4.2 million) of the proposed $6 million Wood settlement.[6]

I look forward to speaking further with the Court at a conference if any further questions need to be answered.

Respectfully submitted,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

Counsel for plaintiffs in Fontaine v. Mike Bloomberg 2020, Inc., 2081CV01192 (Mass. Super.), Doty v. Mike Bloomberg 2020, Inc., 2581CV01556 (Mass. Super.), and Sipp-Alpers v. Michael Bloomberg and Mike Bloomberg 2020, Inc., 1:25-cv-11822 (D. Mass.)

cc: All counsel of record (by ECF)

---

[6] In their letter, the Wood parties try to challenge my firm by misrepresenting Sanders v. CJS Sols. Grp., LLC, 2018 WL 620492 (S.D.N.Y. Jan. 30, 2018). In that case (in which I had no personal involvement), the broad release of claims that the court rejected applied only to the three named plaintiffs (which the Wood plaintiffs' counsel routinely agree to in settlements). Even then, the court found the broad release impermissible because it was "nonmutual and far exceeds the scope of the FLSA." Id. at *4. In contrast, here, the parties are asking for approval of a settlement in which the *entire class* would non-mutually waive claims that go well beyond the scope of the FLSA. Moreover, class members would be asked to waive these claims even while there are multiple pending cases through which they could recover on breach of contract claims worth far more than the FLSA claims they are settling. (Again, the breach of contract claims could be worth $50,000-60,000 or more, whereas the settlement of FLSA claims here would net class members less than $2,000). Allowing an entire class to release those more valuable claims in exchange for *no consideration* would result in far more injustice than the proposed settlement of three named plaintiffs' claims in Sanders that the court declined to approve.